PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile:  (213) 687-5600

JOHN NEUKOM (SBN 275887)
john.neukom@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile:  (650) 470-4570

Attorney for Defendants
Ripple Labs Inc., XRP II, LLC, Bradley
Garlinghouse, Christian Larsen, Ron Will,
Antoinette O'Gorman, Eric van Miltenburg,
Susan Athey, Zoe Cruz, Ken Kurson, Ben
Lawsky, Anja Manuel, and Takashi Okita

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE RIPPLE LABS INC. LITIGATION | CASE NO.: 18-6753 |
| This Document Relates To: | CLASS ACTION |
| ALL ACTIONS. | NOTICE OF REMOVAL |

1

## TABLE OF CONTENTS

2
**PAGE**

3   I.   INTRODUCTION ................................................................................................. 1

4   II.  CONSOLIDATION MAKES THIS ACTION NOW REMOVABLE .................. 3

5   III. REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT .................. 6

6   IV.  SECTION 22(A) OF THE SECURITIES ACT DOES NOT BAR REMOVAL .................. 8

7        A.   Luther Does Not Control The Claims Alleged Here ................................... 8

8        B.   The Luther Decision Requires Reconsideration ....................................... 11

9   V.   THIS REMOVAL NOTICE IS TIMELY AND SATISFIES ALL
        PREREQUISITES. ............................................................................................. 13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### CASES

3   Amadu v. Bradshaw,
        No. 15-8033 (RBK/AMD),
4       2016 WL 3676474 (D.N.J. July 11, 2016)............................................................5

5   Bridewell-Sledge v. Blue Cross of California,
        798 F.3d 923 (9th Cir. 2015) ...............................................................................4
6

    Broadway Grill, Inc. v. Visa Inc.,
7       856 F.3d 1274 (9th Cir. 2017) .............................................................................7

8   Brown v. Mortgage Electronic Registration Systems, Inc.,
        738 F.3d 926 (8th Cir. 2013) ...............................................................................9
9

    California Public Employees' Retirement System v. WorldCom, Inc.,
10      368 F.3d 86 (2d Cir. 2004)..................................................................................10

11  City of Oakland v. Abend,
        No. C 07 2142 EMC,
12      2007 WL 2023506 (N.D. Cal. July 12, 2007)......................................................5

13  Coffey v. Ripple Labs Inc.,
        No. 18-cv-03286-PJH,
14      2018 WL 3812076 (N.D. Cal. Aug. 10, 2018) ............................................10, 11

15  Cyan, Inc. v. Beaver County Employees Retirement Fund,
        138 S. Ct. 1061 (2018)..........................................................................................8
16

    Dart Cherokee Basin Operating Co. v. Owens,
17      135 S. Ct. 547 (2014) ..........................................................................................12

18  Estate of Pew v. Cardarelli,
        527 F.3d 25 (2d Cir. 2008)....................................................................................9
19

    Exxon Mobil Corp. v. Allapattah Services, Inc.,
20      545 U.S. 546 (2005) ..............................................................................................9

21  F5 Capital v. Pappas,
        856 F.3d 61 (2d Cir. 2017),
22      cert. denied, 138 S. Ct. 473 (2017) ......................................................................9

23  FDIC v. Countrywide Financial Corp.,
        No. 11-CV-10400-MRP-MANx,
24      2012 WL 12897152 (C.D. Cal. Mar. 20, 2012)..................................................10

25  Hamilton v. Asbestos Corp.,
        22 Cal. 4th 1127 (2000) ........................................................................................4
26

27  Holt v. Noble House Hotels & Resort, Ltd.,
        No. 17cv2246-MMA (BLM),
        2018 WL 539176 (S.D. Cal. Jan. 23, 2018)..........................................................7
28

ii

Jordan v. Nationstar Mortgage LLC,
    781 F.3d 1178 (9th Cir. 2015) ........................................................................... 13

Katz v. Gerardi,
    552 F.3d 558 (7th Cir. 2009) ............................................................................. 11

Luther v. Countrywide Home Loans Servicing LP,
    533 F.3d 1031 (9th Cir. 2008) ..................................................................... passim

In re MTBE Products Liability Litigation,
    399 F. Supp. 2d 340 (S.D.N.Y. 2005) ................................................................. 5

New Jersey Carpernters Fund v. HarborView Mortgage Loan Trust 2006-4,
    581 F. Supp. 2d 581 (S.D.N.Y. 2008) ............................................................... 11

People ex rel. Camil v. Buena Vista Cinema,
    57 Cal. App. 3d 497 (1976) ................................................................................. 4

Public Employees' Retirement System of Mississippi v. Morgan Stanley,
    605 F. Supp. 2d 1073 (C.D. Cal. 2009) ............................................................. 12

