# EXHIBIT A

1  ROBBINS ARROYO LLP
   BRIAN J. ROBBINS (190264)
2  STEPHEN J. ODDO (174828)
   ERIC M. CARRINO (310765)
3  600 B Street, Suite 1900
   San Diego, CA 92101
4  Telephone: (619) 525-3990
   Facsimile: (619) 525-3991
5  E-mail: brobbins@robbinsarroyo.com
           soddo@robbinsarroyo.com
6          ecarrino@robbinsarroyo.com

7  ROBBINS GELLER RUDMAN
      & DOWD LLP
8  BRIAN O. O'MARA (229737)
   655 West Broadway, Suite 1900
9  San Diego, CA 92101
   Telephone: (619) 231-1058
10 Facsimile: (619) 231-7423
   E-mail: bomara@rgrdlaw.com
11
12 Co-Lead Counsel for Plaintiffs

13 [Additional counsel appear on signature page]

14                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                              COUNTY OF SAN MATEO

16 IN RE RIPPLE LABS INC. LITIGATION          ) Lead Case No. 18-CIV-02845
                                              )
17 _____  ) (Consolidated with Case No. 18-CIV-03332)
                                              )
18 This Document Relates To:                  ) CLASS ACTION
                                              )
19    ALL ACTIONS.                            ) CONSOLIDATED COMPLAINT FOR
                                              ) VIOLATIONS OF CALIFORNIA LAW
20                                            )
                                              ) Assigned for All Purposes to:
21                                            ) Judge: Hon. Richard H. DuBois
                                              ) Dept.: 16
22                                            ) Date Action Filed: June 5, 2018
                                              )
23                                            ) DEMAND FOR JURY TRIAL
                                              )
24 _____

25

26

27

28

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1    Plaintiffs Vladi Zakinov and David Oconer, individually and on behalf of all others similarly

2    situated, by their undersigned attorneys, allege the following, based upon personal knowledge as to each

3    plaintiff and each plaintiff's own acts, and upon information and belief as to all other matters based on

4    the investigation conducted by and through plaintiffs' attorneys, which included, among other things, a

5    review of filings and press releases by Ripple Labs, Inc. ("Ripple" or the "Company"), its wholly owned

6    subsidiary XRP II, LLC ("XRP II"), and analyst and media reports and other publicly disclosed reports

7    and information about the Company and XRP II.   Plaintiffs believe that substantial additional

8    evidentiary support will exist for the allegations set forth herein, after a reasonable opportunity for

9    discovery.

10                                        **SUMMARY OF ACTION**

11       1.       This is a securities class action on behalf of all California purchasers of Ripple tokens

12   ("XRP"), brought against Ripple, XRP II and the Chief Executive Officer ("CEO") of the Company,

13   Bradley Garlinghouse ("Garlinghouse"), who promoted, sold and solicited the sale of XRP.  Defendants

14   raised hundreds of millions of dollars through the unregistered sale of XRP, including selling to retail

15   investors, in violation of the law.

16       2.       Under California law, offers and sales of securities must be qualified with the

17   Commissioner of Corporations, unless exempt.   These laws are designed to protect the public, by

18   requiring various disclosures so that investors can better understand the security and the risks associated

19   with investing in that security.  The regime of registration and disclosure is the primary means by which

20   regulators prohibit deceit, misrepresentations, and fraud in the sale of securities, and promote the fair

21   and orderly functioning of the securities markets.

22       3.       The U.S. Securities and Exchange Commission ("SEC") has made it clear that digital

23   tokens, such as XRP, often constitute "securities and may not be lawfully sold without registration with

24   the SEC or pursuant to an exemption from registration."[1]   As stated by Chairman of the SEC Jay

25   Clayton, "A change in the structure of a securities offering does not change the fundamental point that

26   
   ───────────────
27   [1]   *See   Investor   Bulletin:   Initial   Coin   Offerings*,   SEC   (July   25,   2017),
     https://www.sec.gov/oiea/investor-alerts-and-bulletins/ib-coinofferings.

28

when a security is being offered, our securities laws must be followed."[2] "Said another way, replacing a traditional corporate interest recorded in a central ledger with an enterprise interest recorded through a blockchain entry on a distributed ledger may change the form of the transaction, but it does not change the substance."[3]  In the case of XRP, the digital currency is centralized in the XRP Ledger, which is maintained and controlled by Ripple (notwithstanding the Company's representations to the contrary), making the security transactions at issue even more akin to a traditional corporate interest.

4.      Here, the XRP offered and sold by defendants has all the traditional hallmarks of a security, yet defendants failed to register them as such.  The purchase of XRP constitutes an investment contract as XRP purchasers, including plaintiffs, provided consideration (in the form of fiat, such as U.S. dollars, or other cryptocurrencies) in exchange for XRP.  XRP purchasers reasonably expected to derive profits from their ownership of XRP, and defendants themselves have frequently highlighted this profit motive.  Moreover, defendants solicited the public at large and sold XRP to raise funds for the business and operations of Ripple and the XRP ecosystem.  The development of the XRP Ledger and other facets of the XRP network, and the return that investors expected to derive therefrom, were, and are, based entirely on the technical, managerial, and entrepreneurial efforts of defendants, and other third parties employed by defendants.  Indeed, a feature of XRP that differentiates the cryptocurrency from others such as Bitcoin, is that the security is highly centralized in Ripple.  The Company created the XRP token and then uses sales of the tokens in order to fund its operations and the development of the XRP ecosystem, which in turn, increases the value of XRP and the potential returns to XRP investors.  Plaintiffs and other class members have an entirely passive role in the success of their investment in XRP.

5.      Despite the status of XRP as a security, defendants failed to register XRP and the sale of XRP did not qualify for an exemption from registration.  Nevertheless, many of the representations defendants made regarding XRP were designed to drive demand for XRP, allowing defendants to obtain

---

[2]  *See* Jay Clayton, *Statement on Cryptocurrencies and Initial Coin Offerings*, SEC (Dec. 11, 2017), https://www.sec.gov/news/public-statement/statement-clayton-2017-12-11.

[3]  *Id.*

greater returns on their XRP sales. Defendants have since generated hundreds of millions of dollars in gross proceeds by selling XRP to the general public, in what is essentially a series of initial coin offerings ("ICO"). Much like the better-known term, initial public offering ("IPO"), in an ICO, digital assets are sold to consumers in exchange for legal tender or cryptocurrencies (most often Bitcoin and Ethereum). These tokens generally give the purchaser various rights on the blockchain network and resemble the shares of a company sold to investors in an IPO. Unfortunately, ICOs have become a magnet for unscrupulous practices and fraud.

6.      Plaintiffs bring this suit for declaratory relief that XRP is, in fact, a security under applicable laws, and for damages, rescission and other relief as detailed herein.

## JURISDICTION AND VENUE

7.      The claims alleged herein arise under §§25110, 25503 and 25504 of the California Corporations Code (the "Corporations Code"). Jurisdiction is conferred by Article VI, §10 of the California Constitution. Venue is proper pursuant to the California Code of Civil Procedure.

8.      The violations of law complained of herein occurred in San Mateo County, including the unlawful sale of unregistered securities into this County. In addition, defendants are located and/or conduct business in this County, significant events that led to the sale of unregistered securities occurred in this County, and documents and witnesses are located in this County, or can be found in this County. For example, Ripple raised proceeds from, and is backed by venture capital firms, such as Andreessen Horowitz, which is located in this County, has solicited and sold XRP to investors located in this County, and is run by defendant Garlinghouse, who lives in this County.

9.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mail, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

10.      Plaintiff Vladi Zakinov is a citizen of California, who purchased the XRP promoted and sold by defendants, which was not registered as a security by defendants and was not subject to any exemption from registration.

1       11.     Plaintiff David Oconer is a citizen of California, who purchased the XRP promoted and

2    sold by defendants, which was not registered as a security by defendants and was not subject to any

3    exemption from registration.

4       12.     Defendant Ripple has its principal place of business in San Francisco, California.  Ripple

5    created and sold XRP, through XRP II, and solicited the purchases of XRP from plaintiffs and the Class

6    (defined herein) for its own benefit and the benefit of its executives and owners, such as defendant

7    Garlinghouse.

8       13.     Defendant XRP II has its principal place of business in San Francisco, California.  XRP

9    II sold XRP and solicited the purchases of XRP from plaintiffs and the Class for its own benefit and the

10    benefit of its parent, Ripple, and its executives and owners, such as defendant Garlinghouse.

11       14.     Defendant Garlinghouse is the CEO of the Company.  He is a resident of California and

12    lives in Atherton, California.  Garlinghouse orchestrated the sale of XRP by Ripple and XRP II and

13    solicited the purchases of XRP from plaintiffs and the Class for his own benefit and the benefit of

14    Ripple.

15       15.     The true names and capacities of defendants sued herein under California Code of Civil

16    Procedure §474 as Does 1 through 25, inclusive, are presently not known to plaintiffs, who therefore

17    sues these defendants by such fictitious names.  Plaintiffs will seek to amend this complaint and include

18    these Doe defendants' true names and capacities when they are ascertained.  Each of the fictitiously

19    named defendants is responsible in some manner for the conduct alleged herein and for the injuries

20    suffered by the Class.

21                             **SUBSTANTIVE ALLEGATIONS**

22    **Ripple Creates XRP**

23       16.     Ripple's primary business involves the operation of an open ledger protocol, payment,

24    and exchange network.  The native cryptocurrency for the Ripple system is the XRP token, which

25    serves as both an investment in the Company (as sales of XRP are used to fund Company operations,

26    with the expectation that these investments will increase the tokens' value) and as a means of exchange

27    promoted by Ripple.  The Ripple system is based around the XRP Ledger.  The XRP Ledger consists of

28    many servers, called nodes, which accept and process transactions.  Client applications sign and send

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

transactions to nodes, which then relay these candidate transactions throughout the network for processing.  Transactions are then verified and become part of the XRP Ledger history through a consensus process.  Every transaction in XRP must be made by and through the XRP Ledger, which is maintained by defendants.  In order to open an account on the XRP Ledger, a user is required by defendants to maintain a minimum account balance of 20 XRP.  Furthermore, each time a transaction in XRP is made, defendants require a transaction cost from the transacting parties.[4]

17.     Unlike cryptocurrencies such as Bitcoin and Ethereum, which are mined by those validating transactions on their networks, Ripple created the 100 billion XRP supply itself.  Twenty billion XRP, or 20% of the total XRP supply, were given to the individual founders of Ripple,[5] with the remaining 80 billion being retained by the Company.  As for the 80 billion XRP held by Ripple, the Company periodically sells XRP from its supply and uses the proceeds from these sales to fund Company operations and improve the XRP ecosystem.  Ripple's founders and other Company insiders have also enriched themselves with their personal XRP fortunes.  In January 2018, Ripple co-founder Chris Larsen was named one of the richest people in the United States, with an estimated net worth of $59.9 billion, primarily due to the increase in value of XRP and his personal ownership of billions of XRP tokens and a significant ownership stake in the Company.[6]

18.     Ripple has been criticized because of the centralized nature of its network for XRP, especially when compared to the networks for other truly distributed cryptocurrencies such as Bitcoin. Ripple demonstrated its control over the XRP ecosystem when, in 2015, it froze the balance of Ripple co-founder McCaleb following an internal dispute.  The ability of Ripple to control the flow of XRP undermines any pretense that the security is not centralized in the Company.  Similarly, in February 2018, a report by BitMEX Research stated that a test of the Ripple system revealed that all five public

---

[4]   The current minimum transaction cost is 0.00001 XRP, although this cost can be increased by defendants.  This feature of XRP transactions benefits defendants because it makes their stockpile of XRP more valuable over time.

[5]   Chris Larsen and Jed McCaleb ("McCaleb") each received 9.5 billion XRP.  Arthur Britto received 1 billion XRP.

[6]   https://www.cnbc.com/2018/01/04/ripple-co-founder-is-now-richer-than-the-google-founders-on-paper.html.

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1  keys used to validate transactions came directly from Ripple, meaning that Ripple was "essentially in

2  complete control of moving the ledger forward."[7]  The report concluded that Ripple's claims that the

3  system was "distributed" could be misleading, as Ripple essentially controlled the XRP Ledger process.

4       19.     Significantly, several major cryptocurrency exchanges have refused to list XRP on their

5  exchanges as a result of Ripple's singular control over the XRP network.  For example, CoinBase, one

6  of the world's largest and most widely used exchanges, has so far refused to list XRP (and even declined

7  Ripple's offer to lend CoinBase more than $100 million worth of XRP in exchange for listing).

8  Although CoinBase has yet to issue an explicit statement explaining its decision to exclude XRP, while

9  simultaneously allowing Bitcoin, Ethereum, and other cryptocurrencies to trade on its exchange,

10  Ripple's centralized control over XRP (and the XRP Ledger) and the large volume of XRP allocated to

11  Ripple and XRP's founders are likely to blame.  Indeed, these characteristics of XRP run contrary to

12  CoinBase's "Digital Asset Framework," which outlines the factors it considers when deciding whether

13  to list a particular cryptocurrency on its exchange.[8]  In addition, as several commentators have

14  observed, CoinBase and other exchanges have likely refused to list XRP recognizing that Ripple's

15  singular control over XRP is likely to draw scrutiny from U.S. regulators who have repeatedly warned

16  exchanges against listing any tokens that may be deemed securities.[9]

17       20.     As the stewards of the XRP ecosystem, defendants' success in developing, promoting,

18  and maintaining the XRP Ledger and other exchange infrastructure is directly related to the value of

19  XRP.  Furthermore, because, *inter alia*: (i) Ripple maintains, controls, and stewards the XRP Ledger,

20  (ii) defendants have the ability to add conditions to transactions in XRP and can unilaterally modify

21

22  [7]  *The Ripple Story*, BitMEX Research (Feb. 6, 2018), https://blog.bitmex.com/the-ripple-story/.

23  [8]  Kieran Smith, *Outcast – Why Coinbase and Others Won't Touch XRP*, Brave NewCoin (Aug. 7,
    2018), https://bravenewcoin.com/insights/outcast-why-coinbase-and-others-wont-touch-xrp; *also*

24  GDAX, GDAX Digital Asset Framework (Nov. 2017), https://pro.coinbase.com/static/digital-asset-
    framework-2017-11.pdf.

25  [9]  Annie Massa, et al., *Ripple Has Tried to Buy Its Way Onto Major Exchanges for Cryptocurrency*,

26  Bloomberg (Apr. 4, 2018), https://www.bloomberg.com/news/articles/2018-04-04/ripple-is-said-to-
    struggle-to-buy-u-s-listing-for-popular-coin; Kieran Smith, *Outcast – Why Coinbase and Others Won't*

27  *Touch XRP*, Brave NewCoin (Aug. 7, 2018), https://bravenewcoin.com/insights/outcast-why-coinbase-
    and-others-wont-touch-xrp.

28

1  elements of the XRP ecosystem; and (iii) each transaction in XRP has a transaction cost set by

2  defendants that benefits defendants, each transaction in XRP involves a transaction directly with

3  defendants.

4  **Ripple Updates XRP**

5      21.     Ripple is constantly changing and seeking to improve the XRP network.  These changes

6  have decreased transaction times and improved system security, compatibility, use cases and other

7  features of XRP.  At the same time, Ripple has released new "white papers" touting these upgrades and

8  proposed upgrades to the cryptocurrency and its exchange network.  For example, Ripple released a

9  white paper in February 2016 following a series of upgrades with the subtitle "The ROI of Using Ripple

10  and XRP for Global Interbank Settlements."[10]  "ROI" stands for "return on investment," and the paper

11  discussed at length the purported value of using XRP, compared to other systems.

12      22.     One of the most significant changes to the XRP ecosystem occurred in the latter half of

13  2015.  In May 2015, regulatory authorities in the United States fined Ripple and XRP II $700,000 for

14  "willfully" violating the Bank Secrecy Act by selling XRP without obtaining the required authorization.

15  The failure to properly register as a money services business, or "MSB," exposed XRP for use by

16  money launderers, criminals and other suspicious actors.  As part of the settlement, defendants agreed to

17  a number of remedial measures, including registration with FinCEN within 30 days of the agreement

18  and to secure customer identification information within 180 days of the agreement.  In the subsequent

19  months, Ripple updated the XRP network and ecosystem to comply with the settlement agreement.  In

20  October 2015, Ripple underwent a rebranding after which it purported to fulfill its obligations under the

21  settlement agreement.

22      23.     Another key development occurred in May 2017, when Ripple announced that it would

23  limit distribution of the remaining 61.68 billion XRP owned by the Company, from its original 80

24  billion XRP allotment.  Ripple stated that it would place 55 billion XRP into a cryptographically

25  secured escrow account, and only offer and sell limited amounts of XRP at defined intervals.  The

26  Company established 55 contacts of 1 billion XRP that allowed it to sell up to 1 billion XRP per month,

27  ---
[10]   https://ripple.com/files/xrp_cost_model_paper.pdf.

28

with any unsold XRP returned to escrow for use in subsequent offerings. The Company stated that it expected the distribution strategy "will result in a strengthening XRP exchange rate against other currencies," and that Ripple's "self-interest is aligned with building and maintaining a healthy XRP market."[11] The fact that the vast amount of existing XRP resides in the control of defendants further demonstrates the high degree of centralization and control defendants maintain over XRP, as they can determine the supply of XRP, which will, in turn impact the price of the security.

24.     Indeed, a primary motivation for limiting the available supply of XRP was to drive price appreciation and allow defendants to maximize profits from XRP sales. The price of XRP increased rapidly following the announcement of the escrow decision, increasing 1,159% during the second quarter of 2017. Ripple's "Q2 2017 XRP Markets Report" listed the escrow announcement as "instrumental in helping to drive XRP interest and volume," and noted the "market responded favorably to the escrow" announcement.[12]

25.     On or about December 7, 2017, Ripple announced that it had followed through with its promise and placed "55 billion XRP in a cryptographically-secured escrow account to create certainty of XRP supply at any given time."[13] The announcement stated:

> By securing the lion's share of XRP in escrow, people can now mathematically verify the maximum supply that can enter the market. While Ripple has proved to be a responsible steward of XRP supply for almost five years – and has clearly demonstrated a tremendous track record of investing in and supporting the XRP ecosystem – this lockup eliminates any concern that Ripple could flood the market, which we've pointed out before is a scenario that would be bad for Ripple![14]

26.     The article contained a button to allow readers to share it on Twitter with the caption "Game changer for $XRP! 55 billion XRP now in escrow."[15] Ripple also promoted this article through

---

[11] https://ripple.com/insights/ripple-to-place-55-billion-xrp-in-escrow-to-ensure-certainty-into-total-xrp-supply/.

[12] https://ripple.com/insights/q2-2017-xrp-markets-report/.

[13] https://ripple.com/insights/ripple-escrows-55-billion-xrp-for-supply-predictability/.

[14] *Id.*

[15] *Id.*

1   its own tweet, which proclaimed: "55B $XRP is now in escrow.  Interested in what this means for

2   $XRP markets?"[16]  Garlinghouse was even more enthusiastic, tweeting: "Boom! 55B $XRP now in

3   escrow.  Good for supply predictability and trusted, healthy $XRP markets.  Glad to finally let this

4   #cryptokitty out of the bag!"[17]

5       27.     Ripple's public commitment to limit the supply of XRP had its intended effect.  In the

6   weeks that followed, the price of XRP rapidly increased, from approximately $0.22 per token on

7   December 7, 2017 to $3.38 per token on January 7, 2018.[18]

8   **Defendants Market XRP to Drive Demand and Increase Price**

9       28.     While publicly touting its xCurrent, xRapid and xVia enterprise solutions (collectively,

10  "Enterprise Solutions"), Ripple's primary source of income is, and has been, the sale of XRP.  Ripple

11  generated over $180 million in gross proceeds through XRP sales in 2017 alone.[19]  Defendants sell

12  XRP on a wholesale basis to larger investors, and also sell significant quantities of XRP directly to

13  retail investors on cryptocurrency exchanges.  According to Ripple, in the first quarter of 2018, "market

14  participants purchased $16.6 million [of XRP] directly from XRP II," and XRP II also "sold $151.1

15  million worth of XRP" on exchanges.[20]

16      29.     Given its reliance on sales of XRP, it is unsurprising that Ripple aggressively markets

17  XRP to drive demand, increase the price of XRP, and, consequently, its own profits.  For example,

18  Ripple has an entire section of its website dedicated to providing advice on "How to Buy XRP."  This

19  section provides links to exchanges and instructions on "how to buy XRP" on those exchanges.[21]  It also

20

21  [16]   https://twitter.com/Ripple/status/938933967956389889.

22  [17]   https://twitter.com/bgarlinghouse/status/938933791145336832?lang=en.

23  [18]   XRP would subsequently lose nearly all its value in just over three months, falling to a low of
24  approximately $0.48 per token on April 6, 2018.

25  [19]   https://www.cnbc.com/2018/01/24/ripple-sold-91-point-6-million-of-digital-currency-xrp-last-
    quarter.html.

26  [20]   Q1 2018 XRP Markets Report, https://ripple.com/insights/q1-2018-xrp-markets-report/.

27  [21]   XRP Buying Guide, https://ripple.com/xrp/buy-xrp/.

28

1    has a section titled "Market Performance" which proclaims that Ripple is "committed to the long term

2    health and stability of XRP markets."[22]

3        30.    Ripple also regularly promotes the availability of XRP on exchanges.  For example, on

4    May 18, 2017, Ripple's Senior Vice-President for Business Development, Patrick Griffin, tweeted a link

5    to the Kraken exchange with the caption: "Kraken Introduces New Fiat Pairs for XRP Trading! USD,

6    JPY, CAD, EUR @Ripple."[23]

7        31.    Similarly, on or about December 21, 2017, Ripple tweeted that XRP was now available

8    on over 50 exchanges.[24]  That tweet linked to an article on Ripple's website which described XRP as

9    "the fastest and most scalable [digital] asset on the market."[25]  The article continued: "The market is

10   taking notice of XRP's speed, reliability and scalability – which has strengthened the demand for XRP

11   and where it's listed.  In fact, we're proud to announce that XRP has gone from being listed on six

12   exchanges earlier this year to more than 50 worldwide."[26]  The article also linked to a number of

13   exchanges where XRP could be purchased, and stated that "XRP's long-term value is determined by its

14   utility – including its ability to help financial institutions source liquidity for payments into and out of

15   emerging markets."[27]

16       32.    Illustrative of defendants' attempts to promote the XRP ecosystem, in 2017, Ripple

17   attempted to pay two of the top cryptocurrency exchanges, Gemini and Coinbase, to secure listing of

18   XRP.  Coinbase and Gemini provide some of the easiest ways for U.S. customers to buy crypto-assets

19   with U.S. dollars.  As a result, being listed on one of these exchanges tends to accelerate demand for,

20   and thus, increase the price of, a crypto-asset.  For example, when Coinbase listed Bitcoin Cash in

---

[22]  Market Performance, https://ripple.com/xrp/market-performance/.

[23]  @patgriffin9, https://twitter.com/patgriffin9/status/865251321867231233.

[24]  @Ripple, https://twitter.com/Ripple/status/943999526783905792.

[25]  XRP Now Available on 50 Exchanges Worldwide, https://ripple.com/insights/xrp-now-available-on-50-exchanges-worldwide/.

[26]  *Id.*

[27]  *Id.*

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1   December 2017, the price of Bitcoin Cash increased nearly three times its trading price relative to other

2   exchanges.

3        33.    Reportedly, Ripple offered to pay $1 million to Gemini in the third quarter of 2017 if it

4   would list XRP.  Similarly, during preliminary talks with Coinbase in the fall of 2017, Ripple said it

5   would be willing to lend the exchange more than $100 million worth of XRP to start letting users trade

6   the token.[28]  On November 29, 2017, Ripple posted a link to a change.org petition to "Get Ripple on

7   CoinBase," with the caption: "The community is mobilizing! [thumbs up emoji]."[29]  Ripple's Senior

8   Vice President of Business Development also tweeted a link to the petition.  According to *Bloomberg*:

9   "By dangling money in front of exchanges, Ripple signaled that its future success hinges in part on

10  getting XRP listed on the top trading venues."[30]

11       34.    In addition, Ripple hosts conferences to generate interest in XRP.  For example, from

12  October 16 to October 18, 2017, the Company hosted a conference named "Swell" in Toronto.  Ripple

13  acknowledged that "[a]nticipation around the event spurred a meaningful spike in XRP, pushing it up

14  100 percent."[31]

15       35.    On December 21, 2017, CoinDesk, a subsidiary of Digital Currency Group, which has an

16  ownership interest in Ripple, published an article titled, "Ripple Price Passes Historic $1 Milestone."[32]

17  This was just one of many instances in which Ripple would promote price movements of XRP.

18       36.    Ripple's promotion of XRP's price continued in December 2017, as the price of XRP

19  climbed over 1,000% in a single month.  In one instance, Ripple's product manager of the XRP Ledger

20  and xRapid retweeted a tweet exclaiming: "Wow, XRP at all time high!  Forget about bitcoin, *we're all*

---

[28] https://www.bloomberg.com/news/articles/2018-04-04/ripple-is-said-to-struggle-to-buy-u-s-listing-for-popular-coin.

[29]   https://twitter.com/ripple/status/935923310080045056?lang=en.

[30]   https://www.bloomberg.com/news/articles/2018-04-04/ripple-is-said-to-struggle-to-buy-u-s-listing-for-popular-coin.

[31]   Q3 2017 XRP Markets Report, https://ripple.com/xrp/q3-2017-xrp-markets-report/.

[32]   Daniel Palmer, *Ripple Price Passes Historic $1 Milestone*, CoinDesk (Dec. 21, 2017) https://www.coindesk.com/ripple-price-passes-historic-1-milestone/.

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1    *in on XRP!*"[33]  This same manager later tweeted: "So glad I doubled down.  Since I joined @Ripple,

2    $XRP now at $1.00 (up 17,141.37%)...."[34]

3         37.    Ripple's CEO, defendant Garlinghouse, has also been a vocal advocate for investing in

4    XRP.  In a December 14, 2017 interview with BNN, when asked if he is "personally invested" in XRP

5    and was "taking profits" on that investment, Garlinghouse stated, "I'm long XRP, *I'm very, very long*

6    *XRP* as a percentage of my personal balance sheet."[35]  He continued, stating that he is "not long some

7    of the other [digital] assets, because it is not clear to me what's the real utility, what problem are they

8    really solving."[36]  He ended by reiterating, "if you're solving a real problem, if it's a scaled problem,

9    then I think you have a huge opportunity to continue to grow that."[37]  Later that same day, Garlinghouse

10   tweeted: "Bloomberg welcomes $XRP to @theterminal and gets it right – #2 market cap behind $BTC

11   at ~$80B!"[38]

12        38.    About a week later, on or about December 22, 2017, Garlinghouse tweeted an article

13   titled "Bitcoin Is So 2017 as Ripple Soars at Year End," with the caption "I'll let the headline speak for

14   itself.  $xrp."[39]

15        39.    Similarly, on or about January 17, 2018, Garlinghouse tweeted a link to a *CNBC* article

16   titled "Ripple is sitting on close to $80 billion and could cash out hundreds of millions per month – but

17   it isn't," with the caption: "A good read on why fostering a healthy $XRP ecosystem is a top priority at

18   @Ripple."[40]

19

20   _____

     [33]  @warpaul, https://twitter.com/yoshitaka_kitao/status/940785785925709829.

21   [34]  https://twitter.com/warpaul/status/943766056710975490.

22   [35]  Interview available at https://twitter.com/jonerlichman/status/941354964227522561?lang=en.

23   [36]  *Id.*

24   [37]  *Id.*

25   [38]  @bgarlinghouse, https://twitter.com/bgarlinghouse/status/941375649549246464.

26   [39]  @bgarlinghouse, https://twitter.com/bgarlinghouse/status/944325730338357248.

27   [40]  https://twitter.com/bgarlinghouse/status/953676992313872384?lang=en.

28

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

40.     However, the reality was that Ripple was profiting by selling to investors from its massive store of XRP. In 2017 alone, Ripple sold more than $180 million worth of XRP. These sales accelerated in the first quarter of 2018, reaching $151.1 million in just three months.

41.     Recently, Ripple's efforts to aggressively market and drive demand for XRP have bled into politics. In September 2018, Ripple and several other cryptocurrency companies with links to Ripple announced the founding of an advocacy group dubbed "Securing America's Internet of Value Coalition."[41] The Coalition announced that it retained The Klein/Johnson Group, a prominent Washington D.C. based lobbying firm, who is expected to help the Coalition in its efforts to lobby Congress and the SEC on issues critical to Ripple's bottom-line, including whether XRP is a security subject to SEC regulation.[42] For their expertise, the Klein/Johnson Group will receive $25,000 and 10,000 XRP tokens per month from the Coalition. Commenting on the decision to pay their lobbyists in XRP, Chris Larsen, Ripple's executive chairman explained: "It gives them some upside and gives them some risk ... Hopefully it gives them a taste of the industry in a way that hits home."[43]

**The Price of XRP Is Directly Tied to Ripple's Business and Operations**

42.     The Company's primary source of revenue is the periodic sale of XRP to investors. The price for XRP, in turn, is directly tied to the managerial skills and efforts of Ripple, XRP II, Garlinghouse, and other third parties who they employ, or with whom they are associated. Ripple regularly promotes its improvements to the XRP ecosystem, which are intended to increase demand for XRP and thus potential returns for XRP investors. For example, in describing the reasons behind the dramatic price appreciation of XRP during the fourth quarter of 2017, Ripple specifically cited as of "particular importance," the Company's various business initiatives, including: (i) Ripple's partnership with American Express/Santander; (ii) Ripple's activation of the previously discussed escrow of XRP to limit periodic offers and distributions; and (iii) a Japanese/Korean banking consortium backed by the

---

[41]   https://www.coindesk.com/new-ripple-led-advocacy-group-to-pay-lobbyists-in-xrp/.

[42]   https://www.bloomberg.com/news/articles/2018-09-27/cryptocurrency-coalition-to-pay-d-c-lobbyists-in-digital-coins.

[43]   *Id.*

1    Company.[44]  In the report, Ripple stated that its "consistent and steadfast support of XRP is a major

2    advantage as the payments industry continues to seriously consider it as an alternative liquidity

3    solution."[45]  The centralized nature of XRP compared to other cryptocurrencies further cements the

4    central role of defendants in determining the future expected value of the asset.

5           43.     Defendants' white papers, advertising and social media postings also conflate adoption

6    and use of Ripple's Enterprise Solutions businesses with adoption and use of XRP.  Although ostensibly

7    separate, the two business segments are very much interrelated, because adoption of Ripple's Enterprise

8    Solutions by various institutional actors is likely to increase the use and demand for XRP.  For example,

9    the Company's xRapid infrastructure solution uses XRP, which Ripple states will "dramatically lower

10   costs while enabling real-time payments in emerging markets."[46]  Similarly, a November 2015 white

11   paper by the Company highlighted "XRP's Role on Ripple and in the Internet of Value" and how the

12   Company's technologies could turn a "Spark to a Wildfire" by increasing liquidity and efficiencies for

13   cross-border transactions for the Company's banking clients.[47]  A February 2016 white paper followed

14   up on those purported "network effects," claiming that the use of the Ripple network and XRP would

15   increase banks' returns on investment by improving the global payment infrastructure.[48]  Moreover,

16   Ripple promotes XRP and xRapid to its existing Enterprise Solutions customer base and can increase

17   the use of these products through cross-selling.  Ripple has explicitly stated that this is part of its

18   business strategy.[49]  As XRP can be used to transact on xRapid, and the same customers that may adopt

19

20   [44]   Q4 2017 XRP Markets Report, https://ripple.com/insights/q4-2017-xrp-markets-report/.

21   [45]   *Id.*

22   [46]   https://ripple.com/solutions/source-liquidity/.

23   [47]   https://ripple.com/files/ripple_vision.pdf.

24   [48]   https://ripple.com/files/xrp_cost_model_paper.pdf.

25   [49]   *E.g.*, https://ripple.com/insights/much-ado-much-to-do-part-3/("While no xCurrent customers today

26   use xRapid, we're increasingly speaking to them about their liquidity challenges and xRapid at their
     request....  As long as we continue to run xRapid pilots as successful as Cuallix's, we believe we'll drive

27   a lot of payments volume through XRP in the years ahead.").

28

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

Ripple's Enterprise Solutions overlap with potential institutional users and facilitators of XRP, the success of Ripple's overall business and operations is directly correlated to the price of XRP.

44.     Articles such as "Ripple XRP price picks up pace as demand for xVia API increases" have made the direct connection between the price of XRP and the adoption of the Company's Enterprise Solutions.[50]   Ripple itself has made this link, for example tweeting on May 16, 2017: "The appeal that Ripple has towards traditional financial institutions is a big advantage it has over Bitcoin."[51]

45.     Similarly, on June 29, 2017, Ripple tweeted a clip of an interview Garlinghouse gave on *CNBC* with the caption: "#XRP – up 4000% this year – has shown the market favors a real use case for #digitalassets...."[52]   For that interview, Garlinghouse was quoted as stating, "Digital assets are in a position to be more valuable than gold."[53]

46.     On September 11, 2017, Garlinghouse stated in an interview with CNBC: "People are looking at the success Ripple has been having as a company, *and I think that's increased the value of XRP*."[54]   He continued by stating that Ripple wants "to keep focusing on making XRP a valuable payments tool, and that value will increase accordingly," and he was "voting with my . . . pocketbook on the future increased value of cryptocurrencies,"[55]

47.     On November 27, 2017, Garlinghouse tweeted "Ripple & $XRP are giving businesses 'what they want in a #blockchain,'" along with a link to a Motley Fool tweet.[56]   The linked-to Motley

---

[50]   https://globalcoinreport.com/ripple-xrp-price-picks-up-pace-as-demand-for-xvia-api-increases/.

[51]   @Ripple, https://twitter.com/Ripple/status/864635614020251649.

[52]   @Ripple, https://twitter.com/Ripple/status/880532198025121793.

[53]   https://twitter.com/AkikoFujita/status/880256389213339648.

[54]   https://www.cnbc.com/2017/09/11/ripple-ceo-brad-garlinghouse-on-bitcoin-and-xrp.html.

[55]   *Id.*

[56]   @bgarlinghouse, https://twitter.com/bgarlinghouse/status/935225940845711366.

Fool tweet stated that "AmEx and Banco Santander will use Ripple's blockchain network for instant intl. fund transfers.  Could be a big deal for Ripple's XRP cryptocurrency.  $AXP $SAN."[57]

48.     Likewise, on December 14, 2017, Ripple tweeted: "The Japan Bank Consortium launched a Ripple pilot with two large Korean banks – the first time money moves from Japan to Korea over RippleNet."[58]  On that same day Ripple tweeted "@bgarlinghouse [its CEO's Twitter handle] on why crypto prices will be driven by real utility, the multi-trillion $ problem @Ripple is solving and why $XRP will come out on top."[59]

49.     On January 4, 2018, following XRP's rapid price increase, *The New York Times* published an article titled, "Rise of Bitcoin Competitor Ripple Creates Wealth to Rival Zuckerberg."[60] The author of the article, Nathaniel Popper, tweeted a link to the article with the caption: "On the rise of Ripple.  If this is a tulip fever, the fever has spread to chrysanthemums and poppies."[61]  He further stated in the tweet: "I've asked several people close to banks if banks are indeed planning to begin using Ripple's token, XRP, in a serious way, which is what investors seem to assume when they buy in at the current XRP prices."[62]

50.     Garlinghouse publicly responded to this post, tweeting: "Over the last few months I've spoken with ACTUAL banks and payment providers.  They are indeed planning to use xRapid (our XRP liquidity product) in a serious way."[63]  Garlinghouse then provided a "sampling" of feedback he had purportedly received from these institutions praising XRP and xRapid.  This feedback implicitly justified the market price and investment opportunity for XRP, including:

---

[57]   @themotleyfool, https://twitter.com/themotleyfool/status/934850515640471553.

[58]   @Ripple, https://twitter.com/Ripple/status/941501026267316224.

[59]   @Ripple, https://twitter.com/Ripple/status/941352005058011137.

[60]   Nathaniel Popper, *Rise of Bitcoin Competitor Ripple Creates Wealth to Rival Zuckerberg*, N.Y. Times, Jan. 4, 2018, https://www.nytimes.com/ 2018/01/04/technology/bitcoin-ripple.html.

[61]   @nathanielpopper, https://twitter.com/bgarlinghouse/status/949129952716234752.

[62]   *Id.*

[63]   *Id.*

- "We ran the costs on our end and see that this is 100% more efficient that [sic] what we're doing now."

- "The xRapid pilots all went perfectly."

- "This is much more efficient than our process today.  We'd like to move forward with xRapid today."

- "We've already used Bitcoin in transactions but the time is causing slippage and costing more to transfer.  We'd like to use xRapid and XRP to help with these issues."

- "This [XRP] is a much more efficient way to send money across borders than what we typically use today.  Especially as Bitcoin has continued to slow and become more expensive."

- "There's plenty of small to medium sized banks out there that are hit hard by fees. They'd jump at the opportunity to send money directly and bypass those fees [using XRP]."[64]

**Defendants Acknowledge that Development of the XRP Ledger Is Dependent on Their Technical, Entrepreneurial, and Managerial Efforts**

51.    As alleged herein, defendants have repeatedly acknowledged the obvious: development of the XRP Ledger and the potential profits that could be derived from investing in XRP, depends on their technical, entrepreneurial and managerial efforts.

52.    Indeed, Ripple publishes a quarterly report detailing its efforts to grow the "XRP ecosystem."[65] In the report for the second quarter of 2017, Ripple stated: "We plan to focus on three areas of liquidity development as we drive XRP towards its natural position as the digital asset standard for international value transfer."[66]  The report continues: "Most importantly, we are accelerating the pace of our investment in the XRP Ledger to build on its speed, uptime, and scalability, to ensure XRP is the most trusted enterprise-grade digital asset."[67]

---

[64]  *Id.*

[65]  Announcing the Quarterly XRP Market Operations Report, https://ripple.com/insights/announcing-quarterly-xrp-market-operations-report/.

[66]  Q2 2017 XRP Markets Report, https://ripple.com/insights/q2-2017-xrp-markets-report/.

[67]  *Id.*

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

53.     Three months later, in describing its goals for the fourth quarter of 2017, Ripple proclaimed it would "continue to expand [its] xRapid partnerships." [68]  The report stated that Ripple's "long-term goal is, and always has been, usage of XRP as a liquidity solution for more and more corridors, and partnerships are key to achieving this goal."[69]

54.     Similarly, in January 2018, Ripple touted "a partnership with MoneyGram – one of the world's largest money transfer companies – to use xRapid and XRP for near real-time cross-border payments.  In addition, there are a number of other xRapid deals at various stages of completion in the pipeline."[70]  The Company also stated that it wanted "to build the necessary markets infrastructure for eventual direct usage of XRP by financial institutions."[71]  Garlinghouse commented on this partnership, stating "And to be clear: @MoneyGram announcement is one step in a marathon ahead to truly make $XRP the global liquidity solution for payment providers and banks."[72]  These are illustrative of the many instances in which defendants have acknowledged their own role in promoting the market for XRP, and the ways in which the future expected value of XRP is dependent on their own efforts.

55.     In addition, defendants, and Ripple in particular, are responsible for maintaining the XRP Ledger.  Unlike cryptocurrencies such as Bitcoin and Ethereum, which use a Proof of Work ("PoW") consensus mechanism to verify the legitimacy of transactions on the network, the XRP Ledger relies on trusted nodes, operated by Ripple, to verify the legitimacy of transactions and maintain agreement on the network.  The PoW mechanism utilized by Bitcoin and Ethereum helps to ensure the network is decentralized by allowing anyone to use their own hardware and electricity to run the PoW consensus algorithm to verify transactions on the public ledger, and send them to be recorded throughout the blockchain.  The network's decision-making process is thus placed entirely in the hands

---

[68]   Q3 2017 XRP Markets Report, https://ripple.com/xrp/q3-2017-xrp-markets-report/.

[69]   *Id.*

[70]   Q4 2017 XRP Markets Report, https://ripple.com/insights/q4-2017-xrp-markets-report/.

[71]   *Id.*

[72]   @bgarlinghouse, https://twitter.com/bgarlinghouse/status/951461582424358912.

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1  of those who run the consensus algorithm, with their own hardware and electricity, rather than any one

2  entity or individual.

3        56.    The XRP Ledger consensus protocol, by contrast, relies on "trusted nodes" on Ripple's

4  Unique Node Lists ("UNL").  The UNL is the set of trusted nodes that communicate "reliable"

5  information to other nodes on the XRP Ledger.  Like miners in Bitcoin and Ethereum, these "trusted

6  nodes" validate transactions.  However, unlike those miners, the trusted nodes are either selected, or

7  controlled, by Ripple itself.  Ripple provides its own default and recommended UNL – comprised of

8  only five Ripple-hosted nodes.  Although Ripple claims it plans to decentralize the network, it admits

9  that it will only remove its own "trusted nodes" if it decides that other validator nodes are reliable,

10  reputable, stable and secure.[73]  Ripple's view of decentralization of the XRP Ledger still involves

11  Ripple maintaining full control over the XRP Ledger, and deciding who owns and operates any third-

12  party "trusted nodes."

13        57.    In February 2018, BitMEX Research, a blockchain research group, installed and ran a

14  copy of Rippled (the software that allows users to run nodes on the XRP Ledger).[74]  According to

15  BitMEX Research, "[t]he node operated by downloading a list of five public keys from the server

16  v1.ripple.com."[75]  The report continued: "The software indicates that four of the five keys are required

17  to support a proposal in order for it to be accepted [on the XRP Ledger]."[76]  However, "[a]ll five keys

18  are assigned to Ripple.com."[77]  BitMEX Research concluded that "[s]ince the keys were all downloaded

19  from the Ripple.com server, ***Ripple is essentially in complete control of moving the ledger forward***, so

20

---

21  [73]   Rome Reginelli, *Decentralization Strategy Update* (Oct. 17, 2017), https://ripple.com/dev-

22  blog/decentralization-strategy-update/; Stephan Thomas, *How We Are Further Decentralizing the XRP*

23  *Ledger to Bolster Robustness for Enterprise Use*, https://ripple.com/insights/how-we-are-further-decentralizing-the-ripple-consensus-ledger-rcl-to-bolster-robustness-for-enterprise-use/.

24  [74]  *The Ripple Story*, BitMEX Research (Feb. 6, 2018) https://blog.bitmex.com/the-ripple-story/.

25  [75]  *Id.*

26  [76]  *Id.*

27  [77]  *Id.*

28

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

one could say **the system is centralized**."[78]   As a result, BitMEX Research found that "the Ripple

system appears for all practical purposes to be centralized and is therefore perhaps devoid of any

interesting technical characteristics, such as censorship resistance, which coins like Bitcoin may

have."[79]

58.     Ripple's control over the XRP Ledger and the flow of XRP was put on dramatic display

in 2015, when it exerted this control to freeze the sale of approximately 96 million XRP, worth about $1

million at the time, by Company co-founder McCaleb.  Ripple received heavy criticism for the incident.

As noted by one cryptocurrency blog: "This incident is a reminder of the fact that despite its constant

portrayal as a semi-decentralized currency, there's a lot of control that can be exercised upon your XRP

by the company!"[80]

59.     As additional indications of centralization and control over every XRP transaction,

Ripple is continuously updating the Ripple ecosystem.  The implementation of gateway freezes, such as

the one used to freeze McCaleb's attempted XRP sale, is one example of an XRP system update by

Ripple, which the Company activated in August 2014.

60.     Ripple's XRP product manager, Warren Paul Anderson ("Anderson"), frequently markets

the XRP Ledger's dependence on Ripple's continued commitment to it.  For example, on December 14,

2016, he tweeted: "Thrilled to have the rippled team in town for a summit to discuss the future of

@Ripple Consensus Ledger & XRP as a native digital asset!"[81]   Approximately a year later, in

December 2017, he retweeted his earlier statement, saying "It's that time of year again, and what a year

it's been! #XRP Ledger (rippled) core developers in town @Ripple for a summit to discuss planning for

2018."[82]  Later that same day, Anderson posted a picture of Ripple engineers with the caption: "A great

---

[78]   *Id.*

[79]   *Id.*

[80]   https://cryptocrimson.com/news/ripple-freezes-bitstamp-funds-co-founder.

[81]   @warpaul, https://twitter.com/warpaul/status/809047284717469696.

[82]   @warpaul, https://twitter.com/warpaul/status/940970970759573505.

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1   day of reflection & planning @Ripple w/ the greatest C++ engineering team in the world #XRP."[83]  On

2   that same day, Ripple's head of cryptography tweeted: "Today, all the $XRP Ledger developers at

3   @Ripple are in SF to reflect on 2017 and plan for 2018."[84]

4          61.    Later in the month, on December 29, 2017, a Ripple software engineer, Nik Bougalis

5   ("Bougalis"), tweeted: "I've been working on code review for the last couple days.  Excited to get

6   rippled 0.90.0 out the door,"[85] indicating that Ripple was working to launch a new version of Rippled

7   and thereby advance the XRP Ledger.  Following, Ripple's release of a Rippled upgrade, Bougalis

8   tweeted: "The @Ripple C++ team has released rippled 0.90.0.  Cool new features: history sharding,

9   deposit authorizations, checks and more!"[86]

10          62.    On March 5, 2018, Bougalis similarly reposted a tweet defending investing in XRP by

11   stating, "So you'd invest in Linux, not Microsoft.  In UseNet, not Google.  In MySQL, not Oracle.

12   Good luck with your portfolio.  ***Ripple is the next Google***.  You're stuck in the silly idea that ***a***

13   ***company can't build a digital asset, even when it does this right under your nose***," with the caption:

14   "Now that's a mic drop, if I've ever seen one."[87]  In other words, as acknowledged by Ripple's own

15   employees, the value of XRP is tied directly to the security's centralization in Ripple and the business,

16   operations, success and prospects of the Company.

17   **XRP Is a Security**

18          63.    The sale of XRP involved an offer and sale of securities under applicable law.

19   Defendants indiscriminately made the offer to sell XRP to the public, and defendants used the proceeds

20   raised from the sale of XRP to fund the operations of Ripple and development of the XRP ecosystem.

21   Ripple acknowledges that it "sells XRP to fund its operations and promote the network.  This allows

---

23   [83] @warpaul, https://twitter.com/warpaul/status/941087297360994304.

24   [84] @JoelKatz, https://twitter.com/JoelKatz/status/940974743733153792.

25   [85] @nbougalis, https://twitter.com/nbougalis/status/946829572145741824.

26   [86] @nbougalis, https://twitter.com/nbougalis/status/966106932925882368.

27   [87] @nbougalis, https://twitter.com/nbougalis/status/970733741319503872.

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1  Ripple Labs to have a spectacularly skilled team to develop[] and promote the Ripple protocol and

2  network."[88]  Similarly, Garlinghouse has conceded that Ripple's "self-interest is aligned with building

3  and maintaining a healthy XRP market."[89]

4       64.    XRP, despite its name as a "token," is actually a security under California law.   In

5  particular: (i) Ripple uses the funds it raised from the sale of XRP to fund its business ventures; (ii) the

6  Company indiscriminately offers XRP for sale to the public at large; (iii) plaintiffs and the Class (as

7  defined herein) are effectively powerless to control the success of Ripple and XRP; and (iv) plaintiffs

8  and the Class members' investment is substantially at risk, and is without any security.

9       65.    Plaintiffs and the Class invested in XRP as a common enterprise with the expectation of

10  profits derived solely from the efforts of Ripple and its employees.  Plaintiffs and the Class used fiat

11  and other digital currencies, such as Bitcoin and Ethereum, to purchase XRP.  The expected profits and

12  returns on these investments are directly intertwined with the business and operations of Ripple.  Ripple

13  acknowledges that it "sells XRP to fund its operations and promote the network.  This allows Ripple

14  Labs to have a spectacularly skilled team to develop and promote the Ripple protocol and network."[90]

15  Similarly, Garlinghouse has conceded that Ripple's "self-interest is aligned with building and

16  maintaining a healthy XRP market."

17       66.    The success of XRP and the development of the XRP ecosystem is uniquely centralized

18  in Ripple.  The Company created the XRP Ledger and all 100 billion XRP in existence, and concedes

19  that it "sells XRP to fund its operations and promote the network," in order "to have a spectacularly

20

21

22

[88]  Ripple    credits,    https://wiki.ripple.com/Ripple_credits#XRP_funds_the_development_and_
23  promotion_of_the_protocol_and_the_network.

24  [89]  Brad Garlinghouse, *Ripple to Place 55 Billion XRP in Escrow to Ensure Certainty of Total XRP*
25  *Supply* (May 16, 2017), https://ripple.com/insights/ripple-to-place-55-billion-xrp-in-escrow-to-ensure-
certainty-into-total-xrp-supply/.
26
[90]  Ripple    credits,    https://wiki.ripple.com/Ripple_credits#XRP_funds_the_development_and_
27  promotion_of_the_protocol_and_the_network.

28

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

skilled team to develop[] and promote the Ripple protocol and network."[91]  As of May 6, 2018, Ripple held over 60.8 billion XRP – more than 60% of the XRP in existence.[92]

67.    In addition, Ripple directly influences the supply of XRP by locking more than half the supply of XRP in escrow to provide "supply predictability and trusted, healthy $XRP markets."[93] Ripple exercises near complete control over the XRP Ledger itself.  As noted by BitMEX Research, "Ripple is essentially in complete control of moving the ledger forward, so one could say the system is centralized [sic]."[94]  Ripple touts its control over the XRP Ledger as an advantage for XRP, contending that governance "may be where XRP most significantly distinguishes itself [from Bitcoin, Ethereum, and Litecoin] going forward."[95]  Similarly, it has stated that "[b]uilding pivotal infrastructure on top of technology that does not have clear governance is not palatable for large established companies."[96]

68.    Defendants themselves have recognized that XRP investors have a reasonable expectation of profits derived from defendants' efforts to improve the XRP ecosystem, and have publicly touted XRP's price performance on numerous occasions, as detailed herein.  Ripple's website even contains an "XRP Buying Guide" that provides links to exchanges and instructions on "How to Buy XRP" on those exchanges.[97]  Furthermore, Ripple has taken steps to promote XRP in an attempt to increase the token's price or to justify its price appreciation, and the Company has issued a white paper touting XRP's purported "ROI."  Garlinghouse and other Ripple employees have publicly stated that they are bullish investors on XRP.

---

[91]   *Id.*

[92]   Market Performance, https://ripple.com/xrp/market-performance/ (last visited May 23, 2018).

[93]   Q4 2017 XRP Markets Reports, https://twitter.com/bgarlinghouse/status/938933791145336832?lang=en.

[94]   *The Ripple Story*, BitMEX Research (Feb. 6, 2018), https://blog.bitmex.com/the-ripple-story/.

[95]   Q4 2017 XRP Markets Report, https://ripple.com/insights/q4-2017-xrp-markets-report/.

[96]   *Id.*

[97]   XRP Buying Guide, https://ripple.com/xrp/buy-xrp/.

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

69.     Similarly, Ripple and its CEO have acknowledged that the value of XRP will be driven by the XRP Ledger's usefulness in solving cross-border payments and its adoption by institutions. Defendants have similarly touted adoption of Ripple's Enterprise Solutions, which are directly correlated with the use case and likely value of XRP.  Indeed, in a lawsuit between Ripple against R3 LRC LLC, a company "focused exclusively on developing a next generation financial transaction network ... based on distributed ledger technology," Ripple confirmed the correlation between the adoption of the Ripple network and the market value of XRP, alleging that the Ripple/R3 relationship would benefit Ripple through access to R3's "many banking contacts, and in turn, R3 could reap the financial benefits of Ripple's success – through both the Option Contract [R3 received the option to purchase 5 billion XRP] and other compensation outlined in the agreements."[98]

70.     In addition, defendants have pooled XRP investments to fund projects to promote the XRP Ledger and interledger protocol, thereby increasing the value of the XRP Ledger and XRP.  For example, on April 11, 2018, Ripple announced that it had "invested $25 million in XRP to Blockchain Capital Parallel IV, LP," to "support and develop additional [XRP] use cases beyond payments."[99] Ripple's Senior Vice President of Business Development promoted this investment, tweeting: "Ripple's $25 million investment in @blockchaincap's new fund is the first and not the last contribution to ventures that further develop the #blockchain and $XRP ecosystems."[100]

71.     Plaintiffs and the Class have entirely passive roles vis-à-vis the success of the XRP Ledger and XRP.  In fact, while Ripple promotes its payment network to banks and other financial institutions to "process their customers' payments anywhere in the world instantly, reliably and cost-effectively," the technology is unrelated to an investment in XRP.  Rather, as defendants' own marketing makes clear, the profits reasonably expected to be derived from investing in XRP are solely

---

[98]  *R3 Holdco LLC v. Ripple Labs, et al.*, C.A. No. 2017-0652-JRS, Defendants' Opening Brief in Support of Motion to Dismiss, or in the Alternative, to Stay (Del. Ch. filed Sept. 25, 2017).

[99]  *Ripple Invests $25 Million to Drive Innovation in Blockchain and Digital Assets*, https://ripple.com/insights/ripple-invests-25-million-to-drive-innovation-in-blockchain-and-digital-assets/.

[100]  @patgriffin9, https://twitter.com/Ripple/status/984061347078987776.

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1  dependent on the technical, entrepreneurial, and managerial efforts of defendants and their agents and

2  employees.  Plaintiffs and the Class reasonably expected defendants to provide significant managerial

3  efforts, to develop and improve the XRP Ledger, to develop and sustain a supportive network, and to

4  secure exchanges through which XRP can be exchanged.  Defendants repeatedly represented that they

5  would provide significant managerial efforts to achieve these objectives and make the XRP ecosystem a

6  success.  The purchase of XRP is thus an investment in a common enterprise, with an expectation of

7  profits, solely from the efforts of defendants and their affiliates.

8  **Recent SEC Guidance Undermines Ripple's Denials**

9      72.     Ripple has long claimed that XRP is not a security.  As recently as April 12, 2018,

10  Ripple's Chief Marketing Strategist told *CNBC* in an interview: "We absolutely are not a security.  We

11  don't meet the standards for what a security is based on the history of court law."[101]  Instead, Ripple

12  claims that XRP is a commodity, such as gold.  Purchasers of XRP did not have any reason to challenge

13  these contentions from the Company, given the unclear state of regulation and quickly evolving and

14  unchartered landscape of blockchain technologies.  This state of affairs has only recently changed, as

15  regulators have begun to provide clarifying guidance that undermines defendants' denials, and the

16  centralized nature of XRP in Ripple has become more apparent.

17     73.     In July 2017, U.S. Securities and Exchange Commission ("SEC") began to question the

18  legality of unregistered token sales, such as the sales of XRP, and made clear that sellers of unregistered

19  securities cannot evade their obligations under the federal securities laws by elevating form over

20  substance.  On July 23, 2017, the SEC issued an "Investor Alert," which stated that the agency was

21  "concerned that the rising use of virtual currencies in the global marketplace may entice fraudsters to

22  lure investors into Ponzi and other schemes in which these currencies are used to facilitate fraudulent,

23  or simply fabricated, investments or transactions."[102]  The release warned that "the fraud may also

24

---

25  [101]  Kate Rooney, *Ripple says its cryptocurrency XRP is not a security*, CNBC (Apr. 12, 2018),
26  https://www.cnbc.com/2018/04/12/ripple-says-its-cryptocurrency-xrp-is-not-a-security.html.

27  [102]  *Investor Alert: Ponzi Schemes Using Virtual Currencies*, https://www.sec.gov/investor/alerts/ia_
    virtualcurrencies.pdf.

28

involve an unregistered offering or trading platform" and promises of "high returns for getting in on the ground floor of a growing Internet phenomenon."[103]

74. On July 25, 2017, the SEC released an "Investor Bulletin" on ICOs. The bulletin stated that digital blockchain currencies "may be securities" under the facts and circumstances, and that such "virtual coins or tokens in an ICO *are subject to the federal securities laws*."[104] The release continued in pertinent part:

> A virtual currency is a digital representation of value that can be digitally traded and functions as a medium of exchange, unit of account, or store of value. Virtual tokens or coins may represent other rights as well. Accordingly, in certain cases*, the tokens or coins will be securities and may not be lawfully sold without registration with the SEC or pursuant to an exemption from registration*.

75. That same day, the SEC issued an investigative report concluding that the tokens issued by a blockchain and distributed ledger organization known as "The Dao" were, in fact, securities. The press release announcing the report stated that, "issuers of distributed ledger or blockchain technology-based securities *must register offers and sales of such securities unless a valid exemption applies*" and that those organizing unregistered offerings "may be liable for violations of the federal securities laws."[105] In the case of The Dao, the SEC found that even though the organization labeled its tokens as something other than securities, the virtual currency was subject to the registration requirements of the federal securities laws as, in economic substance, it was a security.

76. On December 11, 2017, SEC Chairman Jay Clayton ("Clayton") issued another statement on digital tokens. He confirmed that "[m]erely calling a token a 'utility' token or structuring it to provide some utility does not prevent the token from being a security," and warned security offerors

---

[103] *Id.*

[104] *See Investor Bulletin: Initial Coin Offerings*, https://www.sec.gov/oiea/investor-alerts-and-bulletins/ib_coinofferings.

[105] *See SEC Issues Investigative Report Concluding DAO Tokens a Digital Asset, Were Securities*, https://www.sec.gov/news/press-release/2017-131.

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

that attempts to "elevate form over substance" could not obviate their obligations under the federal securities laws.[106]  Clayton continued in pertinent part:

> *[C]ertain market professionals have attempted to highlight utility characteristics of their proposed initial coin offerings in an effort to claim that their proposed tokens or coins are not securities.  Many of these assertions appear to elevate form over substance.  Merely calling a token a "utility" token or structuring it to provide some utility does not prevent the token from being a security.*  Tokens and offerings that incorporate features and marketing efforts that emphasize the potential for profits based on the entrepreneurial or managerial efforts of others continue to contain the hallmarks of a security under U.S. law.  On this and other points where the application of expertise and judgment is expected, I believe that gatekeepers and others, including securities lawyers, accountants and consultants, need to focus on their responsibilities.  I urge you to be guided by the principal motivation for our registration, offering process and disclosure requirements: investor protection and, in particular, the protection of our Main Street investors.
>
> \* \* \*
>
> [M]any token offerings appear to have gone beyond this construct and are more analogous to interests in a yet-to-be-built publishing house with the authors, books and distribution networks all to come.  *It is especially troubling when the promoters of these offerings emphasize the secondary market trading potential of these tokens.  Prospective purchasers are being sold on the potential for tokens to increase in value – with the ability to lock in those increases by reselling the tokens on a secondary market – or to otherwise profit from the tokens based on the efforts of others.  These are key hallmarks of a security and a securities offering.*
>
> *By and large, the structures of initial coin offerings that I have seen promoted involve the offer and sale of securities and directly implicate the securities registration requirements and other investor protection provisions of our federal securities laws.*  Generally speaking, these laws provide that investors deserve to know what they are investing in and the relevant risks involved.

77.     Clayton could have been referring directly to Ripple and defendants' attempts to tout the profit-making potential of investing in XRP tokens on the one hand, while disclaiming any responsibilities to comply with applicable securities laws on the other.  The SEC has since launched dozens of investigations into cryptocurrency startups.

78.     For the integrity of the U.S. securities markets, defendants' attempts to circumvent important investor safeguards must fail.  Although cryptocurrencies represent something of a new investing frontier, the old adage rings true: "If it looks like a duck, swims like a duck, and quacks like a

---

[106] *See* Jay Clayton, *Statement on Cryptocurrencies and Initial Coin Offerings*, SEC (Dec. 11, 2017).

duck, then it probably is a duck." Here, XRP has all of the hallmarks of a security, and defendants' substance denial does nothing to diminish their obligations to register these securities under applicable securities laws.

79.     In light of recent SEC statements, and the heavy centralization of XRP in Ripple, there can now be little doubt that XRP tokens constitute securities. Despite this fact, defendants have failed to register the securities in accordance with applicable laws and regulations, before offering and selling them to the investing public. Further, the sale of XRP was not subject to any exemption or exceptions to the registration requirements available under state or federal law. As a result, the offer and sale of XRP was unlawful, and defendants are liable to plaintiffs and the Class as purchasers of XRP as alleged herein.

## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this action as a class action pursuant to §382 of the California Code of Civil Procedure on behalf of a class consisting of all citizens of California who purchased XRP (the "Class"). Excluded from the Class are defendants and their families, the officers, directors and affiliates of the defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

81.     The members of the Class are so numerous that joinder of all members is impracticable. Hundreds of millions of XRP have been sold by defendants. While the exact number of Class members are unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are thousands of members in the proposed Class.

82.     Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

83.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel, who is competent and experienced in class and securities litigation.

84.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     whether defendants violated the Corporations Code;

        (b)     whether XRP are securities;

        (c)     whether XRP were required to be registered under applicable laws;

        (d)     whether plaintiffs and the Class are entitled to rescind their purchases of XRP; and

        (e)     to what extent the members of the Class have sustained damages and the proper measure of damages.

85.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION

### For Violation of §§25110 and 25503 of the Corporations Code
### Against All Defendants

86.     Plaintiffs repeat and reallege the preceding allegations as if fully set forth herein.

87.     This Cause of Action is brought pursuant to §§25110 and 25503 of the Corporations Code against all defendants.

88.     As detailed herein, XRP is a security.

89.     Defendants failed to qualify XRP with the Commissioner of Corporations and XRP did not qualify for an exemption from registration.

90.     Defendants sold XRP to plaintiffs and the Class, in violation of §25110, which makes it "unlawful for any person to offer or sell in this state any security in an issuer transaction ... unless such sale has been qualified ... or unless such security or transaction is exempted or not subject to qualification."

91.     As such, Garlinghouse and Ripple have participated in the unlawful sale of securities in violation of the Corporations Code, and are liable to plaintiffs and the Class for rescission and/or compensatory damages under §25503.

### SECOND CAUSE OF ACTION

**For Violation of §25504 of the Corporations Code**
**Against Ripple and Garlinghouse**

92.     Plaintiffs repeat and reallege the preceding allegations as if fully set forth herein.

93.     This Cause of Action is brought pursuant to §25504 of the Corporations Code against Ripple and Garlinghouse.

94.     Due to his position within the Company and role, vis-à-vis, the XRP Ledger, ownership interest in and control over Ripple, Garlinghouse acted as a controlling person of Ripple and XRP II within the meaning of §25504 of the Corporations Code as alleged herein. By virtue of his position as CEO and his participation in and/or awareness of Ripple's operations, Garlinghouse had the power to influence and control, and did influence and control, directly or indirectly, the decision-making, relating to the sale of XRP and the failure to register these sales.

95.     Ripple controlled XRP II, as the parent of XRP II, and the various actors responsible for the advancement of the XRP ecosystem. In addition, Ripple controlled Garlinghouse and all of his employees.

96.     Ripple and Garlinghouse also controlled the flow of XRP, the advancement of the XRP Ledger, and the means by which transactions in XRP and the offer and sale of XRP occurred, including their ability to freeze XRP accounts and control the flow of XRP through various exchanges and the other indications of control alleged herein. By virtue of their own acts, and their positions of control and influence, Ripple and Garlinghouse materially aided in the acts and transactions constituting the violations alleged herein.

97.     By virtue of the foregoing, defendants are liable to plaintiffs and the Class as secondary actors under §25504 of the Corporations Code.

1    98.    As such, Garlinghouse and Ripple have participated in an unregistered sale of securities
2    in violation of the Corporations Code, and are liable to plaintiffs and the Class for rescission and/or
3    compensatory damages.

4                              **PRAYER FOR RELIEF**

5    WHEREFORE, plaintiffs pray for relief and judgment, as follows:

6    A.    Determining that this action is a proper class action and certifying plaintiffs as class
7    representatives and plaintiffs' counsel as Lead Counsel;

8    B.    Declaring that XRP is a security and that defendants' unregistered sales of XRP violated
9    applicable law;

10   C.    Awarding compensatory damages in favor of plaintiffs and the other Class members
11   against all defendants, jointly and severally, for all damages sustained as a result of defendants'
12   wrongdoing, in an amount to be proven at trial, including interest thereon;

13   D.    Awarding plaintiffs and the Class their reasonable costs and expenses incurred in this
14   action, including counsel fees and expert fees;

15   E.    Awarding rescission or a rescissionary measure of damages; and

16   F.    Awarding such equitable/injunctive or other relief as the Court may deem just and
17   proper.

18                              **JURY DEMAND**

19   Plaintiffs respectfully request a trial by jury on all issues so triable.

20   DATED:  October 15, 2018                 ROBBINS ARROYO LLP
                                              BRIAN J. ROBBINS
21                                            STEPHEN J. ODDO
                                              ERIC M. CARRINO
22

23                                            _____
                                                    STEPHEN J. ODDO
24
                                              600 B Street, Suite 1900
25                                            San Diego, CA 92101
                                              Telephone: (619) 525-3990
26                                            Facsimile: (619) 525-3991
                                              E-mail: brobbins@robbinsarroyo.com
27                                                    soddo@robbinsarroyo.com
                                                    ecarrino@robbinsarroyo.com
28

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
   & DOWD LLP
BRIAN O. O'MARA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: bomara@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com

Co-Lead Counsel for Plaintiffs

1304785

- 33 -

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

## DECLARATION OF SERVICE

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 600 B Street, Suite 1900, San Diego, California 92101.

2.     That on October 15, 2018, I served the following document(s):

**CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW**

_____     By transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Service List from fax number (619) 525-3991 on this date before 5:00 p.m. The facsimile transmission was reported as complete and without error.

__X__     By placing the document(s) listed above in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

_____     By causing the document(s) listed above to be served by a courier service on the following parties:

_____     By depositing in a box or other facility regularly maintained by FedEx, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, in an envelope designated by the said express service carrier, with delivery fees paid or provided for, addressed to the parties on the attached Service List.

_____     Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I sent the documents described herein to the persons at the e-mail addresses on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

3.     That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this October 15, 2018, at San Diego, California.

KATHERINE B. SCHEELE

- 34 -

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1

**SERVICE LIST**

2

*In re Ripple Labs Inc. Litigation*, **Lead Case No. 18CIV02845**

3

**COUNSEL FOR PLAINTIFFS**

4

Brian J. Robbins
Stephen J. Oddo

5

Eric M. Carrino
ROBBINS ARROYO LLP

6

600 B Street, Suite 1900
San Diego, CA 92101

7

Telephone: (619) 525-3990
Facsimile: (619) 525-3991

8

E-mail: brobbins@robbinsarroyo.com
          soddo@robbinsarroyo.com

9

          ecarrino@robbinsarroyo.com

10

*Co-Lead Counsel for Plaintiffs*

11

12

13

14

Shawn A. Williams
ROBBINS GELLER RUDMAN
    & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com


Brian O. O'Mara
ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: bomara@rgrdlaw.com

*Co-Lead Counsel for Plaintiffs*

15

**COUNSEL FOR DEFENDANTS**

16

Peter B. Morrison
Virginia F. Milstead

17

SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP

18

300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

19

Telephone: (213) 687-5000
Facsimile: (213) 687-5600

20

Email: peter.morrison@skadden.com
          virginia.milstead@skadden.com

21

22

23

24

25

26

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com


Mary Jo White
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
          aceresney@debevoise.com

*Counsel for defendants Ripple Labs Inc., XRP
II, LLC, and Bradley Garlinghouse*

27

28

- 35 -

CONSOLIDATED COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

# EXHIBIT B

1  JOHN T. JASNOCH (CA 281605)
   SCOTT+SCOTT
2  ATTORNEYS AT LAW LLP
   600 W. Broadway, Suite 3300
3  San Diego, CA 92101
   Telephone: 619-233-4565
4  Facsimile: 619-233-0508
   Email:  jjasnoch@scott-scott.com
5
      – and –
6
   THOMAS L. LAUGHLIN, IV
7  RHIANA SWARTZ
   The Helmsley Building
8  230 Park Avenue, 17th Floor
   New York, NY 10169
9  Telephone: 212-223-6444
   Facsimile: 212-223-6334
10 Email: tlaughlin@scott-scott.com
          rswartz@scott-scott.com
11
   *Counsel for Plaintiff*
12

**F I L E D**
**SAN MATEO COUNTY**

JUL 0 3 2018

Clerk of the Superior Court
By _____
          DEPUTY CLERK

FILED BY FAX

13
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
14
                        COUNTY OF SAN MATEO
15
   AVNER GREENWALD, Individually and on          Case No.  **18 C I V 0 3 4 6 1**
16 Behalf of All Others Similarly Situated,
                                                 **CLASS ACTION COMPLAINT FOR**
17                                  Plaintiff,    **VIOLATIONS OF THE SECURITIES ACT**
              v.                                 **OF 1933**
18
   RIPPLE LABS, INC., a Delaware Corporation,    **JURY TRIAL DEMANDED**
19 XRP II, LLC, a South Carolina Limited Liability
   Company, BRADLEY GARLINGHOUSE,
20 CHRISTIAN LARSEN, RON WILL,
   ANTOINETTE O'GORMAN, ERIC VAN
21 MILTENBURG, SUSAN ATHEY, ZOE
   CRUZ, KEN KURSON, BEN LAWSKY,
22 ANJA MANUEL, and TAKASHI OKITA,
23                                Defendants.
24

18 – CIV – 03461
CMP
Complaint
1244161

25
26
27
28
                                    COMPLAINT

Plaintiff Avner Greenwald ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings and commentary, publicly available reports and information, analyst and media reports, and other commentary analysis. Plaintiff's investigation into the matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within the custody and control of, the Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for formal discovery.

## NATURE AND SUMMARY OF ACTION

1. Plaintiff brings this securities class action under §§5, 12(a)(1), and 15 of the Securities Act of 1933 (the "Securities Act") against (1) Ripple Labs, Inc. ("Ripple Labs" or the "Company"); (2) Ripple Labs' wholly owned subsidiary, XRP II, LLP ("XRP II"); and (3) certain of Ripple Labs' controlling senior executives and directors (collectively, the "Individual Defendants"). Plaintiff alleges that Defendants sold unregistered securities to investors in violation of the Securities Act. Defendants are liable in their capacities as issuers, statutory sellers, and/or direct or indirect offerors of XRP.

2. Plaintiff brings this action on behalf of all investors who purchased Ripple tokens ("XRP" or "Ripples") on or after July 3, 2015 and were damaged thereby.

3. XRP qualify as securities under Section 2(a)(1) of the Securities Act, 15 U.S.C. §77b(a)(1). The purchase of XRP constitutes an investment contract as XRP purchasers, including Plaintiff, provided consideration (in the form of fiat, *i.e.*, U.S. dollars or other cryptocurrencies) in exchange for XRP. XRP is in investment in a common enterprise and purchasers reasonably expected to derive profits from their ownership of XRP. Defendants promoted this profit motive as a reason to purchase XRP.

4. No registration statements have been filed with the SEC or have been in effect with respect to the XRP offerings alleged herein.

5.     All 100 billion XRP in existence were created out of thin air by Ripple Labs.[1]   Twenty billion XRP, or 20% of all XRP in existence, were given to the individual founders of Ripple Labs, including Defendant Chris Larsen, and the remaining 80 billion were retained by Ripple Labs.

6.     Defendants have since earned massive profits by selling the retained XRP to the public, without complying with federal securities laws, in what is essentially an ongoing initial coin offering ("ICO").   Like an initial public offering ("IPO"), in an ICO, digital assets are sold to consumers in exchange for legal tender or other cryptocurrencies (most often Bitcoin and Ethereum).

7.     Defendants sell XRP from the retained supply and use the proceeds from the sales to fund Company operations.

8.     In order to increase demand for XRP, and thereby increase the profits derived by selling XRP, Defendants portray XRP as a good investment, solicit sales, express optimistic price predictions, and conflate Ripple Labs' enterprise customer programs with usage and value of XRP.   Ripple Labs greatly increased these efforts to push XRP on the general public in recent years.

9.     These solicitation efforts were conducted by interstate means, as were the sales of XRP.

## JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this action pursuant to the California Constitution, Article VI, §10 and Section 22 of the Securities Act, 15 U.S.C. §77v.   The claims alleged herein arise under §§5, 12(a)(1), and 15 of the Securities Act.   *See* 15 U.S.C. §§77e, 77l, and 77o. Section 22 of the Securities Act, 15 U.S.C. §77v(a), expressly states that "[e]xcept as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."   Section 77p(c) refers to "covered class action[s] brought in any State court involving a covered security, as set forth in subsection (b)," and subsection (b) of §77p in turn includes within its scope only covered class actions "based upon the

---

[1]     This is unlike other cryptocurrencies like Bitcoin and Ethereum that are "mined" by those validating transactions on their networks.

1  statutory or common law of any State or subdivision thereof." *See* 15 U.S.C. §77p. This is an action

2  asserting only federal law claims. Thus, this action is not removable to federal court.

3      11.    Venue is proper in this jurisdiction pursuant to the provisions of California Code of

4  Civil Procedure §395(a) because certain Defendants reside in San Mateo County.

5      12.    This Court has personal jurisdiction over Defendants as a result of acts of Defendants

6  occurring in and/or aimed at the state of California in connection with Defendants' unregistered

7  offer and sale of securities in violation of §§5, 12(a)(1), and 15 of the Securities Act.

8      13.    This Court also has personal jurisdiction over Defendants because they reside in or

9  have their principal places of business in California.

10  **PARTIES**

11      14.    Lead Plaintiff Avner Greenwald is an individual and a resident of Israel. Plaintiff

12  bought and sold XRP in both USD and Bitcoin between December 14, 2017 and May 12, 2018, and

13  suffered losses on those investments as a result of the scheme alleged herein.

14      15.    Defendant Ripple Labs, Inc. is a Delaware corporation with its principal place of

15  business at 300 Montgomery Street, 12th Floor, San Francisco, California. Ripple Labs operates

16  RippleNet, a global payments network based on blockchain technology. Through RippleNet, banks

17  and payment providers can use XRP to process, clear, and settle financial transactions in real-time

18  worldwide. Ripple Labs created XRP and, at all relevant times, solicited purchases of XRP by

19  Plaintiff and the Class for its own benefit and the benefit of its executives and owners.

20      16.    Defendant XRP II, LLC is wholly owned subsidiary of Ripple Labs. XRP II is a

21  South Carolina limited liability company with its principal place of business in San Francisco,

22  California. XRP II sold XRP and solicited the purchases of XRP by Plaintiff and the Class for its

23  own benefit and the benefit of its parent, Ripple Labs, and its executives and owners.

24      17.    Defendant Bradley Garlinghouse ("Garlinghouse") is the Chief Executive Officer

25  ("CEO") of Ripple Labs and has been since January 2017. Garlinghouse was Ripple Labs'

26  President and Chief Operating Officer from April 2015 through December 2016. Garlinghouse is a

27  California citizen and a resident of San Mateo County. Garlinghouse exercised control over Ripple

28

1 Labs and directed and/or authorized, directly or indirectly, the sale and/or solicitation of XRP to the
2 public.

3      18.    Defendant Christian (Chris) Larsen ("Larsen") is Executive Chairman of Ripple
4 Labs' Board of Directors and has been since January 2017.  Larsen is also a co-founder of Ripple
5 Labs and a former CEO of Ripple Labs (through December 2016).  Larsen exercised control over
6 Ripple Labs and directed and/or authorized, directly or indirectly, the sale and/or solicitation of
7 XRP to the public.

8      19.    Defendant Ron Will ("Will") is Chief Financial Officer of Ripple Labs and has been
9 since November 2017.  Will exercised control over Ripple Labs and directed and/or authorized,
10 directly or indirectly, the sale and/or solicitation of XRP to the public.

11      20.    Defendant Antoinette O'Gorman ("O'Gorman") is Chief Compliance Officer of
12 Ripple Labs.  O'Gorman exercised control over Ripple Labs and directed and/or authorized,
13 directly or indirectly, the sale and/or solicitation of XRP to the public.

14      21.    Defendant Eric van Miltenburg ("van Miltenburg") is Senior Vice President for
15 Business Operations of Ripple Labs.  Van Miltenburg exercised control over Ripple Labs and
16 directed and/or authorized, directly or indirectly, the sale and/or solicitation of XRP to the public.

17      22.    Defendant Susan Athey ("Athey") is a Director of Ripple Labs.  As a Director, Athey
18 exercised control over Ripple Labs and directed and/or authorized, directly or indirectly, the sale
19 and/or solicitation of XRP to the public.

20      23.    Defendant Zoe Cruz ("Cruz") is a Director of Ripple Labs.  As a Director, Cruz
21 exercised control over Ripple Labs and directed and/or authorized, directly or indirectly, the sale
22 and/or solicitation of XRP to the public.

23      24.    Defendant Ken Kurson ("Kurson") is a Director of Ripple Labs.  As a Director,
24 Kurson exercised control over Ripple Labs and directed and/or authorized, directly or indirectly,
25 the sale and/or solicitation of XRP to the public.

26

27

28

25.     Defendant Ben Lawsky ("Lawsky") is a Director of Ripple Labs.  As a Director, Lawsky exercised control over Ripple Labs and directed and/or authorized, directly or indirectly, the sale and/or solicitation of XRP to the public.

26.     Defendant Anja Manuel ("Manuel") is a Director of Ripple Labs.  As a Director, Manuel exercised control over Ripple Labs and directed and/or authorized, directly or indirectly, the sale and/or solicitation of XRP to the public.

27.     Defendant Takashi Okita ("Okita") is a Director of Ripple Labs.  As a Director, Okita exercised control over Ripple Labs and directed and/or authorized, directly or indirectly, the sale and/or solicitation of XRP to the public.

28.     The defendants referred to in ¶¶17-27 are referred to as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.      The Background of XRP**

29.     Unlike cryptocurrencies such as Bitcoin and Ethereum, which are mined by those validating transactions on their networks, all 100 billion XRP in existence were created out of thin air by Ripple Labs in 2013.  Twenty billion XRP, or 20% of the total XRP supply, were given to the individual founders of Ripple Labs,[2] with the remaining 80 billion retained by Ripple Labs.

30.     As for 80 billion XRP held by Ripple Labs, the plan was to sell them and use the proceeds to fund and improve Company operations, including the XRP ledger network.

31.     Ripple Labs' own wiki notes that "Ripple Labs sells XRP to fund its operations and promote the network.  This allows Ripple Labs to have a spectacularly skilled team to develop and promote the Ripple protocol and network."[3]

32.     In the first quarter of 2018, "market participants purchased $16.6 million [of XRP] directly from XRP II, LLC," XRP II also "sold $151.1 million worth of XRP" on exchange.[4]

---

[2]     Defendant Chris Larsen received 9.5 billion XRP.

[3]     Ripple credits, https://wiki.ripple.com/Ripple_credits#XRP funds the development and promotion of the protocol and the network (last visited June 29, 2018).

33.     Ripple Labs' primary business involves the operation of an open ledger protocol, payment, and exchange network.  The native cryptocurrency for Ripple Labs' exchange network is XRP.  Thus, XRP is both an investment in the Company (as sales are used to fund Company operations with the expectation that such investments in the Company will increase the value of XRP) and an investment in itself (with the expectation that the value of XRP will increase), as well as a means of exchange promoted by Ripple Labs.

34.     Ripple Labs' exchange network is based around the XRP Ledger.  The XRP Ledger consists of many servers, called nodes, which accept and process transactions.  Client applications sign and send transactions to nodes, which then relay these candidate transactions throughout the network for processing.  Transactions are then verified and become part of the XRP Ledger through a consensus process.  Every XRP transaction must be made through Ripple Labs' XRP Ledger, which is maintained by Defendants.  In order to open an account on the XRP Ledger, users must maintain a minimum account balance of 20 XRP.  In addition, each time a transaction is made in XRP, there is a transaction cost to users.

35.     Ripple Labs' founders and other Company insiders have also profited individually from their XRP holdings.  In January 2018, Ripple co-founder Defendant Larsen was named one of the richest people in the United States, with an estimated net worth of $59.9 billion, primarily due to the increase in value in XRP and his personal ownership of billions of XRP and his significant stake in the Company.[5]

36.     Defendants have control over how many XRP are in the market.

37.     No registration statement has been filed for XRP with the SEC and no registration statement is in effect for XRP.

---

[4]     Q1 2018 XRP Markets Report, https://ripple.com/insights/q1-2018-xrp-markets-report/ (last visited June 29, 2018).

[5]     https://www.cnbc.com/2018/01/04/ripple-co-founder-is-now-richer-than-the-google-founders-on-paper.html (last visited on June 29, 2018).

**B. Defendants Solicit XRP Sales**

38.     From 2013 to the present, Defendants and their affiliates have been engaged in an ongoing scheme to sell XRP to the general public.

39.     Ripple Labs dedicates an entire section of its website to providing advice on "How to Buy XRP."  This section provides links to online exchanges and instructions on "[h]ow to buy XRP" on those exchanges.[6]  It also has a section titled "Market Performance" which proclaims that Ripple Labs is "committed to the long term health and stability of XRP markets."[7]

40.     Ripple Labs also consistently promotes the availability of XRP on exchanges.  For example, on May 18, 2017, its Senior Vice-President for Business Development, Patrick Griffin, tweeted a link to the Kraken exchange with the caption: "Kraken Introduces New Fiat Pairs for XRP Trading! USD, JPY, CAD, EUR @ Ripple."[8]

41.     Similarly, on or about December 21, 2017, Ripple Labs tweeted in Japanese that XRP was now available on over 50 exchanges.[9]  That tweet linked to an article on Ripple Labs' website which described XRP as "the fastest and most scalable [digital] asset on the market."[10]  It continued, "[t]he market is taking notice of XRP's speed, reliability and scalability – which has strengthened the demand for XRP and where it's listed.  In fact, we're proud to announce that XRP has gone from being listed on six exchanges earlier this year to more than 50 worldwide."  The article also links to a number of online exchanges where XRP can be purchased, and states that "XRP's long-term value is determined by its utility – including its ability to help financial institutions source liquidity for payments into and out of emerging markets."

---

[6]     XRP Buying Guide, https://ripple.com/xm/buy-xrp/ (last visited on June 29, 2018).

[7]     Market Performance, https://ripple.com/xrp/market-performance/ (last visited on June 29, 2018)

[8]     @patgriffin9, https://twitter.com/patgriffin9/status/865251321867231233 (last visited on June 29, 2018).

[9]     @Ripple, https://twitter.com/Ripple/status/943999526783905792 (last visited on June 29, 2018).

[10]     XRP Now Available on 50 Exchanges Worldwide, https://ripple.com/insights/xrp-now-available-on-50-exchanges-worldwide/ (last visited on June 29, 2018).

42.   Ripple Labs also hosts conferences to generate interest in XRP.   For example, between October 16 and October 18, 2017, it hosted a conference named "Swell" in Toronto. Ripple Labs acknowledged that "[a]nticipation around the event spurred a meaningful spike in XRP, pushing it up 100 percent[.]"[11]

43.   On the same day, CoinDesk, a subsidiary of Digital Currency Group, which has an ownership interest in Ripple Labs, published an article titled "Ripple Price Passes Historic $1 Milestone."[12]   This was just one of many instances in which Ripple Labs would promote price movements of XRP.

44.   Ripple Labs' promotion of XRP's price reached new highs in December 2017.   In one instance, Ripple's XRP product manager retweeted a tweet exclaiming: "Wow, XRP at all-time high!  Forget about bitcoin, *we're all in on XRP*!"  (Emphasis added.)[13]

45.   Around that same time, on or about December 7, 2017, Ripple Labs announced that it had placed "55 billion XRP in a cryptographically-secured escrow account to create certainty of XRP supply at any given time."[14]   It had been previously announced in May 2017 that this would happen along with a limited distribution schedule.   This was done to limit the available supply of XRP and drive price appreciation, which allowed Defendants to maximize profits from XRP sales. The December 7, 2017 announcement stated:

> By securing the lion's share of XRP in escrow, people can now mathematically verify the maximum supply that can enter the market.  While Ripple has proved to be a responsible steward of XRP supply for almost five years – and has clearly demonstrated a tremendous track record of investing in and supporting the XRP

---

[11]   14Q3 2017 XRP Markets Report, https://ripple.com/xrp/q3-2017-xrp-markets-report/ (last visited on June 29, 2018).

[12]   Ripple Price Passes Historic $1 Milestone, https://www.coindesk.com/ripple-price-passes-historic-1-milestone/ (last visited on June 29, 2018).

[13]   @warpaul, https://twitter.com/yoshitaka_kitao/status/940785785925709829 (last visited on June 29, 2018).

[14]   https://ripple.com/insights/ripple-escrows-55-billion-xrp-for-supply-predictability (last visited on June 29, 2018).

ecosystem − this lockup eliminates any concern that Ripple could flood the market, which we've pointed out before is a scenario that would be bad for Ripple![15]

46.     The article contained a button to allow readers to share it on Twitter with the caption "Game changer for $XRP! 55 billion XRP now in escrow."[16]  Ripple also promoted this article through its own tweet, which proclaimed:  "55B $XRP is now in escrow.  Interested in what this means for $XRP markets?"[17]  Garlinghouse was even more enthusiastic, tweeting:  "Boom! 55 B $XRP now in escrow.  Good for supply predictability and trusted, healthy $XRP markets.  Glad to finally let this #cryptokitty out of the bag!"[18]

47.     Ripple's public commitment to limit the supply of XRP had its intended effect.  In the weeks that followed, the price of XRP rapidly increased, from approximately $0.22 per token on December 7, 2017 to $3.38 per token on January 7, 2018.[19]

48.     Ripple Labs' CEO, Brad Garlinghouse, has also been a vocal advocate for investing in XRP. In a December 14, 2017 interview with Canada's Business News Network ("BNN"), when asked if he is personally invested in XRP, the CEO stated "I'm long XRO, I'm very, very long XRP as a percentage of my personal balance sheet." He continued, stating that he is "not long some of the other [digital] assets, because it is not clear to me what's the real utility, what problem are they really solving."  And ended by reiterating "if you're solving a real problem, if it's a scaled problem, then I think you have a huge opportunity to continue to grow that.  We have been really fortunate obviously, *I remain very, very, very long XRP*, there is an expression in the industry HODL, instead of hold, its HODL . . . I'm on the HODL side" (emphasis added).

---

[15]     *Id.*

[16]     *Id.*

[17]     https://twitter.com/Ripple/status/938933967956389889.

[18]     https://twitter.com/bgarlinghouse/status/938933791145336832?lang=en.

[19]     XRP would subsequently lose nearly all its value in just over three months, falling to a low of approximately $0.48 per token on April 6, 2018.

49.     Later that same day, Garlinghouse tweeted: "Bloomberg welcomes $XRP to @theterminal and gets it right – #2 market cap behind $BTC at ~$80BB!"[20]

50.     About a week later, on or about December 22, 2017, Garlinghouse tweeted an article titled "Bitcoin Is So 2017 as Ripple Soars at Year End," with the caption "I'll let the headline speak for itself. $xrp."[21]

51.     On or about January 17, 2018, Garlinghouse tweeted a CNBC article titled "Ripple is sitting on close to $80 billion and could cash out hundreds of millions per month-but it isn't," with the caption "A good read on why fostering a healthy $XRP ecosystem is a top priority at @Ripple."

52.     However, the reality was that Ripple Labs was doing exactly that – cashing out. Defendants sold at least $167.7 million worth of XRP between January 1, 2018 and March 31, 2018.

53.     Given its reliance on sales of XRP to fund its operations, it is unsurprising that Ripple Labs' aggressively markets XRP to drive demand, increase the price of XRP, and consequently, its own profits.

54.     Defendants' advertising and social media postings also conflate adoption and use of Ripple Labs' xCurrent and xVia enterprise solutions with adoption and use of XRP, even though they often have little to no correlation and do not involve the XRP Ledger.  Defendants do this to drive demand for XRP and thereby maximize profits from XRP sales.

55.     According to its site, "xCurrent is Ripple's enterprise software solution that enables banks to instantly settle cross-border payments with end-to-end tracking.  Using xCurrent, banks message each other in real-time to confirm payment details prior to initiating the transaction and to confirm delivery once it settles."[22]

---

[20]     @bgarlinghouse, https://twitter.com/bgarlinghouse/status/941375649549246464 (last visited on June 29, 2018).

[21]     @bgarlinghouse, https://twitter.com/bgarlinghouse/status/944325730338357248 (last visited on June 29, 2018).

[22]     Process Payments, xCurrent, https://ripple.com/solutions/process-payments/ (last visited on June 29, 2018).

56.     xCurrent doesn't operate on the same technology as XRP or even require the use of XRP.  In short, there is no reason to believe that adoption of xCurrent would correlate in any way with adoption of XRP.

57.     Nor does use of Ripple Labs' xVia product require adoption of XRP.  Ripple Labs states that its xVia product is "for corporates, payment providers and banks who want to send payments across various networks using a standard interface."[23]

58.     Ripple Labs nevertheless conflates the adoption of xCurrent and xVia with the adoption of XRP.

59.     Another of Ripple Labs' enterprise solutions, xRapid, which does use XRP, is also used to drive XRP sales (xRapid, along with xCurrent and xVia, are together referred to herein as "Ripple Labs' Enterprise Solutions").

60.     Indeed, Ripple Labs regularly promotes its improvements to the XRP ecosystem, which are intended to increase demand for XRP and thus potential returns for XRP investors.  For example, in describing the reasons behind the dramatic price appreciation of XRP during the fourth quarter of 2017, Ripple specifically cited as of "particular importance," the Company's various business initiatives, including: (i) Ripple's partnership with American Express/Santander; (ii) Ripple's activation of the previously discussed escrow of XRP to limit periodic offers and distributions; and (iii) a Japanese/Korean banking consortium backed by the Company.[24]  In the report, Ripple stated that its "consistent and steadfast support of XRP is a major advantage as the payments industry continues to seriously consider it as an alternative liquidity solution."[25]

61.     A November 2015 white paper by the Company highlighted "XRP's Role on Ripple and the Internet of Value" and how the Company's technologies could turn a "Spark to a Wildfire"

---

[23]     Send Payments, xVia, https://ripple.com/solutions/send-payments/ (last visited on June 29, 2018).

[24]     Q4 2017 XRP Markets Report, https://ripple.com/insights/q4-2017-xrp-markets-report/.

[25]     *Id.*

by increasing liquidity and efficiencies for cross-border transactions for the Company's banking clients. A February 2016 white paper followed up on those purported "network effects," claiming that the use of the Ripple network at XRP would increase banks' returns on investment by improving the global payment infrastructure.

62. In addition, on March 20, 2017, Ripple Labs retweeted a Bloomberg article regarding adoption of Ripple Labs Enterprise Solutions, proclaiming "Ripple is the only company in this space with real customers who are really in production."[26]

63. The price of XRP increased rapidly following this tweet and on March 24, 2017 Ripple Labs tweeted: "The price of #XRP continues to surge showing that people are looking for #bitcoin alternatives."[27]

64. On April 26, 2017, Ripple Labs tweeted a link to an article on its own site, proclaiming "#Ripple welcomes 10 additional customers to our #blockchain #paymentsnetwork."[28] Neither this tweet nor the article it linked to informed readers that the blockchain payments network did not refer to the XRP Ledger, but rather Ripple's xCurrent enterprise solution.

65. Just days later, on May 3, 2017, with the price of XRP continuing to rise, Ripple Labs tweeted: "#Ripple adoption is sparking interest in XRP 'which has had an impressive rally in the last months' via @Nasdaq."[29]

66. Articles such as "Ripple XRP price picks up pace as demand for xVia API increases" have made the direct connection between the price of XRP and the adoption of the Company's

---

[26]  @Ripple, https://twitter.com/Ripple/status/844009778309357568 (last visited on June 29, 2018).

[27]  @Ripple, https://twitter.com/Ripple/status/845347809830195200 (last visited June 29, 2018).

[28]  @Ripple, https://twitter.com/Ripple/status/857267304618278912 (last visited June 29, 2018).

[29]  @Ripple, https://twitter.com/Ripple/status/859904105916923904 (last visited June 29, 2018).

Enterprise Solutions.[30]  Ripple itself has made this link, for example tweeting on May 16, 2017: "The appeal that Ripple has towards traditional financial institutions is a big advantage it has over Bitcoin."[31]

67.     On June 29, 2017, Ripple Labs tweeted a clip of an interview its CEO Brad Garlinghouse gave on CNBC with the caption: "#XRP-up 4000% this year-has shown the market favors a real use case for #digitalassets . . . ."[32]  In that interview, Garlinghouse proclaims that "digital assets are in a position to be more valuable than gold," and describes XRP as "solving a real-world use case, it's not just about speculators."

68.     On September 11, 2017, Garlinghouse stated in an interview with CNBC: "People are looking at the success Ripple has been having as a company, *and I think that's increased the value of XRP*."[33] (emphasis added).  He continued by stating that Ripple wants "to keep focusing on making XRP a valuable payments tool, and that value will increase accordingly," and he was "voting with my . . . pocketbook on the future increased value of cryptocurrencies."[34]

69.     On November 27, 2017, Garlinghouse tweeted "Ripple & $XRP are giving business 'what they want in a #blockchain,'" along with a link to a Motley Fool tweet.[35]  That Motley Fool tweet in turn stated that "AmEx and Banco Santander will use Ripple's blockchain network for instant intl. fund transfers.  *Could be a big deal for Ripple's XRP cryptocurrency*.  $ASP $SAN" (emphasis added.)[36]

---

[30]     https://globalcoinreport.com/ripple-xrp-price-picks-up-pace-as-demand-for-xvia-api-increases/.

[31]     @Ripple, https://twitter.com/Ripple/status/864635614020251649.

[32]     @Ripple, https://twitter.com/Ripple/status/880532198025121793 (last visited June 29, 2018).

[33]     https://www.cnbc.com/2017/09/11/ripple-ceo-brad-garlinghouse-on-bitcoin-and-xrp.html  (last visited June 29, 2018).

[34]     *Id.*

[35]     @bgarlinghouse, https://twitter.com/bgarlinghouse/status/935225940845711366 (last visited on June 29, 2018).

[36]     @themotleyfool, https://twitter.com/themotleyfool/status/934850515640471553 (last visited on June 29, 2018).

70.     Similarly, on December 14, 2017, Ripple Labs tweeted: "The Japan Bank Consortium launched a Ripple pilot with two large Korean Banks -- the first time money moves from Japan to Korea over RippleNet."[37]  On that same day, Ripple Labs tweeted "@garlinghouse [its CEO's twitter handle] on why crypto prices will be driven by real utility, the multi-trillion $ problem @Ripple is solving and why $XRP will come out on top."[38]

71.     Ripple Labs would later acknowledge that "neither the AMEX news nor the Korean bank initiative involved XRP."

72.     Nevertheless, this tweet linked to a BNN interview with Mr. Garlinghouse, in which he says:

> The reason why XRP has performed so well this year, we're solving a real problem, it's a multi-trillion dollar problem around cross-border payments.  There is a lot of friction its very slow its expensive, we're working with the institutions to deal with that, so people have gotten excited.  We now have over 100 customers we've announced publicly.

He continues,

> [A]t the end of the day the value of digital assets will be driven by their utility.  If they are solving a real problem, and that problem has scale, and that problem, you know there is real value there, then there will be demand for the tokens and the price will go up.  For XRP we have seen because *its required*, its something that can really reduce the friction, and we're talking about a multi-trillion dollar problem in how cross-border payments flow.  And so, I think if you drive real utility, yes there's going to be demand for that.  *XRP is up 100x this year*, and I think it's *because the problem we are solving people realize is a real problem, it's a big problem*.

(Emphasis added.)

73.     On January 4, 2018, following XRP's rapid price increase, The *New York Times* published an article by Nathaniel Popper titled: "Rise of Bitcoin Competitor Ripple Creates Wealth to Rival Zuckerberg."[39]  Mr. Popper tweeted a link to this article with the caption: "On the rise of

---

[37]    @Ripple, https://twitter.com/Ripple/status/941501026267316224 (last visited on June 29, 2018).

[38]    @Ripple, https://twitter.com/Ripple/status/941352005058011137 (last visited on June 29, 2018).

[39]    @nathanielpopper, "Rise of Bitcoin Competitor Ripple Creates Wealth to Rival Zuckerberg," NY TIMES (Jan. 4, 2018).

Ripple. If this is a tulip fever, the fever has spread to chrysanthemums and poppies"[40]. He further commented, "I've asked several people close to banks if banks are indeed planning to begin using Ripple's token XRP, in a serious way, which is what investors seem to assume when they buy in at the current XRP prices. This is a sampling what I heard back:

- Actual use of XRP by banks is not something I've heard about, I find the run up absolutely bluffing, as do all the blockchain folks I know at large Fis.
- XRP isn't used for anything. The hope is that someday it will be by banks, but there really aren't banks signaling that yet.
- I would be surprised if there have been any real bank transactions done with it (outside of maybe test transactions), despite people making claims to the contrary.
- It's not clear to me why XRP would be used by banks at all. XRP could potentially be adopted by consumers as a payment rail, although they don't yet have meaningful traction in that regard.
- I haven't seen a sufficiently large catalyst in the fundamentals of Ripple to justify a greater than 10x move in the price of $XRP in the last month.
- In a few years we're going to look back on 2017 and think WTF were we thinking."[41]

74.    Defendant Garlinghouse publicly responded to this, tweeting: "Over the last few months I've spoken with ACTUAL banks and payment providers. They are indeed planning to use xRapid (our XRP liquidity product) in a serious way . . . ." He follows up stating, "I don't think you want to hear about validation for XRP. The @NYTimes should be above spreading anonymous FUD."[42]    FUD, which stands for fear, uncertainty, and doubt, is an expression frequently used among crypto-investors to deride or undermine criticism of an asset.

75.    On January 4, 2018, Ripple's XRP product manager also attacked Mr. Popper, tweeting: "Do you think I left #Bitcoin and joined @Ripple to build bank software? Think again.

---

[40]    @nathanielpopper, https://twitter.com/bgarlinghouse/status/949129952716234752 (last visited on June 29, 2018).

[41]    @nathanielpopper, https://twitter.com/bgarlinghouse/status/949129952716234752 (last visited on June 29, 2018).

[42]    @nathanielpopper, https://twitter.com/bgarlinghouse/status/949129952716234752 (last visited on June 29, 2018).

1  $XRP."[43]   This tweet linked to a Ripple Labs tweet stating that "3 of the top 5 global money
2  transfer companies plan to use XRP in payment flows in 2018. Even more in the pipeline."

3      76.    In January 2018, Ripple Labs touted "a partnership with MoneyGram – one of the
4  world's largest money transfer companies – to use xRapid and XRP for near real-time cross-border
5  payments.  In addition, there are a number of other xRapid deals at various stages of completion in
6  the pipeline."  It also stated that it wanted "to build the necessary markets infrastructure for
7  eventual direct usage of XRP by financial institutions." Defendant Garlinghouse commented on
8  this partnership, saying: "And to be clear: @MoneyGram announcement is one step in a marathon
9  ahead to truly make $XRP the global liquidity solution for payment providers and banks."[44]

10     77.    By way of the internet, including Ripple Labs' website, Twitter, and the over 50
11 cryptocurrency exchanges that trade XRP, interstate means are used in connection with the offer
12 and sale of XRP.

13     **C. XRP Is a Security**

14     78.    Plaintiff and the Class invested fiat, including U.S. dollars, and other digital
15 currencies, such as Bitcoin and Ethereum, to purchase XRP.

16     79.    Defendants sold XRP to the general public through global, online cryptocurrency
17 exchanges. XRP can be bought or sold on over 50 exchanges.

18     80.    Every purchase of XRP by a member of the public is an investment contract.

19     81.    Under Section 2(a)(1) of the Securities Act, a "security" is defined to include an
20 "investment contract." 15 U.S.C. § 77b(a)(1).  An investment contract is "an investment of money
21 in a common enterprise with profits to come solely from the efforts of others." *S.E.C. v. W.J.*
22 *Howey Co.*, 328 U.S. 293, 301 (1946).  Specifically, a transaction qualifies as an investment
23 contract and, thus, a security if it is: (1) an investment; (2) in a common enterprise; (3) with a

24

25 [43]    @Warren Paul Anderson, https://twitter.com/warpaul (last visited on June 29, 2018).

26 [44]    @bgarlinghouse,  https://twitter.com/bgarlinghouse/status/951461582424358912 (last visited on
27 June 29, 2018).

28

1   reasonable expectation of profits; (4) to be derived from the entrepreneurial or managerial efforts of
2   others. *See United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852-53 (1975). This
3   definition embodies a "flexible rather than a static principle, one that is capable of adaptation to
4   meet the countless and variable schemes devised by those who seek the use of the money of others
5   on the promise of profits," and thereby "permits the fulfillment of the statutory purpose of
6   compelling full and fair disclosure relative to the issuance of 'the many types of instruments that in
7   our commercial world fall within the ordinary concept of a security.'" *Howey*, 328 U.S. at 299.
8   Accordingly, in analyzing whether something is a security, "form should be disregarded for
9   substance," and the emphasis should be "on economic realities underlying a transaction, and not on
10  the name appended thereto." *Forman*, 421 U.S. at 849.

11      82.     Plaintiff and the Class were investing in a common enterprise with a reasonable
12  expectation of profits when they invested in XRP.

13      83.     The profits of Plaintiff and the Class are intertwined with the fortunes of Ripple
14  Labs.  Ripple Labs concedes that it "sells XRP to fund its operations and promote the network.
15  This allows Ripple Labs to have a spectacularly skilled team to develop and promote the Ripple
16  protocol and network."[45]

17      84.     Notably, the SEC has already concluded that virtual currency substantially similar to
18  XRP are "securities and therefore subject to the federal securities laws."  As stated by the SEC,
19  "issuers of distributed ledger or blockchain technology-based securities must register offers and
20  sales of such securities unless a valid exemption applies."[46]

21      85.     No such valid exemption from registration requirements exists for XRP.

22      86.     The current SEC Chairman, Jay Clayton, III, recently said, "I have yet to see an ICO
23  that doesn't have a sufficient number of hallmarks of a security."[47]

---

[45]   Ripple credits, https://wiki.ripple.com/Ripple credits#XRP (last visited on June 29, 2018).

[46]   Press Release: *SEC Issues Investigative Report Concluding DAO Tokens, a Digital Asset, Were Securities*, SEC (July 25, 2017), https://www.sec.gov/news/press-release/2017-131.

[47]   Dave   Michaels   and   Paul   Vigna,   "SEC   Fires   Warning   Shot   Against   Coin Offerings," WALL STREET JOURNAL (Nov. 9, 2017).

## CLASS ACTION ALLEGATIONS

87.   This suit is brought as a class action pursuant to Section 382 of the California Code of Civil Procedure, on behalf of a Class of all persons or entities who purchased XRP from July 3, 2015 through the present.  Excluded from the Class are Defendants; the officers and directors of the Company and XRP II at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

88.   Plaintiff reserves the right to amend the Class definition if further investigation and/or discovery indicate that the Class definition should be modified.

89.   The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class.  The members of the proposed Class may be identified from records maintained by the Company and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

90.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.

91.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

92.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

      (a)     whether XRP are securities under the Securities Act;

      (b)     whether the sale of XRP violates the registration requirements of the Securities Act; and

      (c)     to what extent Plaintiff and members of the Class have sustained damages and the proper measure of damages.

1    93.    A class action is superior to all other available methods for the fair and efficient

2 adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

3 damages suffered by individual Class members may be relatively small, the expense and burden of

4 individual litigation make it impossible for members of the Class to individually redress the wrongs

5 done to them.  There will be no difficulty in the management of this action as a class action.

6                                    **CAUSES OF ACTION**

7                                  **FIRST CAUSE OF ACTION**

8              **Unregistered Offering and Sale of Securities in Violation of**
                       **Sections 5 and 12(a)(1)of the Securities Act**
9                                 **(Against All Defendants)**

10   94.    Plaintiff, on behalf of himself and all others similarly situated, realleges and incorporates

11 herein by reference each and every allegation contained in the preceding paragraphs of this complaint,

12 and further alleges as follows:

13   95.    Defendants, and each of them, by engaging in the conduct described above, directly or

14 indirectly, made use of means or instruments of transportation or communication in interstate commerce

15 or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried

16 through the mails or in interest commerce for the purpose of sale or for delivery after sale.

17   96.    XRP are securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C.

18 §77b(a)(1).

19   97.    Plaintiff and members of the Class purchased XRP securities.

20   98.    No registration statements have been filed with the SEC or have been in effect with

21 respect to any of the offerings alleged herein.  No exemption to the registration requirement applies.

22   99.    SEC Rule 159A provides that, for purposes of Section 12(a)(2), an "issuer" in "a primary

23 offering of securities" shall be considered a statutory seller.  17 C.F.R. § 230.159A(a).  The Securities

24 Act in turn defines "issuer" to include every person who issues or proposes to issue any security.  15

25 U.S.C. § 77b(a)(4).  Ripple Labs and XRP II are issuers of XRP.

26   100.   The U.S. Supreme Court has held that statutory sellers under §12(a)(1) also include "the

27 buyer's immediate seller" and any person who actively solicited the sale of the securities to plaintiff and

28

did so for financial gain. *See Pinter v. Dahl*, 486 U.S. 622, 644 n.21 & 647 (1988)*; accord, e.g., Steed Finance LDC v. Nomura Sec. Int'l, Inc.* No. 00 Civ. 8058, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001). That is, §12(a)(1) liability extends to sellers who actively solicit the sale of securities with a motivation to serve their own financial interest or those of the securities owner. *Pinter v. Dahl*, 486 U.S. 622, 647 (1988); *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988). Ripple Labs, XRP II, and the Individual Defendants are all statutory sellers.

101. By reason of the foregoing, each of the Defendants have violated Sections 5(a), 5(c), and 12(a) of the Securities Act, 15 U.S.C. §§77e(a), 77e(c), and 771(a).

102. As a direct and proximate result of Defendants' unregistered sale of securities, Plaintiff and the Class have suffered damages in connection with their XRP purchases.

## SECOND CAUSE OF ACTION

### Violation of Section 15 of the Securities Act
### (Against Ripple Labs and the Individual Defendants)

103. Plaintiff, on behalf of himself and all others similarly situated, realleges and incorporates herein by reference, each and every allegation contained in the preceding paragraphs of this Complaint, and further alleges as follows:

104. This Count is asserted against Defendants Ripple Labs and the Individual Defendants (collectively, the "Control Person Defendants") under Section 15 of the Securities Act, 15 U.S.C. §77o.

105. The Control Person Defendants, by virtue of their offices, ownership, agency, agreements or understandings, and specific acts were, at the time of the wrongs alleged herein, and as set forth herein, controlling persons within the meaning of Section 15 of the Securities Act. The Control Person Defendants, and each of them, had the power and influence and exercised the same to cause the unlawful offer and sale of XRP securities as described herein.

106. The Control Person Defendants, separately or together, possess, directly or indirectly, the power to direct or cause the direction of the management and policies of XRP II, through ownership of voting securities, by contract, subscription agreement, or otherwise.

107. The Control Person Defendants also have the power to direct or cause the direction of the management and policies of Ripple Labs.

108.   The Control Person Defendants, separately or together, have sufficient influence to have caused XRP II and/or Ripple Labs to submit a registration statement.

109.   The Control Person Defendants, separately or together, jointly participated in Ripple Labs' and/or XRP II's failure to register XRP.

110.   By virtue of the conduct alleged herein, the Control Person Defendants are liable for the wrongful conduct complained of herein and are liable to Plaintiff and the Class for rescission and/or damages suffered.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.   Declaring this action to be a proper class action and certifying Plaintiff as Class representative;

B.   Declaring that Defendants offered and sold unregistered securities in violation of Sections 5(a), 12(a), and 15 of the Securities Act;

C.   Awarding Plaintiff and the other members of the Class rescission of their XRP purchases;

D.   Awarding Plaintiff and the other members of the Class compensatory damages;

E.   Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements;

F.   Requiring an accounting of all remaining assets and funds raised by Defendants through the sale of XRP;

G.   Imposing a constructive trust over the assets and funds raised by Defendants through the sale of XRP;

H.   Enjoining and restraining Defendants from violating the securities laws through the continued unregistered sale of XRP; and

1      I.     Awarding Plaintiff and the other members of the Class such other and further relief as the

2  Court may deem just and proper.

3

4  DATED: July 3, 2018                SCOTT+SCOTT ATTORNEYS AT LAW LLP

5

6                                      JOHN P. JASNOCH (CA 281605)

7                                        600 W. Broadway, Suite 3300
San Diego, CA 92101

8                                      Telephone: 619-233-4565
Facsimile: 619-233-0508

9                                      Email: jjasnoch@scott-scott.com

10                              SCOTT+SCOTT ATTORNEYS AT LAW LLP
THOMAS L. LAUGHLIN, IV (*Pro Hac Vice*

11                            forthcoming)
RHIANA SWARTZ

12                            The Helmsley Building
230 Park Avenue, 17th Floor

13                            New York, NY 10169
Telephone: 212-223-6444

14                            Facsimile: 212-223-6334
Email: tlaughlin@scott-scott.com

15                                     rswartz@scott-scott.com

16                            *Counsel for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

# EXHIBIT C

1   ROBBINS ARROYO LLP
    BRIAN J. ROBBINS (190264)
2   STEPHEN J. ODDO (174828)
    ERIC M. CARRINO (310765)
3   600 B Street, Suite 1900
    San Diego, CA 92101
4   Telephone: (619) 525-3990
    Facsimile: (619) 525-3991
5   E-mail: brobbins@robbinsarroyo.com
            soddo@robbinsarroyo.com
6           ecarrino@robbinsarroyo.com

7   Attorneys for Plaintiff

8   [Additional Counsel on Signature Page]

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                       COUNTY OF SAN MATEO

11  VLADI ZAKINOV, Individually and on     )   Case No.      18CIV02845
    Behalf of All Others Similarly Situated, )
12                                          )
                         Plaintiff,         )   CLASS ACTION
13                                          )
                 v.                         )   COMPLAINT FOR VIOLATIONS OF
14                                          )   CALIFORNIA CORPORATIONS CODE
    RIPPLE LABS INC.,                       )
15  XRP II, LLC,                            )
    BRADLEY GARLINGHOUSE, and               )
16  DOES 1-25, Inclusive,                   )
                                            )
17                       Defendants.        )   DEMAND FOR JURY TRIAL

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1. Plaintiff, individually and on behalf of all others similarly situated, by his undersigned attorneys, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of media and reports about the Company and Company press releases against defendants Ripple Labs Inc. ("Ripple" or the "Company"), its wholly owned subsidiary XRP II, LLC ("XRP II"), and Ripple's Chief Executive Officer, Bradley Garlinghouse ("Garlinghouse"). Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

**SUMMARY OF THE ACTION**

2. Plaintiff brings this class action on behalf of all California citizens who purchased or otherwise acquired Ripple tokens ("XRP") issued and sold by defendants.

3. XRP, despite its name as a "token," is actually a security under California law. In particular: (i) Ripple uses the funds it raised from the sale of XRP to fund its business ventures; (ii) the Company indiscriminately offers XRP for sale to the public at large; (iii) plaintiff and the Class (as defined herein) are effectively powerless to control the success of Ripple and XRP; and (iv) plaintiff and the Class members' investment is substantially at risk and is without any security.

4. As a result, defendants were required to register XRP when offering or selling it. They did not. Instead, they made a series of improper statements which drove up the price of XRP, allowing defendants to obtain greater returns on their XRP sales.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, section 10, because this case is a cause not given by statute to other trial courts.

- 1 -

1    6.    The violations of law complained of herein occurred in California and in large
2    part in this County.  More, certain of the defendants reside in San Mateo County.

3    7.    This Court has personal jurisdiction over each of the defendants named herein
4    because they conduct business, were citizens of, or took steps to conduct the initial coin offering
5    ("ICO") in California.

6    8.    Venue is proper because the defendants' wrongful acts arose in and emanated
7    from, at least in part, this County.  The violations of law complained of herein occurred in this
8    County.  Further, certain of the defendants live in or conduct business in this County.

9    9.    This Court also has personal jurisdiction over Defendants because they reside or
10   have their principal places of business in California.

11                                    **THE PARTIES**

12   **Plaintiff**

13   10.   Plaintiff Vladi Zakinov is a citizen of California.  Plaintiff purchased XRP in
14   January 2018 and was damaged thereby.

15   **Defendants**

16   11.   Defendant Ripple is a corporation with principal executive offices located at 315
17   Montgomery Street, 2nd Floor, San Francisco, California.  Ripple operates RippleNet, a global
18   payments network based on blockchain technology.  Through RippleNet, banks and payment
19   providers can use the digital asset XRP to process, clear, and settle financial transactions in real-
20   time worldwide.

21   12.   Defendant XRP II is a limited liability company and a wholly owned subsidiary
22   of Ripple.  Its principal place of business is in San Francisco, California.  XRP II sold XRP and
23   solicited the purchases of XRP from plaintiff and the Class for its own benefit and the benefit of
24   its parent, Ripple, and its executives and owners, such as defendant Garlinghouse

25   13.   Defendant Garlinghouse is Ripple's Chief Executive Officer and has been since
26   January 2017 and a director and has been since at least July 2017.  Defendant Garlinghouse was
27   also Ripple's President and Chief Operating Officer from April 2015 to December 2016.
28   Defendant Garlinghouse is a California citizen and a resident of San Mateo County.

- 2 -
CLASS ACTION COMPLAINT

14.     The true names and capacities of defendants sued herein under California Code of Civil Procedure section 474 as Does 1 through 25, inclusive, are presently not known to plaintiff, who therefore sues these defendants by such fictitious names.  Plaintiff will seek to amend this complaint and include these Doe defendants' true names and capacities when they are ascertained.  Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by the Class.

## RIPPLE INDISCRIMINATELY OFFERS XRP TO THE PUBLIC AT LARGE, WHICH PLAINTIFF AND THE CLASS INVESTED IN WITH AN EXPECTATION OF PROFIT

15.     Ripple sells XRP through exchanges and directly to investors.  The Company lists the various exchanges on which investors can purchase XRP on its website, and for some provides step by step purchasing directions.

16.     Plaintiff and the Class invested fiat and other digital currencies, such as Bitcoin and Ethereum, to purchase XRP.

17.     Plaintiff used Ethereum to purchase XRP.  In particular, plaintiff purchased 162 XRP at $1.4337 and 57 XRP at $1.365 on January 11, 2017, and 299 XRP at a price of $1.0923 on January 27, 2018.  Plaintiff has not sold any of his XRP.

18.     Plaintiff and the Class invested in XRP with the expectation that XRP would increase in value and result in a profit.  As explained below, defendants have promoted XRP and conflated the value of XRP with its other software efforts.

## RIPPLE USES PLAINTIFF AND THE CLASS MEMBERS' UNSECURED PASSIVE INVESTMENTS TO FUND THE COMMON ENTERPRISE

19.     Ripple concedes that it "sells XRP to fund its operations and promote the network.  This allows Ripple [] to have a spectacularly skilled team to develop[] and promote the Ripple protocol and network."  Ripple sold nearly $92 million worth of XRP in the fourth quarter of 2017 alone.  On information and belief, the sale of XRP substantial dwarfs any other source of revenue for the Company.

20.     In addition, plaintiff and the Class members' investment is entirely passive. Plaintiff and the Class have no ability to control the direction of the Company or the development of the XRP Ledger (described in more detail below).  Rather, it is through the efforts of defendants that plaintiff expected to make a profit on his investment.  In particular, the efforts of defendants to maintain and push the adoption of XRP and the XRP Ledger, of which they have near complete control, is explained below.

21.     Plaintiff and the Class members' investment in XRP is unsecured and at risk of loss at all times, largely depending on defendants' actions.  If defendants fail to create an adequate market for XRP, inadequately or incorrectly manage the XRP Ledger, or there is a loss of confidence in Ripple's management by the general market, plaintiff and the Class members' investment in XRP will likely lose money.

## THE VALUE OF XRP IS DERVIVED FROM DEFENDANTS' EFFORTS ON BEHALF OF THE COMMON ENTERPRISE

### XRP's Value Is a Result of Defendants' Efforts

### Defendants Control Both the Supply of XRP in the Market and the XRP Ledger

22.     Since its creation, defendants have focused on how to create, maintain, and increase the value of XRP.  First, they focused on limiting the supply of XRP while also increasing its usage.  Defendants created all 100 billion XRP at one time.  XRP is currently the third largest coin by market capitalization, with a market capitalization of approximately $24 billion.

23.     Ripple provided its founders with twenty billion XRP and held onto the rest. defendants' plan was to sell the other eighty billion XRP in basically a never ending ICO.  In particular, Ripple put fifty-five billion XRP into an escrow account and has the ability to sell up to one billion XRP a month.

24.     Ripple's control over XRP's supply is different than other popular cryptocurrencies, such as Bitcoin.  One of the hallmarks of a cryptocurrency is that control of the currency is supposedly "decentralized."  In contrast to a governmental system, where, for example in the United States, the Federal Reserve system controls the supply of currency,

- 4 -

1  cryptocurrencies work through distributed ledger technology, which has no central administrator

2  or centralized data storage.  It is the ledger of a cryptocurrency that can record transactions

3  between two parties.  This instant creation of the XRP security, which its set cap, stands in stark

4  contrast to other well-known cryptocurrencies, such as Bitcoin, which are constantly being

5  "mined."[1]

6      25.    Ripple created and continues to work on the XRP Ledger, in which XRP's

7  adoption and value depends.  The XRP Ledger, as opposed to Bitcoin, is not decentralized, as

8  Ripple basically admits.  The Company has a multiple page explanation on "The XRP Ledger

9  Consensus Process" on its website.  There, Ripple explains how the "nodes" of the network share

10  information about candidate transactions, which validates the transactions.  Unlike Bitcoin or

11  Ethereum, which is open to the world, the XRP Ledger nodes "evaluate proposals from a specific

12  set of peers, called chosen validators [also known as Uniduq Node Lists ("UNLs")]."  These

13  UNLs are chosen by Ripple itself based on what it deems "trusted," meaning nodes that will not

14  collude.

15      26.    In its long discussion of the XRP Ledger Consensus Process, Ripple never calls

16  XRP decentralized, though it does confusingly say the ledger consists of "distributed" servers.

17  Rather, it claims to have come up with a plan "to increase decentralization and ensure that no

18  single entity has operational control of the XRP Ledger."  While the XRP Ledger could one day

19  be decentralized, it is not currently.   Instead, Ripple admits that "Beyond our work on

20  decentralization, we have also focused on refining and improving the XRP Ledger Consensus

21  Protocol, the algorithm underlying the XRP Ledger."

22      27.    On February 6, 2018, BitMEX ran an article titled "The Ripple Story," in the

23  wake of XRP's substantial increase in value.  In short, the researchers found that "the default

24  behaviour of Rippled nodes effectively hands full control over updating the ledger to the

25  Ripple.com server" and that "More significant than the disputes is the fact that the Ripple system

26

27  _____

[1] Mining is when transactions are verified and added to the public ledger, known as a blockchain,

28  as a means through which new bitcoin are released.

- 5 -

CLASS ACTION COMPLAINT

1   appears for all practical purposes to be centralised and is therefore perhaps devoid of any

2   interesting technical characteristics, such as censorship resistance, which coins like Bitcoin may

3   have...."

4       28.     BitMEX explained in reasoning that led it to conclude that the XRP Ledger is

5   centralized:

> In January 2018, the BitMEX Research team installed and ran a copy of Rippled
> for the purpose of this report. The node operated by downloading a list of five
> public keys from the server v1.ripple.com, as the screenshot below shows. All
> five keys are assigned to Ripple.com. The software indicates that four of the five
> keys are required to support a proposal in order for it to be accepted. Since the
> keys were all downloaded from the Ripple.com server, Ripple is essentially in
> complete control of moving the ledger forward, so one could say that the system
> is centralised. Indeed, our node indicates that the keys expire on 1 February 2018
> (just a few days after the screenshot), implying the software will need to visit
> Ripple.com's server again to download a new set of keys.

13      29.     Further, Ripple publishes a quarterly report detailing its efforts grow the "XRP

14  ecosystem."  In its report for the second quarter of 2017, the Company admitted that it continues

15  to work on the XRP Ledger.  In particular, it stated, "[m]ost importantly, we are accelerating the

16  pace of *our investment* in the XRP Ledger to build on its speed, uptime, and scalability, to

17  ensure XRP is the most trusted enterprise-grade digital asset."

18      30.     Thus, defendants control both the supply of XRP and the ledger on which it is

19  based.

20  **Defendants' Efforts to Market and Increase the Value of XRP**

21      31.     In addition, defendants control the value of XRP by continuously touting it in the

22  press and obscuring the role of the security.  In the press release announcing the formation of the

23  escrow account, Ripple stated that:

> [The] move underscores Ripple's commitment to building XRP liquidity and a
> healthy and trusted market.  Long term, the value of digital assets will be
> determined by their utility.  XRP has emerged as the only digital asset with a clear
> intuitional use case designed to solve a multitrillion-dollar problem—the global
> payment and liquidity challenges that banks, payment providers and corporates
> face.

- 6 -

32.     Discussing the escrow account, defendant Garlinghouse stated that, "Our goal in distributing XRP is to incentivize actions that build trust, utility and liquidity.  We engage in distribution strategies that we expect will result in a strengthening XRP exchange rate against other currencies." Defendant Garlinghouse continued:

> [W]e have heard concerns in the market about uncertainty surrounding our ongoing XRP distribution.  The root of this uncertainty is the notion that Ripple might one day sell its 61.68B XRP in the market at any time—a scenario that would be bad for Ripple!  Our self-interest is aligned with building and maintaining a healthy XRP market.

33.     In addition to limiting supply of XRP, defendants also attempted to build demand for the security by aggressively marketing it.  Ripple's website contains a page on "How to Buy XRP," which has links to various exchanges on which a person can buy XRP and even a "How to" on certain of those pages.

34.     There is also a page on Ripple's website dedicated to XRP's market performance.  The page boldly stated that the Company is "committed to the long term health and stability of XRP markets."  The page also displays Ripple's market capitalization and the value of each XRP security in U.S. Dollars.

35.     Defendants have also conflated the Company's software products with XRP in order to increase the value of XRP.  Ripple develops software for financial institutions and payment providers that attempt, among other things, to minimize liquidity costs, known as xCurrent, xRapid, and xVia.  xCurrent is "Ripple's enterprise software solution that enables banks to instantly settle cross-border payments with end-to-end tracking.  Using xCurrent, banks message each other in real-time to confirm payment details prior to initiating the transaction and to confirm delivery once it settles."  xVia "is for corporates, payment providers and banks who want to send payments across various networks using a standard interface."  Neither xCurrent nor xVia require the use of XRP.[2]

---

[2] The only product that actually needs XRP is xRapid.  xRapid is supposedly "for payment providers and other financial institutions who want to minimize liquidity costs while improving their customer experience.  Because payments into emerging markets often require pre-funded

36.   For instance, on June 28, 2017, defendant Garlinghouse participated in an interview on CNBC.  During the interview, defendant Garlinghouse discussed why XRP was "a more stable digital asset."  In among other things, defendant Garlinghouse highlighted the payment technology that Ripple was working on.  In doing so, defendant Garlinghouse again conflated the value of XRP with software Ripple was developing.  To make matters worse, Ripple than retweeted a portion of that interview that was originally tweeted by the CNBC reporter.

37.   During a Bloomberg News Network interview, defendant Garlinghouse stated that "the reason why XRP has performed so well this year, we're solving a real problem, it's a multitrillion-dollar problem around cross-border payments.  There is a lot of friction, its very slow its expensive, we're working with the institutions to deliver on that, so people have gotten excited.  We now have over 100 customers we've announced publicly."  This discussion, of course, conflated XRP, the security, with the customers using Ripple's products.  Defendant Garlinghouse doubled down on this confusion later in the interview, stating "at the end of the day the value of digital assets will be driven by their utility.  If they are solving a real problem, and that problem has scale, and that problem, you know there is real value there, then there will be demand for the tokens and the price will go up.  For XRP we have seen because *it's required,* it's something that can really reduce the friction, and we're talking about a multitrillion-dollar problem in how cross-border payments flow.  And so, I think if you drive real utility, yes there's going to be demand for that."  "XRP is up 100x this year, and I think it's because the problem we are solving people realize is a real problem, it's a big problem."

38.   Articles about Ripple's software products often cause a rise in the price of XRP, even though the two are not linked.  Defendants have fostered this confusion through their own statements and "retweets."  For instance, on May 3, 2017, Ripple quote tweeted an article from Nasdaq.com, stating "Ripple adoption is sparking interested in XRP, 'which had an impressive

local currency accounts around the world, liquidity costs are high. xRapid dramatically lowers the capital requirements for liquidity."

rally in the last two months.'"   The quoted article discussed how financial institutions were adopting Ripple's software products, which "in turn, has sparked interest in Ripple's digital currency."   Instead of explaining the difference, defendants, in quote tweeting the article, continued to give off the incorrect impression about the link between the products and security.

39.   Similarly, on May 16, 2017, Ripple tweeted a quote from an article about XRP's market capitalization, stating; "The appeal that Ripple has towards traditional financial institutions is a big advantage it has over Bitcoin."   However, this article confused Ripple's software solutions with the value of XRP, a confusion fostered by Ripple's quoted tweet.

40.   Defendants fought back against articles and writers that attempted to unlink XRP from Ripple's other products.  On January 4, 2018, *The New York Times* published an article by Nathaniel Popper ("Popper") titled: "Rise of Bitcoin Competitor Ripple Creates Wealth to Rival Zuckerberg."

41.   Popper tweeted a follow-up about his article, stating, "over the last day, I've asked several people close to banks if banks are indeed planning to begin using Ripple's token, XRP, in a serious way, which is what investors seem to assume when they buy in at the current XRP prices.  This is a sampling of what I heard back:

- Actual use of XRP by banks is not something I've heard about, I find the run up absolutely baffling, as do all the blockchain folks I know at large FIs.

- XRP isn't used for anything.  The hope is that someday it will be by banks, but there really aren't banks signaling that yet.

- I would be surprised if there have been any real bank to bank transactions done with it (outside of maybe test transactions), despite people making claims to the contrary.

- It's not clear to me why XRP would be used by banks at all.  XRP could potentially be adopted by consumers as a payment rail, although they don't yet have meaningful traction in that regard.

- I haven't seen a sufficiently large catalyst in the fundamentals of Ripple to justify a greater than 10x move in the price of $XRP over the last month.

- In a few years we're going to look back on 2017 and think WTF were we thinking."

- 9 -

42.     Defendant Garlinghouse responded by tweeting: "Over the last few months I've spoken with ACTUAL banks and payment providers.  They are indeed planning to use xRapid (our XRP liquidity product) in a serious way...."  Ripple's XRP product manager, tweeted: "Do you think I left #Bitcoin and joined @Ripple to build bank software?  Think again.  $XRP."

43.     Accordingly, as shown above, the defendants acted on behalf of the common enterprise, with the expectation of increase the value of XRP, and thus causing a profit.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this class action individually and on behalf of all California citizens who purchased or otherwise acquired XRP from January 1, 2013 to the present (the "Class").  Excluded from the Class are defendants and their families, the officers and directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members in the proposed Class.  XRP owners and other members of the Class may be identified from records maintained by Ripple and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct, as complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

48.     There are no unique defenses that may be asserted against plaintiff individually, as distinguished from the other members of the Class.  Plaintiff has no interest that is in conflict with, or is antagonistic to, the interests of the members of the Class, and has no conflict with any

1  other members of the Class.  Plaintiff has retained competent counsel experienced in securities,

2  consumer protection, and Class action litigation to represent himself and the Class.

3      49.    Common questions of law and fact exist as to all members of the Class and

4  predominate over any questions solely affecting individual members of the Class.  Among the

5  questions of law and fact common to the Class are:

6          (a)    whether XRP are securities;

7          (b)    whether defendants violated the California Corporations Code; and

8          (c)    to what extent the members of the Class have sustained damages and the

9  proper measure of damages.

10      50.    A class action is superior to all other available methods for the fair and efficient

11  adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

12  the damages suffered by individual Class members may be relatively small, the expense and

13  burden of individual litigation make it impossible for members of the Class to individually

14  redress the wrongs done to them.  There will be no difficulty in the management of this action as

15  a class action.

16  **FIRST CAUSE OF ACTION**

17  **Against All Defendants and Does 1-25 for the Unregistered Offer and Sale of**
**Securities in Violation of California Corporations Code Sections 25110 and 25503**

18

19      51.    Plaintiff incorporates by reference and realleges each and every allegation

20  contained above, as though fully set forth herein.

21      52.    This Cause of Action is brought pursuant to California Corporations Code

22  sections 25110 and 25503, on behalf of the Class, against all defendants.

23      53.    XRP are securities within the meaning of the California Corporations Code.

24      54.    No registration statements have been filed with any state or federal government

25  entity or have been in effect with respect to any of the offerings alleged herein.

26      55.    Defendants and each of them, by engaging in the conduct described above within

27  California, directly or indirectly, sold and offered to sell the unregistered securities.

28

- 11 -

56.     Plaintiff and members of the Class purchased XRP securities from defendants.

57.     By reason of the foregoing, each of the defendants have violated sections and 25110 and 25503 of the California Corporations Code.

58.     As a direct and proximate result of defendants' unregistered sale of securities, plaintiff and members of the Class have suffered damages in connection with their respective purchases of XRP securities.

## SECOND CAUSE OF ACTION
### Against Defendants Ripple, Garlinghouse, and Does 1-25
### for Violation of Section 25504 of the California Corporations Code

59.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60.     This Cause of Action is brought pursuant to California Corporations Code section 25504, on behalf of the Class, against all defendants.

61.     Defendants Ripple and Garlinghouse were control persons within the meaning of section 25504 of the California Corporations Code.  In particular, defendant Ripple was a control person by virtue of agency and ownership of XRP II.  Defendant Garlinghouse was a control person by virtue of his position as an officer of Ripple and/or authorized representative of the other defendants.  Defendants Ripple and Garlinghouse each had the power and influence and exercised the same to cause the unlawful offer and sale of XRP securities as described herein.

62.     Defendants Ripple and Garlinghouse, separately or together, have sufficient influence to have caused XRP II and/or Ripple to submit a registration statement.

63.     Defendants Ripple and Garlinghouse, separately or together, jointly participated in, and/or aided and abetted, XRP II and/or Ripple failure to register XRP.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment on his behalf and that of the Class as follows:

A.     Under section 382 of the California Code of Civil Procedure, certifying this as a Class action, appointing plaintiff as a Class representative under California Rule of Court 3.764,

- 12 -

1    and appointing plaintiff's counsel as Class counsel;

2        B.    Awarding damages in favor of plaintiff and the Class against all defendants,

3    jointly and severally, in an amount to be proven at trial, including interest thereon;

4        C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in

5    this action, including counsel fees and expert fees;

6        D.    Awarding rescission or a rescissory measure of damages; and

7        E.    Awarding equitable, injunctive or other relief, including disgorgement or

8    restitution, as deemed appropriate by the Court.

9                              **JURY DEMAND**

10       Plaintiff demands trial by jury.

11   Dated: June 5, 2018                    ROBBINS ARROYO LLP
                                            BRIAN J. ROBBINS
12                                          STEPHEN J. ODDO
                                            ERIC M. CARRINO
13

14

15                                          BRIAN J. ROBBINS

16                                          600 B Street, Suite 1900
                                            San Diego, CA 92101
17                                          Telephone: (619) 525-3990
                                            Facsimile: (619) 525-3991
18                                          E-mail: brobbins@robbinsarroyo.com
                                                    soddo@robbinsarroyo.com
19                                                  ecarrino@robbinsarroyo.com

20                                          ROBBINS GELLER RUDMAN
                                              & DOWD LLP
21                                          SHAWN A. WILLIAMS (213113)
22                                          Post Montgomery Center
                                            One Montgomery Street, Suite 1800
23                                          San Francisco, CA  94104
                                            Telephone: (415) 288-4545
24                                          Facsimile: (415) 288-4534
25                                          E-mail: shawnw@rgrdlaw.com

26                                          DAVID C. WALTON (167268)
                                            BRIAN O. O'MARA (229737)
27                                          BRIAN E. COCHRAN (286202)
28                                          655 West Broadway, Suite 1900

CLASS ACTION COMPLAINT

San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: davew@rgrdlaw.com
      bomara@rgrdlaw.com
      lolts@rgrdlaw.com
      bcochran@rgrdlaw.com

Attorneys for Plaintiff

1268543

CLASS ACTION COMPLAINT

# EXHIBIT D

1  ROBBINS ARROYO LLP
   BRIAN J. ROBBINS (190264)
2  STEPHEN J. ODDO (174828)
   ERIC M. CARRINO (310765)
3  600 B Street, Suite 1900
   San Diego, CA 92101
4  Telephone: (619) 525-3990
   Facsimile: (619) 525-3991
5  E-mail: brobbins@robbinsarroyo.com
        soddo@robbinsarroyo.com
6       ecarrino@robbinsarroyo.com

7  Attorneys for Plaintiff

**FILED**
**SAN MATEO COUNTY**

JUN 27 2018

Clerk of the Superior Court
By _____
        DEPUTY CLERK

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SAN MATEO

10  DAVID OCONER, Individually and on Behalf  )   Case No.  **18CIV03332**
    of All Others Similarly Situated,          )
11                                             )   CLASS ACTION
                              Plaintiff,       )
12                                             )   COMPLAINT FOR VIOLATIONS OF
         v.                                    )   CALIFORNIA LAW
13                                             )
    RIPPLE LABS, INC.,                         )
14  XRP II, LLC,                               )
    BRADLEY GARLINGHOUSE, and                  )
15  DOES 1-25, Inclusive,                      )
                                               )
16                            Defendants.      )   DEMAND FOR JURY TRIAL
                                               )

17

18

19                                    18 – CIV – 03332
                                      CMP
20                                    Complaint
                                      1232943
21
                                      ||||||||||||||||||||||||||
22

23

24

25

26

27

28

FILE BY FAX

1        Plaintiff David Oconer, individually and on behalf of all others similarly situated, by his

2   undersigned attorneys, alleges the following, based upon personal knowledge as to plaintiff and

3   plaintiff's own acts, and upon information and belief as to all other matters based on the investigation

4   conducted by and through plaintiff's attorneys, which included, among other things, a review of filings

5   and press releases by Ripple Labs, Inc. ("Ripple" or the "Company"), its wholly owned subsidiary XRP

6   II, LLC ("XRP II"), and analyst and media reports and other publicly disclosed reports and information

7   about the Company and XRP II. Plaintiff believes that substantial additional evidentiary support will

8   exist for the allegations set forth herein, after a reasonable opportunity for discovery.

9                  **SUMMARY OF ACTION**

10       1.     This is a securities class action on behalf of all California purchasers of Ripple tokens

11   ("XRP"), brought against Ripple, XRP II and the Chief Executive Officer ("CEO") of the Company,

12   Bradley Garlinghouse ("Garlinghouse"), who promoted, sold and solicited the sale of XRP. Defendants

13   raised hundreds of millions of dollars through the unregistered sale of XRP, including selling to retail

14   investors, in violation of the law.

15       2.     Under California law, offers and sales of securities must be qualified with the

16   Commissioner of Corporations, unless exempt. These laws are designed to protect the public, by

17   requiring various disclosures so that investors can better understand the security and the risks associated

18   with investing in that security. The regime of registration and disclosure is the primary means by which

19   regulators prohibit deceit, misrepresentations, and fraud in the sale of securities, and promote the fair

20   and orderly functioning of the securities markets.

21       3.     Here, the XRP offered and sold by defendants had all the traditional hallmarks of a

22   security, yet defendants failed to register them as such. The purchase of XRP constitutes an investment

23   contract, as XRP purchasers, including plaintiff, provided consideration (in the form of fiat, such as

24   U.S. dollars, or other cryptocurrencies) in exchange for XRP. XRP purchasers reasonably expected to

25   derive profits from their ownership of XRP, and defendants themselves have frequently highlighted this

26   profit motive. Moreover, the development of the XRP Ledger and other facets of the XRP network, and

27   the return that investors expected to derive therefrom, were, and are, based entirely on the technical,

28   managerial, and entrepreneurial efforts of defendants, and other third parties employed by defendants.

1   Indeed, a feature of XRP that differentiates the cryptocurrency from others such as Bitcoin, is that the

2   security is highly centralized in Ripple. The Company created the XRP token and then used sales of the

3   tokens in order to fund its operations and the development of the XRP ecosystem, which in turn,

4   increased the value of XRP and the potential returns to XRP investors.

5         4.    Despite the status of XRP as a security, defendants failed to register XRP and the sale of

6   XRP did not qualify for an exemption from registration.  Nevertheless, many of the representations

7   defendants made regarding XRP were designed to drive demand for XRP, allowing defendants to obtain

8   greater returns on their XRP sales.  Defendants have since generated hundreds of millions of dollars in

9   gross proceeds by selling XRP to the general public, in what is essentially a series of initial coin

10   offerings ("ICO").  Much like the better-known term, initial public offering ("IPO"), in an ICO, digital

11   assets are sold to consumers in exchange for legal tender or cryptocurrencies (most often Bitcoin and

12   Ethereum).  These tokens generally give the purchaser various rights on the blockchain network and

13   resemble the shares of a company sold to investors in an IPO.  Unfortunately, ICOs have become a

14   magnet for unscrupulous practices and fraud.

15        5.    Plaintiff brings this suit for declaratory relief that XRP is, in fact, a security under

16   applicable laws, and for damages, rescission and other relief as detailed herein.

17                   **JURISDICTION AND VENUE**

18        6.    The claims alleged herein arise under §§25110, 25503 and 25504 of the California

19   Corporations Code (the "Corporations Code").  Jurisdiction is conferred by Art. VI, §10 of the

20   California Constitution.  Venue is proper pursuant to the California Code of Civil Procedure.

21        7.    The violations of law complained of herein occurred in San Mateo County, including the

22   unlawful sale of unregistered securities into this County.  In addition, defendants are located and/or

23   conduct business in this County, significant events that led to the sale of unregistered securities

24   occurred in this County, and documents and witnesses are located in this County, or can be found in this

25   County.  For example, Ripple raised proceeds from, and is backed by venture capital firms, such as

26   Andreessen Horowitz, which is located in this County, has solicited and sold XRP to investors located

27   in this County, and is run by defendant Garlinghouse, who lives in this County.

28

COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1   8.   In connection with the acts alleged in this complaint, defendants, directly or indirectly,

2   used the means and instrumentalities of interstate commerce, including, but not limited to, the mail,

3   interstate telephone communications and the facilities of the national securities markets.

4   **PARTIES**

5   9.   Plaintiff David Oconer is a citizen of California, who purchased the XRP promoted and

6   sold by defendants, which was not registered as a security by defendants and was not subject to any

7   exemption from registration.

8   10.   Defendant Ripple Labs, Inc. has its principal place of business in San Francisco,

9   California.  Ripple created and sold XRP, through XRP II, and solicited the purchases of XRP from

10   plaintiff and the Class (defined herein) for its own benefit and the benefit of its executives and owners,

11   such as defendant Garlinghouse.

12   11.   Defendant XRP II, LLC has its principal place of business in San Francisco, California.

13   XRP II sold XRP and solicited the purchases of XRP from plaintiff and the Class for its own benefit

14   and the benefit of its parent, Ripple, and its executives and owners, such as defendant Garlinghouse.

15   12.   Defendant Bradley Garlinghouse is the CEO of the Company.  He lives in Atherton,

16   California.  Garlinghouse orchestrated the sale of XRP by Ripple and XRP II and solicited the

17   purchases of XRP from plaintiff and the Class for his own benefit and the benefit of Ripple.

18   13.   The true names and capacities of defendants sued herein under California Code of Civil

19   Procedure §474 as Does 1 through 25, inclusive, are presently not known to plaintiff, who therefore

20   sues these defendants by such fictitious names.  Plaintiff will seek to amend this complaint and include

21   these Doe defendants' true names and capacities when they are ascertained.  Each of the fictitiously

22   named defendants is responsible in some manner for the conduct alleged herein and for the injuries

23   suffered by the Class.

24   **SUBSTANTIVE ALLEGATIONS**

25   **Ripple Creates XRP**

26   14.   Ripple's primary business involves the operation of an open ledger protocol, payment,

27   and exchange network.  The native cryptocurrency for the Ripple system is the XRP token, which

28   serves as both an investment in the Company (as sales of XRP are used to fund Company operations,

1   with the expectation that these investments will increase the tokens' value) and as a means of exchange

2   promoted by Ripple. The Ripple system is based around the XRP Ledger. The XRP Ledger consists of

3   many servers, called nodes, which accept and process transactions. Client applications sign and send

4   transactions to nodes, which then relay these candidate transactions throughout the network for

5   processing. Transactions are then verified and become part of the XRP Ledger history through a

6   consensus process. Every transaction in XRP must be made by and through the XRP Ledger, which is

7   maintained by defendants. In order to open an account on the XRP Ledger, a user is required by

8   defendants to maintain a minimum account balance of 20 XRP. Furthermore, each time a transaction in

9   XRP is made, defendants require a transaction cost from the transacting parties.[1]

10       15.    Unlike cryptocurrencies such as Bitcoin and Ethereum, which are mined by those

11  validating transactions on their networks, Ripple created the 100 billion XRP supply itself. Twenty

12  billion XRP, or 20% of the total XRP supply, were given to the individual founders of Ripple,[2] with the

13  remaining 80 billion being retained by the Company. As for the 80 billion XRP held by Ripple, the

14  Company periodically sells XRP from its supply and uses the proceeds from these sales to fund

15  Company operations and improve the XRP ecosystem. Ripple's founders and other Company insiders

16  have also enriched themselves with their personal XRP fortunes. In January 2018, Ripple co-founder

17  Chris Larsen was named one of the richest people in the United States, with an estimated net worth of

18  $59.9 billion, primarily due to the increase in value of XRP and his personal ownership of billions of

19  XRP tokens and a significant ownership stake in the Company.[3]

20       16.    Ripple has been criticized because of the centralized nature of its network for XRP,

21  especially when compared to the networks for other truly distributed cryptocurrencies such as Bitcoin.

22  Ripple demonstrated its control over the XRP ecosystem when, in 2015, it froze the balance of Ripple

23  ---

[1]   The current minimum transaction cost is 0.00001 XRP, although this cost can be increased by
24  defendants. This feature of XRP transactions benefits defendants because it makes their stockpile of
     XRP more valuable over time.

25  [2]   Chris Larsen and Jed McCaleb ("McCaleb") each received 9.5 billion XRP, with Arthur Britto
26  receiving 1 billion.

27  [3]   https://www.cnbc.com/2018/01/04/ripple-co-founder-is-now-richer-than-the-google-founders-on-
     paper.html.

28

1   co-founder McCaleb following an internal dispute. The ability of Ripple to control the flow of XRP

2   undermines any pretense that the security is not centralized in the Company. Similarly, in February

3   2018, a report by BitMEX Research stated that a test of the Ripple system revealed that all five public

4   keys used to validate transactions came directly from Ripple, meaning that Ripple was "essentially in

5   complete control of moving the ledger forward."[4] The report concluded that Ripple's claims that the

6   system was "distributed" could be misleading, as Ripple essentially controlled the XRP Ledger process.

7   As the stewards of the XRP ecosystem, defendants' success in developing, promoting, and maintaining

8   the XRP Ledger and other exchange infrastructure is directly related to the value of XRP. Furthermore,

9   because Ripple maintains, controls and stewards the XRP Ledger, and because defendants have the

10   ability to add conditions to transactions in XRP, and can unilaterally modify elements of the XRP

11   ecosystem, each transaction in XRP involves a transaction directly with defendants.

**Ripple Updates XRP**

13       17.   Ripple is constantly changing and seeking to improve the XRP network. These changes

14   have decreased transaction times and improved system security, compatibility, use cases and other

15   features of XRP. At the same time, Ripple has released new "white papers" touting these upgrades and

16   proposed upgrades to the cryptocurrency and its exchange network. For example, Ripple released a

17   white paper in February 2016 following a series of upgrades with the subtitle "The ROI of Using Ripple

18   and XRP for Global Interbank Settlements."[5] "ROI" stands for "return on investment," and the paper

19   discussed at length the purported value of using XRP, compared to other systems.

20       18.   One of the most significant changes to the XRP ecosystem occurred in the latter half of

21   2015. In May 2015, regulatory authorities in the United States fined Ripple and XRP II $700,000 for

22   "willfully" violating the Bank Secrecy Act by selling XRP without obtaining the required authorization.

23   The failure to properly register as a money services business, or "MSB," exposed XRP for use by

24   money launderers, criminals and other suspicious actors. As part of the settlement, defendants agreed to

25   a number of remedial measures, including registration with FinCEN within 30 days of the agreement

26   [4]   *The Ripple Story*, BitMEX Research (Feb. 6, 2018), https://blog.bitmex.com/the-ripple-story/.

27   [5]   https://ripple.com/files/xrp_cost_model_paper.pdf.

28

1  and to secure customer identification information within 180 days of the agreement. In the subsequent

2  months, Ripple updated the XRP network and ecosystem to comply with the settlement agreement. In

3  October 2015, Ripple underwent a rebranding after which it purported to fulfill its obligations under the

4  settlement agreement.

5      19.     Another key development occurred in May 2017, when Ripple announced that it would

6  limit distribution of the remaining 61.68 billion XRP owned by the Company, from its original 80

7  billion XRP allotment. Ripple stated that it would place 55 billion XRP into a cryptographically

8  secured escrow account, and only offer and sell limited amounts of XRP at defined intervals. The

9  Company established 55 contacts of 1 billion XRP that allowed it to sell up to 1 billion XRP per month,

10  with any unsold XRP returned to escrow for use in subsequent offerings. The Company stated that it

11  expected the distribution strategy "will result in a strengthening XRP exchange rate against other

12  currencies," and that Ripple's "self-interest is aligned with building and maintaining a healthy XRP

13  market."[6] The fact that the vast amount of existing XRP resides in the control of defendants further

14  demonstrates the high degree of centralization and control defendants maintain over XRP, as they can

15  determine the supply of XRP, which will, in turn impact the price of the security.

16      20.     Indeed, a primary motivation for limiting the available supply of XRP was to drive price

17  appreciation and allow defendants to maximize profits from XRP sales. The price of XRP increased

18  rapidly following the announcement of the escrow decision, increasing 1,159% during the second

19  quarter of 2017. Ripple's "Q2 2017 XRP Markets Report" listed the escrow announcement as

20  "instrumental in helping to drive XRP interest and volume," and noted the "market responded favorably

21  to the escrow" announcement.[7]

22

23

24

25

─────────────

26  [6]  https://ripple.com/insights/ripple-to-place-55-billion-xrp-in-escrow-to-ensure-certainty-into-total-xrp-supply/.

27  [7]  https://ripple.com/insights/q2-2017-xrp-markets-report/.

28

21. On or about December 7, 2017, Ripple announced that it had followed through with its promise and placed "55 billion XRP in a cryptographically-secured escrow account to create certainty of XRP supply at any given time."[8] The announcement stated:

> By securing the lion's share of XRP in escrow, people can now mathematically verify the maximum supply that can enter the market. While Ripple has proved to be a responsible steward of XRP supply for almost five years – and has clearly demonstrated a tremendous track record of investing in and supporting the XRP ecosystem – this lockup eliminates any concern that Ripple could flood the market, which we've pointed out before is a scenario that would be bad for Ripple!.[9]

22. The article contained a button to allow readers to share it on Twitter with the caption "Game changer for $XRP! 55 billion XRP now in escrow."[10] Ripple also promoted this article through its own tweet, which proclaimed: "55B $XRP is now in escrow. Interested in what this means for $XRP markets?"[11] Garlinghouse was even more enthusiastic, tweeting: "Boom! 55B $XRP now in escrow. Good for supply predictability and trusted, healthy $XRP markets. Glad to finally let this #cryptokitty out of the bag!"[12]

23. Ripple's public commitment to limit the supply of XRP had its intended effect. In the weeks that followed, the price of XRP rapidly increased, from approximately $0.22 per token on December 7, 2017 to $3.38 per token on January 7, 2018.[13]

**Defendants Market XRP to Drive Demand and Increase Price**

24. While publicly touting its xCurrent, xRapid and xVia enterprise solutions (collectively, "Enterprise Solutions"), Ripple's primary source of income is, and has been, the sale of XRP. Ripple

---

[8] https://ripple.com/insights/ripple-escrows-55-billion-xrp-for-supply-predictability/.

[9] Id.

[10] Id.

[11] https://twitter.com/Ripple/status/938933967956389889.

[12] https://twitter.com/bgarlinghouse/status/938933791145336832?lang=en.

[13] XRP would subsequently lose nearly all its value in just over three months, falling to a low of approximately $0.48 per token on April 6, 2018.

1  generated over $180 million in gross proceeds through XRP sales in 2017 alone.[14] Defendants sell XRP

2  on a wholesale basis to larger investors, and also sell significant quantities of XRP directly to retail

3  investors on cryptocurrency exchanges. According to Ripple, in the first quarter of 2018, "market

4  participants purchased $16.6 million [of XRP] directly from XRP II," and XRP II also "sold $151.1

5  million worth of XRP" on exchanges.[15]

6      25.    Given its reliance on sales of XRP, it is unsurprising that Ripple aggressively markets

7  XRP to drive demand, increase the price of XRP, and, consequently, its own profits. For example,

8  Ripple has an entire section of its website dedicated to providing advice on "How to Buy XRP." This

9  section provides links to exchanges and instructions on "how to buy XRP" on those exchanges.[16] It also

10  has a section titled "Market Performance" which proclaims that Ripple is "committed to the long term

11  health and stability of XRP markets."[17]

12      26.    Ripple also regularly promotes the availability of XRP on exchanges. For example, on

13  May 18, 2017, Ripple's Senior Vice-President for Business Development, Patrick Griffin, tweeted a link

14  to the Kraken exchange with the caption: "Kraken Introduces New Fiat Pairs for XRP Trading! USD,

15  JPY, CAD, EUR @Ripple."[18]

16      27.    Similarly, on or about December 21, 2017, Ripple tweeted that XRP was now available

17  on over 50 exchanges.[19] That tweet linked to an article on Ripple's website which described XRP as

18  "the fastest and most scalable [digital] asset on the market."[20] The article continued: "The market is

19  taking notice of XRP's speed, reliability and scalability – which has strengthened the demand for XRP

20  [14]  https://www.cnbc.com/2018/01/24/ripple-sold-91-point-6-million-of-digital-currency-xrp-last-
21  quarter.html.

22  [15]  Q1 2018 XRP Markets Report, https://ripple.com/insights/q1-2018-xrp-markets-report/.

23  [16]  XRP Buying Guide, https://ripple.com/xrp/buy-xrp/.

24  [17]  Market Performance, https://ripple.com/xrp/market-performance/.

25  [18]  @patgriffin9, https://twitter.com/patgriffin9/status/865251321867231233.

26  [19]  @Ripple, https://twitter.com/Ripple/status/943999526783905792.

27  [20]  XRP Now Available on 50 Exchanges Worldwide, https://ripple.com/insights/xrp-now-available-
   on-50-exchanges-worldwide/.

28

1   and where it's listed. In fact, we're proud to announce that XRP has gone from being listed on six

2   exchanges earlier this year to more than 50 worldwide."[21]   The article also linked to a number of

3   exchanges where XRP could be purchased, and stated that "XRP's long-term value is determined by its

4   utility – including its ability to help financial institutions source liquidity for payments into and out of

5   emerging markets."[22]

6        28.    Illustrative of defendants' attempts to promote the XRP ecosystem, in 2017, Ripple

7   attempted to pay two of the top cryptocurrency exchanges, Gemini and Coinbase, to secure listing of

8   XRP. Coinbase and Gemini provide some of the easiest ways for U.S. customers to buy crypto-assets

9   with U.S. dollars. As a result, being listed on one of these exchanges tends to accelerate demand for,

10  and thus, increase the price of, a crypto-asset. For example, when Coinbase listed Bitcoin Cash in

11  December 2017, the price of Bitcoin Cash increased nearly three times its trading price relative to other

12  exchanges.

13       29.    Reportedly, Ripple offered to pay $1 million to Gemini in the third quarter of 2017 if it

14  would list XRP. Similarly, during preliminary talks with Coinbase in the fall of 2017, Ripple said it

15  would be willing to lend the exchange more than $100 million worth of XRP to start letting users trade

16  the token. On November 29, 2017, Ripple posted a link to a change.org petition to "Get Ripple on

17  CoinBase," with the caption: "The community is mobilizing! [thumbs up emoji]."[23]   Ripple's Senior

18  Vice President of Business Development also tweeted a link to the petition. According to *Bloomberg*:

19  "By dangling money in front of exchanges, Ripple signaled that its future success hinges in part on

20  getting XRP listed on the top trading venues."[24]

21       30.    In addition, Ripple hosts conferences to generate interest in XRP. For example, from

22  October 16 to October 18, 2017, the Company hosted a conference named "Swell" in Toronto. Ripple

23

24  [21]   *Id.*

25  [22]   *Id.*

26  [23]   https://twitter.com/ripple/status/935923310080045056?lang=en.

27  [24]   https://www.bloomberg.com/news/articles/2018-04-04/ripple-is-said-to-struggle-to-buy-u-s-listing-for-popular-coin.

28

1   acknowledged that "[a]nticipation around the event spurred a meaningful spike in XRP, pushing it up

2   100 percent."[25]

3       31.     On December 21, 2017, CoinDesk, a subsidiary of Digital Currency Group, which has an

4   ownership interest in Ripple, published an article titled, "Ripple Price Passes Historic $1 Milestone."[26]

5   This was just one of many instances in which Ripple would promote price movements of XRP.

6       32.     Ripple's promotion of XRP's price continued in December 2017, as the price of XRP

7   climbed over 1,000% in a single month.  In one instance, Ripple's product manager of the XRP Ledger

8   and xRapid retweeted a tweet exclaiming: "Wow, XRP at all time high!  Forget about bitcoin, *we're all*

9   *in on XRP!*"[27]  This same manager later tweeted: "So glad I doubled down.  Since I joined @Ripple,

10  $XRP now at $1.00 (up 17,141.37%)...."[28]

11      33.     Ripple's CEO, defendant Garlinghouse, has also been a vocal advocate for investing in

12  XRP.  In a December 14, 2017 interview with BNN, when asked if he is "personally invested" in XRP

13  and was "taking profits" on that investment, Garlinghouse stated, "I'm long XRP, *I'm very, very long*

14  *XRP* as a percentage of my personal balance sheet."[29]  He continued, stating that he is "not long some

15  of the other [digital] assets, because it is not clear to me what's the real utility, what problem are they

16  really solving."[30]  He ended by reiterating, "if you're solving a real problem, if it's a scaled problem,

17  then I think you have a huge opportunity to continue to grow that."[31]  Later that same day, Garlinghouse

18

19

20

21  [25]   Q3 2017 XRP Markets Report, https://ripple.com/xrp/q3-2017-xrp-markets-report/.

22  [26]   Daniel  Palmer,  *Ripple  Price  Passes  Historic  $1  Milestone*,  CoinDesk  (Dec.  21,  2017)
    https://www.coindesk.com/ripple-price-passes-historic-1-milestone/.

23  [27]   @warpaul, https://twitter.com/yoshitaka_kitao/status/940785785925709829.

24  [28]   https://twitter.com/warpaul/status/943766056710975490.

25  [29]   Interview available at https://twitter.com/jonerlichman/status/941354964227522561?lang=en.

26  [30]   *Id.*

27  [31]   *Id.*

28

COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1 | tweeted: "Bloomberg welcomes $XRP to @theterminal and gets it right – #2 market cap behind $BTC

2 | at ~$80B!"[32]

3 |     34.    About a week later, on or about December 22, 2017, Garlinghouse tweeted an article

4 | titled "Bitcoin Is So 2017 as Ripple Soars at Year End," with the caption "I'll let the headline speak for

5 | itself. $xrp."[33]

6 |     35.    Similarly, on or about January 17, 2018, Garlinghouse tweeted a link to a *CNBC* article

7 | titled "Ripple is sitting on close to $80 billion and could cash out hundreds of millions per month – but

8 | it isn't," with the caption: "A good read on why fostering a healthy $XRP ecosystem is a top priority at

9 | @Ripple."[34]

10 |     36.    However, the reality was that Ripple was profiting by selling to investors from its

11 | massive store of XRP. In 2017 alone, Ripple sold more than $180 million worth of XRP. These sales

12 | accelerated in the first quarter of 2018, reaching $151.1 million in just three months.

13 | **The Price of XRP Is Directly Tied to Ripple's Business and Operations**

14 |     37.    The Company's primary source of revenue is the periodic sale of XRP to investors. The

15 | price for XRP, in turn, is directly tied to the managerial skills and efforts of Ripple, XRP II,

16 | Garlinghouse, and other third parties who they employ, or with whom they are associated. Ripple

17 | regularly promotes its improvements to the XRP ecosystem, which are intended to increase demand for

18 | XRP and thus potential returns for XRP investors. For example, in describing the reasons behind the

19 | dramatic price appreciation of XRP during the fourth quarter of 2017, Ripple specifically cited as of

20 | "particular importance," the Company's various business initiatives, including: (i) Ripple's partnership

21 | with American Express/Santander; (ii) Ripple's activation of the previously discussed escrow of XRP to

22 | limit periodic offers and distributions; and (iii) a Japanese/Korean banking consortium backed by the

23 | Company.[35] In the report, Ripple stated that its "consistent and steadfast support of XRP is a major

24 |

25 | [32]  @bgarlinghouse, https://twitter.com/bgarlinghouse/status/941375649549246464.

26 | [33]  @bgarlinghouse, https://twitter.com/bgarlinghouse/status/944325730338357248.

27 | [34]  https://twitter.com/bgarlinghouse/status/953676992313872384?lang=en.

28 | [35]  Q4 2017 XRP Markets Report, https://ripple.com/insights/q4-2017-xrp-markets-report/.

1  advantage as the payments industry continues to seriously consider it as an alternative liquidity

2  solution."[36] The centralized nature of XRP compared to other cryptocurrencies further cements the

3  central role of defendants in determining the future expected value of the asset.

4          38.     Defendants' white papers, advertising and social media postings also conflate adoption

5  and use of Ripple's Enterprise Solutions businesses with adoption and use of XRP. Although ostensibly

6  separate, the two business segments are very much interrelated, because adoption of Ripple's Enterprise

7  Solutions by various institutional actors is likely to increase the use and demand for XRP. For example,

8  the Company's xRapid infrastructure solution uses XRP, which Ripple states will "dramatically lower

9  costs while enabling real-time payments in emerging markets."[37] Similarly, a November 2015 white

10  paper by the Company highlighted "XRP's Role on Ripple and in the Internet of Value" and how the

11  Company's technologies could turn a "Spark to a Wildfire" by increasing liquidity and efficiencies for

12  cross-border transactions for the Company's banking clients.[38] A February 2016 white paper followed

13  up on those purported "network effects," claiming that the use of the Ripple network and XRP would

14  increase banks' returns on investment by improving the global payment infrastructure.[39] Moreover,

15  Ripple promotes XRP and xRapid to its existing Enterprise Solutions customer base and can increase

16  the use of these products through cross-selling. Ripple has explicitly stated that this is part of its

17  business strategy.[40] As XRP can be used to transact on xRapid, and the same customers that may adopt

18  Ripple's Enterprise Solutions overlap with potential institutional users and facilitators of XRP, the

19  success of Ripple's overall business and operations is directly correlated to the price of XRP.

20

21  [36]  *Id.*

22  [37]  https://ripple.com/solutions/source-liquidity/.

23  [38]  https://ripple.com/files/ripple_vision.pdf.

24  [39]  https://ripple.com/files/xrp_cost_model_paper.pdf.

25  [40]  *E.g.,* https://ripple.com/insights/much-ado-much-to-do-part-3/("While no xCurrent customers today
26  use xRapid, we're increasingly speaking to them about their liquidity challenges and xRapid at their
    request…. As long as we continue to run xRapid pilots as successful as Cuallix's, we believe we'll drive
27  a lot of payments volume through XRP in the years ahead.").

28

1    39.    Articles such as "Ripple XRP price picks up pace as demand for xVia API increases"

2    have made the direct connection between the price of XRP and the adoption of the Company's

3    Enterprise Solutions.[41]  Ripple itself has made this link, for example tweeting on May 16, 2017: "The

4    appeal that Ripple has towards traditional financial institutions is a big advantage it has over Bitcoin."[42]

5    40.    Similarly, on June 29, 2017, Ripple tweeted a clip of an interview Garlinghouse gave on

6    CNBC with the caption: "#XRP – up 4000% this year – has shown the market favors a real use case for

7    #digitalassets...."[43]  For that interview, Garlinghouse was quoted as stating, "Digital assets are in a

8    position to be more valuable than gold."[44]

9    41.    On September 11, 2017, Garlinghouse stated in an interview with CNBC: "People are

10    looking at the success Ripple has been having as a company, *and I think that's increased the value of*

11    *XRP*."[45]  He continued by stating that Ripple wants "to keep focusing on making XRP a valuable

12    payments tool, and that value will increase accordingly," and he was "voting with my . . . pocketbook

13    on the future increased value of cryptocurrencies."[46]

14    42.    On November 27, 2017, Garlinghouse tweeted "Ripple & $XRP are giving businesses

15    'what they want in a #blockchain,'" along with a link to a Motley Fool tweet.[47]  The linked-to Motley

16    Fool tweet stated that "AmEx and Banco Santander will use Ripple's blockchain network for instant

17    intl. fund transfers.  Could be a big deal for Ripple's XRP cryptocurrency.  $AXP $SAN."[48]

18

19

20    [41]   https://globalcoinreport.com/ripple-xrp-price-picks-up-pace-as-demand-for-xvia-api-increases/.

21    [42]   @Ripple, https://twitter.com/Ripple/status/864635614020251649.

22    [43]   @Ripple, https://twitter.com/Ripple/status/880532198025121793.

23    [44]   https://twitter.com/AkikoFujita/status/880256389213339648.

24    [45]   https://www.cnbc.com/2017/09/11/ripple-ceo-brad-garlinghouse-on-bitcoin-and-xrp.html.

25    [46]   *Id.*

26    [47]   @bgarlinghouse, https://twitter.com/bgarlinghouse/status/935225940845711366.

27    [48]   @themotleyfool, https://twitter.com/themotleyfool/status/934850515640471553.

28

1        43.       Likewise, on December 14, 2017, Ripple tweeted: "The Japan Bank Consortium

2    launched a Ripple pilot with two large Korean banks – the first time money moves from Japan to Korea

3    over RippleNet."[49] On that same day Ripple tweeted "@bgarlinghouse [its CEO's Twitter handle] on

4    why crypto prices will be driven by real utility, the multi-trillion $ problem @Ripple is solving and why

5    $XRP will come out on top."[50]

6        44.       On January 4, 2018, following XRP's rapid price increase, *The New York Times*

7    published an article titled, "Rise of Bitcoin Competitor Ripple Creates Wealth to Rival Zuckerberg."[51]

8    The author of the article, Nathaniel Popper, tweeted a link to the article with the caption: "On the rise of

9    Ripple.  If this is a tulip fever, the fever has spread to chrysanthemums and poppies."[52]  He further

10   stated in the tweet: "I've asked several people close to banks if banks are indeed planning to begin using

11   Ripple's token, XRP, in a serious way, which is what investors seem to assume when they buy in at the

12   current XRP prices."[53]

13       45.       Garlinghouse publicly responded to this post, tweeting: "Over the last few months I've

14   spoken with ACTUAL banks and payment providers.  They are indeed planning to use xRapid (our

15   XRP liquidity product) in a serious way."[54]  Garlinghouse then provided a "sampling" of feedback he

16   had purportedly received from these institutions praising XRP and xRapid. This feedback implicitly

17   justified the market price and investment opportunity for XRP, including:

18   - "We ran the costs on our end and see that this is 100% more efficient that [sic] what
19     we're doing now."

20   - "The xRapid pilots all went perfectly."

21

22   [49]  @Ripple, https://twitter.com/Ripple/status/941501026267316224.

23   [50]  @Ripple, https://twitter.com/Ripple/status/941352005058011137.

24   [51]  Nathaniel Popper, *Rise of Bitcoin Competitor Ripple Creates Wealth to Rival Zuckerberg*, N.Y.
     Times, Jan. 4, 2018, https://www.nytimes.com/ 2018/01/04/technology/bitcoin-ripple.html.

25   [52]  @nathanielpopper, https://twitter.com/bgarlinghouse/status/949129952716234752.

26   [53]  *Id.*

27   [54]  *Id.*

28

- "This is much more efficient than our process today.  We'd like to move forward with xRapid today."

- "We've already used Bitcoin in transactions but the time is causing slippage and costing more to transfer.  We'd like to use xRapid and XRP to help with these issues."

- "This [XRP] is a much more efficient way to send money across borders than what we typically use today.  Especially as Bitcoin has continued to slow and become more expensive."

- "There's plenty of small to medium sized banks out there that are hit hard by fees. They'd jump at the opportunity to send money directly and bypass those fees [using XRP]."[55]

**Defendants Acknowledge that Development of the XRP Ledger Is Dependent on Their Technical, Entrepreneurial, and Managerial Efforts**

46.     As alleged herein, defendants have repeatedly acknowledged the obvious: development of the XRP Ledger and the potential profits that could be derived from investing in XRP, depends on their technical, entrepreneurial and managerial efforts.

47.     Indeed, Ripple publishes a quarterly report detailing its efforts to grow the "XRP ecosystem."[56] In the report for the second quarter of 2017, Ripple stated: "We plan to focus on three areas of liquidity development as we drive XRP towards its natural position as the digital asset standard for international value transfer."[57]  The report continues: "Most importantly, we are accelerating the pace of our investment in the XRP Ledger to build on its speed, uptime, and scalability, to ensure XRP is the most trusted enterprise-grade digital asset."[58]

48.     Three months later, in describing its goals for the fourth quarter of 2017, Ripple proclaimed it would "continue to expand [its] xRapid partnerships."[59]  The report stated that Ripple's

[55]   *Id.*

[56]   Announcing the Quarterly XRP Market Operations Report, https://ripple.com/insights/announcing-quarterly-xrp-market-operations-report/.

[57]   Q2 2017 XRP Markets Report, https://ripple.com/insights/q2-2017-xrp-markets-report/.

[58]   *Id.*

[59]   Q3 2017 XRP Markets Report, https://ripple.com/xrp/q3-2017-xrp-markets-report/.

1  "long-term goal is, and always has been, usage of XRP as a liquidity solution for more and more

2  corridors, and partnerships are key to achieving this goal."[60]

3       49.     Similarly, in January 2018, Ripple touted "a partnership with MoneyGram – one of the

4  world's largest money transfer companies – to use xRapid and XRP for near real-time cross-border

5  payments. In addition, there are a number of other xRapid deals at various stages of completion in the

6  pipeline."[61] The Company also stated that it wanted "to build the necessary markets infrastructure for

7  eventual direct usage of XRP by financial institutions."[62] Garlinghouse commented on this partnership,

8  stating "And to be clear: @MoneyGram announcement is one step in a marathon ahead to truly make

9  $XRP the global liquidity solution for payment providers and banks."[63] These are illustrative of the

10  many instances in which defendants have acknowledged their own role in promoting the market for

11  XRP, and the ways in which the future expected value of XRP is dependent on their own efforts.

12       50.     In addition, defendants, and Ripple in particular, are responsible for maintaining the

13  XRP Ledger. Unlike cryptocurrencies such as Bitcoin and Ethereum, which use a Proof of Work

14  ("PoW") consensus mechanism to verify the legitimacy of transactions on the network, the XRP Ledger

15  relies on trusted nodes, operated by Ripple, to verify the legitimacy of transactions and maintain

16  agreement on the network. The PoW mechanism utilized by Bitcoin and Ethereum helps to ensure the

17  network is decentralized by allowing anyone to use their own hardware and electricity to run the PoW

18  consensus algorithm to verify transactions on the public ledger, and send them to be recorded

19  throughout the blockchain. The network's decision-making process is thus placed entirely in the hands

20  of those who run the consensus algorithm, with their own hardware and electricity, rather than any one

21  entity or individual.

22       51.     The XRP Ledger consensus protocol, by contrast, relies on "trusted nodes" on Ripple's

23  Unique Node Lists ("UNL"). The UNL is the set of trusted nodes that communicate "reliable"

24  [60] *Id.*

25  [61] Q4 2017 XRP Markets Report, https://ripple.com/insights/q4-2017-xrp-markets-report/.

26  [62] *Id.*

27  [63] @bgarlinghouse, https://twitter.com/bgarlinghouse/status/951461582424358912.

28

1  information to other nodes on the XRP Ledger. Like miners in Bitcoin and Ethereum, these "trusted

2  nodes" validate transactions. However, unlike those miners, the trusted nodes are either selected, or

3  controlled, by Ripple itself. Ripple provides its own default and recommended UNL – comprised of

4  only five Ripple-hosted nodes. Although Ripple claims it plans to decentralize the network, it admits

5  that it will only remove its own "trusted nodes" if it decides that other validator nodes are reliable,

6  reputable, stable and secure.[64] Ripple's view of decentralization of the XRP Ledger still involves Ripple

7  maintaining full control over the XRP Ledger, and deciding who owns and operates any third-party

8  "trusted nodes."

9          52.      In February 2018, BitMEX Research, a blockchain research group, installed and ran a

10  copy of Rippled (the software that allows users to run nodes on the XRP Ledger).[65] According to

11  BitMEX Research, "[t]he node operated by downloading a list of five public keys from the server

12  v1.ripple.com."[66] The report continued: "The software indicates that four of the five keys are required

13  to support a proposal in order for it to be accepted [on the XRP Ledger]."[67] However, "[a]ll five keys

14  are assigned to Ripple.com."[68] BitMEX Research concluded that "[s]ince the keys were all downloaded

15  from the Ripple.com server, *Ripple is essentially in complete control of moving the ledger forward,* so

16  one could say *the system is centralized*."[69] As a result, BitMEX Research found that "the Ripple

17  system appears for all practical purposes to be centralized and is therefore perhaps devoid of any

18

19

20  ─────────────────
    [64]  Rome Reginelli, *Decentralization Strategy Update* (Oct. 17, 2017), https://ripple.com/dev-
21  blog/decentralization-strategy-update/; Stephan Thomas, *How We Are Further Decentralizing the XRP*
22  *Ledger to Bolster Robustness for Enterprise Use,* https://ripple.com/insights/how-we-are-further-
    decentralizing-the-ripple-consensus-ledger-rcl-to-bolster-robustness-for-enterprise-use/.

23  [65]  *The Ripple Story*, BitMEX Research (Feb. 6, 2018) https://blog.bitmex.com/the-ripple-story/.

24  [66]  *Id.*

25  [67]  *Id.*

26  [68]  *Id.*

27  [69]  *Id.*

28

1  interesting technical characteristics, such as censorship resistance, which coins like Bitcoin may

2  have."[70]

3        53.    Ripple's control over the XRP Ledger and the flow of XRP was put on dramatic display

4  in 2015, when it exerted this control to freeze the sale of approximately 96 million XRP, worth about $1

5  million at the time, by Company co-founder McCaleb. Ripple received heavy criticism for the incident.

6  As noted by one cryptocurrency blog: "This incident is a reminder of the fact that despite its constant

7  portrayal as a semi-decentralized currency, there's a lot of control that can be exercised upon your XRP

8  by the company!"[71]

9        54.    As additional indications of centralization and control over every XRP transaction,

10  Ripple is continuously updating the Ripple ecosystem. The implementation of gateway freezes, such as

11  the one used to freeze McCaleb's attempted XRP sale, is one example of an XRP system update by

12  Ripple, which the Company activated in August 2014.

13        55.    Ripple's XRP product manager, Warren Paul Anderson ("Anderson"), frequently markets

14  the XRP Ledger's dependence on Ripple's continued commitment to it. For example, on December 14,

15  2016, he tweeted: "Thrilled to have the rippled team in town for a summit to discuss the future of

16  @Ripple Consensus Ledger & XRP as a native digital asset!"[72]  Approximately a year later, in

17  December 2017, he retweeted his earlier statement, saying "It's that time of year again, and what a year

18  it's been! #XRP Ledger (rippled) core developers in town @Ripple for a summit to discuss planning for

19  2018."[73] Later that same day, Anderson posted a picture of Ripple engineers with the caption: "A great

20  day of reflection & planning @Ripple w/ the greatest C++ engineering team in the world #XRP."[74]  On

21

22

23  [70]  *Id.*

24  [71]  https://cryptocrimson.com/news/ripple-freezes-bitstamp-funds-co-founder.

25  [72]  @warpaul, https://twitter.com/warpaul/status/809047284717469696.

26  [73]  @warpaul, https://twitter.com/warpaul/status/940970970759573505.

27  [74]  @warpaul, https://twitter.com/warpaul/status/941087297360994304.

28

1   that same day, Ripple's head of cryptography tweeted: "Today, all the $XRP Ledger developers at

2   @Ripple are in SF to reflect on 2017 and plan for 2018."[75]

3       56.    Later in the month, on December 29, 2017, a Ripple software engineer, Nik Bougalis

4   ("Bougalis"), tweeted: "I've been working on code review for the last couple days. Excited to get

5   rippled 0.90.0 out the door,"[76] indicating that Ripple was working to launch a new version of Rippled

6   and thereby advance the XRP Ledger. Following, Ripple's release of a Rippled upgrade, Bougalis

7   tweeted: "The @Ripple C++ team has released rippled 0.90.0. Cool new features: history sharding,

8   deposit authorizations, checks and more!"[77]

9       57.    On March 5, 2018, Bougalis similarly reposted a tweet defending investing in XRP by

10  stating, "So you'd invest in Linux, not Microsoft. In UseNet, not Google. In MySQL, not Oracle. Good

11  luck with your portfolio. ***Ripple is the next Google***. You're stuck in the silly idea that *a company can't*

12  *build a digital asset, even when it does this right under your nose*," with the caption: "Now that's a mic

13  drop, if I've ever seen one."[78] In other words, as acknowledged by Ripple's own employees, the value

14  of XRP is tied directly to the security's centralization in Ripple and the business, operations, success

15  and prospects of the Company.

16  **XRP Is a Security**

17      58.    XRP, despite its name as a "token," is actually a security under California law. In

18  particular: (i) Ripple uses the funds it raised from the sale of XRP to fund its business ventures; (ii) the

19  Company indiscriminately offers XRP for sale to the public at large; (iii) plaintiff and the Class (as

20  defined herein) are effectively powerless to control the success of Ripple and XRP; and (iv) plaintiff

21  and the Class members' investment is substantially at risk, and is without any security.

22

23

---

24  [75] @JoelKatz, https://twitter.com/JoelKatz/status/940974743733153792.

25  [76] @nbougalis, https://twitter.com/nbougalis/status/946829572145741824.

26  [77] @nbougalis, https://twitter.com/nbougalis/status/966106932925882368.

27  [78] @nbougalis, https://twitter.com/nbougalis/status/970733741319503872.

28

1    59.    Plaintiff and the Class invested in XRP as a common enterprise with the expectation of

2    profits derived solely from the efforts of Ripple and its employees. Plaintiff and the Class used fiat and

3    other digital currencies, such as Bitcoin and Ethereum, to purchase XRP. The expected profits and

4    returns on these investments are directly intertwined with the business and operations of Ripple. Ripple

5    acknowledges that it "sells XRP to fund its operations and promote the network. This allows Ripple

6    Labs to have a spectacularly skilled team to develop and promote the Ripple protocol and network."[79]

7    Similarly, Garlinghouse has conceded that Ripple's "self-interest is aligned with building and

8    maintaining a healthy XRP market."

9    60.    The success of XRP and the development of the XRP ecosystem is uniquely centralized

10    in Ripple. The Company created the XRP Ledger and all 100 billion XRP in existence, and concedes

11    that it "sells XRP to fund its operations and promote the network," in order "to have a spectacularly

12    skilled team to develop[] and promote the Ripple protocol and network."[80] As of May 6, 2018, Ripple

13    held over 60.8 billion XRP – more than 60% of the XRP in existence.[81]

14    61.    In addition, Ripple directly influences the supply of XRP by locking more than half the

15    supply of XRP in escrow to provide "supply predictability and trusted, healthy $XRP markets."[82]

16    Ripple exercises near complete control over the XRP Ledger itself. As noted by BitMEX Research,

17    "Ripple is essentially in complete control of moving the ledger forward, so one could say the system is

18    centralized [sic]."[83] Ripple touts its control over the XRP Ledger as an advantage for XRP, contending

19    that governance "may be where XRP most significantly distinguishes itself [from Bitcoin, Ethereum,

20

21

---

22  [79]  Ripple credits, https://wiki.ripple.com/Ripple_credits#XRP_funds_the_development_and_promotion_of_the_protocol_and_the_network.

23  [80]  *Id.*

24  [81]  Market Performance, https://ripple.com/xrp/market-performance/ (last visited May 23, 2018).

25  [82]  Q4 2017 XRP Markets Reports, https://twitter.com/bgarlinghouse/status/938933791453368322?

26  lang=en.

27  [83]  *The Ripple Story*, BitMEX Research (Feb. 6, 2018), https://blog.bitmex.com/the-ripple-story/.

28

COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

and Litecoin] going forward."[84]  Similarly, it has stated that "[b]uilding pivotal infrastructure on top of

technology that does not have clear governance is not palatable for large established companies."[85]

62.     Defendants themselves have recognized that XRP investors have a reasonable

expectation of profits derived from defendants' efforts to improve the XRP ecosystem, and have

publicly touted XRP's price performance on numerous occasions, as detailed herein.  Ripple's website

even contains an "XRP Buying Guide" that provides links to exchanges and instructions on "How to

Buy XRP" on those exchanges.[86]  Furthermore, Ripple has taken steps to promote XRP in an attempt to

increase the token's price or to justify its price appreciation, and the Company has issued a white paper

touting XRP's purported "ROI."  Garlinghouse and other Ripple employees have publicly stated that

they are bullish investors on XRP.

63.     Similarly, Ripple and its CEO have acknowledged that the value of XRP will be driven

by the XRP Ledger's usefulness in solving cross-border payments and its adoption by institutions.

Defendants have similarly touted adoption of Ripple's Enterprise Solutions, which are directly

correlated with the use case and likely value of XRP.  In addition, defendants have pooled XRP

investments to fund projects to promote the XRP Ledger and interledger protocol, thereby increasing

the value of the XRP Ledger and XRP.  For example, on April 11, 2018, Ripple announced that it had

"invested $25 million in XRP to Blockchain Capital Parallel IV, LP," to "support and develop

additional [XRP] use cases beyond payments."[87]  Ripple's Senior Vice President of Business

Development promoted this investment, tweeting: "Ripple's $25 million investment in

---

[84]   Q4 2017 XRP Markets Report, https://ripple.com/insights/q4-2017-xrp-markets-report/.

[85]   *Id.*

[86]   XRP Buying Guide, https://ripple.com/xrp/buy-xrp/.

[87]   *Ripple Invests $25 Million to Drive Innovation in Blockchain and Digital Assets,* https://ripple.com/insights/ripple-invests-25-million-to-drive-innovation-in-blockchain-and-digital-assets/.

1  @blockchaincap's new fund is the first and not the last contribution to ventures that further develop the

2  #blockchain and $XRP ecosystems."[88]

3      64.    Plaintiff and the Class have entirely passive roles vis-à-vis the success of the XRP

4  Ledger and XRP. Rather, as defendants' own marketing makes clear, the profits reasonably expected to

5  be derived from investing in XRP are solely dependent on the technical, entrepreneurial, and managerial

6  efforts of defendants and their agents and employees. Plaintiff and the Class reasonably expected

7  defendants to provide significant managerial efforts, to develop and improve the XRP Ledger, to

8  develop and sustain a supportive network, and to secure exchanges through which XRP can be

9  exchanged. Defendants repeatedly represented that they would provide significant managerial efforts to

10  achieve these objectives and make the XRP ecosystem a success. The purchase of XRP is thus an

11  investment in a common enterprise, with an expectation of profits, solely from the efforts of defendants

12  and their affiliates.

13  **Recent SEC Guidance Undermines Ripple's Denials**

14      65.    Ripple has long claimed that XRP is not a security. As recently as April 12, 2018,

15  Ripple's Chief Marketing Strategist told *CNBC* in an interview: "We absolutely are not a security. We

16  don't meet the standards for what a security is based on the history of court law."[89] Instead, Ripple

17  claims that XRP is a commodity, such as gold. Purchasers of XRP did not have any reason to challenge

18  these contentions from the Company, given the unclear state of regulation and quickly evolving and

19  unchartered landscape of blockchain technologies. This state of affairs has only recently changed, as

20  regulators have begun to provide clarifying guidance that undermines defendants' denials, and the

21  centralized nature of XRP in Ripple has become more apparent.

22      66.    In July 2017, U.S. Securities and Exchange Commission ("SEC") began to question the

23  legality of unregistered token sales, such as the sales of XRP, and made clear that sellers of unregistered

24  securities cannot evade their obligations under the federal securities laws by elevating form over

25

26  [88]  @patgriffin9, https://twitter.com/Ripple/status/984061347078987776.

27  [89]  Kate Rooney, *Ripple says its cryptocurrency XRP is not a security*, CNBC (Apr. 12, 2018), https://www.cnbc.com/2018/04/12/ripple-says-its-cryptocurrency-xrp-is-not-a-security.html.

28

COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1  substance. On July 23, 2017, the SEC issued an "Investor Alert," which stated that the agency was
2  "concerned that the rising use of virtual currencies in the global marketplace may entice fraudsters to
3  lure investors into Ponzi and other schemes in which these currencies are used to facilitate fraudulent,
4  or simply fabricated, investments or transactions."[90]  The release warned that "the fraud may also
5  involve an unregistered offering or trading platform" and promises of "high returns for getting in on the
6  ground floor of a growing Internet phenomenon."[91]

7        67.    On July 25, 2017, the SEC released an "Investor Bulletin" on ICOs.  The bulletin stated
8  that digital blockchain currencies "may be securities" under the facts and circumstances, and that such
9  "virtual coins or tokens in an ICO *are subject to the federal securities laws*."[92]  The release continued
10 in pertinent part:

11        A virtual currency is a digital representation of value that can be digitally traded and
12        functions as a medium of exchange, unit of account, or store of value.  Virtual tokens
           or coins may represent other rights as well.  Accordingly, in certain cases, *the tokens*
13        *or coins will be securities and may not be lawfully sold without registration with*
           *the SEC or pursuant to an exemption from registration*.
14

15        68.    That same day, the SEC issued an investigative report concluding that the tokens issued
16 by a blockchain and distributed ledger organization known as "The Dao" were, in fact, securities.  The
17 press release announcing the report stated that, "issuers of distributed ledger or blockchain technology-
18 based securities *must register offers and sales of such securities unless a valid exemption applies*" and
19 that those organizing unregistered offerings "may be liable for violations of the federal securities
20 laws."[93]  In the case of The Dao, the SEC found that even though the organization labeled its tokens as

21

22

23  [90]  *Investor Alert: Ponzi Schemes Using Virtual Currencies*, https://www.sec.gov/investor/alerts/ia_virtualcurrencies.pdf.

24  [91]  *Id.*

25  [92]  *See Investor Bulletin: Initial Coin Offerings*, https://www.sec.gov/oiea/investor-alerts-and-
26  bulletins/ib_coinofferings.

27  [93]  *See SEC Issues Investigative Report Concluding DAO Tokens a Digital Asset, Were Securities*,
    https://www.sec.gov/news/press-release/2017-131.

28

COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1   something other than securities, the virtual currency was subject to the registration requirements of the

2   federal securities laws as, in economic substance, it was a security.

3         69.    On December 11, 2017, SEC Chairman Jay Clayton ("Clayton") issued another

4   statement on digital tokens. He confirmed that "[m]erely calling a token a 'utility' token or structuring it

5   to provide some utility does not prevent the token from being a security," and warned security offerors

6   that attempts to "elevate form over substance" could not obviate their obligations under the federal

7   securities laws.[94]  Clayton continued in pertinent part:

8        *[C]ertain market professionals have attempted to highlight utility characteristics of*

9        *their proposed initial coin offerings in an effort to claim that their proposed tokens*
     *or coins are not securities. Many of these assertions appear to elevate form over*

10       *substance. Merely calling a token a "utility" token or structuring it to provide*
     *some utility does not prevent the token from being a security.* Tokens and offerings

11       that incorporate features and marketing efforts that emphasize the potential for
     profits based on the entrepreneurial or managerial efforts of others continue to

12       contain the hallmarks of a security under U.S. law. On this and other points where
     the application of expertise and judgment is expected, I believe that gatekeepers and

13       others, including securities lawyers, accountants and consultants, need to focus on
     their responsibilities. I urge you to be guided by the principal motivation for our

14       registration, offering process and disclosure requirements: investor protection and, in
     particular, the protection of our Main Street investors.

15

16                             * * *

17       [M]any token offerings appear to have gone beyond this construct and are more
     analogous to interests in a yet-to-be-built publishing house with the authors, books

18       and distribution networks all to come. *It is especially troubling when the promoters*

19       *of these offerings emphasize the secondary market trading potential of these*
     *tokens. Prospective purchasers are being sold on the potential for tokens to*

20       *increase in value – with the ability to lock in those increases by reselling the tokens*
     *on a secondary market – or to otherwise profit from the tokens based on the efforts*

21       *of others. These are key hallmarks of a security and a securities offering.*

22       *By and large, the structures of initial coin offerings that I have seen promoted*
     *involve the offer and sale of securities and directly implicate the securities*

23       *registration requirements and other investor protection provisions of our federal*
     *securities laws.* Generally speaking, these laws provide that investors deserve to

24       know what they are investing in and the relevant risks involved.

25        70.    Clayton could have been referring directly to Ripple and defendants' attempts to tout the

26  profit-making potential of investing in XRP tokens on the one hand, while disclaiming any

27    [94]  *See* Jay Clayton, *Statement on Cryptocurrencies and Initial Coin Offerings*, SEC (Dec. 11, 2017).

28

1  responsibilities to comply with applicable securities laws on the other. The SEC has since launched

2  dozens of investigations into cryptocurrency startups.

3     71.    For the integrity of the U.S. securities markets, defendants' attempts to circumvent

4  important investor safeguards must fail. Although cryptocurrencies represent something of a new

5  investing frontier, the old adage rings true: "If it looks like a duck, swims like a duck, and quacks like a

6  duck, then it probably is a duck." Here, XRP has all of the hallmarks of a security, and defendants'

7  denial does nothing to diminish their obligations to register these securities under applicable securities

8  laws.

9     72.    In light of recent SEC statements, there can now be little doubt that XRP tokens

10  constitute securities. Despite this fact, defendants have failed to register the securities in accordance

11  with applicable laws and regulations, before offering and selling them to the investing public. Further,

12  the sale of XRP was not subject to any exemption or exceptions to the registration requirements

13  available under state or federal law. As a result, the offer and sale of XRP was unlawful, and

14  defendants are liable to plaintiff and the Class as purchasers of XRP as alleged herein.

15                              **CLASS ACTION ALLEGATIONS**

16     73.    Plaintiff brings this action as a class action pursuant to §382 of the California Code of

17  Civil Procedure on behalf of a class consisting of all citizens of California who purchased XRP (the

18  "Class"). Excluded from the Class are defendants and their families, the officers, directors and affiliates

19  of the defendants, at all relevant times, members of their immediate families and their legal

20  representatives, heirs, successors or assigns, and any entity in which defendants have or had a

21  controlling interest.

22     74.    The members of the Class are so numerous that joinder of all members is impracticable.

23  Hundreds of millions of XRP have been sold by defendants. While the exact number of Class members

24  are unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff

25  believes that there are thousands of members in the proposed Class.

26     75.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of

27  the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is

28  complained of herein.

- 25 -

76.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel, who is competent and experienced in class and securities litigation.

77.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether defendants violated the Corporations Code;

(b)     whether XRP are securities;

(c)     whether XRP were required to be registered under applicable laws;

(d)     whether plaintiff and the Class are entitled to rescind their purchases of XRP; and

(e)     to what extent the members of the Class have sustained damages and the proper measure of damages.

78.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**FIRST CAUSE OF ACTION**

**For Violation of §§25110 and 25503 of the Corporations Code**
**Against All Defendants**

79.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

80.     This Cause of Action is brought pursuant to §§25110 and 25503 of the Corporations Code against all defendants.

81.     As detailed herein, XRP is a security.

82.     Defendants failed to qualify XRP with the Commissioner of Corporations and XRP did not qualify for an exemption from registration.

83.     Defendants sold XRP to plaintiff and the Class, in violation of §25110, which makes it "unlawful for any person to offer or sell in this state any security in an issuer transaction ... unless such

-26-
COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1   sale has been qualified ... or unless such security or transaction is exempted or not subject to

2   qualification."

3       84.     As such, Garlinghouse and Ripple have participated in the unlawful sale of securities in

4   violation of the Corporations Code, and are liable to plaintiff and the Class for rescission and/or

5   compensatory damages under §25503.

6                              **SECOND CAUSE OF ACTION**

7                      **For Violation of §25504 of the Corporations Code**
8                          **Against Ripple and Garlinghouse**

9       85.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

10      86.     This Cause of Action is brought pursuant to §25504 of the Corporations Code against

11  Ripple and Garlinghouse.

12      87.     Due to his position within the Company and role, vis-à-vis, the XRP Ledger, ownership

13  interest in and control over Ripple, Garlinghouse acted as a controlling person of Ripple and XRP II

14  within the meaning of §25504 of the Corporations Code as alleged herein.  By virtue of his position as

15  CEO and his participation in and/or awareness of Ripple's operations, Garlinghouse had the power to

16  influence and control, and did influence and control, directly or indirectly, the decision-making, relating

17  to the sale of XRP and the failure to register these sales.

18      88.     Ripple controlled XRP II, as the parent of XRP II, and the various actors responsible for

19  the advancement of the XRP ecosystem.  In addition, Ripple controlled Garlinghouse and all of his

20  employees.

21      89.     Ripple and Garlinghouse also controlled the flow of XRP, the advancement of the XRP

22  Ledger, and the means by which transactions in XRP and the offer and sale of XRP occurred, including

23  their ability to freeze XRP accounts and control the flow of XRP through various exchanges and the

24  other indications of control alleged herein.  By virtue of their own acts, and their positions of control

25  and influence, Ripple and Garlinghouse materially aided in the acts and transactions constituting the

26  violations alleged herein.

27      90.     By virtue of the foregoing, defendants are liable to plaintiff and the Class as secondary

28  actors under §25504 of the Corporations Code.

91.     As such, Garlinghouse and Ripple have participated in an unregistered sale of securities in violation of the Corporations Code, and are liable to plaintiff and the Class for rescission and/or compensatory damages.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying plaintiff as a class representative and plaintiff's counsel as Lead Counsel;

B.     Declaring that XRP is a security and that defendants' unregistered sales of XRP violated applicable law;

C.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

E.     Awarding rescission or a rescissionary measure of damages; and

F.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: June 27, 2018                    ROBBINS ARROYO LLP
                                        BRIAN J. ROBBINS
                                        STEPHEN J. ODDO
                                        ERIC M. CARRINO

                                        BRIAN J. ROBBINS

                                        600 B Street, Suite 1900
                                        San Diego, CA 92101
                                        Telephone: (619) 525-3990
                                        Facsimile: (619) 525-3991
                                        E-mail: brobbins@robbinsarroyo.com
                                            soddo@robbinsarroyo.com
                                            ecarrino@robbinsarroyo.com

                                        Attorneys for Plaintiff

1275287

COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

# EXHIBIT E

1  ROBBINS ARROYO LLP
   BRIAN J. ROBBINS (190264)
2  STEPHEN J. ODDO (174828)
   ERIC M. CARRINO (310765)
3  600 B Street, Suite 1900
   San Diego, CA 92101
4  Telephone: (619) 525-3990
   Facsimile: (619) 525-3991
5  E-mail: brobbins@robbinsarroyo.com
          soddo@robbinsarroyo.com
6          ecarrino@robbinsarroyo.com

7  Attorneys for Plaintiffs
   Vladi Zakinov and David Oconer

8

9  [Additional counsel appear on signature page]

**FILED**
SAN MATEO COUNTY

AUG 3 0 2018

Clerk of the Superior Court
By _____
        DEPUTY CLERK

File By Fax

10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        COUNTY OF SAN MATEO

12  VLADI ZAKINOV, Individually and on        )  Case No. 18-CIV-02845
    Behalf of All Others Similarly Situated,  )
13                                            )  CLASS ACTION
                      Plaintiff,              )
14                                            )  STIPULATION AND [PROPOSED]
         v.                                   )  ORDER CONSOLIDATING RELATED
15                                            )  ACTIONS AND RELATED MATTERS
    RIPPLE LABS INC., XRP II, LLC,            )
16  BRADLEY GARLINGHOUSE, and DOES            )
    1-25, Inclusive,                          )  Judge: Richard H. DuBois
17                                            )  Dept: 16
                      Defendants.             )  Date Action Filed: June 5, 2018
18  _____  )
                                              )
19  DAVID OCONER, Individually and on         )  Case No. 18-CIV-03332
    Behalf of All Others Similarly Situated,  )
20                                            )
                      Plaintiff,              )
21                                            )
         v.                                   )
22                                            )
    RIPPLE LABS INC., XRP II, LLC,            )
23  BRADLEY GARLINGHOUSE, and DOES            )
    1-25, Inclusive,                          )
24                                            )  Judge: Robert D. Foiles
                      Defendants.             )  Dept: 21
25  _____  )  Date Action Filed: June 27, 2018

26

27

28

18-CIV-02845
SO
Stipulation & Order
1362929

_____
STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

RECEIVED
SAN MATEO COUNTY
AUG 2 8 2018
Clerk of the Superior Court

1.     The above-captioned actions pending in this Court (the "Related Actions") make substantially the same allegations against defendant Ripple Labs Inc. ("Ripple" or the "Company"), XRP II, LLC, and Bradley Garlinghouse.

2.     In an effort to assure consistent rulings and decisions and the avoidance of unnecessary duplication of effort, counsel for the respective parties in the Related Actions hereby enter into this Stipulation and [Proposed] Order Consolidating Related Actions and Related Matters (the "Stipulation").

3.     Counsel for the parties to this Stipulation include Robbins Arroyo LLP ("Robbins Arroyo") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") on behalf of plaintiff Vladi Zakinov; Robbins Arroyo on behalf of David Oconer (collectively, "Plaintiffs"); Skadden, Arps, Slate, Meagher & Flom LLP and Debevoise & Plimpton LLP on behalf of defendants Ripple Labs, Inc., XRP II, LLC, and Bradley Garlinghouse (collectively, "Defendants").

4.     The parties agree that it would be duplicative and wasteful of the Court's resources for Defendants named in the Related Actions to have to respond to the individual complaints prior to the agreed upon consolidation and in light of the anticipated filing of a consolidated complaint. Therefore, the parties agree that Defendants need not respond to the individual complaints that have already been filed in this Court.

5.     On August 8, 2018, the Zakinov action was designated as complex. On August 21, 2018, it was assigned to the Honorable Richard H. DuBois, Department 16, for all purposes. A complex case status conference in the Oconer action is set for August 29, 2018.

## CONSOLIDATION

6.     The following Related Actions are hereby consolidated for all purposes, including pre-trial proceedings and trial (the "Consolidated Action"):

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Zakinov v. Ripple Labs Inc.* | 18-CIV-02845 | 6/5/2018 |
| *Oconer v. Ripple Labs Inc.* | 18-CIV-03332 | 6/27/2018 |

1   Every pleading filed in the Consolidated Action, or in any separate action included herein, shall

2   bear the following caption:

3                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

4                            COUNTY OF SAN MATEO

5   IN RE RIPPLE LABS INC. LITIGATION          )   Lead Case No. 18-CIV-02845
                                               )
6   _____        )   (Consolidated with Case No. 18-CIV-03332)
                                               )
7   This Document Relates To:                  )
                                               )   CLASS ACTION
8       ALL ACTIONS.                           )
                                               )
9   _____        )

10      7.      The files of the Consolidated Action shall be maintained in one file under Master

11  File No. 18-CIV-02845.

12      8.      Plaintiffs shall either designate a complaint as operative or file a Consolidated

13  Complaint ("Consolidated Complaint") within 45 days after entry of this order, unless otherwise

14  agreed upon by the parties.  If filed, the Consolidated Complaint shall be the operative

15  complaint and shall supersede all complaints filed in any of the actions consolidated herein.

16  Defendants shall respond to the operative complaint or Consolidated Complaint within 45 days

17  after service, unless otherwise agreed by the parties.  In the event that Defendants file any

18  motions directed at the operative complaint or Consolidated Complaint, the opposition and

19  reply briefs shall be filed within 45 and 20 days, respectively, of the motions, unless otherwise

20  agreed upon by the parties.  Counsel agrees to confer to select a hearing date.

21              **APPOINTMENT OF A LEADERSHIP STRUCTURE**

22      9.      The Plaintiffs agree that Robbins Arroyo and Robbins Geller shall serve as Co-

23  Lead Counsel for Plaintiffs ("Co-Lead Counsel") in the Consolidated Action, and Defendants

24  take no position on the Court's appointment of Co-Lead Counsel for Plaintiffs or the

25  responsibilities assumed by that Co-Lead Counsel.

26      10.     Plaintiffs agree that Co-Lead Counsel shall have sole authority to speak for

27  Plaintiffs in matters regarding pre-trial procedure, trial, and settlement and shall make all work

28

                                        - 2 -

1 assignments in such manner as to facilitate the orderly and efficient prosecution of the

2 Consolidated Action and to avoid duplicative or unproductive effort.

3    11.    Plaintiffs agree that Co-Lead Counsel shall be responsible for coordinating all

4 activities and appearances on behalf of Plaintiffs. No motion, request for discovery, or other

5 pre-trial or trial proceedings shall be initiated or filed by any Plaintiff except through Co-Lead

6 Counsel.

7    12.    Plaintiffs agree that Co-Lead Counsel shall be available and responsible for

8 communications to and from this Court, including distributing orders and other directions from

9 the Court to counsel, and shall be responsible for communication with Defendants' counsel on

10 matters of case administration and scheduling. Co-Lead Counsel shall further be responsible for

11 creating and maintaining a master service list of all parties and their respective counsel.

12    13.    Defendants' counsel may rely upon all agreements made with Co-Lead Counsel,

13 or other duly authorized representative of Co-Lead Counsel, and such agreements shall be

14 binding on all Plaintiffs.

15 ## RELATED MATTERS

16    14.    This Order shall apply to each case, arising out of the same or similar

17 transactions and/or events as the Related Actions which is currently pending in, subsequently

18 filed in, remanded to, or transferred to this Court.

19    15.    When a case which properly belongs as part of the *In re Ripple Labs Inc.*

20 *Litigation*, Lead Case No. 18-CIV-02845, is hereafter or has been filed in, remanded to, or

21 transferred to this Court, counsel for the parties shall call such filing, remand, or transfer to the

22 attention of the clerk of this Court for purposes of moving the Court for an order consolidating

23 such case(s) with *In re Ripple Labs Inc. Litigation*, Lead Case No. 18-CIV-02845. Counsel for

24 the parties will further assist in assuring that counsel for the parties in such subsequent action(s)

25 receive notice of this Order.

26

27

28

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

1    IT IS SO STIPULATED.

2    DATED:  8/22/18                              ROBBINS ARROYO LLP
                                                 BRIAN J. ROBBINS
3                                                STEPHEN J. ODDO
                                                 ERIC M. CARRINO
4

5

6                                                STEPHEN J. ODDO

7                                                600 B Street, Suite 1900
                                                 San Diego, CA 92101
8                                                Telephone: (619) 525-3990
                                                 Facsimile: (619) 525-3991
9                                                E-mail: brobbins@robbinsarroyo.com
                                                         soddo@robbinsarroyo.com
10                                                        ecarrino@robbinsarroyo.com

11                                               Proposed Co-Lead Counsel for Plaintiffs and
                                                 Counsel for Plaintiffs Vladi Zakinov and
12                                               David Oconer

13   DATED:  8/22/18                             ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
14

15

16                                               BRIAN O. O'MARA (229737)

16                                               DAVID C. WALTON (167268)
17                                               BRIAN E. COCHRAN (286202)
                                                 655 West Broadway, Suite 1900
18                                               San Diego, CA 92101
                                                 Telephone: (619) 231-1058
19                                               Facsimile: (619) 231-7423
                                                 E-mail: davew@rgrdlaw.com
20                                                       bomara@rgrdlaw.com
                                                         bcochran@rgrdlaw.com
21
                                                 Proposed Co-Lead Counsel for Plaintiffs and
22                                               Counsel for Plaintiff Vladi Zakinov

23                                               SHAWN A. WILLIAMS (213113)
                                                 Post Montgomery Center
24                                               One Montgomery Street, Suite 1800
                                                 San Francisco, CA  94104
25                                               Telephone: (415) 288-4545
                                                 Facsimile: (415) 288-4534
26                                               E-mail: shawnw@rgrdlaw.com

27                                               Additional counsel for Plaintiff Vladi Zakinov

28

                                    - 4 -

DATED: 8/22/18

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

Peter Morrison/ by permission SB

PETER B. MORRISON

Peter B. Morrison
Virginia F. Milstead
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: peter.morrison@skadden.com
virginia.milstead@skadden.com

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com

Mary Jo White (*pro hac vice* forthcoming)
Andrew J. Ceresney (*pro hac vice*
forthcoming)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
aceresney@debevoise.com

Counsel for defendants Ripple Labs Inc., XRP
II, LLC, and Bradley Garlinghouse

1286406

- 5 -

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

## ORDER

The above Stipulation Consolidating Related Actions and Related Matters having been considered, and good cause appearing therefore,

IT IS SO ORDERED.

DATED: _8-29-18_   _____

HONORABLE RICHARD H. DUBOIS
JUDGE OF THE SUPERIOR COURT

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

1
## DECLARATION OF SERVICE

2    I, the undersigned, declare:

3    1.    That declarant is and was, at all times herein mentioned, a citizen of the United

4  States and a resident of the County of San Diego, over the age of 18 years, and not a party to or

5  interest in the within action; that declarant's business address is 600 B Street, Suite 1900, San

6  Diego, California 92101.

7    2.    That on August 23, 2018, I served the following document(s):

8  STIPULATION AND [PROPOSED] ORDER CONSOLIDATING RELATED
   ACTIONS AND RELATED MATTERS

9

10   _____    By transmitting via facsimile the document(s) listed above to the fax
            number(s) set forth on the attached Service List from fax number (619) 525-

11           3991 on this date before 5:00 p.m. The facsimile transmission was reported as
            complete and without error.

12   X        By placing the document(s) listed above in a United States mailbox at San
            Diego, California in a sealed envelope with postage thereon fully prepaid and

13           addressed to the parties listed on the attached Service List.

14   _____    By causing the document(s) listed above to be served by a courier service on
            the following parties:

15

16   _____    By depositing in a box or other facility regularly maintained by UPS, an
            express service carrier, or delivered to a courier or driver authorized by said

17           express service carrier to receive documents, in an envelope designated by the
            said express service carrier, with delivery fees paid or provided for, addressed

18           to the parties on the attached Service List.

19   _____    Based on a court order or an agreement of the parties to accept service by e-
            mail or electronic transmission, I sent the documents described herein to the

20           persons at the e-mail addresses on the attached service list.  I did not receive,
            within a reasonable time after the transmission, any electronic message or

21           other indication that the transmission was unsuccessful.

22   3.    That there is a regular communication by mail between the place of mailing and

23  the places so addressed.

24   I declare under penalty of perjury under the laws of the State of California that the

25  foregoing is true and correct.  Executed this August 23, 2018, at San Diego, California.

26

27                                                  KATHERINE B. SCHEELE

28

*Zakinov v. Ripple Labs Inc., et al.*, Case No. 18CIV02845;
*Oconer v. Ripple Labs Inc., et al.*, Case No. 18CIV03332

**COUNSEL FOR PLAINTIFFS**

Brian J. Robbins
Stephen J. Oddo
Eric M. Carrino
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
         soddo@robbinsarroyo.com
         ecarrino@robbinsarroyo.com

*Counsel for Plaintiffs Vladi Zakinov and David Oconer*

Shawn A. Williams
ROBBINS GELLER RUDMAN
   & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com

David C. Walton
Brian O. O'Mara
Brian E. Cochran
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: davew@rgrdlaw.com
         bomara@rgrdlaw.com
         bcochran@rgrdlaw.com

*Counsel for Plaintiff Vladi Zakinov*

**COUNSEL FOR DEFENDANTS**

Peter B. Morrison
Virginia F. Milstead
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: peter.morrison@skadden.com
         virginia.milstead@skadden.com

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com

Mary Jo White
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
         aceresney@debevoise.com

*Counsel for defendants Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse*

1278419

# EXHIBIT F

FILED
SAN MATEO COUNTY

NOV. - 1 2018

Clerk of the Superior Court
By
DEPUTY CLERK

```
18 - CIV - 03461
ORD
Order
1469551
```

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| AVNER GREENWALD, individually and on behalf Of all others similarly situated, | Case No. 18 CIV 03461 CLASS ACTION |
| Plaintiff, | |
| vs. | ORDER DEEMING CASE RELATED AND CONSOLIDATING ACTION INTO MASTER FILE NO. 18CIV02845 |
| RIPPLE LABS INC. et al. | |
| Defendants, | Dept.: Hon. Richard H. DuBois Dept. 16 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

The Master File consolidated class action cases, 18CIV02845, were previously designated as complex and single assigned to Department 16, Honorable Richard DuBois.

On October 25, 2018, Defendant Ripple Labs Inc. in 18CIV03461, a putative class action, filed a Notice of Related Case, indicating that the action is related to *In re Ripple Labs Inc Litigation*, Master file No. 18CIV02845.

Accordingly, IT IS HEREBY ORDERED AS FOLLOWS:

1.      Notice of Related Case having been filed and served, and no opposition or objection filed and served, the case of *Greenwald vs. Ripple Labs Inc 18CIV03461* is deemed "related" to the pending consolidated class actions entitled *In re Ripple Labs Inc Litigation*, Master file No. 18CIV02845.

2.      Pursuant to the order in Master File No. 18CIV02845 consolidating related class actions, and having been previously assigned for all purposes to Department 16, the case of *Greenwald vs. Ripple*

Case No. 18 CIV 03461

1    *Labs Inc 18CIV03461* is ordered CONSOLIDATED as part of Master File No. 18CIV02845.

2        3.    Accordingly, any Complex Status Conference or Case Management Conference previously

3    set for 18CIV03461 is VACATED.  The Case Management Conference in the Master file set for November

4    16, 2018 at 10:30 a.m. in Department 16 shall remain on calendar.

5

6

7    Dated:    OCT 3 1 2018    By: _____

8        Richard H. DuBois
         JUDGE OF THE SUPERIOR COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**SUPERIOR COURT OF SAN MATEO COUNTY**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

## AFFIDAVIT OF MAILING

**FILED**
**SAN MATEO COUNTY**
NOV - 1 2018
Clerk of the Superior Court
By
DEPUTY CLERK

Date: 11/1/2018

In the Matter of: AVNER GREENWALD  vs.  RIPPLE LABS, INC., a Delaware Corporation, et al
Case No.: 18-CIV-03461

   I declare under penalty of perjury that on the following date I deposited in the United States Post Office mail box at Redwood City, a true copy of the attached document(s) ORDER DEEMING CASE RELATED AND CONSOLIDATING ACTION INTO MASTER FILE NO. 18CIV02845, enclosed in an envelope, with proper and necessary postage thereon, and addressed to the following:

Executed on: 11/1/2018

Neal I. Taniguchi, Court Executive Officer/Clerk

By: _____

Andrea Daley, Deputy Clerk

<u>Copies Mailed To:</u>

BRIAN J. ROBBINS
STEPHEN J. ODDO
600 B STREET, SUITE 1900
SAN DIEGO, CA  92101

SHAWN A. WILLIAMS
ROBBINS, GELLER, RUDMAN & DOWD LLP
POST MONTGOMERY CENTER
ONE MONTGOMERY STREET, SUITE 1800
SAN FRANCISCO, CA 94104

BRIAN O'MARA
ROBBINS, GELLER, RUDMAN & DOWD LLP
655 WEST BROADWAY, SUITE 1900
SAN DIEGO, CA 92101

PETER B. MORRISON
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CA  90071

JOHN NEUKOM
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 UNIVERSITY AVENUE, SUITE 1400
PALO ALTO, CA 94301

18 – CIV – 03461
AFM
Affidavit of Mailing
1468990

Rev. Jun. 2016

MARY JO WHITE
DEBEVOISE & PLIMPTON LLP
919 THIRD AVENUE
NEW YORK, NY 10022

JOHN T. JASNOCH
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 WEST BROADWAY, SUITE 3300
SAN DIEGO, CA 92101

THOMAS L. LAUGHLIN, IV
RHIANA L. SWARTZ
SCOTT+SCOTT ATTORNEYS AT LAW LLP
THE HELMSLEY BUILDING
230 PARK AVENUE, 17TH FLOOR
NEW YORK, NY 10169

# EXHIBIT G

| Attorney or Party without Attorney (Name/Address)<br>Brian J. Robbins<br>ROBBINS ARROYO LLP<br>600 B Street, Suite 1900<br>San Diego, CA 92101<br>Telephone: (619) 525-3990<br>State Bar No.: 190264<br>Attorney for: Plaintiff Vladi Zakinov | FOR COURT USE ONLY<br><br>**ENDORSED FILED**<br>SAN MATEO COUNTY<br><br>JUN 0 5 2018<br><br>Clerk of the Superior Court<br>By MIRNA P. RIVERA-MARTINEZ<br>DEPUTY CLERK |
|---|---|
| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN MATEO<br>400 COUNTY CENTER<br>REDWOOD CITY, CA 94063 | |
| Plaintiff   Vladi Zakinov | |
| Defendant  Ripple Labs Inc., et al. | |
| **Certificate Re Complex Case Designation** | Case Number<br>18CIV02845 |

## This certificate must be completed and filed with your Civil Case Cover Sheet if you have checked a Complex Case designation or Counter-Designation

1. In the attached Civil Case Cover Sheet, this case is being designated or counter-designated as a complex case [or as not a complex case] because at least one or more of the following boxes has been checked:

   X Box 1 – Case type that is best described as being [or not being] provisionally complex civil litigation (i.e., antitrust or trade regulation claims, construction defect claims involving many parties or structures, securities claims or investment losses involving many parties, environmental or toxic tort claims involving many parties, claims involving mass torts, or insurance coverage claims arising out of any of the foregoing claims).

   X Box 2 – Complex [or not complex] due to factors requiring exceptional judicial management

   X Box 5 – Is [or is not] a class action suit.

2. This case is being so designated based upon the following supporting information [including, without limitation, a brief description of the following factors as they pertain to this particular case: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions

pending in one or more courts in other counties, states or countries or in a federal court;
(6) whether or not certification of a putative class action will in fact be pursued; and (7)
substantial post-judgment judicial supervision]:

This case is provisionally complex as it involves securities claims.  In addition, it is

being designated complex due to the large number of parties/witnesses, the

complexity of factual and/or legal issues, and because certification of a putative

class will be pursued.

*(attach additional pages if necessary)*

3.   Based on the above-stated supporting information, there is a reasonable basis for the complex
case designation or counter-designation [~~for a complex case counter-designation~~] being made
in the attached Civil Case Cover Sheet.

*****

I, the undersigned counsel or self-represented party, hereby certify that the above is true and correct
and that I make this certification subject to the applicable provisions of California Code of Civil
Procedure, Section 128.7 and/or California Rules of Professional Conduct, Rule 5-200 (B) and San
Mateo County Superior Court Local Rules, Local Rule 2.30.

Dated: June 5, 2018

Brian J. Robbins
[Type or Print Name]                    [Signature of Party or Attorney For Party]

CV-59 [Rev. 1/06]                                        www.sanmateocourt.org

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Brian J. Robbins (190264)<br>ROBBINS ARROYO LLP<br>600 B Street, Suite 1900<br>San Diego, CA 92101<br>TELEPHONE NO.: (619) 525-3990   FAX NO.: (619) 525-3991<br>ATTORNEY FOR (Name): Plaintiff Vladi Zakinov | **ENDORSED FILED**<br>**SAN MATEO COUNTY**<br>JUN 0 5 2018<br>Clerk of the Superior Court<br>By MIRNA P. RIVERA-MARTINEZ<br>DEPUTY CLERK |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Hall of Justice and Records

CASE NAME:
Zakinov v. Ripple Labs Inc., et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **18CIV02845**<br>JUDGE:<br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Mass tort (40) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [✓] Securities litigation (28) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Product liability (24) | **Real Property** | [ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse<br>condemnation (14) | above listed provisionally complex case<br>types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Business tort/unfair business practice (07) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Civil rights (08) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Fraud (16) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Petition re: arbitration award (11) | |
| **Employment** | [ ] Writ of mandate (02) | |
| [ ] Wrongful termination (36) | [ ] Other judicial review (39) | |
| [ ] Other employment (15) | | |

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [✓] Large number of witnesses
   b. [✓] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action (specify): Two
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 5, 2018

Brian J. Robbins
(TYPE OR PRINT NAME)                                   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one box** for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil
   harassment)* (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract *(not unlawful detainer
         or wrongful eviction)*
   Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex
   case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
      County)
   Confession of Judgment *(non-
      domestic relations)*
   Sister State Judgment
   Administrative Agency Award
      *(not unpaid taxes)*
   Petition/Certification of Entry of
      Judgment on Unpaid Taxes
   Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
   above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-
      harassment)*
   Mechanics Lien
   Other Commercial Complaint
      Case *(non-tort/non-complex)*
   Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified
   above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
      Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
      Claim
   Other Civil Petition

1  ROBBINS ARROYO LLP
   BRIAN J. ROBBINS (190264)
2  STEPHEN J. ODDO (174828)
   ERIC M. CARRINO (310765)
3  600 B Street, Suite 1900
   San Diego, CA 92101
4  Telephone: (619) 525-3990
   Facsimile: (619) 525-3991
5  E-mail: brobbins@robbinsarroyo.com
          soddo@robbinsarroyo.com
6          ecarrino@robbinsarroyo.com

7  Attorneys for Plaintiff

8  [Additional Counsel on Signature Page]

**ENDORSED FILED**
SAN MATEO COUNTY

JUN 0 5 2018

Clerk of the Superior Court
By MIRNA P. RIVERA-MARTINEZ
DEPUTY CLERK

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                        COUNTY OF SAN MATEO

11  VLADI ZAKINOV, Individually and on        )  Case No.   18CIV02845
    Behalf of All Others Similarly Situated,  )
12                                            )
                          Plaintiff,          )  **CLASS ACTION**
13                                            )
             v.                               )  COMPLAINT FOR VIOLATIONS OF
14                                            )  CALIFORNIA CORPORATIONS CODE
    RIPPLE LABS INC.,                         )
15  XRP II, LLC,                              )
    BRADLEY GARLINGHOUSE, and                 )
16  DOES 1-25, Inclusive,                     )
                                              )
17                        Defendants.         )  DEMAND FOR JURY TRIAL
                                              )
18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.      Plaintiff, individually and on behalf of all others similarly situated, by his undersigned attorneys, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of media and reports about the Company and Company press releases against defendants Ripple Labs Inc. ("Ripple" or the "Company"), its wholly owned subsidiary XRP II, LLC ("XRP II"), and Ripple's Chief Executive Officer, Bradley Garlinghouse ("Garlinghouse"). Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

**SUMMARY OF THE ACTION**

2.      Plaintiff brings this class action on behalf of all California citizens who purchased or otherwise acquired Ripple tokens ("XRP") issued and sold by defendants.

3.      XRP, despite its name as a "token," is actually a security under California law.  In particular: (i) Ripple uses the funds it raised from the sale of XRP to fund its business ventures; (ii) the Company indiscriminately offers XRP for sale to the public at large; (iii) plaintiff and the Class (as defined herein) are effectively powerless to control the success of Ripple and XRP; and (iv) plaintiff and the Class members' investment is substantially at risk and is without any security.

4.      As a result, defendants were required to register XRP when offering or selling it. They did not.  Instead, they made a series of improper statements which drove up the price of XRP, allowing defendants to obtain greater returns on their XRP sales.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, section 10, because this case is a cause not given by statute to other trial courts.

- 1 -

CLASS ACTION COMPLAINT

1   6.   The violations of law complained of herein occurred in California and in large

2   part in this County.  More, certain of the defendants reside in San Mateo County.

3   7.   This Court has personal jurisdiction over each of the defendants named herein

4   because they conduct business, were citizens of, or took steps to conduct the initial coin offering

5   ("ICO") in California.

6   8.   Venue is proper because the defendants' wrongful acts arose in and emanated

7   from, at least in part, this County.  The violations of law complained of herein occurred in this

8   County.  Further, certain of the defendants live in or conduct business in this County.

9   9.   This Court also has personal jurisdiction over Defendants because they reside or

10   have their principal places of business in California.

11   **THE PARTIES**

12   **Plaintiff**

13   10.   Plaintiff Vladi Zakinov is a citizen of California.  Plaintiff purchased XRP in

14   January 2018 and was damaged thereby.

15   **Defendants**

16   11.   Defendant Ripple is a corporation with principal executive offices located at 315

17   Montgomery Street, 2nd Floor, San Francisco, California.  Ripple operates RippleNet, a global

18   payments network based on blockchain technology.  Through RippleNet, banks and payment

19   providers can use the digital asset XRP to process, clear, and settle financial transactions in real-

20   time worldwide.

21   12.   Defendant XRP II is a limited liability company and a wholly owned subsidiary

22   of Ripple.  Its principal place of business is in San Francisco, California.  XRP II sold XRP and

23   solicited the purchases of XRP from plaintiff and the Class for its own benefit and the benefit of

24   its parent, Ripple, and its executives and owners, such as defendant Garlinghouse

25   13.   Defendant Garlinghouse is Ripple's Chief Executive Officer and has been since

26   January 2017 and a director and has been since at least July 2017.  Defendant Garlinghouse was

27   also Ripple's President and Chief Operating Officer from April 2015 to December 2016.

28   Defendant Garlinghouse is a California citizen and a resident of San Mateo County.

- 2 -

14.     The true names and capacities of defendants sued herein under California Code of Civil Procedure section 474 as Does 1 through 25, inclusive, are presently not known to plaintiff, who therefore sues these defendants by such fictitious names.  Plaintiff will seek to amend this complaint and include these Doe defendants' true names and capacities when they are ascertained.  Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by the Class.

## RIPPLE INDISCRIMINATELY OFFERS XRP TO THE PUBLIC AT LARGE, WHICH PLAINTIFF AND THE CLASS INVESTED IN WITH AN EXPECTATION OF PROFIT

15.     Ripple sells XRP through exchanges and directly to investors.  The Company lists the various exchanges on which investors can purchase XRP on its website, and for some provides step by step purchasing directions.

16.     Plaintiff and the Class invested fiat and other digital currencies, such as Bitcoin and Ethereum, to purchase XRP.

17.     Plaintiff used Ethereum to purchase XRP.  In particular, plaintiff purchased 162 XRP at $1.4337 and 57 XRP at $1.365 on January 11, 2017, and 299 XRP at a price of $1.0923 on January 27, 2018.  Plaintiff has not sold any of his XRP.

18.     Plaintiff and the Class invested in XRP with the expectation that XRP would increase in value and result in a profit.  As explained below, defendants have promoted XRP and conflated the value of XRP with its other software efforts.

## RIPPLE USES PLAINTIFF AND THE CLASS MEMBERS' UNSECURED PASSIVE INVESTMENTS TO FUND THE COMMON ENTERPRISE

19.     Ripple concedes that it "sells XRP to fund its operations and promote the network.  This allows Ripple [] to have a spectacularly skilled team to develop[] and promote the Ripple protocol and network."  Ripple sold nearly $92 million worth of XRP in the fourth quarter of 2017 alone.  On information and belief, the sale of XRP substantial dwarfs any other source of revenue for the Company.

CLASS ACTION COMPLAINT

20.     In addition, plaintiff and the Class members' investment is entirely passive. Plaintiff and the Class have no ability to control the direction of the Company or the development of the XRP Ledger (described in more detail below).   Rather, it is through the efforts of defendants that plaintiff expected to make a profit on his investment.   In particular, the efforts of defendants to maintain and push the adoption of XRP and the XRP Ledger, of which they have near complete control, is explained below.

21.     Plaintiff and the Class members' investment in XRP is unsecured and at risk of loss at all times, largely depending on defendants' actions.   If defendants fail to create an adequate market for XRP, inadequately or incorrectly manage the XRP Ledger, or there is a loss of confidence in Ripple's management by the general market, plaintiff and the Class members' investment in XRP will likely lose money.

## THE VALUE OF XRP IS DERVIVED FROM DEFENDANTS' EFFORTS
## ON BEHALF OF THE COMMON ENTERPRISE

### XRP's Value Is a Result of Defendants' Efforts

### Defendants Control Both the Supply of XRP in the Market and the XRP Ledger

22.     Since its creation, defendants have focused on how to create, maintain, and increase the value of XRP.   First, they focused on limiting the supply of XRP while also increasing its usage.   Defendants created all 100 billion XRP at one time.   XRP is currently the third largest coin by market capitalization, with a market capitalization of approximately $24 billion.

23.     Ripple provided its founders with twenty billion XRP and held onto the rest. defendants' plan was to sell the other eighty billion XRP in basically a never ending ICO.   In particular, Ripple put fifty-five billion XRP into an escrow account and has the ability to sell up to one billion XRP a month.

24.     Ripple's control over XRP's supply is different than other popular cryptocurrencies, such as Bitcoin.   One of the hallmarks of a cryptocurrency is that control of the currency is supposedly "decentralized."   In contrast to a governmental system, where, for example in the United States, the Federal Reserve system controls the supply of currency,

- 4 -

1   cryptocurrencies work through distributed ledger technology, which has no central administrator

2   or centralized data storage.  It is the ledger of a cryptocurrency that can record transactions

3   between two parties.  This instant creation of the XRP security, which its set cap, stands in stark

4   contrast to other well-known cryptocurrencies, such as Bitcoin, which are constantly being

5   "mined."[1]

6        25.    Ripple created and continues to work on the XRP Ledger, in which XRP's

7   adoption and value depends.  The XRP Ledger, as opposed to Bitcoin, is not decentralized, as

8   Ripple basically admits.  The Company has a multiple page explanation on "The XRP Ledger

9   Consensus Process" on its website.  There, Ripple explains how the "nodes" of the network share

10  information about candidate transactions, which validates the transactions.  Unlike Bitcoin or

11  Ethereum, which is open to the world, the XRP Ledger nodes "evaluate proposals from a specific

12  set of peers, called chosen validators [also known as Uniduq Node Lists ("UNLs")]."  These

13  UNLs are chosen by Ripple itself based on what it deems "trusted," meaning nodes that will not

14  collude.

15       26.    In its long discussion of the XRP Ledger Consensus Process, Ripple never calls

16  XRP decentralized, though it does confusingly say the ledger consists of "distributed" servers.

17  Rather, it claims to have come up with a plan "to increase decentralization and ensure that no

18  single entity has operational control of the XRP Ledger."  While the XRP Ledger could one day

19  be decentralized, it is not currently.   Instead, Ripple admits that "Beyond our work on

20  decentralization, we have also focused on refining and improving the XRP Ledger Consensus

21  Protocol, the algorithm underlying the XRP Ledger."

22       27.    On February 6, 2018, BitMEX ran an article titled "The Ripple Story," in the

23  wake of XRP's substantial increase in value.  In short, the researchers found that "the default

24  behaviour of Rippled nodes effectively hands full control over updating the ledger to the

25  Ripple.com server" and that "More significant than the disputes is the fact that the Ripple system

26

27  [1] Mining is when transactions are verified and added to the public ledger, known as a blockchain,

28  as a means through which new bitcoin are released.

- 5 -

1   appears for all practical purposes to be centralised and is therefore perhaps devoid of any

2   interesting technical characteristics, such as censorship resistance, which coins like Bitcoin may

3   have...."

4       28.    BitMEX explained in reasoning that led it to conclude that the XRP Ledger is

5   centralized:

> In January 2018, the BitMEX Research team installed and ran a copy of Rippled
> for the purpose of this report. The node operated by downloading a list of five
> public keys from the server v1.ripple.com, as the screenshot below shows. All
> five keys are assigned to Ripple.com. The software indicates that four of the five
> keys are required to support a proposal in order for it to be accepted. Since the
> keys were all downloaded from the Ripple.com server, Ripple is essentially in
> complete control of moving the ledger forward, so one could say that the system
> is centralised. Indeed, our node indicates that the keys expire on 1 February 2018
> (just a few days after the screenshot), implying the software will need to visit
> Ripple.com's server again to download a new set of keys.

13      29.    Further, Ripple publishes a quarterly report detailing its efforts grow the "XRP

14  ecosystem."  In its report for the second quarter of 2017, the Company admitted that it continues

15  to work on the XRP Ledger.  In particular, it stated, "[m]ost importantly, we are accelerating the

16  pace of *our investment* in the XRP Ledger to build on its speed, uptime, and scalability, to

17  ensure XRP is the most trusted enterprise-grade digital asset."

18      30.    Thus, defendants control both the supply of XRP and the ledger on which it is

19  based.

20  **Defendants' Efforts to Market and Increase the Value of XRP**

21      31.    In addition, defendants control the value of XRP by continuously touting it in the

22  press and obscuring the role of the security.  In the press release announcing the formation of the

23  escrow account, Ripple stated that:

> [The] move underscores Ripple's commitment to building XRP liquidity and a
> healthy and trusted market.  Long term, the value of digital assets will be
> determined by their utility.  XRP has emerged as the only digital asset with a clear
> intuitional use case designed to solve a multitrillion-dollar problem—the global
> payment and liquidity challenges that banks, payment providers and corporates
> face.

- 6 -

32.     Discussing the escrow account, defendant Garlinghouse stated that, "Our goal in distributing XRP is to incentivize actions that build trust, utility and liquidity.  We engage in distribution strategies that we expect will result in a strengthening XRP exchange rate against other currencies." Defendant Garlinghouse continued:

> [W]e have heard concerns in the market about uncertainty surrounding our ongoing XRP distribution.  The root of this uncertainty is the notion that Ripple might one day sell its 61.68B XRP in the market at any time—a scenario that would be bad for Ripple!  Our self-interest is aligned with building and maintaining a healthy XRP market.

33.     In addition to limiting supply of XRP, defendants also attempted to build demand for the security by aggressively marketing it.  Ripple's website contains a page on "How to Buy XRP," which has links to various exchanges on which a person can buy XRP and even a "How to" on certain of those pages.

34.     There is also a page on Ripple's website dedicated to XRP's market performance. The page boldly stated that the Company is "committed to the long term health and stability of XRP markets."  The page also displays Ripple's market capitalization and the value of each XRP security in U.S. Dollars.

35.     Defendants have also conflated the Company's software products with XRP in order to increase the value of XRP.  Ripple develops software for financial institutions and payment providers that attempt, among other things, to minimize liquidity costs, known as xCurrent, xRapid, and xVia.  xCurrent is "Ripple's enterprise software solution that enables banks to instantly settle cross-border payments with end-to-end tracking.  Using xCurrent, banks message each other in real-time to confirm payment details prior to initiating the transaction and to confirm delivery once it settles."  xVia "is for corporates, payment providers and banks who want to send payments across various networks using a standard interface."  Neither xCurrent nor xVia require the use of XRP.[2]

---

[2] The only product that actually needs XRP is xRapid.  xRapid is supposedly "for payment providers and other financial institutions who want to minimize liquidity costs while improving their customer experience.  Because payments into emerging markets often require pre-funded

36.     For instance, on June 28, 2017, defendant Garlinghouse participated in an interview on CNBC. During the interview, defendant Garlinghouse discussed why XRP was "a more stable digital asset." In among other things, defendant Garlinghouse highlighted the payment technology that Ripple was working on. In doing so, defendant Garlinghouse again conflated the value of XRP with software Ripple was developing. To make matters worse, Ripple than retweeted a portion of that interview that was originally tweeted by the CNBC reporter.

37.     During a Bloomberg News Network interview, defendant Garlinghouse stated that "the reason why XRP has performed so well this year, we're solving a real problem, it's a multitrillion-dollar problem around cross-border payments. There is a lot of friction, its very slow its expensive, we're working with the institutions to deliver on that, so people have gotten excited. We now have over 100 customers we've announced publicly." This discussion, of course, conflated XRP, the security, with the customers using Ripple's products. Defendant Garlinghouse doubled down on this confusion later in the interview, stating "at the end of the day the value of digital assets will be driven by their utility. If they are solving a real problem, and that problem has scale, and that problem, you know there is real value there, then there will be demand for the tokens and the price will go up. For XRP we have seen because *it's required,* it's something that can really reduce the friction, and we're talking about a multitrillion-dollar problem in how cross-border payments flow. And so, I think if you drive real utility, yes there's going to be demand for that." "XRP is up 100x this year, and I think it's because the problem we are solving people realize is a real problem, it's a big problem."

38.     Articles about Ripple's software products often cause a rise in the price of XRP, even though the two are not linked. Defendants have fostered this confusion through their own statements and "retweets." For instance, on May 3, 2017, Ripple quote tweeted an article from Nasdaq.com, stating "Ripple adoption is sparking interested in XRP, 'which had an impressive

---

local currency accounts around the world, liquidity costs are high. xRapid dramatically lowers the capital requirements for liquidity."

CLASS ACTION COMPLAINT

1  rally in the last two months.'"  The quoted article discussed how financial institutions were

2  adopting Ripple's software products, which "in turn, has sparked interest in Ripple's digital

3  currency."   Instead of explaining the difference, defendants, in quote tweeting the article,

4  continued to give off the incorrect impression about the link between the products and security.

5      39.   Similarly, on May 16, 2017, Ripple tweeted a quote from an article about XRP's

6  market capitalization, stating; "The appeal that Ripple has towards traditional financial

7  institutions is a big advantage it has over Bitcoin."   However, this article confused Ripple's

8  software solutions with the value of XRP, a confusion fostered by Ripple's quoted tweet.

9      40.   Defendants fought back against articles and writers that attempted to unlink XRP

10  from Ripple's other products.  On January 4, 2018, *The New York Times* published an article by

11  Nathaniel Popper ("Popper") titled: "Rise of Bitcoin Competitor Ripple Creates Wealth to Rival

12  Zuckerberg."

13      41.   Popper tweeted a follow-up about his article, stating, "over the last day, I've asked

14  several people close to banks if banks are indeed planning to begin using Ripple's token, XRP, in

15  a serious way, which is what investors seem to assume when they buy in at the current XRP

16  prices.  This is a sampling of what I heard back:

17
   - Actual use of XRP by banks is not something I've heard about, I find the
     run up absolutely baffling, as do all the blockchain folks I know at large
18     FIs.

19
   - XRP isn't used for anything.  The hope is that someday it will be by banks,
     but there really aren't banks signaling that yet.
20

21
   - I would be surprised if there have been any real bank to bank transactions
     done with it (outside of maybe test transactions), despite people making
22     claims to the contrary.

23
   - It's not clear to me why XRP would be used by banks at all.  XRP could
     potentially be adopted by consumers as a payment rail, although they don't
24     yet have meaningful traction in that regard.

25
   - I haven't seen a sufficiently large catalyst in the fundamentals of Ripple to
     justify a greater than 10x move in the price of $XRP over the last month.
26

27
   - In a few years we're going to look back on 2017 and think WTF were we
     thinking."
28

- 9 -

CLASS ACTION COMPLAINT

42.     Defendant Garlinghouse responded by tweeting: "Over the last few months I've spoken with ACTUAL banks and payment providers.  They are indeed planning to use xRapid (our XRP liquidity product) in a serious way...."  Ripple's XRP product manager, tweeted: "Do you think I left #Bitcoin and joined @Ripple to build bank software?  Think again.  $XRP."

43.     Accordingly, as shown above, the defendants acted on behalf of the common enterprise, with the expectation of increase the value of XRP, and thus causing a profit.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this class action individually and on behalf of all California citizens who purchased or otherwise acquired XRP from January 1, 2013 to the present (the "Class").  Excluded from the Class are defendants and their families, the officers and directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members in the proposed Class.  XRP owners and other members of the Class may be identified from records maintained by Ripple and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct, as complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

48.     There are no unique defenses that may be asserted against plaintiff individually, as distinguished from the other members of the Class.  Plaintiff has no interest that is in conflict with, or is antagonistic to, the interests of the members of the Class, and has no conflict with any

1   other members of the Class.  Plaintiff has retained competent counsel experienced in securities,

2   consumer protection, and Class action litigation to represent himself and the Class.

3        49.     Common questions of law and fact exist as to all members of the Class and

4   predominate over any questions solely affecting individual members of the Class.  Among the

5   questions of law and fact common to the Class are:

6            (a)     whether XRP are securities;

7            (b)     whether defendants violated the California Corporations Code; and

8            (c)     to what extent the members of the Class have sustained damages and the

9   proper measure of damages.

10        50.     A class action is superior to all other available methods for the fair and efficient

11   adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

12   the damages suffered by individual Class members may be relatively small, the expense and

13   burden of individual litigation make it impossible for members of the Class to individually

14   redress the wrongs done to them.  There will be no difficulty in the management of this action as

15   a class action.

16                     **FIRST CAUSE OF ACTION**

17   **Against All Defendants and Does 1-25 for the Unregistered Offer and Sale of**
**Securities in Violation of California Corporations Code Sections 25110 and 25503**

18

19        51.     Plaintiff incorporates by reference and realleges each and every allegation

20   contained above, as though fully set forth herein.

21        52.     This Cause of Action is brought pursuant to California Corporations Code

22   sections 25110 and 25503, on behalf of the Class, against all defendants.

23        53.     XRP are securities within the meaning of the California Corporations Code.

24        54.     No registration statements have been filed with any state or federal government

25   entity or have been in effect with respect to any of the offerings alleged herein.

26        55.     Defendants and each of them, by engaging in the conduct described above within

27   California, directly or indirectly, sold and offered to sell the unregistered securities.

28

1    56.    Plaintiff and members of the Class purchased XRP securities from defendants.

2    57.    By reason of the foregoing, each of the defendants have violated sections and

3    25110 and 25503 of the California Corporations Code.

4    58.    As a direct and proximate result of defendants' unregistered sale of securities,

5    plaintiff and members of the Class have suffered damages in connection with their respective

6    purchases of XRP securities.

7
## SECOND CAUSE OF ACTION
8
**Against Defendants Ripple, Garlinghouse, and Does 1-25**
**for Violation of Section 25504 of the California Corporations Code**
9

10    59.    Plaintiff incorporates by reference and realleges each and every allegation

11    contained above, as though fully set forth herein.

12    60.    This Cause of Action is brought pursuant to California Corporations Code

13    section 25504, on behalf of the Class, against all defendants.

14    61.    Defendants Ripple and Garlinghouse were control persons within the meaning of

15    section 25504 of the California Corporations Code.  In particular, defendant Ripple was a control

16    person by virtue of agency and ownership of XRP II.  Defendant Garlinghouse was a control

17    person by virtue of his position as an officer of Ripple and/or authorized representative of the

18    other defendants.  Defendants Ripple and Garlinghouse each had the power and influence and

19    exercised the same to cause the unlawful offer and sale of XRP securities as described herein.

20    62.    Defendants Ripple and Garlinghouse, separately or together, have sufficient

21    influence to have caused XRP II and/or Ripple to submit a registration statement.

22    63.    Defendants Ripple and Garlinghouse, separately or together, jointly participated

23    in, and/or aided and abetted, XRP II and/or Ripple failure to register XRP.

24
## PRAYER FOR RELIEF
25    WHEREFORE, plaintiff demands judgment on his behalf and that of the Class as

26    follows:

27    A.    Under section 382 of the California Code of Civil Procedure, certifying this as a

28    Class action, appointing plaintiff as a Class representative under California Rule of Court 3.764,

- 12 -

1    and appointing plaintiff's counsel as Class counsel;

2        B.      Awarding damages in favor of plaintiff and the Class against all defendants,

3    jointly and severally, in an amount to be proven at trial, including interest thereon;

4        C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in

5    this action, including counsel fees and expert fees;

6        D.      Awarding rescission or a rescissory measure of damages; and

7        E.      Awarding equitable, injunctive or other relief, including disgorgement or

8    restitution, as deemed appropriate by the Court.

9                              **JURY DEMAND**

10       Plaintiff demands trial by jury.

11   Dated: June 5, 2018                    ROBBINS ARROYO LLP
12                                          BRIAN J. ROBBINS
                                           STEPHEN J. ODDO
13                                          ERIC M. CARRINO

14
15                                                    BRIAN J. ROBBINS

16                                          600 B Street, Suite 1900
                                           San Diego, CA 92101
17                                          Telephone: (619) 525-3990
                                           Facsimile: (619) 525-3991
18                                          E-mail: brobbins@robbinsarroyo.com
19                                                 soddo@robbinsarroyo.com
                                                  ecarrino@robbinsarroyo.com
20
                                           ROBBINS GELLER RUDMAN
21                                              & DOWD LLP
                                           SHAWN A. WILLIAMS (213113)
22                                          Post Montgomery Center
                                           One Montgomery Street, Suite 1800
23                                          San Francisco, CA  94104
                                           Telephone: (415) 288-4545
24                                          Facsimile: (415) 288-4534
25                                          E-mail: shawnw@rgrdlaw.com

26                                          DAVID C. WALTON (167268)
                                           BRIAN O. O'MARA (229737)
27                                          BRIAN E. COCHRAN (286202)
                                           655 West Broadway, Suite 1900
28

- 13 -
CLASS ACTION COMPLAINT

San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: davew@rgrdlaw.com
       bomara@rgrdlaw.com
       lolts@rgrdlaw.com
       bcochran@rgrdlaw.com

Attorneys for Plaintiff

1268543

- 14 -

CLASS ACTION COMPLAINT

**APPROPRIATE DISPUTE RESOLUTION INFORMATION SHEET**

**SUPERIOR COURT OF CALIFORNIA, SAN MATEO COUNTY**

In addition to the court provided voluntary and mandatory settlement conferences, this court has established, in partnership with the community and Bar Association, the Multi-Option ADR Project. Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the San Mateo County Superior Court encourages the parties in civil cases to explore and pursue the use of Appropriate Dispute Resolution

## WHAT IS APPROPRIATE DISPUTE RESOLUTION?

Appropriate Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits.  Types of ADR processes include arbitration, mediation, neutral evaluation, mini-trials, settlement conferences, private judging, negotiation, and hybrids of these processes.  All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes.

## WHAT ARE THE ADVANTAGES OF USING ADR?

ADR can have a number of advantages over traditional court litigation.

- **ADR can save time**.  Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.

- **ADR can save money.**  By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorney's fees and court expenses).

- **ADR provides more participation.**  Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.

- **ADR provides more control and flexibility.**  Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.

- **ADR can reduce stress and provide greater satisfaction.**  ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation.  Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

**Arbitration, Mediation, and Neutral Evaluation**

Although there are many different types of ADR processes, the forms most commonly used to resolve disputes in California State courts are Arbitration, Mediation and Neutral Evaluation.  The Multi-Option ADR Project a partnership of the Court, Bar and Community offers pre-screened panelists with specialized experience and training in each of these areas.

**Arbitration:** An arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an arbitration award.  Arbitration awards may be entered as

judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes.  Arbitrations can be binding or non-binding, as agreed by the parties in writing.

**Mediation:** Mediation is a voluntary, informal, confidential process in which the mediator, a neutral third party, facilitates settlement negotiations.   The mediator improves communication by and among the parties, helps parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

**Neutral Evaluation:** Involves presentations to a neutral third party with subject matter expertise who may render an opinion about the case the strengths and weaknesses of the positions, the potential verdict regarding liability, and a possible range for damages.

### CIVIL ADR PROCEDURES FOR THE SAN MATEO COUNTY SUPERIOR COURT

- Upon filing a Complaint, the Plaintiff will receive this **information sheet** from the Superior Court Clerk.  Plaintiff is expected to include this information sheet when he or she **serves the Complaint** on the Defendant.

- All parties to the dispute may voluntarily agree to take the matter to an ADR process. A stipulation is provided here.  Parties chose and contact their own ADR provider. A Panelist List is available online.

- If the parties have not agreed to use an ADR process, an initial Case Management Conference ("CMC") will be scheduled within 120 days of the filing of the Complaint. An **original and copy of the Case Management Conference Statement must be completed and provided to the court clerk no later than 15 days prior to the scheduled conference**. The San Mateo County Superior Court Case Management Judges will strongly encourage all parties and their counsel to consider and utilize ADR procedures and/or to meet with the ADR director and staff where appropriate.

- If the parties voluntarily agree to ADR, the parties will be required to sign and file a **Stipulation and Order to ADR.**

- A timely filing of a stipulation (at least 10 days prior to the CMC) will cause a notice to vacate the CMC.  ADR stipulated cases (other than judicial arbitration) will be continued for further ADR/Case Management status review in 90 days.  If the case is resolved through ADR, the status review date may be vacated if the court receives a dismissal or judgment. The court may upon review of case information suggest to parties an ADR referral to discuss matters related to case management, discovery and ADR.

- Any ADR Services shall be paid for by the parties pursuant to a separate ADR fee agreement. The ADR Director may screen appropriate cases for financial aid where a party is indigent.

- Local Court Rules require your cooperation in evaluating the ADR Project and will expect a brief evaluation form to be completed and submitted **within 10 days of completion of the process.**

**You can find ADR forms on the ADR webpage: www.sanmateocourt.org/adr. For more information contact the Multi-Option ADR Project at (650) 261-5075 or 261-5076.**

Form ADR-CV-8 "Court ADR Information Sheet ADR-CV-8" [Rev. Feb. 2014]

Print Form



SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
MULTI OPTION ADR PROJECT
HALL OF JUSTICE AND RECORDS
400 COUNTY CENTER
REDWOOD CITY, CALIFORNIA 94063

# **ADR Stipulation and Evaluation Instructions**

In accordance with ***Local Rule 2.3(i)(3)***, all parties going to ADR must complete a Stipulation and Order to ADR and file it with the Clerk of the Superior Court. The Office of the Clerk is located at:

> Clerk of the Superior Court, Civil Division
> Attention: Case Management Conference Clerk
> Superior Court of California, County of San Mateo
> 400 County Center
> Redwood City, CA 94063-1655

There is no filing fee for filing the stipulation. An incomplete stipulation will be returned to the parties by the Clerk's Office. All stipulations must include the following:

- ❑ Original signatures for all attorneys (and/or parties in pro per);
- ❑ The name of the neutral;
- ❑ Date of the ADR session; and
- ❑ Service List (Counsel need not serve the stipulation on parties).

Parties mutually agree on a neutral and schedule ADR sessions directly with the neutral. If parties would like a copy of the court's Civil ADR Program Panelist List and information sheets on individual panelists, they may visit the court's website at www.sanmateocourt.org/adr.

### **If Filing the Stipulation Prior to an Initial Case Management Conference**
To stipulate to ADR prior to the initial case management conference, parties must file a completed stipulation at least 10 days before the scheduled case management conference. The clerk will send notice of a new case management conference date approximately 90 days from the current date to allow time for the ADR process to be completed.

### **If Filing Stipulation Following a Case Management Conference**
When parties come to an agreement at a case management conference to utilize ADR, they have 21 days from the date of the case management conference to file a Stipulation and Order to ADR with the court [***Local Rule 2.3(i)(3)***].

### **Post-ADR Session Evaluations**
*Local Rule 2.3(i)(5)* requires submission of post-ADR session evaluations within 10 days of completion of the ADR process. Evaluations are to be filled out by both attorneys and clients. A copy of the Evaluation By Attorneys and Client Evaluation are attached to the Civil ADR Program Panelist List or can be downloaded from the court's web site.

### **Non-Binding Judicial Arbitration**
Names and dates are not needed for stipulations to judicial arbitration. The Judicial Arbitration Administrator will send a list of names to parties once a stipulation has been submitted.

For further information regarding San Mateo Superior Court's Civil ADR and Judicial Arbitration Programs, visit the Court's website at www.sanmateocourt.org/adr or contact the ADR offices at **(650) 261-5075 or (650) 261-5076.**

Form ADR-CV-1 [Rev. Feb. 2014]

| Attorney or Party without Attorney (Name, Address, Telephone, Fax, State Bar membership number):<br><br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO<br>Hall of Justice and Records<br>400 County Center<br>Redwood City, CA 94063-1655   (650) 363-4711 | Court Use Only |
|---|---|
| Plaintiff(s): | Case number: |
| Defendant(s): | Current CMC Date: |

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Plaintiff will file this stipulation with the Clerk's Office 10 days prior to or 3 weeks following the first Case Management Conference unless directed otherwise by the Court and ADR Director [*Local Rule 2.3(i)(3)*]. Please attach a Service List.

The parties hereby stipulate that all claims in this action shall be submitted to (select one):
○ Voluntary Mediation      ○ Binding Arbitration (private)
○ Neutral Evaluation      ○ Settlement Conference (private)
○ **Non-Binding Judicial Arbitration CCP 1141.12**    ○ Summary Jury Trial    ○ Other: _____

Case Type: _____

Neutral's name and telephone number: _____ Date of session: _____
(Required for continuance of CMC except for non-binding judicial arbitration)
Identify by name the parties to attend ADR session: _____

_____

Original Signatures

Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
(Signature)
Attorney or Party without attorney

Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
(Signature)
Attorney or Party without attorney

Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
(Signature)
Attorney or Party without attorney

Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
(Signature)
Attorney or Party without attorney

## IT IS SO ORDERED:

Date: _____

_____
Judge of the Superior Court of San Mateo County

Form ADR-CV-1 [Rev. Feb. 2014]

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|

TELEPHONE NO.:                          FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*   ☐ **UNLIMITED CASE**     ☐ **LIMITED CASE** (Amount demanded (Amount demanded is $25,000 exceeds $25,000) or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:
Date:                    Time:              Dept.:            Div.:          Room:
Address of court *(if different from the address above)*:

☐  Notice of Intent to Appear by Telephone, by *(name)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐  This statement is submitted by party *(name)*:
   b. ☐  This statement is submitted **jointly** by parties *(names)*:


2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.  The complaint was filed on *(date)*:
   b. ☐  The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
       (1) ☐  have not been served *(specify names and explain why not)*:

       (2) ☐  have been served but have not appeared and have not been dismissed *(specify names)*:

       (3) ☐  have had a default entered against them *(specify names)*:

   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:


4. **Description of case**
   a.  Type of case in ☐ complaint ☐ cross-complaint    *(Describe, including causes of action)*:

| | | |
|---|---|---|
| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. July 1, 2011] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |

**CM-110**

| | |
|---|---|
| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

4. b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**
a.   ☐   The trial has been set for *(date):*
b.   ☐   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.   ☐   days *(specify number):*
b.   ☐   hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:
e.   E-mail address:
☐   Additional representation is described in Attachment 8.

f.   Fax number:
g.   Party represented:

9.   **Preference**
☐   This case is entitled to preference *(specify code section):*

10.   **Alternative dispute resolution (ADR)**
a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1)   For parties represented by counsel: Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)   For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

b.   **Referral to judicial arbitration or civil action mediation** (if available).

(1)   ☐   This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2)   ☐   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3)   ☐   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

11. **Insurance**
   a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:
   b. Reservation of rights: ☐ Yes ☐ No
   c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

12. **Jurisdiction**
   Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
   ☐ Bankruptcy ☐ Other *(specify)*:
   Status:

13. **Related cases, consolidation, and coordination**
   a. ☐ There are companion, underlying, or related cases.
       (1) Name of case:
       (2) Name of court:
       (3) Case number:
       (4) Status:
       ☐ Additional cases are described in Attachment 13a.
   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

14. **Bifurcation**
   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

15. **Other motions**
   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

16. **Discovery**
   a. ☐ The party or parties have completed all discovery.
   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:
       Party                Description                Date

   c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify)*:

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20.** Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

## NOTICE OF CASE MANAGEMENT CONFERENCE

*Zakinov*

**ENDORSED FILED**
**SAN MATEO COUNTY**

JUN 0 5 2018

vs.

*Ripple Labs, Inc*

Clerk of the Superior Court
By _MIRNA P. RIVERA-MARTINEZ_
DEPUTY CLERK

Case No: _18 C I V 0 2 8 4 5_

Date: _OCT. 0 4 2018_

Time 9:00 a.m.

Dept. _21_  --on Tuesday & Thursday
Dept. _____  --on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1.   In accordance with applicable California Rules of the Court and local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

   a)   Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).

   b)   Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

   c)   File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.

   d)   Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30-days before the date set for the Case Management Conference.

2.   ·If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3.   Continuances of Case Management Conferences are highly disfavored unless good cause is shown.

4.   Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation to ADR and Proposed Order (see attached form). If plaintiff files a Stipulation to ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10-days prior to the first scheduled Case Management Conference, the Case Management Conference will be continued for 90-days to allow parties time to complete their ADR session. The court will notify parties of their new Case Management Conference date.

5.   If you have filed a default or a judgment has been entered, your case is not automatically taken off Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6.   You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7.   The Case Management Judge will issue orders at the conclusion of the conference that may include:

   a)   Referring parties to voluntary ADR and setting an ADR completion date;

   b)   Dismissing or severing claims or parties;

   c)   Setting a trial date.

8.   The Case Management Judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court's website at:  www.sanmateocourt.org

*Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall information).*



**SUPERIOR COURT OF SAN MATEO COUNTY**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

| VLADI ZAKINOV<br>Plaintiff (s)<br><br>vs.<br><br>RIPPLE LABS INC.<br>Defendant (s) | **Notice of Complex Case Status Conference**<br><br>Case No.: 18-CIV-02845     Date:  **8/8/2018**<br>                                       Time:  **9:00 AM**<br>                                       **Dept. PJ** |
|---|---|

Title: **VLADI ZAKINOV  VS.  RIPPLE LABS INC., ET AL**

You are hereby given notice of your Complex Case Status Conference.  The date, time and department have been written above.  At this conference, the Presiding Judge will decide whether this action is a complex case within the meaning of California Rules Court ("CRC"), Rule 3.400, subdivision (a) and whether it should be assigned to a single judge for all purposes.

1. In accordance with applicable **San Mateo County Local Rule 2.30**, you are hereby ordered to:
   a. **Serve** copies of this notice, your Civil Case Cover Sheet, and your Certificate Re: Complex Case Designation on all named parties in this action no later than service of your first appearance pleadings.
   b. **Give reason notice** of the Complex Case Status Conference to all named parties in this action, even if they have not yet made a first appearance or been formally served with the documents listed in subdivision (a). Such notice shall be given in the same manner as required for an ex parte application pursuant to CRC 3.1203.

2. **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned.  The Order to Show Cause hearing will be at the same time as the Complex Cause Status Conference.  Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

3. An action is provisionally a complex case if it involves one or more of the following types of claims: (1) antitrust or trade regulation claims; (2) construction defect claims involving many parties or structures; (3) securities claims or investment losses involving many parties; (4) environmental or toxic tort claims involving many parties; (5) claims involving massive torts; (6) claims involving class actions; or (7) insurance coverage claims arising out of any of the claims listed in subdivisions (1) through (6).  The Court shall treat a provisionally complex action as a complex case until the Presiding Judge has the opportunities to decide whether the action meets the definition in CRC 3.400(a).

4. Any party who files either a Civil Case Cover Sheet (pursuant to CRC 3.401) or counter or joinder Civil Case Cover Sheet (pursuant to CRC 3.402, subdivision (b) or (C)), designating an action as a complex case in Items 1,2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court. The certificate must include supporting information showing a reasonable basis for the complex case designation being sought.  Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues' (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision.

18 – CIV – 02845
NCCSC
Notice of Complex Case Status Conference
1189907



Rev. Jun. 2016

For further information regarding cas      anagement policies and procedures, see      court website at
www.sanmateocourt.org

* Telephone appearances at Complex Case Status Conference are available by contacting CourtCall, LLC, and independent vendor, at least 5 business days prior to the scheduled conference.

**CLERK'S CERTIFICATE OF MAILING**

I hereby certify that I am the clerk of this court, not a party of this cause; that I served a copy of this notice on the below date, by placing a copy thereof in separate sealed envelopes addressed to the address shown by the records of this court as set forth above, and by then sealing said envelopes and depositing same, with postage fully pre-paid thereon, in the United States Mail at Red wood City, California.

Date: 6/5/2018

Rodina M. Catalano,
Court Executive Officer/Clerk

By: _____

Mirna Rivera-Martinez,
Deputy Clerk

Copies mailed to:

BRIAN J ROBBINS
600 B STREET
SUITE 1900
SAN DIEGO CA  92101

Rev. Jun. 2016

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

RIPPLE LABS INC., XRP II, LLC, BRADLEY GARLINGHOUSE, and DOES 1-25, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

VLADI ZAKINOV, Individually and on Behalf of All Others Similarly Situated

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ENDORSED FILED**
SAN MATEO COUNTY

JUN 05 2018

Clerk of the Superior Court
By MIRNA P. RIVERA-MARTINEZ
DEPUTY CLERK

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of San Mateo County

400 County Center
Redwood City, CA 94063

CASE NUMBER: *(Número del Caso):*
18 C I V 0 2 8 4 5

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Brian J. Robbins, ROBBINS ARROYO LLP, 600 B Street, Suite 1900, San Diego, CA 92101; (619) 525-3990

DATE: JUN 05 2018    RODINA M. CATALANO Clerk, by MIRNA P. RIVERA-MARTINEZ Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Ripple Labs Inc.
   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):* 6 6

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): Brian J. Robbins (190264) ROBBINS ARROYO LLP 600 B Street, Suite 1900 San Diego, CA 92101 TELEPHONE NO: (619) 525-3990  FAX NO: (619) 525-3991 ATTORNEY FOR (Name): Plaintiff Vladi Zakinov | FOR COURT USE ONLY **ENDORSED FILED SAN MATEO COUNTY** JUN 0 5 2018 Clerk of the Superior Court By MIRNA P. RIVERA-MARTINEZ DEPUTY CLERK |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Hall of Justice and Records

CASE NAME:
Zakinov v. Ripple Labs Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited  [ ] Limited (Amount demanded exceeds $25,000)  (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 18CIV02845 JUDGE: DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[✓] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary  b.[✓] nonmonetary; declaratory or injunctive relief  c.[ ] punitive
4. Number of causes of action (specify): Two
5. This case [✓] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)

Date: June 5, 2018
Brian J. Robbins
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
  Product Liability (*not asbestos or toxic/environmental*) (24)
  Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business Practice (07)
  Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
  Defamation (e.g., slander, libel) (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice (*not medical or legal*)
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
    Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
  Insurance Coverage (*not provisionally complex*) (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment (*non-domestic relations*)
    Sister State Judgment
    Administrative Agency Award (*not unpaid taxes*)
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint (*not specified above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-harassment*)
    Mechanics Lien
    Other Commercial Complaint Case (*non-tort/non-complex*)
    Other Civil Complaint (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
  Partnership and Corporate Governance (21)
  Other Petition (*not specified above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

| Attorney or Party without Attorney (Name/Address)<br>Brian J. Robbins<br>ROBBINS ARROYO LLP<br>600 B Street, Suite 1900<br>San Diego, CA 92101<br>Telephone: (619) 525-3990<br>State Bar No.: 190264<br>Attorney for: Plaintiff Vladi Zakinov | FOR COURT USE ONLY<br><br>**ENDORSED FILED**<br>SAN MATEO COUNTY<br><br>JUN 0 5 2018<br><br>Clerk of the Superior Court<br>By MIRNA P. RIVERA-MARTINEZ<br>DEPUTY CLERK |
|---|---|
| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN MATEO<br>400 COUNTY CENTER<br>REDWOOD CITY, CA 94063 | |
| Plaintiff  Vladi Zakinov | |
| Defendant  Ripple Labs Inc., et al. | |
| Certificate Re Complex Case Designation | Case Number<br>18CIV02845 |

## This certificate must be completed and filed with your Civil Case Cover Sheet if you have checked a Complex Case designation or Counter-Designation

1.   In the attached Civil Case Cover Sheet, this case is being designated or counter-designated as a complex case [or as not a complex case] because at least one or more of the following boxes has been checked:

      ☒ Box 1 – Case type that is best described as being [or not being] provisionally complex civil litigation (i.e., antitrust or trade regulation claims, construction defect claims involving many parties or structures, securities claims or investment losses involving many parties, environmental or toxic tort claims involving many parties, claims involving mass torts, or insurance coverage claims arising out of any of the foregoing claims).

      ☒ Box 2 – Complex [or not complex] due to factors requiring exceptional judicial management

      ☒ Box 5 – Is [or is not] a class action suit.

2.   This case is being so designated based upon the following supporting information [including, without limitation, a brief description of the following factors as they pertain to this particular case: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions

pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision]:

This case is provisionally complex as it involves securities claims.  In addition, it is

being designated complex due to the large number of parties/witnesses, the

complexity of factual and/or legal issues, and because certification of a putative

class will be pursued.

*(attach additional pages if necessary)*

3.    Based on the above-stated supporting information, there is a reasonable basis for the complex case designation or counter-designation [~~for a complex case or counter-designation~~] being made in the attached Civil Case Cover Sheet.

\*\*\*\*\*

I, the undersigned counsel or self-represented party, hereby certify that the above is true and correct and that I make this certification subject to the applicable provisions of California Code of Civil Procedure, Section 128.7 and/or California Rules of Professional Conduct, Rule 5-200 (B) and San Mateo County Superior Court Local Rules, Local Rule 2.30.

Dated: June 5, 2018

Brian J. Robbins
[Type or Print Name]                              [Signature of Party or Attorney For Party]

## NOTICE OF CASE MANAGEMENT CONFERENCE

*Zakinov*

**ENDORSED FILED**
**SAN MATEO COUNTY**

JUN 0 5 2018
Clerk of the Superior Court
By MIRNA P. RIVERA-MARTINEZ
DEPUTY CLERK

vs.

*Ripple Labs, Inc*

Case No: __18C I V 0 2 8 4 5__

Date: __OCT. 0 4 2018__

Time 9:00 a.m.

Dept. __21__  --on Tuesday & Thursday
Dept. _____  --on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of the Court and local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

   a) Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).

   b) Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

   c) File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.

   d) Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30-days before the date set for the Case Management Conference.

2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3. Continuances of Case Management Conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation to ADR and Proposed Order (see attached form). If plaintiff files a Stipulation to ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10-days prior to the first scheduled Case Management Conference, the Case Management Conference will be continued for 90-days to allow parties time to complete their ADR session. The court will notify parties of their new Case Management Conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management Judge will issue orders at the conclusion of the conference that may include:

   a) Referring parties to voluntary ADR and setting an ADR completion date;

   b) Dismissing or severing claims or parties;

   c) Setting a trial date.

8. The Case Management Judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court's website at: www.sanmateocourt.org

*Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall Information).*

1  ROBBINS ARROYO LLP
   BRIAN J. ROBBINS (190264)
2  STEPHEN J. ODDO (174828)
   ERIC M. CARRINO (310765)
3  600 B Street, Suite 1900
   San Diego, CA 92101
4  Telephone: (619) 525-3990
   Facsimile: (619) 525-3991
5  E-mail: brobbins@robbinsarroyo.com
          soddo@robbinsarroyo.com
6          ecarrino@robbinsarroyo.com

7  Attorneys for Plaintiff

8  [Additional Counsel on Signature Page]

**ENDORSED FILED
SAN MATEO COUNTY**

JUN 0 5 2018

Clerk of the Superior Court
By MIRNA P. RIVERA-MARTINEZ
DEPUTY CLERK

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                          COUNTY OF SAN MATEO

11  VLADI ZAKINOV, Individually and on        )  Case No.  **18CIV02845**
    Behalf of All Others Similarly Situated,  )
12                                            )
                          Plaintiff,          )  **CLASS ACTION**
13                                            )
                   v.                         )  COMPLAINT FOR VIOLATIONS OF
14                                            )  CALIFORNIA CORPORATIONS CODE
    RIPPLE LABS INC.,                         )
15  XRP II, LLC,                              )
    BRADLEY GARLINGHOUSE, and                 )
16  DOES 1-25, Inclusive,                     )
                                              )
17                        Defendants.         )  DEMAND FOR JURY TRIAL
                                              )
18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.     Plaintiff, individually and on behalf of all others similarly situated, by his undersigned attorneys, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of media and reports about the Company and Company press releases against defendants Ripple Labs Inc. ("Ripple" or the "Company"), its wholly owned subsidiary XRP II, LLC ("XRP II"), and Ripple's Chief Executive Officer, Bradley Garlinghouse ("Garlinghouse"). Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

**SUMMARY OF THE ACTION**

2.     Plaintiff brings this class action on behalf of all California citizens who purchased or otherwise acquired Ripple tokens ("XRP") issued and sold by defendants.

3.     XRP, despite its name as a "token," is actually a security under California law.  In particular: (i) Ripple uses the funds it raised from the sale of XRP to fund its business ventures; (ii) the Company indiscriminately offers XRP for sale to the public at large; (iii) plaintiff and the Class (as defined herein) are effectively powerless to control the success of Ripple and XRP; and (iv) plaintiff and the Class members' investment is substantially at risk and is without any security.

4.     As a result, defendants were required to register XRP when offering or selling it. They did not.  Instead, they made a series of improper statements which drove up the price of XRP, allowing defendants to obtain greater returns on their XRP sales.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, section 10, because this case is a cause not given by statute to other trial courts.

- 1 -

6.     The violations of law complained of herein occurred in California and in large part in this County.  More, certain of the defendants reside in San Mateo County.

7.     This Court has personal jurisdiction over each of the defendants named herein because they conduct business, were citizens of, or took steps to conduct the initial coin offering ("ICO") in California.

8.     Venue is proper because the defendants' wrongful acts arose in and emanated from, at least in part, this County.  The violations of law complained of herein occurred in this County.  Further, certain of the defendants live in or conduct business in this County.

9.     This Court also has personal jurisdiction over Defendants because they reside or have their principal places of business in California.

## THE PARTIES

**Plaintiff**

10.     Plaintiff Vladi Zakinov is a citizen of California.  Plaintiff purchased XRP in January 2018 and was damaged thereby.

**Defendants**

11.     Defendant Ripple is a corporation with principal executive offices located at 315 Montgomery Street, 2nd Floor, San Francisco, California.  Ripple operates RippleNet, a global payments network based on blockchain technology.  Through RippleNet, banks and payment providers can use the digital asset XRP to process, clear, and settle financial transactions in real-time worldwide.

12.     Defendant XRP II is a limited liability company and a wholly owned subsidiary of Ripple.  Its principal place of business is in San Francisco, California.  XRP II sold XRP and solicited the purchases of XRP from plaintiff and the Class for its own benefit and the benefit of its parent, Ripple, and its executives and owners, such as defendant Garlinghouse

13.     Defendant Garlinghouse is Ripple's Chief Executive Officer and has been since January 2017 and a director and has been since at least July 2017.  Defendant Garlinghouse was also Ripple's President and Chief Operating Officer from April 2015 to December 2016.  Defendant Garlinghouse is a California citizen and a resident of San Mateo County.

- 2 -

14.     The true names and capacities of defendants sued herein under California Code of Civil Procedure section 474 as Does 1 through 25, inclusive, are presently not known to plaintiff, who therefore sues these defendants by such fictitious names.  Plaintiff will seek to amend this complaint and include these Doe defendants' true names and capacities when they are ascertained.  Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by the Class.

## RIPPLE INDISCRIMINATELY OFFERS XRP TO THE PUBLIC AT LARGE, WHICH PLAINTIFF AND THE CLASS INVESTED IN WITH AN EXPECTATION OF PROFIT

15.     Ripple sells XRP through exchanges and directly to investors.  The Company lists the various exchanges on which investors can purchase XRP on its website, and for some provides step by step purchasing directions.

16.     Plaintiff and the Class invested fiat and other digital currencies, such as Bitcoin and Ethereum, to purchase XRP.

17.     Plaintiff used Ethereum to purchase XRP.  In particular, plaintiff purchased 162 XRP at $1.4337 and 57 XRP at $1.365 on January 11, 2017, and 299 XRP at a price of $1.0923 on January 27, 2018.  Plaintiff has not sold any of his XRP.

18.     Plaintiff and the Class invested in XRP with the expectation that XRP would increase in value and result in a profit.  As explained below, defendants have promoted XRP and conflated the value of XRP with its other software efforts.

## RIPPLE USES PLAINTIFF AND THE CLASS MEMBERS' UNSECURED PASSIVE INVESTMENTS TO FUND THE COMMON ENTERPRISE

19.     Ripple concedes that it "sells XRP to fund its operations and promote the network.  This allows Ripple [] to have a spectacularly skilled team to develop[] and promote the Ripple protocol and network."  Ripple sold nearly $92 million worth of XRP in the fourth quarter of 2017 alone.  On information and belief, the sale of XRP substantial dwarfs any other source of revenue for the Company.

20.    In addition, plaintiff and the Class members' investment is entirely passive. Plaintiff and the Class have no ability to control the direction of the Company or the development of the XRP Ledger (described in more detail below).  Rather, it is through the efforts of defendants that plaintiff expected to make a profit on his investment.  In particular, the efforts of defendants to maintain and push the adoption of XRP and the XRP Ledger, of which they have near complete control, is explained below.

21.    Plaintiff and the Class members' investment in XRP is unsecured and at risk of loss at all times, largely depending on defendants' actions.  If defendants fail to create an adequate market for XRP, inadequately or incorrectly manage the XRP Ledger, or there is a loss of confidence in Ripple's management by the general market, plaintiff and the Class members' investment in XRP will likely lose money.

## THE VALUE OF XRP IS DERVIVED FROM DEFENDANTS' EFFORTS
## ON BEHALF OF THE COMMON ENTERPRISE

### XRP's Value Is a Result of Defendants' Efforts

### Defendants Control Both the Supply of XRP in the Market and the XRP Ledger

22.    Since its creation, defendants have focused on how to create, maintain, and increase the value of XRP.  First, they focused on limiting the supply of XRP while also increasing its usage.  Defendants created all 100 billion XRP at one time.  XRP is currently the third largest coin by market capitalization, with a market capitalization of approximately $24 billion.

23.    Ripple provided its founders with twenty billion XRP and held onto the rest. defendants' plan was to sell the other eighty billion XRP in basically a never ending ICO.  In particular, Ripple put fifty-five billion XRP into an escrow account and has the ability to sell up to one billion XRP a month.

24.    Ripple's control over XRP's supply is different than other popular cryptocurrencies, such as Bitcoin.  One of the hallmarks of a cryptocurrency is that control of the currency is supposedly "decentralized."  In contrast to a governmental system, where, for example in the United States, the Federal Reserve system controls the supply of currency,

- 4 -

1   cryptocurrencies work through distributed ledger technology, which has no central administrator
2   or centralized data storage.  It is the ledger of a cryptocurrency that can record transactions
3   between two parties.  This instant creation of the XRP security, which its set cap, stands in stark
4   contrast to other well-known cryptocurrencies, such as Bitcoin, which are constantly being
5   "mined."[1]

6       25.    Ripple created and continues to work on the XRP Ledger, in which XRP's
7   adoption and value depends.  The XRP Ledger, as opposed to Bitcoin, is not decentralized, as
8   Ripple basically admits.  The Company has a multiple page explanation on "The XRP Ledger
9   Consensus Process" on its website.  There, Ripple explains how the "nodes" of the network share
10  information about candidate transactions, which validates the transactions.  Unlike Bitcoin or
11  Ethereum, which is open to the world, the XRP Ledger nodes "evaluate proposals from a specific
12  set of peers, called chosen validators [also known as Uniduq Node Lists ("UNLs")]."  These
13  UNLs are chosen by Ripple itself based on what it deems "trusted," meaning nodes that will not
14  collude.

15      26.    In its long discussion of the XRP Ledger Consensus Process, Ripple never calls
16  XRP decentralized, though it does confusingly say the ledger consists of "distributed" servers.
17  Rather, it claims to have come up with a plan "to increase decentralization and ensure that no
18  single entity has operational control of the XRP Ledger."  While the XRP Ledger could one day
19  be decentralized, it is not currently.  Instead, Ripple admits that "Beyond our work on
20  decentralization, we have also focused on refining and improving the XRP Ledger Consensus
21  Protocol, the algorithm underlying the XRP Ledger."

22      27.    On February 6, 2018, BitMEX ran an article titled "The Ripple Story," in the
23  wake of XRP's substantial increase in value.  In short, the researchers found that "the default
24  behaviour of Rippled nodes effectively hands full control over updating the ledger to the
25  Ripple.com server" and that "More significant than the disputes is the fact that the Ripple system
26

27  _____
    [1] Mining is when transactions are verified and added to the public ledger, known as a blockchain,
28  as a means through which new bitcoin are released.

1   appears for all practical purposes to be centralised and is therefore perhaps devoid of any

2   interesting technical characteristics, such as censorship resistance, which coins like Bitcoin may

3   have...."

4        28.    BitMEX explained in reasoning that led it to conclude that the XRP Ledger is

5   centralized:

6   > In January 2018, the BitMEX Research team installed and ran a copy of Rippled
7   > for the purpose of this report. The node operated by downloading a list of five
8   > public keys from the server v1.ripple.com, as the screenshot below shows. All
9   > five keys are assigned to Ripple.com. The software indicates that four of the five
10  > keys are required to support a proposal in order for it to be accepted. Since the
11  > keys were all downloaded from the Ripple.com server, Ripple is essentially in
12  > complete control of moving the ledger forward, so one could say that the system
   > is centralised. Indeed, our node indicates that the keys expire on 1 February 2018
   > (just a few days after the screenshot), implying the software will need to visit
   > Ripple.com's server again to download a new set of keys.

13       29.    Further, Ripple publishes a quarterly report detailing its efforts grow the "XRP

14  ecosystem."  In its report for the second quarter of 2017, the Company admitted that it continues

15  to work on the XRP Ledger.  In particular, it stated, "[m]ost importantly, we are accelerating the

16  pace of *our investment* in the XRP Ledger to build on its speed, uptime, and scalability, to

17  ensure XRP is the most trusted enterprise-grade digital asset."

18       30.    Thus, defendants control both the supply of XRP and the ledger on which it is

19  based.

20  **Defendants' Efforts to Market and Increase the Value of XRP**

21       31.    In addition, defendants control the value of XRP by continuously touting it in the

22  press and obscuring the role of the security.  In the press release announcing the formation of the

23  escrow account, Ripple stated that:

24  > [The] move underscores Ripple's commitment to building XRP liquidity and a
25  > healthy and trusted market.  Long term, the value of digital assets will be
   > determined by their utility.  XRP has emerged as the only digital asset with a clear
26  > intuitional use case designed to solve a multitrillion-dollar problem—the global
   > payment and liquidity challenges that banks, payment providers and corporates
27  > face.

28

32.     Discussing the escrow account, defendant Garlinghouse stated that, "Our goal in distributing XRP is to incentivize actions that build trust, utility and liquidity.   We engage in distribution strategies that we expect will result in a strengthening XRP exchange rate against other currencies." Defendant Garlinghouse continued:

> [W]e have heard concerns in the market about uncertainty surrounding our ongoing XRP distribution.  The root of this uncertainty is the notion that Ripple might one day sell its 61.68B XRP in the market at any time—a scenario that would be bad for Ripple!  Our self-interest is aligned with building and maintaining a healthy XRP market.

33.     In addition to limiting supply of XRP, defendants also attempted to build demand for the security by aggressively marketing it.  Ripple's website contains a page on "How to Buy XRP," which has links to various exchanges on which a person can buy XRP and even a "How to" on certain of those pages.

34.     There is also a page on Ripple's website dedicated to XRP's market performance. The page boldly stated that the Company is "committed to the long term health and stability of XRP markets."  The page also displays Ripple's market capitalization and the value of each XRP security in U.S. Dollars.

35.     Defendants have also conflated the Company's software products with XRP in order to increase the value of XRP.  Ripple develops software for financial institutions and payment providers that attempt, among other things, to minimize liquidity costs, known as xCurrent, xRapid, and xVia.  xCurrent is "Ripple's enterprise software solution that enables banks to instantly settle cross-border payments with end-to-end tracking.  Using xCurrent, banks message each other in real-time to confirm payment details prior to initiating the transaction and to confirm delivery once it settles."  xVia "is for corporates, payment providers and banks who want to send payments across various networks using a standard interface."   Neither xCurrent nor xVia require the use of XRP.[2]

---

[2] The only product that actually needs XRP is xRapid.  xRapid is supposedly "for payment providers and other financial institutions who want to minimize liquidity costs while improving their customer experience.  Because payments into emerging markets often require pre-funded

36.   For instance, on June 28, 2017, defendant Garlinghouse participated in an interview on CNBC.  During the interview, defendant Garlinghouse discussed why XRP was "a more stable digital asset."  In among other things, defendant Garlinghouse highlighted the payment technology that Ripple was working on.  In doing so, defendant Garlinghouse again conflated the value of XRP with software Ripple was developing.  To make matters worse, Ripple than retweeted a portion of that interview that was originally tweeted by the CNBC reporter.

37.   During a Bloomberg News Network interview, defendant Garlinghouse stated that "the reason why XRP has performed so well this year, we're solving a real problem, it's a multitrillion-dollar problem around cross-border payments.  There is a lot of friction, its very slow its expensive, we're working with the institutions to deliver on that, so people have gotten excited.  We now have over 100 customers we've announced publicly."  This discussion, of course, conflated XRP, the security, with the customers using Ripple's products.  Defendant Garlinghouse doubled down on this confusion later in the interview, stating "at the end of the day the value of digital assets will be driven by their utility.  If they are solving a real problem, and that problem has scale, and that problem, you know there is real value there, then there will be demand for the tokens and the price will go up. For XRP we have seen because *it's required,* it's something that can really reduce the friction, and we're talking about a multitrillion-dollar problem in how cross-border payments flow.  And so, I think if you drive real utility, yes there's going to be demand for that." "XRP is up 100x this year, and I think it's because the problem we are solving people realize is a real problem, it's a big problem."

38.   Articles about Ripple's software products often cause a rise in the price of XRP, even though the two are not linked.  Defendants have fostered this confusion through their own statements and "retweets."  For instance, on May 3, 2017, Ripple quote tweeted an article from Nasdaq.com, stating "Ripple adoption is sparking interested in XRP, 'which had an impressive

local currency accounts around the world, liquidity costs are high. xRapid dramatically lowers the capital requirements for liquidity."

rally in the last two months.'"  The quoted article discussed how financial institutions were adopting Ripple's software products, which "in turn, has sparked interest in Ripple's digital currency."   Instead of explaining the difference, defendants, in quote tweeting the article, continued to give off the incorrect impression about the link between the products and security.

39.    Similarly, on May 16, 2017, Ripple tweeted a quote from an article about XRP's market capitalization, stating; "The appeal that Ripple has towards traditional financial institutions is a big advantage it has over Bitcoin."   However, this article confused Ripple's software solutions with the value of XRP, a confusion fostered by Ripple's quoted tweet.

40.    Defendants fought back against articles and writers that attempted to unlink XRP from Ripple's other products. On January 4, 2018, *The New York Times* published an article by Nathaniel Popper ("Popper") titled: "Rise of Bitcoin Competitor Ripple Creates Wealth to Rival Zuckerberg."

41.    Popper tweeted a follow-up about his article, stating, "over the last day, I've asked several people close to banks if banks are indeed planning to begin using Ripple's token, XRP, in a serious way, which is what investors seem to assume when they buy in at the current XRP prices.  This is a sampling of what I heard back:

- Actual use of XRP by banks is not something I've heard about, I find the run up absolutely baffling, as do all the blockchain folks I know at large FIs.

- XRP isn't used for anything.  The hope is that someday it will be by banks, but there really aren't banks signaling that yet.

- I would be surprised if there have been any real bank to bank transactions done with it (outside of maybe test transactions), despite people making claims to the contrary.

- It's not clear to me why XRP would be used by banks at all.  XRP could potentially be adopted by consumers as a payment rail, although they don't yet have meaningful traction in that regard.

- I haven't seen a sufficiently large catalyst in the fundamentals of Ripple to justify a greater than 10x move in the price of $XRP over the last month.

- In a few years we're going to look back on 2017 and think WTF were we thinking."

- 9 -

42.     Defendant Garlinghouse responded by tweeting: "Over the last few months I've spoken with ACTUAL banks and payment providers.  They are indeed planning to use xRapid (our XRP liquidity product) in a serious way...."  Ripple's XRP product manager, tweeted: "Do you think I left #Bitcoin and joined @Ripple to build bank software?  Think again.  $XRP."

43.     Accordingly, as shown above, the defendants acted on behalf of the common enterprise, with the expectation of increase the value of XRP, and thus causing a profit.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this class action individually and on behalf of all California citizens who purchased or otherwise acquired XRP from January 1, 2013 to the present (the "Class").  Excluded from the Class are defendants and their families, the officers and directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members in the proposed Class.  XRP owners and other members of the Class may be identified from records maintained by Ripple and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct, as complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

48.     There are no unique defenses that may be asserted against plaintiff individually, as distinguished from the other members of the Class.  Plaintiff has no interest that is in conflict with, or is antagonistic to, the interests of the members of the Class, and has no conflict with any

1  other members of the Class.  Plaintiff has retained competent counsel experienced in securities,

2  consumer protection, and Class action litigation to represent himself and the Class.

3        49.    Common questions of law and fact exist as to all members of the Class and

4  predominate over any questions solely affecting individual members of the Class.  Among the

5  questions of law and fact common to the Class are:

6              (a)    whether XRP are securities;

7              (b)    whether defendants violated the California Corporations Code; and

8              (c)    to what extent the members of the Class have sustained damages and the

9  proper measure of damages.

10       50.    A class action is superior to all other available methods for the fair and efficient

11  adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as

12  the damages suffered by individual Class members may be relatively small, the expense and

13  burden of individual litigation make it impossible for members of the Class to individually

14  redress the wrongs done to them.  There will be no difficulty in the management of this action as

15  a class action.

16                        **FIRST CAUSE OF ACTION**

17  **Against All Defendants and Does 1-25 for the Unregistered Offer and Sale of**
**Securities in Violation of California Corporations Code Sections 25110 and 25503**

18

19       51.    Plaintiff incorporates by reference and realleges each and every allegation

20  contained above, as though fully set forth herein.

21       52.    This Cause of Action is brought pursuant to California Corporations Code

22  sections 25110 and 25503, on behalf of the Class, against all defendants.

23       53.    XRP are securities within the meaning of the California Corporations Code.

24       54.    No registration statements have been filed with any state or federal government

25  entity or have been in effect with respect to any of the offerings alleged herein.

26       55.    Defendants and each of them, by engaging in the conduct described above within

27  California, directly or indirectly, sold and offered to sell the unregistered securities.

28

CLASS ACTION COMPLAINT

56.     Plaintiff and members of the Class purchased XRP securities from defendants.

57.     By reason of the foregoing, each of the defendants have violated sections and 25110 and 25503 of the California Corporations Code.

58.     As a direct and proximate result of defendants' unregistered sale of securities, plaintiff and members of the Class have suffered damages in connection with their respective purchases of XRP securities.

### SECOND CAUSE OF ACTION
**Against Defendants Ripple, Garlinghouse, and Does 1-25**
**for Violation of Section 25504 of the California Corporations Code**

59.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60.     This Cause of Action is brought pursuant to California Corporations Code section 25504, on behalf of the Class, against all defendants.

61.     Defendants Ripple and Garlinghouse were control persons within the meaning of section 25504 of the California Corporations Code.  In particular, defendant Ripple was a control person by virtue of agency and ownership of XRP II.  Defendant Garlinghouse was a control person by virtue of his position as an officer of Ripple and/or authorized representative of the other defendants.  Defendants Ripple and Garlinghouse each had the power and influence and exercised the same to cause the unlawful offer and sale of XRP securities as described herein.

62.     Defendants Ripple and Garlinghouse, separately or together, have sufficient influence to have caused XRP II and/or Ripple to submit a registration statement.

63.     Defendants Ripple and Garlinghouse, separately or together, jointly participated in, and/or aided and abetted, XRP II and/or Ripple failure to register XRP.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment on his behalf and that of the Class as follows:

A.     Under section 382 of the California Code of Civil Procedure, certifying this as a Class action, appointing plaintiff as a Class representative under California Rule of Court 3.764,

- 12 -

1  and appointing plaintiff's counsel as Class counsel;

2     B. Awarding damages in favor of plaintiff and the Class against all defendants,

3  jointly and severally, in an amount to be proven at trial, including interest thereon;

4     C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in

5  this action, including counsel fees and expert fees;

6     D. Awarding rescission or a rescissory measure of damages; and

7     E. Awarding equitable, injunctive or other relief, including disgorgement or

8  restitution, as deemed appropriate by the Court.

9  <div align="center">**JURY DEMAND**</div>

10     Plaintiff demands trial by jury.

11  Dated: June 5, 2018     ROBBINS ARROYO LLP

12              BRIAN J. ROBBINS
            STEPHEN J. ODDO

13              ERIC M. CARRINO

14

15              BRIAN J. ROBBINS

16              600 B Street, Suite 1900

17              San Diego, CA 92101
            Telephone: (619) 525-3990

18              Facsimile: (619) 525-3991
            E-mail: brobbins@robbinsarroyo.com

19                 soddo@robbinsarroyo.com
               ecarrino@robbinsarroyo.com

20

21              ROBBINS GELLER RUDMAN
             & DOWD LLP

22              SHAWN A. WILLIAMS (213113)
            Post Montgomery Center

23              One Montgomery Street, Suite 1800
            San Francisco, CA  94104

24              Telephone: (415) 288-4545
            Facsimile: (415) 288-4534

25              E-mail: shawnw@rgrdlaw.com

26              DAVID C. WALTON (167268)
            BRIAN O. O'MARA (229737)

27              BRIAN E. COCHRAN (286202)

28              655 West Broadway, Suite 1900

<div align="center">- 13 -</div>

<div align="center">CLASS ACTION COMPLAINT</div>

San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: davew@rgrdlaw.com
        bomara@rgrdlaw.com
        lolts@rgrdlaw.com
        bcochran@rgrdlaw.com

Attorneys for Plaintiff

1268543

- 14 -
CLASS ACTION COMPLAINT

**APPROPRIATE DISPUTE RESOLUTION INFORMATION SHEET**

**SUPERIOR COURT OF CALIFORNIA, SAN MATEO COUNTY**

In addition to the court provided voluntary and mandatory settlement conferences, this court has established, in partnership with the community and Bar Association, the Multi-Option ADR Project. Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the San Mateo County Superior Court encourages the parties in civil cases to explore and pursue the use of Appropriate Dispute Resolution

## WHAT IS APPROPRIATE DISPUTE RESOLUTION?

Appropriate Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits.   Types of ADR processes include arbitration, mediation, neutral evaluation, mini-trials, settlement conferences, private judging, negotiation, and hybrids of these processes.  All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes.

## WHAT ARE THE ADVANTAGES OF USING ADR?

ADR can have a number of advantages over traditional court litigation.

- **ADR can save time**.  Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.

- **ADR can save money.**  By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorney's fees and court expenses).

- **ADR provides more participation.**  Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.

- **ADR provides more control and flexibility.**  Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.

- **ADR can reduce stress and provide greater satisfaction.**  ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation.  Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

### Arbitration, Mediation, and Neutral Evaluation

Although there are many different types of ADR processes, the forms most commonly used to resolve disputes in California State courts are Arbitration, Mediation and Neutral Evaluation.   The Multi-Option ADR Project a partnership of the Court, Bar and Community offers pre-screened panelists with specialized experience and training in each of these areas.

**Arbitration:** An arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an arbitration award.  Arbitration awards may be entered as

judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes.  Arbitrations can be binding or non-binding, as agreed by the parties in writing.

**Mediation:** Mediation is a voluntary, informal, confidential process in which the mediator, a neutral third party, facilitates settlement negotiations.  The mediator improves communication by and among the parties, helps parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

**Neutral Evaluation:** Involves presentations to a neutral third party with subject matter expertise who may render an opinion about the case the strengths and weaknesses of the positions, the potential verdict regarding liability, and a possible range for damages.

### CIVIL ADR PROCEDURES FOR THE SAN MATEO COUNTY SUPERIOR COURT

- Upon filing a Complaint, the Plaintiff will receive this **information sheet** from the Superior Court Clerk.  Plaintiff is expected to include this information sheet when he or she **serves the Complaint** on the Defendant.

- All parties to the dispute may voluntarily agree to take the matter to an ADR process. A stipulation is provided here.  Parties chose and contact their own ADR provider. A Panelist List is available online.

- If the parties have not agreed to use an ADR process, an initial Case Management Conference ("CMC") will be scheduled within 120 days of the filing of the Complaint. An **original and copy of the Case Management Conference Statement must be completed and provided to the court clerk no later than 15 days prior to the scheduled conference**. The San Mateo County Superior Court Case Management Judges will strongly encourage all parties and their counsel to consider and utilize ADR procedures and/or to meet with the ADR director and staff where appropriate.

- If the parties voluntarily agree to ADR, the parties will be required to sign and file a **Stipulation and Order to ADR.**

- A timely filing of a stipulation (at least 10 days prior to the CMC) will cause a notice to vacate the CMC.  ADR stipulated cases (other than judicial arbitration) will be continued for further ADR/Case Management status review in 90 days.  If the case is resolved through ADR, the status review date may be vacated if the court receives a dismissal or judgment. The court may upon review of case information suggest to parties an ADR referral to discuss matters related to case management, discovery and ADR.

- Any ADR Services shall be paid for by the parties pursuant to a separate ADR fee agreement. The ADR Director may screen appropriate cases for financial aid where a party is indigent.

- Local Court Rules require your cooperation in evaluating the ADR Project and will expect a brief evaluation form to be completed and submitted **within 10 days of completion of the process.**

**You can find ADR forms on the ADR webpage: www.sanmateocourt.org/adr. For more information contact the Multi-Option ADR Project at (650) 261-5075 or 261-5076.**

Print Form



SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
MULTI OPTION ADR PROJECT
HALL OF JUSTICE AND RECORDS
400 COUNTY CENTER
REDWOOD CITY, CALIFORNIA 94063

## ADR Stipulation and Evaluation Instructions

In accordance with *Local Rule 2.3(i)(3)*, all parties going to ADR must complete a Stipulation and Order to ADR and file it with the Clerk of the Superior Court. The Office of the Clerk is located at:

>Clerk of the Superior Court, Civil Division
>Attention: Case Management Conference Clerk
>Superior Court of California, County of San Mateo
>400 County Center
>Redwood City, CA 94063-1655

There is no filing fee for filing the stipulation. An incomplete stipulation will be returned to the parties by the Clerk's Office. All stipulations must include the following:

☐ Original signatures for all attorneys (and/or parties in pro per);
☐ The name of the neutral;
☐ Date of the ADR session; and
☐ Service List (Counsel need not serve the stipulation on parties).

Parties mutually agree on a neutral and schedule ADR sessions directly with the neutral. If parties would like a copy of the court's Civil ADR Program Panelist List and information sheets on individual panelists, they may visit the court's website at www.sanmateocourt.org/adr.

### If Filing the Stipulation Prior to an Initial Case Management Conference

To stipulate to ADR prior to the initial case management conference, parties must file a completed stipulation at least 10 days before the scheduled case management conference. The clerk will send notice of a new case management conference date approximately 90 days from the current date to allow time for the ADR process to be completed.

### If Filing Stipulation Following a Case Management Conference

When parties come to an agreement at a case management conference to utilize ADR, they have 21 days from the date of the case management conference to file a Stipulation and Order to ADR with the court [*Local Rule 2.3(i)(3)*].

### Post-ADR Session Evaluations

*Local Rule 2.3(i)(5)* requires submission of post-ADR session evaluations within 10 days of completion of the ADR process. Evaluations are to be filled out by both attorneys and clients. A copy of the Evaluation By Attorneys and Client Evaluation are attached to the Civil ADR Program Panelist List or can be downloaded from the court's web site.

### Non-Binding Judicial Arbitration

Names and dates are not needed for stipulations to judicial arbitration. The Judicial Arbitration Administrator will send a list of names to parties once a stipulation has been submitted.

For further information regarding San Mateo Superior Court's Civil ADR and Judicial Arbitration Programs, visit the Court's website at www.sanmateocourt.org/adr or contact the ADR offices at **(650) 261-5075 or (650) 261-5076.**

Form ADR-CV-1 [Rev. Feb. 2014]

| Attorney or Party without Attorney (Name, Address, Telephone, Fax, State Bar membership number):<br><br><br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO<br>Hall of Justice and Records<br>400 County Center<br>Redwood City, CA 94063-1655   (650) 363-4711 | Court Use Only |
|---|---|
| Plaintiff(s): | Case number: |
| Defendant(s): | Current CMC Date: |

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Plaintiff will file this stipulation with the Clerk's Office 10 days prior to or 3 weeks following the first Case Management Conference unless directed otherwise by the Court and ADR Director [*Local Rule 2.3(i)(3)*]. Please attach a Service List.

The parties hereby stipulate that all claims in this action shall be submitted to (select one):

◯ Voluntary Mediation ◯ Binding Arbitration (private)
◯ Neutral Evaluation ◯ Settlement Conference (private)
◯ **Non-Binding Judicial Arbitration CCP 1141.12** ◯ Summary Jury Trial ◯ Other: _____

Case Type: _____

Neutral's name and telephone number: _____Date of session: _____
(Required for continuance of CMC except for non-binding judicial arbitration)
Identify by name the parties to attend ADR session: _____

_____
Original Signatures

| | |
|---|---|
| Type or print name of ☐Party without attorney☐Attorney for<br>☐Plaintiff/Petitioner☐Defendant/Respondent/Contestant | _____<br>(Signature)<br>Attorney or Party without attorney |
| Type or print name of ☐Party without attorney☐Attorney for<br>☐Plaintiff/Petitioner☐Defendant/Respondent/Contestant | _____<br>(Signature)<br>Attorney or Party without attorney |
| Type or print name of ☐Party without attorney☐Attorney for<br>☐Plaintiff/Petitioner☐Defendant/Respondent/Contestant | _____<br>(Signature)<br>Attorney or Party without attorney |
| Type or print name of ☐Party without attorney☐Attorney for<br>☐Plaintiff/Petitioner☐Defendant/Respondent/Contestant | _____<br>(Signature)<br>Attorney or Party without attorney |

**IT IS SO ORDERED:**

Date: _____                    _____
                                         Judge of the Superior Court of San Mateo County

Form ADR-CV-1 [Rev. Feb. 2014]

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|

TELEPHONE NO.:                FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):* ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                Time:            Dept.:        Div.:        Room:

Address of court *(if different from the address above):*

☐ Notice of Intent to Appear by Telephone, by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted **jointly** by parties *(names):*


2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐ have had a default entered against them *(specify names):*

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*


4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(Describe, including causes of action):*

Page 1 of 5

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐   The trial has been set for *(date):*
   b. ☐   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
   a. ☐   days *(specify number):*
   b. ☐   hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
   a.   Attorney:
   b.   Firm:
   c.   Address:
   d.   Telephone number:                                  f.   Fax number:
   e.   E-mail address:                                       g.   Party represented:
   ☐   Additional representation is described in Attachment 8.

9. **Preference**
   ☐   This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
   a. **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

   (1) For parties represented by counsel: Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

   (2) For self-represented parties: Party ☐ has ☐ has not   reviewed the ADR information package identified in rule 3.221.

   b. **Referral to judicial arbitration or civil action mediation** (if available).
   (1) ☐   This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

   (2) ☐   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

   (3) ☐   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER:<br>DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or
have already participated in *(check all that apply and provide the specified information):*

|  | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☐ Settlement conference completed on *(date):* |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date):*<br>☐ Agreed to complete neutral evaluation by *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date):*<br>☐ Agreed to complete judicial arbitration by *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date):*<br>☐ Agreed to complete private arbitration by *(date):*<br>☐ Private arbitration completed on *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date):*<br>☐ Agreed to complete ADR session by *(date):*<br>☐ ADR completed on *(date):* |

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

11. **Insurance**

   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

   b. Reservation of rights: ☐ Yes ☐ No

   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

12. **Jurisdiction**

   Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

   ☐ Bankruptcy   ☐ Other *(specify):*

   Status:

13. **Related cases, consolidation, and coordination**

   a. ☐ There are companion, underlying, or related cases.

       (1) Name of case:

       (2) Name of court:

       (3) Case number:

       (4) Status:

       ☐ Additional cases are described in Attachment 13a.

   b. ☐ A motion to   ☐ consolidate   ☐ coordinate   will be filed by *(name party):*

14. **Bifurcation**

   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

15. **Other motions**

   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

16. **Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

   | Party | Description | Date |
   |---|---|---|

   c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

| Attorney or Party without Attorney: | | | | For Court Use Only |
|---|---|---|---|---|
| Brian J. Robbins, Esq., Bar #190264 | | | | |
| Robbins Arroyo LLP | | | | |
| 600 B Street, Suite 1900 | | | | |
| San Diego, CA  92101 | | | | |
| Telephone No: 619-525-3990        FAX No: 619-525-3991 | | | | |
| Attorney for: Plaintiff | Ref. No. or File No.: | | | |

| Insert name of Court, and Judicial District and Branch Court: |
|---|
| San Mateo County Superior Court |

| Plaintiff: Vladi Zakinov, et al. |
|---|
| Defendant: Ripple Labs, Inc., et al. |

| **AFFIDAVIT OF SERVICE** **Summons; Complaint** | Hearing Date: | Time: | Dept/Div: | Case Number: 18CIV02845 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Certificate re Complex Case Designation; Notice of Case Management Conference; ADR Information Sheet; ADR Stipulation and Evaluation Instructions; Case Management Statement (blank)

*3. a. Party served:*                           XRP II, LLC
*b. Person served:*                        Jane Doe, Service of Process Intake Clerk, Caucasian, Female, 50 Years Old, Brown Hair, 5 Feet 4 Inches, 145 Pounds

*4. Address where the party was served:*     Corporation Service Company
80 State Street
Albany, NY  12207

*5. I served the party:*
a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Wed., Jun. 06, 2018 (2) at: 3:25PM

*6. The "Notice to the Person Served" (on the Summons) was completed as follows:*
*on behalf of:* XRP II, LLC
*Other:* limited liability company

**7. Person Who Served Papers:**                                *Fee for Service:*
a. Mary M. Bonville                    I Declare under penalty of perjury under the laws of the State of
**b. Class Action Research & Litigation**       NEW YORK that the foregoing is true and correct.
P O Box 740
Penryn, CA  95663
c. (916) 663-2562, FAX (916) 663-4955    _____    *Mary M Bonville*
                                          *(Date)*                   *(Signature)*

**8. STATE OF NEW YORK, COUNTY OF** Albany

*Subscribed and sworn to (or affirmed) before me on this* 11TH *day of* June _____ *by  Mary M. Bonville*

*proved to me on the basis of satisfactory evidence to be the person who appeared before me.*

Vera B. Ray

VERA B. RAY                    AFFIDAVIT OF SERVICE          (Notary Signature)
Notary Public - State of New York       Summons; Complaint                              brrob.178991
Albany County No. 01RA6133233
Commission Expires on 09-12-2021

ENDORSED FILED
SAN MATEO COUNTY

JUN 2 7 2018

Clerk of the Superior Court
By: COLLEEN LANGSJOEN
Deputy Clerk

1  PETER B. MORRISON (SBN 230148)
   peter.morrison@skadden.com
2  VIRGINIA F. MILSTEAD (SBN 234578)
   virginia.milstead@skadden.com
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
4  Los Angeles, California 90071-3144
   Telephone: (213) 687-5000
5  Facsimile:  (213) 687-5600

6  JOHN NEUKOM (SBN 275887)
   john.neukom@skadden.com
7  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   525 University Avenue, Suite 1400
8  Palo Alto, California 94301
   Telephone: (650) 470-4500
9  Facsimile:  (650) 470-4570

10  MARY JO WHITE (*pro hac vice* forthcoming)
    mjwhite@debevoise.com
11  ANDREW J. CERESNEY (*pro hac vice* forthcoming)
    aceresney@debevoise.com
12  DEBEVOISE & PLIMPTON LLP
    919 Third Avenue
13  New York, New York 10022
    Telephone: (212) 909-6000
14  Facsimile:  (212) 909-6836

15  Attorneys for Defendants
    Ripple Labs Inc., XRP II, LLC, and Bradley
16  Garlinghouse

17  (additional counsel on next page)

18          SUPERIOR COURT OF THE STATE OF CALIFORNIA

19              FOR THE COUNTY OF SAN MATEO

20

21  VLADI ZAKINOV, Individually And On          )  CASE NO.: 18CIV02845
    Behalf Of All Others Similarly Situated,    )
22                                              )  STIPULATION AND [PROPOSED]
                          Plaintiff,            )  ORDER EXTENDING TIME TO
23                                              )  RESPOND TO COMPLAINT
              v.                                )
24                                              )
    RIPPLE LABS INC., et al.,                   )
25                                              )
                                                )
26                        Defendants.           )

27

28

STIPULATION AND [PROPOSED] ORDER EXTENDING TIME TO RESPOND TO COMPLAINT

(continued from previous page)

BRIAN J. ROBBINS (SBN 190264)
brobbins@robbinsarroyo.com
STEPHEN J. ODDO (SBN 174828)
soddo@robbinsarroyo.com
ERIC M. CARRINO (SBN 310765)
ecarrino@robbinsarroyo.com
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiff

STIPULATION AND [PROPOSED] ORDER EXTENDING TIME TO RESPOND TO COMPLAINT

1   WHEREAS, Plaintiff Vladi Zakinov filed the complaint against Defendants Ripple Labs

2   Inc. ("Ripple"), XRP II, LLC ("XRP II"), and Bradley Garlinghouse (collectively, "Defendants")

3   in the above-captioned action on June 5, 2018;

4   WHEREAS Ripple was sub-served with the complaint on June 6, 2018, making Ripple's

5   response to the complaint due on July 16, 2018;

6   WHEREAS XRP II was served with the complaint on June 6, 2018, making XRP II's

7   response to the complaint due on July 6, 2018;

8   WHEREAS, on June 18, 2018, counsel for the Defendants agreed to accepted service of the

9   complaint on behalf of Mr. Garlinghouse, making Mr. Garlinghouse's response to the complaint

10   due on July 18, 2018;

11   WHEREAS, this action is provisionally complex because it involves a putative class action

12   and asserts securities claims;

13   WHEREAS, a Complex Case Status Conference is scheduled in this action for August 8,

14   2018 at 9:00 a.m., at which it will be decided whether the case is complex and should be assigned

15   to a single judge for all purposes;

16   WHEREAS, the parties wish to (i) provide Defendants a uniform date to respond to the

17   complaint and (ii) ensure that, if this action is designated complex and assigned to a single judge

18   for all purposes, any motion or responsive pleading Defendants file in response to the complaint

19   will be heard before that judge;

20   THEREFORE, subject to Court approval, IT IS HEREBY STIPULATED AND AGREED,

21   by and between the attorneys for the undersigned parties, as follows:

22   1.   The time for Defendants to answer, plead, or otherwise respond to the complaint is

23   extended to September 7, 2018.

24   2.   Nothing herein shall be deemed to constitute a waiver of any rights, claims,

25   defenses, motions, or objections that a party may have or make with respect to jurisdiction, venue

26   and/or the claims set forth in this action.

27   //

28   //

STIPULATION AND [PROPOSED] ORDER EXTENDING TIME TO RESPOND TO COMPLAINT

DATED: 6/22/2018

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _Peter B. Morrison_ by Adam

Peter B. Morrison
Attorneys for Defendants
Ripple Labs Inc., XRP II, LLC, Bradley
Garlinghouse

DATED: 6/22/2018

ROBBINS ARROYO LLP

By: _Stephen J. Oddo_ by A. C.

Stephen J. Oddo
Attorneys for Plaintiff

2

STIPULATION AND [PROPOSED] ORDER EXTENDING TIME TO RESPOND TO COMPLAINT

1

2

3

4

5

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SAN MATEO

10   VLADI ZAKINOV, Individually And On       )   CASE NO.: 18CIV02845
     Behalf Of All Others Similarly Situated,  )
11                                             )   [PROPOSED] ORDER EXTENDING TIME
                                               )   TO RESPOND TO COMPLAINT
12                   Plaintiff,                )
                                               )
13          v.                                 )
                                               )
14   RIPPLE LABS INC., et al.,                 )
                                               )
15                                             )
                                               )
16                   Defendants.               )

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND [PROPOSED] ORDER EXTENDING TIME TO RESPOND TO COMPLAINT

1    The Court, having reviewed the stipulation of the parties, and good cause appearing, hereby

2  orders as follows:

3        1.     The time for Defendants to answer, plead, or otherwise respond to the complaint is

4  extended to September 7, 2018.

5        2.     Nothing herein shall be deemed to constitute a waiver of any rights, claims,

6  defenses, motions, or objections that a party may have or make with respect to jurisdiction, venue

7  and/or the claims set forth in this action.

8        IT IS SO ORDERED.

9

10  DATED: _____   JUN 2 6 2018

                              _____
                              SAN MATEO COUNTY SUPERIOR COURT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

STIPULATION AND [PROPOSED] ORDER EXTENDING TIME TO RESPOND TO COMPLAINT



## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 300 S. Grand Avenue, Los Angeles, California 90071. My email address is nandi.berglund@skadden.com.

On June 22, 2018 I served the foregoing documents described as:

STIPULATION AND [PROPOSED] ORDER EXTENDING TIME TO RESPOND TO COMPLAINT

on the interested party in this action addressed as follows:

| | |
|---|---|
| BRIAN J. ROBBINS<br>brobbins@robbinsarroyo.com<br>STEPHEN J. ODDO<br>soddo@robbinsarroyo.com<br>ERIC M. CARRINO<br>ecarrino@robbinsarroyo.com<br>ROBBINS ARROYO LLP<br>600 B Street, Suite 1900<br>San Diego, CA 92101<br>Telephone:    (619) 525-3990<br>Facsimile:    (619) 525-3991<br><br>Attorneys for Plaintiff | MARY JO WHITE<br>mjwhite@debevoise.com<br>ANDREW J. CERESNEY<br>aceresney@debevoise.com<br>DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, New York  10022<br>Telephone: (212) 909-6000<br>Facsimile:   (212) 909-6836<br><br>Attorneys for Defendants<br>Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse |

☒    (BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the daily collection and processing of correspondence for deliveries with the Federal Express delivery service and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced document was placed for deposit at Los Angeles, California and placed for collection and delivery following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 22, 2018 at Los Angeles, California.

Nandi Berglund
PRINT NAME                                                    SIGNATURE



**SUPERIOR COURT OF SAN MATEO COUNTY**
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

## AFFIDAVIT OF MAILING

Date: 8/8/2018

In the Matter of: VLADI ZAKINOV  vs.  RIPPLE LABS INC., et al
Case No.: 18-CIV-02845A

I declare under penalty of perjury that on the following date I deposited in the United States Post Office mail box at Redwood City, a true copy of the attached document(s) **ORDER DESIGNATING MATTER COMPLEX & ASSIGNING CASE FOR ALL PURPOSES**, enclosed in an envelope, with proper and necessary postage thereon, and addressed to the following:

Executed on: 8/8/2018

Rodina M. Catalano, Court Executive Officer/Clerk

By: _____
Alexandrina Ortega, Deputy Clerk

Copies Mailed To:

BRIAN J. ROBBINS
600 B STREET, SUITE 1900
SAN DIEGO, CA 92101

PETER B. MORRISON
300 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CA 90071

18 – CIV – 02845
AFM
Affidavit of Mailing
1309379

Rev. Jun. 2016



**SUPERIOR COURT OF SAN MATEO COUNTY**
400 County Center, Redwood City, CA 94063
www.sanmateocourt.org

FOR COURT USE ONLY

**FILED**
SAN MATEO COUNTY

AUG 0 8 2018

Clerk of the Superior Court
By _____
DEPUTY CLERK

PLAINTIFF: **VLADI ZAKINOV**

DEFENDANT: **RIPPLE LABS INC.; XRP II, LLC; BRADLEY GARLINGHOUSE; DOES 1-25, INCLUSIVE**

**CLERK'S NOTICE OF FEES DUE COMPLEX LITIGATION DESIGNATION**

CASE NUMBER:
**18-CIV-02845**

PARTY INFORMATION:

BRIAN J. ROBBINS
600 B STREET,  SUITE 1900
SAN DIEGO, CA  92101

PETER B. MORRISON
300 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071- 3144



18–CIV–02845
FDCL
Clerk's Notice of Fees Due Complex Litigation [
1309278

COUNSEL (FOR PRO/PER) INFORMATION:

BRIAN J ROBBINS            600 B STREET SUITE 1900 SAN DIEGO CA  92101

PETER B. MORRISON          300 SOUTH GRAND AVENUE LOS ANGELES, CA 90071- 3144

You are hereby notified that the court has designed your case as a complex case.  Pursuant to Government Code section 70616 you are required to pay the following fees:

Plaintiff(s): A single complex case fee of $1,000 shall be paid on behalf of all plaintiffs, either filing separately or jointly to be paid at the same time as designated in Government Code section 70616(a).

Defendant(s): A complex case fee of $1,000 shall be paid by each defendant, intervenor, respondent, or adverse party, whether filing separately or jointly, up to the total complex fees collected from all defendants, intervenors, respondents, or other adverse parties appearing not to exceed $18,000.  These fees are to be paid at the time as designated in Govt.C. §70616(b). (Govt.C §7 0616(b) and (d))

You are required to bring this notice to the clerk's office, civil division, and deposit the required fee within the statutory time period of 10 days from the date indicated on this Notice. Failure to pay the required fee will result in a delay of your case as provided for under Government Code section 70616 and the Code of Civil Procedure section 411.20.

*Please disregard this notice if you have paid this fee prior to receipt of this Notice.  If you paid this fee more than 10 days ago, please contact the Clerk's Office at (650) 261-5100.*

You are required to bring this worksheet to the clerk's office as directed, and deposit the required fees and you are to

Rev. Oct. 2014

present your receipt to the courtroom clerk as proof of payment.  Failure to pay the required fess could result in a delay of your case.

Date: 8/8/2018                                     Rodina M. Catalano, Court Executive Officer/Clerk

### CLERK'S CERTIFICATE OF MAILING

I hereby certify that I am the clerk of this Court, not a party to this cause; that I served a copy of this notice on the below date, by pplacing a copy thereof in separate sealed envelopes addressed to the address shown by the records of this Court and by then sealing said envelopes and depositing same, with postage fully rep-paid thereon, in the United States Mail at Redwood City California.

Date: 8/8/2018                    By: _____

                                        Alexandrina Ortega, Courtroom Clerk

Case Number: 18-CIV-02845



**SUPERIOR COURT OF SAN MATEO COUNTY**

| 400 County Center | 1050 Mission Road |
|---|---|
| Redwood City, CA 94063 | South San Francisco, CA 94080 |

www.sanmateocourt.org

## Minute Order

| VLADI ZAKINOV  vs.  RIPPLE LABS INC., et al | 18-CIV-02845 |
|---|---|
| | 08/08/2018 9:00 AM |
| | Complex Case Status |
| | Conference |
| | **Hearing Result**:  Held |

**Judicial Officer:** <u>Foiles, Robert D</u>     **Location**: <u>Courtroom 2J</u>

**Courtroom Clerk**: <u>Alexandrina Ortega</u>     **Courtroom Reporter:**  <u>Chris Perez</u>

**Parties Present**

**Exhibits**

**Minutes**
*Journals*
 - No appearance by any parties herein or their counsel of record.

 (Case called at 9:12 am)

 Tentative ruling adopted and becomes order:

 This matter is provisionally deemed and designated as COMPLEX and is assigned to Judge Marie S.
 Weiner, Department 2, for all purposes. The parties are directed to contact Judge Weiner's Department
 at 650-261-5102 to set a date for future status conferences or other hearings.

 If the tentative ruling is uncontested, it shall become the order of the Court, pursuant to Rule
 3.1308(a)(1), adopted by Local Rule 3.10, effective immediately, and no formal order pursuant to Rule
 3.1312 or any other notice is required as the tentative ruling affords sufficient notice to the parties.

 ** ** ** ** ** ** ** ** ** ** ** ** ** ** **
*Case Events*
 - Case deemed complex litigation

**Others**
*Comments:*

**Future Hearings and Vacated Hearings**

 October 04, 2018 9:00 AM Case Management Conference
 Case Management Conferences, -





**FILED**
SAN MATEO COUNTY

AUG. 0 8 2018

Clerk of the Superior Court

By _____
DEPUTY CLERK

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN MATEO

| | |
|---|---|
| VLADI ZAKINOV | ) Case No. 18-CIV-02845 |
|     Plaintiff, | ) |
|     vs. | ) |
| | ) **ORDER DESIGNATING MATTER** |
| RIPPLE LABS INC., ETAL. | ) **COMPLEX & ASSIGNING CASE** |
|     Defendants. | ) **FOR ALL PURPOSES** |
| | ) |

On August 8, 2018 this matter was set for Complex Case Status Conference. The Tentative ruling by Judge Foiles was adopted and ordered as follows:

This matter is provisionally deemed and designated as complex, and is assigned to Department 2, the Honorable Marie S. Weiner, for all purposes. The parties are directed to contact Judge Weiner's Department at (650) 261-5102 to set a date for future status conference or other hearing.

Dated: _8/8/18_

ROBERT D FOILES
Presiding Judge of the Superior Court



18-CIV-02845
ODCC
Order Designating Case as Complex
1309376



**SUPERIOR COURT OF SAN MATEO COUNTY**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

## AFFIDAVIT OF MAILING

Date: 8/9/2018

In the Matter of: VLADI ZAKINOV  vs.  RIPPLE LABS INC., et al
Case No.: 18-CIV-02845

    I declare under penalty of perjury that on the following date I deposited in the United States Post Office mail box at Redwood City, a true copy of the attached document(s) Case Management Order #1 and Order For Permissive E-Filing, enclosed in an envelope, with proper and necessary postage thereon, and addressed to the following:

See Attached Service List.

Executed on: 8/9/2018

        Rodina M. Catalano, Court Executive Officer/Clerk

By: _____

        Sandra Harris, Deputy Clerk

18-CIV-02845
AFM
Affidavit of Mailing
1311778

Rev. Jun. 2016

SERVICE LIST
*Zakinov v. Ripple Labs*, Class Action 18CIV02845
As of August 2018

Attorneys for Plaintiff:

BRIAN ROBBINS
STEPHEN ODDO
ERIC CARRINO
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA  92101
(619) 525-3990

Attorneys for Defendants:

PETER MORRISON
VIRGINIA MILSTEAD
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA  90071-3144
(213) 687-5000

JOHN NEUKOM
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA  94301
(650) 470-4500

MARY JO WHITE
ANDREW CERESNEY
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York City, NY  10022
(212) 909-6000

FILED
SAN MATEO COUNTY

AUG 0 9 2018

Clerk of the Superior Court
By _____
DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

COMPLEX CIVIL LITIGATION

| | |
|---|---|
| VLADI ZAKINOV, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>RIPPLE LABS INC.; XRP II LLC; BRADLEY GARLINGHOUSE; and Does 1-25, Inclusive,<br><br>      Defendants.<br>_____/ | Case No. 18CIV02845<br>**CLASS ACTION**<br><br>Assigned for all purposes to Dept. 2<br>Hon. Marie S. Weiner<br><br>**CASE MANAGEMENT ORDER #1 and ORDER FOR PERMISSIVE E-FILING** |

Pursuant to Order of the Acting Presiding Judge on August 8, 2018, designating this putative class action as "complex" and assigning this complex action for all purposes to the Honorable Marie S. Weiner in Department 2 of this Court,

IT IS HEREBY ORDERED as follows:

1.     All pleadings, motions, applications, briefs, and any and all other papers in this case shall be filed with (and related filing fees paid to) the Civil Clerk's Office located in the Hall of Justice, First Floor, Room A, 400 County Center, Redwood City,



18-CIV-02845
CMO
Case Management Order
1311758

1

California.  **One extra copy of any such filing shall be (1) electronically served upon Department 2 at email address <u>complexcivil@sanmateocourt.org</u> or** (2) stamped "Judge's Copy" and *delivered by overnight or first class mail directly to Department 2* located at Courtroom 2E, 400 County Center, Redwood City, California 94063.  DO NOT LEAVE THE JUDGE'S COPY WITH THE CLERK'S OFFICE.  PLEASE ADD DEPARTMENT 2 TO YOUR **E-SERVICE OR** MAILING SERVICE LIST IN THE CASE AS TO ANY AND ALL PAPERS FILED WITH THE COURT.  All motions and briefs shall conform with the California Rules of Court, especially Rule 3.1113, and indicate on the caption page that this matter is assigned for all purposes to Department 2.  DO NOT FAX COPIES OR CORRESPONDENCE TO DEPARTMENT 2, AS THERE IS NO DEDICATED FAX LINE FOR THE CIVIL COMPLEX DEPARTMENT.

2.  As to any and all motions or other matters requiring a hearing, the hearing date shall be obtained *directly* from and approved by Department 2 at **(650) 261-5102** (and *not* with the Civil Clerk's Office nor with the Research Attorney), ***prior*** to filing of the moving papers or other initial filings.

3.  Pursuant to Section 1010.6(b) of the Code of Civil Procedure, Rule 2.253(a) of the California Rules of Court, and San Mateo County Superior Court Local Rule 2.1.5, all documents in Complex Civil actions (other than the original documents specified below) may be filed electronically.  The document (other than exhibits) must be text searchable.  Please visit <u>www.sanmateocourt.org</u> for further information on e-filing.  **Please note that exhibits to any electronically filed briefs, declarations or other documents must be electronically "bookmarked" as required by CRC Rule 3.1110(f)(4)**

4.      Until further order of the Court, the following original documents must still be filed/lodged in hardcopy paper:

Ex Parte Motions and Oppositions thereto

Stipulation and Proposed Order

Request for Dismissal

Proposed Judgments

Abstract of Judgment

Default Judgment

Appeal Documents

Administrative Records

5.      Proposed Orders should be e-filed with the motion or stipulation to which it relates in conformity with CRC Rule 3.1312(c).  You must also email an editable version of the Proposed Order in Word format (not PDF) to complexcivil@sanmateocourt.org so that the judge can modify it prior to signing, if needed.

6.      Correspondence to Department 2, such as discovery letter briefs, requests to take matters off calendar, and requests for rescheduling, regarding actions assigned to the Complex Civil Department may be submitted electronically, rather than paper, by e-mail addressed to complexcivil@sanmateocourt.org  All e-correspondence **must be sent in at least 12 point type**.  This email address is for the Complex Civil Litigation Department to *receive* correspondence, and is not a venue for back-and-forth communications with the judge.  Communications to this email address are *not* part of the official court files -- just like a paper letter, they are not "filed" documents -- and will be retained for at least 30 days and then be subject to deletion (destruction) thereafter.

3

7.     All communications to the complexcivil@sanmateocourt.org email address MUST include in the header "subject line" the **Case Number and Name of Case** (e.g., CIV 654321 *Smith v. Jones*).

8.     *Ex parte* applications in this matter shall heard by Department 2, **on Tuesdays and Thursday between 2:00 p.m. and 3:30 p.m.**, and the parties are required to meet the requirements of CRC Rule 3.120 *et seq.*.  With the consent of counsel for *all* parties, telephone conferences on *simple* interim case management matters may be scheduled with the Court for a mutually convenient time and date – with the scheduling and logistics of such telephone conferences to be the responsibility of the requesting party/parties.

9.     As to any discovery motions, the parties are relieved of the statutory obligation under CRC Rule 3.1345, and thus need *not* file a separate statement – instead the subject discovery requests (or deposition questions) and written responses (or deposition answers or objections) must be attached to the supporting declaration on the discovery motion.

10.     Given the nature of this case, the Court views document production and depositions as the most effective means of discovery for adjudication.  Accordingly, no party may propound more than 35 special interrogatories *total* and no party may propound more than 35 requests for admissions (other than as to the authenticity of documents) *total*, without prior court order after demonstration of need and a showing that other means of discovery would be less efficient.

11.     In regard to all discovery disputes, counsel for the parties (and any involved third parties) shall meet and confer on any and all discovery disputes and, if there are remaining disputes, then counsel for each side shall serve on each other and

4

mail/deliver *directly* to Department 2 a short letter brief setting forth the dispute and attaching as *tabbed* exhibits to the letter the subject discovery requests and discovery responses (if any).  **The discovery letter brief may instead be electronically delivered to Department 2 via email address complexcivil@sanmateocourt.org.**  At the time or prior to submitting the letter briefs, counsel for the parties shall also schedule a discovery conference with the Court to occur no sooner than five court days after *delivery* of the last letter brief to the Court, in order to discuss the dispute.  THE DISCOVERY DISPUTE LETTER BRIEFS AND THE DISCOVERY CONFERENCE SHALL BE DONE *WELL PRIOR TO* THE STATUTORY DEADLINES FOR FILING OF ANY MOTION TO COMPEL OR OTHER DISCOVERY MOTION.  No discovery motion may be filed by any party unless and until there is compliance with the requirement of this Order, i.e., (i) substantive meet and confer, (ii) exchange of letter briefs, and (iii) discovery conference with the Court.  This requirement does *not* constitute an extension of time for any statutory time period for filing and serving any motion under the Civil Discovery Act.

12.     Pursuant to CRC Rule 3.1113(i), the Complex Civil Department, Dept. 2, **does not require any appendix of non-California authorities, unless specifically stated by the Court as to a particular motion.**

13.     The Case Management Conference set for October 4, 2018 is VACATED.

14.     The Court is aware of the Stipulation and Order granting an extension of time for all Defendants to file and serve their response to the Complaint until September 7, 2018.  Accordingly, if the Defendants' response to the Complaint is anything other than an Answer, then the demurrer or other motion regarding the pleadings is set for hearing on **Friday, October 26, 2018 at 2:30 p.m.** in Department 2

of this Court.  Any opposition shall be filed and served on or before **September 28, 2018.**

Any reply shall be filed and served on or before **October 19, 2018**.

15.     The initial Case Management Conference is set for **Friday, October 26,**

**2018 at 10:00 a.m.** in Department 2 of this Court, located at Courtroom 2E, 400 County

Center, Redwood City, California.  Counsel for all parties shall meet and confer on all

matters set forth in California Rules of Court Rule 3.750 and Rule 3.724(8).

16.     In anticipation of the Case Management Conference, counsel for the

parties should be prepared to discuss at the hearing *and* file written case management

conference statements (**in prose and details, *not* using the standardized Judicial**

**Council form**) with a courtesy copy delivered *directly* to Department 2 on or before

**October 19, 2018**, as to the following:

a.     Status of Discovery, including the initial production of documents by all

parties;

b.     Status of Settlement or Mediation;

c.     Conclusions reached after meet and confer on all matters set forth in CRC

Rule 3.750 and Rule 3.724(8);

d.     Any anticipated motions and proposed briefing schedule;

e.     Setting of next CMC date; and

f.     Any other matters for which the parties seek Court ruling or scheduling.

17.   Discovery is not stayed.

DATED:        August 9, 2018

_____

HON. MARIE S. WEINER
JUDGE OF THE SUPERIOR COURT

6

RECEIVED
SAN MATEO COUNTY
By
Clerk of the Superior Court
AUG 16 2018
DEPUTY CLERK

18 – CIV – 02845
PORCV
Proposed Order Received
1327167

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN MATEO**

| | |
|---|---|
| VLADI ZAKINOV Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>RIPPLE LABS INC., et al.,<br><br>                              Defendants. | CASE NO.: 18-CIV-02845<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION AND PEREMPTORY CHALLENGE TO THE HONORABLE MARIE S. WEINER PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 170.6**<br><br>Assigned for all purposes to Hon. Marie S. Weiner, Dept. 2<br><br>Judge:          Hon. Susan Irene Etezadi<br>Department:   18<br><br>Date Action Filed:  June 5, 2018<br>Trial Date:          Not Set<br><br>[Submitted to the Presiding Judge per Cal. Code Civ. Proc. § 170.6(a)(2)] |

1    The Court having considered Defendant Ripple Labs Inc.'s Motion and Peremptory

2 Challenge to the Honorable Marie S. Weiner Pursuant to California Code of Civil Procedure

3 § 170.6, orders as follows:

4    Defendant's peremptory challenge is GRANTED.

5

6 DATED: _____, 2018

        By:_____
7                           The Honorable Susan Irene Etezadi
                            Presiding Judge of San Mateo Superior Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  DEBORAH McCRIMMON (SBN 229769)
   315 Montgomery St., 2nd Floor
2  San Francisco, CA 94101
   Telephone: (415) 967-1836
3  dmcrimmon@ripple.com

4  Attorney for Defendant
   Ripple Labs Inc.

5

6

7

**FILED**

**SAN MATEO COUNTY**

AUG 1 6 2018

Clerk of the Superior Court

By _____
      DEPUTY CLERK

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SAN MATEO

10  VLADI ZAKINOV Individually and on Behalf      )  CASE NO.: 18-CIV-02845
    of All Others Similarly Situated,             )
11                                                )  **CLASS ACTION**
                                                  )
12                        Plaintiff,              )  **BY FAX**
                                                  )
13           v.                                   )  **DECLARATION OF DEBORAH**
                                                  )  **McCRIMMON IN SUPPORT OF**
14  RIPPLE LABS INC., et al.,                     )  **DEFENDANT'S MOTION AND**
                                                  )  **PEREMPTORY CHALLENGE TO THE**
15                        Defendants.             )  **HONORABLE MARIE S. WEINER**
                                                  )  **PURSUANT TO CALIFORNIA CODE**
16                                                )  **OF CIVIL PROCEDURE SECTION**
                                                  )  **170.6**
17                                                )
        18 – CIV – 02845                          )  Assigned for all purposes to Hon. Marie S.
18      DIS                                       )  Weiner, Dept. 2
        Declaration in Support                    )
19      1327157                                   )  Judge:      Hon. Susan Irene Etezadi
                                                  )  Department:  18
20                                                )
                                                  )  Date Action Filed:  June 5, 2018
21                                                )  Trial Date:       Not Set
                                                  )
22                                                )  [Submitted to the Presiding Judge per Cal.
                                                  )  Code Civ. Proc. § 170.6(a)(2)]
23                                                )

24

25

26

27

28

_____
           DECLARATION OF DEBORAH McCRIMMON ISO MOTION AND PEREMPTORY CHALLENGE
                              CASE NO. 18-CIV-02845

1    I, Deborah E. McCrimmon, declare as follows:

2    1.    I am an attorney duly licensed to practice in the courts of the State of California and

3    have been admitted to this Court.   I am Senior Counsel for Defendant Ripple Labs Inc.

4    ("Defendant").  I have personal knowledge of the matters stated herein and, if called upon, I could

5    and would competently testify thereto.  I submit this Declaration in support of the Motion and

6    Peremptory Challenge to the Honorable Marie S. Weiner, filed by Defendant pursuant to Section

7    170.6 of the California Code of Civil Procedure.

8    2.    This action was filed on June 5, 2018.

9    3.    On August 8, 2018, this action was designated as complex and assigned for all

10   purposes to the Honorable Marie S. Weiner, Department 2 of this Court.

11   4.    I believe that Judge Weiner is prejudiced against Defendant, or the interests of

12   Defendant, such that Defendant cannot have a fair and impartial trial or hearing before Judge

13   Weiner.

14   5.    Pursuant to Section 170.6 of the California Code of Civil Procedure, I request that

15   this case be reassigned to another judicial officer for further proceedings.

16   I declare under penalty of perjury under the laws of the State of California that the

17   foregoing is true and correct.

18   Executed August 15, 2018 in San Francisco, California.

19

20   By:_____

21            Deborah E. McCrimmon
             Attorney for Defendant Ripple Labs Inc.

22

23

24

25

26

27

28

---

DECLARATION OF DEBORAH E. MCCRIMMON ISO MOTION AND PEREMPTORY CHALLENGE
CASE NO. 18-CIV-02845

1   DEBORAH McCRIMMON (SBN 229769)
    315 Montgomery St., 2nd Floor
2   San Francisco, CA 94101
    Telephone: (415) 967-1836
3   dmcrimmon@ripple.com

4   Attorney for Defendant
    Ripple Labs Inc.

**FILED**
**SAN MATEO COUNTY**

AUG 1 6 2018

Clerk of the Superior Court

By _____
        DEPUTY CLERK

8          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                 **COUNTY OF SAN MATEO**

| | |
|---|---|
| VLADI ZAKINOV Individually and on Behalf of All Others Similarly Situated, <br><br>              Plaintiff, <br><br>     v. <br><br> RIPPLE LABS INC., et al., <br><br>            Defendants. | CASE NO.: 18-CIV-02845 <br><br> <u>**CLASS ACTION**</u> <br><br> <u>**BY FAX**</u> <br><br> **(1) DEFENDANT'S MOTION AND PEREMPTORY CHALLENGE TO THE HONORABLE MARIE S. WEINER PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 170.6;** <br><br> **(2) DECLARATION OF DEBORAH McCRIMMON (filed under separate cover); and** <br><br> **(3) [PROPOSED] ORDER (lodged under separate cover).** <br><br> Assigned for all purposes to Hon. Marie S. Weiner, Dept. 2 <br><br> Judge:       Hon. Susan Irene Etezadi <br> Department:   18 <br><br> Date Action Filed: June 5, 2018 <br> Trial Date:      Not Set <br><br> [Submitted to the Presiding Judge per Cal. Code Civ. Proc. § 170.6(a)(2)] |

18-CIV-02845
170.6
Peremptory Challenge Pursuant to CCP 170.6 A
1327144

1       Defendant Ripple Labs Inc. respectfully moves, pursuant to California Code of Civil

2 Procedure Section 170.6, for an order that the Honorable Marie S. Weiner, Judge of the Superior

3 Court assigned for all purposes to the above-captioned matter, be disqualified from hearing any

4 motion or trying any matter in this action, on the grounds set forth in the Declaration of Deborah E.

5 McCrimmon, submitted herewith.

6 DATED:  August 16, 2018

7

8

9                       By:_____

                                     Deborah E. McCrimmon

10                             Attorney for Defendant Ripple Labs Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  DEBORAH McCRIMMON (SBN 229769)
2  315 Montgomery St., 2nd Floor
   San Francisco, CA 94101
3  Telephone: (415) 967-1836
   dmcrimmon@ripple.com



4  Attorney for Defendant
   Ripple Labs Inc.



8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF SAN MATEO

10  VLADI ZAKINOV Individually and on Behalf   )   CASE NO.: 18-CIV-02845
    of All Others Similarly Situated,          )
11                                             )   **CLASS ACTION**
                                               )
12                            Plaintiff,        )
                                               )
13              v.                             )   **PROOF OF SERVICE**
                                               )
14  RIPPLE LABS INC., et al.,                  )   Assigned for all purposes to Hon. Marie S.
                                               )   Weiner, Dept. 2
15                            Defendants.       )
                                               )   Judge:      Hon. Susan Irene Etezadi
16                                             )   Department: 18
                                               )
17                                             )   Date Action Filed: June 5, 2018
                                               )   Trial Date:      Not Set
18                                             )
                                               )   [Submitted to the Presiding Judge per Cal.
19                                             )   Code Civ. Proc. § 170.6(a)(2)]
                                               )
20                                             )
                                               )
21                                             )
                                               )
22                                             )
                                               )
23                                             )



---

PROOF OF SERVICE                                    CASE NO. 18-CIV-02845

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

I am employed in the county of Santa Clara, State of California.  I am over the age of 18 and not a party to the within action; my business address is 4546 El Camino Real #262, Los Altos, CA 94022.

On August16, 2018, I served the documents described as:

**(1) DEFENDANT'S MOTION AND PEREMPTORY CHALLENGE TO THE HONORABLE MARIE S. WEINER PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 170.6;**

**(2) DECLARATION OF DEBORAH McCRIMMON (filed under separate cover); and**

**(3) [PROPOSED] ORDER (lodged under separate cover).**

on the interested parties in this action addressed as follows:

| | |
|---|---|
| Honorable Judge Marie S. Weiner | BRIAN J. ROBBINS |
| Courtroom 2E | STEPHEN J ODDO |
| 400 Country Center | ERIC M. CARRINO |
| Redwood City, CA 94063 | ROBBINS ARROYO LLP |
| | 600 B Street, Suite 1900 |
| | San Diego, CA 92101 |

*Attorney for Plaintiff Vladi Zakinov*

☒　　(BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the daily collection and processing of correspondence for deliveries with the Federal Express delivery service and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced document was placed for deposit at Palo Alto, California and placed for collection and overnight delivery following ordinary business practices. (AS NOTED)

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 16, 2018, at Palo Alto, California.

JOHN BUSER
_____
Type or Print Name

_____
Signature

PROOF OF SERVICE　　　　　　　　　　　　　　　　　　　CASE NO. 18-CIV-02845

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN MATEO**

VLADI ZAKINOV Individually and on Behalf
of All Others Similarly Situated,

                     Plaintiff,

        v.

RIPPLE LABS INC., et al.,

                  Defendants.

CASE NO.: 18-CIV-02845

**[PROPOSED] ORDER GRANTING
DEFENDANT'S MOTION AND
PEREMPTORY CHALLENGE TO THE
HONORABLE MARIE S. WEINER
PURSUANT TO CALIFORNIA CODE
OF CIVIL PROCEDURE SECTION
170.6**

Assigned for all purposes to Hon. Marie S.
Weiner, Dept. 2

Judge:      Hon. Susan Irene Etezadi
Department:  18

Date Action Filed:  June 5, 2018
Trial Date:     Not Set

[Submitted to the Presiding Judge per Cal.
Code Civ. Proc. § 170.6(a)(2)]

18–CIV–02845
PORCV
Proposed Order Received
1335415



1    The Court having considered Defendant Ripple Labs Inc.'s Motion and Peremptory

2  Challenge to the Honorable Marie S. Weiner Pursuant to California Code of Civil Procedure

3  § 170.6, orders as follows:

4    Defendant's peremptory challenge is GRANTED.

5

6  DATED: _____, 2018

                               By: _____

7                                     The Honorable Susan Irene Etezadi
                                   Presiding Judge of San Mateo Superior Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**SUPERIOR COURT OF SAN MATEO COUNTY**
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

# FILED
## SAN MATEO COUNTY

**AFFIDAVIT OF MAILING**

AUG 2 1 2018

Date: 8/21/2018

Clerk of the Superior Court

By _____

DEPUTY CLERK

In the Matter of: VLADI ZAKINOV  vs.  RIPPLE LABS INC., et. al.
Case No.: 18-CIV-02845A

    I declare under penalty of perjury that on the following date I deposited in the United States Post Office mail box at Redwood City, a true copy of the attached document(s) ORDER ASSIGNING CASE FOR ALL PURPOSES, enclosed in an envelope, with proper and necessary postage thereon, and addressed to the following:

Executed on: 8/21/2018

                    Rodina M. Catalano, Court Executive Officer/Clerk

By: _____

        Marie Perez, CRC II

<u>Copies Mailed To:</u>

      See attached list

18 – CIV – 02845
AFM
Affidavit of Mailing
1335257

Rev. Jun. 2016

SERVICE LIST
*Zakinov v. Ripple Labs*, Class Action 18CIV02845
As of August 2018

Attorneys for Plaintiff:

BRIAN ROBBINS
STEPHEN ODDO
ERIC CARRINO
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA  92101
(619) 525-3990

Attorneys for Defendants:

PETER MORRISON
VIRGINIA MILSTEAD
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA  90071-3144
(213) 687-5000

JOHN NEUKOM
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA  94301
(650) 470-4500

MARY JO WHITE
ANDREW CERESNEY
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York City, NY  10022
(212) 909-6000

**FILED**

SAN MATEO COUNTY

AUG 21 2018

Clerk of the Superior Court

By _____
DEPUTY CLERK

1  DEBORAH McCRIMMON (SBN 229769)
   315 Montgomery St., 2nd Floor
2  San Francisco, CA 94101
   Telephone: (415) 967-1836
3  dmcrimmon@ripple.com

4  Attorney for Defendant
   Ripple Labs Inc.

5

6

7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                      **COUNTY OF SAN MATEO**

10  VLADI ZAKINOV Individually and on Behalf      )  CASE NO.: 18-CIV-02845
    of All Others Similarly Situated,              )
11                                                 )  **CLASS ACTION**
                                                   )
12                          Plaintiff,             )  **BY FAX**
                                                   )
13              v.                                 )  **DECLARATION OF DEBORAH**
                                                   )  **McCRIMMON IN SUPPORT OF**
14  RIPPLE LABS INC., et al.,                      )  **DEFENDANT'S MOTION AND**
                                                   )  **PEREMPTORY CHALLENGE TO THE**
15                          Defendants.            )  **HONORABLE MARIE S. WEINER**
                                                   )  **PURSUANT TO CALIFORNIA CODE**
16                                                 )  **OF CIVIL PROCEDURE SECTION**
                                                   )  **170.6**
17                                                 )
                                                   )  Assigned for all purposes to Hon. Marie S.
18                                                 )  Weiner, Dept. 2
                                                   )
19                                                 )  Judge:       Hon. Susan Irene Etezadi
                                                   )  Department:  18
20                                                 )
                                                   )  Date Action Filed: June 5, 2018
21                                                 )  Trial Date:        Not Set
                                                   )
22                                                 )  [Submitted to the Presiding Judge per Cal.
                                                   )  Code Civ. Proc. § 170.6(a)(2)]
23                                                 )

24

25

26

27

28

18–CIV–02845
DIS
Declaration in Support
1335391

---

DECLARATION OF DEBORAH McCRIMMON ISO MOTION AND PEREMPTORY CHALLENGE
CASE NO. 18-CIV-02845

RECEIVED
AUG 17 2018
SUPERIOR COURT
CIVIL DIVISION

1    I, Deborah E. McCrimmon, declare as follows:

2        1.    I am an attorney duly licensed to practice in the courts of the State of California and

3    have been admitted to this Court.   I am Senior Counsel for Defendant Ripple Labs Inc.

4    ("Defendant").  I have personal knowledge of the matters stated herein and, if called upon, I could

5    and would competently testify thereto.  I submit this Declaration in support of the Motion and

6    Peremptory Challenge to the Honorable Marie S. Weiner, filed by Defendant pursuant to Section

7    170.6 of the California Code of Civil Procedure.

8        2.    This action was filed on June 5, 2018.

9        3.    On August 8, 2018, this action was designated as complex and assigned for all

10   purposes to the Honorable Marie S. Weiner, Department 2 of this Court.

11       4.    I believe that Judge Weiner is prejudiced against Defendant, or the interests of

12   Defendant, such that Defendant cannot have a fair and impartial trial or hearing before Judge

13   Weiner.

14       5.    Pursuant to Section 170.6 of the California Code of Civil Procedure, I request that

15   this case be reassigned to another judicial officer for further proceedings.

16       I declare under penalty of perjury under the laws of the State of California that the

17   foregoing is true and correct.

18       Executed August 15, 2018 in San Francisco, California.

19

20       By:_____

21                          Deborah E. McCrimmon
                            Attorney for Defendant Ripple Labs Inc.

22

23

24

25

26

27

28

---

DECLARATION OF DEBORAH E. MCCRIMMON ISO MOTION AND PEREMPTORY CHALLENGE
CASE NO. 18-CIV-02845

**FILED**
SAN MATEO COUNTY

AUG 2 1 2018

Clerk of the Superior Court

By _____
DEPUTY CLERK

1 | DEBORAH McCRIMMON (SBN 229769)
315 Montgomery St., 2nd Floor
2 | San Francisco, CA 94101
Telephone: (415) 967-1836
3 | dmcrimmon@ripple.com

4 | Attorney for Defendant
Ripple Labs Inc.

5

6

7

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF SAN MATEO**

10 | VLADI ZAKINOV Individually and on Behalf   )   CASE NO.: 18-CIV-02845
of All Others Similarly Situated,      )
11 |                               )   **CLASS ACTION**
12 |               Plaintiff,   )   **BY FAX**
                              )
13 |    v.                   )   **(1) DEFENDANT'S MOTION AND**
                              )   **PEREMPTORY CHALLENGE TO THE**
14 | RIPPLE LABS INC., et al.,       )   **HONORABLE MARIE S. WEINER**
                              )   **PURSUANT TO CALIFORNIA CODE**
15 |            Defendants.   )   **OF CIVIL PROCEDURE SECTION**
                              )   **170.6;**
16 |                               )
                              )   **(2) DECLARATION OF DEBORAH**
17 |                               )   **McCRIMMON (filed under separate**
                              )   **cover); and**
18 |
                              )   **(3) [PROPOSED] ORDER (lodged under**
19 |                               )   **separate cover).**
20 |                               )   Assigned for all purposes to Hon. Marie S.
                              )   Weiner, Dept. 2
21 |
                              )   Judge:     Hon. Susan Irene Etezadi
22 |                               )   Department:  18
23 |
                              )   Date Action Filed: June 5, 2018
24 |                               )   Trial Date:     Not Set
25 |
[Submitted to the Presiding Judge per Cal.
26 | Code Civ. Proc. § 170.6(a)(2)]

27

28

---

18 – CIV – 02845
170.6
Peremptory Challenge Pursuant to CCP 170.6 A...
1335610

---

DEFENDANT'S MOTION AND PEREMPTORY CHALLENGE
CASE NO. 18-CIV-02845

RECEIVED

AUG 17 2018

SUPERIOR COURT
CIVIL DIVISION

1    Defendant Ripple Labs Inc. respectfully moves, pursuant to California Code of Civil

2 Procedure Section 170.6, for an order that the Honorable Marie S. Weiner, Judge of the Superior

3 Court assigned for all purposes to the above-captioned matter, be disqualified from hearing any

4 motion or trying any matter in this action, on the grounds set forth in the Declaration of Deborah E.

5 McCrimmon, submitted herewith.

6 DATED:  August 16, 2018

7

8

9    By:_____

              Deborah E. McCrimmon

10              Attorney for Defendant Ripple Labs Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 DEBORAH McCRIMMON (SBN 229769)
  315 Montgomery St., 2nd Floor
2 San Francisco, CA 94101
  Telephone: (415) 967-1836
3 dmcrimmon@ripple.com

4 Attorney for Defendant
  Ripple Labs Inc.

**FILED**
SAN MATEO COUNTY

AUG 2 1 2018

Clerk of the Superior Court
By _____
   DEPUTY CLERK

5

6

7

8     **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9        **COUNTY OF SAN MATEO**

10 VLADI ZAKINOV Individually and on Behalf  CASE NO.: 18-CIV-02845
  of All Others Similarly Situated,
11

            **CLASS ACTION**
12       Plaintiff,

13    v.

14 RIPPLE LABS INC., et al.,      **PROOF OF SERVICE**

15       Defendants.   Assigned for all purposes to Hon. Marie S.
              Weiner, Dept. 2
16
              Judge:  Hon. Susan Irene Etezadi
17            Department: 18

18            Date Action Filed: June 5, 2018
             Trial Date:  Not Set
19
            [Submitted to the Presiding Judge per Cal.
20           Code Civ. Proc. § 170.6(a)(2)]

21

22

23           18 – CIV – 02845
              PSM1
24           Proof of Service by MAIL of
              1335443
25

26

27

28

PROOF OF SERVICE              CASE NO. 18-CIV-02845

Detailed

RECEIVED
AUG 1 7 2018
SUPERIOR COURT
CIVIL DIVISION

1
<u>**PROOF OF SERVICE**</u>

2
**STATE OF CALIFORNIA, COUNTY OF SANTA CLARA**

3
     I am employed in the county of Santa Clara, State of California.  I am over the age of 18

4
and not a party to the within action; my business address is 4546 El Camino Real #262, Los Altos, CA 94022.

5

6
     On August16, 2018, I served the documents described as:

7
**(1) DEFENDANT'S MOTION AND PEREMPTORY CHALLENGE TO THE**

8
**HONORABLE MARIE S. WEINER PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 170.6;**

9
**(2) DECLARATION OF DEBORAH McCRIMMON (filed under separate cover); and**

10

11
**(3) [PROPOSED] ORDER (lodged under separate cover).**

    on the interested parties in this action addressed as follows:

12

13
Honorable Judge Marie S. Weiner       BRIAN J. ROBBINS
Courtroom 2E                    STEPHEN J ODDO
400 Country Center             ERIC M. CARRINO

14
Redwood City, CA 94063        ROBBINS ARROYO LLP
600 B Street, Suite 1900

15
San Diego, CA 92101

16
                             *Attorney for Plaintiff Vladi Zakinov*

17

18
☒    (BY FEDERAL EXPRESS) I am readily familiar with the firm's practice for the daily collection and processing of correspondence for deliveries with the Federal Express delivery

19
service and the fact that the correspondence would be deposited with Federal Express that same day in the ordinary course of business; on this date, the above-referenced document was placed for

20
deposit at Palo Alto, California and placed for collection and overnight delivery following ordinary business practices. (AS NOTED)

21

22
     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23

24
     Executed on August 16, 2018, at Palo Alto, California.

25
<u>JOHN BISER</u>                                    _____

26
Type or Print Name                            Signature

27

28

PROOF OF SERVICE                                   CASE NO. 18-CIV-02845

**FILED**
SAN MATEO COUNTY

AUG 2 1 2018

Clerk of the Superior Court

By _____
DEPUTY CLERK

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

| | |
|---|---|
| VLADI ZAKINOV, individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br>     vs. <br><br> RIPPLE LABS INC., et al., <br><br>     Defendants. | Case No. 18CIV02845 <br><br> **ORDER ASSIGNING CASE FOR ALL PURPOSES** |

    Based on the Peremptory Challenge filed on August 16, 2018 by defendant Ripple Labs, Inc. and its counsel disqualifying the Honorable Marie S. Weiner pursuant to Cal. Code Civ. Proc.§ 170.6, the above listed matter is reassigned for all purposes to Department 16, the Honorable Richard H. DuBois. The parties are directed to contact Judge DuBois' clerk at (650) 261-5116 to set a case management conference date.

Dated: ___AUG 2 2 2018___

_Susan Irene Etezadi_

Susan I. Etezadi
Presiding Judge of the Superior Court

**SUSAN IRENE ETEZADI**

18 – CIV – 02845
ORD
Order
1335404

D-16

1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   Post Montgomery Center
3  One Montgomery Street, Suite 1800
   San Francisco, CA  94104
4  Telephone:  415/288-4545
   415/288-4534 (fax)
5  shawnw@rgrdlaw.com
       – and –
6  BRIAN O. O'MARA (229737)
   LUCAS F. OLTS (234843)
7  655 West Broadway, Suite 1900
   Telephone:  619/231-1058
8  619/231-7423 (fax)
   bomara@rgrdlaw.com
9  lolts@rgrdlaw.com

**FILED**
**SAN MATEO COUNTY**

AUG 2 8 2018

Clerk of the Superior Court

By _____
        DEPUTY CLERK

ROBBINS ARROYO LLP
BRIAN J. ROBBINS (190264)
STEPHEN J. ODDO (174828)
ERIC M. CARRINO (310765)
600 B Street, Suite 1900
San Diego, CA  92101
Telephone:  619/525-3990
619/525-3991 (fax)
brobbins@robbinsarroyo.com
soddo@robbinsarroyo.com
ecarrino@robbinsarroyo.com

10  Attorneys for Plaintiff

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                   COUNTY OF SAN MATEO

13  VLADI ZAKINOV, Individually and on       )  Case No. 18CIV02845
    Behalf of All Others Similarly Situated,  )
14                                            )  CLASS ACTION
                                              )
15                      Plaintiff,            )
                                              )  NOTICE OF APPEARANCE OF COUNSEL
16         vs.                                )
                                              )  Assigned for All Purposes to:
17  RIPPLE LABS INC., et al.,                 )  Hon. Richard H. Dubois, Dept. 16
                                              )  Date Action Filed: 06/05/18
18                      Defendants.           )
    _____     )

19
                           18 – CIV – 02845
20                         NOT
                           Notice
21                         1349414

22

23

24

25

26

27

28
_____
                  NOTICE OF APPEARANCE OF COUNSEL
1465623_1

FILE BY FAX

1    TO: THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2        PLEASE TAKE NOTICE that the undersigned Brian O. O'Mara of Robbins Geller Rudman &

3    Dowd LLP, hereby appears in Case No. 18CIV02845 as counsel of record for plaintiff Vladi Zakinov.

4    Copies of all pleadings and papers filed in this action should be served on counsel as follows:

5                              Brian O. O'Mara
                              bomara@rgrdlaw.com
6                    Robbins Geller Rudman & Dowd LLP
                       655 West Broadway, Suite 1900
7                        San Diego, CA 92101-8498
                          Telephone: 619/231-1058
8                           619/231-7423 (fax)

9    DATED:  August 28, 2018          ROBBINS GELLER RUDMAN
                                        & DOWD LLP
10                                    BRIAN O. O'MARA
                                      LUCAS F. OLTS
11

12                                    /s/ Brian O. O'Mara

13                                    BRIAN O. O'MARA

14                                    655 West Broadway, Suite 1900
                                      Telephone:  619/231-1058
15                                    619/231-7423 (fax)

16                                    ROBBINS GELLER RUDMAN
                                        & DOWD LLP
17                                    SHAWN A. WILLIAMS
                                      Post Montgomery Center
18                                    One Montgomery Street, Suite 1800
                                      San Francisco, CA 94104
19                                    Telephone:  415/288-4545
                                      415/288-4534 (fax)
20
                                      ROBBINS ARROYO LLP
21                                    BRIAN J. ROBBINS
                                      STEPHEN J. ODDO
22                                    ERIC M. CARRINO
                                      600 B Street, Suite 1900
23                                    San Diego, CA 92101
                                      Telephone:  619/525-3990
24                                    619/525-3991 (fax)

25                                    Attorneys for Plaintiff

26

27

28

                                      - 2 -
1465623_1

1       <u>DECLARATION OF SERVICE BY MAIL</u>

2   I, the undersigned, declare:

3   1.  That declarant is and was, at all times herein mentioned, a citizen of the United States

4 and a resident of the County of San Mateo, over the age of 18 years, and not a party to or interested

5 party in the within action; that declarant's business address is Post Montgomery Center, One

6 Montgomery Street, Suite 1800, San Francisco, California 94104.

7   2.  That on August 28, 2018, declarant served the **NOTICE OF APPEARANCE OF**

8 **COUNSEL** by depositing a true copy thereof in a United States mailbox at San Francisco, California in

9 a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached

10 Service List.

11   3.  That there is a regular communication by mail between the place of mailing and the

12 places so addressed.

13   I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 28,

14 2018, at San Francisco, California.

15                     _Angela Bell_

16                _____

17

18

19

20

21

22

23

24

25

26

27

28

---

NOTICE OF APPEARANCE OF COUNSEL

1465623_1

1  ROBBINS ARROYO LLP
   BRIAN J. ROBBINS (190264)
2  STEPHEN J. ODDO (174828)
   ERIC M. CARRINO (310765)
3  600 B Street, Suite 1900
   San Diego, CA 92101
4  Telephone: (619) 525-3990
   Facsimile: (619) 525-3991
5  E-mail: brobbins@robbinsarroyo.com
        soddo@robbinsarroyo.com
6        ecarrino@robbinsarroyo.com

7  Attorneys for Plaintiffs
   Vladi Zakinov and David Oconer

8

9  [Additional counsel appear on signature page]

**FILED**
SAN MATEO COUNTY

AUG 3 0 2018

Clerk of the Superior Court
By _____
      DEPUTY CLERK

File By Fax

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                          COUNTY OF SAN MATEO

12  VLADI ZAKINOV, Individually and on    )  Case No. 18-CIV-02845
    Behalf of All Others Similarly Situated, )
13                                         )  CLASS ACTION
                           Plaintiff,      )
14                                         )  STIPULATION AND [PROPOSED]
         v.                                )  ORDER CONSOLIDATING RELATED
15                                         )  ACTIONS AND RELATED MATTERS
    RIPPLE LABS INC., XRP II, LLC,         )
16  BRADLEY GARLINGHOUSE, and DOES         )
    1-25, Inclusive,                       )
17                                         )  Judge: Richard H. DuBois
                           Defendants.     )  Dept: 16
18  _____  )  Date Action Filed: June 5, 2018
                                           )
19  DAVID OCONER, Individually and on      )  Case No. 18-CIV-03332
    Behalf of All Others Similarly Situated, )
20                                         )
                           Plaintiff,      )
21                                         )
         v.                                )  18-CIV-02845
22                                         )  SO
    RIPPLE LABS INC., XRP II, LLC,         )  Stipulation & Order
23  BRADLEY GARLINGHOUSE, and DOES         )  1362929
    1-25, Inclusive,                       )
24                                         )  Judge: Robert D. Foiles
                           Defendants.     )  Dept: 21
25  _____  )  Date Action Filed: June 27, 2018

26

27

28

---
STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

Clerk of the Superior Court

AUG 2 8 2018

RECEIVED
SAN MATEO COUNTY

1.     The above-captioned actions pending in this Court (the "Related Actions") make substantially the same allegations against defendant Ripple Labs Inc. ("Ripple" or the "Company"), XRP II, LLC, and Bradley Garlinghouse.

2.     In an effort to assure consistent rulings and decisions and the avoidance of unnecessary duplication of effort, counsel for the respective parties in the Related Actions hereby enter into this Stipulation and [Proposed] Order Consolidating Related Actions and Related Matters (the "Stipulation").

3.     Counsel for the parties to this Stipulation include Robbins Arroyo LLP ("Robbins Arroyo") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") on behalf of plaintiff Vladi Zakinov; Robbins Arroyo on behalf of David Oconer (collectively, "Plaintiffs"); Skadden, Arps, Slate, Meagher & Flom LLP and Debevoise & Plimpton LLP on behalf of defendants Ripple Labs, Inc., XRP II, LLC, and Bradley Garlinghouse (collectively, "Defendants").

4.     The parties agree that it would be duplicative and wasteful of the Court's resources for Defendants named in the Related Actions to have to respond to the individual complaints prior to the agreed upon consolidation and in light of the anticipated filing of a consolidated complaint. Therefore, the parties agree that Defendants need not respond to the individual complaints that have already been filed in this Court.

5.     On August 8, 2018, the Zakinov action was designated as complex. On August 21, 2018, it was assigned to the Honorable Richard H. DuBois, Department 16, for all purposes. A complex case status conference in the Oconer action is set for August 29, 2018.

## CONSOLIDATION

6.     The following Related Actions are hereby consolidated for all purposes, including pre-trial proceedings and trial (the "Consolidated Action"):

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Zakinov v. Ripple Labs Inc.* | 18-CIV-02845 | 6/5/2018 |
| *Oconer v. Ripple Labs Inc.* | 18-CIV-03332 | 6/27/2018 |

1  Every pleading filed in the Consolidated Action, or in any separate action included herein, shall

2  bear the following caption:

3                SUPERIOR COURT OF THE STATE OF CALIFORNIA

4                        COUNTY OF SAN MATEO

5  IN RE RIPPLE LABS INC. LITIGATION      )   Lead Case No. 18-CIV-02845
                                          )
6  _____)   (Consolidated with Case No. 18-CIV-03332)
                                          )
7  This Document Relates To:              )
                                          )   CLASS ACTION
   ALL ACTIONS.                           )
8                                         )
                                          )
9  _____)

10      7.     The files of the Consolidated Action shall be maintained in one file under Master

11  File No. 18-CIV-02845.

12      8.     Plaintiffs shall either designate a complaint as operative or file a Consolidated

13  Complaint ("Consolidated Complaint") within 45 days after entry of this order, unless otherwise

14  agreed upon by the parties.   If filed, the Consolidated Complaint shall be the operative

15  complaint and shall supersede all complaints filed in any of the actions consolidated herein.

16  Defendants shall respond to the operative complaint or Consolidated Complaint within 45 days

17  after service, unless otherwise agreed by the parties.   In the event that Defendants file any

18  motions directed at the operative complaint or Consolidated Complaint, the opposition and

19  reply briefs shall be filed within 45 and 20 days, respectively, of the motions, unless otherwise

20  agreed upon by the parties.   Counsel agrees to confer to select a hearing date.

21              **APPOINTMENT OF A LEADERSHIP STRUCTURE**

22      9.     The Plaintiffs agree that Robbins Arroyo and Robbins Geller shall serve as Co-

23  Lead Counsel for Plaintiffs ("Co-Lead Counsel") in the Consolidated Action, and Defendants

24  take no position on the Court's appointment of Co-Lead Counsel for Plaintiffs or the

25  responsibilities assumed by that Co-Lead Counsel.

26      10.    Plaintiffs agree that Co-Lead Counsel shall have sole authority to speak for

27  Plaintiffs in matters regarding pre-trial procedure, trial, and settlement and shall make all work

28

                                    - 2 -

1   assignments in such manner as to facilitate the orderly and efficient prosecution of the
2   Consolidated Action and to avoid duplicative or unproductive effort.

3       11.    Plaintiffs agree that Co-Lead Counsel shall be responsible for coordinating all
4   activities and appearances on behalf of Plaintiffs.  No motion, request for discovery, or other
5   pre-trial or trial proceedings shall be initiated or filed by any Plaintiff except through Co-Lead
6   Counsel.

7       12.    Plaintiffs agree that Co-Lead Counsel shall be available and responsible for
8   communications to and from this Court, including distributing orders and other directions from
9   the Court to counsel, and shall be responsible for communication with Defendants' counsel on
10  matters of case administration and scheduling.  Co-Lead Counsel shall further be responsible for
11  creating and maintaining a master service list of all parties and their respective counsel.

12      13.    Defendants' counsel may rely upon all agreements made with Co-Lead Counsel,
13  or other duly authorized representative of Co-Lead Counsel, and such agreements shall be
14  binding on all Plaintiffs.

15                          **RELATED MATTERS**

16      14.    This Order shall apply to each case, arising out of the same or similar
17  transactions and/or events as the Related Actions which is currently pending in, subsequently
18  filed in, remanded to, or transferred to this Court.

19      15.    When a case which properly belongs as part of the *In re Ripple Labs Inc.*
20  *Litigation*, Lead Case No. 18-CIV-02845, is hereafter or has been filed in, remanded to, or
21  transferred to this Court, counsel for the parties shall call such filing, remand, or transfer to the
22  attention of the clerk of this Court for purposes of moving the Court for an order consolidating
23  such case(s) with *In re Ripple Labs Inc.  Litigation*, Lead Case No. 18-CIV-02845.  Counsel for
24  the parties will further assist in assuring that counsel for the parties in such subsequent action(s)
25  receive notice of this Order.

26
27
28

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

1    IT IS SO STIPULATED.

2    DATED: 8/22/18                    ROBBINS ARROYO LLP
                                       BRIAN J. ROBBINS
3                                      STEPHEN J. ODDO
                                       ERIC M. CARRINO
4

5

6                                      STEPHEN J. ODDO

7                                      600 B Street, Suite 1900
                                       San Diego, CA 92101
8                                      Telephone: (619) 525-3990
                                       Facsimile: (619) 525-3991
9                                      E-mail: brobbins@robbinsarroyo.com
                                              soddo@robbinsarroyo.com
10                                             ecarrino@robbinsarroyo.com

11                                     Proposed Co-Lead Counsel for Plaintiffs and
                                       Counsel for Plaintiffs Vladi Zakinov and
12                                     David Oconer

13   DATED: 8/22/18                    ROBBINS GELLER RUDMAN
                                         & DOWD LLP
14

15

16                                     BRIAN O. O'MARA (229737)

17                                     DAVID C. WALTON (167268)
                                       BRIAN E. COCHRAN (286202)
18                                     655 West Broadway, Suite 1900
                                       San Diego, CA 92101
19                                     Telephone: (619) 231-1058
                                       Facsimile: (619) 231-7423
20                                     E-mail: davew@rgrdlaw.com
                                              bomara@rgrdlaw.com
21                                             bcochran@rgrdlaw.com

22                                     Proposed Co-Lead Counsel for Plaintiffs and
                                       Counsel for Plaintiff Vladi Zakinov
23
                                       SHAWN A. WILLIAMS (213113)
24                                     Post Montgomery Center
                                       One Montgomery Street, Suite 1800
25                                     San Francisco, CA 94104
                                       Telephone: (415) 288-4545
26                                     Facsimile: (415) 288-4534
                                       E-mail: shawnw@rgrdlaw.com
27
                                       Additional counsel for Plaintiff Vladi Zakinov
28

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

DATED: 8/22/18

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

Peter Morrison/ by permission SJB

PETER B. MORRISON

Peter B. Morrison
Virginia F. Milstead
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: peter.morrison@skadden.com
        virginia.milstead@skadden.com

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com

Mary Jo White (*pro hac vice* forthcoming)
Andrew J. Ceresney (*pro hac vice*
forthcoming)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
        aceresney@debevoise.com

Counsel for defendants Ripple Labs Inc., XRP
II, LLC, and Bradley Garlinghouse

1286406

- 5 -

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

1

## ORDER

The above Stipulation Consolidating Related Actions and Related Matters having been

2

considered, and good cause appearing therefore,

3

IT IS SO ORDERED.

4

5

DATED: _____8·29·18_____          _____

6

HONORABLE RICHARD H. DUBOIS
JUDGE OF THE SUPERIOR COURT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DECLARATION OF SERVICE

2      I, the undersigned, declare:

3      1.      That declarant is and was, at all times herein mentioned, a citizen of the United

4  States and a resident of the County of San Diego, over the age of 18 years, and not a party to or

5  interest in the within action; that declarant's business address is 600 B Street, Suite 1900, San

6  Diego, California 92101.

7      2.      That on August 23, 2018, I served the following document(s):

8  STIPULATION AND [PROPOSED] ORDER CONSOLIDATING RELATED
   ACTIONS AND RELATED MATTERS

9

10      ____      By transmitting via facsimile the document(s) listed above to the fax
             number(s) set forth on the attached Service List from fax number (619) 525-
11             3991 on this date before 5:00 p.m. The facsimile transmission was reported as
             complete and without error.

12      X      By placing the document(s) listed above in a United States mailbox at San
             Diego, California in a sealed envelope with postage thereon fully prepaid and
13             addressed to the parties listed on the attached Service List.

14      ____      By causing the document(s) listed above to be served by a courier service on
             the following parties:
15

16      ____      By depositing in a box or other facility regularly maintained by UPS, an
             express service carrier, or delivered to a courier or driver authorized by said
17             express service carrier to receive documents, in an envelope designated by the
             said express service carrier, with delivery fees paid or provided for, addressed
18             to the parties on the attached Service List.

19      ____      Based on a court order or an agreement of the parties to accept service by e-
             mail or electronic transmission, I sent the documents described herein to the
20             persons at the e-mail addresses on the attached service list. I did not receive,
             within a reasonable time after the transmission, any electronic message or
21             other indication that the transmission was unsuccessful.

22      3.      That there is a regular communication by mail between the place of mailing and

23  the places so addressed.

24      I declare under penalty of perjury under the laws of the State of California that the

25  foregoing is true and correct. Executed this August 23, 2018, at San Diego, California.

26

27                                                  KATHERINE B. SCHEELE

28

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

*Zakinov v. Ripple Labs Inc., et al.*, Case No. 18CIV02845;
*Oconer v. Ripple Labs Inc., et al.*, Case No. 18CIV03332

## COUNSEL FOR PLAINTIFFS

Brian J. Robbins
Stephen J. Oddo
Eric M. Carrino
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
        soddo@robbinsarroyo.com
        ecarrino@robbinsarroyo.com

*Counsel for Plaintiffs Vladi Zakinov and David
Oconer*

Shawn A. Williams
ROBBINS GELLER RUDMAN
   & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com

David C. Walton
Brian O. O'Mara
Brian E. Cochran
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: davew@rgrdlaw.com
        bomara@rgrdlaw.com
        bcochran@rgrdlaw.com

*Counsel for Plaintiff Vladi Zakinov*

## COUNSEL FOR DEFENDANTS

Peter B. Morrison
Virginia F. Milstead
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: peter.morrison@skadden.com
        virginia.milstead@skadden.com

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com

Mary Jo White
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
        aceresney@debevoise.com

*Counsel for defendants Ripple Labs Inc., XRP
II, LLC, and Bradley Garlinghouse*

1278419

1  ROBBINS ARROYO LLP
   BRIAN J. ROBBINS (190264)
2  STEPHEN J. ODDO (174828)
   ERIC M. CARRINO (310765)
3  600 B Street, Suite 1900
   San Diego, CA 92101
4  Telephone: (619) 525-3990
   Facsimile: (619) 525-3991
5  E-mail: brobbins@robbinsarroyo.com
          soddo@robbinsarroyo.com
6          ecarrino@robbinsarroyo.com

7  Co-Lead Counsel for Plaintiffs

8  [Additional counsel appear on signature page]

**Electronically**
**FILED**
by Superior Court of California, County of San Mateo
ON       8/31/2018
By       /s/ Una Finau
         **Deputy Clerk**

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                          COUNTY OF SAN MATEO

11  IN RE RIPPLE LABS INC. LITIGATION        )  Lead Case No. 18-CIV-02845
                                             )
12  _____ )  (Consolidated with Case No. 18-CIV-03332)
                                             )
    This Document Relates To:                )
13                                           )  CLASS ACTION
        ALL ACTIONS.                         )
14                                           )  NOTICE OF ENTRY OF ORDER
                                             )
15                                           )  Judge: Hon. Richard H. DuBois
                                             )  Dept: 16
16  _____ )  Date Action Filed: June 5, 2018

17

18

19

20

21

22

23

24

25

26

27

28

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 30, 2018, the Court entered the Stipulation and Order Consolidating Related Actions and Related Matters, a true and correct copy of which is attached hereto as Exhibit A.

DATED: August 31, 2018

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
ERIC M. CARRINO

STEPHEN J. ODDO

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
soddo@robbinsarroyo.com
ecarrino@robbinsarroyo.com

ROBBINS GELLER RUDMAN
& DOWD LLP
DAVID C. WALTON (167268)
BRIAN E. COCHRAN (286202)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: davew@rgrdlaw.com
bomara@rgrdlaw.com
bcochran@rgrdlaw.com

Co-Lead Counsel for Plaintiffs

SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com

Additional counsel for Plaintiff Vladi Zakinov

1292660

- 1 -

## **DECLARATION OF SERVICE**

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 600 B Street, Suite 1900, San Diego, California 92101.

2.      That on August 31, 2018, I  served the following document(s):

NOTICE OF ENTRY OF ORDER

_____      By transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Service List from fax number (619) 525-3991 on this date before 5:00 p.m. The facsimile transmission was reported as complete and without error.

_X_      By placing the document(s) listed above in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

_____      By causing the document(s) listed above to be served by a courier service on the following parties:

_____      By depositing in a box or other facility regularly maintained by UPS, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, in an envelope designated by the said express service carrier, with delivery fees paid or provided for, addressed to the parties on the attached Service List.

_____      Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I sent the documents described herein to the persons at the e-mail addresses on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

3.      That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this August 31, 2018, at San Diego, California.

_____
KATHERINE B. SCHEELE

- 2 -

NOTICE OF ENTRY OF ORDER

*In re Ripple Labs Inc. Litigation*, Lead Case No. 18CIV02845

**COUNSEL FOR PLAINTIFFS**

Brian J. Robbins
Stephen J. Oddo
Eric M. Carrino
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile:  (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
       soddo@robbinsarroyo.com
       ecarrino@robbinsarroyo.com

Shawn A. Williams
ROBBINS GELLER RUDMAN
  & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com

*Co-Lead Counsel for Plaintiffs*

**COUNSEL FOR DEFENDANTS**

Peter B. Morrison
Virginia F. Milstead
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: peter.morrison@skadden.com
      virginia.milstead@skadden.com

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com

Mary Jo White
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
      aceresney@debevoise.com

*Counsel for defendants Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse*

# EXHIBIT A

1  ROBBINS ARROYO LLP
   BRIAN J. ROBBINS (190264)
2  STEPHEN J. ODDO (174828)
   ERIC M. CARRINO (310765)
3  600 B Street, Suite 1900
   San Diego, CA 92101
4  Telephone: (619) 525-3990
   Facsimile: (619) 525-3991
5  E-mail: brobbins@robbinsarroyo.com
          soddo@robbinsarroyo.com
6          ecarrino@robbinsarroyo.com

7  Attorneys for Plaintiffs
   Vladi Zakinov and David Oconer

8

9  [Additional counsel appear on signature page]

**FILED**
**SAN MATEO COUNTY**

AUG 3 0 2018

Clerk of the Superior Court
By _____
        DEPUTY CLERK

10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                       COUNTY OF SAN MATEO

| | |
|---|---|
| 12  VLADI ZAKINOV, Individually and on<br>Behalf of All Others Similarly Situated,  ) | Case No. 18-CIV-02845 |
| 13 ) | |
| Plaintiff,  ) | <u>CLASS ACTION</u> |
| 14 ) | |
| v.  ) | STIPULATION AND [PROPOSED]<br>ORDER CONSOLIDATING RELATED |
| 15 ) | ACTIONS AND RELATED MATTERS |
| RIPPLE LABS INC., XRP II, LLC,  ) | |
| 16  BRADLEY GARLINGHOUSE, and DOES  ) | |
| 1-25, Inclusive,  ) | Judge: Richard H. DuBois |
| 17 ) | Dept: 16 |
| Defendants.  ) | Date Action Filed: June 5, 2018 |
| 18 ) | |
| 19  DAVID OCONER, Individually and on  ) | Case No. 18-CIV-03332 |
| Behalf of All Others Similarly Situated,  ) | |
| 20 ) | |
| Plaintiff,  ) | |
| 21 ) | |
| v.  ) | |
| 22 ) | |
| RIPPLE LABS INC., XRP II, LLC,  ) | |
| 23  BRADLEY GARLINGHOUSE, and DOES  ) | |
| 1-25, Inclusive,  ) | |
| 24 ) | Judge: Robert D. Foiles |
| Defendants.  ) | Dept: 21 |
| 25 ) | Date Action Filed: June 27, 2018 |

18 – CIV – 02845
SO
Stipulation & Order
1362929

26

27

28

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

RECEIVED
SAN MATEO COUNTY
AUG 2 8 2018
Clerk of the Superior Court

1.    The above-captioned actions pending in this Court (the "Related Actions") make substantially the same allegations against defendant Ripple Labs Inc. ("Ripple" or the "Company"), XRP II, LLC, and Bradley Garlinghouse.

2.    In an effort to assure consistent rulings and decisions and the avoidance of unnecessary duplication of effort, counsel for the respective parties in the Related Actions hereby enter into this Stipulation and [Proposed] Order Consolidating Related Actions and Related Matters (the "Stipulation").

3.    Counsel for the parties to this Stipulation include Robbins Arroyo LLP ("Robbins Arroyo") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") on behalf of plaintiff Vladi Zakinov; Robbins Arroyo on behalf of David Oconer (collectively, "Plaintiffs"); Skadden, Arps, Slate, Meagher & Flom LLP and Debevoise & Plimpton LLP on behalf of defendants Ripple Labs, Inc., XRP II, LLC, and Bradley Garlinghouse (collectively, "Defendants").

4.    The parties agree that it would be duplicative and wasteful of the Court's resources for Defendants named in the Related Actions to have to respond to the individual complaints prior to the agreed upon consolidation and in light of the anticipated filing of a consolidated complaint.  Therefore, the parties agree that Defendants need not respond to the individual complaints that have already been filed in this Court.

5.    On August 8, 2018, the Zakinov action was designated as complex.  On August 21, 2018, it was assigned to the Honorable Richard H. DuBois, Department 16, for all purposes. A complex case status conference in the Oconer action is set for August 29, 2018.

## CONSOLIDATION

6.    The following Related Actions are hereby consolidated for all purposes, including pre-trial proceedings and trial (the "Consolidated Action"):

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Zakinov v. Ripple Labs Inc.* | 18-CIV-02845 | 6/5/2018 |
| *Oconer v. Ripple Labs Inc.* | 18-CIV-03332 | 6/27/2018 |

1  Every pleading filed in the Consolidated Action, or in any separate action included herein, shall

2  bear the following caption:

3                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

4                               COUNTY OF SAN MATEO

5  IN RE RIPPLE LABS INC. LITIGATION        )  Lead Case No. 18-CIV-02845
                                            )
6  ─────────────────────────────            )  (Consolidated with Case No. 18-CIV-03332)
                                            )
7  This Document Relates To:                )  CLASS ACTION
                                            )
   ALL ACTIONS.                             )
8                                           )
                                            )
9  ─────────────────────────────            )

10        7.     The files of the Consolidated Action shall be maintained in one file under Master

11  File No. 18-CIV-02845.

12        8.     Plaintiffs shall either designate a complaint as operative or file a Consolidated

13  Complaint ("Consolidated Complaint") within 45 days after entry of this order, unless otherwise

14  agreed upon by the parties.   If filed, the Consolidated Complaint shall be the operative

15  complaint and shall supersede all complaints filed in any of the actions consolidated herein.

16  Defendants shall respond to the operative complaint or Consolidated Complaint within 45 days

17  after service, unless otherwise agreed by the parties.   In the event that Defendants file any

18  motions directed at the operative complaint or Consolidated Complaint, the opposition and

19  reply briefs shall be filed within 45 and 20 days, respectively, of the motions, unless otherwise

20  agreed upon by the parties.  Counsel agrees to confer to select a hearing date.

21                   **APPOINTMENT OF A LEADERSHIP STRUCTURE**

22        9.     The Plaintiffs agree that Robbins Arroyo and Robbins Geller shall serve as Co-

23  Lead Counsel for Plaintiffs ("Co-Lead Counsel") in the Consolidated Action, and Defendants

24  take no position on the Court's appointment of Co-Lead Counsel for Plaintiffs or the

25  responsibilities assumed by that Co-Lead Counsel.

26        10.    Plaintiffs agree that Co-Lead Counsel shall have sole authority to speak for

27  Plaintiffs in matters regarding pre-trial procedure, trial, and settlement and shall make all work

28

                                        - 2 -

1   assignments in such manner as to facilitate the orderly and efficient prosecution of the

2   Consolidated Action and to avoid duplicative or unproductive effort.

3          11.    Plaintiffs agree that Co-Lead Counsel shall be responsible for coordinating all

4   activities and appearances on behalf of Plaintiffs.  No motion, request for discovery, or other

5   pre-trial or trial proceedings shall be initiated or filed by any Plaintiff except through Co-Lead

6   Counsel.

7          12.    Plaintiffs agree that Co-Lead Counsel shall be available and responsible for

8   communications to and from this Court, including distributing orders and other directions from

9   the Court to counsel, and shall be responsible for communication with Defendants' counsel on

10   matters of case administration and scheduling.  Co-Lead Counsel shall further be responsible for

11   creating and maintaining a master service list of all parties and their respective counsel.

12         13.    Defendants' counsel may rely upon all agreements made with Co-Lead Counsel,

13   or other duly authorized representative of Co-Lead Counsel, and such agreements shall be

14   binding on all Plaintiffs.

15                       **RELATED MATTERS**

16         14.    This Order shall apply to each case, arising out of the same or similar

17   transactions and/or events as the Related Actions which is currently pending in, subsequently

18   filed in, remanded to, or transferred to this Court.

19         15.    When a case which properly belongs as part of the *In re Ripple Labs Inc.*

20   *Litigation*, Lead Case No. 18-CIV-02845, is hereafter or has been filed in, remanded to, or

21   transferred to this Court, counsel for the parties shall call such filing, remand, or transfer to the

22   attention of the clerk of this Court for purposes of moving the Court for an order consolidating

23   such case(s) with *In re Ripple Labs Inc.  Litigation*, Lead Case No. 18-CIV-02845.  Counsel for

24   the parties will further assist in assuring that counsel for the parties in such subsequent action(s)

25   receive notice of this Order.

26

27

28

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

1    IT IS SO STIPULATED.

2    DATED: 8/22/18                    ROBBINS ARROYO LLP
                                       BRIAN J. ROBBINS
3                                      STEPHEN J. ODDO
                                       ERIC M. CARRINO
4

5

6                                      STEPHEN J. ODDO

7                                      600 B Street, Suite 1900
                                       San Diego, CA 92101
8                                      Telephone: (619) 525-3990
                                       Facsimile: (619) 525-3991
9                                      E-mail: brobbins@robbinsarroyo.com
                                               soddo@robbinsarroyo.com
10                                             ecarrino@robbinsarroyo.com

11                                     Proposed Co-Lead Counsel for Plaintiffs and
                                       Counsel for Plaintiffs Vladi Zakinov and
12                                     David Oconer

13   DATED: 8/22/18                    ROBBINS GELLER RUDMAN
                                         & DOWD LLP
14
                                       Bran O'Mara / by permission
15                                          STO
                                       BRIAN O. O'MARA (229737)
16
                                       DAVID C. WALTON (167268)
17                                     BRIAN E. COCHRAN (286202)
                                       655 West Broadway, Suite 1900
18                                     San Diego, CA 92101
                                       Telephone: (619) 231-1058
19                                     Facsimile: (619) 231-7423
                                       E-mail: davew@rgrdlaw.com
20                                             bomara@rgrdlaw.com
                                               bcochran@rgrdlaw.com
21
                                       Proposed Co-Lead Counsel for Plaintiffs and
22                                     Counsel for Plaintiff Vladi Zakinov

23                                     SHAWN A. WILLIAMS (213113)
                                       Post Montgomery Center
24                                     One Montgomery Street, Suite 1800
                                       San Francisco, CA 94104
25                                     Telephone: (415) 288-4545
                                       Facsimile: (415) 288-4534
26                                     E-mail: shawnw@rgrdlaw.com

27                                     Additional counsel for Plaintiff Vladi Zakinov

28

DATED: 8/22/18

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

Peter Morrison/ by permission
SED

PETER B. MORRISON

Peter B. Morrison
Virginia F. Milstead
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: peter.morrison@skadden.com
        virginia.milstead@skadden.com

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com

Mary Jo White (*pro hac vice* forthcoming)
Andrew J. Ceresney (*pro hac vice*
forthcoming)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
        aceresney@debevoise.com

Counsel for defendants Ripple Labs Inc., XRP
II, LLC, and Bradley Garlinghouse

1286406

- 5 -

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

## ORDER

The above Stipulation Consolidating Related Actions and Related Matters having been considered, and good cause appearing therefore,

IT IS SO ORDERED.

DATED:  _8-29-18_

HONORABLE RICHARD H. DUBOIS
JUDGE OF THE SUPERIOR COURT

- 6 -

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

## DECLARATION OF SERVICE

I, the undersigned, declare:

1.    That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 600 B Street, Suite 1900, San Diego, California 92101.

2.    That on August 23, 2018, I served the following document(s):

STIPULATION AND [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS AND RELATED MATTERS

____    By transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Service List from fax number (619) 525-3991 on this date before 5:00 p.m. The facsimile transmission was reported as complete and without error.

_X_    By placing the document(s) listed above in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

____    By causing the document(s) listed above to be served by a courier service on the following parties:

____    By depositing in a box or other facility regularly maintained by UPS, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, in an envelope designated by the said express service carrier, with delivery fees paid or provided for, addressed to the parties on the attached Service List.

____    Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I sent the documents described herein to the persons at the e-mail addresses on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

3.    That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this August 23, 2018, at San Diego, California.

KATHERINE B. SCHEELE

- 7 -

*Zakinov v. Ripple Labs Inc., et al.*, Case No. 18CIV02845;
*Oconer v. Ripple Labs Inc., et al.*, Case No. 18CIV03332

## COUNSEL FOR PLAINTIFFS

Brian J. Robbins
Stephen J. Oddo
Eric M. Carrino
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
      soddo@robbinsarroyo.com
      ecarrino@robbinsarroyo.com

*Counsel for Plaintiffs Vladi Zakinov and David Oconer*

Shawn A. Williams
ROBBINS GELLER RUDMAN
   & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com

David C. Walton
Brian O. O'Mara
Brian E. Cochran
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: davew@rgrdlaw.com
      bomara@rgrdlaw.com
      bcochran@rgrdlaw.com

*Counsel for Plaintiff Vladi Zakinov*

## COUNSEL FOR DEFENDANTS

Peter B. Morrison
Virginia F. Milstead
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: peter.morrison@skadden.com
      virginia.milstead@skadden.com

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com

Mary Jo White
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
      aceresney@debevoise.com

*Counsel for defendants Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse*

1278419

1

2
18 – CIV – 02845
NCCSC
Notice of Complex Case Status Conference
3
1432252

4

5

FILED
SAN MATEO COUNTY

OCT 12 2018

Clerk of the Superior Court
By _____
DEPUTY CLERK

6          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7               IN AND FOR THE COUNTY OF SAN MATEO

8

9

10   IN RE RIPPLE LABS INC. LITIGATION

11

12   ------------------------------------------------------------

13   This document relates to:

14   ALL ACTIONS

15

16

Case No.  18CIV 02845

Consolidated with 18CIV03332

NOTICE OF COMPLEX CASE
MANAGEMENT CONFERENCE
AND CASE MANAGEMENT ORDER NO. 1

Date:     11-09-2018
Time:     2:00 p.m.
Dept.:    Hon. Richard H. DuBois
          Dept. 16

17        Pursuant to the Order entered by the Presiding Judge Susan Irene Etezadi, these complex actions

18   were single assigned to Department 16 of this Court before the Honorable Richard H. DuBois.

19        These actions were consolidated by order of the court dated August 30, 2018.

20        IT IS HEREBY ORDERED as follows:

21   1.  PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S) SHALL SERVE A COPY OF THIS

22        ORDER UPON ALL PARTIES, OR THEIR DESIGNATED COUNSEL, WHO HAVE NOT

23        YET APPEARED IN THIS CASE, and file a proof of service.

24   2.  All pleadings, motions, applications, briefs, and any and all other papers in this case shall be

25        filed with (and related filing fees paid to) the Civil Clerk's Office located at Hall of Justice, 400

26        County Center, First Floor, Room A, Redwood City, California.

27        All motions and briefs shall conform with the California Rules of Court, especially rule 3.1113,

28        and indicate on the caption page that this matter is "Assigned for All Purposes to Dept. 16."

DO NOT FAX COPIES OR CORRESPONDENCE TO DEPARTMENT 16, AS THERE IS NO DEDICATED FAX LINE.

**Two sets** of courtesy copies of any such filing shall be stamped "Judge's Copy" and delivered on the date of filing **directly** to Department 16 located at 400 County Center, Courtroom 7A, Redwood City, California 94063. DO NOT LEAVE THE JUDGE'S COPY WITH THE CLERK'S OFFICE. All exhibits must be separated by exhibit tabs. (See, e.g., Cal. Rules of Court, rule 3.1110(f).) Courtesy copies of any electronic exhibits shall be submitted on CD or DVD in conformity with the requirements of California Rules of Court, rules 2.256(b) and 3.1110(f)(4).

3.  As to any and all motions or other matters requiring a hearing, the hearing date shall be obtained **directly** from and approved by Department 16 at (650) 261-5116 (and not with the Civil Clerk's Office or the Research Attorney), **prior** to filing the moving papers or other initial filings.

4.  Ex parte applications in this action shall be heard by Department 16 only. Department 16 does not have a set day and time to hear ex parte applications. A date to present any ex parte application shall be obtained directly from Department 16 in accordance with Paragraph 2, *supra*. This requirement neither modifies nor abrogates any notice or service requirements. (Cal. Rules of Court, rules 3.1203, 3.1206.)

5.  As to any discovery motion, the parties are relieved of the statutory obligation under California Rules of Court, rule 3.1345, and thus need not file a separate statement – instead the subject discovery requests (or deposition questions) and written responses (or deposition answers or objections) must be attached to the supporting declaration on the discovery motion.

6.  Given the nature of this case, the Court views document production and depositions as the most effective means of discovery for adjudication. Accordingly, no party may propound more than 35 special interrogatories total and no party may propound more than 35 requests for admissions (other than as to the authenticity of documents) total, without prior court order after demonstration of need and a showing that other means of discovery would be less efficient.

7.  In regard to all discovery disputes, counsel for the parties (and any involved third parties) shall meet and confer on any and all discovery disputes and, if there are remaining disputes, then

counsel for each side shall serve on each other and mail/deliver directly to Department 16 a short letter brief setting forth the dispute and attaching as tabbed exhibits to the letter the subject discovery requests and discovery responses (if any). At the time or prior to submitting the letter briefs, counsel for the parties shall also schedule a discovery conference with the Court to occur no sooner than five court days after delivery of the last letter brief to the Court, in order to discuss the dispute. THE DISCOVERY DISPUTE LETTER BRIEFS AND THE DISCOVERY CONFERENCE SHALL BE DONE WELL PRIOR TO THE STATUTORY DEADLINES FOR FILING OF ANY MOTION TO COMPEL OR OTHER DISCOVERY MOTION. No discovery motion may be filed by any party unless and until there is compliance with the requirement of this Order, i.e., (i) substantive meet and confer, (ii) exchange of letter briefs, and (iii) discovery conference with the Court. This requirement does not constitute an extension of time for any statutory time period for filing and serving any motion under the Civil Discovery Act. When motions are filed for hearing before the court, the court will post a tentative ruling on the Court's website, at least one day prior to the hearing, under "Special Set Matters Tentative Rulings".

8.  Pursuant to California Rules of Court, rule 3.1113(i), Department 16, does not require any appendix of non-California authorities, unless specifically stated by the Court as to a particular motion.

9.  The initial Case Management Conference is set for November 9, 2018 at 2:00 p.m. in Department 16. Counsel for all parties shall meet and confer on all matters set forth in California Rules of Court, rules 3.750 and 3.724(8). Attendance at said conference by court call is approved unless a specific order to the contrary is made.

10. In anticipation of the Case Management Conference, counsel for the parties should be prepared to discuss at the hearing and file a joint written case management conference statement (*in prose and details, not using the standardized Judicial Council form*) with **one courtesy copy** delivered directly to Department 16 on or before **five court days prior to the conference** which shall address at least the following:

    a.    Status of the Pleadings and service of process;

    b.    Whether there are any related actions in another forum or venue;

    c.    Any pro hac vice applications;

    d.    Anticipated discovery and proposed briefing schedule for any anticipated demurrer or other motion regarding the pleadings

    e.    Status of Discovery, including the initial production of documents by all parties, and deposition of the Plaintiff;

    f.    Proposal regarding any further consolidation of cases;

    g.    Proposed hearing dates and briefing schedule on Motion for Class Certification, and what specific discovery is needed before filing the motion and/or opposition;

    h.    Status of Settlement or Mediation;

    i.    Any other anticipated motions and proposed briefing schedule;

    j.    Setting of next CMC date; and

    k.    Any other matters for which the parties seek Court ruling or scheduling.

Dated: 10-10-2018    By: _____

    Richard H. DuBois
    JUDGE OF THE SUPERIOR COURT

Case No.  18CIV 02845        4

CASE MANAGEMENT ORDER NO. 1



**SUPERIOR COURT OF SAN MATEO COUNTY**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

## AFFIDAVIT OF MAILING

**FILED**
**SAN MATEO COUNTY**
OCT 19 2018
Clerk of the Superior Court
By _____
DEPUTY CLERK

Date: 10/19/2018

In the Matter of: VLADI ZAKINOV, et. al.  vs.  RIPPLE LABS INC., et. al.
Case No.: 18-CIV-02845

   I declare under penalty of perjury that on the following date I deposited in the United States Post Office mail box at Redwood City, a true copy of the attached document(s) NOTICE OF CONTINUANCE OF COMPLEX CASE MANAGEMENT CONFERENCE, enclosed in an envelope, with proper and necessary postage thereon, and addressed to the following:

Executed on: 10/19/2018

                              Rodina M. Catalano, Court Executive Officer/Clerk

                    By: _____
                              Andrea Daley, Deputy Clerk

<u>Copies Mailed To:</u>

   BRIAN J. ROBBINS
   STEPHEN J. ODDO
   600 B STREET, SUITE 1900
   SAN DIEGO, CA  92101

   SHAWN A. WILLIAMS
   ROBBINS, GELLER, RUDMAN & DOWD LLP
   POST MONTGOMERY CENTER
   ONE MONTGOMERY STREET, SUITE 1800
   SAN FRANCISCO, CA 94104

   BRIAN O'MARA
   655 WEST BROADWAY, SUITE 1900
   SAN DIEGO, CA 92101

   PETER B. MORRISON
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 SOUTH GRAND AVENUE, SUITE 3400
   LOS ANGELES, CA  90071

   JOHN NEUKOM
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   525 UNIVERSITY AVENUE, SUITE 1400
   PALO ALTO, CA 94301

18 - CIV - 02845
AFM
Affidavit of Mailing
1446673

Rev. Jun. 2016

MARY JO WHITE
DEBEVOISE & PLIMPTON LLP
919 THIRD AVENUE
NEW YORK, NY 10022

**FILED**

**SAN MATEO COUNTY**

OCT 19 2018

Clerk of the Superior Court

By _____
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

| IN RE RIPPLE LABS INC. LITIGATION | Case No.  18CIV 02845 |
|---|---|
| | Consolidated with 18CIV03332 |
| ------------------------------------------- | NOTICE OF CONTINUANCE OF COMPLEX CASE MANAGEMENT CONFERENCE |
| This document relates to: | |
| ALL ACTIONS | Date:   11-16-2018<br>Time:   10:30 a.m.<br>Dept.:  Hon. Richard H. DuBois<br>Dept. 16 |

The Case Management Conference currently set for November 9, 2018 is continued to November 16, 2018 at 10:30 a.m. in Department 16.

Dated:  *10·19-2018*  By: _____

Richard H. DuBois
JUDGE OF THE SUPERIOR COURT

18 – CIV – 02845
NCON
Notice of Continuance
1446670

Case No.  18CIV 02845

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Peter B. Morrison (SBN 230148)<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Ave., Ste. 3400<br>Los Angeles, CA 90012<br>TELEPHONE NO.: (213) 687-5000   FAX NO. *(Optional):* (213) 687-5600<br>E-MAIL ADDRESS *(Optional):* peter.morrison@skadden.com<br>ATTORNEY FOR *(Name):* Ripple Labs Inc. et al. | **ENDORSED FILED**<br>SAN MATEO COUNTY<br><br>OCT 2 5 2018<br><br>Clerk of the Superior Court<br>By: ANTONIO R. GERONIMO<br>Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Mateo | |
|---|---|
| STREET ADDRESS: 400 County Center | |
| MAILING ADDRESS: 400 County Center | |
| CITY AND ZIP CODE: Redwood City, CA 94063 | |
| BRANCH NAME: | |

| PLAINTIFF/PETITIONER:  Vladi Zakinov & David Oconer | CASE NUMBER:<br>Lead Case No. 18-CIV-02845 |
|---|---|
| DEFENDANT/RESPONDENT:  Ripple Labs Inc. et al. | JUDICIAL OFFICER:<br>Judge Richard. H. DuBois |
| **NOTICE OF RELATED CASE** | DEPT.:<br>16 |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title:  Greenwald v. Ripple Labs Inc. et al.

   b. Case number:  18-CIV-03461

   c. Court: [✔] same as above

   [  ] other state or federal court *(name and address):*

   d. Department:

   e. Case type: [  ] limited civil  [✔] unlimited civil  [  ] probate  [  ] family law  [  ] other *(specify):*

   f. Filing date:  July 3, 2018

   g. Has this case been designated or determined as "complex?"  [  ] Yes  [✔] No

   h. Relationship of this case to the case referenced above *(check all that apply):*

   [✔] involves the same parties and is based on the same or similar claims.

   [✔] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

   [  ] involves claims against, title to, possession of, or damages to the same property.

   [✔] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

   [  ] Additional explanation is attached in attachment 1h

   i. Status of case:

   [✔] pending

   [  ] dismissed  [  ] with  [  ] without prejudice

   [  ] disposed of by judgment

2. a. Title:

   b. Case number:

   c. Court: [  ] same as above

   [  ] other state or federal court *(name and address):*

   d. Department:

Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov

COPY     FAXED

CM-015

| | |
|---|---|
| PLAINTIFF/PETITIONER: Vladi Zakinov & David Oconer | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Ripple Labs Inc. et al. | Lead Case No. 18-CIV-02845 |

2. *(continued)*

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         ☐ Additional explanation is attached in attachment 2h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

3.  a. Title:

   b. Case number:

   c. Court: ☐ same as above

       ☐ other state or federal court *(name and address):*

   d. Department:

   e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         ☐ Additional explanation is attached in attachment 3h

   i. Status of case:

      ☐ pending

      ☐ dismissed ☐ with ☐ without prejudice

      ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: October 25, 2018

Peter B. Morrison
      (TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

*Peter B. Morrison / VFm*
      (SIGNATURE OF PARTY OR ATTORNEY)

**NOTICE OF RELATED CASE**

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 300 S. Grand Avenue, Los Angeles, California 90071. My email address is candice.spoon@skadden.com.

On October 25, 2018  I served the  documents described as:

**NOTICE OF RELATED CASE**

on the interested parties in this action addressed as follows:

| | |
|---|---|
| BRIAN J. ROBBINS<br>brobbins@robbinsarroyo.com<br>STEPHEN J. ODDO<br>soddo@robbinsarroyo.com<br>ERIC M. CARRINO<br>ecarrino@robbinsarroyo.com<br>ROBBINS ARROYO LLP<br>600 B Street, Suite 1900<br>San Diego, CA 92101<br>Telephone:     (619) 525-3990<br>Facsimile:     (619) 525-3991<br><br>Attorneys for Plaintiffs Vladi Zakinov and David Oconer | David C. Walton<br>Brian 0. O'Mara<br>Brian E. Cochran<br>ROBBINS GELLER RUDMAN<br>& DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: (619) 231-1058<br>Facsimile: (619) 231-7423<br>E-mail: davew@rgrdlaw.com<br>bomara@rgrdlaw.com<br>bcochran@rgrdlaw.com<br><br>Attorneys for Plaintiff Vladi Zakinov |
| Shawn A. Williams<br>ROBBINS GELLER RUDMAN<br>& DOWD LLP<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, CA 94104<br>Telephone: (415) 288-4545<br>Facsimile: (415) 288-4534<br>E-mail: shawnw@rgrdlaw.com<br><br>Attorneys for Plaintiff Vladi Zakinov | Andrew J. Ceresney<br>aceresney@debevoise.com<br>Mary Jo White<br>mjwhite@debevoise.com<br>DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, New York  10022<br>Telephone: (212) 909-6000<br>Facsimile:   (212) 909-6836<br><br>Attorneys for Defendants<br>Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse |
| SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>John T. Jasnoch<br>600 W. Broadway, Suite 3300<br>San Diego, CA  92101<br>Telephone: 619-233-4565<br>Facsimile: 619-233-0508<br>jjasnoch@scott-scott.com<br><br>Attorneys for Plaintiff – Avner Greenwald | SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>Thomas L. Laughlin, IV<br>Rhiana L. Swartz<br>The Helmsley Building<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br>Telephone: 212-223-6444<br>Facsimile: 212-223-6334<br><br>Attorneys for Plaintiff - Avner Greenwald |

☒      **(BY FEDERAL EXPRESS)**  I am readily familiar with the firm's practice for the daily collection and processing of correspondence for deliveries with the Federal Express delivery service and the fact that the correspondence would be deposited with Federal Express that same

day in the ordinary course of business; on this date, the above-referenced document was placed for deposit at Los Angeles, California and placed for collection and delivery following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 25, 2018 at Los Angeles, California.

    Candice Spoon

PRINT NAME                              SIGNATURE

18 – CIV – 02845
ORD
Order
1471749

F I L E D
SAN MATEO COUNTY

NOV. – 1 2018

Clerk of the Superior Court
By
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| AVNER GREENWALD, individually and on behalf Of all others similarly situated,<br><br>                Plaintiff,<br><br>        vs.<br><br>RIPPLE LABS INC. et al.<br><br>                Defendants, | Case No.  18 CIV 03461<br>CLASS ACTION<br><br>ORDER DEEMING CASE RELATED AND CONSOLIDATING ACTION INTO MASTER FILE NO. 18CIV02845<br><br>Dept.:  Hon. Richard H. DuBois<br>         Dept. 16 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

The Master File consolidated class action cases, 18CIV02845, were previously designated as complex and single assigned to Department 16, Honorable Richard DuBois.

On October 25, 2018, Defendant Ripple Labs Inc. in 18CIV03461, a putative class action, filed a Notice of Related Case, indicating that the action is related to *In re Ripple Labs Inc Litigation,* Master file No. 18CIV02845.

Accordingly, IT IS HEREBY ORDERED AS FOLLOWS:

1.        Notice of Related Case having been filed and served, and no opposition or objection filed and served, the case of *Greenwald vs. Ripple Labs Inc 18CIV03461* is deemed "related" to the pending consolidated class actions entitled *In re Ripple Labs Inc Litigation,* Master file No. 18CIV02845.

2.        Pursuant to the order in Master File No. 18CIV02845 consolidating related class actions, and having been previously assigned for all purposes to Department 16, the case of *Greenwald vs. Ripple*

Case No.  18 CIV 03461

1   *Labs Inc 18CIV03461* is ordered CONSOLIDATED as part of Master File No. 18CIV02845.

2          3.      Accordingly, any Complex Status Conference or Case Management Conference previously

3   set for 18CIV03461 is VACATED.  The Case Management Conference in the Master file set for November

4   16, 2018 at 10:30 a.m. in Department 16 shall remain on calendar.

5

6

7   Dated:        OCT 3 1 2018        By: _____

8                                         Richard H. DuBois
                                          JUDGE OF THE SUPERIOR COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**SUPERIOR COURT OF SAN MATEO COUNTY**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

**FILED**
**SAN MATEO COUNTY**

NOV - 1 2018

Clerk of the Superior Court
By
DEPUTY CLERK

## AFFIDAVIT OF MAILING

Date: 11/1/2018

In the Matter of: AVNER GREENWALD  vs.  RIPPLE LABS, INC., a Delaware Corporation, et al
Case No.: 18-CIV-03461

    I declare under penalty of perjury that on the following date I deposited in the United States Post Office mail box at Redwood City, a true copy of the attached document(s) ORDER DEEMING CASE RELATED AND CONSOLIDATING ACTION INTO MASTER FILE NO. 18CIV02845, enclosed in an envelope, with proper and necessary postage thereon, and addressed to the following:

Executed on: 11/1/2018

                    Neal I. Taniguchi, Court Executive Officer/Clerk

By: _____
               Andrea Daley, Deputy Clerk

<u>Copies Mailed To:</u>

   BRIAN J. ROBBINS
   STEPHEN J. ODDO
   600 B STREET, SUITE 1900
   SAN DIEGO, CA  92101

   SHAWN A. WILLIAMS
   ROBBINS, GELLER, RUDMAN & DOWD LLP
   POST MONTGOMERY CENTER
   ONE MONTGOMERY STREET, SUITE 1800
   SAN FRANCISCO, CA 94104

   BRIAN O'MARA
   ROBBINS, GELLER, RUDMAN & DOWD LLP
   655 WEST BROADWAY, SUITE 1900
   SAN DIEGO, CA 92101

   PETER B. MORRISON
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 SOUTH GRAND AVENUE, SUITE 3400
   LOS ANGELES, CA  90071

   JOHN NEUKOM
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   525 UNIVERSITY AVENUE, SUITE 1400
   PALO ALTO, CA 94301

18-CIV-03461
AFM
Affidavit of Mailing
1468990

Rev. Jun. 2016

MARY JO WHITE
DEBEVOISE & PLIMPTON LLP
919 THIRD AVENUE
NEW YORK, NY 10022

JOHN T. JASNOCH
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 WEST BROADWAY, SUITE 3300
SAN DIEGO, CA 92101

THOMAS L. LAUGHLIN, IV
RHIANA L. SWARTZ
SCOTT+SCOTT ATTORNEYS AT LAW LLP
THE HELMSLEY BUILDING
230 PARK AVENUE, 17TH FLOOR
NEW YORK, NY 10169

# EXHIBIT H

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Brian J. Robbins (190264)
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA 92101
TELEPHONE NO: (619) 525-3990     FAX NO.: (619) 525-3991
ATTORNEY FOR *(Name):* Plaintiff David Oconer

**F I L E D**
SAN MATEO COUNTY

JUN 27 2018

Clerk of the Superior Court
By _____
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Hall of Justice and Records

CASE NAME:
Oconer v. Ripple Labs Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 18CIV03332 |
| | | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[✓] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [✓] Large number of witnesses
   b. [✓] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve            in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):* Two
5. This case [✓] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 27, 2018

Brian J. Robbins
(TYPE OR PRINT NAME)                         ▶ _____
                                               (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

18 – CIV – 03332
CCCS
Civil Case Cover Sheet
1232945

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

FILE BY FAX

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*

**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil
   harassment)* (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
   Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex
   case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
      County)
   Confession of Judgment *(non-
      domestic relations)*
   Sister State Judgment
   Administrative Agency Award
      *(not unpaid taxes)*
   Petition/Certification of Entry of
      Judgment on Unpaid Taxes
   Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
   above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-
      harassment)*
   Mechanics Lien
   Other Commercial Complaint
      Case *(non-tort/non-complex)*
   Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified
   above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
      Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
      Claim
   Other Civil Petition

**CIVIL CASE COVER SHEET**

1  ROBBINS ARROYO LLP
   BRIAN J. ROBBINS (190264)
2  STEPHEN J. ODDO (174828)
   ERIC M. CARRINO (310765)
3  600 B Street, Suite 1900
   San Diego, CA 92101
4  Telephone: (619) 525-3990
   Facsimile: (619) 525-3991
5  E-mail: brobbins@robbinsarroyo.com
           soddo@robbinsarroyo.com
6          ecarrino@robbinsarroyo.com

7  Attorneys for Plaintiff

**FILED**
**SAN MATEO COUNTY**
JUN 27 2018
Clerk of the Superior Court
By _____
        DEPUTY CLERK

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF SAN MATEO

10  DAVID OCONER, Individually and on Behalf )   Case No.
    of All Others Similarly Situated,        )
11                                           )   **18 C I V 0 3 3 3 2**
                         Plaintiff,          )
12                                           )   CLASS ACTION
           v.                                )
13                                           )   COMPLAINT FOR VIOLATIONS OF
    RIPPLE LABS, INC.,                       )   CALIFORNIA LAW
14  XRP II, LLC,                             )
    BRADLEY GARLINGHOUSE, and                )
15  DOES 1-25, Inclusive,                    )
                                             )
16                       Defendants.         )
                                             )   DEMAND FOR JURY TRIAL
17
18
19                                               18 – CIV – 03332
                                                 CMP
20                                               Complaint
                                                 1232943
21
22
23
24
25
26
27
28

COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

FILE BY FAX

1    Plaintiff David Oconer, individually and on behalf of all others similarly situated, by his

2  undersigned attorneys, alleges the following, based upon personal knowledge as to plaintiff and

3  plaintiff's own acts, and upon information and belief as to all other matters based on the investigation

4  conducted by and through plaintiff's attorneys, which included, among other things, a review of filings

5  and press releases by Ripple Labs, Inc. ("Ripple" or the "Company"), its wholly owned subsidiary XRP

6  II, LLC ("XRP II"), and analyst and media reports and other publicly disclosed reports and information

7  about the Company and XRP II.  Plaintiff believes that substantial additional evidentiary support will

8  exist for the allegations set forth herein, after a reasonable opportunity for discovery.

9                              **SUMMARY OF ACTION**

10    1.    This is a securities class action on behalf of all California purchasers of Ripple tokens

11  ("XRP"), brought against Ripple, XRP II and the Chief Executive Officer ("CEO") of the Company,

12  Bradley Garlinghouse ("Garlinghouse"), who promoted, sold and solicited the sale of XRP.  Defendants

13  raised hundreds of millions of dollars through the unregistered sale of XRP, including selling to retail

14  investors, in violation of the law.

15    2.    Under California law, offers and sales of securities must be qualified with the

16  Commissioner of Corporations, unless exempt.  These laws are designed to protect the public, by

17  requiring various disclosures so that investors can better understand the security and the risks associated

18  with investing in that security.  The regime of registration and disclosure is the primary means by which

19  regulators prohibit deceit, misrepresentations, and fraud in the sale of securities, and promote the fair

20  and orderly functioning of the securities markets.

21    3.    Here, the XRP offered and sold by defendants had all the traditional hallmarks of a

22  security, yet defendants failed to register them as such.  The purchase of XRP constitutes an investment

23  contract, as XRP purchasers, including plaintiff, provided consideration (in the form of fiat, such as

24  U.S. dollars, or other cryptocurrencies) in exchange for XRP.  XRP purchasers reasonably expected to

25  derive profits from their ownership of XRP, and defendants themselves have frequently highlighted this

26  profit motive.  Moreover, the development of the XRP Ledger and other facets of the XRP network, and

27  the return that investors expected to derive therefrom, were, and are, based entirely on the technical,

28  managerial, and entrepreneurial efforts of defendants, and other third parties employed by defendants.

1   Indeed, a feature of XRP that differentiates the cryptocurrency from others such as Bitcoin, is that the

2   security is highly centralized in Ripple. The Company created the XRP token and then used sales of the

3   tokens in order to fund its operations and the development of the XRP ecosystem, which in turn,

4   increased the value of XRP and the potential returns to XRP investors.

5          4.     Despite the status of XRP as a security, defendants failed to register XRP and the sale of

6   XRP did not qualify for an exemption from registration.   Nevertheless, many of the representations

7   defendants made regarding XRP were designed to drive demand for XRP, allowing defendants to obtain

8   greater returns on their XRP sales. Defendants have since generated hundreds of millions of dollars in

9   gross proceeds by selling XRP to the general public, in what is essentially a series of initial coin

10  offerings ("ICO"). Much like the better-known term, initial public offering ("IPO"), in an ICO, digital

11  assets are sold to consumers in exchange for legal tender or cryptocurrencies (most often Bitcoin and

12  Ethereum). These tokens generally give the purchaser various rights on the blockchain network and

13  resemble the shares of a company sold to investors in an IPO. Unfortunately, ICOs have become a

14  magnet for unscrupulous practices and fraud.

15         5.     Plaintiff brings this suit for declaratory relief that XRP is, in fact, a security under

16  applicable laws, and for damages, rescission and other relief as detailed herein.

17                              **JURISDICTION AND VENUE**

18         6.     The claims alleged herein arise under §§25110, 25503 and 25504 of the California

19  Corporations Code (the "Corporations Code").  Jurisdiction is conferred by Art. VI, §10 of the

20  California Constitution. Venue is proper pursuant to the California Code of Civil Procedure.

21         7.     The violations of law complained of herein occurred in San Mateo County, including the

22  unlawful sale of unregistered securities into this County. In addition, defendants are located and/or

23  conduct business in this County, significant events that led to the sale of unregistered securities

24  occurred in this County, and documents and witnesses are located in this County, or can be found in this

25  County. For example, Ripple raised proceeds from, and is backed by venture capital firms, such as

26  Andreessen Horowitz, which is located in this County, has solicited and sold XRP to investors located

27  in this County, and is run by defendant Garlinghouse, who lives in this County.

28

8.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mail, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

9.     Plaintiff David Oconer is a citizen of California, who purchased the XRP promoted and sold by defendants, which was not registered as a security by defendants and was not subject to any exemption from registration.

10.     Defendant Ripple Labs, Inc. has its principal place of business in San Francisco, California.  Ripple created and sold XRP, through XRP II, and solicited the purchases of XRP from plaintiff and the Class (defined herein) for its own benefit and the benefit of its executives and owners, such as defendant Garlinghouse.

11.     Defendant XRP II, LLC has its principal place of business in San Francisco, California. XRP II sold XRP and solicited the purchases of XRP from plaintiff and the Class for its own benefit and the benefit of its parent, Ripple, and its executives and owners, such as defendant Garlinghouse.

12.     Defendant Bradley Garlinghouse is the CEO of the Company.  He lives in Atherton, California.  Garlinghouse orchestrated the sale of XRP by Ripple and XRP II and solicited the purchases of XRP from plaintiff and the Class for his own benefit and the benefit of Ripple.

13.     The true names and capacities of defendants sued herein under California Code of Civil Procedure §474 as Does 1 through 25, inclusive, are presently not known to plaintiff, who therefore sues these defendants by such fictitious names.  Plaintiff will seek to amend this complaint and include these Doe defendants' true names and capacities when they are ascertained.  Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by the Class.

## SUBSTANTIVE ALLEGATIONS

**Ripple Creates XRP**

14.     Ripple's primary business involves the operation of an open ledger protocol, payment, and exchange network.  The native cryptocurrency for the Ripple system is the XRP token, which serves as both an investment in the Company (as sales of XRP are used to fund Company operations,

1   with the expectation that these investments will increase the tokens' value) and as a means of exchange

2   promoted by Ripple. The Ripple system is based around the XRP Ledger. The XRP Ledger consists of

3   many servers, called nodes, which accept and process transactions. Client applications sign and send

4   transactions to nodes, which then relay these candidate transactions throughout the network for

5   processing. Transactions are then verified and become part of the XRP Ledger history through a

6   consensus process. Every transaction in XRP must be made by and through the XRP Ledger, which is

7   maintained by defendants. In order to open an account on the XRP Ledger, a user is required by

8   defendants to maintain a minimum account balance of 20 XRP. Furthermore, each time a transaction in

9   XRP is made, defendants require a transaction cost from the transacting parties.[1]

10      15.    Unlike cryptocurrencies such as Bitcoin and Ethereum, which are mined by those

11   validating transactions on their networks, Ripple created the 100 billion XRP supply itself. Twenty

12   billion XRP, or 20% of the total XRP supply, were given to the individual founders of Ripple,[2] with the

13   remaining 80 billion being retained by the Company. As for the 80 billion XRP held by Ripple, the

14   Company periodically sells XRP from its supply and uses the proceeds from these sales to fund

15   Company operations and improve the XRP ecosystem. Ripple's founders and other Company insiders

16   have also enriched themselves with their personal XRP fortunes. In January 2018, Ripple co-founder

17   Chris Larsen was named one of the richest people in the United States, with an estimated net worth of

18   $59.9 billion, primarily due to the increase in value of XRP and his personal ownership of billions of

19   XRP tokens and a significant ownership stake in the Company.[3]

20      16.    Ripple has been criticized because of the centralized nature of its network for XRP,

21   especially when compared to the networks for other truly distributed cryptocurrencies such as Bitcoin.

22   Ripple demonstrated its control over the XRP ecosystem when, in 2015, it froze the balance of Ripple

23   [1]   The current minimum transaction cost is 0.00001 XRP, although this cost can be increased by
24   defendants. This feature of XRP transactions benefits defendants because it makes their stockpile of
     XRP more valuable over time.

25   [2]   Chris Larsen and Jed McCaleb ("McCaleb") each received 9.5 billion XRP, with Arthur Britto
26   receiving 1 billion.

27   [3]   https://www.cnbc.com/2018/01/04/ripple-co-founder-is-now-richer-than-the-google-founders-on-
     paper.html.

28

- 4 -

1   co-founder McCaleb following an internal dispute.  The ability of Ripple to control the flow of XRP

2   undermines any pretense that the security is not centralized in the Company.  Similarly, in February

3   2018, a report by BitMEX Research stated that a test of the Ripple system revealed that all five public

4   keys used to validate transactions came directly from Ripple, meaning that Ripple was "essentially in

5   complete control of moving the ledger forward."[4]  The report concluded that Ripple's claims that the

6   system was "distributed" could be misleading, as Ripple essentially controlled the XRP Ledger process.

7   As the stewards of the XRP ecosystem, defendants' success in developing, promoting, and maintaining

8   the XRP Ledger and other exchange infrastructure is directly related to the value of XRP.  Furthermore,

9   because Ripple maintains, controls and stewards the XRP Ledger, and because defendants have the

10   ability to add conditions to transactions in XRP, and can unilaterally modify elements of the XRP

11   ecosystem, each transaction in XRP involves a transaction directly with defendants.

12   **Ripple Updates XRP**

13       17.   Ripple is constantly changing and seeking to improve the XRP network.  These changes

14   have decreased transaction times and improved system security, compatibility, use cases and other

15   features of XRP.  At the same time, Ripple has released new "white papers" touting these upgrades and

16   proposed upgrades to the cryptocurrency and its exchange network.  For example, Ripple released a

17   white paper in February 2016 following a series of upgrades with the subtitle "The ROI of Using Ripple

18   and XRP for Global Interbank Settlements."[5]  "ROI" stands for "return on investment," and the paper

19   discussed at length the purported value of using XRP, compared to other systems.

20       18.   One of the most significant changes to the XRP ecosystem occurred in the latter half of

21   2015.  In May 2015, regulatory authorities in the United States fined Ripple and XRP II $700,000 for

22   "willfully" violating the Bank Secrecy Act by selling XRP without obtaining the required authorization.

23   The failure to properly register as a money services business, or "MSB," exposed XRP for use by

24   money launderers, criminals and other suspicious actors.  As part of the settlement, defendants agreed to

25   a number of remedial measures, including registration with FinCEN within 30 days of the agreement

26   [4]   *The Ripple Story*, BitMEX Research (Feb. 6, 2018), https://blog.bitmex.com/the-ripple-story/.

27   [5]   https://ripple.com/files/xrp_cost_model_paper.pdf.

28

1  and to secure customer identification information within 180 days of the agreement. In the subsequent

2  months, Ripple updated the XRP network and ecosystem to comply with the settlement agreement. In

3  October 2015, Ripple underwent a rebranding after which it purported to fulfill its obligations under the

4  settlement agreement.

5       19.    Another key development occurred in May 2017, when Ripple announced that it would

6  limit distribution of the remaining 61.68 billion XRP owned by the Company, from its original 80

7  billion XRP allotment. Ripple stated that it would place 55 billion XRP into a cryptographically

8  secured escrow account, and only offer and sell limited amounts of XRP at defined intervals. The

9  Company established 55 contacts of 1 billion XRP that allowed it to sell up to 1 billion XRP per month,

10  with any unsold XRP returned to escrow for use in subsequent offerings. The Company stated that it

11  expected the distribution strategy "will result in a strengthening XRP exchange rate against other

12  currencies," and that Ripple's "self-interest is aligned with building and maintaining a healthy XRP

13  market."[6] The fact that the vast amount of existing XRP resides in the control of defendants further

14  demonstrates the high degree of centralization and control defendants maintain over XRP, as they can

15  determine the supply of XRP, which will, in turn impact the price of the security.

16       20.    Indeed, a primary motivation for limiting the available supply of XRP was to drive price

17  appreciation and allow defendants to maximize profits from XRP sales. The price of XRP increased

18  rapidly following the announcement of the escrow decision, increasing 1,159% during the second

19  quarter of 2017. Ripple's "Q2 2017 XRP Markets Report" listed the escrow announcement as

20  "instrumental in helping to drive XRP interest and volume," and noted the "market responded favorably

21  to the escrow" announcement.[7]

22

23

24

25

26  [6]  https://ripple.com/insights/ripple-to-place-55-billion-xrp-in-escrow-to-ensure-certainty-into-total-xrp-supply/.

27  [7]  https://ripple.com/insights/q2-2017-xrp-markets-report/.

28

21.     On or about December 7, 2017, Ripple announced that it had followed through with its promise and placed "55 billion XRP in a cryptographically-secured escrow account to create certainty of XRP supply at any given time."[8]  The announcement stated:

> By securing the lion's share of XRP in escrow, people can now mathematically verify the maximum supply that can enter the market.  While Ripple has proved to be a responsible steward of XRP supply for almost five years – and has clearly demonstrated a tremendous track record of investing in and supporting the XRP ecosystem – this lockup eliminates any concern that Ripple could flood the market, which we've pointed out before is a scenario that would be bad for Ripple.[9]

22.     The article contained a button to allow readers to share it on Twitter with the caption "Game changer for $XRP! 55 billion XRP now in escrow."[10]  Ripple also promoted this article through its own tweet, which proclaimed: "55B $XRP is now in escrow.  Interested in what this means for $XRP markets?"[11]  Garlinghouse was even more enthusiastic, tweeting: "Boom! 55B $XRP now in escrow.  Good for supply predictability and trusted, healthy $XRP markets.  Glad to finally let this #cryptokitty out of the bag!"[12]

23.     Ripple's public commitment to limit the supply of XRP had its intended effect.  In the weeks that followed, the price of XRP rapidly increased, from approximately $0.22 per token on December 7, 2017 to $3.38 per token on January 7, 2018.[13]

**Defendants Market XRP to Drive Demand and Increase Price**

24.     While publicly touting its xCurrent, xRapid and xVia enterprise solutions (collectively, "Enterprise Solutions"), Ripple's primary source of income is, and has been, the sale of XRP.  Ripple

---

[8]     https://ripple.com/insights/ripple-escrows-55-billion-xrp-for-supply-predictability/.

[9]     *Id.*

[10]    *Id.*

[11]    https://twitter.com/Ripple/status/938933967956389889.

[12]    https://twitter.com/bgarlinghouse/status/938933791145336832?lang=en.

[13]    XRP would subsequently lose nearly all its value in just over three months, falling to a low of approximately $0.48 per token on April 6, 2018.

COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1   generated over $180 million in gross proceeds through XRP sales in 2017 alone.[14] Defendants sell XRP

2   on a wholesale basis to larger investors, and also sell significant quantities of XRP directly to retail

3   investors on cryptocurrency exchanges.  According to Ripple, in the first quarter of 2018, "market

4   participants purchased $16.6 million [of XRP] directly from XRP II," and XRP II also "sold $151.1

5   million worth of XRP" on exchanges.[15]

6          25.     Given its reliance on sales of XRP, it is unsurprising that Ripple aggressively markets

7   XRP to drive demand, increase the price of XRP, and, consequently, its own profits.  For example,

8   Ripple has an entire section of its website dedicated to providing advice on "How to Buy XRP."  This

9   section provides links to exchanges and instructions on "how to buy XRP" on those exchanges.[16] It also

10  has a section titled "Market Performance" which proclaims that Ripple is "committed to the long term

11  health and stability of XRP markets."[17]

12         26.     Ripple also regularly promotes the availability of XRP on exchanges.  For example, on

13  May 18, 2017, Ripple's Senior Vice-President for Business Development, Patrick Griffin, tweeted a link

14  to the Kraken exchange with the caption: "Kraken Introduces New Fiat Pairs for XRP Trading! USD,

15  JPY, CAD, EUR @Ripple."[18]

16         27.     Similarly, on or about December 21, 2017, Ripple tweeted that XRP was now available

17  on over 50 exchanges.[19]  That tweet linked to an article on Ripple's website which described XRP as

18  "the fastest and most scalable [digital] asset on the market."[20]  The article continued: "The market is

19  taking notice of XRP's speed, reliability and scalability – which has strengthened the demand for XRP

20  [14]  https://www.cnbc.com/2018/01/24/ripple-sold-91-point-6-million-of-digital-currency-xrp-last-
21  quarter.html.

22  [15]  Q1 2018 XRP Markets Report, https://ripple.com/insights/q1-2018-xrp-markets-report/.

23  [16]  XRP Buying Guide, https://ripple.com/xrp/buy-xrp/.

24  [17]  Market Performance, https://ripple.com/xrp/market-performance/.

25  [18]  @patgriffin9, https://twitter.com/patgriffin9/status/865251321867231233.

26  [19]  @Ripple, https://twitter.com/Ripple/status/943999526783905792.

27  [20]  XRP Now Available on 50 Exchanges Worldwide, https://ripple.com/insights/xrp-now-available-
    on-50-exchanges-worldwide/.

28

1  and where it's listed. In fact, we're proud to announce that XRP has gone from being listed on six

2  exchanges earlier this year to more than 50 worldwide."[21]  The article also linked to a number of

3  exchanges where XRP could be purchased, and stated that "XRP's long-term value is determined by its

4  utility – including its ability to help financial institutions source liquidity for payments into and out of

5  emerging markets."[22]

6      28.  Illustrative of defendants' attempts to promote the XRP ecosystem, in 2017, Ripple

7  attempted to pay two of the top cryptocurrency exchanges, Gemini and Coinbase, to secure listing of

8  XRP. Coinbase and Gemini provide some of the easiest ways for U.S. customers to buy crypto-assets

9  with U.S. dollars. As a result, being listed on one of these exchanges tends to accelerate demand for,

10  and thus, increase the price of, a crypto-asset. For example, when Coinbase listed Bitcoin Cash in

11  December 2017, the price of Bitcoin Cash increased nearly three times its trading price relative to other

12  exchanges.

13      29.  Reportedly, Ripple offered to pay $1 million to Gemini in the third quarter of 2017 if it

14  would list XRP. Similarly, during preliminary talks with Coinbase in the fall of 2017, Ripple said it

15  would be willing to lend the exchange more than $100 million worth of XRP to start letting users trade

16  the token. On November 29, 2017, Ripple posted a link to a change.org petition to "Get Ripple on

17  CoinBase," with the caption: "The community is mobilizing! [thumbs up emoji]."[23]  Ripple's Senior

18  Vice President of Business Development also tweeted a link to the petition. According to *Bloomberg*:

19  "By dangling money in front of exchanges, Ripple signaled that its future success hinges in part on

20  getting XRP listed on the top trading venues."[24]

21      30.  In addition, Ripple hosts conferences to generate interest in XRP. For example, from

22  October 16 to October 18, 2017, the Company hosted a conference named "Swell" in Toronto. Ripple

23

24  [21]  *Id.*

25  [22]  *Id.*

26  [23]  https://twitter.com/ripple/status/935923310080045056?lang=en.

27  [24]  https://www.bloomberg.com/news/articles/2018-04-04/ripple-is-said-to-struggle-to-buy-u-s-listing-for-popular-coin.

28

1  acknowledged that "[a]nticipation around the event spurred a meaningful spike in XRP, pushing it up

2  100 percent."[25]

3      31.     On December 21, 2017, CoinDesk, a subsidiary of Digital Currency Group, which has an

4  ownership interest in Ripple, published an article titled, "Ripple Price Passes Historic $1 Milestone."[26]

5  This was just one of many instances in which Ripple would promote price movements of XRP.

6      32.     Ripple's promotion of XRP's price continued in December 2017, as the price of XRP

7  climbed over 1,000% in a single month.  In one instance, Ripple's product manager of the XRP Ledger

8  and xRapid retweeted a tweet exclaiming: "Wow, XRP at all time high!  Forget about bitcoin, *we're all*

9  *in on XRP!*"[27]  This same manager later tweeted: "So glad I doubled down.  Since I joined @Ripple,

10  $XRP now at $1.00 (up 17,141.37%)...."[28]

11      33.     Ripple's CEO, defendant Garlinghouse, has also been a vocal advocate for investing in

12  XRP.  In a December 14, 2017 interview with BNN, when asked if he is "personally invested" in XRP

13  and was "taking profits" on that investment, Garlinghouse stated, "I'm long XRP, *I'm very, very long*

14  *XRP* as a percentage of my personal balance sheet."[29]  He continued, stating that he is "not long some

15  of the other [digital] assets, because it is not clear to me what's the real utility, what problem are they

16  really solving."[30]  He ended by reiterating, "if you're solving a real problem, if it's a scaled problem,

17  then I think you have a huge opportunity to continue to grow that."[31]  Later that same day, Garlinghouse

18

19

20

21  [25]  Q3 2017 XRP Markets Report, https://ripple.com/xrp/q3-2017-xrp-markets-report/.

22  [26]  Daniel  Palmer,  *Ripple  Price  Passes  Historic  $1  Milestone*,  CoinDesk  (Dec.  21,  2017)
     https://www.coindesk.com/ripple-price-passes-historic-1-milestone/.

23  [27]  @warpaul, https://twitter.com/yoshitaka_kitao/status/940785785925709829.

24  [28]  https://twitter.com/warpaul/status/943766056710975490.

25  [29]  Interview available at https://twitter.com/jonerlichman/status/941354964227522561?lang=en.

26  [30]  *Id.*

27  [31]  *Id.*

28

COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1  tweeted: "Bloomberg welcomes $XRP to @theterminal and gets it right – #2 market cap behind $BTC

2  at ~$80B!"[32]

3      34.    About a week later, on or about December 22, 2017, Garlinghouse tweeted an article

4  titled "Bitcoin Is So 2017 as Ripple Soars at Year End," with the caption "I'll let the headline speak for

5  itself. $xrp."[33]

6      35.    Similarly, on or about January 17, 2018, Garlinghouse tweeted a link to a *CNBC* article

7  titled "Ripple is sitting on close to $80 billion and could cash out hundreds of millions per month – but

8  it isn't," with the caption: "A good read on why fostering a healthy $XRP ecosystem is a top priority at

9  @Ripple."[34]

10      36.    However, the reality was that Ripple was profiting by selling to investors from its

11  massive store of XRP. In 2017 alone, Ripple sold more than $180 million worth of XRP. These sales

12  accelerated in the first quarter of 2018, reaching $151.1 million in just three months.

13  **The Price of XRP Is Directly Tied to Ripple's Business and Operations**

14      37.    The Company's primary source of revenue is the periodic sale of XRP to investors. The

15  price for XRP, in turn, is directly tied to the managerial skills and efforts of Ripple, XRP II,

16  Garlinghouse, and other third parties who they employ, or with whom they are associated. Ripple

17  regularly promotes its improvements to the XRP ecosystem, which are intended to increase demand for

18  XRP and thus potential returns for XRP investors. For example, in describing the reasons behind the

19  dramatic price appreciation of XRP during the fourth quarter of 2017, Ripple specifically cited as of

20  "particular importance," the Company's various business initiatives, including: (i) Ripple's partnership

21  with American Express/Santander; (ii) Ripple's activation of the previously discussed escrow of XRP to

22  limit periodic offers and distributions; and (iii) a Japanese/Korean banking consortium backed by the

23  Company.[35] In the report, Ripple stated that its "consistent and steadfast support of XRP is a major

24

25  [32]  @bgarlinghouse, https://twitter.com/bgarlinghouse/status/941375649549246464.

26  [33]  @bgarlinghouse, https://twitter.com/bgarlinghouse/status/944325730338357248.

27  [34]  https://twitter.com/bgarlinghouse/status/953676992313872384?lang=en.

28  [35]  Q4 2017 XRP Markets Report, https://ripple.com/insights/q4-2017-xrp-markets-report/.

COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1  advantage as the payments industry continues to seriously consider it as an alternative liquidity

2  solution."[36]  The centralized nature of XRP compared to other cryptocurrencies further cements the

3  central role of defendants in determining the future expected value of the asset.

4          38.      Defendants' white papers, advertising and social media postings also conflate adoption

5  and use of Ripple's Enterprise Solutions businesses with adoption and use of XRP.  Although ostensibly

6  separate, the two business segments are very much interrelated, because adoption of Ripple's Enterprise

7  Solutions by various institutional actors is likely to increase the use and demand for XRP.  For example,

8  the Company's xRapid infrastructure solution uses XRP, which Ripple states will "dramatically lower

9  costs while enabling real-time payments in emerging markets."[37]  Similarly, a November 2015 white

10  paper by the Company highlighted "XRP's Role on Ripple and in the Internet of Value" and how the

11  Company's technologies could turn a "Spark to a Wildfire" by increasing liquidity and efficiencies for

12  cross-border transactions for the Company's banking clients.[38]  A February 2016 white paper followed

13  up on those purported "network effects," claiming that the use of the Ripple network and XRP would

14  increase banks' returns on investment by improving the global payment infrastructure.[39]  Moreover,

15  Ripple promotes XRP and xRapid to its existing Enterprise Solutions customer base and can increase

16  the use of these products through cross-selling.  Ripple has explicitly stated that this is part of its

17  business strategy.[40]  As XRP can be used to transact on xRapid, and the same customers that may adopt

18  Ripple's Enterprise Solutions overlap with potential institutional users and facilitators of XRP, the

19  success of Ripple's overall business and operations is directly correlated to the price of XRP.

20

21  [36]  *Id.*

22  [37]  https://ripple.com/solutions/source-liquidity/.

23  [38]  https://ripple.com/files/ripple_vision.pdf.

24  [39]  https://ripple.com/files/xrp_cost_model_paper.pdf.

25  [40]  *E.g.*, https://ripple.com/insights/much-ado-much-to-do-part-3/("While no xCurrent customers today
26  use xRapid, we're increasingly speaking to them about their liquidity challenges and xRapid at their
    request....  As long as we continue to run xRapid pilots as successful as Cuallix's, we believe we'll drive
27  a lot of payments volume through XRP in the years ahead.").

28

39.     Articles such as "Ripple XRP price picks up pace as demand for xVia API increases" have made the direct connection between the price of XRP and the adoption of the Company's Enterprise Solutions.[41]  Ripple itself has made this link, for example tweeting on May 16, 2017: "The appeal that Ripple has towards traditional financial institutions is a big advantage it has over Bitcoin."[42]

40.     Similarly, on June 29, 2017, Ripple tweeted a clip of an interview Garlinghouse gave on *CNBC* with the caption: "#XRP – up 4000% this year – has shown the market favors a real use case for #digitalassets...."[43]  For that interview, Garlinghouse was quoted as stating, "Digital assets are in a position to be more valuable than gold."[44]

41.     On September 11, 2017, Garlinghouse stated in an interview with CNBC: "People are looking at the success Ripple has been having as a company, *and I think that's increased the value of XRP.*"[45]  He continued by stating that Ripple wants "to keep focusing on making XRP a valuable payments tool, and that value will increase accordingly," and he was "voting with my . . . pocketbook" on the future increased value of cryptocurrencies."[46]

42.     On November 27, 2017, Garlinghouse tweeted "Ripple & $XRP are giving businesses 'what they want in a #blockchain,'" along with a link to a Motley Fool tweet.[47]  The linked-to Motley Fool tweet stated that "AmEx and Banco Santander will use Ripple's blockchain network for instant intl. fund transfers.  Could be a big deal for Ripple's XRP cryptocurrency.  $AXP $SAN."[48]

---

[41]   https://globalcoinreport.com/ripple-xrp-price-picks-up-pace-as-demand-for-xvia-api-increases/.

[42]   @Ripple, https://twitter.com/Ripple/status/864635614020251649.

[43]   @Ripple, https://twitter.com/Ripple/status/880532198025121793.

[44]   https://twitter.com/AkikoFujita/status/880256389213339648.

[45]   https://www.cnbc.com/2017/09/11/ripple-ceo-brad-garlinghouse-on-bitcoin-and-xrp.html.

[46]   *Id.*

[47]   @bgarlinghouse, https://twitter.com/bgarlinghouse/status/935225940845711366.

[48]   @themotleyfool, https://twitter.com/themotleyfool/status/934850515640471553.

43.     Likewise, on December 14, 2017, Ripple tweeted: "The Japan Bank Consortium launched a Ripple pilot with two large Korean banks – the first time money moves from Japan to Korea over RippleNet."[49] On that same day Ripple tweeted "@bgarlinghouse [its CEO's Twitter handle] on why crypto prices will be driven by real utility, the multi-trillion $ problem @Ripple is solving and why $XRP will come out on top."[50]

44.     On January 4, 2018, following XRP's rapid price increase, *The New York Times* published an article titled, "Rise of Bitcoin Competitor Ripple Creates Wealth to Rival Zuckerberg."[51] The author of the article, Nathaniel Popper, tweeted a link to the article with the caption: "On the rise of Ripple.  If this is a tulip fever, the fever has spread to chrysanthemums and poppies."[52]  He further stated in the tweet: "I've asked several people close to banks if banks are indeed planning to begin using Ripple's token, XRP, in a serious way, which is what investors seem to assume when they buy in at the current XRP prices."[53]

45.     Garlinghouse publicly responded to this post, tweeting: "Over the last few months I've spoken with ACTUAL banks and payment providers.  They are indeed planning to use xRapid (our XRP liquidity product) in a serious way."[54]  Garlinghouse then provided a "sampling" of feedback he had purportedly received from these institutions praising XRP and xRapid. This feedback implicitly justified the market price and investment opportunity for XRP, including:

- "We ran the costs on our end and see that this is 100% more efficient that [sic] what we're doing now."

- "The xRapid pilots all went perfectly."

---

[49]   @Ripple, https://twitter.com/Ripple/status/941501026267316224.

[50]   @Ripple, https://twitter.com/Ripple/status/941352005058011137.

[51]   Nathaniel Popper, *Rise of Bitcoin Competitor Ripple Creates Wealth to Rival Zuckerberg*, N.Y. Times, Jan. 4, 2018, https://www.nytimes.com/ 2018/01/04/technology/bitcoin-ripple.html.

[52]   @nathanielpopper, https://twitter.com/bgarlinghouse/status/949129952716234752.

[53]   *Id.*

[54]   *Id.*

- "This is much more efficient than our process today.  We'd like to move forward with xRapid today."

- "We've already used Bitcoin in transactions but the time is causing slippage and costing more to transfer.  We'd like to use xRapid and XRP to help with these issues."

- "This [XRP] is a much more efficient way to send money across borders than what we typically use today.  Especially as Bitcoin has continued to slow and become more expensive."

- "There's plenty of small to medium sized banks out there that are hit hard by fees.  They'd jump at the opportunity to send money directly and bypass those fees [using XRP]."[55]

**Defendants Acknowledge that Development of the XRP Ledger Is Dependent on Their Technical, Entrepreneurial, and Managerial Efforts**

46.   As alleged herein, defendants have repeatedly acknowledged the obvious: development of the XRP Ledger and the potential profits that could be derived from investing in XRP, depends on their technical, entrepreneurial and managerial efforts.

47.   Indeed, Ripple publishes a quarterly report detailing its efforts to grow the "XRP ecosystem."[56]  In the report for the second quarter of 2017, Ripple stated: "We plan to focus on three areas of liquidity development as we drive XRP towards its natural position as the digital asset standard for international value transfer."[57]  The report continues: "Most importantly, we are accelerating the pace of our investment in the XRP Ledger to build on its speed, uptime, and scalability, to ensure XRP is the most trusted enterprise-grade digital asset."[58]

48.   Three months later, in describing its goals for the fourth quarter of 2017, Ripple proclaimed it would "continue to expand [its] xRapid partnerships."[59]  The report stated that Ripple's

---

[55]   *Id.*

[56]   Announcing the Quarterly XRP Market Operations Report, https://ripple.com/insights/announcing-quarterly-xrp-market-operations-report/.

[57]   Q2 2017 XRP Markets Report, https://ripple.com/insights/q2-2017-xrp-markets-report/.

[58]   *Id.*

[59]   Q3 2017 XRP Markets Report, https://ripple.com/xrp/q3-2017-xrp-markets-report/.

COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1   "long-term goal is, and always has been, usage of XRP as a liquidity solution for more and more

2   corridors, and partnerships are key to achieving this goal."[60]

3       49.    Similarly, in January 2018, Ripple touted "a partnership with MoneyGram – one of the

4   world's largest money transfer companies – to use xRapid and XRP for near real-time cross-border

5   payments. In addition, there are a number of other xRapid deals at various stages of completion in the

6   pipeline."[61] The Company also stated that it wanted "to build the necessary markets infrastructure for

7   eventual direct usage of XRP by financial institutions."[62] Garlinghouse commented on this partnership,

8   stating "And to be clear: @MoneyGram announcement is one step in a marathon ahead to truly make

9   $XRP the global liquidity solution for payment providers and banks."[63] These are illustrative of the

10   many instances in which defendants have acknowledged their own role in promoting the market for

11   XRP, and the ways in which the future expected value of XRP is dependent on their own efforts.

12       50.    In addition, defendants, and Ripple in particular, are responsible for maintaining the

13   XRP Ledger. Unlike cryptocurrencies such as Bitcoin and Ethereum, which use a Proof of Work

14   ("PoW") consensus mechanism to verify the legitimacy of transactions on the network, the XRP Ledger

15   relies on trusted nodes, operated by Ripple, to verify the legitimacy of transactions and maintain

16   agreement on the network. The PoW mechanism utilized by Bitcoin and Ethereum helps to ensure the

17   network is decentralized by allowing anyone to use their own hardware and electricity to run the PoW

18   consensus algorithm to verify transactions on the public ledger, and send them to be recorded

19   throughout the blockchain. The network's decision-making process is thus placed entirely in the hands

20   of those who run the consensus algorithm, with their own hardware and electricity, rather than any one

21   entity or individual.

22       51.    The XRP Ledger consensus protocol, by contrast, relies on "trusted nodes" on Ripple's

23   Unique Node Lists ("UNL"). The UNL is the set of trusted nodes that communicate "reliable"

---

24   [60]   *Id.*

25   [61]   Q4 2017 XRP Markets Report, https://ripple.com/insights/q4-2017-xrp-markets-report/.

26   [62]   *Id.*

27   [63]   @bgarlinghouse, https://twitter.com/bgarlinghouse/status/951461582424358912.

28

1  information to other nodes on the XRP Ledger.  Like miners in Bitcoin and Ethereum, these "trusted
2  nodes" validate transactions.  However, unlike those miners, the trusted nodes are either selected, or
3  controlled, by Ripple itself.  Ripple provides its own default and recommended UNL – comprised of
4  only five Ripple-hosted nodes.  Although Ripple claims it plans to decentralize the network, it admits
5  that it will only remove its own "trusted nodes" if it decides that other validator nodes are reliable,
6  reputable, stable and secure.[64]  Ripple's view of decentralization of the XRP Ledger still involves Ripple
7  maintaining full control over the XRP Ledger, and deciding who owns and operates any third-party
8  "trusted nodes."

9         52.     In February 2018, BitMEX Research, a blockchain research group, installed and ran a
10  copy of Rippled (the software that allows users to run nodes on the XRP Ledger).[65]  According to
11  BitMEX Research, "[t]he node operated by downloading a list of five public keys from the server
12  v1.ripple.com."[66]  The report continued: "The software indicates that four of the five keys are required
13  to support a proposal in order for it to be accepted [on the XRP Ledger]."[67]  However, "[a]ll five keys
14  are assigned to Ripple.com."[68]  BitMEX Research concluded that "[s]ince the keys were all downloaded
15  from the Ripple.com server, *Ripple is essentially in complete control of moving the ledger forward*, so
16  one could say *the system is centralized*."[69]  As a result, BitMEX Research found that "the Ripple
17  system appears for all practical purposes to be centralized and is therefore perhaps devoid of any
18
19

20  _____
   [64]  Rome Reginelli, *Decentralization Strategy Update* (Oct. 17, 2017), https://ripple.com/dev-
21  blog/decentralization-strategy-update/; Stephan Thomas, *How We Are Further Decentralizing the XRP
   *Ledger to Bolster Robustness for Enterprise Use*, https://ripple.com/insights/how-we-are-further-
22  decentralizing-the-ripple-consensus-ledger-rcl-to-bolster-robustness-for-enterprise-use/.

23  [65]  *The Ripple Story*, BitMEX Research (Feb. 6, 2018) https://blog.bitmex.com/the-ripple-story/.
24  [66]  *Id.*
25  [67]  *Id.*
26  [68]  *Id.*
27  [69]  *Id.*
28

1  interesting technical characteristics, such as censorship resistance, which coins like Bitcoin may

2  have."[70]

3      53.    Ripple's control over the XRP Ledger and the flow of XRP was put on dramatic display

4  in 2015, when it exerted this control to freeze the sale of approximately 96 million XRP, worth about $1

5  million at the time, by Company co-founder McCaleb.  Ripple received heavy criticism for the incident.

6  As noted by one cryptocurrency blog: "This incident is a reminder of the fact that despite its constant

7  portrayal as a semi-decentralized currency, there's a lot of control that can be exercised upon your XRP

8  by the company!"[71]

9      54.    As additional indications of centralization and control over every XRP transaction,

10  Ripple is continuously updating the Ripple ecosystem.  The implementation of gateway freezes, such as

11  the one used to freeze McCaleb's attempted XRP sale, is one example of an XRP system update by

12  Ripple, which the Company activated in August 2014.

13      55.    Ripple's XRP product manager, Warren Paul Anderson ("Anderson"), frequently markets

14  the XRP Ledger's dependence on Ripple's continued commitment to it.  For example, on December 14,

15  2016, he tweeted: "Thrilled to have the rippled team in town for a summit to discuss the future of

16  @Ripple Consensus Ledger & XRP as a native digital asset!"[72]  Approximately a year later, in

17  December 2017, he retweeted his earlier statement, saying "It's that time of year again, and what a year

18  it's been!  #XRP Ledger (rippled) core developers in town @Ripple for a summit to discuss planning for

19  2018."[73]  Later that same day, Anderson posted a picture of Ripple engineers with the caption: "A great

20  day of reflection & planning @Ripple w/ the greatest C++ engineering team in the world #XRP."[74]  On

21

22
23  [70]  *Id.*

24  [71]  https://cryptocrimson.com/news/ripple-freezes-bitstamp-funds-co-founder.

25  [72]  @warpaul, https://twitter.com/warpaul/status/809047284717469696.

26  [73]  @warpaul, https://twitter.com/warpaul/status/940970970759573505.

27  [74]  @warpaul, https://twitter.com/warpaul/status/941087297360994304.

28

- 18 -
COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1  that same day, Ripple's head of cryptography tweeted: "Today, all the $XRP Ledger developers at

2  @Ripple are in SF to reflect on 2017 and plan for 2018."[75]

3       56.     Later in the month, on December 29, 2017, a Ripple software engineer, Nik Bougalis

4  ("Bougalis"), tweeted: "I've been working on code review for the last couple days. Excited to get

5  rippled 0.90.0 out the door,"[76] indicating that Ripple was working to launch a new version of Rippled

6  and thereby advance the XRP Ledger. Following, Ripple's release of a Rippled upgrade, Bougalis

7  tweeted: "The @Ripple C++ team has released rippled 0.90.0. Cool new features: history sharding,

8  deposit authorizations, checks and more!"[77]

9       57.     On March 5, 2018, Bougalis similarly reposted a tweet defending investing in XRP by

10  stating, "So you'd invest in Linux, not Microsoft. In UseNet, not Google. In MySQL, not Oracle. Good

11  luck with your portfolio. *Ripple is the next Google*. You're stuck in the silly idea that *a company can't*

12  *build a digital asset, even when it does this right under your nose*," with the caption: "Now that's a mic

13  drop, if I've ever seen one."[78] In other words, as acknowledged by Ripple's own employees, the value

14  of XRP is tied directly to the security's centralization in Ripple and the business, operations, success

15  and prospects of the Company.

16  **XRP Is a Security**

17       58.     XRP, despite its name as a "token," is actually a security under California law. In

18  particular: (i) Ripple uses the funds it raised from the sale of XRP to fund its business ventures; (ii) the

19  Company indiscriminately offers XRP for sale to the public at large; (iii) plaintiff and the Class (as

20  defined herein) are effectively powerless to control the success of Ripple and XRP; and (iv) plaintiff

21  and the Class members' investment is substantially at risk, and is without any security.

22

23

24  [75]  @JoelKatz, https://twitter.com/JoelKatz/status/940974743733153792.

25  [76]  @nbougalis, https://twitter.com/nbougalis/status/946829572145741824.

26  [77]  @nbougalis, https://twitter.com/nbougalis/status/966106932925882368.

27  [78]  @nbougalis, https://twitter.com/nbougalis/status/970733741319503872.

28

1    59.    Plaintiff and the Class invested in XRP as a common enterprise with the expectation of
2    profits derived solely from the efforts of Ripple and its employees. Plaintiff and the Class used fiat and
3    other digital currencies, such as Bitcoin and Ethereum, to purchase XRP. The expected profits and
4    returns on these investments are directly intertwined with the business and operations of Ripple. Ripple
5    acknowledges that it "sells XRP to fund its operations and promote the network. This allows Ripple
6    Labs to have a spectacularly skilled team to develop and promote the Ripple protocol and network."[79]
7    Similarly, Garlinghouse has conceded that Ripple's "self-interest is aligned with building and
8    maintaining a healthy XRP market."

9    60.    The success of XRP and the development of the XRP ecosystem is uniquely centralized
10   in Ripple. The Company created the XRP Ledger and all 100 billion XRP in existence, and concedes
11   that it "sells XRP to fund its operations and promote the network," in order "to have a spectacularly
12   skilled team to develop[] and promote the Ripple protocol and network."[80] As of May 6, 2018, Ripple
13   held over 60.8 billion XRP – more than 60% of the XRP in existence.[81]

14   61.    In addition, Ripple directly influences the supply of XRP by locking more than half the
15   supply of XRP in escrow to provide "supply predictability and trusted, healthy $XRP markets."[82]
16   Ripple exercises near complete control over the XRP Ledger itself. As noted by BitMEX Research,
17   "Ripple is essentially in complete control of moving the ledger forward, so one could say the system is
18   centralized [sic]."[83] Ripple touts its control over the XRP Ledger as an advantage for XRP, contending
19   that governance "may be where XRP most significantly distinguishes itself [from Bitcoin, Ethereum,

20

21

22   [79]   Ripple   credits,   https://wiki.ripple.com/Ripple_credits#XRP_funds_the_development_and
      promotion_of_the_protocol_and_the_network.

23   [80]   *Id.*

24   [81]   Market Performance, https://ripple.com/xrp/market-performance/ (last visited May 23, 2018).

25   [82]   Q4 2017 XRP Markets Reports, https://twitter.com/bgarlinghouse/status/938933791453368322?
26   lang=en.

27   [83]   *The Ripple Story*, BitMEX Research (Feb. 6, 2018), https://blog.bitmex.com/the-ripple-story/.

28

and Litecoin] going forward."[84]  Similarly, it has stated that "[b]uilding pivotal infrastructure on top of technology that does not have clear governance is not palatable for large established companies."[85]

62.     Defendants themselves have recognized that XRP investors have a reasonable expectation of profits derived from defendants' efforts to improve the XRP ecosystem, and have publicly touted XRP's price performance on numerous occasions, as detailed herein.  Ripple's website even contains an "XRP Buying Guide" that provides links to exchanges and instructions on "How to Buy XRP" on those exchanges.[86]  Furthermore, Ripple has taken steps to promote XRP in an attempt to increase the token's price or to justify its price appreciation, and the Company has issued a white paper touting XRP's purported "ROI."  Garlinghouse and other Ripple employees have publicly stated that they are bullish investors on XRP.

63.     Similarly, Ripple and its CEO have acknowledged that the value of XRP will be driven by the XRP Ledger's usefulness in solving cross-border payments and its adoption by institutions. Defendants have similarly touted adoption of Ripple's Enterprise Solutions, which are directly correlated with the use case and likely value of XRP.  In addition, defendants have pooled XRP investments to fund projects to promote the XRP Ledger and interledger protocol, thereby increasing the value of the XRP Ledger and XRP.  For example, on April 11, 2018, Ripple announced that it had "invested $25 million in XRP to Blockchain Capital Parallel IV, LP," to "support and develop additional [XRP] use cases beyond payments."[87]  Ripple's Senior Vice President of Business Development promoted this investment, tweeting: "Ripple's $25 million investment in

---

[84]  Q4 2017 XRP Markets Report, https://ripple.com/insights/q4-2017-xrp-markets-report/.

[85]  *Id.*

[86]  XRP Buying Guide, https://ripple.com/xrp/buy-xrp/.

[87]  *Ripple Invests $25 Million to Drive Innovation in Blockchain and Digital Assets,* https://ripple.com/insights/ripple-invests-25-million-to-drive-innovation-in-blockchain-and-digital-assets/.

1   @blockchaincap's new fund is the first and not the last contribution to ventures that further develop the

2   #blockchain and $XRP ecosystems."[88]

3          64.     Plaintiff and the Class have entirely passive roles vis-à-vis the success of the XRP

4   Ledger and XRP. Rather, as defendants' own marketing makes clear, the profits reasonably expected to

5   be derived from investing in XRP are solely dependent on the technical, entrepreneurial, and managerial

6   efforts of defendants and their agents and employees. Plaintiff and the Class reasonably expected

7   defendants to provide significant managerial efforts, to develop and improve the XRP Ledger, to

8   develop and sustain a supportive network, and to secure exchanges through which XRP can be

9   exchanged. Defendants repeatedly represented that they would provide significant managerial efforts to

10  achieve these objectives and make the XRP ecosystem a success. The purchase of XRP is thus an

11  investment in a common enterprise, with an expectation of profits, solely from the efforts of defendants

12  and their affiliates.

13  **Recent SEC Guidance Undermines Ripple's Denials**

14         65.     Ripple has long claimed that XRP is not a security. As recently as April 12, 2018,

15  Ripple's Chief Marketing Strategist told *CNBC* in an interview: "We absolutely are not a security. We

16  don't meet the standards for what a security is based on the history of court law."[89] Instead, Ripple

17  claims that XRP is a commodity, such as gold. Purchasers of XRP did not have any reason to challenge

18  these contentions from the Company, given the unclear state of regulation and quickly evolving and

19  unchartered landscape of blockchain technologies. This state of affairs has only recently changed, as

20  regulators have begun to provide clarifying guidance that undermines defendants' denials, and the

21  centralized nature of XRP in Ripple has become more apparent.

22         66.     In July 2017, U.S. Securities and Exchange Commission ("SEC") began to question the

23  legality of unregistered token sales, such as the sales of XRP, and made clear that sellers of unregistered

24  securities cannot evade their obligations under the federal securities laws by elevating form over

25

26  [88]   @patgriffin9, https://twitter.com/Ripple/status/984061347078987776.

27  [89]   Kate Rooney, *Ripple says its cryptocurrency XRP is not a security*, CNBC (Apr. 12, 2018),
    https://www.cnbc.com/2018/04/12/ripple-says-its-cryptocurrency-xrp-is-not-a-security.html.

28

1  substance.  On July 23, 2017, the SEC issued an "Investor Alert," which stated that the agency was

2  "concerned that the rising use of virtual currencies in the global marketplace may entice fraudsters to

3  lure investors into Ponzi and other schemes in which these currencies are used to facilitate fraudulent,

4  or simply fabricated, investments or transactions."[90]  The release warned that "the fraud may also

5  involve an unregistered offering or trading platform" and promises of "high returns for getting in on the

6  ground floor of a growing Internet phenomenon."[91]

7      67.    On July 25, 2017, the SEC released an "Investor Bulletin" on ICOs.  The bulletin stated

8  that digital blockchain currencies "may be securities" under the facts and circumstances, and that such

9  "virtual coins or tokens in an ICO *are subject to the federal securities laws*."[92]  The release continued

10  in pertinent part:

11
12        A virtual currency is a digital representation of value that can be digitally traded and
      functions as a medium of exchange, unit of account, or store of value.  Virtual tokens
      or coins may represent other rights as well.  Accordingly, in certain cases, *the tokens*
13        *or coins will be securities and may not be lawfully sold without registration with*
      *the SEC or pursuant to an exemption from registration.*
14

15      68.    That same day, the SEC issued an investigative report concluding that the tokens issued

16  by a blockchain and distributed ledger organization known as "The Dao" were, in fact, securities.  The

17  press release announcing the report stated that, "issuers of distributed ledger or blockchain technology-

18  based securities *must register offers and sales of such securities unless a valid exemption applies*" and

19  that those organizing unregistered offerings "may be liable for violations of the federal securities

20  laws."[93]  In the case of The Dao, the SEC found that even though the organization labeled its tokens as

21

22

23  [90]  *Investor Alert: Ponzi Schemes Using Virtual Currencies*, https://www.sec.gov/investor/alerts/ia
    virtualcurrencies.pdf.

24  [91]  *Id.*

25  [92]  *See Investor Bulletin: Initial Coin Offerings*, https://www.sec.gov/oiea/investor-alerts-and-
26  bulletins/ib_coinofferings.

27  [93]  *See SEC Issues Investigative Report Concluding DAO Tokens a Digital Asset, Were Securities*,
    https://www.sec.gov/news/press-release/2017-131.

28

1    something other than securities, the virtual currency was subject to the registration requirements of the

2    federal securities laws as, in economic substance, it was a security.

3        69.    On December 11, 2017, SEC Chairman Jay Clayton ("Clayton") issued another

4    statement on digital tokens. He confirmed that "[m]erely calling a token a 'utility' token or structuring it

5    to provide some utility does not prevent the token from being a security," and warned security offerors

6    that attempts to "elevate form over substance" could not obviate their obligations under the federal

7    securities laws.[94] Clayton continued in pertinent part:

8        *[C]ertain market professionals have attempted to highlight utility characteristics of
9        their proposed initial coin offerings in an effort to claim that their proposed tokens
         or coins are not securities. Many of these assertions appear to elevate form over
10        substance. Merely calling a token a "utility" token or structuring it to provide
         some utility does not prevent the token from being a security.* Tokens and offerings
11        that incorporate features and marketing efforts that emphasize the potential for
         profits based on the entrepreneurial or managerial efforts of others continue to
12        contain the hallmarks of a security under U.S. law. On this and other points where
         the application of expertise and judgment is expected, I believe that gatekeepers and
13        others, including securities lawyers, accountants and consultants, need to focus on
         their responsibilities. I urge you to be guided by the principal motivation for our
14        registration, offering process and disclosure requirements: investor protection and, in
15        particular, the protection of our Main Street investors.

16                                          *   *   *

17        [M]any token offerings appear to have gone beyond this construct and are more
         analogous to interests in a yet-to-be-built publishing house with the authors, books
18        and distribution networks all to come. *It is especially troubling when the promoters
         of these offerings emphasize the secondary market trading potential of these
19        tokens. Prospective purchasers are being sold on the potential for tokens to
20        increase in value – with the ability to lock in those increases by reselling the tokens
         on a secondary market – or to otherwise profit from the tokens based on the efforts
21        of others. These are key hallmarks of a security and a securities offering.*

22        *By and large, the structures of initial coin offerings that I have seen promoted
         involve the offer and sale of securities and directly implicate the securities
23        registration requirements and other investor protection provisions of our federal
         securities laws.* Generally speaking, these laws provide that investors deserve to
24        know what they are investing in and the relevant risks involved.

25        70.    Clayton could have been referring directly to Ripple and defendants' attempts to tout the

26    profit-making potential of investing in XRP tokens on the one hand, while disclaiming any

27    _____

      [94]  *See* Jay Clayton, *Statement on Cryptocurrencies and Initial Coin Offerings*, SEC (Dec. 11, 2017).

28

                                          - 24 -
                      COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1  responsibilities to comply with applicable securities laws on the other. The SEC has since launched

2  dozens of investigations into cryptocurrency startups.

3      71.    For the integrity of the U.S. securities markets, defendants' attempts to circumvent

4  important investor safeguards must fail. Although cryptocurrencies represent something of a new

5  investing frontier, the old adage rings true: "If it looks like a duck, swims like a duck, and quacks like a

6  duck, then it probably is a duck." Here, XRP has all of the hallmarks of a security, and defendants'

7  denial does nothing to diminish their obligations to register these securities under applicable securities

8  laws.

9      72.    In light of recent SEC statements, there can now be little doubt that XRP tokens

10  constitute securities. Despite this fact, defendants have failed to register the securities in accordance

11  with applicable laws and regulations, before offering and selling them to the investing public. Further,

12  the sale of XRP was not subject to any exemption or exceptions to the registration requirements

13  available under state or federal law. As a result, the offer and sale of XRP was unlawful, and

14  defendants are liable to plaintiff and the Class as purchasers of XRP as alleged herein.

15  <div align="center">**CLASS ACTION ALLEGATIONS**</div>

16      73.    Plaintiff brings this action as a class action pursuant to §382 of the California Code of

17  Civil Procedure on behalf of a class consisting of all citizens of California who purchased XRP (the

18  "Class"). Excluded from the Class are defendants and their families, the officers, directors and affiliates

19  of the defendants, at all relevant times, members of their immediate families and their legal

20  representatives, heirs, successors or assigns, and any entity in which defendants have or had a

21  controlling interest.

22      74.    The members of the Class are so numerous that joinder of all members is impracticable.

23  Hundreds of millions of XRP have been sold by defendants. While the exact number of Class members

24  are unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff

25  believes that there are thousands of members in the proposed Class.

26      75.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of

27  the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is

28  complained of herein.

76. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel, who is competent and experienced in class and securities litigation.

77. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

     (a)    whether defendants violated the Corporations Code;

     (b)    whether XRP are securities;

     (c)    whether XRP were required to be registered under applicable laws;

     (d)    whether plaintiff and the Class are entitled to rescind their purchases of XRP; and

     (e)    to what extent the members of the Class have sustained damages and the proper measure of damages.

78. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION

### For Violation of §§25110 and 25503 of the Corporations Code
### Against All Defendants

79. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

80. This Cause of Action is brought pursuant to §§25110 and 25503 of the Corporations Code against all defendants.

81. As detailed herein, XRP is a security.

82. Defendants failed to qualify XRP with the Commissioner of Corporations and XRP did not qualify for an exemption from registration.

83. Defendants sold XRP to plaintiff and the Class, in violation of §25110, which makes it " unlawful for any person to offer or sell in this state any security in an issuer transaction ... unless such

-26-
COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

1  sale has been qualified ... or unless such security or transaction is exempted or not subject to

2  qualification."

3      84.    As such, Garlinghouse and Ripple have participated in the unlawful sale of securities in

4  violation of the Corporations Code, and are liable to plaintiff and the Class for rescission and/or

5  compensatory damages under §25503.

6  <div align="center">**SECOND CAUSE OF ACTION**</div>

7  <div align="center">**For Violation of §25504 of the Corporations Code**</div>

8  <div align="center">**Against Ripple and Garlinghouse**</div>

9      85.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

10      86.    This Cause of Action is brought pursuant to §25504 of the Corporations Code against

11  Ripple and Garlinghouse.

12      87.    Due to his position within the Company and role, vis-à-vis, the XRP Ledger, ownership

13  interest in and control over Ripple, Garlinghouse acted as a controlling person of Ripple and XRP II

14  within the meaning of §25504 of the Corporations Code as alleged herein. By virtue of his position as

15  CEO and his participation in and/or awareness of Ripple's operations, Garlinghouse had the power to

16  influence and control, and did influence and control, directly or indirectly, the decision-making, relating

17  to the sale of XRP and the failure to register these sales.

18      88.    Ripple controlled XRP II, as the parent of XRP II, and the various actors responsible for

19  the advancement of the XRP ecosystem. In addition, Ripple controlled Garlinghouse and all of his

20  employees.

21      89.    Ripple and Garlinghouse also controlled the flow of XRP, the advancement of the XRP

22  Ledger, and the means by which transactions in XRP and the offer and sale of XRP occurred, including

23  their ability to freeze XRP accounts and control the flow of XRP through various exchanges and the

24  other indications of control alleged herein. By virtue of their own acts, and their positions of control

25  and influence, Ripple and Garlinghouse materially aided in the acts and transactions constituting the

26  violations alleged herein.

27      90.    By virtue of the foregoing, defendants are liable to plaintiff and the Class as secondary

28  actors under §25504 of the Corporations Code.

1    91.    As such, Garlinghouse and Ripple have participated in an unregistered sale of securities

2  in violation of the Corporations Code, and are liable to plaintiff and the Class for rescission and/or

3  compensatory damages.

### PRAYER FOR RELIEF

5        WHEREFORE, plaintiff prays for relief and judgment, as follows:

6        A.    Determining that this action is a proper class action and certifying plaintiff as a class

7  representative and plaintiff's counsel as Lead Counsel;

8        B.    Declaring that XRP is a security and that defendants' unregistered sales of XRP violated

9  applicable law;

10        C.    Awarding compensatory damages in favor of plaintiff and the other Class members

11  against all defendants, jointly and severally, for all damages sustained as a result of defendants'

12  wrongdoing, in an amount to be proven at trial, including interest thereon;

13        D.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this

14  action, including counsel fees and expert fees;

15        E.    Awarding rescission or a rescissionary measure of damages; and

16        F.    Awarding such equitable/injunctive or other relief as the Court may deem just and

17  proper.

### JURY DEMAND

19        Plaintiff respectfully requests a trial by jury on all issues so triable.

20  Dated: June 27, 2018           ROBBINS ARROYO LLP
                                   BRIAN J. ROBBINS
21                                 STEPHEN J. ODDO
                                   ERIC M. CARRINO
22

23                                         BRIAN J. ROBBINS

24
                                   600 B Street, Suite 1900
25                                 San Diego, CA 92101
                                   Telephone: (619) 525-3990
26                                 Facsimile: (619) 525-3991
                                   E-mail: brobbins@robbinsarroyo.com
27                                        soddo@robbinsarroyo.com
                                          ecarrino@robbinsarroyo.com

28  1275287                        Attorneys for Plaintiff

- 28 -
COMPLAINT FOR VIOLATIONS OF CALIFORNIA LAW

## NOTICE OF CASE MANAGEMENT CONFERENCE

Oconer

vs.

Ripple Labs, Inc, et al

**FILED**
**SAN MATEO COUNTY**

JUN 27 2018

Clerk of the Superior Court
By
DEPUTY CLERK

Case No: **18 C I V 0 3 3 3 2**

Date: **OCT. 2 5 2018**

Time 9:00 a.m.

Dept. **21**  --on Tuesday & Thursday
Dept. _____  --on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of the Court and local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

   a) Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).

   b) Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

   c) File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.

   d) Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30-days before the date set for the Case Management Conference.

2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3. Continuances of Case Management Conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation to ADR and Proposed Order (see attached form). If plaintiff files a Stipulation to ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10-days prior to the first scheduled Case Management Conference, the Case Management Conference will be continued for 90-days to allow parties time to complete their ADR session. The court will notify parties of their new Case Management Conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off Case Management Conference Calendar. If "Does", "Roes," etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management Judge will issue orders at the conclusion of the conference that may include:

   a) Referring parties to voluntary ADR and setting an ADR completion date;

   b) Dismissing or severing claims or parties;

   c) Setting a trial date.

8. The Case Management Judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court's website at: www.sanmateocourt.org

*Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall information).*

18 – CIV – 03332
NCMC
Notice of Case Management Conference
1232947





**ᴾERIOR COURT OF SAN MATEO COUNTY**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

18 – CIV – 03332
NCCSC
Notice of Complex Case Status Conference
1233022

| DAVID OCONER<br>Plaintiff (s)<br><br>vs.<br><br>RIPPLE LABS, INC.<br>Defendant (s) | **Notice of Complex Case Status Conference**<br><br>Case No.: 18-CIV-03332     Date:  **8/29/2018**<br>Time:  **9:00 AM**<br>**Dept. PJ** |
|---|---|
| Title: **DAVID OCONER  VS.  RIPPLE LABS, INC., ET AL** ||

You are hereby given notice of your Complex Case Status Conference.  The date, time and department have been written above.  At this conference, the Presiding Judge will decide whether this action is a complex case within the meaning of California Rules Court ("CRC"), Rule 3.400, subdivision (a) and whether it should be assigned to a single judge for all purposes.

1. In accordance with applicable **San Mateo County Local Rule 2.30**, you are hereby ordered to:
   a. **Serve** copies of this notice, your Civil Case Cover Sheet, and your Certificate Re: Complex Case Designation on all named parties in this action no later than service of your first appearance pleadings.
   b. **Give reason notice** of the Complex Case Status Conference to all named parties in this action, even if they have not yet made a first appearance or been formally served with the documents listed in subdivision (a). Such notice shall be given in the same manner as required for an ex parte application pursuant to CRC 3.1203.

2. **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Complex Cause Status Conference.  Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

3. An action is provisionally a complex case if it involves one or more of the following types of claims: (1) antitrust or trade regulation claims; (2) construction defect claims involving many parties or structures; (3) securities claims or investment losses involving many parties; (4) environmental or toxic tort claims involving many parties; (5) claims involving massive torts; (6) claims involving class actions; or (7) insurance coverage claims arising out of any of the claims listed in subdivisions (1) through (6).  The Court shall treat a provisionally complex action as a complex case until the Presiding Judge has the opportunities to decide whether the action meets the definition in CRC 3.400(a).

4. Any party who files either a Civil Case Cover Sheet (pursuant to CRC 3.401) or counter or joinder Civil Case Cover Sheet (pursuant to CRC 3.402, subdivision (b) or (C)), designating an action as a complex case in Items 1,2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court. The certificate must include supporting information showing a reasonable basis for the complex case designation being sought.  Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues' (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision.

For further information regarding ca    management policies and procedures, se    e court website at
www.sanmateocourt.org

* Telephone appearances at Complex Case Status Conference are available by contacting CourtCall, LLC, and independent vendor, at least 5 business days prior to the scheduled conference.

### CLERK'S CERTIFICATE OF MAILING

I hereby certify that I am the clerk of this court, not a party of this cause; that I served a copy of this notice on the below date, by placing a copy thereof in separate sealed envelopes addressed to the address shown by the records of this court as set forth above, and by then sealing said envelopes and depositing same, with postage fully pre-paid thereon, in the United States Mail at Red wood City, California.

Date: 6/27/2018

Rodina M. Catalano,
Court Executive Officer/Clerk

By: _____

Mirna Rivera Martinez,
Deputy Clerk

Copies mailed to:

BRIAN J ROBBINS
600 B STREET
SUITE 1900
SAN DIEGO CA  92101

Rev. Jun. 2016



Attorney or Party without Attorney (Name/Address)
Brian J. Robbins
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
State Bar No.: 190264
Attorney for: Plaintiff David Oconer

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN MATEO
400 COUNTY CENTER
REDWOOD CITY, CA 94063

Plaintiff    David Oconer

Defendant   Ripple Labs Inc., et al.

FOR COURT USE ONLY

**FILED**
SAN MATEO COUNTY
JUN 27 2018
Clerk of the Superior Court
By
DEPUTY CLERK

18-CIV-03332
CRCCD
Certificate Re: Complex Case Designation
1232951

**Certificate Re Complex Case Designation**

Case Number
18CIV03332

## This certificate must be completed and filed with your Civil Case Cover Sheet if you have checked a Complex Case designation or Counter-Designation

1.    In the attached Civil Case Cover Sheet, this case is being designated or counter-designated as a complex case [or as not a complex case] because at least one or more of the following boxes has been checked:

    ☒ Box 1 – Case type that is best described as being [or not being] provisionally complex civil litigation (i.e., antitrust or trade regulation claims, construction defect claims involving many parties or structures, securities claims or investment losses involving many parties, environmental or toxic tort claims involving many parties, claims involving mass torts, or insurance coverage claims arising out of any of the foregoing claims).

    ☒ Box 2 – Complex [or not complex] due to factors requiring exceptional judicial management

    ☒ Box 5 – Is [or is not] a class action suit.

2.    This case is being so designated based upon the following supporting information [including, without limitation, a brief description of the following factors as they pertain to this particular case: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions

FILE BY FAX

CV-59 [Rev. 1/06]                                                                    www.sanmateocourt.org

pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision].

This case is provisionally complex as it involves securities claims. In addition, it is

being designated complex due to the large number of parties/witnesses, the

complexity of factual and/or legal issues, and because certification of a putative

class will be pursued.

_(attach additional pages if necessary)_

3.    Based on the above-stated supporting information, there is a reasonable basis for the complex case designation or counter-designation [xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx] being made in the attached Civil Case Cover Sheet.

\*\*\*\*\*

I, the undersigned counsel or self-represented party, hereby certify that the above is true and correct and that I make this certification subject to the applicable provisions of California Code of Civil Procedure, Section 128.7 and/or California Rules of Professional Conduct, Rule 5-200 (B) and San Mateo County Superior Court Local Rules, Local Rule 2.30.

Dated:    June 27, 2018

Brian J. Robbins
[Type or Print Name]                              [Signature of Party or Attorney For Party]

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

<div align="right">
FOR COURT USE ONLY<br>
(SOLO PARA USO DE LA CORTE)
</div>



**FILED**
SAN MATEO COUNTY
JUN 2 7 2018
of the Superior Court
DEPUTY CLERK

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

RIPPLE LABS INC., XRP II, LLC, BRADLEY GARLINGHOUSE, and DOES 1-25, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

DAVID OCONER, Individually and on Behalf of All Others Similarly Situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>(El nombre y dirección de la corte es): Superior Court of San Mateo County<br><br>400 County Center<br>Redwood City, CA 94063 | CASE NUMBER:<br>(Número del Caso):<br>**18CIV03332** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Brian J. Robbins, ROBBINS ARROYO LLP, 600 B Street, Suite 1900, San Diego, CA 92101; (619) 525-3990

| DATE:<br>(Fecha): JUN 2 7 2018 | Clerk, by RODINA M. CATALANO<br>(Secretario) | , Deputy<br>(Adjunto) |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

18 – CIV – 03332
SUM
Summons Issued / Filed
1232944

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

under: ☐ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 (Rev. July 1, 2009) | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Stephen J. Oddo (SBN 174828)<br>Robbins Arroyo LLP<br>600 B Street, Suite 1900<br>San Diego, CA 92101<br>TELEPHONE NO.: (619) 525-3990   FAX NO. *(Optional):* (619) 525-3991<br>E-MAIL ADDRESS *(Optional):* soddo@robbinsarroyo.com<br>ATTORNEY FOR *(Name):* Plaintiff David Oconer | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Hall of Justice and Records

PLAINTIFF/PETITIONER: David Oconer

DEFENDANT/RESPONDENT: Ripple Labs Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>18CIV03332 |
|---|---|

TO *(insert name of party being served):* Ripple Labs, Inc. c/o Peter B. Morrison, Esq.

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:

June 28, 2018

(TYPE OR PRINT NAME)        ▶ _D. Colonna_ (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*

   Certificate Re Complex Case Designation; Civil Case Cover Sheet; Notice of CMC; Important Notice re: Nonrefundable Advance Jury Fee; Case Management Statement (form); Civil Trial Court Management Rules; ADR Stipulation and Evaluation Instructions; Stipulation and Order to ADR (form); and Civil ADR Info Sheet

*(To be completed by recipient):*

Date this form is signed: 7 - 18 - 2018

PETER B. MORRISON, ATTORNEY
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)
FOR DEFENDANTS

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Stephen J. Oddo (SBN 174828)<br>Robbins Arroyo LLP<br>600 B Street, Suite 1900<br>San Diego, CA 92101<br>TELEPHONE NO.: (619) 525-3990    FAX NO. (Optional): (619) 525-3991<br>E-MAIL ADDRESS (Optional): soddo@robbinsarroyo.com<br>ATTORNEY FOR (Name): Plaintiff David Oconer | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Hall of Justice and Records

PLAINTIFF/PETITIONER: David Oconer

DEFENDANT/RESPONDENT: Ripple Labs Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>18CIV03332 |
|---|---|

TO (insert name of party being served): XRP II, LLC c/o Peter B. Morrison, Esq.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:

June 28, 2018
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other (specify):

   Certificate Re Complex Case Designation; Civil Case Cover Sheet; Notice of CMC; Important Notice re: Nonrefundable Advance Jury Fee; Case Management Statement (form); Civil Trial Court Management Rules; ADR Stipulation and Evaluation Instructions; Stipulation and Order to ADR (form); and Civil ADR Info Sheet

(To be completed by recipient):

Date this form is signed: 7-18-2018

PETER B. MORRISON, ATTORNEY
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)
FOR DEFENDANTS

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Stephen J. Oddo (SBN 174828)<br>Robbins Arroyo LLP<br>600 B Street, Suite 1900<br>San Diego, CA 92101<br>TELEPHONE NO.: (619) 525-3990     FAX NO. (Optional): (619) 525-3991<br>E-MAIL ADDRESS (Optional): soddo@robbinsarroyo.com<br>ATTORNEY FOR (Name): Plaintiff David Oconer | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Hall of Justice and Records

PLAINTIFF/PETITIONER: David Oconer

DEFENDANT/RESPONDENT: Ripple Labs Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>18CIV03332 |
|---|---|

TO (insert name of party being served): Bradley Garlinghouse c/o Peter B. Morrison, Esq.

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:

June 28, 2018
_____
(TYPE OR PRINT NAME)

▶ _R. Colonna_
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):

1. [✓] A copy of the summons and of the complaint.
2. [✓] Other (specify):

   Certificate Re Complex Case Designation; Civil Case Cover Sheet; Notice of CMC; Important Notice re: Nonrefundable Advance Jury Fee; Case Management Statement (form); Civil Trial Court Management Rules; ADR Stipulation and Evaluation Instructions; Stipulation and Order to ADR (form); and Civil ADR Info Sheet

(To be completed by recipient):

Date this form is signed: 7-18-2018

PETER B. MORRISON, ATTORNEY
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

FOR DEFENDANTS

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov



**SUPERIOR COURT OF SAN MATEO COUNTY**
400 County Center, Redwood City, CA 94063
www.sanmateocourt.org

FOR COURT USE ONLY

# FILED
**SAN MATEO COUNTY**

AUG 2 9 2018

Clerk of the Superior Court

By _____ in

DEPUTY CLERK

PLAINTIFF: **DAVID OCONER**

DEFENDANT: **RIPPLE LABS, INC.; XRP II, LLC; BRADLEY GARLINGHOUSE; DOES 1-25, INCLUSIVE**

**CLERK'S NOTICE OF FEES DUE COMPLEX LITIGATION DESIGNATION**

CASE NUMBER:
**18-CIV-03332**

**PARTY INFORMATION:**

DAVID OCONER  No Known Address

RIPPLE LABS INC  No Known Address

XRP II LLC  No Known Address

BRADLEY GARLINGHOUSE  No Known Address

DOES 1-25 INCLUSIVE  No Known Address

BRIAN J ROBBINS  600 B STREET  SUITE 1900  SAN DIEGO CA  92101

18 – CIV – 03332
FDCL
Clerk's Notice of Fees Due Complex Litigation
1351305

**COUNSEL (FOR PRO/PER) INFORMATION:**

BRIAN J ROBBINS            600 B STREET SUITE 1900 SAN DIEGO CA  92101

You are hereby notified that the court has designed your case as a complex case.  Pursuant to Government Code section 70616 you are required to pay the following fees:

Plaintiff(s)          A single complex case fee of $1,000 shall be paid on behalf of all plaintiffs, either filing separately or jointly to be paid at the same time as designated in Government Code section 70616(a).

Defendant(s)          A complex case fee of $1,000 shall be paid by each defendant, intervenor, respondent, or adverse party, whether filing separately or jointly, up to the total complex fees collected from all defendants, intervenors, respondents, or other adverse parties appearing not to exceed $18,000.  These fees are to be paid at the time as designated in Govt.C. §70616(b). (Govt.C. §7 0616(b) and (d))

You are required to bring this notice to the clerk's office, civil division, and deposit the required fee within the statutory time period of 10 days from the date indicated on this Notice. Failure to pay the required fee will result in a delay of your case as provided for under Government Code section 70616 and the Code of Civil Procedure section 411.20.

*Please disregard this notice if you have paid this fee prior to receipt of this Notice.  If you paid this fee more than 10 days ago, please contact the Clerk's Office at (650) 261-5100.*

You are required to bring this worksheet to the clerk's office as directed, and deposit the required fees and you are to present your receipt to the courtroom clerk as proof of payment.  Failure to pay the required fess could result in a delay of your case.

Date: 8/29/2018                              Rodina M. Catalano, Court Executive Officer/Clerk

---

### CLERK'S CERTIFICATE OF MAILING

I hereby certify that I am the clerk of this Court, not a party to this cause; that I served a copy of this notice on the below date, by placing a copy thereof in separate sealed envelopes addressed to the address shown by the records of this Court and by then

Rev. Oct. 2014

sealing said envelopes and depositing same, with postage fully rep-paid thereon, in the United States Mail at Redwood City California.

Date: 8/29/2018                    By: _____

                                        Ivy Jomoc, Courtroom Clerk

**FILED**

SAN MATEO COUNTY

AUG **2 9** 2018

Clerk of the Superior Court

By _____
                    DEPUTY CLERK

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN MATEO

DAVID OCONER, Individually and on Behalf of All )
Others Similarly Situated,                       )   Case No. 18CIV03332
                                                 )
Plaintiff,                                       )
                                                 )   **ORDER DESIGNATING CASE**
v.                                               )   **COMPLEX AND ASSIGNING CASE**
                                                 )   **FOR ALL PURPOSES**
                                                 )
RIPPLE LABS, INC.,                               )
XRP II LLC,                                      )
BRADLEY GARLINGHOUSE, and                        )
and DOES 1-25, inclusive,                        )
                                                 )
Defendants.                                      )
_____  )



18 − CIV − 03332
ORD
Order
1351307

        Pursuant to Judge Etezadi's order on August 29, 2018, this matter is provisionally deemed and

designated COMPLEX, and is assigned to Judge Marie S. Weiner, Department 2, for all purposes. The

parties are directed to contact Judge Weiner's Department at 650-261-5102 to set a date for future status

conference or other hearing.


Dated:  August 29, 2018                    _Susan Irene Etezadi_
                                           SUSAN IRENE ETEZADI
                                           PRESIDING JUDGE



**SUPERIOR COURT OF SAN MATEO COU...**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

**FILED**
**SAN MATEO COUNTY**

AUG 2 9 2018

Clerk of the Superior Court

By _____
DEPUTY CLERK

## AFFIDAVIT OF MAILING

Date: 8/29/2018

In the Matter of: DAVID OCONER vs.  RIPPLE LABS, INC., et al
Case No.: 18-CIV-03332

   I declare under penalty of perjury that on the following date I deposited in the United States Post Office mail box at Redwood City, a true copy of the attached document(s) **ORDER DESIGNATING CASE COMPLEX AND ASSIGNING CASE FOR ALL PURPOSES**, enclosed in an envelope, with proper and necessary postage thereon, and addressed to the following:

Executed on: 8/29/2018

                         Rodina M. Catalano, Court Executive Officer/Clerk

              By: _____
                         Ivy Jomoc, Deputy Clerk

<u>Copies Mailed To:</u>

    BRIAN J ROBBINS
    600 B STREET
    SUITE 1900
    SAN DIEGO CA  92101



18 – CIV – 03332
AFM
Affidavit of Mailing
1351309

Rev. Jun. 2016

August 29, 2018 Presiding Judge Law and Motion Calendar    PAGE 2
Judge:   HONORABLE SUSAN IRENE ETEZADI, Department 18

---

9:00

LINE: 2

18-CIV-03332    DAVID OCONER VS. RIPPLE LABS, INC., ET AL.


DAVID OCONER                                    BRIAN J. ROBBINS
RIPPLE LABS, INC.

---

COMPLEX CASE STATUS CONFERENCE
**TENTATIVE RULING:**

**This matter is provisionally deemed and designated as COMPLEX, and is assigned to Judge Marie S. Weiner, Department 2, for all purposes. The parties are directed to contact Judge Weiner's Department at 650-261-5102 to set a date for future status conferences or other hearings.**

**If the tentative ruling is uncontested, it shall become the order of the Court, pursuant to Rule 3.1308(a)(1), adopted by Local Rule 3.10, effective immediately, and no formal order pursuant to Rule 3.1312 or any other notice is required as the tentative ruling affords sufficient notice to the parties.**

---

POSTED:  3:00 PM

18 – CIV – 03332
ORD
Order
1358868

1  ROBBINS ARROYO LLP
   BRIAN J. ROBBINS (190264)
2  STEPHEN J. ODDO (174828)
   ERIC M. CARRINO (310765)
3  600 B Street, Suite 1900
   San Diego, CA 92101
4  Telephone: (619) 525-3990
   Facsimile: (619) 525-3991
5  E-mail: brobbins@robbinsarroyo.com
            soddo@robbinsarroyo.com
6           ecarrino@robbinsarroyo.com

7  Attorneys for Plaintiffs
   Vladi Zakinov and David Oconer

8

9  [Additional counsel appear on signature page]

10         SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                  COUNTY OF SAN MATEO

12  VLADI ZAKINOV, Individually and on      )  Case No. 18-CIV-02845
    Behalf of All Others Similarly Situated, )
13                                           )  CLASS ACTION
                       Plaintiff,            )
14                                           )  STIPULATION AND [PROPOSED]
        v.                                   )  ORDER CONSOLIDATING RELATED
15                                           )  ACTIONS AND RELATED MATTERS
    RIPPLE LABS INC., XRP II, LLC,           )
16  BRADLEY GARLINGHOUSE, and DOES           )
    1-25, Inclusive,                         )  Judge: Richard H. DuBois
17                                           )  Dept: 16
                       Defendants.           )  Date Action Filed: June 5, 2018
18  _____ )
                                             )
19  DAVID OCONER, Individually and on        )  Case No. 18-CIV-03332
    Behalf of All Others Similarly Situated, )
20                                           )
                       Plaintiff,            )
21                                           )
        v.                                   )
22                                           )
    RIPPLE LABS INC., XRP II, LLC,           )
23  BRADLEY GARLINGHOUSE, and DOES           )
    1-25, Inclusive,                         )
24                                           )
                       Defendants.           )  Judge: Robert D. Foiles
25  _____ )  Dept: 21
                                             )  Date Action Filed: June 27, 2018
26

27

28

FILED
SAN MATEO COUNTY
AUG 3 0 2018
Clerk of the Superior Court
By _____
    DEPUTY CLERK

18 – CIV – 02845
SO
Stipulation & Order
1352929

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

1.      The above-captioned actions pending in this Court (the "Related Actions") make substantially the same allegations against defendant Ripple Labs Inc. ("Ripple" or the "Company"), XRP II, LLC, and Bradley Garlinghouse.

2.      In an effort to assure consistent rulings and decisions and the avoidance of unnecessary duplication of effort, counsel for the respective parties in the Related Actions hereby enter into this Stipulation and [Proposed] Order Consolidating Related Actions and Related Matters (the "Stipulation").

3.      Counsel for the parties to this Stipulation include Robbins Arroyo LLP ("Robbins Arroyo") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") on behalf of plaintiff Vladi Zakinov; Robbins Arroyo on behalf of David Oconer (collectively, "Plaintiffs"); Skadden, Arps, Slate, Meagher & Flom LLP and Debevoise & Plimpton LLP on behalf of defendants Ripple Labs, Inc., XRP II, LLC, and Bradley Garlinghouse (collectively, "Defendants").

4.      The parties agree that it would be duplicative and wasteful of the Court's resources for Defendants named in the Related Actions to have to respond to the individual complaints prior to the agreed upon consolidation and in light of the anticipated filing of a consolidated complaint. Therefore, the parties agree that Defendants need not respond to the individual complaints that have already been filed in this Court.

5.      On August 8, 2018, the Zakinov action was designated as complex. On August 21, 2018, it was assigned to the Honorable Richard H. DuBois, Department 16, for all purposes. A complex case status conference in the Oconer action is set for August 29, 2018.

## CONSOLIDATION

6.      The following Related Actions are hereby consolidated for all purposes, including pre-trial proceedings and trial (the "Consolidated Action"):

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Zakinov v. Ripple Labs Inc.* | 18-CIV-02845 | 6/5/2018 |
| *Oconer v. Ripple Labs Inc.* | 18-CIV-03332 | 6/27/2018 |

- 1 -

1  Every pleading filed in the Consolidated Action, or in any separate action included herein, shall

2  bear the following caption:

3                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

4                              COUNTY OF SAN MATEO

| | | |
|---|---|---|
| IN RE RIPPLE LABS INC. LITIGATION | ) | Lead Case No. 18-CIV-02845 |
| | ) | |
| | ) | (Consolidated with Case No. 18-CIV-03332) |
| This Document Relates To: | ) | |
| ALL ACTIONS. | ) | CLASS ACTION |
| | ) | |
| | ) | |

7.    The files of the Consolidated Action shall be maintained in one file under Master File No. 18-CIV-02845.

8.    Plaintiffs shall either designate a complaint as operative or file a Consolidated Complaint ("Consolidated Complaint") within 45 days after entry of this order, unless otherwise agreed upon by the parties.  If filed, the Consolidated Complaint shall be the operative complaint and shall supersede all complaints filed in any of the actions consolidated herein. Defendants shall respond to the operative complaint or Consolidated Complaint within 45 days after service, unless otherwise agreed by the parties.  In the event that Defendants file any motions directed at the operative complaint or Consolidated Complaint, the opposition and reply briefs shall be filed within 45 and 20 days, respectively, of the motions, unless otherwise agreed upon by the parties.  Counsel agrees to confer to select a hearing date.

**APPOINTMENT OF A LEADERSHIP STRUCTURE**

9.    The Plaintiffs agree that Robbins Arroyo and Robbins Geller shall serve as Co-Lead Counsel for Plaintiffs ("Co-Lead Counsel") in the Consolidated Action, and Defendants take no position on the Court's appointment of Co-Lead Counsel for Plaintiffs or the responsibilities assumed by that Co-Lead Counsel.

10.    Plaintiffs agree that Co-Lead Counsel shall have sole authority to speak for Plaintiffs in matters regarding pre-trial procedure, trial, and settlement and shall make all work

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

1 | assignments in such manner as to facilitate the orderly and efficient prosecution of the
2 | Consolidated Action and to avoid duplicative or unproductive effort.

3 |     11.    Plaintiffs agree that Co-Lead Counsel shall be responsible for coordinating all
4 | activities and appearances on behalf of Plaintiffs.  No motion, request for discovery, or other
5 | pre-trial or trial proceedings shall be initiated or filed by any Plaintiff except through Co-Lead
6 | Counsel.

7 |     12.    Plaintiffs agree that Co-Lead Counsel shall be available and responsible for
8 | communications to and from this Court, including distributing orders and other directions from
9 | the Court to counsel, and shall be responsible for communication with Defendants' counsel on
10 | matters of case administration and scheduling.  Co-Lead Counsel shall further be responsible for
11 | creating and maintaining a master service list of all parties and their respective counsel.

12 |     13.    Defendants' counsel may rely upon all agreements made with Co-Lead Counsel,
13 | or other duly authorized representative of Co-Lead Counsel, and such agreements shall be
14 | binding on all Plaintiffs.

15 | **RELATED MATTERS**

16 |     14.    This Order shall apply to each case, arising out of the same or similar
17 | transactions and/or events as the Related Actions which is currently pending in, subsequently
18 | filed in, remanded to, or transferred to this Court.

19 |     15.    When a case which properly belongs as part of the *In re Ripple Labs Inc.*
20 | *Litigation*, Lead Case No. 18-CIV-02845, is hereafter or has been filed in, remanded to, or
21 | transferred to this Court, counsel for the parties shall call such filing, remand, or transfer to the
22 | attention of the clerk of this Court for purposes of moving the Court for an order consolidating
23 | such case(s) with *In re Ripple Labs Inc.  Litigation*, Lead Case No. 18-CIV-02845.  Counsel for
24 | the parties will further assist in assuring that counsel for the parties in such subsequent action(s)
25 | receive notice of this Order.

26
27
28

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

IT IS SO STIPULATED.

DATED: 8/22/18

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
ERIC M. CARRINO

STEPHEN J. ODDO

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
           soddo@robbinsarroyo.com
           ecarrino@robbinsarroyo.com

Proposed Co-Lead Counsel for Plaintiffs and
Counsel for Plaintiffs Vladi Zakinov and
David Oconer

DATED: 8/22/18

ROBBINS GELLER RUDMAN
    & DOWD LLP

BRIAN O. O'MARA (229737)

DAVID C. WALTON (167268)
BRIAN E. COCHRAN (286202)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: davew@rgrdlaw.com
           bomara@rgrdlaw.com
           bcochran@rgrdlaw.com

Proposed Co-Lead Counsel for Plaintiffs and
Counsel for Plaintiff Vladi Zakinov

SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com

Additional counsel for Plaintiff Vladi Zakinov

- 4 -

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

DATED: 8/22/18

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

*Peter Morrison / by permission SFO*

PETER B. MORRISON

Peter B. Morrison
Virginia F. Milstead
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: peter.morrison@skadden.com
         virginia.milstead@skadden.com

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com

Mary Jo White (*pro hac vice* forthcoming)
Andrew J. Ceresney (*pro hac vice*
forthcoming)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
         aceresney@debevoise.com

Counsel for defendants Ripple Labs Inc., XRP
II, LLC, and Bradley Garlinghouse

1286406

- 5 -

## ORDER

The above Stipulation Consolidating Related Actions and Related Matters having been considered, and good cause appearing therefore,

IT IS SO ORDERED.

DATED: _8-29-18_       _____

HONORABLE RICHARD H. DUBOIS
JUDGE OF THE SUPERIOR COURT

- 6 -

# DECLARATION OF SERVICE

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and a resident of the County of San Diego, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 600 B Street, Suite 1900, San Diego, California 92101.

2.     That on August 23, 2018, I served the following document(s):

STIPULATION AND [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS AND RELATED MATTERS

    _____     By transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Service List from fax number (619) 525-3991 on this date before 5:00 p.m. The facsimile transmission was reported as complete and without error.

    __X__     By placing the document(s) listed above in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

    _____     By causing the document(s) listed above to be served by a courier service on the following parties:

    _____     By depositing in a box or other facility regularly maintained by UPS, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, in an envelope designated by the said express service carrier, with delivery fees paid or provided for, addressed to the parties on the attached Service List.

    _____     Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I sent the documents described herein to the persons at the e-mail addresses on the attached service list.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

3.     That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this August 23, 2018, at San Diego, California.

KATHERINE B. SCHEELE

- 7 -

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

*Zakinov v. Ripple Labs Inc., et al.*, Case No. 18CIV02845;
*Oconer v. Ripple Labs Inc., et al.*, Case No. 18CIV03332

## COUNSEL FOR PLAINTIFFS

Brian J. Robbins
Stephen J. Oddo
Eric M. Carrino
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
     soddo@robbinsarroyo.com
     ecarrino@robbinsarroyo.com

*Counsel for Plaintiffs Vladi Zakinov and David Oconer*

Shawn A. Williams
ROBBINS GELLER RUDMAN
     & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com

David C. Walton
Brian O. O'Mara
Brian E. Cochran
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: davew@rgrdlaw.com
     bomara@rgrdlaw.com
     bcochran@rgrdlaw.com

*Counsel for Plaintiff Vladi Zakinov*

## COUNSEL FOR DEFENDANTS

Peter B. Morrison
Virginia F. Milstead
SKADDEN, ARPS, SLATE, MEAGHER
     & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: peter.morrison@skadden.com
     virginia.milstead@skadden.com

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
     & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com

Mary Jo White
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
     aceresney@debevoise.com

*Counsel for defendants Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse*

1278419

1   ROBBINS ARROYO LLP
    BRIAN J. ROBBINS (190264)
2   STEPHEN J. ODDO (174828)
    ERIC M. CARRINO (310765)
3   600 B Street, Suite 1900
    San Diego, CA 92101
4   Telephone: (619) 525-3990
    Facsimile: (619) 525-3991
5   E-mail: brobbins@robbinsarroyo.com
            soddo@robbinsarroyo.com
6           ecarrino@robbinsarroyo.com

7   Co-Lead Counsel for Plaintiffs

8   [Additional counsel appear on signature page]

Electronically
**FILED**
by Superior Court of California, County of San Mateo
ON      8/31/2018
By      /s/ Una Finau
        Deputy Clerk

9                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                          COUNTY OF SAN MATEO

11  IN RE RIPPLE LABS INC. LITIGATION          )   Lead Case No. 18-CIV-02845
                                               )
12                                             )   (Consolidated with Case No. 18-CIV-03332)
    This Document Relates To:                  )
13                                             )   CLASS ACTION
        ALL ACTIONS.                           )
14                                             )   NOTICE OF ENTRY OF ORDER
                                               )
15                                             )   Judge: Hon. Richard H. DuBois
                                               )   Dept: 16
16                                             )   Date Action Filed: June 5, 2018

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF ENTRY OF ORDER

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 30, 2018, the Court entered the Stipulation and Order Consolidating Related Actions and Related Matters, a true and correct copy of which is attached hereto as Exhibit A.

DATED: August 31, 2018

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
ERIC M. CARRINO

STEPHEN J. ODDO

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
soddo@robbinsarroyo.com
ecarrino@robbinsarroyo.com

ROBBINS GELLER RUDMAN
& DOWD LLP
DAVID C. WALTON (167268)
BRIAN E. COCHRAN (286202)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: davew@rgrdlaw.com
bomara@rgrdlaw.com
bcochran@rgrdlaw.com

Co-Lead Counsel for Plaintiffs

SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com

Additional counsel for Plaintiff Vladi Zakinov

1292660

- 1 -

NOTICE OF ENTRY OF ORDER

1

## **DECLARATION OF SERVICE**

2      I, the undersigned, declare:

3      1.      That declarant is and was, at all times herein mentioned, a citizen of the United

4   States and a resident of the County of San Diego, over the age of 18 years, and not a party to or

5   interest in the within action; that declarant's business address is 600 B Street, Suite 1900, San

6   Diego, California 92101.

7      2.      That on August 31, 2018, I served the following document(s):

8      NOTICE OF ENTRY OF ORDER

9
___      By transmitting via facsimile the document(s) listed above to the fax
10        number(s) set forth on the attached Service List from fax number (619) 525-
          3991 on this date before 5:00 p.m. The facsimile transmission was reported as
11        complete and without error.

12   X    By placing the document(s) listed above in a United States mailbox at San
          Diego, California in a sealed envelope with postage thereon fully prepaid and
13        addressed to the parties listed on the attached Service List.

14   ___  By causing the document(s) listed above to be served by a courier service on
          the following parties:

15
___      By depositing in a box or other facility regularly maintained by UPS, an
16        express service carrier, or delivered to a courier or driver authorized by said
          express service carrier to receive documents, in an envelope designated by the
17        said express service carrier, with delivery fees paid or provided for, addressed
          to the parties on the attached Service List.

18
___      Based on a court order or an agreement of the parties to accept service by e-
19        mail or electronic transmission, I sent the documents described herein to the
          persons at the e-mail addresses on the attached service list.  I did not receive,
20        within a reasonable time after the transmission, any electronic message or
          other indication that the transmission was unsuccessful.

21

22      3.      That there is a regular communication by mail between the place of mailing and

23   the places so addressed.

        I declare under penalty of perjury under the laws of the State of California that the
24
     foregoing is true and correct.  Executed this August 31, 2018, at San Diego, California.

25

26                                                  _____

27                                                  KATHERINE B. SCHEELE

28

- 2 -

*In re Ripple Labs Inc. Litigation*, Lead Case No. 18CIV02845

**COUNSEL FOR PLAINTIFFS**

Brian J. Robbins
Stephen J. Oddo
Eric M. Carrino
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile:  (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
   soddo@robbinsarroyo.com
   ecarrino@robbinsarroyo.com

Shawn A. Williams
ROBBINS GELLER RUDMAN
 & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com

*Co-Lead Counsel for Plaintiffs*

**COUNSEL FOR DEFENDANTS**

Peter B. Morrison
Virginia F. Milstead
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: peter.morrison@skadden.com
   virginia.milstead@skadden.com

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com

Mary Jo White
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
   aceresney@debevoise.com

*Counsel for defendants Ripple Labs Inc., XRP
II, LLC, and Bradley Garlinghouse*

# EXHIBIT A

1   ROBBINS ARROYO LLP
    BRIAN J. ROBBINS (190264)
2   STEPHEN J. ODDO (174828)
    ERIC M. CARRINO (310765)
3   600 B Street, Suite 1900
    San Diego, CA 92101
4   Telephone: (619) 525-3990
    Facsimile: (619) 525-3991
5   E-mail: brobbins@robbinsarroyo.com
           soddo@robbinsarroyo.com
6          ecarrino@robbinsarroyo.com

7   Attorneys for Plaintiffs
    Vladi Zakinov and David Oconer

8

9   [Additional counsel appear on signature page]

**FILED**
**SAN MATEO COUNTY**

AUG 3 0 2018

Clerk of the Superior Court
By _____
        DEPUTY CLERK

File By Fax

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        COUNTY OF SAN MATEO

12   VLADI ZAKINOV, Individually and on      )   Case No. 18-CIV-02845
     Behalf of All Others Similarly Situated, )
13                                            )
                                              )   CLASS ACTION
14                        Plaintiff,          )
                                              )   STIPULATION AND [PROPOSED]
15          v.                                )   ORDER CONSOLIDATING RELATED
                                              )   ACTIONS AND RELATED MATTERS
16   RIPPLE LABS INC., XRP II, LLC,           )
     BRADLEY GARLINGHOUSE, and DOES           )
17   1-25, Inclusive,                         )   Judge: Richard H. DuBois
                                              )   Dept: 16
18                        Defendants.         )   Date Action Filed: June 5, 2018
                                              )
19   _____      )
                                              )
20   DAVID OCONER, Individually and on        )   Case No. 18-CIV-03332
     Behalf of All Others Similarly Situated, )
21                                            )
                          Plaintiff,          )
22                                            )
            v.                                )
23                                            )   [barcode box]
     RIPPLE LABS INC., XRP II, LLC,           )   18-CIV-02845
24   BRADLEY GARLINGHOUSE, and DOES           )   SO
     1-25, Inclusive,                         )   Stipulation & Order
25                                            )   1362929
                          Defendants.         )   Judge: Robert D. Foiles
26   _____      )   Dept: 21
                                              )   Date Action Filed: June 27, 2018
27

28

_____
STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

Clerk of the Superior Court

AUG 2 8 2018

RECEIVED
SAN MATEO COUNTY

1.      The above-captioned actions pending in this Court (the "Related Actions") make substantially the same allegations against defendant Ripple Labs Inc. ("Ripple" or the "Company"), XRP II, LLC, and Bradley Garlinghouse.

2.      In an effort to assure consistent rulings and decisions and the avoidance of unnecessary duplication of effort, counsel for the respective parties in the Related Actions hereby enter into this Stipulation and [Proposed] Order Consolidating Related Actions and Related Matters (the "Stipulation").

3.      Counsel for the parties to this Stipulation include Robbins Arroyo LLP ("Robbins Arroyo") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") on behalf of plaintiff Vladi Zakinov; Robbins Arroyo on behalf of David Oconer (collectively, "Plaintiffs"); Skadden, Arps, Slate, Meagher & Flom LLP and Debevoise & Plimpton LLP on behalf of defendants Ripple Labs, Inc., XRP II, LLC, and Bradley Garlinghouse (collectively, "Defendants").

4.      The parties agree that it would be duplicative and wasteful of the Court's resources for Defendants named in the Related Actions to have to respond to the individual complaints prior to the agreed upon consolidation and in light of the anticipated filing of a consolidated complaint.  Therefore, the parties agree that Defendants need not respond to the individual complaints that have already been filed in this Court.

5.      On August 8, 2018, the Zakinov action was designated as complex.  On August 21, 2018, it was assigned to the Honorable Richard H. DuBois, Department 16, for all purposes. A complex case status conference in the Oconer action is set for August 29, 2018.

## CONSOLIDATION

6.      The following Related Actions are hereby consolidated for all purposes, including pre-trial proceedings and trial (the "Consolidated Action"):

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Zakinov v. Ripple Labs Inc.* | 18-CIV-02845 | 6/5/2018 |
| *Oconer v. Ripple Labs Inc.* | 18-CIV-03332 | 6/27/2018 |

- 1 -

1 | Every pleading filed in the Consolidated Action, or in any separate action included herein, shall

2 | bear the following caption:

3 | <div align="center">SUPERIOR COURT OF THE STATE OF CALIFORNIA</div>

4 | <div align="center">COUNTY OF SAN MATEO</div>

| | |
|---|---|
| IN RE RIPPLE LABS INC. LITIGATION | ) Lead Case No. 18-CIV-02845 |
| | ) |
| | ) (Consolidated with Case No. 18-CIV-03332) |
| This Document Relates To: | ) |
| | ) CLASS ACTION |
| ALL ACTIONS. | ) |
| | ) |

7.      The files of the Consolidated Action shall be maintained in one file under Master File No. 18-CIV-02845.

8.      Plaintiffs shall either designate a complaint as operative or file a Consolidated Complaint ("Consolidated Complaint") within 45 days after entry of this order, unless otherwise agreed upon by the parties.   If filed, the Consolidated Complaint shall be the operative complaint and shall supersede all complaints filed in any of the actions consolidated herein. Defendants shall respond to the operative complaint or Consolidated Complaint within 45 days after service, unless otherwise agreed by the parties.   In the event that Defendants file any motions directed at the operative complaint or Consolidated Complaint, the opposition and reply briefs shall be filed within 45 and 20 days, respectively, of the motions, unless otherwise agreed upon by the parties.   Counsel agrees to confer to select a hearing date.

<div align="center">**APPOINTMENT OF A LEADERSHIP STRUCTURE**</div>

9.      The Plaintiffs agree that Robbins Arroyo and Robbins Geller shall serve as Co-Lead Counsel for Plaintiffs ("Co-Lead Counsel") in the Consolidated Action, and Defendants take no position on the Court's appointment of Co-Lead Counsel for Plaintiffs or the responsibilities assumed by that Co-Lead Counsel.

10.      Plaintiffs agree that Co-Lead Counsel shall have sole authority to speak for Plaintiffs in matters regarding pre-trial procedure, trial, and settlement and shall make all work

<div align="center">- 2 -</div>

1  assignments in such manner as to facilitate the orderly and efficient prosecution of the
2  Consolidated Action and to avoid duplicative or unproductive effort.

3      11.    Plaintiffs agree that Co-Lead Counsel shall be responsible for coordinating all
4  activities and appearances on behalf of Plaintiffs.  No motion, request for discovery, or other
5  pre-trial or trial proceedings shall be initiated or filed by any Plaintiff except through Co-Lead
6  Counsel.

7      12.    Plaintiffs agree that Co-Lead Counsel shall be available and responsible for
8  communications to and from this Court, including distributing orders and other directions from
9  the Court to counsel, and shall be responsible for communication with Defendants' counsel on
10  matters of case administration and scheduling.  Co-Lead Counsel shall further be responsible for
11  creating and maintaining a master service list of all parties and their respective counsel.

12      13.    Defendants' counsel may rely upon all agreements made with Co-Lead Counsel,
13  or other duly authorized representative of Co-Lead Counsel, and such agreements shall be
14  binding on all Plaintiffs.

15                                          **RELATED MATTERS**

16      14.    This Order shall apply to each case, arising out of the same or similar
17  transactions and/or events as the Related Actions which is currently pending in, subsequently
18  filed in, remanded to, or transferred to this Court.

19      15.    When a case which properly belongs as part of the *In re Ripple Labs Inc.*
20  *Litigation*, Lead Case No. 18-CIV-02845, is hereafter or has been filed in, remanded to, or
21  transferred to this Court, counsel for the parties shall call such filing, remand, or transfer to the
22  attention of the clerk of this Court for purposes of moving the Court for an order consolidating
23  such case(s) with *In re Ripple Labs Inc. Litigation*, Lead Case No. 18-CIV-02845.  Counsel for
24  the parties will further assist in assuring that counsel for the parties in such subsequent action(s)
25  receive notice of this Order.

26
27
28

- 3 -

1    IT IS SO STIPULATED.

2    DATED: 8/22/18                     ROBBINS ARROYO LLP
                                        BRIAN J. ROBBINS
3                                       STEPHEN J. ODDO
                                        ERIC M. CARRINO
4

5

6                                       STEPHEN J. ODDO

7                                       600 B Street, Suite 1900
                                        San Diego, CA 92101
8                                       Telephone: (619) 525-3990
                                        Facsimile: (619) 525-3991
9                                       E-mail: brobbins@robbinsarroyo.com
                                               soddo@robbinsarroyo.com
10                                             ecarrino@robbinsarroyo.com

11                                      Proposed Co-Lead Counsel for Plaintiffs and
                                        Counsel for Plaintiffs Vladi Zakinov and
12                                      David Oconer

13   DATED: 8/22/18                     ROBBINS GELLER RUDMAN
                                          & DOWD LLP
14

15
                                        BRIAN O. O'MARA (229737)
16
                                        DAVID C. WALTON (167268)
17                                      BRIAN E. COCHRAN (286202)
                                        655 West Broadway, Suite 1900
18                                      San Diego, CA 92101
                                        Telephone: (619) 231-1058
19                                      Facsimile: (619) 231-7423
                                        E-mail: davew@rgrdlaw.com
20                                             bomara@rgrdlaw.com
                                               bcochran@rgrdlaw.com
21
                                        Proposed Co-Lead Counsel for Plaintiffs and
22                                      Counsel for Plaintiff Vladi Zakinov

23                                      SHAWN A. WILLIAMS (213113)
                                        Post Montgomery Center
24                                      One Montgomery Street, Suite 1800
                                        San Francisco, CA 94104
25                                      Telephone: (415) 288-4545
                                        Facsimile: (415) 288-4534
26                                      E-mail: shawnw@rgrdlaw.com

27                                      Additional counsel for Plaintiff Vladi Zakinov

28

- 4 -

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

DATED:  8/22/18

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

_Peter Morrison / by permission SJD_

PETER B. MORRISON

Peter B. Morrison
Virginia F. Milstead
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: peter.morrison@skadden.com
         virginia.milstead@skadden.com

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com

Mary Jo White (*pro hac vice* forthcoming)
Andrew J. Ceresney (*pro hac vice*
forthcoming)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
         aceresney@debevoise.com

Counsel for defendants Ripple Labs Inc., XRP
II, LLC, and Bradley Garlinghouse

1286406

- 5 -

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

## ORDER

The above Stipulation Consolidating Related Actions and Related Matters having been considered, and good cause appearing therefore,

IT IS SO ORDERED.

DATED: _8-29-18_

HONORABLE RICHARD H. DUBOIS
JUDGE OF THE SUPERIOR COURT

- 6 -

1

## DECLARATION OF SERVICE

2        I, the undersigned, declare:

3        1.       That declarant is and was, at all times herein mentioned, a citizen of the United

4   States and a resident of the County of San Diego, over the age of 18 years, and not a party to or

5   interest in the within action; that declarant's business address is 600 B Street, Suite 1900, San

6   Diego, California 92101.

7        2.       That on August 23, 2018, I served the following document(s):

8        STIPULATION AND [PROPOSED] ORDER CONSOLIDATING RELATED
         ACTIONS AND RELATED MATTERS
9

10   ____        By transmitting via facsimile the document(s) listed above to the fax
                 number(s) set forth on the attached Service List from fax number (619) 525-
11               3991 on this date before 5:00 p.m. The facsimile transmission was reported as
                 complete and without error.

12    X          By placing the document(s) listed above in a United States mailbox at San
                 Diego, California in a sealed envelope with postage thereon fully prepaid and
13               addressed to the parties listed on the attached Service List.

14   ____        By causing the document(s) listed above to be served by a courier service on
                 the following parties:
15

16   ____        By depositing in a box or other facility regularly maintained by UPS, an
                 express service carrier, or delivered to a courier or driver authorized by said
17               express service carrier to receive documents, in an envelope designated by the
                 said express service carrier, with delivery fees paid or provided for, addressed
18               to the parties on the attached Service List.

19   ____        Based on a court order or an agreement of the parties to accept service by e-
                 mail or electronic transmission, I sent the documents described herein to the
20               persons at the e-mail addresses on the attached service list.  I did not receive,
                 within a reasonable time after the transmission, any electronic message or
21               other indication that the transmission was unsuccessful.

22        3.       That there is a regular communication by mail between the place of mailing and

23   the places so addressed.

24        I declare under penalty of perjury under the laws of the State of California that the

25   foregoing is true and correct.  Executed this August 23, 2018, at San Diego, California.

26

27                                                                    KATHERINE B. SCHEELE

28

STIPULATION & [PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS & RELATED MATTERS

*Zakinov v. Ripple Labs Inc., et al.*, Case No. 18CIV02845;
*Oconer v. Ripple Labs Inc., et al.*, Case No. 18CIV03332

## COUNSEL FOR PLAINTIFFS

Brian J. Robbins
Stephen J. Oddo
Eric M. Carrino
ROBBINS ARROYO LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
        soddo@robbinsarroyo.com
        ecarrino@robbinsarroyo.com

*Counsel for Plaintiffs Vladi Zakinov and David
Oconer*

Shawn A. Williams
ROBBINS GELLER RUDMAN
    & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534
E-mail: shawnw@rgrdlaw.com

David C. Walton
Brian O. O'Mara
Brian E. Cochran
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
E-mail: davew@rgrdlaw.com
        bomara@rgrdlaw.com
        bcochran@rgrdlaw.com

*Counsel for Plaintiff Vladi Zakinov*

## COUNSEL FOR DEFENDANTS

Peter B. Morrison
Virginia F. Milstead
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: peter.morrison@skadden.com
        virginia.milstead@skadden.com

John Neukom
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: john.neukom@skadden.com

Mary Jo White
Andrew J. Ceresney
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836
Email: mjwhite@debevoise.com
        aceresney@debevoise.com

*Counsel for defendants Ripple Labs Inc., XRP
II, LLC, and Bradley Garlinghouse*

1278419

# EXHIBIT I



| Attorney or Party without Attorney (Name/Address) | FOR COURT USE ONLY |
|---|---|

Attorney or Party without Attorney (Name/Address)
John T. Jasnoch (281605)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone:  619-233-4565
State Bar No.: 281605
Attorney for:  Plaintiff

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN MATEO
400 COUNTY CENTER
REDWOOD CITY, CA 94063

Plaintiff
AVNER GREENWALD

Defendant
RIPPLE LABS, INC. et al.

Certificate Re Complex Case Designation

FOR COURT USE ONLY

**FILED**
SAN MATEO COUNTY

JUL 03 2018

Clerk of the Superior Court

By _____
DEPUTY CLERK

Case Number
18 CIV 03461

FILE BY FAX

## This certificate must be completed and filed with your Civil Case Cover Sheet if you have checked a Complex Case designation or Counter-Designation

1. In the attached Civil Case Cover Sheet, this case is being designated or counter-designated as a complex case [or as not a complex case] because at least one or more of the following boxes has been checked:

   ☑ Box 1 – Case type that is best described as being [or not being] provisionally complex civil litigation (i.e., antitrust or trade regulation claims, construction defect claims involving many parties or structures, securities claims or investment losses involving many parties, environmental or toxic tort claims involving many parties, claims involving mass torts, or insurance coverage claims arising out of any of the foregoing claims).

   ☐ Box 2 – Complex [or not complex] due to factors requiring exceptional judicial management

   ☐ Box 5 – Is [or is not] a class action suit.

2. This case is being so designated based upon the following supporting information [including, without limitation, a brief description of the following factors as they pertain to this particular case: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions



18–CIV–03461
CRCCD
Certificate Re: Complex Case Designation
1244168

www.sanmateocourt.org

pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision]:

(1), (2), (3), (4) and (6), this is a securities class action under the Securities Act of 1933 that

charges a company and certain of its officers and directors with unregistered sale of

securities to investors in violation of the Securities Act. Defendants will obtain separate

counsel; and there will be a large number of witnesses and a substantial amount of

documentary evidence. Plaintiff will seek class certification.

*(attach additional pages if necessary)*

3. Based on the above-stated supporting information, there is a reasonable basis for the complex case designation or counter-designation [or noncomplex case counter-designation] being made in the attached Civil Case Cover Sheet.

*****

I, the undersigned counsel or self-represented party, hereby certify that the above is true and correct and that I make this certification subject to the applicable provisions of California Code of Civil Procedure, Section 128.7 and/or California Rules of Professional Conduct, Rule 5-200 (B) and San Mateo County Superior Court Local Rules, Local Rule 2.30.

Dated: 07/03/18

John T. Jasnoch

[Type or Print Name]

[Signature of Party or Attorney For Party]

CV-59 [Rev. 1/06]                                                                 www.sanmateocourt.org

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
John T. Jasnoch (281605)
Scott+Scott Attorneys at Law LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
TELEPHONE NO.: 619-233-4565    FAX NO.: 619-233-0508
ATTORNEY FOR *(Name):* Plaintiff Avner Greenwald

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Southern Branch (Hall of Justice)

CASE NAME:
Greenwald v. Ripple Labs, Inc.

**FILED**
**SAN MATEO COUNTY**

JUL 03 2018

Clerk of the Superior Court
By _____
DEPUTY CLERK

CASE NUMBER:
**18CIV03461**

18 - CIV - 03461
CCES Civil Case Cover Sheet
1244163

| CIVIL CASE COVER SHEET | Complex Case Designation | JUDGE: |
|---|---|---|
| [✓] **Unlimited** (Amount demanded exceeds $25,000) [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[✓] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):*  There are two: 15 U.S.C. sections 77l and 77o
5. This case [✓] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 3, 2018
John T. Jasnoch
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

FILED BY FAX

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*

**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer*
            *or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
        *domain, landlord/tenant, or*
        *foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex*
    *case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-*
        *domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
    *above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
        *harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified*
    *above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

## NOTICE OF CASE MANAGEMENT CONFERENCE

Avner Greenwald

~~FILED~~
**SAN MATEO COUNTY**
JUL 0 3 2018
Clerk of the Superior Court
By ~~DEPUTY CLERK~~

vs.

Ripple Labs, Inc. & Fat,

18 - CIV - 03461
NCMC
Notice of Case Management Conference
1244169

Case No: **18 C I V 0 3 4 6 1**

Date: **NOV. 0 1 2018**

Time 9:00 a.m.

Dept. **21** --on Tuesday & Thursday

Dept. _____ --on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of the Court and local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

    a) Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).

    b) Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

    c) File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.

    d) Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30-days before the date set for the Case Management Conference.

2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3. Continuances of Case Management Conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation to ADR and Proposed Order (see attached form). If plaintiff files a Stipulation to ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10–days prior to the first scheduled Case Management Conference, the Case Management Conference will be continued for 90-days to allow parties time to complete their ADR session. The court will notify parties of their new Case Management Conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management Judge will issue orders at the conclusion of the conference that may include:

    a) Referring parties to voluntary ADR and setting an ADR completion date;

    b) Dismissing or severing claims or parties;

    c) Setting a trial date.

8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court's website at:  www.sanmateocourt.org

*Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall information).

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AVNER GREENWALD, Individually and on Behalf of All Others
Similarly Situated

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

RIPPLE LABS, INC., a Delaware corporation, XRP II, LLC, a South
Carolina Limited Liability Company, BRADLEY GARLINGHOUSE,

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |
| **F I L E D** |
| **SAN MATEO COUNTY** |
| JUL 0 3 2018 |
| Clerk of the Superior Court |
| By _____ |
| DEPUTY CLERK |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER |
|---|---|
| *(El nombre y dirección de la corte es):* San Mateo Superior Court | *(Número del Caso):* **18CIV03461** |
| 400 County Center, Redwood City, CA 94063 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John T. Jasnoch, 600 W. Broadway, Suite 3300, San Diego, CA 92101; 619-233-4565/

| DATE: JUL 0 3 2018 | | **RODINA M. CATALANO** | Clerk, by | | , Deputy |
|---|---|---|---|---|---|
| *(Fecha)* | | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

18 – CIV – 03461
SUM
Summons Issued / Filed
1244164

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (authorized person)

   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|
| Judicial Council of California | | *www.courtinfo.ca.gov* |
| SUM-100 [Rev. July 1, 2009] | | |

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Greenwald v. Ripple Labs, Inc., et al. | 18CIV03461 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff  ☑ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant

CHRISTIAN LARSEN, RON WILL, ANTOINETTE O'GORMAN, ERIC VAN MILTENBURG, SUSAN ATHEY, ZOE CRUZ, KEN KURSON, BEN LAWSKY, ANJA MANUEL, and TAKASHI OKITA,

Defendants.

Page 2 of 2

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**



**ERIOR COURT OF SAN MATEO COUNTY**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

| | |
|---|---|
| **AVNER GREENWALD**<br>Plaintiff (s)<br><br>vs.<br><br>**RIPPLE LABS, INC., A DELAWARE CORPORATION**<br>Defendant (s) | **Notice of Complex Case Status Conference**<br><br>Case No.: 18-CIV-03461        Date:   **9/5/2018**<br>Time:   **9:00 AM**<br>**Dept. PJ** |

Title: **AVNER GREENWALD  VS.  RIPPLE LABS, INC., A DELAWARE CORPORATION, ET AL**

You are hereby given notice of your Complex Case Status Conference.  The date, time and department have been written above.  At this conference, the Presiding Judge will decide whether this action is a complex case within the meaning of California Rules Court ("CRC"), Rule 3.400, subdivision (a) and whether it should be assigned to a single judge for all purposes.

1.  In accordance with applicable **San Mateo County Local Rule 2.30**, you are hereby ordered to:
    a.  **Serve** copies of this notice, your Civil Case Cover Sheet, and your Certificate Re: Complex Case Designation on all named parties in this action no later than service of your first appearance pleadings.
    b.  **Give reason notice** of the Complex Case Status Conference to all named parties in this action, even if they have not yet made a first appearance or been formally served with the documents listed in subdivision (a). Such notice shall be given in the same manner as required for an ex parte application pursuant to CRC 3.1203.

2.  **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned.  The Order to Show Cause hearing will be at the same time as the Complex Cause Status Conference.  Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

3.  An action is provisionally a complex case if it involves one or more of the following types of claims: (1) antitrust or trade regulation claims; (2) construction defect claims involving many parties or structures; (3) securities claims or investment losses involving many parties; (4) environmental or toxic tort claims involving many parties; (5) claims involving massive torts; (6) claims involving class actions; or (7) insurance coverage claims arising out of any of the claims listed in subdivisions (1) through (6).   The Court shall treat a provisionally complex action as a complex case until the Presiding Judge has the opportunities to decide whether the action meets the definition in CRC 3.400(a).

4.  Any party who files either a Civil Case Cover Sheet (pursuant to CRC 3.401) or counter or joinder Civil Case Cover Sheet (pursuant to CRC 3.402, subdivision (b) or (C)), designating an action as a complex case in Items 1,2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court. The certificate must include supporting information showing a reasonable basis for the complex case designation being sought.  Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues' (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision.

For further information regarding case management policies and procedures, see the court website at
www.sanmateocourt.org

* Telephone appearances at Complex Case Status Conference are available by contacting CourtCall, LLC, and
independent vendor, at least 5 business days prior to the scheduled conference.

**CLERK'S CERTIFICATE OF MAILING**

I hereby certify that I am the clerk of this court, not a party of this cause; that I served a copy of this notice on the below
date, by placing a copy thereof in separate sealed envelopes addressed to the address shown by the records of this court
as set forth above, and by then sealing said envelopes and depositing same, with postage fully pre-paid thereon, in the
United States Mail at Red wood City, California.

Date: 7/5/2018

Rodina M. Catalano,
Court Executive Officer/Clerk

By: _____

Antonio Geronimo,
Deputy Clerk

Copies mailed to:

JOHN T JASNOCH
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W BROADWAY STE 3300
SAN DIEGO CA  92101

Rev. Jun. 2016



q/s
PJ ln

**CORRECTED**
**SUMMONS**
*(CITACIÓN JUDICIAL)*

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

RIPPLE LABS, INC., a Delaware corporation, XRP II, LLC, a South
Carolina Limited Liability Company, BRADLEY GARLINGHOUSE,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

AVNER GREENWALD, Individually and on Behalf of All Others
Similarly Situated

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SAN MATEO COUNTY

JUL 0 6 2018

Clerk of the Superior Court
By _____
DEPUTY CLERK

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: San Mateo Superior Court *(El nombre y dirección de la corte es):* 400 County Center, Redwood City, CA 94063 | **CASE NUMBER:** *(Número del Caso):* 18CIV03461 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John T. Jasnoch, 600 W. Broadway, Suite 3300, San Diego, CA 92101, 619-233-4565

| DATE: *(Fecha):* JUL 0 6 2018 | RODINA M. CATALANO | Clerk, by *(Secretario)* | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

18 – CIV – 03461
SUM
Summons Issued / Filed
1248641

Page 1 of 1

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Greenwald v. Ripple Labs, Inc., et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

CHRISTIAN LARSEN,  RON WILL, ANTOINETTE O'GORMAN, ERIC VAN MILTENBURG, SUSAN ATHEY, ZOE CRUZ, KEN KURSON, BEN LAWSKY, ANJA MANUEL, and TAKASHI OKITA, Defendants.

Page 2 of 2

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* (CA 281605)<br>JOHN J. JASNOCH<br>SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>600 W. BROADWAY, SUITE 3300<br>SAN DIEGO, CA 92101<br>TELEPHONE NO: 619/233-4565   FAX NO. *(Optional)*: 619/233-0508<br>E-MAIL ADDRESS *(Optional)*: JJASNOCH@SCOTT-SCOTT.COM<br>ATTORNEY FOR *(Name)*: PLAINTIFF | FOR COURT USE ONLY<br><br>**FILED**<br>**SAN MATEO COUNTY**<br><br>AUG 8 2018<br><br>Clerk of the Superior Court<br>By<br>DEPUTY CLERK |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS: Hall of Justice, First Floor, Room A
CITY AND ZIP CODE: Redwood City, 94063
BRANCH NAME: Southern Branch

PLAINTIFF/PETITIONER: AVNER GREENWALD

DEFENDANT/RESPONDENT: RIPPLE LABS, INC.

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>18CIV03461 |

TO *(insert name of party being served):* Susan Athey in c/o Peter Morrison

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 26, 2018

JOHN T. JASNOCH
_____
(TYPE OR PRINT NAME)                          ► _____
                                              (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify):*
   Summons, Complaint, Civil Case Cover Sheet, Complex Case Designation, Case Management Conference.

*(To be completed by recipient):*

Date this form is signed: 08 - 08 - 18

Peter Morrison, Atty. for Susan Athey
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)          ► Peter B. Morrison / VFm
                                              _____
                                              (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
                                              ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 (Rev. January 1, 2005)    NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL    Page 1 of 1
Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

18 – CIV – 03461
NAR
Notice & Acknowledgment of Receipt of
1311027

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* (CA 281605)<br>JOHN J. JASNOCH<br>SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>600 W. BROADWAY, SUITE 3300<br>SAN DIEGO, CA 92101<br>TELEPHONE NO: 619/233-4565     FAX NO. *(Optional):* 619/233-0508<br>E-MAIL ADDRESS *(Optional):* JJASNOCH@SCOTT-SCOTT.COM<br>ATTORNEY FOR *(Name):* PLAINTIFF | FOR COURT USE ONLY<br><br>F I L E D<br>SAN MATEO COUNTY<br><br>AUG – 8 2018<br><br>Clerk of the Superior Court<br>By<br>DEPUTY CLERK |
|---|---|

FILE BY FAX

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS: Hall of Justice, First Floor, Room A
CITY AND ZIP CODE: Redwood City, 94063
BRANCH NAME: Southern Branch

PLAINTIFF/PETITIONER: AVNER GREENWALD

DEFENDANT/RESPONDENT: RIPPLE LABS, INC.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>18CIV03461 |
|---|---|

TO *(insert name of party being served):* Zoe Cruz in c/o Peter Morrison.

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 26, 2018

JOHN T. JASNOCH
(TYPE OR PRINT NAME)                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify):*
   Summons, Complaint, Civil Case Cover Sheet, Complex Case Designation, Case Management Conference.

*(To be completed by recipient):*

Date this form is signed: 08-08-18

Peter Morrison, Atty. for Zoe Cruz
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)                    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005]     **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**     Page 1 of 1<br>Code of Civil Procedure,<br>§§ 416.30, 417.10<br>www.courtinfo.ca.gov

18 – CIV – 03461
NAR
Notice & Acknowledgment of Receipt of
1311022

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): (CA 281605)<br>JOHN J. JASNOCH<br>SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>600 W. BROADWAY, SUITE 3300<br>SAN DIEGO, CA 92101<br>TELEPHONE NO: 619/233-4565   FAX NO. (Optional): 619/233-0508<br>E-MAIL ADDRESS (Optional): JJASNOCH@SCOTT-SCOTT.COM<br>ATTORNEY FOR (Name): PLAINTIFF | FOR COURT USE ONLY<br><br>**FILED**<br>SAN MATEO COUNTY<br><br>AUG – 8 2018<br><br>Clerk of the Superior Court<br>By<br>DEPUTY CLERK |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO<br>STREET ADDRESS: 400 County Center<br>MAILING ADDRESS: Hall of Justice, First Floor, Room A<br>CITY AND ZIP CODE: Redwood City, 94063<br>BRANCH NAME: Southern Branch | |
| PLAINTIFF/PETITIONER: AVNER GREENWALD | |
| DEFENDANT/RESPONDENT: RIPPLE LABS, INC. | |
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>18CIV03461 |

FILE BY FAX

TO (insert name of party being served): Bradley Garlinghouse in c/o Peter Morrison

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 26, 2018

JOHN T. JASNOCH
(TYPE OR PRINT NAME)

▶ (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other (specify):
   Summons, Complaint, Civil Case Cover Sheet, Complex Case Designation, Case Management Conference.

(To be completed by recipient):

Date this form is signed: 08 – 08 – 18

Peter Morrison, Atty. for Bradley Garlinghouse
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ Peter B. Morrison / kbm
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

18 – CIV – 03461
NAR
Notice & Acknowledgment of Receipt of
1311029

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): (CA 281605)<br>JOHN J. JASNOCH<br>SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>600 W. BROADWAY, SUITE 3300<br>SAN DIEGO, CA 92101<br>TELEPHONE NO.: 619/233-4565          FAX NO. (Optional): 619/233-0508<br>E-MAIL ADDRESS (Optional): JJASNOCH@SCOTT-SCOTT.COM<br>ATTORNEY FOR (Name): PLAINTIFF | FOR COURT USE ONLY<br><br>F I L E D<br>SAN MATEO COUNTY<br><br>AUG - 8 2018<br><br>Clerk of the Superior Court<br>By _____<br>DEPUTY CLERK |

FILE BY FAX

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS: Hall of Justice, First Floor, Room A
CITY AND ZIP CODE: Redwood City, 94063
BRANCH NAME: Southern Branch

PLAINTIFF/PETITIONER: AVNER GREENWALD

DEFENDANT/RESPONDENT: RIPPLE LABS, INC.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>18CIV03461 |

TO (insert name of party being served): Ken Kurson in c/o Peter Morrison

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 26, 2018

JOHN T. JASNOCH
(TYPE OR PRINT NAME)                    ►                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other (specify):

   Summons, Complaint, Civil Case Cover Sheet, Complex Case Designation, Case Management Conference.


(To be completed by recipient):

Date this form is signed: 08 - 08 -18

Peter Morrison, Atty. for Ken Kurson               ►     Peter B. Morrison / vom
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)              ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

18 – CIV – 03461
NAR
Notice & Acknowledgment of Receipt of
1311017

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): (CA 281605)<br>JOHN J. JASNOCH<br>SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>600 W. BROADWAY, SUITE 3300<br>SAN DIEGO, CA 92101<br>TELEPHONE NO: 619/233-4565   FAX NO. (Optional): 619/233-0508<br>E-MAIL ADDRESS (Optional): JJASNOCH@SCOTT-SCOTT.COM<br>ATTORNEY FOR (Name): PLAINTIFF | FOR COURT USE ONLY<br><br>F I L E D<br>SAN MATEO COUNTY<br><br>AUG – 8 2018<br>Clerk of the Superior Court<br>By<br>DEPUTY CLERK |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS: Hall of Justice, First Floor, Room A
CITY AND ZIP CODE: Redwood City, 94063
BRANCH NAME: Southern Branch

PLAINTIFF/PETITIONER: AVNER GREENWALD

DEFENDANT/RESPONDENT: RIPPLE LABS, INC.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>18CIV03461 |

TO (insert name of party being served): Christian Larsen in c/o Peter Morrison

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 26, 2018

JOHN T. JASNOCH
(TYPE OR PRINT NAME)                                          (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other (specify):

Summons, Complaint, Civil Case Cover Sheet, Complex Case Designation, Case Management Conference.


(To be completed by recipient):

Date this form is signed: 08 - 08 - 18

Peter Morrison: Atty. for Christian Larsen
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)



(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Page 1 of 1
Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

18 – CIV – 03461
NAR
Notice & Acknowledgment of Receipt of
1310986

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* (CA 281605) | FOR COURT USE ONLY |
|---|---|
| JOHN J. JASNOCH<br>SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>600 W. BROADWAY, SUITE 3300<br>SAN DIEGO, CA 92101<br>TELEPHONE NO: 619/233-4565   FAX NO. *(Optional):* 619/233-0508<br>E-MAIL ADDRESS *(Optional):* JJASNOCH@SCOTT-SCOTT.COM<br>ATTORNEY FOR *(Name):* PLAINTIFF | **FILED**<br>SAN MATEO COUNTY<br>AUG - 8 2018<br>Clerk of the Superior Court<br>By _____<br>DEPUTY CLERK |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS: Hall of Justice, First Floor, Room A
CITY AND ZIP CODE: Redwood City, 94063
BRANCH NAME: Southern Branch

PLAINTIFF/PETITIONER: AVNER GREENWALD

DEFENDANT/RESPONDENT: RIPPLE LABS, INC.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>18CIV03461 |
|---|---|

TO *(insert name of party being served):* Ben Lawsky in c/o Peter Morrison

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 26, 2018

JOHN T. JASNOCH
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify):*
   Summons, Complaint, Civil Case Cover Sheet, Complex Case Designation, Case Management Conference.

*(To be completed by recipient):*

Date this form is signed: 08 - 08 -18

Peter Morrison, Atty. for Ben Lawsky
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ Peter B Morrison / VDM
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1.

NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL
Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

18 – CIV – 03461
NAR
Notice & Acknowledgment of Receipt of
1311000

POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* (CA 281605)<br>JOHN J. JASNOCH<br>SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>600 W. BROADWAY, SUITE 3300<br>SAN DIEGO, CA 92101<br>　TELEPHONE NO.: 619/233-4565　　FAX NO. *(Optional):* 619/233-0508<br>E-MAIL ADDRESS *(Optional):* JJASNOCH@SCOTT-SCOTT.COM<br>ATTORNEY FOR *(Name):* PLAINTIFF | FOR COURT USE ONLY<br><br>**FILED**<br>SAN MATEO COUNTY<br><br>AUG – 8 2018<br><br>Clerk of the Superior Court<br><br>By<br>　　　　DEPUTY CLERK |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO<br>　STREET ADDRESS: 400 County Center<br>　MAILING ADDRESS: Hall of Justice, First Floor, Room A<br>　CITY AND ZIP CODE: Redwood City, 94063<br>　BRANCH NAME: Southern Branch | |
| PLAINTIFF/PETITIONER: AVNER GREENWALD<br><br>DEFENDANT/RESPONDENT: RIPPLE LABS, INC. | |
| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>18CIV03461 |

FILE BY FAX

TO *(insert name of party being served):* Anja Manuel in c/o Peter Morrison

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 26, 2018

JOHN T. JASNOCH
　　(TYPE OR PRINT NAME)　　　　　　　　　▶ _____
　　　　　　　　　　　　　　　　　　　(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*
　　Summons, Complaint, Civil Case Cover Sheet, Complex Case Designation, Case Management
　　Conference.

*(To be completed by recipient):*

Date this form is signed: 08-08-18

Peter Morrison, Atty. for Anja Manuel
　(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY　　　　　▶ _____
　　ON WHOSE BEHALF THIS FORM IS SIGNED)　　　　　　　　　(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
　　　　　　　　　　　　　　　　　　　　　ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

18 – CIV – 03461
NAR
Notice & Acknowledgment of Receipt of
1310992

POS-016

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* (CA 281605) | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* (CA 281605)
JOHN J. JASNOCH
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. BROADWAY, SUITE 3300
SAN DIEGO, CA 92101
  TELEPHONE NO: 619/233-4565   FAX NO. *(Optional):* 619/233-0508
E-MAIL ADDRESS *(Optional):* JJASNOCH@SCOTT-SCOTT.COM
ATTORNEY FOR *(Name):* PLAINTIFF

**F I L E D**
**SAN MATEO COUNTY**

AUG - 8 2018

Clerk of the Superior Court

By _____
      DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
  STREET ADDRESS: 400 County Center
  MAILING ADDRESS: Hall of Justice, First Floor, Room A
  CITY AND ZIP CODE: Redwood City, 94063
  BRANCH NAME: Southern Branch

PLAINTIFF/PETITIONER: AVNER GREENWALD

DEFENDANT/RESPONDENT: RIPPLE LABS, INC.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 18CIV03461 |
|---|---|

TO *(insert name of party being served):* Eric Van Miltenburg in c/o Peter Morrison

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 26, 2018

JOHN T. JASNOCH
   (TYPE OR PRINT NAME)               (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify):*
    Summons, Complaint, Civil Case Cover Sheet, Complex Case Designation, Case Management
    Conference.

*(To be completed by recipient):*

Date this form is signed: 08-08-18

Peter Morrison, Atty. for Eric Van Miltenburg
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,       (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)         ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use   **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**   Code of Civil Procedure,
Judicial Council of California                                          §§ 415.30, 417.10
POS-016 [Rev. January 1, 2005]                                               www.courtinfo.ca.gov

18 - CIV - 03461
NAR
Notice & Acknowledgment of Receipt of
1310979

POS-015

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* (CA 281605)
JOHN J. JASNOCH
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. BROADWAY, SUITE 3300
SAN DIEGO, CA 92101
TELEPHONE NO.: 619/233-4565    FAX NO. *(Optional):* 619/233-0508
E-MAIL ADDRESS *(Optional):* JJASNOCH@SCOTT-SCOTT.COM
ATTORNEY FOR *(Name):* PLAINTIFF

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS: Hall of Justice, First Floor, Room A
CITY AND ZIP CODE: Redwood City, 94063
BRANCH NAME: Southern Branch

**FOR COURT USE ONLY**

**FILED**
SAN MATEO COUNTY

AUG - 8 2018

Clerk of the Superior Court
By _____
DEPUTY CLERK

FILED BY FAX

PLAINTIFF/PETITIONER: AVNER GREENWALD

DEFENDANT/RESPONDENT: RIPPLE LABS, INC.

CASE NUMBER:
18CIV03461

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL**

TO *(Insert name of party being served):* Antoinette O'Gorman in c/o Peter Morrison

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 26, 2018

JOHN T. JASNOCH
(TYPE OR PRINT NAME)

(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify):*
   Summons, Complaint, Civil Case Cover Sheet, Complex Case Designation, Case Management Conference.

*(To be completed by recipient):*

Date this form is signed: 08 -08 -18

Peter Morrison, Atty. for Antoinette O'Gorman
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

18 – CIV – 03461
NAR
Notice & Acknowledgment of Receipt of
1311018

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): (CA 281605)<br>JOHN J. JASNOCH<br>SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>600 W. BROADWAY, SUITE 3300<br>SAN DIEGO, CA 92101<br>TELEPHONE NO: 619/233-4565    FAX NO. (Optional): 619/233-0508<br>E-MAIL ADDRESS (Optional): JJASNOCH@SCOTT-SCOTT.COM<br>ATTORNEY FOR (Name): PLAINTIFF | FOR COURT USE ONLY<br>**FILED**<br>SAN MATEO COUNTY<br>AUG - 8 2018<br>Clerk of the Superior Court<br>By<br>DEPUTY CLERK |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS: Hall of Justice, First Floor, Room A
CITY AND ZIP CODE: Redwood City, 94063
BRANCH NAME: Southern Branch

PLAINTIFF/PETITIONER: AVNER GREENWALD

DEFENDANT/RESPONDENT: RIPPLE LABS, INC.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>18CIV03461 |
|---|---|

TO (insert name of party being served): Takashi Okita in c/o Peter Morrison

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 26, 2018

JOHN T. JASNOCH
(TYPE OR PRINT NAME)                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other (specify):
   Summons, Complaint, Civil Case Cover Sheet, Complex Case Designation, Case Management Conference.

(To be completed by recipient):

Date this form is signed: 08 - 08 - 18

Peter Morrison, Atty. for Takashi Okita
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
                                              ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

18 — CIV — 03461
NAR
Notice & Acknowledgment of Receipt of
1310981

POS-015

| | FOR COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* (CA 281605)<br>JOHN J. JASNOCH<br>SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>600 W. BROADWAY, SUITE 3300<br>SAN DIEGO, CA 92101<br>TELEPHONE NO: 619/233-4565     FAX NO. *(Optional):* 619/233-0508<br>E-MAIL ADDRESS *(Optional):* JJASNOCH@SCOTT-SCOTT.COM<br>ATTORNEY FOR *(Name):* PLAINTIFF | **FILED**<br>SAN MATEO COUNTY<br>AUG – 8 2018<br>Clerk of the Superior Court<br>By _____<br>DEPUTY CLERK |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS: Hall of Justice, First Floor, Room A
CITY AND ZIP CODE: Redwood City, 94063
BRANCH NAME: Southern Branch

PLAINTIFF/PETITIONER: AVNER GREENWALD

DEFENDANT/RESPONDENT: RIPPLE LABS, INC.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>18CIV03461 |
|---|---|

TO *(insert name of party being served):* Ron Will in c/o Peter Morrison

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: July 26, 2018

JOHN T. JASNOCH
(TYPE OR PRINT NAME)                          (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify):*
   Summons, Complaint, Civil Case Cover Sheet, Complex Case Designation, Case Management Conference.

*(To be completed by recipient):*

Date this form is signed: 08 – 08 – 18

Peter Morrison, Atty. for Ron Will
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | Page 1 of 1 |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 416.30, 417.10<br>www.courtinfo.ca.gov |

18 – CIV – 03461
NAR
Notice & Acknowledgment of Receipt of
1310077



1  PETER B. MORRISON (SBN 230148)
   peter.morrison@skadden.com
2  VIRGINIA F. MILSTEAD (SBN 234578)
   virginia.milstead@skadden.com
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
4  Los Angeles, CA 90071
   Telephone: (213) 687-5000
5  Facsimile:  (213) 687-5600

6  JOHN NEUKOM (SBN 275887)
   john.neukom@skadden.com
7  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   525 University Avenue, Suite 1400
8  Palo Alto, California 94301
   Telephone: (650) 470-4500
9  Facsimile:  (650) 470-4570

10 Attorneys for Defendants
   Ripple Labs Inc., XRP II, LLC, Bradley
11 Garlinghouse, Christian Larsen, Ron Will,
   Antoinette O'Gorman. Eric van Miltenburg,
12 Susan Athey, Zoe Cruz, Ken Kurson, Ben
   Lawsky, Anja Manuel, and Takashi Okita

13

**ENDORSED FILED**
**SAN MATEO COUNTY**

AUG 0 9 2018

Clerk of the Superior Court
By: ANTONIO R. GERONIMO
Deputy Clerk

14                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15                        **COUNTY OF SAN MATEO**

16 AVNER GREENWALD, Individually and on    )   CASE NO.: 18-CIV-03461
   Behalf of All Others Similarly Situated,  )
17                                            )   **PROOF OF SERVICE**
                             Plaintiff,       )
18                                            )
                                              )
19               v.                           )
                                              )
20 RIPPLE LABS INC., et al.,                  )
                                              )
21                           Defendants.      )
                                              )

22

23

24

25

26

27

28

―――――――――――――――――――――――――――――――――――――――――
                        PROOF OF SERVICE

1

**PROOF OF SERVICE**

2    STATE OF CALIFORNIA, COUNTY OF SANTA CLARA

3        I am employed in the county of Santa Clara, State of California.  I am over the age of 18
     and not a party to the within action; my business address is 525 University Ave., Palo Alto, CA
4    94301.

5        On August 9, 2018, I served the documents described as:

6
     **NOTICE TO ADVERSE PARTY AND CLERK OF STATE COURT OF REMOVAL OF
7    ACTION TO FEDERAL COURT**

8

9    on the interested parties in this action addressed as follows:

10   JOHN T. JASNOCH                          THOMAS L. LAUGHLIN, IV
     SCOTT+SCOTT                              RHIANA SWARTZ
11   ATTORNEYS AT LAW LLP                     SCOTT+SCOTT
     600 W. Broadway, Suite 3300             ATTORNEYS AT LAW LLP
12   San Diego, CA 92101                      The Helmsley Building
                                              230 Park Avenue, 17th Floor
13                                            New York, NY 10169

14
     ☒    **(BY US MAIL)** I am readily familiar with the firms' practice for the collection and
15   processing of correspondence for mailing with the United States Postal Service and the fact that the
     correspondence would be deposited with the United States Postal Service that same day in the
16   ordinary course of business; on this date, the above-referenced correspondence was placed for
     deposit at Palo Alto, California and placed for collection and mailing following ordinary business
17   practices.

18       I declare under penalty of perjury under the laws of the State of California that the above is
     true and correct.
19
         Executed on August 9, 2018, at Palo Alto, California.
20

21   _____          _____
            Alissa Turnipseed                           Signature
22          Type or Print Name

23

24

25

26

27

28

PROOF OF SERVICE

1  PETER B. MORRISON (SBN 230148)
   peter.morrison@skadden.com
2  VIRGINIA F. MILSTEAD (SBN 234578)
   virginia.milstead@skadden.com
3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
4  Los Angeles, CA 90071
   Telephone: (213) 687-5000
5  Facsimile:  (213) 687-5600

6  JOHN NEUKOM (SBN 275887)
   john.neukom@skadden.com
7  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   525 University Avenue, Suite 1400
8  Palo Alto, California 94301
   Telephone: (650) 470-4500
9  Facsimile:  (650) 470-4570

10  Attorneys for Defendants
    Ripple Labs Inc., XRP II, LLC, Bradley
11  Garlinghouse, Christian Larsen, Ron Will,
    Antoinette O'Gorman, Eric van Miltenburg,
12  Susan Athey, Zoe Cruz, Ken Kurson, Ben
    Lawsky, Anja Manuel, and Takashi Okita

13

**FILED**
**SAN MATEO COUNTY**

AUG - 9 2018

Clerk of the Superior Court
By _____
        DEPUTY CLERK

14            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15                      **COUNTY OF SAN MATEO**

16  AVNER GREENWALD, Individually and on          )   CASE NO.: 18-CIV-03461
17  Behalf of All Others Similarly Situated,      )
                                                  )   **NOTICE TO ADVERSE PARTY AND**
18                             Plaintiff,         )   **CLERK OF STATE COURT OF**
                                                  )   **REMOVAL OF ACTION TO FEDERAL**
19             v.                                 )   **COURT**
                                                  )
20  RIPPLE LABS INC., et al.,                     )
                                                  )
21                             Defendants.        )
                                                  )   18 – CIV – 03461
22                                                )   NORE
                                                  )   Notice of Removal of Entire Case to Federal Cou
23                                                )   1312098
                                                  )
24

25

26

27

28

---

NOTICE TO ADVERSE PARTY AND STATE COURT OF REMOVAL OF ACTION TO FEDERAL COURT
CASE NO. 18-CIV-03461

1  TO THE CLERK OF THE ABOVE-TITLED COURT, ALL PARTIES, AND THEIR

2  ATTORNEYS OF RECORD:

3  PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. § 1446, Defendants Ripple Labs

4  Inc., XRP II, LLC, Bradley Garlinghouse, Christian Larsen, Ron Will, Antoinette O'Gorman, Eric

5  van Miltenburg, Susan Athey, Zoe Cruz, Ken Kurson, Ben Lawsky, Anja Manuel, and Takashi

6  Okita removed the above-captioned matter to the United States District Court for the Northern

7  District of California on August 8, 2018. A true and correct copy of the Notice of Removal filed in

8  the federal court is appended hereto as Exhibit A.

9

10  DATED: August 9, 2018

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

11

12

By: _____
                     Peter B. Morrison
                   Attorney for Defendants

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
2 | VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
3 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
4 | Los Angeles, CA 90071
Telephone: (213) 687-5000
5 | Facsimile: (213) 687-5600

6 | JOHN NEUKOM (SBN 275887)
john.neukom@skadden.com
7 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
8 | Palo Alto, California 94301
Telephone: (650) 470-4500
9 | Facsimile: (650) 470-4570

10 | Attorney for Defendants
Ripple Labs Inc., XRP II, LLC, Bradley
11 | Garlinghouse, Christian Larsen, Ron Will,
Antoinette O'Gorman, Eric van Miltenburg,
12 | Susan Athey, Zoe Cruz, Ken Kurson, Ben
Lawsky, Anja Manuel, and Takashi Okita

13 |

14 | **UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15 |

16 | AVNER GREENWALD, Individually And On )   CASE NO.: 18-cv-4790
Behalf Of All Others Similarly Situated, )
17 |                                        )   CLASS ACTION
                           Plaintiff,     )
18 |                                        )   **NOTICE OF REMOVAL**
                 v.                        )
19 |                                        )
RIPPLE LABS INC., et al.,                  )
20 |                                        )
                           Defendants.     )
21 |                                        )
                                           )
22 |                                        )
                                           )
23 |                                        )
                                           )
24 |                                        )
                                           )
25 |

26 |

27 |

28 |

---

NOTICE OF REMOVAL                                                          Case No. 18-cv-4790

1

## TABLE OF CONTENTS

2
PAGE

3  I.      INTRODUCTION ............................................................................................... 1

4  II.     REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT ..................... 2

5  III.    SECTION 22(A) OF THE SECURITIES ACT DOES NOT BAR REMOVAL ................... 3

6          A.    Luther Does Not Bar Removal Here.......................................................... 4

7          B.    Luther Has Been Abrogated By the Supreme Court................................... 6

8          C.    Luther Should Be Reconsidered ............................................................... 7

9  IV.     THIS REMOVAL NOTICE IS TIMELY AND SATISFIES ALL
           PREREQUISITES. ........................................................................................... 10
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL                                        Case No. 18-cv-4790

1

# TABLE OF AUTHORITIES

2

**CASES**                                                                                    **PAGE(S)**

3  Broadway Grill, Inc. v. Visa Inc.,
      856 F.3d 1274 (9th Cir. 2017) ...................................................................... 2
4

   California Public Employees Retirement System v. WorldCom, Inc.,
5      368 F.3d 86 (2d Cir. 2004) ........................................................................... 9

6  Cyan, Inc. v. Beaver County Employees Retirement Fund,
      138 S. Ct. 1061 (2018) ................................................................................. 4
7

   Dart Cherokee Basin Operating Co. v. Owens,
8      135 S. Ct. 547 (2014) ............................................................................... 6, 7

9  FDIC v. Countrywide Financial Corp.,
      No. 11-CV-10400-MRP-MANx, 2012 WL 12897152 (C.D. Cal. Mar. 20, 2012) ........................ 9
10

   Holt v. Noble House Hotels & Resort, Ltd.,
11     No. 17CV2246-MMA (BLM), 2018 WL 539176 (S.D. Cal. Jan. 23, 2018) ................................ 3

12 Jordan v. Nationstar Mortgage LLC,
      781 F.3d 1178 (9th Cir. 2015) ................................................................... 6, 7
13

   Katz v. Gerardi,
14     552 F.3d 558 (7th Cir. 2009) ............................................................... 7, 8, 9

15 Life of the South Insurance Co. v. Carzell,
      851 F.3d 1341 (11th Cir. 2017) ................................................................... 4
16

   Luther v. Countrywide Home Loans Servicing LP,
17     533 F.3d 1031 (9th Cir. 2008) ...........................................................passim

18 Miller v. Gammie,
      335 F.3d 889 (9th Cir. 2003) ....................................................................... 6
19

   Morrison v. National Australia Bank Ltd.,
20     561 U.S. 247 (2010)..................................................................................... 5

21 New Jersey Carpenters Vacation Fund v. HarborView Mortgage Loan Trust 2006-4,
      581 F. Supp. 2d 581(S.D.N.Y. 2008) .......................................................... 5, 7
22

   Public Employees Retirement System of Mississippi v. Morgan Stanley,
23     605 F. Supp. 2d 1073 (C.D. Cal. 2009) ........................................................ 9

24 Rossetti v. Stearn's Products, Inc.,
      No. CV 16-1875-GW (SSx), 2016 WL 3277295 (C.D. Cal. June 6, 2016) .................... 3
25

   Russello v. United States,
26     464 U.S. 16 (1983)..................................................................................... 9

27 SEC v. Glenn W. Turner Enterprises, Inc.,
      474 F.2d 476 (9th Cir. 1973) ....................................................................... 8
28

ii

U.S. Industries, Inc. v. Gregg,
    348 F. Supp. 1004 (D. Del. 1972), rev'd on other grounds, 540 F.2d 142 (3d Cir. 1976) ............ 8

United States v. Providence Journal Co.,
    485 U.S. 693 (1988)..........................................................................................................................9

**STATUTES**

15 U.S.C. § 77p.............................................................................................................................3, 4

15 U.S.C. § 77v.............................................................................................................................3, 4

28 U.S.C. § 1332.......................................................................................................................passim

28 U.S.C. § 1441........................................................................................................................... 8, 9

28 U.S.C. § 1446........................................................................................................................... 1, 10

28 U.S.C. § 1453.......................................................................................................................passim

**OTHER AUTHORITIES**

2 McLaughlin on Class Actions § 12:6 (14th ed. 2017) ............................................................... 9

15 Moore's Federal Practice – Civil § 102.73 (2018) ................................................................. 4

16 Moore's Federal Practice – Civil § 107.91[1][b] (2018) ...................................................... 7

NOTICE OF REMOVAL                                                                     Case No. 18-cv-4790

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE **NORTHERN DISTRICT OF CALIFORNIA**: Please take notice that Defendants Ripple Labs Inc. ("Ripple"), XRP II, LLC ("XRP II"), Bradley Garlinghouse, Christian Larsen, Ron Will, Antoinette O'Gorman, Eric van Miltenburg, Susan Athey, Zoe Cruz, Ken Kurson, Ben Lawsky, Anja Manuel, and Takashi Okita (collectively, "Defendants"), by and through their undersigned attorneys, hereby remove the above-captioned civil action, and all claims and causes of action therein, from the Superior Court of the State of California, County of San Mateo, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1332(d) and 1453. As required by 28 U.S.C. § 1446(a), all process, pleadings, and orders served on Defendants in the action to date are attached hereto as Exhibit A. As the requisite "short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), Defendants state as follows:

## I.    INTRODUCTION

1.    This action arises out of Plaintiff's alleged purchase of a virtual currency, XRP, on "global, online cryptocurrency exchanges." (Compl. ¶¶ 14, 78-79.) Plaintiff does not allege that he lacked information about the nature of these transactions. Nevertheless, Plaintiff claims that he was somehow injured because Defendants were allegedly required to register XRP as a "security" with the Securities & Exchange Commission ("SEC") but failed to do so.

2.    On July 3, 2018, Plaintiff filed a putative class action complaint in the Superior Court of California, County of San Mateo, purporting to sue on his own behalf and on behalf of "all persons or entities who purchased XRP from July 3, 2015 through the present." (Compl. ¶ 87.) Plaintiff asserts claims under Sections 5, 12(a)(1), and 15 of the Securities Act of 1933 ("Securities Act"). Plaintiff seeks, among other things, rescission of XRP purchases and/or damages (Compl. at 21(C)(D)) and a constructive trust over the proceeds of Defendants' alleged sales of XRP (Compl. at 21(G)).

3.    Defendants now remove this putative class action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1453. The Court has jurisdiction over the claims pursuant to 28 U.S.C. § 1332(d).

1

## II.    REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT

4.    This alleged nationwide securities action falls within the original jurisdiction of this Court under CAFA.  Pursuant to CAFA, a putative class action may be removed to the appropriate federal district court if (1) the action purports to be a "class" action brought on behalf of 100 or more members; (2) any member of a class of plaintiffs is a citizen of a state different from any defendant or any member of the class is a member of a foreign state and any defendant is a citizen of a state; and (3) the amount in controversy exceeds $5 million.  See 28 U.S.C. §§ 1332(d)(2), (2)(A), (5)(B), 1453(b).  This action meets each of those requirements.

5.    *Class exceeds 100 members.*  First, this is an alleged class action brought on behalf of over 100 members.  Plaintiff purports to assert claims on behalf of a "class" consisting of "thousands of members."  (Compl. ¶¶ 87, 89.)  That well exceeds the requirements of CAFA.  See 28 U.S.C. § 1332(d)(1)(B), (5)(B).

6.    *Minimal Diversity.*  Second, minimal diversity of citizenship exists (i.e., at least one class member plaintiff has a different citizenship from any of the defendants), as required by Section 1332(d)(2)(A).  On the one hand, at least three of the Defendants are allegedly citizens of California.  (Compl. ¶¶ 15-27.)  On the other hand, there are members of the putative class who are citizens of states other than California or citizens of foreign states, including Plaintiff, who is a resident of Israel.  (Compl. ¶ 14.)  The Complaint purports to be brought on behalf of "all persons or entities who purchased XRP from July 3, 2015 through the present" without any geographic limitation.  (Compl. ¶ 87.)  The Complaint further alleges that Defendants have sold XRP to putative class members on "global, online cryptocurrency exchanges," which are accessible on the internet and therefore throughout the United States and the world.  (Compl. ¶¶ 78-79.)  Additionally, the Complaint alleges that "[b]y way of the internet, including Ripple Labs' website, Twitter, and the over 50 cryptocurrency exchanges that trade XRP, interstate means are used in connection with the offer and sale of XRP."  (Compl. ¶ 77.)  Given these allegations, citizens of states other than California or citizens of foreign states, including Plaintiff himself, have undoubtedly purchased XRP.  Therefore, members of the putative class are citizens of states different from Defendants.  See, e.g., Broadway Grill, Inc. v. Visa Inc., 856 F.3d 1274, 1276 (9th

Cir. 2017) (concluding that minimal diversity was satisfied when class definition, as pleaded, included a nationwide class and many non-citizens of California); Rossetti v. Stearn's Prods., Inc., 2016 WL 3277295, at *1-2 (C.D. Cal. June 6, 2016) (action pled as a nationwide class satisfied minimal diversity requirement)..

       7.    ***Amount in Controversy***.  Third, this action meets CAFA's amount-in-controversy requirement of $5 million. 28 U.S.C. § 1332(d)(6).  Among other things, Plaintiff seeks the rescission of Defendants' alleged sales of XRP to putative class members.  (Compl. at 21(C).) Plaintiff alleges that in the first quarter of 2018 alone, "Defendants sold at least $167.7 million worth of XRP." (Compl. ¶ 52.)  If all such sales were rescinded, the amount in controversy would exceed $5 million.  While Defendants strongly deny that Plaintiff or any putative class members are entitled to recover any amount (or any other relief), Plaintiff plainly seeks to recover an aggregate amount over $5 million.

       8.    Moreover, Plaintiff seeks a constructive trust over the proceeds of Defendants' alleged sales of XRP.  (Compl. at 21(G).)  Based on the allegations in the Complaint, this amount is at least $167.7 million, in excess of the $5 million minimum.  (Compl. ¶ 52); see also Holt v. Noble House Hotels & Resort, Ltd., 2018 WL 539176, at *4 (S.D. Cal. Jan. 23, 2018) (considering amount over which plaintiff was seeking a constructive trust and disgorgement in assessing amount in controversy).

       9.    ***Exceptions***.  None of the exceptions to removal set forth in CAFA applies to bar removal here.  This action does not (i) involve a "covered security," as defined by 15 U.S.C. § 77p(f)(3); (ii) relate to the internal affairs or governance of a corporation and arise under the laws of the state in which such corporation was formed; or (iii) relate to the rights, duties, and obligations relating to or created by or pursuant to any security.  See 28 U.S.C. § 1453(d)(1)-(3).

## III.    SECTION 22(A) OF THE SECURITIES ACT DOES NOT BAR REMOVAL

      10.    The fact that Plaintiff purports to bring claims under the Securities Act does not preclude removal here.  Section 22(a) of the Securities Act ("Section 22(a)") provides, "Except as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."  15

1   U.S.C. § 77v(a).  Section 22(a) is known as a removal bar.  Although the Supreme Court recently

2   concluded that the exception to the removal bar in section 77p(c)—a reference to the Securities

3   Litigation Uniform Standards Act ("SLUSA")—does not permit removal of class actions alleging

4   only Securities Act violations, Cyan, Inc. v. Beaver County Employees Retirement Fund, 138 S.

5   Ct. 1061, 1075-76 (2018), the Supreme Court has not prohibited removal of class actions asserting

6   Securities Act claims on the basis of CAFA, which expressly permits removal.

7       **A.**    **Luther Does Not Bar Removal Here**

8       11.    Defendants expressly acknowledge the decision of the United States Court of

9   Appeals for the Ninth Circuit in Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031,

10  1034 (9th Cir. 2008).  In Luther, the plaintiff asserted claims under the Securities Act.  See id. at

11  1032-33.  The court held that a class action brought in state court alleging violations of the

12  Securities Act was not removable even though it met the requirements of CAFA.  Id. at 1034.  But

13  Luther involved a removal based on minimum diversity between citizens of the United States.  Id.

14  1033-34. It did not address a situation where, as here, CAFA permitted removal based not only on

15  minimal diversity jurisdiction, but also on alienage jurisdiction because the Securities Act class

16  action was brought by a citizen of a foreign state on behalf of a purportedly worldwide class of

17  persons who purchased an alleged security from "global, online cryptocurrency exchanges."

18  (Compl. ¶ 79.)

19      12.    This distinction is substantively important.  "[T]he major purpose of alienage

20  jurisdiction is to promote international relations by assuring other countries that litigation involving

21  their nationals will be treated at the national level."  Life of the S. Ins. Co. v. Carzell, 851 F.3d

22  1341, 1347 (11th Cir. 2017) (alteration in original) (applying alienage provisions of CAFA); see

23  also 15 Moore's Federal Practice – Civil § 102.73 (2018) ("Alienage jurisdiction was intended to

24  provide the federal courts with a form of protective jurisdiction over matters implicating

25  international relations, in which the national interest is paramount," including when

26  "entanglements with other sovereigns that might ensue from failure to treat the legal controversies

27  of aliens on a national level.").

28      13.    CAFA (i) broadened the definition of diversity and alienage jurisdiction in 28

<div align="center">4</div>

1 U.S.C. § 1332 as it applied to certain class actions, see 28 U.S.C. § 1332(d); and (ii) created a

2 separate statute allowing for removal of class actions falling within that broadened definition, see

3 28 U.S.C. § 1453.  In doing so, CAFA specifically expanded the federal courts' jurisdiction "by

4 establishing original jurisdiction in the federal courts for certain class actions that are national or

5 international in scope," subject to certain enumerated exceptions.  New Jersey Carpenters Vacation

6 Fund v. HarborView Mortg. Loan Trust, 581 F. Supp. 2d 581, 583 (S.D.N.Y. 2008).

7     14.    A case like this one that seeks to apply, for the first time, U.S. securities laws to

8 transactions that take place throughout the globe has just such a national and international scope.

9 Among other things, it implicates international relations as other countries seek to regulate

10 transactions in virtual currencies that take place within their own borders.  See HarborView, 581 F.

11 Supp. 2d at 588 (concluding that Securities Act case was removable under CAFA when it involved

12 matters that were affecting the "international economy").   While Defendants in no way concede

13 that the Securities Act applies to international transactions—it does not, see Morrison v. National

14 Australia Bank Ltd., 561 U.S. 247 (2010)—Plaintiff's attempt to apply the Securities Act to such

15 transactions takes this case outside the purview of Luther.

16     15.    Indeed, the basis for the Luther court's holding that Section 22(a) bars removal

17 notwithstanding CAFA was that Section 22(a) is "narrow, precise, and specific" and "applies only

18 to claims arising under the Securities Act," whereas CAFA has broader application.  Luther, 533

19 F.3d at 1034.  But if Section 22(a) were interpreted to bar removal of Securities Act claims even

20 when such claims purported to regulate transactions on an international scale, Section 22(a) would

21 not have the "narrow, precise, and specific" application the Luther court described.  Therefore, the

22 reasoning in Luther does not apply to the situation here and does not bar removal.

23     16.    Defendants recognize that, if the Court does not conclude that Luther is

24 distinguishable, the decision in Luther is binding precedent that appears to bar removal here.

25 However, Defendants further contend that (i) subsequent United States Supreme Court authority

26 has abrogated the conclusion and reasoning in Luther, and, if not, (ii) post-Luther developments in

27 the law counsel that the Ninth Circuit should reconsider Luther.

28     17.    Defendants acknowledge that, to the extent the Court does not believe that Luther

NOTICE OF REMOVAL                                                          Case No. 18-cv-4790

1 | has been abrogated, this Court may be bound by <u>Luther</u> and compelled to remand this action.  In

2 | such circumstance, Defendants would request that the Ninth Circuit review such remand order so

3 | that it may reconsider <u>Luther</u>.  CAFA itself provides for an appeal to the Ninth Circuit from any

4 | remand decision under CAFA.  <u>See</u> 28 U.S.C. § 1453(c)(1) ("[A] court of appeals may accept an

5 | appeal from an order of a district court granting or denying a motion to remand a class action to the

6 | State court from which it was removed if application is made to the court of appeals not more than

7 | 10 days after entry of the order.").

8 | **B.    Luther Has Been Abrogated By the Supreme Court**

9 | 18.    The Ninth Circuit has recognized that its own decisions are not binding on district

10 | courts if their "reasoning or theory" is "clearly irreconcilable" with subsequently decided United

11 | States Supreme Court authority.  <u>Miller v. Gammie</u>, 335 F.3d 889, 893 (9th Cir. 2003).  Such is the

12 | case with <u>Luther</u>.  In reaching its holding, <u>Luther</u> relied on the general rules that "removal statutes

13 | are strictly construed against removal," and "any doubt is resolved against removability."  <u>Luther</u>,

14 | 533 F.3d at 1034.  However, in <u>Dart Cherokee Basin Operating Co. v. Owens</u>, 135 S. Ct. 547

15 | (2014), decided *after* <u>Luther</u>, the Supreme Court declared that "no antiremoval presumption attends

16 | cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in

17 | federal court."  <u>Id.</u> at 554.  On the contrary, CAFA's "provisions should be read broadly, with a

18 | strong preference that interstate class actions should be heard in a federal court if properly removed

19 | by any defendant."  <u>Id.</u>  (citation omitted).  Accordingly, <u>Luther</u>'s strict construction against

20 | removal to resolve the perceived conflict between Section 22(a)'s removal bar and CAFA's

21 | removal provisions cannot be squared with the Supreme Court's express instructions in the more

22 | recently decided <u>Dart Cherokee</u> "to interpret CAFA's provisions under section 1332 broadly in

23 | favor of removal."  <u>Jordan v. Nationstar Mortg. LLC</u>, 781 F.3d 1178, 1184 (9th Cir. 2015)

24 | (reversing order of district court, "[i]n light of the Supreme Court's clear statement in <u>Dart</u>

25 | <u>Cherokee</u> that Congress intended for no antiremoval presumption to attend CAFA cases" and

26 | rejecting <u>Luther</u>'s strict construction of CAFA against removal because it was inconsistent with

27 | <u>Dart Cherokee</u>).

28 | 19.    Likewise, <u>Luther</u>'s interpretation of CAFA as a "general grant of the right of

6

1   removal of high-dollar class actions" that excludes nationwide class actions asserting claims under

2   the Securities Act, <u>Luther</u>, 533 F.3d at 1034, cannot be squared with <u>Dart Cherokee</u>'s

3   characterization of CAFA as a tool to ensure federal consideration of "interstate cases of national

4   importance." <u>Dart Cherokee</u>, 135 S. Ct. at 554 (citation omitted). In fact, other courts have

5   concluded that application of CAFA to interstate securities class actions of national importance is

6   essential to fulfill the purposes of CAFA. <u>See</u> <u>HarborView</u>, 581 F. Supp. 2d at 587-88 (concluding

7   that "CAFA overrides the Securities Act's anti-removal provision because this case involves

8   exactly the type of case CAFA was concerned about—a large, non-local securities class action

9   dealing with a matter of national importance, the mortgage-backed securities crisis that is currently

10  wreaking havoc with the national and international economy"). The ruling in <u>Dart Cherokee</u> thus

11  "undercut[s] the theory or reasoning underlying [<u>Luther</u>] in such a way that [<u>Luther</u> and <u>Dart</u>

12  <u>Cherokee</u>] are clearly irreconcilable." <u>Jordan</u>, 781 F.3d at 1183 n.2 (first alteration in original)

13  (citation omitted); <u>see also</u> 16 Moore's Federal Practice - Civil § 107.91[1][b] (2018) (observing

14  that "[g]iven the Supreme Court's assertion that no antiremoval presumption applies to cases

15  removed under CAFA," the decision in <u>Luther</u> was likely incorrect). Thus, <u>Luther</u> has been

16  abrogated.

17        **C.      <u>Luther Should Be Reconsidered</u>**

18        20.    If the Court does not conclude that post-<u>Luther</u> decisions have abrogated <u>Luther</u>,

19  Defendants believe <u>Luther</u> should be reconsidered in light of post-<u>Luther</u> developments in the law.

20        21.    In addition to <u>Dart Cherokee</u>, shortly after the Ninth Circuit decided <u>Luther</u>, the

21  Seventh Circuit considered the central legal question in <u>Luther</u>—the removability of Securities Act

22  class actions meeting the removal requirements of CAFA. <u>See</u> <u>Katz v. Gerardi</u>, 552 F.3d 558 (7th

23  Cir. 2009). The <u>Katz</u> court held that class actions meeting the requirements of CAFA, including

24  those asserting claims under the Securities Act, are removable. <u>Id.</u> at 562. In doing so, <u>Katz</u>

25  expressly disagreed with the reasoning in <u>Luther</u>.

26        22.    In <u>Luther</u>, the court applied the "principle of statutory construction that a statute

27  dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute

28  covering a more generalized spectrum." <u>Luther</u>, 533 F.3d at 1034 (citation omitted). The court

7

1  reasoned that the Securities Act was "more specific" than CAFA because it "applies only to claims

2  arising under the Securities Act," whereas CAFA "applies to a 'generalized spectrum'" of class

3  actions. Id.  On the basis that the purported specific statute controls over the more general statute,

4  Luther found that Section 22(a)'s removal bar applied to bar removal of Securities Act claims

5  notwithstanding that CAFA expressly permitted such removal.

6      23.    The Katz court rejected and exposed this flawed reasoning.  Contrary to Luther's

7  conclusion, the Katz court explained that CAFA is *not* broader than the Securities Act because

8  CAFA applies only to "large, multi-state class actions" while the Securities Act applies to "all

9  securities actions—single-investor suits as well as class actions." Katz, 552 F.3d at 561; see also

10 SEC v. Glenn W. Turner Enters., Inc., 474 F.2d 476, 481 n.5 (9th Cir. 1973) (noting "[t]he broad

11 purpose of the Securities Act of 1933").

12     24.    Thus, the Katz court concluded that the language of CAFA itself, "rather than a[ny]

13 canon" of statutory construction, instructs how CAFA "applies to corporate and securities actions."

14 Katz, 552 F.3d at 562.  CAFA itself contains specific, enumerated exceptions to removal

15 jurisdiction that address certain securities actions—none of which applies here—including actions

16 "concerning a covered security," those relating to the internal affairs of a corporation, or those

17 relating to the rights, duties, and obligations relating to or created by or pursuant to any security.

18 Id.  "This [list of exceptions] tells us all we need to know."  Id.  Claims falling within the

19 exceptions are not removable, and all "[o]ther securities class actions are removable if they meet

20 the requirements of" CAFA. Id.

21     25.    Straightforward statutory construction of Congress's removal statutes confirms that

22 the holding in Katz is correct and that the holding from Luther should be revisited.  In particular,

23 the general removal statute, 28 U.S.C. § 1441(a)—on which Defendants do *not* rely for removal

24 here—authorizes removal when federal courts have "original jurisdiction" "[e]xcept as otherwise

25 expressly provided by Act of Congress."  28 U.S.C. § 1441(a).  Courts have concluded that this

26 exception language—"[e]xcept as otherwise expressly provided by Act of Congress"—refers to

27 anti-removal statutes such as Section 22(a) and prevents removal of an action when such claims are

28 asserted.  See U.S. Indus., Inc. v. Gregg, 348 F. Supp. 1004, 1015 n.10 (D. Del. 1972), rev'd on

1  other grounds, 540 F.2d 142 (3d Cir. 1976).

2       26.    However, Section 1453—the CAFA removal statute, the statute on which

3  Defendants *do* rely for removal—does *not* include the "[e]xcept as otherwise expressly provided

4  by Act of Congress" language. See 28 U.S.C. § 1453. As numerous courts have found, the

5  omission of this language in the CAFA removal statute demonstrates that, unlike with Section

6  1441(a), Congress did not intend anti-removal provisions to bar removal where the action meets

7  the requirements of CAFA. See Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 106

8  (2d Cir. 2004) (allowing removal of Securities Act claim under 28 U.S.C. § 1452 because that

9  section does not include the exception language); FDIC v. Countrywide Fin. Corp., 2012 WL

10  12897152, at *1 (C.D. Cal. Mar. 20, 2012) (concluding that grant of federal jurisdiction over

11  claims involving FDIC made action removable under Section 1441(b), which at that time provided

12  for removal based on claims arising under federal law, and "trump[ed]" the removal bar in Section

13  22(a) because Section 1441(b) did not then contain exception language like Section 1441(a)).

14  Accordingly, straight forward statutory construction reveals that this action should be removable.

15  United States v. Providence Journal Co., 485 U.S. 693, 704-05 (1988) (citation omitted) (observing

16  that when two statutes included "[e]xcept as otherwise authorized by law," but that "by way of

17  vivid contrast," the third did not, the third statute provided for no exception); Russello v. United

18  States, 464 U.S. 16, 23 (1983) (alteration in original) (citation omitted) ("[W]here Congress

19  includes particular language in one section of a statute but omits it in another section of the same

20  Act, it is generally presumed that Congress acts intentionally and purposely in the disparate

21  inclusion or exclusion."). The Luther court never considered CAFA's plain language.

22       27.    For these reasons, Defendants respectfully submit that Katz is the correctly reasoned

23  decision, and that, to the extent necessary, Luther should be reconsidered. Tellingly, the current

24  divide in authority led the author of the district court decision affirmed by the Ninth Circuit in

25  Luther, the Hon. Mariana Pfaelzer, to observe in another case, "Defendants appear to have

26  nonfrivolous arguments for a change in the law due to post-Luther developments." Pub. Emps.'

27  Ret. Sys. of Miss. v. Morgan Stanley, 605 F. Supp. 2d 1073, 1075 n.1 (C.D. Cal. 2009). See also 2

28  McLaughlin on Class Actions § 12:6 (14th ed. 2017) (collecting authorities and concluding Katz's

<center>9</center>

1 | conclusion is correct).

2 | **IV.      THIS REMOVAL NOTICE IS TIMELY AND SATISFIES ALL PREREQUISITES.**

3 |          28.      Plaintiff filed the above-captioned putative class action on July 3, 2018 in the
4 | Superior Court of the State of California, County of San Mateo, as case number 18-CIV-03461.
5 | The first Defendant to be served, Ripple, was served on July 9, 2018.  This Notice of Removal is
6 | timely because it has been filed within thirty days of Plaintiff's earliest purported service of the
7 | Complaint.  See 28 U.S.C. § 1446.

8 |          29.      No previous application has been made by the Defendants for this or similar relief.

9 |          30.      Written notice of the filing of this Notice of Removal will be given to the adverse
10 | parties and state court as required by § 1446(d).

11 | DATED: August 8, 2018

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____/s/Peter B. Morrison_____
                                    Peter B. Morrison
                                    Attorney for Defendants

NOTICE OF REMOVAL                                                      Case No. 18-cv-4790

# Exhibit A

1  JOHN T. JASNOCH (CA 281605)
   SCOTT+SCOTT
2  ATTORNEYS AT LAW LLP
   600 W. Broadway, Suite 3300
3  San Diego, CA 92101
   Telephone: 619-233-4565
4  Facsimile:  619-233-0508
   Email:  jjasnoch@scott-scott.com
5
   -- and --
6
   THOMAS L. LAUGHLIN, IV
7  RHIANA SWARTZ
   The Helmsley Building
8  230 Park Avenue, 17th Floor
   New York, NY 10169
9  Telephone: 212-223-6444
   Facsimile:  212-223-6334
10 Email: tlaughlin@scott-scott.com
        rswartz@scott-scott.com
11
   *Counsel for Plaintiff*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**F I L E D**
**SAN MATEO COUNTY**

JUL 0 3 2018

Clerk of the Superior Court
By _____
         DEPUTY CLERK

FILE BY FAX

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

AVNER GREENWALD, Individually and on
Behalf of All Others Similarly Situated,

                                  Plaintiff,

        v.

RIPPLE LABS, INC., a Delaware Corporation,
XRP II, LLC, a South Carolina Limited Liability
Company, BRADLEY GARLINGHOUSE,
CHRISTIAN LARSEN, RON WILL,
ANTOINETTE O'GORMAN, ERIC VAN
MILTENBURG, SUSAN ATHEY, ZOE
CRUZ, KEN KURSON, BEN LAWSKY,
ANJA MANUEL, and TAKASHI OKITA,

                                  Defendants.

Case No.  **18CIV03461**

**CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE SECURITIES ACT
OF 1933**

JURY TRIAL DEMANDED

---

COMPLAINT

1    Plaintiff Avner Greenwald ("Plaintiff"), individually and on behalf of all others similarly

2  situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to

3  Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation

4  conducted by and through Plaintiff's attorneys, which included, among other things, a review of

5  Securities and Exchange Commission ("SEC") filings and commentary, publicly available reports and

6  information, analyst and media reports, and other commentary analysis. Plaintiff's investigation into the

7  matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within

8  the custody and control of, the Defendants. Plaintiff believes that substantial additional evidentiary

9  support will exist for the allegations set forth herein after a reasonable opportunity for formal discovery.

10                                   **NATURE AND SUMMARY OF ACTION**

11    1.    Plaintiff brings this securities class action under §§5, 12(a)(1), and 15 of the Securities

12  Act of 1933 (the "Securities Act") against (1) Ripple Labs, Inc. ("Ripple Labs" or the "Company");

13  (2) Ripple Labs' wholly owned subsidiary, XRP II, LLP ("XRP II"); and (3) certain of Ripple Labs'

14  controlling senior executives and directors (collectively, the "Individual Defendants"). Plaintiff alleges

15  that Defendants sold unregistered securities to investors in violation of the Securities Act. Defendants

16  are liable in their capacities as issuers, statutory sellers, and/or direct or indirect offerors of XRP.

17    2.    Plaintiff brings this action on behalf of all investors who purchased Ripple tokens

18  ("XRP" or "Ripples") on or after July 3, 2015 and were damaged thereby.

19    3.    XRP qualify as securities under Section 2(a)(1) of the Securities Act, 15 U.S.C.

20  §77b(a)(1). The purchase of XRP constitutes an investment contract as XRP purchasers, including

21  Plaintiff, provided consideration (in the form of fiat, *i.e.*, U.S. dollars or other cryptocurrencies) in

22  exchange for XRP. XRP is in investment in a common enterprise and purchasers reasonably expected to

23  derive profits from their ownership of XRP. Defendants promoted this profit motive as a reason to

24  purchase XRP.

25    4.    No registration statements have been filed with the SEC or have been in effect with

26  respect to the XRP offerings alleged herein.

27

28
                                                    1
                                              COMPLAINT

5.     All 100 billion XRP in existence were created out of thin air by Ripple Labs.[1]  Twenty billion XRP, or 20% of all XRP in existence, were given to the individual founders of Ripple Labs, including Defendant Chris Larsen, and the remaining 80 billion were retained by Ripple Labs.

6.     Defendants have since earned massive profits by selling the retained XRP to the public, without complying with federal securities laws, in what is essentially an ongoing initial coin offering ("ICO").  Like an initial public offering ("IPO"), in an ICO, digital assets are sold to consumers in exchange for legal tender or other cryptocurrencies (most often Bitcoin and Ethereum).

7.     Defendants sell XRP from the retained supply and use the proceeds from the sales to fund Company operations.

8.     In order to increase demand for XRP, and thereby increase the profits derived by selling XRP, Defendants portray XRP as a good investment, solicit sales, express optimistic price predictions, and conflate Ripple Labs' enterprise customer programs with usage and value of XRP.  Ripple Labs greatly increased these efforts to push XRP on the general public in recent years.

9.     These solicitation efforts were conducted by interstate means, as were the sales of XRP.

### JURISDICTION AND VENUE

10.     The Court has subject matter jurisdiction over this action pursuant to the California Constitution, Article VI, §10 and Section 22 of the Securities Act, 15 U.S.C. §77v.  The claims alleged herein arise under §§5, 12(a)(1), and 15 of the Securities Act.  *See* 15 U.S.C. §§77e, 77l, and 77o.  Section 22 of the Securities Act, 15 U.S.C. §77v(a), expressly states that "[e]xcept as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."  Section 77p(c) refers to "covered class action[s] brought in any State court involving a covered security, as set forth in subsection (b)," and subsection (b) of §77p in turn includes within its scope only covered class actions "based upon the

---

[1]     This is unlike other cryptocurrencies like Bitcoin and Ethereum that are "mined" by those validating transactions on their networks.

1   statutory or common law of any State or subdivision thereof." *See* 15 U.S.C. §77p. This is an action

2   asserting only federal law claims. Thus, this action is not removable to federal court.

3       11.     Venue is proper in this jurisdiction pursuant to the provisions of California Code of

4   Civil Procedure §395(a) because certain Defendants reside in San Mateo County.

5       12.     This Court has personal jurisdiction over Defendants as a result of acts of Defendants

6   occurring in and/or aimed at the state of California in connection with Defendants' unregistered

7   offer and sale of securities in violation of §§5, 12(a)(1), and 15 of the Securities Act.

8       13.     This Court also has personal jurisdiction over Defendants because they reside in or

9   have their principal places of business in California.

10                                      **PARTIES**

11      14.     Lead Plaintiff Avner Greenwald is an individual and a resident of Israel. Plaintiff

12   bought and sold XRP in both USD and Bitcoin between December 14, 2017 and May 12, 2018, and

13   suffered losses on those investments as a result of the scheme alleged herein.

14      15.     Defendant Ripple Labs, Inc. is a Delaware corporation with its principal place of

15   business at 300 Montgomery Street, 12th Floor, San Francisco, California. Ripple Labs operates

16   RippleNet, a global payments network based on blockchain technology. Through RippleNet, banks

17   and payment providers can use XRP to process, clear, and settle financial transactions in real-time

18   worldwide. Ripple Labs created XRP and, at all relevant times, solicited purchases of XRP by

19   Plaintiff and the Class for its own benefit and the benefit of its executives and owners.

20      16.     Defendant XRP II, LLC is wholly owned subsidiary of Ripple Labs. XRP II is a

21   South Carolina limited liability company with its principal place of business in San Francisco,

22   California. XRP II sold XRP and solicited the purchases of XRP by Plaintiff and the Class for its

23   own benefit and the benefit of its parent, Ripple Labs, and its executives and owners.

24      17.     Defendant Bradley Garlinghouse ("Garlinghouse") is the Chief Executive Officer

25   ("CEO") of Ripple Labs and has been since January 2017. Garlinghouse was Ripple Labs'

26   President and Chief Operating Officer from April 2015 through December 2016. Garlinghouse is a

27   California citizen and a resident of San Mateo County. Garlinghouse exercised control over Ripple

28

1   Labs and directed and/or authorized, directly or indirectly, the sale and/or solicitation of XRP to the

2   public.

3        18.    Defendant Christian (Chris) Larsen ("Larsen") is Executive Chairman of Ripple

4   Labs' Board of Directors and has been since January 2017.  Larsen is also a co-founder of Ripple

5   Labs and a former CEO of Ripple Labs (through December 2016).  Larsen exercised control over

6   Ripple Labs and directed and/or authorized, directly or indirectly, the sale and/or solicitation of

7   XRP to the public.

8        19.    Defendant Ron Will ("Will") is Chief Financial Officer of Ripple Labs and has been

9   since November 2017.  Will exercised control over Ripple Labs and directed and/or authorized,

10  directly or indirectly, the sale and/or solicitation of XRP to the public.

11       20.    Defendant Antoinette O'Gorman ("O'Gorman") is Chief Compliance Officer of

12  Ripple Labs.  O'Gorman exercised control over Ripple Labs and directed and/or authorized,

13  directly or indirectly, the sale and/or solicitation of XRP to the public.

14       21.    Defendant Eric van Miltenburg ("van Miltenburg") is Senior Vice President for

15  Business Operations of Ripple Labs.  Van Miltenburg exercised control over Ripple Labs and

16  directed and/or authorized, directly or indirectly, the sale and/or solicitation of XRP to the public.

17       22.    Defendant Susan Athey ("Athey") is a Director of Ripple Labs.  As a Director, Athey

18  exercised control over Ripple Labs and directed and/or authorized, directly or indirectly, the sale

19  and/or solicitation of XRP to the public.

20       23.    Defendant Zoe Cruz ("Cruz") is a Director of Ripple Labs.  As a Director, Cruz

21  exercised control over Ripple Labs and directed and/or authorized, directly or indirectly, the sale

22  and/or solicitation of XRP to the public.

23       24.    Defendant Ken Kurson ("Kurson") is a Director of Ripple Labs.  As a Director,

24  Kurson exercised control over Ripple Labs and directed and/or authorized, directly or indirectly,

25  the sale and/or solicitation of XRP to the public.

26

27

28

25.     Defendant Ben Lawsky ("Lawsky") is a Director of Ripple Labs.  As a Director, Lawsky exercised control over Ripple Labs and directed and/or authorized, directly or indirectly, the sale and/or solicitation of XRP to the public.

26.     Defendant Anja Manuel ("Manuel") is a Director of Ripple Labs.  As a Director, Manuel exercised control over Ripple Labs and directed and/or authorized, directly or indirectly, the sale and/or solicitation of XRP to the public.

27.     Defendant Takashi Okita ("Okita") is a Director of Ripple Labs.  As a Director, Okita exercised control over Ripple Labs and directed and/or authorized, directly or indirectly, the sale and/or solicitation of XRP to the public.

28.     The defendants referred to in ¶¶17-27 are referred to as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Background of XRP**

29.     Unlike cryptocurrencies such as Bitcoin and Ethereum, which are mined by those validating transactions on their networks, all 100 billion XRP in existence were created out of thin air by Ripple Labs in 2013.  Twenty billion XRP, or 20% of the total XRP supply, were given to the individual founders of Ripple Labs,[2] with the remaining 80 billion retained by Ripple Labs.

30.     As for 80 billion XRP held by Ripple Labs, the plan was to sell them and use the proceeds to fund and improve Company operations, including the XRP ledger network.

31.     Ripple Labs' own wiki notes that "Ripple Labs sells XRP to fund its operations and promote the network.  This allows Ripple Labs to have a spectacularly skilled team to develop and promote the Ripple protocol and network."[3]

32.     In the first quarter of 2018, "market participants purchased $16.6 million [of XRP] directly from XRP II, LLC," XRP II also "sold $151.1 million worth of XRP" on exchange.[4]

---

[2]     Defendant Chris Larsen received 9.5 billion XRP.

[3]     Ripple credits, https://wiki.ripple.com/Ripple_credits#XRP funds the development and promotion of the protocol and the network (last visited June 29, 2018).

1    33.    Ripple Labs' primary business involves the operation of an open ledger protocol,

2  payment, and exchange network.  The native cryptocurrency for Ripple Labs' exchange network is

3  XRP.  Thus, XRP is both an investment in the Company (as sales are used to fund Company

4  operations with the expectation that such investments in the Company will increase the value of

5  XRP) and an investment in itself (with the expectation that the value of XRP will increase), as well

6  as a means of exchange promoted by Ripple Labs.

7    34.    Ripple Labs' exchange network is based around the XRP Ledger.  The XRP Ledger

8  consists of many servers, called nodes, which accept and process transactions.  Client applications

9  sign and send transactions to nodes, which then relay these candidate transactions throughout the

10  network for processing.  Transactions are then verified and become part of the XRP Ledger through

11  a consensus process.  Every XRP transaction must be made through Ripple Labs' XRP Ledger,

12  which is maintained by Defendants.  In order to open an account on the XRP Ledger, users must

13  maintain a minimum account balance of 20 XRP.  In addition, each time a transaction is made in

14  XRP, there is a transaction cost to users.

15    35.    Ripple Labs' founders and other Company insiders have also profited individually

16  from their XRP holdings.  In January 2018, Ripple co-founder Defendant Larsen was named one of

17  the richest people in the United States, with an estimated net worth of $59.9 billion, primarily due

18  to the increase in value in XRP and his personal ownership of billions of XRP and his significant

19  stake in the Company.[5]

20    36.    Defendants have control over how many XRP are in the market.

21    37.    No registration statement has been filed for XRP with the SEC and no registration

22  statement is in effect for XRP.

23

24

25  [4]    Q1 2018 XRP Markets Report, https://ripple.com/insights/q1-2018-xrp-markets-report/ (last
    visited June 29, 2018).

26  [5]    https://www.cnbc.com/2018/01/04/ripple-co-founder-is-now-richer-than-the-google-founders-
27  on-paper.html (last visited on June 29, 2018).

28

**B. Defendants Solicit XRP Sales**

38.   From 2013 to the present, Defendants and their affiliates have been engaged in an ongoing scheme to sell XRP to the general public.

39.   Ripple Labs dedicates an entire section of its website to providing advice on "How to Buy XRP." This section provides links to online exchanges and instructions on "[h]ow to buy XRP" on those exchanges.[6] It also has a section titled "Market Performance" which proclaims that Ripple Labs is "committed to the long term health and stability of XRP markets."[7]

40.   Ripple Labs also consistently promotes the availability of XRP on exchanges. For example, on May 18, 2017, its Senior Vice-President for Business Development, Patrick Griffin, tweeted a link to the Kraken exchange with the caption: "Kraken Introduces New Fiat Pairs for XRP Trading! USD, JPY, CAD, EUR @ Ripple."[8]

41.   Similarly, on or about December 21, 2017, Ripple Labs tweeted in Japanese that XRP was now available on over 50 exchanges.[9] That tweet linked to an article on Ripple Labs' website which described XRP as "the fastest and most scalable [digital] asset on the market."[10] It continued, "[t]he market is taking notice of XRP's speed, reliability and scalability – which has strengthened the demand for XRP and where it's listed. In fact, we're proud to announce that XRP has gone from being listed on six exchanges earlier this year to more than 50 worldwide." The article also links to a number of online exchanges where XRP can be purchased, and states that "XRP's long-term value is determined by its utility – including its ability to help financial institutions source liquidity for payments into and out of emerging markets."

---

[6]   XRP Buying Guide, https://ripple.com/xrp/buy-xrp/ (last visited on June 29, 2018).

[7]   Market Performance, https://ripple.com/xrp/market-performance/ (last visited on June 29, 2018)

[8]   @patgriffin9, https://twitter.com/patgriffin9/status/865251321867231233 (last visited on June 29, 2018).

[9]   @Ripple, https://twitter.com/Ripple/status/943999526783905792 (last visited on June 29, 2018).

[10]   XRP Now Available on 50 Exchanges Worldwide, https://ripple.com/insights/xrp-now-available-on-50-exchanges-worldwide/ (last visited on June 29, 2018).

42.   Ripple Labs also hosts conferences to generate interest in XRP.  For example, between October 16 and October 18, 2017, it hosted a conference named "Swell" in Toronto. Ripple Labs acknowledged that "[a]nticipation around the event spurred a meaningful spike in XRP, pushing it up 100 percent[.]"[11]

43.   On the same day, CoinDesk, a subsidiary of Digital Currency Group, which has an ownership interest in Ripple Labs, published an article titled "Ripple Price Passes Historic $1 Milestone."[12]  This was just one of many instances in which Ripple Labs would promote price movements of XRP.

44.   Ripple Labs' promotion of XRP's price reached new highs in December 2017.  In one instance, Ripple's XRP product manager retweeted a tweet exclaiming: "Wow, XRP at all-time high!  Forget about bitcoin, *we're all in on XRP*!"  (Emphasis added.)[13]

45.   Around that same time, on or about December 7, 2017, Ripple Labs announced that it had placed "55 billion XRP in a cryptographically-secured escrow account to create certainty of XRP supply at any given time."[14]  It had been previously announced in May 2017 that this would happen along with a limited distribution schedule.  This was done to limit the available supply of XRP and drive price appreciation, which allowed Defendants to maximize profits from XRP sales. The December 7, 2017 announcement stated:

> By securing the lion's share of XRP in escrow, people can now mathematically verify the maximum supply that can enter the market.  While Ripple has proved to be a responsible steward of XRP supply for almost five years — and has clearly demonstrated a tremendous track record of investing in and supporting the XRP

---

[11]   14Q3 2017 XRP Markets Report, https://ripple.com/xrp/q3-2017-xrp-markets-report/ (last visited on June 29, 2018).

[12]   Ripple Price Passes Historic $1 Milestone, https://www.coindesk.com/ripple-price-passes-historic-1-milestone/ (last visited on June 29, 2018).

[13]   @warpaul, https://twitter.com/yoshitaka_kitao/status/940785785925709829 (last visited on June 29, 2018).

[14]   https://ripple.com/insights/ripple-escrows-55-billion-xrp-for-supply-predictability (last visited on June 29, 2018).

1    ecosystem – this lockup eliminates any concern that Ripple could flood the market,
     which we've pointed out before is a scenario that would be bad for Ripple![15]

2

3    46.    The article contained a button to allow readers to share it on Twitter with the caption

4    "Game changer for $XRP! 55 billion XRP now in escrow."[16]  Ripple also promoted this article through

5    its own tweet, which proclaimed:  "55B $XRP is now in escrow.  Interested in what this means for

6    $XRP markets?"[17]  Garlinghouse was even more enthusiastic, tweeting:  "Boom! 55 B $XRP now in

7    escrow.  Good for supply predictability and trusted, healthy $XRP markets.  Glad to finally let this

     #cryptokitty out of the bag!"[18]

8    47.    Ripple's public commitment to limit the supply of XRP had its intended effect.  In the

9    weeks that followed, the price of XRP rapidly increased, from approximately $0.22 per token on

10   December 7, 2017 to $3.38 per token on January 7, 2018.[19]

11   48.    Ripple Labs' CEO, Brad Garlinghouse, has also been a vocal advocate for investing

12   in XRP. In a December 14, 2017 interview with Canada's Business News Network ("BNN"), when

13   asked if he is personally invested in XRP, the CEO stated "I'm long XRO, I'm very, very long

14   XRP as a percentage of my personal balance sheet." He continued, stating that he is "not long some

15   of the other [digital] assets, because it is not clear to me what's the real utility, what problem are

16   they really solving."  And ended by reiterating "if you're solving a real problem, if it's a scaled

17   problem, then I think you have a huge opportunity to continue to grow that.  We have been really

18   fortunate obviously, *I remain very, very, very long XRP*, there is an expression in the industry

19   HODL, instead of hold, its HODL . . . I'm on the HODL side" (emphasis added).

20

21

22

23  [15]   *Id.*

24  [16]   *Id.*

25  [17]   https://twitter.com/Ripple/status/938933967956389889.

26  [18]   https://twitter.com/bgarlinghouse/status/938933791145336832?lang=en.

27  [19]   XRP would subsequently lose nearly all its value in just over three months, falling to a low of
     approximately $0.48 per token on April 6, 2018.

28
                                    9
                               COMPLAINT

1     49.    Later that same day, Garlinghouse tweeted: "Bloomberg welcomes $XRP to

2 @theterminal and gets it right – #2 market cap behind $BTC at ~$80BB!"[20]

3     50.    About a week later, on or about December 22, 2017, Garlinghouse tweeted an article

4 titled "Bitcoin Is So 2017 as Ripple Soars at Year End," with the caption "I'll let the headline speak

5 for itself. $xrp."[21]

6     51.    On or about January 17, 2018, Garlinghouse tweeted a CNBC article titled "Ripple is

7 sitting on close to $80 billion and could cash out hundreds of millions per month-but it isn't," with

8 the caption "A good read on why fostering a healthy $XRP ecosystem is a top priority at @Ripple."

9     52.    However, the reality was that Ripple Labs was doing exactly that – cashing out.

10 Defendants sold at least $167.7 million worth of XRP between January 1, 2018 and March 31,

11 2018.

12     53.    Given its reliance on sales of XRP to fund its operations, it is unsurprising that

13 Ripple Labs' aggressively markets XRP to drive demand, increase the price of XRP, and

14 consequently, its own profits.

15     54.    Defendants' advertising and social media postings also conflate adoption and use of

16 Ripple Labs' xCurrent and xVia enterprise solutions with adoption and use of XRP, even though

17 they often have little to no correlation and do not involve the XRP Ledger.  Defendants do this to

18 drive demand for XRP and thereby maximize profits from XRP sales.

19     55.    According to its site, "xCurrent is Ripple's enterprise software solution that enables

20 banks to instantly settle cross-border payments with end-to-end tracking.  Using xCurrent, banks

21 message each other in real-time to confirm payment details prior to initiating the transaction and to

22 confirm delivery once it settles."[22]

23

24 [20]   @bgarlinghouse, https://twitter.com/bgarlinghouse/status/941375649549246464 (last visited on
    June 29, 2018).

25 [21]   @bgarlinghouse, https://twitter.com/bgarlinghouse/status/944325730338357248 (last visited on
26    June 29, 2018).

27 [22]   Process Payments, xCurrent, https://ripple.com/solutions/process-payments/ (last visited on June
    29, 2018).

28
COMPLAINT

1    56.    xCurrent doesn't operate on the same technology as XRP or even require the use of

2    XRP. In short, there is no reason to believe that adoption of xCurrent would correlate in any way

3    with adoption of XRP.

4    57.    Nor does use of Ripple Labs' xVia product require adoption of XRP. Ripple Labs

5    states that its xVia product is "for corporates, payment providers and banks who want to send

6    payments across various networks using a standard interface."[23]

7    58.    Ripple Labs nevertheless conflates the adoption of xCurrent and xVia with the

8    adoption of XRP.

9    59.    Another of Ripple Labs' enterprise solutions, xRapid, which does use XRP, is also

10    used to drive XRP sales (xRapid, along with xCurrent and xVia, are together referred to herein as

11    "Ripple Labs' Enterprise Solutions").

12    60.    Indeed, Ripple Labs regularly promotes its improvements to the XRP ecosystem,

13    which are intended to increase demand for XRP and thus potential returns for XRP investors. For

14    example, in describing the reasons behind the dramatic price appreciation of XRP during the fourth

15    quarter of 2017, Ripple specifically cited as of "particular importance," the Company's various business

16    initiatives, including: (i) Ripple's partnership with American Express/Santander; (ii) Ripple's activation

17    of the previously discussed escrow of XRP to limit periodic offers and distributions; and (iii) a

18    Japanese/Korean banking consortium backed by the Company.[24] In the report, Ripple stated that its

19    "consistent and steadfast support of XRP is a major advantage as the payments industry continues to

20    seriously consider it as an alternative liquidity solution."[25]

21    61.    A November 2015 white paper by the Company highlighted "XRP's Role on Ripple

22    and the Internet of Value" and how the Company's technologies could turn a "Spark to a Wildfire"

23

24    _____

[23] Send Payments, xVia, https://ripple.com/solutions/send-payments/ (last visited on June 29,
25    2018).

26    [24] Q4 2017 XRP Markets Report, https://ripple.com/insights/q4-2017-xrp-markets-report/.

27    [25] *Id.*

28

1  by increasing liquidity and efficiencies for cross-border transactions for the Company's banking

2  clients. A February 2016 white paper followed up on those purported "network effects," claiming

3  that the use of the Ripple network at XRP would increase banks' returns on investment by

4  improving the global payment infrastructure.

5      62.  In addition, on March 20, 2017, Ripple Labs retweeted a Bloomberg article regarding

6  adoption of Ripple Labs Enterprise Solutions, proclaiming "Ripple is the only company in this

7  space with real customers who are really in production."[26]

8      63.  The price of XRP increased rapidly following this tweet and on March 24, 2017

9  Ripple Labs tweeted: "The price of #XRP continues to surge showing that people are looking for

10  #bitcoin alternatives."[27]

11      64.  On April 26, 2017, Ripple Labs tweeted a link to an article on its own site,

12  proclaiming "#Ripple welcomes 10 additional customers to our #blockchain #paymentsnetwork."[28]

13  Neither this tweet nor the article it linked to informed readers that the blockchain payments

14  network did not refer to the XRP Ledger, but rather Ripple's xCurrent enterprise solution.

15      65.  Just days later, on May 3, 2017, with the price of XRP continuing to rise, Ripple

16  Labs tweeted: "#Ripple adoption is sparking interest in XRP 'which has had an impressive rally in

17  the last months' via @Nasdaq."[29]

18      66.  Articles such as "Ripple XRP price picks up pace as demand for xVia API increases"

19  have made the direct connection between the price of XRP and the adoption of the Company's

---

26  @Ripple, https://twitter.com/Ripple/status/844009778309357568 (last visited on June 29, 2018).

27  @Ripple, https://twitter.com/Ripple/status/845347809830195200 (last visited June 29, 2018).

28  @Ripple, https://twitter.com/Ripple/status/857267304618278912 (last visited June 29, 2018).

29  @Ripple, https://twitter.com/Ripple/status/859904105916923904 (last visited June 29, 2018).

1 Enterprise Solutions.[30]  Ripple itself has made this link, for example tweeting on May 16, 2017: "The

2 appeal that Ripple has towards traditional financial institutions is a big advantage it has over Bitcoin."[31]

3      67.     On June 29, 2017, Ripple Labs tweeted a clip of an interview its CEO Brad

4 Garlinghouse gave on CNBC with the caption: "#XRP-up 4000% this year-has shown the market

5 favors a real use case for #digitalassets . . . ."[32]  In that interview, Garlinghouse proclaims that

6 "digital assets are in a position to be more valuable than gold," and describes XRP as "solving a

7 real-world use case, it's not just about speculators."

8      68.     On September 11, 2017, Garlinghouse stated in an interview with CNBC: "People are

9 looking at the success Ripple has been having as a company, *and I think that's increased the value of*

10 *XRP.*"[33]  (emphasis added).  He continued by stating that Ripple wants "to keep focusing on making

11 XRP a valuable payments tool, and that value will increase accordingly," and he was "voting with my

12 . . . pocketbook on the future increased value of cryptocurrencies."[34]

13      69.     On November 27, 2017, Garlinghouse tweeted "Ripple & $XRP are giving business

14 'what they want in a #blockchain,'" along with a link to a Motley Fool tweet.[35]  That Motley Fool

15 tweet in turn stated that "AmEx and Banco Santander will use Ripple's blockchain network for

16 instant intl. fund transfers. *Could be a big deal for Ripple's XRP cryptocurrency.*  $ASP $SAN"

17 (emphasis added.)[36]

18

19 _____

[30]     https://globalcoinreport.com/ripple-xrp-price-picks-up-pace-as-demand-for-xvia-api-increases/.

20 [31]     @Ripple, https://twitter.com/Ripple/status/864635614020251649.

21 [32]     @Ripple, https://twitter.com/Ripple/status/880532198025121793 (last visited June 29, 2018).

22 [33]     htpps://www.cnbc.com/2017/09/11/ripple-ceo-brad-garlinghouse-on-bitcoin-and-xrp.html     (last

23 visited June 29, 2018).

24 [34]     *Id.*

25 [35]     @bgarlinghouse, https://twitter.com/bgarlinghouse/status/935225940845711366 (last visited on

26 June 29, 2018).

[36]     @themotleyfool, https://twitter.com/themotleyfool/status/934850515640471553 (last visited on

27 June 29, 2018).

28
COMPLAINT

70.   Similarly, on December 14, 2017, Ripple Labs tweeted: "The Japan Bank Consortium launched a Ripple pilot with two large Korean Banks — the first time money moves from Japan to Korea over RippleNet."[37]   On that same day, Ripple Labs tweeted "@garlinghouse [its CEO's twitter handle] on why crypto prices will be driven by real utility, the multi-trillion $ problem @Ripple is solving and why $XRP will come out on top."[38]

71.   Ripple Labs would later acknowledge that "neither the AMEX news nor the Korean bank initiative involved XRP."

72.   Nevertheless, this tweet linked to a BNN interview with Mr. Garlinghouse, in which he says:

> The reason why XRP has performed so well this year, we're solving a real problem, it's a multi-trillion dollar problem around cross-border payments.   There is a lot of friction its very slow its expensive, we're working with the institutions to deal with that, so people have gotten excited.   We now have over 100 customers we've announced publicly.

He continues,

> [A]t the end of the day the value of digital assets will be driven by their utility.   If they are solving a real problem, and that problem has scale, and that problem, you know there is real value there, then there will be demand for the tokens and the price will go up.   For XRP we have seen because *its required*, its something that can really reduce the friction, and we're talking about a multi-trillion dollar problem in how cross-border payments flow.   And so, I think if you drive real utility, yes there's going to be demand for that.   *XRP is up 100x this year*, and I think it's *because the problem we are solving people realize is a real problem, it's a big problem*.

(Emphasis added.)

73.   On January 4, 2018, following XRP's rapid price increase, The *New York Times* published an article by Nathaniel Popper titled: "Rise of Bitcoin Competitor Ripple Creates Wealth to Rival Zuckerberg."[39]   Mr. Popper tweeted a link to this article with the caption: "On the rise of

---

[37]   @Ripple, https://twitter.com/Ripple/status/941501026267316224 (last visited on June 29, 2018).

[38]   @Ripple, https://twitter.com/Ripple/status/941352005058011137 (last visited on June 29, 2018).

[39]   @nathanielpopper, "Rise of Bitcoin Competitor Ripple Creates Wealth to Rival Zuckerberg," NY TIMES (Jan. 4, 2018).

14
COMPLAINT

Ripple.  If this is a tulip fever, the fever has spread to chrysanthemums and poppies"[40].  He further

commented, "I've asked several people close to banks if banks are indeed planning to begin using

Ripple's token XRP, in a serious way, which is what investors seem to assume when they buy in at

the current XRP prices.  This is a sampling what I heard back:

- Actual use of XRP by banks is not something I've heard about, I find the run up absolutely bluffing, as do all the blockchain folks I know at large Fis.
- XRP isn't used for anything.  The hope is that someday it will be by banks, but there really aren't banks signaling that yet.
- I would be surprised if there have been any real bank transactions done with it (outside of maybe test transactions), despite people making claims to the contrary.
- It's not clear to me why XRP would be used by banks at all. XRP could potentially be adopted by consumers as a payment rail, although they don't yet have meaningful traction in that regard.
- I haven't seen a sufficiently large catalyst in the fundamentals of Ripple to justify a greater than 10x move in the price of $XRP in the last month.
- In a few years we're going to look back on 2017 and think WTF were we thinking."[41]

74.     Defendant Garlinghouse publicly responded to this, tweeting: "Over the last few

months I've spoken with ACTUAL banks and payment providers.  They are indeed planning to use

xRapid (our XRP liquidity product) in a serious way . . . ."  He follows up stating, "I don't think

you want to hear about validation for XRP.  The @NYTimes should be above spreading

anonymous FUD."[42]   FUD, which stands for fear, uncertainty, and doubt, is an expression

frequently used among crypto-investors to deride or undermine criticism of an asset.

75.     On January 4, 2018, Ripple's XRP product manager also attacked Mr. Popper,

tweeting: "Do you think I left #Bitcoin and joined @Ripple to build bank software?  Think again.

[40]   @nathanielpopper,  https://twitter.com/bgarlinghouse/status/949129952716234752  (last  visited on June 29, 2018).

[41]   @nathanielpopper,  https://twitter.com/bgarlinghouse/status/949129952716234752  (last  visited on June 29, 2018).

[42]   @nathanielpopper,  https://twitter.com/bgarlinghouse/status/949129952716234752  (last  visited on June 29, 2018).

1  $XRP."[43]  This tweet linked to a Ripple Labs tweet stating that "3 of the top 5 global money

2  transfer companies plan to use XRP in payment flows in 2018. Even more in the pipeline."

3      76.    In January 2018, Ripple Labs touted "a partnership with MoneyGram – one of the

4  world's largest money transfer companies – to use xRapid and XRP for near real-time cross-border

5  payments. In addition, there are a number of other xRapid deals at various stages of completion in

6  the pipeline." It also stated that it wanted "to build the necessary markets infrastructure for

7  eventual direct usage of XRP by financial institutions." Defendant Garlinghouse commented on

8  this partnership, saying: "And to be clear: @MoneyGram announcement is one step in a marathon

9  ahead to truly make $XRP the global liquidity solution for payment providers and banks."[44]

10      77.    By way of the internet, including Ripple Labs' website, Twitter, and the over 50

11  cryptocurrency exchanges that trade XRP, interstate means are used in connection with the offer

12  and sale of XRP.

13      **C. XRP Is a Security**

14      78.    Plaintiff and the Class invested fiat, including U.S. dollars, and other digital

15  currencies, such as Bitcoin and Ethereum, to purchase XRP.

16      79.    Defendants sold XRP to the general public through global, online cryptocurrency

17  exchanges. XRP can be bought or sold on over 50 exchanges.

18      80.    Every purchase of XRP by a member of the public is an investment contract.

19      81.    Under Section 2(a)(1) of the Securities Act, a "security" is defined to include an

20  "investment contract." 15 U.S.C. § 77b(a)(1). An investment contract is "an investment of money

21  in a common enterprise with profits to come solely from the efforts of others." *S.E.C. v. W.J.*

22  *Howey Co.*, 328 U.S. 293, 301 (1946). Specifically, a transaction qualifies as an investment

23  contract and, thus, a security if it is: (1) an investment; (2) in a common enterprise; (3) with a

---

[43]    @Warren Paul Anderson, https://twitter.com/warpaul (last visited on June 29, 2018).

[44]    @bgarlinghouse, https://twitter.com/bgarlinghouse/status/951461582424358912 (last visited on June 29, 2018).

1   reasonable expectation of profits; (4) to be derived from the entrepreneurial or managerial efforts of

2   others.  *See United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852-53 (1975).  This

3   definition embodies a "flexible rather than a static principle, one that is capable of adaptation to

4   meet the countless and variable schemes devised by those who seek the use of the money of others

5   on the promise of profits," and thereby "permits the fulfillment of the statutory purpose of

6   compelling full and fair disclosure relative to the issuance of 'the many types of instruments that in

7   our commercial world fall within the ordinary concept of a security.'"  *Howey*, 328 U.S. at 299.

8   Accordingly, in analyzing whether something is a security, "form should be disregarded for

9   substance," and the emphasis should be "on economic realities underlying a transaction, and not on

10  the name appended thereto."  *Forman*, 421 U.S. at 849.

11      82.    Plaintiff and the Class were investing in a common enterprise with a reasonable

12  expectation of profits when they invested in XRP.

13      83.    The profits of Plaintiff and the Class are intertwined with the fortunes of Ripple

14  Labs.  Ripple Labs concedes that it "sells XRP to fund its operations and promote the network.

15  This allows Ripple Labs to have a spectacularly skilled team to develop and promote the Ripple

16  protocol and network."[45]

17      84.    Notably, the SEC has already concluded that virtual currency substantially similar to

18  XRP are "securities and therefore subject to the federal securities laws."  As stated by the SEC,

19  "issuers of distributed ledger or blockchain technology-based securities must register offers and

20  sales of such securities unless a valid exemption applies."[46]

21      85.    No such valid exemption from registration requirements exists for XRP.

22      86.    The current SEC Chairman, Jay Clayton, III, recently said, "I have yet to see an ICO

23  that doesn't have a sufficient number of hallmarks of a security."[47]

24

25  [45]    Ripple credits, https://wiki.ripple.com/Ripple credits#XRP (last visited on June 29, 2018).

26  [46]    Press Release: *SEC Issues Investigative Report Concluding DAO Tokens, a Digital Asset, Were Securities*, SEC (July 25, 2017), https://www.sec.gov/news/press-release/2017-131.

27  [47]    Dave Michaels and Paul Vigna, "SEC Fires Warning Shot Against Coin Offerings," WALL STREET JOURNAL (Nov. 9, 2017).

28

COMPLAINT

**CLASS ACTION ALLEGATIONS**

87.    This suit is brought as a class action pursuant to Section 382 of the California Code of Civil Procedure, on behalf of a Class of all persons or entities who purchased XRP from July 3, 2015 through the present. Excluded from the Class are Defendants; the officers and directors of the Company and XRP II at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

88.    Plaintiff reserves the right to amend the Class definition if further investigation and/or discovery indicate that the Class definition should be modified.

89.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class. The members of the proposed Class may be identified from records maintained by the Company and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

90.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.

91.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

92.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether XRP are securities under the Securities Act;

(b)    whether the sale of XRP violates the registration requirements of the Securities Act; and

(c)    to what extent Plaintiff and members of the Class have sustained damages and the proper measure of damages.

1    93.    A class action is superior to all other available methods for the fair and efficient

2 adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

3 damages suffered by individual Class members may be relatively small, the expense and burden of

4 individual litigation make it impossible for members of the Class to individually redress the wrongs

5 done to them.  There will be no difficulty in the management of this action as a class action.

6                              **CAUSES OF ACTION**

7                              **FIRST CAUSE OF ACTION**

8                    **Unregistered Offering and Sale of Securities in Violation of**
                     **Sections 5 and 12(a)(1)of the Securities Act**
9                              **(Against All Defendants)**

10    94.    Plaintiff, on behalf of himself and all others similarly situated, realleges and incorporates

11 herein by reference each and every allegation contained in the preceding paragraphs of this complaint,

12 and further alleges as follows:

13    95.    Defendants, and each of them, by engaging in the conduct described above, directly or

14 indirectly, made use of means or instruments of transportation or communication in interstate commerce

15 or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried

16 through the mails or in interest commerce for the purpose of sale or for delivery after sale.

17    96.    XRP are securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C.

18 §77b(a)(1).

19    97.    Plaintiff and members of the Class purchased XRP securities.

20    98.    No registration statements have been filed with the SEC or have been in effect with

21 respect to any of the offerings alleged herein.  No exemption to the registration requirement applies.

22    99.    SEC Rule 159A provides that, for purposes of Section 12(a)(2), an "issuer" in "a primary

23 offering of securities" shall be considered a statutory seller.  17 C.F.R. § 230.159A(a).  The Securities

24 Act in turn defines "issuer" to include every person who issues or proposes to issue any security.  15

25 U.S.C. § 77b(a)(4).  Ripple Labs and XRP II are issuers of XRP.

26    100.    The U.S. Supreme Court has held that statutory sellers under §12(a)(1) also include "the

27 buyer's immediate seller" and any person who actively solicited the sale of the securities to plaintiff and

28
                              19
                         COMPLAINT

1    did so for financial gain. *See Pinter v. Dahl*, 486 U.S. 622, 644 n.21 & 647 (1988); *accord, e.g., Steed*

2    *Finance LDC v. Nomura Sec. Int'l, Inc.* No. 00 Civ. 8058, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20,

3    2001). That is, §12(a)(1) liability extends to sellers who actively solicit the sale of securities with a

4    motivation to serve their own financial interest or those of the securities owner. *Pinter v. Dahl*, 486 U.S.

5    622, 647 (1988); *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988). Ripple Labs, XRP II, and the

6    Individual Defendants are all statutory sellers.

7        101.   By reason of the foregoing, each of the Defendants have violated Sections 5(a), 5(c), and

8    12(a) of the Securities Act, 15 U.S.C. §§77e(a), 77e(c), and 771(a).

9        102.   As a direct and proximate result of Defendants' unregistered sale of securities, Plaintiff

10   and the Class have suffered damages in connection with their XRP purchases.

### SECOND CAUSE OF ACTION

**Violation of Section 15 of the Securities Act**
**(Against Ripple Labs and the Individual Defendants)**

        103.   Plaintiff, on behalf of himself and all others similarly situated, realleges and incorporates

herein by reference, each and every allegation contained in the preceding paragraphs of this Complaint,

and further alleges as follows:

        104.   This Count is asserted against Defendants Ripple Labs and the Individual Defendants

(collectively, the "Control Person Defendants") under Section 15 of the Securities Act, 15 U.S.C. §77o.

        105.   The Control Person Defendants, by virtue of their offices, ownership, agency, agreements

or understandings, and specific acts were, at the time of the wrongs alleged herein, and as set forth

herein, controlling persons within the meaning of Section 15 of the Securities Act. The Control Person

Defendants, and each of them, had the power and influence and exercised the same to cause the

unlawful offer and sale of XRP securities as described herein.

        106.   The Control Person Defendants, separately or together, possess, directly or indirectly, the

power to direct or cause the direction of the management and policies of XRP II, through ownership of

voting securities, by contract, subscription agreement, or otherwise.

        107.   The Control Person Defendants also have the power to direct or cause the direction of the

management and policies of Ripple Labs.

1    108.    The Control Person Defendants, separately or together, have sufficient influence to have

2  caused XRP II and/or Ripple Labs to submit a registration statement.

3    109.    The Control Person Defendants, separately or together, jointly participated in Ripple

4  Labs' and/or XRP II's failure to register XRP.

5    110.    By virtue of the conduct alleged herein, the Control Person Defendants are liable for the

6  wrongful conduct complained of herein and are liable to Plaintiff and the Class for rescission and/or

7  damages suffered.

8                                    **PRAYER FOR RELIEF**

9    WHEREFORE, Plaintiff prays for judgment as follows:

10    A.    Declaring this action to be a proper class action and certifying Plaintiff as Class

11  representative;

12    B.    Declaring that Defendants offered and sold unregistered securities in violation of

13  Sections 5(a), 12(a), and 15 of the Securities Act;

14    C.    Awarding Plaintiff and the other members of the Class rescission of their XRP purchases;

15    D.    Awarding Plaintiff and the other members of the Class compensatory damages;

16    E.    Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment

17  interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements;

18    F.    Requiring an accounting of all remaining assets and funds raised by Defendants through

19  the sale of XRP;

20    G.    Imposing a constructive trust over the assets and funds raised by Defendants through the

21  sale of XRP;

22    H.    Enjoining and restraining Defendants from violating the securities laws through the

23  continued unregistered sale of XRP; and

24

25

26

27

28

21

COMPLAINT

1     I.    Awarding Plaintiff and the other members of the Class such other and further relief as the

2  Court may deem just and proper.

3

4  DATED: July 3, 2018               SCOTT+SCOTT ATTORNEYS AT LAW LLP

5

6                                 JOHN T. JASNOCH (CA 281605)

7                                 600 W. Broadway, Suite 3300
                                  San Diego, CA 92101

8                                 Telephone: 619-233-4565
                                 Facsimile: 619-233-0508

9                                 Email: jjasnoch@scott-scott.com

10                             SCOTT+SCOTT ATTORNEYS AT LAW LLP
                               THOMAS L. LAUGHLIN, IV (*Pro Hac Vice*

11                             forthcoming)
                               RHIANA SWARTZ

12                             The Helmsley Building
                               230 Park Avenue, 17th Floor

13                             New York, NY 10169
                               Telephone: 212-223-6444

14                             Facsimile: 212-223-6334
                               Email: tlaughlin@scott-scott.com

15                                   rswartz@scott-scott.com

16                           *Counsel for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): | FOR COURT USE ONLY |
|---|---|
| John T. Jasnoch (281605)<br>Scott+Scott Attorneys at Law LLP<br>600 W. Broadway, Suite 3300<br>San Diego, CA 92101<br>TELEPHONE NO.: 619-233-4565   FAX NO.: 619-233-0508<br>ATTORNEY FOR (Name): Plaintiff Avner Greenwald | **F I L E D**<br>**SAN MATEO COUNTY**<br><br>JUL 03 2018<br><br>Clerk of the Superior Court<br>By<br>DEPUTY CLERK |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Southern Branch (Hall of Justice)

CASE NAME:
Greenwald v. Ripple Labs, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **18CIV03461**<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [✓] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | Real Property | [ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse<br>condemnation (14) | |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | Enforcement of Judgment |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | Unlawful Detainer | Miscellaneous Civil Complaint |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | Miscellaneous Civil Petition |
| [ ] Professional negligence (25) | Judicial Review | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| Employment | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [✓] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties    d. [✓] Large number of witnesses
   b. [✓] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
         issues that will be time-consuming to resolve          in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence       f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action (specify): There are two: 15 U.S.C. sections 77l and 77o
5. This case [✓] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case: (You may use form CM-015.)

Date: July 3, 2018

John T. Jasnoch
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std 3.10
www.courtinfo.ca.gov

FILE BY FAX

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
      or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

# SUMMONS
## (CITACIÓN JUDICIAL)

SUM-100

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

# FILED
## SAN MATEO COUNTY

JUL 0 3 2018

Clerk of the Superior Court
By
DEPUTY CLERK

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AVNER GREENWALD, Individually and on Behalf of All Others
Similarly Situated

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

RIPPLE LABS, INC., a Delaware corporation, XRP II, LLC, a South
Carolina Limited Liability Company, BRADLEY GARLINGHOUSE,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* San Mateo Superior Court<br>400 County Center, Redwood City, CA 94063 | CASE NUMBER *(Número del Caso):* **18 C I V 0 3 4 6 1** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John T. Jasnoch, 600 W. Broadway, Suite 3300, San Diego, CA 92101, 619-233-4565

| | | |
|---|---|---|
| DATE: **JUL 0 3 2018** *(Fecha)* | RODINA M. CATALANO Clerk, by *(Secretario)* | , Deputy *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

**SUM-200(A)**

| SHORT TITLE: Greenwald v. Ripple Labs, Inc., et al. | CASE NUMBER: 18CIV03461 |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

CHRISTIAN LARSEN, RON WILL, ANTOINETTE O'GORMAN, ERIC VAN MILTENBURG, SUSAN ATHEY, ZOE CRUZ, KEN KURSON, BEN LAWSKY, ANJA MANUEL, and TAKASHI OKITA,

Defendants.

Page ___2___ of ___2___

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

| Attorney or Party without Attorney (Name/Address) | FOR COURT USE ONLY |
|---|---|
| John T. Jasnoch (281605)<br>SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>600 W. Broadway, Suite 3300<br>San Diego, CA  92101<br>Telephone:   619-233-4565<br>State Bar No.: 281605<br>Attorney for:   Plaintiff | **FILED**<br>SAN MATEO COUNTY<br><br>JUL 0 3 2018<br><br>Clerk of the Superior Court<br>By<br>DEPUTY CLERK |
| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN MATEO<br>400 COUNTY CENTER<br>REDWOOD CITY, CA  94063 | |
| Plaintiff<br>AVNER GREENWALD | |
| Defendant<br>RIPPLE LABS, INC. et al. | |
| Certificate Re Complex Case Designation | Case Number<br>18 CIV 03461 |

FILE BY FAX

### This certificate must be completed and filed with your Civil Case Cover Sheet if you have checked a Complex Case designation or Counter-Designation

1.  In the attached Civil Case Cover Sheet, this case is being designated or counter-designated as a complex case [or as not a complex case] because at least one or more of the following boxes has been checked:

    ☑ Box 1 – Case type that is best described as being [or not being] provisionally complex civil litigation (i.e., antitrust or trade regulation claims, construction defect claims involving many parties or structures, securities claims or investment losses involving many parties, environmental or toxic tort claims involving many parties, claims involving mass torts, or insurance coverage claims arising out of any of the foregoing claims).

    ☐ Box 2 – Complex [or not complex] due to factors requiring exceptional judicial management

    ☐ Box 5 – Is [or is not] a class action suit.

2.  This case is being so designated based upon the following supporting information [including, without limitation, a brief description of the following factors as they pertain to this particular case: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions

pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision]:

(1), (2), (3), (4) and (6), this is a securities class action under the Securities Act of 1933 that

charges a company and certain of its officers and directors with unregistered sale of

securities to investors in violation of the Securities Act.  Defendants will obtain separate

counsel; and there will be a large number of witnesses and a substantial amount of

documentary evidence.  Plaintiff will seek class certification.

*(attach additional pages if necessary)*

3.   Based on the above-stated supporting information, there is a reasonable basis for the complex case designation or counter-designation [or noncomplex case counter-designation] being made in the attached Civil Case Cover Sheet.

\*\*\*\*\*

I, the undersigned counsel or self-represented party, hereby certify that the above is true and correct and that I make this certification subject to the applicable provisions of California Code of Civil Procedure, Section 128.7 and/or California Rules of Professional Conduct, Rule 5-200 (B) and San Mateo County Superior Court Local Rules, Local Rule 2.30.

Dated:   07/03/18

John T. Jasnoch

[Type or Print Name]

[Signature of Party or Attorney For Party]

## NOTICE OF CASE MANAGEMENT CONFERENCE

Amar Greenwald

**FILED**
**SAN MATEO COUNTY**

JUL 0 3 2018

Clerk of the Superior Court

By
DEPUTY CLERK

vs.

Ripple Labs, Inc. & Fal

Case No: 18CIV03461

Date: NOV. 01 2018

Time 9:00 a.m.

Dept. 21        --on Tuesday & Thursday

Dept. _____     --on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1.  In accordance with applicable California Rules of the Court and local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

    a)  Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).

    b)  Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

    c)  File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.

    d)  Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30-days before the date set for the Case Management Conference.

2.  If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3.  Continuances of Case Management Conferences are highly disfavored unless good cause is shown.

4.  Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation to ADR and Proposed Order (see attached form). If plaintiff files a Stipulation to ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10-days prior to the first scheduled Case Management Conference, the Case Management Conference will be continued for 90-days to allow parties time to complete their ADR session. The court will notify parties of their new Case Management Conference date.

5.  If you have filed a default or a judgment has been entered, your case is not automatically taken off Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6.  You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7.  The Case Management judge will issue orders at the conclusion of the conference that may include:

    a)  Referring parties to voluntary ADR and setting an ADR completion date;

    b)  Dismissing or severing claims or parties;

    c)  Setting a trial date.

8.  The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court's website at: www.sanmateocourt.org

*Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall information).



**ERIOR COURT OF SAN MATEO COUNTY**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

| | |
|---|---|
| **AVNER GREENWALD**<br>Plaintiff (s)<br><br>vs.<br><br>**RIPPLE LABS, INC., A DELAWARE<br>CORPORATION**<br>Defendant (s) | **Notice of Complex Case Status Conference**<br><br>Case No.: 18-CIV-03461        Date: **9/5/2018**<br>                                              Time: **9:00 AM**<br>                                              **Dept. PJ** |

**Title: AVNER GREENWALD  VS.  RIPPLE LABS, INC., A DELAWARE CORPORATION, ET AL**

You are hereby given notice of your Complex Case Status Conference. The date, time and department have been written above.  At this conference, the Presiding Judge will decide whether this action is a complex case within the meaning of California Rules Court ("CRC"), Rule 3.400, subdivision (a) and whether it should be assigned to a single judge for all purposes.

1. In accordance with applicable **San Mateo County Local Rule 2.30**, you are hereby ordered to:
    a. **Serve** copies of this notice, your Civil Case Cover Sheet, and your Certificate Re: Complex Case Designation on all named parties in this action no later than service of your first appearance pleadings.
    b. **Give reason notice** of the Complex Case Status Conference to all named parties in this action, even if they have not yet made a first appearance or been formally served with the documents listed in subdivision (a). Such notice shall be given in the same manner as required for an ex parte application pursuant to CRC 3.1203.

2. **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Complex Cause Status Conference.  Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

3. An action is provisionally a complex case if it involves one or more of the following types of claims: (1) antitrust or trade regulation claims; (2) construction defect claims involving many parties or structures; (3) securities claims or investment losses involving many parties; (4) environmental or toxic tort claims involving many parties; (5) claims involving massive torts; (6) claims involving class actions; or (7) insurance coverage claims arising out of any of the claims listed in subdivisions (1) through (6).  The Court shall treat a provisionally complex action as a complex case until the Presiding Judge has the opportunities to decide whether the action meets the definition in CRC 3.400(a).

4. Any party who files either a Civil Case Cover Sheet (pursuant to CRC 3.401) or counter or joinder Civil Case Cover Sheet (pursuant to CRC 3.402, subdivision (b) or (C)), designating an action as a complex case in Items 1,2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court. The certificate must include supporting information showing a reasonable basis for the complex case designation being sought.  Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues' (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision.

For further information regarding case management policies and procedures, see the court website at
www.sanmateocourt.org

* Telephone appearances at Complex Case Status Conference are available by contacting CourtCall, LLC, and
independent vendor, at least 5 business days prior to the scheduled conference.

## CLERK'S CERTIFICATE OF MAILING

I hereby certify that I am the clerk of this court, not a party of this cause; that I served a copy of this notice on the below
date, by placing a copy thereof in separate sealed envelopes addressed to the address shown by the records of this court
as set forth above, and by then sealing said envelopes and depositing same, with postage fully pre-paid thereon, in the
United States Mail at Red wood City, California.

Date: 7/5/2018                                    Rodina M. Catalano,
                                                  Court Executive Officer/Clerk

                                         By: _____

                                                  Antonio Geronimo,
                                                  Deputy Clerk

Copies mailed to:

        JOHN T JASNOCH
        SCOTT+SCOTT ATTORNEYS AT LAW LLP
        600 W BROADWAY STE 3300
        SAN DIEGO CA  92101

Rev. Jun. 2016

q|5
PJW

**CORRECTED**

SUM-100

## SUMMONS
### *(CITACIÓN JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**F I L E D**
**SAN MATEO COUNTY**

JUL 0 6 2018

Clerk of the Superior Court
By _____
DEPUTY CLERK

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

RIPPLE LABS, INC., a Delaware corporation, XRP II, LLC, a South
Carolina Limited Liability Company, BRADLEY GARLINGHOUSE,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

AVNER GREENWALD, Individually and on Behalf of All Others
Similarly Situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* San Mateo Superior Court 400 County Center, Redwood City, CA 94063 | **CASE NUMBER:** *(Número del Caso):* 18CIV03461 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John T. Jasnoch, 600 W. Broadway, Suite 3300, San Diego, CA 92101, 619-233-4565

| DATE: *(Fecha)* JUL 0 6 2018 | RODINA M. CATALANO | Clerk, by *(Secretario)* | , Deputy *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010)*.)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:

3. [ ] on behalf of *(specify)*:

under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)

[ ] other *(specify)*:
4. [ ] by personal delivery on *(date)*:

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 *www.courtinfo.ca.gov* |

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Greenwald v. Ripple Labs, Inc., et al. | |

**INSTRUCTIONS FOR USE**

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (*Check only one box. Use a separate page for each type of party.*):

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

CHRISTIAN LARSEN, RON WILL, ANTOINETTE O'GORMAN, ERIC VAN MILTENBURG, SUSAN ATHEY, ZOE CRUZ, KEN KURSON, BEN LAWSKY, ANJA MANUEL, and TAKASHI OKITA,

Defendants.

Page   2   of   2

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**FILED**
**SAN MATEO COUNTY**

OCT 2 2 2018

Clerk of the Superior Court

By _____
DEPUTY CLERK

**ECF DOCUMENT**
I hereby attest and certify this is a printed copy of a
document which was electronically filed with the United States
District Court for the Northern District of California.
Date Filed: OCT 1 5 2018
SUSAN Y. SOONG, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**18 C I V 0 3 4 6 1**

1

2

3

4

5

6

7   AVNER GREENWALD,

8        Plaintiff,

9   v.

10   RIPPLE LABS, INC., et al.,

11        Defendants.

Case No.  18-cv-04790-PJH

**ORDER GRANTING PLAINTIFF'S
MOTION TO REMAND AND
VACATING HEARING**

Re: Dkt. No. 15

12

13        Before the court is plaintiff Avner Greenwald's motion to remand.  The matter is

14   fully briefed and suitable for decision without oral argument.  Accordingly, the hearing set

15   for October 24, 2018, is VACATED.  Having read the parties' papers and carefully

16   considered their arguments and the relevant legal authority, and good cause appearing,

17   the court hereby GRANTS plaintiff's motion to remand, for the following reasons.

18        This is a putative securities class action brought by plaintiff Greenwald against

19   defendants Ripple Labs, Inc. ("Ripple"), XRP II, LLC, a subsidiary of Ripple and various

20   individual defendants.[1]  Compl. ¶¶ 1-2, 11-28.  Plaintiff originally filed this action in the

21   San Mateo County Superior Court on July 3, 2018, and served the defendants on July 9,

22   2018.  Dkt. 1.

23        In summary, plaintiff alleges that Ripple created a digital currency called XRP and

24   "from 2013 to the present, defendants and their affiliates have been engaged in an

25   ongoing scheme to sell XRP to the general public."  Compl. ¶¶ 38-41, 78-80.  Plaintiff

26

27   [1] The individual defendants are Bradley Garlinghouse, Christian Larsen, Ron Will,
Antoinette O'Gorman, Eric Van Miltenburg, Susan Athey, Zoe Cruz, Ken Kurson, Ben
28   Lawsky, Anja Manuel, and Takashi Okita.

FILED
SAN MATEO COUNTY

OCT 2 3 2015

Clerk of the Superior Court

By
DEPUTY CLERK

RECEIVED
SAN MATEO COUNTY

OCT 1 9 2018

Clerk of the Superior Court

18CIV08461

United States District Court
Northern District of California

1  Greenwald, a resident of Israel, alleges that he "bought and sold XRP in both USD and

2  Bitcoin between December 14, 2017, and May 12, 2018, and suffered losses on those

3  investments as a result of the [defendants'] scheme." Compl. ¶ 14.

4      Plaintiff further alleges that because XRP qualifies as a "security" under § 2(a)(1)

5  of the Securities Act of 1933 (the "Securities Act"), 14 U.S.C. § 77b(a)(1), Ripple's past

6  and ongoing sales of XRP constitute the selling of unregistered securities in violation of

7  the Securities Act. Compl. ¶¶ 3, 6, 12. On behalf of "a class of all persons or entities

8  who purchased XRP from July 3, 2015, through the present," Compl. ¶ 87, plaintiff

9  asserts two causes of action: (1) for violation of §§ 5 & 12(a)(1) of the Securities Act

10  against all defendants for the unregistered offer and sale of securities; and (2) for

11  violation of § 15 of the Securities Act (control person liability) against Ripple and the

12  individual defendants.

13      On August 8, 2018, defendants timely removed the action pursuant to the Class

14  Action Fairness Act ("CAFA"), under 28 U.S.C. § 1453. Dkt. 1.

15      CAFA "relaxed" the diversity requirements for putative class actions. See Dart

16  Cherokee Basin Operating Co., LLC v. Owens, —— U.S. ——, 135 S.Ct. 547, 551, 190

17  L.Ed.2d 495 (2014). Pursuant to CAFA, a defendant may remove an action under § 1453

18  if the amount in controversy exceeds $5 million, the putative class has more than 100

19  members, and the parties are minimally diverse. Id. at 552; 28 U.S.C. §§ 1332(d), 1453.

20      Plaintiff's motion to remand does not contend that defendants cannot show this

21  action fails to meet any of CAFA's three jurisdictional requirements. Instead, plaintiff

22  argues that § 22(a) of the Securities Act operates as a complete bar on removing any

23  action that involves only Securities Act claims.[2]

24      Plaintiff is correct. Plaintiff's only two causes of action are brought under the

25  Securities Act. Defendants' CAFA-based removal was therefore necessarily premised on

26

27  [2] Section 22(a) states: "Except as provided in 77p(c) [§ 16(c)], no case arising under this

28  subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."

1   plaintiff's Securities Act claims.  In that situation, controlling Ninth Circuit authority

2   requires remand.

3       In Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031 (9th Cir.

4   2008), the Ninth Circuit considered whether an action that solely alleged Securities Act

5   claims could be removed under CAFA.  Luther, 533 F.3d at 1032, 1034.  Luther reasoned

6   that because § 22(a) dealt "with a narrow, precise, and specific subject" that "applie[d]

7   only to claims arising under the Securities Act" it was "not submerged by [CAFA,] a later

8   enacted statute covering a more generalized spectrum of class actions."  Id. at 1034.

9   Thus, Luther held that, "by virtue of § 22(a) of the Securities Act of 1933, [plaintiff's] state

10  court class action alleging only violations of the Securities Act of 1933 was not

11  removable."  Id.

12      Despite this clear holding, defendants make a number of arguments that Luther

13  does not require remand here.  Those arguments fail to persuade.

14      First, defendants argue that Luther only addressed removal based on CAFA's

15  "minimal diversity" jurisdiction, see 28 U.S.C. § 1332(d)(2)(A), whereas the present action

16  was removed based on CAFA's "alienage jurisdiction" because plaintiff Greenwald is a

17  citizen of Israel, see 28 U.S.C. § 1332(d)(2)(B).  Neither Luther nor CAFA supports that

18  distinction.  Nothing in Luther suggests that the decision hinged on removal being

19  premised on minimal diversity jurisdiction, rather than alienage jurisdiction.[3]

20      In addition, § 1332(d)(2)(B) does not limit alienage jurisdiction to circumstances

21  where the named plaintiff is a citizen of a foreign state.  Instead, that subsection is

22  implicated whenever "any member of [the] class of plaintiffs is a foreign state or a citizen

23  or subject of a foreign state."  28 U.S.C. 1332(d)(2)(B) (emphasis added).  The court finds

24  it implausible that the Luther action "brought on behalf of all persons and entities who

25  acquired hundreds of billions of dollars worth of mortgage pass-through certificates,"

26

27  ────────────────

28  [3] Indeed, Luther would likely not have quoted the entirety of § 1332(d)(2) if it intended its
    holding to be limited to § 1332(d)(2)(A).  See Luther, 533 F.3d at 1033 n.2.

United States District Court
Northern District of California

3

1    Luther, 533 F.3d at 1032, would not have included a single putative class member

2    satisfying (and implicating) § 1332(d)(2)(B).  The same would be true for most Securities

3    Act class actions.

4         Second, defendants' alienage jurisdiction-related policy arguments also do not

5    move the needle.  As an initial matter, those arguments do not override Luther.

6    Moreover, Congress has already made clear that removal bars trump the policy

7    considerations unique to alienage jurisdiction.  Section 1332(a)(2) gives district courts

8    original jurisdiction over actions "between citizens of a State and citizens or subjects of a

9    foreign state."  As this court has previously discussed at length, the general removal

10   statute, § 1441(a), provides that subject to its except clause, a defendant may remove

11   any civil action from state to federal court if the district court would have original

12   jurisdiction over the action.[4]  See generally Coffey v. Ripple Labs Inc., No. 18-CV-03286-

13   PJH, —— F. Supp. 3d ——, 2018 WL 3812076, at *2 (N.D. Cal. Aug. 10, 2018).  Courts

14   interpret "§ 1441(a)'s broad except clause as a reference to antiremoval provisions in

15   other federal statutes," such as § 22(a) of the Securities Act.  Id. at *8 (collecting cases).

16   Accordingly, despite the alienage jurisdiction considerations defendants articulate,

17   § 22(a) (as well as other antiremoval provisions) bars certain alienage actions from being

18   removed under § 1441(a).  Luther unambiguously held that in the case of pure Securities

19   Act actions, § 22(a) also applies to and trumps § 1453(b).  It makes no sense that

20   § 22(a)'s removal bar overrides the alienage jurisdiction-related considerations in the

21   context of § 1441(a), but does not do so vis-à-vis § 1453(b).  It makes even less sense

22   that Congress would intend that result without more explicitly saying so.[5]

23

24   [4] Section 1441(a) states "Except as otherwise expressly provided by Act of Congress,
     any civil action brought in a State court of which the district courts of the United States
25   have original jurisdiction, may be removed by the defendant or the defendants, to the
     district court of the United States for the district and division embracing the place where
26   such action is pending."

27   [5] Defendants' argument premised on Radzanower v. Touche Ross & Co., 426 U.S. 148,
     156, 96 S. Ct. 1989, 1994, 48 L. Ed. 2d 540 (1976), fails for a similar reason.  In the
28   context of § 1441(a), Congress had no difficulty with antiremoval provisions "unduly
     interfering" with alienage jurisdiction.  And Luther has already determined that § 22(a)

4

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Third, defendants reliance on this court's decision in Coffey is misplaced. In

2    Coffey, plaintiff's state law claims satisfied the removal requirements of § 1453. See

3    generally Coffey, 2018 WL 3812076, at *2. That allowed the entire action, including the

4    Securities Act claims, to be removed. Id. at *7 n. 6. Luther was inapplicable to that case

5    because Luther addressed only whether Securities Act claims that satisfied CAFA's

6    jurisdictional requirements (in one manner or another) could be the basis for removal

7    pursuant to § 1453. Id. at *4. Luther answered that question in the negative based on

8    § 22(a) and that is the exact situation presented here.

9    Fourth, defendants argue that CAFA's plain language allows removal despite

10    § 22(a), and that Luther was wrongly decided and should be limited or reconsidered.

11    Regardless of what defendants think CAFA's plain language allows, Luther held that

12    § 22(a) bars removal of pure Securities Act claims. And while defendants are free to

13    argue to the Ninth Circuit that Luther was wrongly decided, those arguments fail to

14    persuade this court.

15    For the foregoing reasons, the court GRANTS plaintiff's motion and REMANDS

16    the action to San Mateo County Superior Court. The October 24, 2018 hearing date is

17    VACATED.

18    **IT IS SO ORDERED.**

19    Dated: October 15, 2018

20

21    PHYLLIS J. HAMILTON
       United States District Judge

22

23

24

25

26

27

28    does not "unduly interfere" with § 1453(b).

5

ADRMOP,CLOSED,RELATE

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:18-cv-04790-PJH
### Internal Use Only

**18CIV03461**

Greenwald v. Ripple Labs, Inc. et al
Assigned to: Judge Phyllis J. Hamilton
Relate Case Case: 4:18-cv-03286-PJH
Case in other court: San Mateo County Court, 18civ03491
Cause: 28:1332 Diversity-Petition for Removal

Date Filed: 08/08/2018
Date Terminated: 10/15/2018
Jury Demand: Plaintiff
Nature of Suit: 160 Stockholders Suits
Jurisdiction: Diversity

| Hearings | Dates | Deadlines | Dates |
|---|---|---|---|

**Plaintiff**

**Avner Greenwald**    represented by    **John T. Jasnoch**
Scott+Scott Attorneys at Law LLP
600 W. Broadway
Suite 3300
San Diego, CA 92101
619-233-4565
Fax: 619-233-0508
Email: jjasnoch@scott-scott.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas L Laughlin , IV**
ScottScott, Attorneys at Law, LLP
The Helmsley Building
230 Park Avenue
17th Floor
New York, NY 10169
212-223-6444
Fax: 212-223-6334
Email: tlaughlin@scott-scott.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST:
SUSAN Y. SOONG
Clerk, U.S. District Court,
Northern District of California
By
Deputy Clerk
OCT 16 2018
Date

18–CIV–03461
BDR
Bankruptcy Document Received From US Bankr
1450213

V.

**Defendant**

**Ripple Labs, Inc.**    represented by    **John M. Neukom**
Skadden, Arps, Slate, Meagher & Flom
LLP
525 University Avenue
Suite 1400

**RECEIVED**
SAN MATEO COUNTY

OCT 1 9 2018

Clerk of the Superior Court

Palo Alto, CA 94301
650-470-4500
Fax: 650-470-4570
Email: John.Neukom@skadden.com
*ATTORNEY TO BE NOTICED*

**Virginia Faye Milstead**
Skadden, Arps, Slate, Meagher & Flom
LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
(213) 687-5592
Fax: (213) 687-5600
Email: virginia.milstead@skadden.com
*ATTORNEY TO BE NOTICED*

**Peter Bradley Morrison**
Skadden Arps Slate Meagher and Flom
LLP
300 S Grand Ave
Los Angeles, CA 90071
213-687-5000
Email: peter.morrison@skadden.com
*ATTORNEY TO BE NOTICED*

| | | |
|---|---|---|
| **Defendant** | | |
| **XRP II, LLC** | represented by | **John M. Neukom** |

(See above for address)
*ATTORNEY TO BE NOTICED*

**Virginia Faye Milstead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Bradley Morrison**
(See above for address)
*ATTORNEY TO BE NOTICED*

| | | |
|---|---|---|
| **Defendant** | | |
| **Bradley Garlinghouse** | represented by | **John M. Neukom** |

(See above for address)
*ATTORNEY TO BE NOTICED*

**Virginia Faye Milstead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Bradley Morrison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Christian Larsen**                    represented by    **John M. Neukom**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Virginia Faye Milstead**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Peter Bradley Morrison**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Ron Will**                            represented by    **John M. Neukom**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Virginia Faye Milstead**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Peter Bradley Morrison**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Antoinette O'Gorman**                 represented by    **John M. Neukom**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Virginia Faye Milstead**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Peter Bradley Morrison**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Eric van Miltenburg**                 represented by    **John M. Neukom**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Virginia Faye Milstead**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Peter Bradley Morrison**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Susan Athey** represented by **John M. Neukom**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Virginia Faye Milstead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Bradley Morrison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Zoe Cruz** represented by **John M. Neukom**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Virginia Faye Milstead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Bradley Morrison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ken Kurson** represented by **John M. Neukom**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Virginia Faye Milstead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Bradley Morrison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ben Lawsky** represented by **John M. Neukom**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Virginia Faye Milstead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Bradley Morrison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Anja Manuel**                    represented by **John M. Neukom**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Virginia Faye Milstead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Bradley Morrison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Takashi Okita**                  represented by **John M. Neukom**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Virginia Faye Milstead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Bradley Morrison**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 08/08/2018 | 1 | NOTICE OF REMOVAL from San Mateo County Superior Court. Their case number is 18-CIV-03461. (Filing fee $400 receipt number 0971-12578869). Filed byRon Will, Ken Kurson, XRP II, LLC, Antoinette O'Gorman, Susan Athey, Ripple Labs, Inc., Ben Lawsky, Takashi Okita, Eric van Miltenburg, Bradley Garlinghouse, Zoe Cruz, Anja Manuel, Christian Larsen. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet) (Morrison, Peter) (Filed on 8/8/2018) (Entered: 08/08/2018) |
| 08/08/2018 | 2 | Certificate of Interested Entities by Susan Athey, Zoe Cruz, Bradley Garlinghouse, Ken Kurson, Christian Larsen, Ben Lawsky, Anja Manuel, Antoinette O'Gorman, Takashi Okita, Ripple Labs, Inc., Ron Will, XRP II, LLC, Eric van Miltenburg identifying Other Affiliate SBI Holdings Inc. for Ripple Labs, Inc.; Corporate Parent Ripple Labs, Inc. for XRP II, LLC. (Morrison, Peter) (Filed on 8/8/2018) (Entered: 08/08/2018) |
| 08/08/2018 | 3 | NOTICE of Appearance by Virginia Faye Milstead (Milstead, Virginia) (Filed on 8/8/2018) (Entered: 08/08/2018) |

| 08/08/2018 | 4 | Case assigned to Magistrate Judge Sallie Kim.<br><br>Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.<br><br>Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. Counsel is required to send chambers a copy of the initiating documents pursuant to L.R. 5-1(e)(7). A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 8/22/2018. (as, COURT STAFF) (Filed on 8/8/2018) (Entered: 08/08/2018) |
| 08/08/2018 | 5 | NOTICE of Appearance by John M. Neukom (Neukom, John) (Filed on 8/8/2018) (Entered: 08/08/2018) |
| 08/08/2018 | 6 | STIPULATION *REGARDING DEFENDANTS TIME TO ANSWER OR OTHERWISE RESPOND PURSUANT TO CIVIL L.R. 6-1(a)* filed by Susan Athey, Zoe Cruz, Bradley Garlinghouse, Ken Kurson, Christian Larsen, Ben Lawsky, Anja Manuel, Antoinette O'Gorman, Takashi Okita, Ripple Labs, Inc., Ron Will, XRP II, LLC, Eric van Miltenburg. (Morrison, Peter) (Filed on 8/8/2018) (Entered: 08/08/2018) |
| 08/08/2018 | 7 | CERTIFICATE OF SERVICE by Susan Athey, Zoe Cruz, Bradley Garlinghouse, Ken Kurson, Christian Larsen, Ben Lawsky, Anja Manuel, Antoinette O'Gorman, Takashi Okita, Ripple Labs, Inc., Ron Will, XRP II, LLC, Eric van Miltenburg re 3 Notice of Appearance, 6 Stipulation, 1 Notice of Removal, 2 Certificate of Interested Entities, 5 Notice of Appearance, 4 Case Assigned by Intake,,, (Morrison, Peter) (Filed on 8/8/2018) (Entered: 08/08/2018) |
| 08/09/2018 | 8 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 11/19/2018. Initial Case Management Conference set for 11/26/2018 01:30 PM in San Francisco, Courtroom A, 15th Floor. (msrS, COURT STAFF) (Filed on 8/9/2018) (Entered: 08/09/2018)** |
| 08/09/2018 | 9 | NOTICE by Susan Athey, Zoe Cruz, Bradley Garlinghouse, Ken Kurson, Christian Larsen, Ben Lawsky, Anja Manuel, Antoinette O'Gorman, Takashi Okita, Ripple Labs, Inc., Ron Will, XRP II, LLC, Eric van Miltenburg *NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS PURSUANT TO CIVIL LOCAL RULE 3-13* (Morrison, Peter) (Filed on 8/9/2018) (Entered: 08/09/2018) |
| 08/14/2018 | 10 | **ORDER RELATING CASE. C-18-4790-SK is related to C-18-3286-PJH. Signed by Judge Phyllis J. Hamilton on 8/14/18. Case reassigned to Judge Phyllis J. Hamilton for all further proceedings. Magistrate Judge Sallie Kim no longer assigned to the case. (kcS, COURT STAFF) (Filed on 8/14/2018) (Entered: 08/14/2018)** |

| 08/14/2018 | 11 | **ORDER SETTING CASE MANAGEMENT CONFERENCE. Joint Case Management Statement due by 12/6/2018. Initial Case Management Conference set for 12/13/2018 at 02:00 PM in Oakland, Courtroom 3, 3rd Floor. Signed by Judge Phyllis J. Hamilton on 8/14/18. (kcS, COURT STAFF) (Filed on 8/14/2018) (Entered: 08/14/2018)** |
|---|---|---|
| 08/16/2018 | 12 | RESPONSE to *Standing Order re Removed Cases* by Susan Athey, Zoe Cruz, Bradley Garlinghouse, Ken Kurson, Christian Larsen, Ben Lawsky, Anja Manuel, Antoinette O'Gorman, Takashi Okita, Ripple Labs, Inc., Ron Will, XRP II, LLC, Eric van Miltenburg. (Morrison, Peter) (Filed on 8/16/2018) (Entered: 08/16/2018) |
| 08/16/2018 | 13 | CERTIFICATE OF SERVICE by Susan Athey, Zoe Cruz, Bradley Garlinghouse, Ken Kurson, Christian Larsen, Ben Lawsky, Anja Manuel, Antoinette O'Gorman, Takashi Okita, Ripple Labs, Inc., Ron Will, XRP II, LLC, Eric van Miltenburg re 9 Notice (Other), 10 Order Relating Case,, Case Assigned/Reassigned, 12 Response ( Non Motion ), 8 Initial Case Management Scheduling Order with ADR Deadlines, 11 Order,, Set Deadlines/Hearings, (Morrison, Peter) (Filed on 8/16/2018) (Entered: 08/16/2018) |
| 08/17/2018 |  | Electronic filing error. **REMINDER TO COUNSEL:** Counsel is instructed that all future filings shall bear the initials **PJH** immediately after the case number. Re: 13 Certificate of Service, filed by Ron Will, Ripple Labs, Inc., Ben Lawsky, Antoinette O'Gorman, Anja Manuel, Ken Kurson, Susan Athey, Christian Larsen, Takashi Okita, Zoe Cruz, XRP II, LLC, Eric van Miltenburg, Bradley Garlinghouse (jjbS, COURT STAFF) (Filed on 8/17/2018) (Entered: 08/17/2018) |
| 08/23/2018 | 14 | STIPULATION Regarding Defendants' Time to Answer or Otherwise Respond Pursuant to Civil L.R. 6-1(a) filed by Susan Athey, Zoe Cruz, Bradley Garlinghouse, Ken Kurson, Christian Larsen, Ben Lawsky, Anja Manuel, Antoinette O'Gorman, Takashi Okita, Ripple Labs, Inc., Ron Will, XRP II, LLC, Eric van Miltenburg, Avner Greenwald. (Morrison, Peter) (Filed on 8/23/2018) Modified on 8/24/2018 (cjlS, COURT STAFF). (Entered: 08/23/2018) |
| 09/07/2018 | 15 | MOTION to Remand filed by Avner Greenwald. Motion Hearing set for 10/17/2018 09:00 AM in Oakland, Courtroom 3, 3rd Floor before Judge Phyllis J. Hamilton. Responses due by 9/21/2018. Replies due by 9/28/2018. (Attachments: # 1 Proposed Order, # 2 Declaration of John T. Jasnoch, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D) (Jasnoch, John) (Filed on 9/7/2018) (Entered: 09/07/2018) |
| 09/07/2018 | 16 | Renotice motion hearing re 15 MOTION to Remand filed byAvner Greenwald. (Related document(s) 15 ) (Jasnoch, John) (Filed on 9/7/2018) (Entered: 09/07/2018) |
| 09/07/2018 |  | Set/Reset Deadlines as to 15 MOTION to Remand. Motion Hearing set for 10/24/2018 at 09:00 AM in Oakland, Courtroom 3, 3rd Floor before Judge Phyllis J. Hamilton. (kcS, COURT STAFF) (Filed on 9/7/2018) (Entered: |

| | | 09/07/2018 |
|---|---|---|
| 09/21/2018 | 17 | OPPOSITION/RESPONSE (re 15 MOTION to Remand ) filed by Susan Athey, Zoe Cruz, Bradley Garlinghouse, Ken Kurson, Christian Larsen, Ben Lawsky, Anja Manuel, Antoinette O'Gorman, Takashi Okita, Ripple Labs, Inc., Ron Will, XRP II, LLC, Eric van Miltenburg. (Attachments: # 1 Declaration of Virginia F. Milstead and Exhibits 1 through 6, # 2 Proposed Order)(Morrison, Peter) (Filed on 9/21/2018) (Entered: 09/21/2018) |
| 09/26/2018 | 18 | STIPULATION WITH [PROPOSED] ORDER Extending Briefing Schedule Re: Motion to Remand filed by Avner Greenwald. (Jasnoch, John) (Filed on 9/26/2018) Modified on 9/27/2018 (cjlS, COURT STAFF). (Entered: 09/26/2018) |
| 09/26/2018 | 19 | **STIPULATION AND ORDER EXTENDING BRIEFING SCHEDULE FOR PLAINTIFF'S MOTION TO REMAND PURSUANT TO LOCAL RULE 6-1 by Judge Phyllis J. Hamilton granting 18 Stipulation. (kcS, COURT STAFF) (Filed on 9/26/2018) (Entered: 09/26/2018)** |
| 09/26/2018 | | Set/Reset Deadlines as to 15 MOTION to Remand. Reply due by 10/5/2018. (kcS, COURT STAFF) (Filed on 9/26/2018) (Entered: 09/26/2018) |
| 10/05/2018 | 20 | REPLY (re 15 MOTION to Remand ) filed by Avner Greenwald. (Attachments: # 1 Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5)(Jasnoch, John) (Filed on 10/5/2018) (Entered: 10/05/2018) |
| 10/08/2018 | 21 | MOTION for leave to appear in Pro Hac Vice Thomas L. Laughlin, IV (Filing fee $310, receipt number 0971-12743717) filed by Avner Greenwald. (Attachments: # 1 Certificate of Good Standing)(Laughlin, Thomas) (Filed on 10/8/2018) Modified on 10/9/2018 (cjlS, COURT STAFF). (Entered: 10/08/2018) |
| 10/09/2018 | 22 | **ORDER by Judge Phyllis J. Hamilton granting 21 Motion for Pro Hac Vice for Thomas L. Laughlin, IV. (kcS, COURT STAFF) (Filed on 10/9/2018) (Entered: 10/09/2018)** |
| 10/15/2018 | 23 | **ORDER by Judge Phyllis J. Hamilton granting 15 Motion to Remand and vacating hearing. (pjhlc2, COURT STAFF) (Filed on 10/15/2018) (Entered: 10/15/2018)** |
| 10/15/2018 | 🔒 | (Court only) ***Civil Case Terminated. (kcS, COURT STAFF) (Filed on 10/15/2018) (Entered: 10/15/2018) |
| 10/16/2018 | 24 | CLERK'S NOTICE Remanding Case to San Mateo County Superior Court. (cjlS, COURT STAFF) (Filed on 10/16/2018) (Entered: 10/16/2018) |

**FILED**

**OCT 26 2018**

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
1301 Clay Street
Oakland, CA 94612

www.cand.uscourts.gov

Susan Y. Soong
Clerk of Court

General Court Number
510-637-3530

October 16, 2018

San Mateo County Superior Court
400 County Center
Redwood City, CA 94063

RE:     Avner Greenwald v. Ripple Labs, Inc., et al.
        18-cv-04790-PJH

Your Case Number: 18CIV03461

Dear Clerk,

        Pursuant to an order remanding the above captioned case to your court, transmitted
herewith are:

        ☒ Certified original and one copy of this letter

        ☒ Certified copy of docket entries

        ☒ Certified copy of Remand Order

        ☐ Other

Please acknowledge receipt of the above documents on the attached copy of this letter.

**RECEIVED**
**SAN MATEO COUNTY**

OCT 1 9 2018

**Clerk of the Superior Court**
MIRNA P. RIVERA-MARTINEZ

Sincerely,

Susan Y. Soong, Clerk

*Cynthia J. Lenahan*

by: Cynthia Lenahan
Case Systems Administrator
510-637-3538

FILED

OCT 26 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

RECEIVED
SAN MATEO COUNTY

OCT 1 8 20

Clerk of the Superior Court
MIGNA P. TOMSA-MARTINEZ

| Attorney or Party without Attorney:<br>John Jasnoch, Esq., Bar #281605<br>Scott+Scott, Attorneys at Law, LLP<br>600 West Broadway, Suite 3300<br>San Diego, CA 92101<br>_Telephone No:_ 619-233-4565   _FAX No:_ 619-233-0508 | _For Court Use Only_<br><br>**FILED**<br>SAN MATEO COUNTY<br><br>OCT 2 4 2018<br><br>Clerk of the Superior Court<br>By<br>DEPUTY CLERK |
|---|---|
| _Ref. No. or File No.:_ | |

_Attorney for:_ Plaintiff

_Insert name of Court, and Judicial District and Branch Court:_

San Mateo County Superior Court

_Plaintiff:_ Avner Greenwald, et al.

_Defendant:_ Ripple Labs, Inc.

| **PROOF OF SERVICE**<br>**Summons; Complaint** | _Hearing Date:_ | _Time:_ | _Dept/Div:_ | _Case Number:_<br>18CIV03461 |
|---|---|---|---|---|

_1. At the time of service I was at least 18 years of age and not a party to this action._

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet; Certificate re Complex Case Designation; Notice of Assignment; ADR Information

_3. a. Party served:_        Ripple Labs, Inc., a Delaware corporation
   _b. Person served:_      Norman Reed, Agent for Service

_4. Address where the party was served:_     315 Montgomery Street, 2nd Floor
                                      San Francisco, CA 94104

_5. I served the party:_
   b. **by substituted service.** On: Mon., Jul. 09, 2018 at: 4:25PM by leaving the copies with or in the presence of:
                   Bernardo Diaz, Assistant Manager / Authorized to Accept Service
     (1) **(Business)** a Person in charge at least 18 years of age apparently in charge of the office or usual place of business of the
          person served. I informed him or her of the general nature of the papers.
     (4) A declaration of mailing is attached.

_6. The "Notice to the Person Served" (on the Summons) was completed as follows:_
   _on behalf of:_ Ripple Labs, Inc., a Delaware corporation
   Under CCP 416.10 (corporation)

_7. Person Who Served Papers:_                Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. Robert Wigersma
   **b. Class Action Research & Litigation**     d. _The Fee for Service was:_
     P O Box 740                            e. I am: (3) registered California process server
     Penryn, CA 95663                            _(i)_   Independent Contractor
   c. (916) 663-2562, FAX (916) 663-4955           _(ii)_   _Registration No.:_     769
                                               _(iii)_ _County:_         San Francisco

```
18 - CIV - 03461
PCSBC
Proof of Service on CORPORATION, LLC, etc.
1462996
```

FILE BY FAX

_8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct._

   Date: **Thu, Jul. 12, 2018**

    **PROOF OF SERVICE**<br>Summons; Complaint              (Robert Wigersma)      _jojas.180047_

| Attorney or Party without Attorney:<br>John Jasnoch, Esq., Bar #281605<br>Scott+Scott, Attorneys at Law, LLP<br>600 West Broadway, Suite 3300<br>San Diego, CA 92101<br>Telephone No: 619-233-4565    FAX No: 619-233-0508 | For Court Use Only |
|---|---|

*Attorney for:* Plaintiff

*Ref. No or File No.:*

*Insert name of Court, and Judicial District and Branch Court:*
San Mateo County Superior Court

*Plaintiff:* Avner Greenwald, et al.

*Defendant:* Ripple Labs, Inc., et al.

| **PROOF OF SERVICE**<br>**By Mail** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>18CIV03461 |
|---|---|---|---|---|

1. I am over the age of 18 and not a party to this action. I am employed in the county where the mailing occurred.

2. I served copies of the Corrected Summons; Class Action Complaint; Civil Case Cover Sheet; Certificate re Complex Case Designation; Notice of Case Management Conference; ADR Information

3. By placing a true copy of each document in the United States mail, in a sealed envelope by **First Class** mail with postage prepaid as follows:

   a. Date of Mailing:                Tue., Jul. 10, 2018
   b. Place of Mailing:               Penryn, CA 95663
   c. Addressed as follows:           Ripple Labs, Inc., a Delaware corporation
                                      c/o Norman Reed, Agent for Service
                                      315 Montgomery Street, 2nd Floor
                                      San Francisco, CA 94104

4. I am readily familiar with the business practice for collection and processing of correspondence as deposited with the U.S. Postal Service on Tue., Jul. 10, 2018 in the ordinary course of business.

5. *Person Serving:*                                          Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. Janis Dingman                          d. **The Fee for Service was:**
   b. Class Action Research & Litigation      e. I am: (3) registered California process server
      P O Box 740                                 (i)    Owner
      Penryn, CA 95663                            (ii)   Registration No.:    15-009
   c. (916) 663-2562, FAX (916) 663-4955         (iii)  County:              Placer
                                                 (iv)   Expiration Date:     Wed, Jun. 05, 2019

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

   *Date:  Thu, Jul. 12, 2018*

Judicial Council Form POS-010          PROOF OF SERVICE                    (Janis Dingman)          jojas.180047
Rule 2.150.(a)&(b) Rev January 1, 2007          By Mail

| Attorney or Party without Attorney: | | | For Court Use Only |
|---|---|---|---|
| John Jasnoch, Esq., Bar #281605<br>Scott+Scott, Attorneys at Law, LLP<br>600 West Broadway, Suite 3300<br>San Diego, CA 92101<br>*Telephone No:* 619-233-4565   *FAX No:* 619-233-0508 | | | **FILED**<br>**SAN MATEO COUNTY**<br>OCT 2 4 2018<br>Clerk of the Superior Court<br>BY_____ DEPUTY CLERK |
| *Attorney for:* Plaintiff | | *Ref. No. or File No.:* | |

| *Insert name of Court, and Judicial District and Branch Court:* |
|---|
| San Mateo County Superior Court |
| *Plaintiff:* Avner Greenwald, et al. |
| *Defendant:* Ripple Labs, Inc., et al. |

| **AFFIDAVIT OF SERVICE**<br>**Summons & Complaint** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>18CIV03461 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Corrected Summons; Class Action Complaint; Civil Case Cover Sheet; Certificate re Complex Case Designation; Notice of Case Management Conference; ADR Information

*3. a. Party served:*                          XRP II, a South Carolina Limited Liability Company
   *b. Person served:*                   John Doe, Service of Process Intake Clerk, Caucasian, Male, 38 Years Old, Brown Hair, 5 Feet 10 Inches, 170 Pounds

*4. Address where the party was served:*      Corporation Service Company
                                         80 State Street
                                         Albany, NY 12207

*5. I served the party:*
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Tue., Jul. 10, 2018 (2) at: 2:25PM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   *on behalf of:* XRP II, a South Carolina Limited Liability Company
   *Other:* Limited Liability Company

*7. Person Who Served Papers:*                      *Fee for Service:*
   a. Mary M. Bonville                             I Declare under penalty of perjury under the laws of the State of
   b. Class Action Research & Litigation          NEW YORK that the foregoing is true and correct.
      P O Box 740
      Penryn, CA 95663
   c. (916) 663-2562, FAX (916) 663-4955      July 19, 2018   *Mary M. Bonville*
                                                *(Date)*               *(Signature)*

FILE BY FAX

18 – CIV – 03461
PSQ1
Proof of Service by
1453019

8. STATE OF NEW YORK, COUNTY OF _Albany_

Subscribed and sworn to (or affirmed) before me on this _19TH_ day of _July, 2018_ by Mary M. Bonville

proved to me on the basis of satisfactory evidence to be the person who appeared before me.

                                                              *Vera B. Ray*

VERA B. RAY           **AFFIDAVIT OF SERVICE**             *(Notary Signature)*
Notary Public - State of New York   Summons & Complaint                      *jajas.180193*
Albany County No. 01RA6133233
Commission Expires on 09-12- _2021_

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Peter B. Morrison (SBN 230148)<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Ave., Ste. 3400<br>Los Angeles, CA 90071<br>TELEPHONE NO.: (213) 687-5000   FAX NO. *(Optional):* (213) 687-5600<br>E-MAIL ADDRESS *(Optional):* peter.morrison@skadden.com<br>ATTORNEY FOR *(Name):* Ripple Labs Inc. et al. | **ENDORSED FILED**<br>SAN MATEO COUNTY<br>OCT 25 2018<br>Clerk of the Superior Court<br>By: ANTONIO R. GERONIMO<br>Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo | |
|---|---|
| STREET ADDRESS: 400 County Center | |
| MAILING ADDRESS: 400 County Center | |
| CITY AND ZIP CODE: Redwood City, CA 94063 | |
| BRANCH NAME: | |

| PLAINTIFF/PETITIONER: Avner Greenwald | CASE NUMBER:<br>18-CIV-03461 |
|---|---|
| DEFENDANT/RESPONDENT: Ripple Labs Inc. et al. | JUDICIAL OFFICER: |
| **NOTICE OF RELATED CASE** | DEPT.: |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: In Re Ripple Labs Inc. Litigation
   b. Case number: Lead Case No. 18-CIV-02845
   c. Court: [✔] same as above
      [ ] other state or federal court *(name and address):*
   d. Department: 16
   e. Case type: [ ] limited civil [✔] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*
   f. Filing date: 6/5/18; 6/27/18
   g. Has this case been designated or determined as "complex?" [✔] Yes [ ] No
   h. Relationship of this case to the case referenced above *(check all that apply):*
      [✔] involves the same parties and is based on the same or similar claims.
      [✔] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      [ ] involves claims against, title to, possession of, or damages to the same property.
      [✔] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
         [ ] Additional explanation is attached in attachment 1h
   i. Status of case:
      [✔] pending
      [ ] dismissed [ ] with [ ] without prejudice
      [ ] disposed of by judgment

2. a. Title:
   b. Case number:
   c. Court: [ ] same as above
      [ ] other state or federal court *(name and address):*
   d. Department:

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Page 1 of 3 |
|---|---|---|
| | | Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov |

COPY   FAXED

CM-015

| PLAINTIFF/PETITIONER: Avner Greenwald | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Ripple Labs Inc. et al. | 18-CIV-03461 |

2. *(continued)*

    e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

    f. Filing date:

    g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply):*

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

            ☐ Additional explanation is attached in attachment 2h

    i. Status of case:

        ☐ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

3.  a. Title:

    b. Case number:

    c. Court: ☐ same as above

        ☐ other state or federal court *(name and address):*

    d. Department:

    e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

    f. Filing date:

    g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

    h. Relationship of this case to the case referenced above *(check all that apply):*

        ☐ involves the same parties and is based on the same or similar claims.

        ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

        ☐ involves claims against, title to, possession of, or damages to the same property.

        ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

            ☐ Additional explanation is attached in attachment 3h

    i. Status of case:

        ☐ pending

        ☐ dismissed ☐ with ☐ without prejudice

        ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: October 25, 2018

Peter B. Morrison

_Peter B. Morrison | VFM_

(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)             (SIGNATURE OF PARTY OR ATTORNEY)

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

     I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 300 S. Grand Avenue, Los Angeles, California 90071. My email address is candice.spoon@skadden.com.

On October 25, 2018  I served the  documents described as:

### NOTICE OF RELATED CASE

on the interested parties in this action addressed as follows:

| | |
|---|---|
| BRIAN J. ROBBINS<br>brobbins@robbinsarroyo.com<br>STEPHEN J. ODDO<br>soddo@robbinsarroyo.com<br>ERIC M. CARRINO<br>ecarrino@robbinsarroyo.com<br>ROBBINS ARROYO LLP<br>600 B Street, Suite 1900<br>San Diego, CA 92101<br>Telephone:      (619) 525-3990<br>Facsimile:      (619) 525-3991<br><br>Attorneys for Plaintiffs Vladi Zakinov and David Oconer | David C. Walton<br>Brian 0. O'Mara<br>Brian E. Cochran<br>ROBBINS GELLER RUDMAN<br>& DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: (619) 231-1058<br>Facsimile: (619) 231-7423<br>E-mail: davew@rgrdlaw.com<br>bomara@rgrdlaw.com<br>bcochran@rgrdlaw.com<br><br>Attorneys for Plaintiff Vladi Zakinov |
| Shawn A. Williams<br>ROBBINS GELLER RUDMAN<br>& DOWD LLP<br>Post Montgomery Center<br>One Montgomery Street, Suite 1800<br>San Francisco, CA 94104<br>Telephone: (415) 288-4545<br>Facsimile: (415) 288-4534<br>E-mail: shawnw@rgrdlaw.com<br><br>Attorneys for Plaintiff Vladi Zakinov | Andrew J. Ceresney<br>aceresney@debevoise.com<br>Mary Jo White<br>mjwhite@debevoise.com<br>DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, New York  10022<br>Telephone: (212) 909-6000<br>Facsimile:   (212) 909-6836<br><br>Attorneys for Defendants<br>Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse |
| SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>John T. Jasnoch<br>600 W. Broadway, Suite 3300<br>San Diego, CA  92101<br>Telephone: 619-233-4565<br>Facsimile: 619-233-0508<br>jjasnoch@scott-scott.com<br><br>Attorneys for Plaintiff – Avner Greenwald | SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>Thomas L. Laughlin, IV<br>Rhiana L. Swartz<br>The Helmsley Building<br>230 Park Avenue, 17th Floor<br>New York, NY 10169<br>Telephone: 212-223-6444<br>Facsimile: 212-223-6334<br><br>Attorneys for Plaintiff - Avner Greenwald |

    ☒    **(BY FEDERAL EXPRESS)**  I am readily familiar with the firm's practice for the daily collection and processing of correspondence for deliveries with the Federal Express delivery service and the fact that the correspondence would be deposited with Federal Express that same

2

day in the ordinary course of business; on this date, the above-referenced document was placed for deposit at Los Angeles, California and placed for collection and delivery following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 25, 2018 at Los Angeles, California.

_____Candice Spoon_____
PRINT NAME

_____
SIGNATURE



FILED
SAN MATEO COUNTY

NOV. - 1 2018

Clerk of the Superior Court
By
DEPUTY CLERK

```
18 - CIV - 03461
ORD
Order
1469551
```

1

2

3

4

5

6     IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7     IN AND FOR THE COUNTY OF SAN MATEO

8

9

10  AVNER GREENWALD, individually and on behalf
Of all others similarly situated,

11             Plaintiff,

12

13     vs.

14  RIPPLE LABS INC. et al.

15            Defendants,

16

| | |
|---|---|
| | Case No. 18 CIV 03461 |
| | CLASS ACTION |
| | |
| | ORDER DEEMING CASE RELATED AND |
| | CONSOLIDATING ACTION INTO MASTER |
| | FILE NO. 18CIV02845 |
| | |
| | Dept.:  Hon. Richard H. DuBois |
| | Dept. 16 |

17     TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

18        The Master File consolidated class action cases, 18CIV02845, were previously designated as

19  complex and single assigned to Department 16, Honorable Richard DuBois.

20        On October 25, 2018, Defendant Ripple Labs Inc. in 18CIV03461, a putative class action, filed a

21  Notice of Related Case, indicating that the action is related to *In re Ripple Labs Inc Litigation,* Master file

22  No. 18CIV02845.

23        Accordingly, IT IS HEREBY ORDERED AS FOLLOWS:

24        1.     Notice of Related Case having been filed and served, and no opposition or objection filed

25  and served, the case of *Greenwald vs. Ripple Labs Inc 18CIV03461* is deemed "related" to the pending

26  consolidated class actions entitled *In re Ripple Labs Inc Litigation,* Master file No. 18CIV02845.

27        2.     Pursuant to the order in Master File No. 18CIV02845 consolidating related class actions,

28  and having been previously assigned for all purposes to Department 16, the case of *Greenwald vs. Ripple*

1    *Labs Inc 18CIV03461* is ordered CONSOLIDATED as part of Master File No. 18CIV02845.

2         3.    Accordingly, any Complex Status Conference or Case Management Conference previously

3    set for 18CIV03461 is VACATED.  The Case Management Conference in the Master file set for November

4    16, 2018 at 10:30 a.m. in Department 16 shall remain on calendar.

5

6

7    Dated:    OCT 31 2018        By: _____

8                                    Richard H. DuBois
                                     JUDGE OF THE SUPERIOR COURT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**SUPERIOR COURT OF SAN MATEO COUNTY**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

**F I L E D**
SAN MATEO COUNTY
NOV - 1 2018
Clerk of the Superior Court
By_____
DEPUTY CLERK

## AFFIDAVIT OF MAILING

Date: 11/1/2018

In the Matter of: AVNER GREENWALD  vs.  RIPPLE LABS, INC., a Delaware Corporation, et al
Case No.: 18-CIV-03461

I declare under penalty of perjury that on the following date I deposited in the United States Post Office mail box at Redwood City, a true copy of the attached document(s) ORDER DEEMING CASE RELATED AND CONSOLIDATING ACTION INTO MASTER FILE NO. 18CIV02845, enclosed in an envelope, with proper and necessary postage thereon, and addressed to the following:

Executed on: 11/1/2018

Neal I. Taniguchi, Court Executive Officer/Clerk

By: _____
Andrea Daley, Deputy Clerk

Copies Mailed To:

BRIAN J. ROBBINS
STEPHEN J. ODDO
600 B STREET, SUITE 1900
SAN DIEGO, CA  92101

SHAWN A. WILLIAMS
ROBBINS, GELLER, RUDMAN & DOWD LLP
POST MONTGOMERY CENTER
ONE MONTGOMERY STREET, SUITE 1800
SAN FRANCISCO, CA 94104

BRIAN O'MARA
ROBBINS, GELLER, RUDMAN & DOWD LLP
655 WEST BROADWAY, SUITE 1900
SAN DIEGO, CA 92101

PETER B. MORRISON
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CA  90071

JOHN NEUKOM
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 UNIVERSITY AVENUE, SUITE 1400
PALO ALTO, CA 94301

18 – CIV – 03461
AFM
Affidavit of Mailing
1468990

Rev. Jun. 2016

MARY JO WHITE
DEBEVOISE & PLIMPTON LLP
919 THIRD AVENUE
NEW YORK, NY 10022

JOHN T. JASNOCH
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 WEST BROADWAY, SUITE 3300
SAN DIEGO, CA 92101

THOMAS L. LAUGHLIN, IV
RHIANA L. SWARTZ
SCOTT+SCOTT ATTORNEYS AT LAW LLP
THE HELMSLEY BUILDING
230 PARK AVENUE, 17TH FLOOR
NEW YORK, NY 10169

**FILED**

**SAN MATEO COUNTY**

NOV. - 1 2018

Clerk of the Superior Court

By

DEPUTY CLERK

18 – CIV – 03461
ORD
Order
1469551

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

AVNER GREENWALD, individually and on behalf
Of all others similarly situated,

    Plaintiff,

vs.

RIPPLE LABS INC. et al.

    Defendants,

Case No.  18 CIV 03461
CLASS ACTION

ORDER DEEMING CASE RELATED AND
CONSOLIDATING ACTION INTO MASTER
FILE NO. 18CIV02845

Dept.:  Hon. Richard H. DuBois
       Dept. 16

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

    The Master File consolidated class action cases, 18CIV02845, were previously designated as complex and single assigned to Department 16, Honorable Richard DuBois.

    On October 25, 2018, Defendant Ripple Labs Inc. in 18CIV03461, a putative class action, filed a Notice of Related Case, indicating that the action is related to *In re Ripple Labs Inc Litigation,* Master file No. 18CIV02845.

    Accordingly, IT IS HEREBY ORDERED AS FOLLOWS:

    1.    Notice of Related Case having been filed and served, and no opposition or objection filed and served, the case of *Greenwald vs. Ripple Labs Inc 18CIV03461* is deemed "related" to the pending consolidated class actions entitled *In re Ripple Labs Inc Litigation,* Master file No. 18CIV02845.

    2.    Pursuant to the order in Master File No. 18CIV02845 consolidating related class actions, and having been previously assigned for all purposes to Department 16, the case of *Greenwald vs. Ripple*

Case No.  18 CIV 03461

1    *Labs Inc 18CIV03461* is ordered CONSOLIDATED as part of Master File No. 18CIV02845.

2            3.      Accordingly, any Complex Status Conference or Case Management Conference previously

3    set for 18CIV03461 is VACATED.  The Case Management Conference in the Master file set for November

4    16, 2018 at 10:30 a.m. in Department 16 shall remain on calendar.

5

6

7    Dated:      OCT 3 1 2018      By: _____

8                                      Richard H. DuBois
                                       JUDGE OF THE SUPERIOR COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**SUPERIOR COURT OF SAN MATEO COUNTY**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

**F I L E D**
SAN MATEO COUNTY

NOV - 1 2018

Clerk of the Superior Court
By
DEPUTY CLERK

## AFFIDAVIT OF MAILING

Date: 11/1/2018

In the Matter of: AVNER GREENWALD  vs.  RIPPLE LABS, INC., a Delaware Corporation, et al
Case No.: 18-CIV-03461

I declare under penalty of perjury that on the following date I deposited in the United States Post Office mail box at Redwood City, a true copy of the attached document(s) ORDER DEEMING CASE RELATED AND CONSOLIDATING ACTION INTO MASTER FILE NO. 18CIV02845, enclosed in an envelope, with proper and necessary postage thereon, and addressed to the following:

Executed on: 11/1/2018

Neal I. Taniguchi, Court Executive Officer/Clerk

By: _____
Andrea Daley, Deputy Clerk

Copies Mailed To:

BRIAN J. ROBBINS
STEPHEN J. ODDO
600 B STREET, SUITE 1900
SAN DIEGO, CA  92101

SHAWN A. WILLIAMS
ROBBINS, GELLER, RUDMAN & DOWD LLP
POST MONTGOMERY CENTER
ONE MONTGOMERY STREET, SUITE 1800
SAN FRANCISCO, CA 94104

BRIAN O'MARA
ROBBINS, GELLER, RUDMAN & DOWD LLP
655 WEST BROADWAY, SUITE 1900
SAN DIEGO, CA 92101

PETER B. MORRISON
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CA  90071

JOHN NEUKOM
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 UNIVERSITY AVENUE, SUITE 1400
PALO ALTO, CA 94301

18 – CIV – 03461
AFM
Affidavit of Mailing
1468990

Rev. Jun. 2016

MARY JO WHITE
DEBEVOISE & PLIMPTON LLP
919 THIRD AVENUE
NEW YORK, NY 10022

JOHN T. JASNOCH
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 WEST BROADWAY, SUITE 3300
SAN DIEGO, CA 92101

THOMAS L. LAUGHLIN, IV
RHIANA L. SWARTZ
SCOTT+SCOTT ATTORNEYS AT LAW LLP
THE HELMSLEY BUILDING
230 PARK AVENUE, 17TH FLOOR
NEW YORK, NY 10169