Rossetti v. Stearn's Products , Inc.,
    No. 16-1875-GW(SSx),
    2016 WL 3277295 (C.D. Cal. June 6, 2016) ....................................................... 7

SEC v. Glenn W. Turner Enterprises, Inc.,
    474 F.2d 476 (9th Cir. 1973) ............................................................................. 12

Thompson v. Target Corp.,
    No. EDCV16-00839 JGB (MRWx),
    2016 WL 4119937 (C.D. Cal. Aug. 2, 2016) ....................................................... 5

U.S. Industries , Inc. v. Gregg,
    348 F. Supp. 1004 (D. Del. 1972),
    rev'd on other grounds, 540 F.2d 142 (3d Cir. 1976) ........................................ 10

**STATUTES**

15 U.S.C. § 77p(f)(3) ................................................................................... 7, 11

15 U.S.C. § 77v(a) ................................................................................................ 8

28 U.S.C. § 1332 ................................................................................. 1, 3, 6, 7, 9

28 U.S.C. § 1367 ............................................................................................. 1, 3

28 U.S.C. § 1441 ........................................................................................... 9, 10

28 U.S.C. § 1446 ................................................................................... 1, 3, 4, 13

28 U.S.C. § 1453 ......................................................................................... passim

**OTHER AUTHORITIES**

4 B. E. Witkin, California Procedure: Pleading § 346 (5th ed. 2008) ................. 4

1    **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**
2    **NORTHERN DISTRICT OF CALIFORNIA**: Please take notice that Defendants Ripple Labs
3    Inc. ("Ripple"), XRP II, LLC ("XRP II"), Bradley Garlinghouse, Christian Larsen, Ron Will,
4    Antoinette O'Gorman, Eric van Miltenburg, Susan Athey, Zoe Cruz, Ken Kurson, Ben Lawsky,
5    Anja Manuel, and Takashi Okita (collectively, "Defendants"), by and through their undersigned
6    attorneys, hereby remove the above-captioned civil action, and all claims and causes of action
7    therein, from the Superior Court of the State of California, County of San Mateo, to the United
8    States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332(d),
9    1367, and 1453. As required by 28 U.S.C. § 1446(a), all process, pleadings, and orders served on
10   Defendants in the action to date are attached hereto as Exhibits A-I. As the requisite "short and
11   plain statement of the grounds for removal," 28 U.S.C. § 1446(a), Defendants state as follows:

12   **I.    INTRODUCTION**

13           1.     This action arises out of Plaintiffs' alleged purchases of a virtual currency, XRP, on
14   a described "cryptocurrency exchange." (Ex. A Consol. Compl. ¶¶ 10-11; Ex. B Greenwald Compl.
15   ¶ 14.) Plaintiffs do not allege that they lacked information about the nature of these transactions.
16   Nevertheless, Plaintiffs claim that they were somehow injured because Defendants were allegedly
17   required to register XRP as a "security" with the Securities & Exchange Commission ("SEC") but
18   failed to do so.

19           2.     On June 5, 2018, Plaintiff Zakinov filed <u>Zakinov v. Ripple Labs Inc. et al.</u>, No. 18-
20   CIV-02845 (the "Zakinov Action"), a putative class action complaint in the Superior Court of
21   California, County of San Mateo ("San Mateo Superior Court"), purporting to sue on his own
22   behalf and "on behalf of all California citizens who purchased or otherwise acquired XRP from
23   January 1, 2013 to the present." (Ex. C Zakinov Compl. ¶ 44.) Plaintiff asserted claims under
24   Sections 25110, 25503, and 25504 of the California Corporations Code—the provisions governing
25   the qualification and sale of securities and imposing "control person" liability on violators of
26   securities laws (Ex. C Zakinov Compl. ¶¶ 51-63), against Defendants Ripple, XRP II, and Bradley
27   Garlinghouse (Ex. C Zakinov Compl. ¶¶ 11-13). Plaintiff Zakinov sought, among other things,
28   rescission of all XRP purchases and/or damages. (Ex. C Zakinov Compl. ¶¶ B, D.)

3.     On June 27, 2018, Plaintiff Oconer filed <u>Oconer v. Ripple Labs Inc. et al.</u>, No. 18-CIV-03332 (the "Oconer Action"), a substantially similar putative class action complaint in San Mateo Superior Court, purporting to sue on his own behalf and on behalf "of all citizens of California who purchased XRP." (Ex. D Oconer Compl. ¶ 73.) Plaintiff Oconer also asserted claims under the same sections of the California Corporations Code (Ex. D Oconer Compl. ¶¶ 79-91), against Defendants Ripple, XRP II, and Bradley Garlinghouse (Ex. D Oconer Compl. ¶¶ 10-12). Plaintiff Oconer sought, among other things, rescission of all XRP purchases and/or damages. (Ex. D Oconer Compl. ¶¶ C, E.)

4.     On July 3, 2018, Plaintiff Greenwald, a resident of Israel, filed <u>Greenwald v. Ripple Labs Inc. et al.</u>, 18-CIV-03461 (the "Greenwald Action"), a substantially similar putative class action complaint in San Mateo Superior Court, purporting to sue on his own behalf and "all persons or entities who purchased XRP from July 3, 2015 through the present." (Ex. B Greenwald Compl. ¶¶ 2, 14, 87.) Plaintiff Greenwald asserted claims under Sections 5, 12(a)(1), and 15 of the Securities Act of 1933 ("Securities Act") (Ex. B Greenwald Compl. ¶¶ 94-110), against Defendants Ripple, XRP II, Bradley Garlinghouse, Christian Larsen, Ron Will, Antoinette O'Gorman, Eric van Miltenburg, Susan Athey, Zoe Cruz, Ken Kurson, Ben Lawsky, Anja Manuel, and Takashi Okita (Ex. B Greenwald Compl. ¶¶ 15-27). Plaintiff Greenwald sought, among other things, rescission of all XRP purchases and/or damages (Ex. B Greenwald Compl. ¶¶ C, D) and a constructive trust over the proceeds of Defendants' alleged sales of XRP (Ex. B Greenwald Compl. ¶ G).

5.     On August 8, 2018, Defendants removed the Greenwald Action to the United States District Court for the Northern District of California ("District Court") pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453.

6.     On August 30, 2018, Judge Richard H. DuBois of the San Mateo Superior Court ordered the Zakinov and Oconer Actions consolidated "for all purposes, including pre-trial proceedings and trial." (Ex. E Consolidation Order ¶ 6.) The consolidated action was renamed <u>In re Ripple Labs Inc. Litigation</u>, Lead Case No. 18-CIV-02845 (Consolidated with Case No. 18-CIV-03332) ("In re Ripple Labs Inc. Litigation"). Plaintiffs were ordered to file a Consolidated Complaint within 45 days after entry of the order and Defendants were ordered to respond to the

Consolidated Complaint within 45 days after service of the Consolidated Complaint. (Ex. E Consolidation Order ¶ 8.) The Consolidation Order further provided that it "shall apply to each case, arising out of the same or similar transactions and/or events as [the Zakinov and Oconer Actions] which is currently pending in, subsequently filed in, remanded to, or transferred to this Court." (Ex. E Consolidation Order ¶ 14.)

7.     On October 15, 2018, Plaintiffs Zakinov and Oconer filed the Consolidated Complaint in In re Ripple Labs Inc. Litigation on their behalf and on behalf of a putative "class consisting of all citizens of California who purchased XRP." (Ex. A Consol. Compl. ¶ 80.) Plaintiffs asserted claims under Sections 25110, 25503, and 25504 of the California Corporations Code, (Ex. A Consol. Compl. ¶¶ 86-98), against Defendants Ripple, XRP II, and Bradley Garlinghouse. (Ex. A Consol. Compl. ¶¶ 12-14.) Plaintiffs sought, among other things, rescission of all XRP purchases and/or damages (Ex. A Consol. Compl. ¶¶ C, E).

8.     On October 15, 2018, the District Court remanded the Greenwald Action back to the San Mateo Superior Court.

9.     On October 25, 2018, Defendants filed a Notice of Related Case in the San Mateo Superior Court indicating that the Greenwald Action is related to In re Ripple Labs Inc. Litigation. Plaintiffs did not object to the Notice of Related Case.

10.     On October 31, 2018, Judge Richard H. DuBois of the San Mateo Superior Court ordered the Greenwald Action related to and consolidated with the In re Ripple Labs Inc. Litigation. (Ex. F Order Deeming Case Related and Consolidating Action Into Master File.)

11.     Defendants now remove this consolidated, putative class action to this Court pursuant to CAFA, 28 U.S.C. § 1453. The Court has jurisdiction over the consolidated action and removable claims pursuant to 28 U.S.C. § 1332(d)(2) and supplemental jurisdiction over any purportedly non-removable claims pursuant to 28 U.S.C. § 1367(a).

## II.     CONSOLIDATION MAKES THIS ACTION NOW REMOVABLE

12.     Under 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an . . . order . . . from which it may first be ascertained

that the case is one which is or has become removable." Id. The In re Ripple Labs Inc. Litigation was initially not removable pursuant to CAFA because there was no minimal diversity; since the action was only brought on behalf of a putative class comprised of California citizens against Defendants who were alleged to reside in California. (Ex. A Consol. Compl. ¶ 80.) However, on October 31, 2018, when the Greenwald Action was ordered consolidated with the In re Ripple Labs Inc. Litigation, the newly consolidated action became removable pursuant to CAFA because the Greenwald Action is brought on behalf of a worldwide class, with no geographic limitations, by Plaintiff Greenwald, an Israeli resident, against Defendants, many of whom do not reside in California. Thus, CAFA's minimal diversity requirement is now met and, as shown below, CAFA's other removal requirements are also met. Defendants have thirty days from the order consolidating the Greenwald Action with the In re Ripple Labs Inc. Litigation—the "order . . . from which it may first be ascertained that the case is one which is or has become removable"—to remove this action. Defendants, therefore, are timely removing the consolidated action now.

13.     Under California law, when there is "a complete consolidation or consolidation for all purposes, . . . the two actions are merged into a single proceeding under one case number and result in only one verdict or set of findings and one judgment." Hamilton v. Asbestos Corp., 22 Cal. 4th 1127, 1147 (2000) (finding trial court had ordered complete consolidation where it ordered the cases consolidated under the same case number). Additionally, after "actions are consolidated, [] the allegations of the complaints can be treated as one pleading." People ex rel. Camil v. Buena Vista Cinema, 57 Cal. App. 3d 497, 500 (1976); 4 B. E. Witkin, California Procedure: Pleadings § 346 (5th ed. 2008) ("If the causes of action could have been joined, it is usually appropriate to order a complete consolidation, the separate actions becoming a single action, the separate pleadings being treated as part of one set, and a single verdict or judgment being given."). Accordingly, when consolidation occurs "the actions are viewed as if the same plaintiff or plaintiffs had filed a single complaint on joined causes of action against the same defendant or defendants." Id. The Ninth Circuit agrees. See Bridewell-Sledge v. Blue Cross of California, 798 F.3d 923, 930 (9th Cir. 2015) (in action where cases were consolidated in state court and then removed, finding that "when examining whether we have federal jurisdiction over [action 1] and

1  [action 2] under CAFA, it is necessary to view [action 1] and [action 2] as a single consolidated
2  class action that was united originally, rather than as two separate class actions filed at different
3  times").

4      14.      Thus, "where two actions are consolidated into a single action, state-ordered
5  consolidation may affect jurisdiction and removability." In re MTBE Prods. Liability Litig., 399 F.
6  Supp. 2d 340, 353 (S.D.N.Y. 2005). "For example, where a state consolidation order destroys the
7  identity of each suit and merges them into one, then the consolidated case may potentially be
8  removed if the consolidated case contains a claim over which removal is proper." City of Oakland
9  v. Abend, 2007 WL 2023506, at *3-4 (N.D. Cal. July 12, 2007) (finding that "[b]ecause there was
10 a complete consolidation, the two consolidated cases were properly subject to removal, in spite of
11 the lack of a federal question on the face of the [first] complaint and amended complaint, because
12 the [second] [] complaint asserts federal claims"); Amadu v. Bradshaw, 2016 WL 3676474, at *3
13 (D.N.J. July 11, 2016) (finding that state law was clear that "actions that are initiated separately
14 and subsequently consolidated become a single action," and thus the consolidation of the two
15 actions destroyed diversity for purposes of § 1332).

16     15.      Thompson v. Target Corp., 2016 WL 4119937 (C.D. Cal. Aug. 2, 2016) is
17 instructive. In Thompson, the California Superior Court consolidated the Thompson I and
18 Thompson II actions. Defendant then removed the consolidated action on the basis of CAFA. Id. at
19 *2. Plaintiff argued that, although the two actions were consolidated into a single case by the
20 superior court, the two cases were "each … a separate action based on a separate complaint" and,
21 as such, Plaintiff's PAGA claims could not be removed. Id. at *11. The court rejected Plaintiff's
22 position, finding that although it did "not have original jurisdiction over Plaintiff's PAGA claims,"
23 the court found it had "original jurisdiction over Plaintiff's class claims under CAFA, [and] the
24 Court may exercise supplemental jurisdiction over Plaintiff's PAGA claims[] [u]nder 28 U.S.C.
25 § 1367(a)." Id. at *12.

26     16.      Likewise, here, when Judge Richard H. DuBois of the San Mateo Superior Court
27 ordered the Greenwald Action "CONSOLIDATED as part of Master File No. 18CIV02845," the
28 Court merged the Greenwald Action entirely with the In re Ripple Labs Inc. Litigation. (Ex. F

1  Order Deeming Case Related and Consolidating Action into Master File ¶ 2.) The consolidation of

2  the actions "for all purposes, including pre-trial proceedings and trial" (Ex. E Consolidation Order

3  ¶ 6) renders the entire, consolidated action removable.

4  **III.    REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT**

5       17.    This alleged nationwide securities class action falls within the original jurisdiction

6  of this Court under CAFA. Pursuant to CAFA, a putative class action may be removed to the

7  appropriate federal district court if (1) the action purports to be a "class" action brought on behalf

8  of 100 or more members; (2) any member of a class of plaintiffs is a citizen of a state different

9  from any defendant; and (3) the amount in controversy exceeds $5 million. <u>See</u> 28 U.S.C.

10 §§ 1332(d)(2), (2)(A), (5)(B), 1453(b). This action meets each of those requirements.

11      18.    ***Class exceeds 100 members.*** First, this is an alleged class action brought on behalf

12 of over 100 members. Plaintiffs purport to assert claims on behalf of a "class" consisting of

13 "thousands" of class members. (Ex. A Consol. Compl. ¶¶ 80-81; Ex. B Greenwald Compl. ¶¶ 87,

14 89.) That well exceeds the requirements of CAFA. <u>See</u> 28 U.S.C. § 1332(d)(1)(B), (5)(B).

15      19.    ***Minimal Diversity.*** Second, minimal diversity of citizenship and/or alienage

16 jurisdiction exists (i.e., at least one class member plaintiff has a different citizenship from any of

17 the defendants), as required by Section 1332(d)(2)(A) and/or 1332(d)(2)(B). On one hand, certain

18 Defendants are allegedly residents of California. (Ex. A Consol. Compl. ¶¶ 12-14; Ex. B

19 Greenwald Compl. ¶¶ 15-17.) On the other hand, members of the putative class are citizens of

20 states *other than* California because the consolidated action is brought on behalf of "all persons or

21 entities who purchased XRP since July 3, 2015" without any geographic limitation. (Ex. B

22 Greenwald Compl. ¶ 87.) Plaintiff Greenwald himself is a resident of Israel (Ex. B Greenwald

23 Compl. ¶ 14), while no Defendant is alleged to be a citizen or resident of Israel. The Complaints

24 further allege that Defendants have sold XRP to putative class members on "global, online

25 cryptocurrency exchanges," which are accessible on the internet and therefore throughout the

26 United States and the world. (Ex. A Consol. Compl. ¶¶ 28-31; Ex. B Greenwald Compl. ¶¶ 77, 79.)

27 Plaintiffs also allege that Defendants "used the means and instrumentalities of interstate

28 commerce" in purportedly selling XRP. (Ex. A Consol. Compl. ¶ 9.)

20.     In addition, certain Defendants are citizens *outside* of California. For example, Zoe Cruz is a citizen of New York, Takashi Okita is a citizen of Japan, and Ken Kurson is a citizen of New Jersey. Simultaneously, members of the putative consolidated class reside *within* California. (Ex. A Consol. Compl. ¶ 80 (putative class on behalf of "all citizens of California who purchased XRP"); Ex. B Greenwald Compl. ¶ 87).)

21.     Given these allegations, putative class members in the consolidated action are citizens of states different from Defendants, and minimal diversity is satisfied. See, e.g., Broadway Grill, Inc. v. Visa Inc., 856 F.3d 1274, 1276 (9th Cir. 2017) (concluding that minimal diversity was satisfied when class definition, as pleaded, included a nationwide class and many non-citizens of California); Rossetti v. Stearn's Prods., Inc., 2016 WL 3277295, at *1-2 (C.D. Cal. June 6, 2016) (action pled as a nationwide class satisfied minimal diversity requirement).

22.     ***Amount in Controversy***. Third, this action meets CAFA's amount-in-controversy requirement of $5 million. 28 U.S.C. § 1332(d)(6). Among other things, Plaintiffs seek the rescission of Defendants' alleged sales of XRP to putative class members. (Ex. A Consol. Compl. ¶ E; Ex. B Greenwald Compl. ¶ C .) Plaintiffs allege that in the first quarter of 2018, "Defendants sold at least $167.7 million worth of XRP" (Ex. A Consol. Compl. ¶ 28; Ex. B Greenwald Compl. ¶ 52.) If all such sales were rescinded, the amount in controversy would exceed $5 million. While Defendants strongly deny that Plaintiffs or any putative class members are entitled to recover any amount (or any other relief), Plaintiffs plainly seek to recover an aggregate amount over $5 million.

23.     Moreover, Plaintiffs seek a constructive trust over the proceeds of Defendants' alleged sales of XRP. (Ex. B Greenwald Compl. ¶ G.) Based on the allegations in the Complaints, this amount is at least $167.7 million, in excess of the $5 million minimum. (Ex. A Consol. Compl. ¶ 28; Ex. B Greenwald Compl. ¶ 52.); see also Holt v. Noble House Hotels & Resort, Ltd., 2018 WL 539176, at *4 (S.D. Cal. Jan. 23, 2018) (considering amount over which plaintiff was seeking a constructive trust and disgorgement in assessing amount in controversy).

24.     ***Exceptions***. None of the exceptions to removal set forth in CAFA applies to bar removal here. This action does not (i) involve a "covered security," as defined by 15 U.S.C. § 77p(f)(3); (ii) relate to the internal affairs or governance of a corporation and arise under the laws

1  of the state in which such corporation was formed; or (iii) relate to the rights, duties, and

2  obligations relating to or created by or pursuant to any security. See 28 U.S.C. § 1453(d)(1)-(3).

3  **IV.    SECTION 22(A) OF THE SECURITIES ACT DOES NOT BAR REMOVAL**

4       25.    The fact that Plaintiffs purport to bring claims under the Securities Act does not

5  preclude removal here. Section 22(a) of the Securities Act ("Section 22(a)") provides, "Except as

6  provided in section 77p(c) of this title, no case arising under this subchapter and brought in any

7  State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C.

8  § 77v(a). Although the Supreme Court recently concluded that the exception in section 77p(c)—a

9  reference to the Securities Litigation Uniform Standards Act ("SLUSA")—does not permit

10  removal of class actions alleging only Securities Act violations, the Court did not address and has

11  not addressed whether removal of class actions asserting Securities Act claims is permitted on

12  other grounds, including when, as here, CAFA expressly permits removal. See Cyan, Inc. v.

13  Beaver Cty. Emps. Ret. Fund, 138 S. Ct. 1061, 1075-76 (2018).

14       **A.    Luther Does Not Control The Claims Alleged Here**

15       26.    Defendants expressly acknowledge the decision of the United States Court of

16  Appeals for the Ninth Circuit in Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031,

17  1034 (9th Cir. 2008). In Luther, the plaintiff asserted claims only under the Securities Act. See id.

18  at 1032-33. The court held that a class action brought in state court alleging *only* violations of the

19  Securities Act was not removable even though it met the requirements of CAFA. Id. at 1034. But

20  Luther did not address a situation where, as here, removable state law claims are joined with

21  Securities Act claims. See id. Luther thus does not preclude removal here because this consolidated

22  action includes state law claims, which are separately removable, and thus permit removal of the

23  entire action.

24       27.    Indeed, the basis for the Luther court's holding that Section 22(a) bars removal

25  notwithstanding CAFA was that Section 22(a) is "narrow, precise, and specific" and "applies only

26  to claims arising under the Securities Act," whereas CAFA has broader application. Id. (citation

27  omitted). But if Section 22(a) were interpreted to bar removal of Securities Act claims *and* the state

28  law claims asserted with them, Section 22(a) would not have the "narrow, precise, and specific"

1  application the <u>Luther</u> court described. Therefore, the reasoning in <u>Luther</u> does not apply to the

2  situation here and does not bar removal.

3      28.    This distinction is substantively important. CAFA (i) broadened the definition of

4  diversity jurisdiction in 28 U.S.C. § 1332 as it applied to certain class actions, <u>see</u> 28 U.S.C.

5  § 1332(d); and (ii) created a separate statute allowing for removal of class actions falling within

6  that broadened definition, <u>see</u> 28 U.S.C. § 1453. In doing so, CAFA specifically expanded the

7  federal courts' diversity jurisdiction to "assure that the federal courts are available ***for all securities***

8  ***cases that have national impact***," subject to certain enumerated exceptions. <u>Estate of Pew v.</u>

9  <u>Cardarelli</u>, 527 F.3d 25, 32 (2d Cir. 2008) (emphasis added). Pursuant to diversity jurisdiction, if

10 the federal court has jurisdiction over one claim, it has jurisdiction over the entire action. <u>See</u>

11 <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 559 (2005) ("When the well-pleaded

12 complaint contains at least one claim that satisfies the amount-in-controversy requirement, and

13 there are no other relevant jurisdictional defects, the district court, beyond all question, has original

14 jurisdiction over that claim. The presence of other claims in the complaint, over which the district

15 court may lack original jurisdiction, is of no moment. If the court has original jurisdiction over a

16 single claim in the complaint, it has original jurisdiction over a 'civil action . . . .'"). Thus, if one

17 claim in an action is removable, the entire action is removable. This rule applies equally with

18 respect to removals under CAFA. <u>See</u> <u>F5 Capital v. Pappas</u>, 856 F.3d 61, 82 (2d Cir. 2017), <u>cert.</u>

19 <u>denied</u>, 138 S. Ct. 473 (2017) (concluding that class action was properly removed under CAFA and

20 that the federal court could exercise supplemental jurisdiction over state law derivative claims that

21 were not otherwise removable); <u>Brown v. Mortg. Elec. Registration Sys., Inc.</u>, 738 F.3d 926, 933

22 (8th Cir. 2013) (affirming removal under CAFA and district court's exercise of supplemental

23 jurisdiction over non-removable state law claims).

24     29.    There is no exception to this general rule for circumstances in which a non-

25 removable federal claim is asserted alongside removable state law claims. Under the general

26 removal statute, 28 U.S.C. § 1441(a)—on which Defendants do ***not*** rely for removal here—

27 removal is not permitted if non-removable claims are joined with removable claims. This is

28 because Section 1441(a) authorizes removal when federal courts have "original jurisdiction"

1  "[e]xcept as otherwise expressly provided by Act of Congress." 28 U.S.C. § 1441(a). Courts have

2  concluded that this exception language—"[e]xcept as otherwise expressly provided by Act of

3  Congress"—refers to anti-removal statutes such as Section 22(a) and prevents removal of an action

4  under Section 1441(a) when such claims are asserted. See U.S. Indus., Inc. v. Gregg, 348 F. Supp.

5  1004, 1015 (D. Del. 1972), rev'd on other grounds, 540 F.2d 142 (3d Cir. 1976).

6       30.    However, Section 1453—the separate CAFA removal statute, the statute on which

7  Defendants **do** rely for removal—does not include the "[e]xcept as otherwise expressly provided by

8  Act of Congress" language. See 28 U.S.C. § 1453. The omission of this language means that,

9  unlike with Section 1441(a), Congress did **not** intend for the inclusion of non-removable claims to

10  block the removal of otherwise removable actions. See Cal. Pub. Emps.' Ret. Sys. v. WorldCom,

11  Inc., 368 F.3d 86, 106 (2d Cir. 2004) (allowing removal of Securities Act claim under 28 U.S.C. §

12  1452 because that section does not include the exception language); FDIC v. Countrywide Fin.

13  Corp., 2012 WL 12897152, at *1 (C.D. Cal. Mar. 20, 2012) (concluding that grant of federal

14  jurisdiction over claims involving FDIC made action removable under Section 1441(b), which at

15  that time provided for removal based on claims arising under federal law, and "trump[ed]" the

16  removal bar in Section 22(a) because Section 1441(b) did not then contain exception language like

17  Section 1441(a)). Indeed, any other result would frustrate Congress's objective of ensuring a

18  federal forum for securities cases with national impact, since plaintiffs could consistently keep

19  otherwise removable actions out of federal court merely by alleging a Securities Act claim.

20       31.    In Coffey v. Ripple Labs Inc., No. 18-cv-03286-PJH, 2018 WL 3812076 (N.D. Cal.

21  Aug. 10, 2018), the court concluded that, notwithstanding Section 22(a), CAFA permits removal of

22  an action, such as this one, that includes both state law claims and claims under the Securities Act.

23  Id. at *6. In so concluding, the court began with the plain language of CAFA. Id. at *6. CAFA's

24  removal provision, Section 1453(b), provides:

25            [a] class action [meeting the requirements of Section 1332(d)] may
            be removed to a district court of the United States in accordance with
26            section 1446 . . . without regard to whether any defendant is a citizen
            of the State in which the action is brought . . . by any defendant
27            without the consent of all defendants.

28  Id. at *6. Under Section 1453(d), CAFA excepts certain class actions from removal that "solely"

involve a claim: (1) concerning a "covered security," as defined by 15 U.S.C. § 77p(f)(3); (2) relating to the internal affairs or governance of a corporation and arise under the laws of the state in which such corporation was formed; or (3) relating to the rights, duties, and obligations relating to or created by or pursuant to any security. See 28 U.S.C. § 1453(d)(1)-(3). "[R]ead as a whole, CAFA's plain language 'creates original jurisdiction for and removability of all class actions that meet the minimal requirements and do not fall under one of the limited exceptions.'" Coffey, 2018 WL 3812076, at *7 (quoting New Jersey Carpenters Vacation Fund v. HarborView Mortg. Loan Tr. 2006-4, 581 F. Supp. 2d 581, 584 (S.D.N.Y. 2008)); see also Katz v. Gerardi, 552 F.3d 558, 562 (7th Cir. 2009) (concluding that claims falling within the exceptions are not removable, but "[o]ther securities class actions are removable if they meet the requirements of" CAFA). Thus, in Coffey, the court rejected the plaintiff's invitation to read an additional exception into Section 1453. See Coffey, 2018 WL 3812076, at *8. Accordingly, this entire consolidated action is removable because the Court has jurisdiction over the state law claims pursuant to CAFA and the Court may, at a minimum, exercise supplemental jurisdiction over the federal Securities Act claims pursuant to 28 U.S.C. § 1367.

### B.   The Luther Decision Requires Reconsideration

32.   As explained above, Luther does not control removal of this action. If it were considered relevant precedent for the instant case, then Defendants respectfully submit that Luther should be reconsidered. Shortly after the Ninth Circuit decided Luther, the Seventh Circuit considered the central legal question in Luther—the removability of Securities Act class actions meeting the removal requirements of CAFA. See Katz, 552 F.3d at 561-62. The Katz court held that class actions meeting the requirements of CAFA, including those asserting claims solely under the Securities Act, are removable. Id. at 562. In doing so, Katz expressly disagreed with the reasoning in Luther. Defendants respectfully submit that Luther was wrongly decided, and that under the correct view of the law articulated in Katz, Plaintiffs' Securities Act claims are themselves removable under CAFA.

33.   In Luther, the court applied the "principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute

covering a more generalized spectrum." Luther, 533 F.3d at 1034 (citation omitted). The court reasoned that the Securities Act was "more specific" than CAFA because it "applies only to claims arising under the Securities Act," whereas CAFA "applies to a 'generalized spectrum'" of class actions. Id.

34.    The Katz court rejected this reasoning. Contrary to Luther's conclusion, the Katz court noted that CAFA is *not* broader than the Securities Act because CAFA applies only to "large, multi-state class actions" while the Securities Act applies to "all securities actions—single-investor suits as well as class actions." Katz, 552 F.3d at 561; see also SEC v. Glenn W. Turner Enters., Inc., 474 F.2d 476, 481 n.5 (9th Cir. 1973) (noting "[t]he broad purpose of the Securities Act of 1933").

35.    The Katz court also concluded that the language of CAFA itself, "rather than a[ny] canon" of statutory construction, instructs how CAFA "applies to corporate and securities actions." Katz, 552 F.3d at 562. CAFA itself contains specific, enumerated exceptions to removal jurisdiction that address certain securities actions—none of which applies here—including actions "concerning a covered security," those relating to the internal affairs of a corporation, or those relating to the rights, duties, and obligations relating to or created by or pursuant to any security. Id. "This [list of exceptions] tells us all we need to know." Id. Claims falling within the exceptions are not removable, and all "[o]ther securities class actions are removable if they meet the requirements of" CAFA. Id.

36.    The current divide in authority led the author of the district court decision affirmed by the Ninth Circuit in Luther, the Hon. Mariana Pfaelzer, to observe in another case, "Defendants appear to have nonfrivolous arguments for a change in the law due to post-Luther developments." Pub. Emps.' Ret. Sys. of Miss. v. Morgan Stanley, 605 F. Supp. 2d 1073, 1075 n.1 (C.D. Cal. 2009).

37.    Subsequently-decided Supreme Court authority has also undermined Luther. A basic premise of the holding in Luther was the general rule that "removal statutes are strictly construed against removal." Luther, 533 F.3d at 1034. However, the Supreme Court has since concluded that such a presumption does not apply to removals under CAFA. See Dart Cherokee

1  Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014) ("[N]o antiremoval presumption attends

2  cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in

3  federal court."). The Ninth Circuit itself already has recognized that Dart Cherokee "undercut[s]

4  the theory or reasoning underlying [Luther] in such a way that the cases are clearly irreconcilable."

5  Jordan v. Nationstar Mortg. LLC, 781 F.3d 1178, 1183 n.2 (9th Cir. 2015) (alteration in original)

6  (citation omitted) (rejecting Luther's strict construction of CAFA against removal because it was

7  inconsistent with Dart Cherokee).

8  **V.     THIS REMOVAL NOTICE IS TIMELY AND SATISFIES ALL PREREQUISITES.**

9        38.    Plaintiffs filed the In re Ripple Labs Inc. Litigation Consolidated Complaint on

10 October 15, 2018, in the San Mateo Superior Court, as lead case number 18-CIV-02845. On

11 October 31, 2018, Judge Richard H. DuBois of the San Mateo Superior Court ordered the

12 Greenwald Action be consolidated with the In re Ripple Labs Inc. Litigation, which made the

13 entire action removable at that time. This Notice of Removal is timely because it has been filed

14 within thirty days "after receipt by the [D]efendant[s], through service or otherwise, of a copy of

15 an . . . order . . . from which it may first be ascertained that the case is one which is or has become

16 removable." See 28 U.S.C. § 1446(b)(3).

17        39.    Written notice of the filing of this Notice of Removal will be given to the adverse

18 parties and state court as required by Section 1446(d).

19 DATED: November 7, 2018

20                                              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

21                                              By:  _____ */s/Peter B. Morrison*_____

22                                                          Peter B. Morrison
                                                           Attorney for Defendants