PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600

JOHN NEUKOM (SBN 275887)
john.neukom@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile:  (650) 470-4570

Attorney for Defendants
Ripple Labs Inc., XRP II, LLC, Bradley
Garlinghouse, Christian Larsen, Ron Will,
Antoinette O'Gorman, Eric van Miltenburg,
Susan Athey, Zoe Cruz, Ken Kurson, Ben
Lawsky, Anja Manuel, and Takashi Okita

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE RIPPLE LABS INC. LITIGATION | CASE NO.: 4:18-cv-06753-PJH |
| This Document Relates To:<br><br>    ALL ACTIONS. | **(1) DEFENDANTS' OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF AVNER GREENWALD'S AND VLADI ZAKINOV'S AND DAVID OCONER'S MOTIONS TO REMAND;**<br><br>**(2) DECLARATION OF VIRGINIA F. MILSTEAD IN SUPPORT THEREOF (filed under separate cover) and;**<br><br>**(3) [PROPOSED] ORDER (lodged under separate cover).**<br><br>Date:    February 13, 2019<br>Time:   9:00 a.m.<br>Dep't.:  3<br>Judge:  Hon. Phyllis J. Hamilton |

**TABLE OF CONTENTS**

**PAGE**

ISSUES TO BE DECIDED ................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.  PRELIMINARY STATEMENT ......................................................... 1

II.  FACTUAL BACKGROUND ............................................................ 4

    A.  Plaintiffs Filed Substantially Identical Actions In California State Court ...... 4

    B.  The Duplicative Actions Are Consolidated And Removed To This Court .... 5

    C.  Greenwald And Ripple Labs Are Nearly Identical ......................... 7

III.  CAFA INVOKES A PRESUMPTION IN FAVOR OF, NOT AGAINST, REMOVAL ....................................................................... 8

IV.  CONSOLIDATION MADE THIS ACTION REMOVABLE PURSUANT TO CAFA ...................................................................................... 8

    A.  This Court Should Not Consider The Propriety Of The Underlying Consolidation ......................................................................... 9

    B.  The Second Consolidation Order Validly Consolidated The Actions ........... 9

    C.  The Second Consolidation Order Was Appropriate On Its Merits .............. 11

    D.  The Second Consolidation Order Completely Consolidated The Actions ... 15

    E.  The Second Consolidation Order Rendered The Action Removable ........... 16

V.  NO "VOLUNTARY ACT" WAS NECESSARY TO MAKE THE ACTION REMOVABLE, BUT A "VOLUNTARY ACT" OCCURRED .............................. 19

    A.  CAFA's "Mass Action" Provision Does Not Apply .................................... 19

    B.  The Voluntary-Involuntary Rule Is Inapplicable Here ................................ 21

VI.  NO EXCEPTION TO CAFA JURISDICTION APPLIES ...................................... 24

    A.  The Local Controversy Exception Does Not Apply .................................... 24

    B.  The Securities Exception Does Not Apply .................................................. 25

VII.  PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES ........................... 25

VIII.  CONCLUSION .................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>                                                                                                      **PAGE(S)**

3
Abeyta v. Raytheon Space & Airborne Systems Co.,
   No. CV 08-2677-JFW (PLAx),
4
   2008 WL 11338842 (C.D. Cal. June 12, 2008) ................................................................. 22

5
Agnello v. Twin Hill Acquisition Co.,
   No. 18-cv-02756-JCS,
6
   2018 WL 3972022 (N.D. Cal. Aug. 20, 2018) ...................................................................20

7
Amadu v. Bradshaw,
   No. 15-8033 (RBK/AMD),
8
   2016 WL 3676474 (D.N.J. July 11, 2016)......................................................................9, 18

9
Aronson v. McKesson HBOC, Inc.,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ...............................................................................13
10

In re Bank of America Corp. Securities, Derivative & Employment Retirement Income Security Act
11
   (ERISA) Litigation,
   258 F.R.D. 260 (S.D.N.Y. 2009) ........................................................................................14
12

Barker v. Hartford Fire Insurance Co.,
13
   100 F. Supp. 1022 (E.D. Ky. 1951) ....................................................................................22

14
In re Bear Stearns Companies, Inc. Securities, Derivative, & Employee Retirement Income Security
   Act (Erisa) Litigation,
15
   No. 08 M.D.L. No. 1963 (RWS),
   2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ..........................................................................14
16

Benko v. Quality Loan Service Corp.,
17
   789 F.3d 1111 (9th Cir. 2015) ............................................................................................24

18
Bley v. Travelers Insurance Co.,
   27 F. Supp. 351 (S.D. Ala. 1939) .......................................................................................23
19

Bridewell-Sledge v. Blue Cross of California,
20
   798 F.3d 923 (9th Cir. 2015) ........................................................................................17, 18

21
Bryant v Matson Navigation Co.,
   No. RG07361995,
22
   2008 WL 7759184 (Super. Ct. Alameda Cty. Nov. 6, 2008) ...............................................9

23
California State University, Fresno Ass'n v. County of Fresno,
   9 Cal. App. 5th 250 (2017) ...................................................................................................9
24

Camino Camper of San Jose, Inc. v. Winnebago Industries, Inc.,
25
   715 F. Supp. 964 (N.D. Cal. 1989) .....................................................................................22

26
Chow v. Hirsch,
   No. C-98-4619 PJH,
27
   1999 U.S. Dist. LEXIS 3010 (N.D. Cal. Feb. 22, 1999) ....................................................23

28

City of Oakland v. Abend,
   No. C-07-2142 EMC,
   2007 WL 2023506 (N.D. Cal. July 12, 2007)................................................................15, 18

Coffey v. Ripple Labs Inc.,
   333 F. Supp. 3d 952 (N.D. Cal. 2018) ....................................................2, 4, 8, 9, 14

Cohen v. GTE Government Systems Corp.,
   No. C-92-20783 RMW (EAI),
   1993 U.S. Dist. LEXIS 7914 (N.D. Cal. Apr. 6, 1993) ........................................................2

Corber v. Xanodyne Pharmaceuticals, Inc.,
   771 F.3d 1218 (9th Cir. 2014) ................................................................................20

Dart Cherokee Basin Operating Co., LLC v. Owens,
   135 S. Ct. 547 (2014)........................................................................................8

In re Diebold Securities Litigation,
   Nos. 5:05 CV 2873 et seq.,
   2006 WL 3023033 (N.D. Ohio Oct. 23, 2006) ..............................................................14

Dunkin v. A.W. Chesterson Co.,
   No. C 10-458 SBA,
   2010 WL 1038200 (N.D. Cal. Mar. 19, 2010)...............................................................22

Dunson v. Cordis Corp.,
   854 F.3d 551 (9th Cir. 2017) ................................................................................20

Eminence Investors, L.L.L.P. v. Bank of New York Mellon,
   782 F.3d 504 (9th Cir. 2015) ................................................................................25

Goodman v. Wells Fargo Bank, N.A.,
   No. CV 14-3171-JFW (RZx),
   2014 WL 12626334 (C.D. Cal. July 1, 2014).................................................................22

Goodman v. Wells Fargo Bank, N.A.,
   602 F. App'x 681 (9th Cir. 2015)............................................................................22

Greenwald v. Ripple Labs, Inc.,
   No. 18-cv-04790-PJH,
   2018 WL 4961767 (N.D. Cal. Oct. 15, 2018),
   appeal filed, No. 18-80147 (9th Cir. Oct. 25, 2018)...........................................................6

Hall v. Hall,
   138 S. Ct. 1118 (2018)......................................................................................18

Hamilton v. Asbestos Corp.,
   22 Cal. 4th 1127 (2000) .................................................................................15, 16

Heritage Pacific Financial, LLC v. Monroy,
   215 Cal. App. 4th 972 (2013) .................................................................................9

Hill v. The Tribune Co.,
   Nos. 05 C 2602 et seq.,
   2005 WL 3299144 (N.D. Ill. Oct. 13, 2005) ................................................................15

International Society for Krishna Consciousness, Inc. v. City of Los Angeles,
611 F. Supp. 315 (C.D. Cal. 1984) .......................................................................................18

J.G. Link & Co. v. Continental Casualty Co.,
470 F.2d 1133 (9th Cir. 1973) ...........................................................................................18

Jefferson Street Ventures, LLC v. City of Indio,
236 Cal. App. 4th 1175 (2015) ..........................................................................................12

Johnson v. Vowell,
No. 423566,
2003 WL 25454210 (Super. Ct. San Francisco Cty. Nov. 24, 2003) .................................10

Jordan v. Nationstar Mortgage, LLC,
781 F.3d 1178 (9th Cir. 2015) ........................................................................................8, 25

Jud Whitehead Heater Co. v. Obler,
111 Cal. App. 2d 861 (1952) ........................................................................................16, 19

Lighthouse Financial Group v. Royal Bank of Scotland Group, PLC,
902 F. Supp. 2d 329 (S.D.N.Y. 2012),
aff'd sub nom. IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund
v. Royal Bank of Scotland Group, PLC, 783 F.3d 383 (2d Cir. 2015)................................14

Louisville & Nashville Railroad Co. v. Mottley,
211 U.S. 149 (1908)...........................................................................................................21

Meeder v. Superior Tube Co.,
72 F.R.D. 633 (W.D. Pa. 1976) .........................................................................................14

In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation,
399 F. Supp. 2d 340 (S.D.N.Y. 2005) ..............................................................................3, 22

Miller v. Ventro Corp.,
No. 01-CV-1287,
2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) .................................................................13

Moreland v. Department of Corps.,
194 Cal. App. 3d 506 (1987) .............................................................................................13

Morris-Edge Masonry, Inc. v. Tonn & Blank, Inc.,
461 So. 2d 1036 (Fla. Dist. Ct. App. 1985) .......................................................................10

Moss Bros. Toy, Inc. v. Ruiz,
27 Cal. App. 5th 424 (2018) ..........................................................................................14, 15

National Union Fire Insurance Co. v. Chesapeake & Ohio Railway Co.,
4 F. Supp. 25 (E.D. Ky. 1933) ...........................................................................................23

New Jersey Carpenters Vacation Fund v. HarborView Mortgage Loan Trust 2006-4,
581 F. Supp. 2d 581 (S.D.N.Y. 2008) ...............................................................................14

Parkhill Produce Co. v. Pecos Valley Southern Railway Co.,
196 F. Supp. 404 (S.D. Tex. 1961) impliedly overruled in part on other grounds, Weems v. Louis
Dreyfus Corp., 380 F.2d 545 (5th Cir. 1967) .................................................................22, 23

People ex rel. Camil v. Buena Vista Cinema,
    57 Cal. App. 3d 497 (1976) ............................................................................3, 16, 18, 19

Pineda v. Bank of America, N.A.,
    No. C 11-00606 WHA,
    2011 WL 1134467 (N.D. Cal. Mar. 28, 2011)..................................................................22

Powers v. Chesapeake & Ohio Railway,
    169 U.S. 92 (1898)............................................................................................................21

Rice v. McKesson Corp.,
    No. C 12-05949 WHA,
    2013 WL 97738 (N.D. Cal. Jan. 7, 2013) .......................................................................20

Rochester Laborers Pension Fund v. Monsanto Co.,
    No. 4:10CV1380 CDP,
    2010 WL 3842549 (E.D. Mo. Sept. 28, 2010) ...............................................................13

Russello v. United States,
    464 U.S. 16 (1983).............................................................................................................21

Sanchez v. Superior Court,
    203 Cal. App. 3d 1391 (1988) ....................................................................................10, 16

Savadians v Toledo,
    No. HG09447714,
    2009 WL 7165886 (Super. Ct. Alameda Cty. Dec. 9, 2009)............................................9

Schnabel v. Lui,
    302 F.3d 1023 (9th Cir. 2002) .........................................................................................18

SEC v. W.J. Howey Co.,
    328 U.S. 293 (1946)...........................................................................................................13

Self v. General Motors Corp.,
    588 F.2d 655 (9th Cir. 1978) ...........................................................................................21

SG Cowen Securities Corp. v. United States States District Court,
    189 F.3d 909 (9th Cir. 1999) ...........................................................................................15

Sutter Health Uninsured Pricing Cases,
    171 Cal. App. 4th 495 (2009) ...........................................................................................10

Tanoh v. Dow Chemical Co.,
    561 F.3d 945 (9th Cir. 2009) ...........................................................................................20

Taylor v. Belen,
    No. H-605-230854,
    2006 WL 6049034 (Super. Ct. Alameda Cty. June 15, 2006)...........................................10

Thompson v. Target Corp.,
    No. EDCV 16-00839 JGB (MRWx),
    2016 WL 4119937 (C.D. Cal. Aug. 2, 2016).............................................................21, 23

<u>Tonyco, Inc. v. Equity Marketing, Inc.</u>,
   No. 99–74995,
   2000 WL 654957 (E.D. Mich. Apr. 25, 2000)................................................................22

<u>In re Trump Hotel Shareholder Derivative Litigation</u>,
   No. 96CIV.7820 (DAB)(HBP),
   1997 WL 442135 (S.D.N.Y. Aug. 5, 1997)................................................................15

<u>Unifoil Corp. v. Southeast Personnel Leasing, Inc.</u>,
   No. 18-18,
   2018 WL 4676044 (D.N.J. Sept. 28, 2018) .............................................................2, 9

<u>Welgs v. Dolan</u>,
   No. 1:11 CV 1241,
   2011 WL 3444281 (N.D. Ohio Aug. 8, 2011) .........................................................22

<u>Whitcomb v. Smithson</u>,
   175 U.S. 635 (1900)...................................................................................................21

**STATUTES**

15 U.S.C. § 77b ............................................................................................................ 13

15 U.S.C. § 77e ............................................................................................................ 13

15 U.S.C. § 77l ............................................................................................................. 13

15 U.S.C. § 77v ............................................................................................................. 4

15 U.S.C. § 77z-1 ........................................................................................................ 15

28 U.S.C. § 1332 .......................................................................................... 1, 8, 20, 24,25

28 U.S.C. § 1447 .......................................................................................................... 25

28 U.S.C. § 1453 ................................................................................................. 1, 8, 25

Cal. Civ. Proc. Code § 404 ...................................................................................... 3, 12

Cal. Civ. Proc. Code § 1048 ................................................................................... 12, 16

Cal. Corp. Code § 25019 ............................................................................................. 13

Cal. Corp. Code § 25110 ............................................................................................. 13

Cal. Corp. Code § 25111 ............................................................................................. 13

Cal. Corp. Code § 25503 ............................................................................................. 13

**RULES**

Cal. R. Ct. 3.300 ............................................................................................................ 6

Cal. R. Ct. 3.767 .......................................................................................................... 10

## OTHER AUTHORITIES

4 B.E. Witkin, California Procedure: Pleadings § 346 (5th ed. 2008)..................................................... 17

Loss, Seligman & Paredes, Securities Regulation §§ 11.B.2, 11.B.3 (2018).......................................... 13

Robert I. Weil, et al., Cal. Practice Guide: Civ. Proc. Before Trial § 12:370 (2018)............................. 12

OPPOSITION TO MOTIONS TO REMAND                           CASE NO.: 4:18-cv-06753-PJH

1  Defendants Ripple Labs Inc. ("Ripple"), XRP II, LLC ("XRP II"), Bradley Garlinghouse,

2  Christian Larsen, Ron Will, Antoinette O'Gorman, Eric van Miltenburg, Susan Athey, Zoe Cruz, Ken

3  Kurson, Ben Lawsky, Anja Manuel, and Takashi Okita (collectively, "Defendants") respectfully

4  submit this Omnibus Opposition to Plaintiffs' Motions to Remand (ECF 17, 18).

5  <u>**ISSUES TO BE DECIDED**</u>

6  1.      Whether removal was proper because the consolidation of two actions by the Superior

7  Court of California, County of San Mateo ("San Mateo Superior Court") created minimal diversity

8  among the parties, making this action removable under the Class Action Fairness Act ("CAFA"), 28

9  U.S.C. §§ 1332(d), 1453.

10  2.      Whether the "voluntary-involuntary rule" applies when an order of consolidation creates

11  the basis for federal jurisdiction and, if it does apply, whether the rule was satisfied by Plaintiffs' entry

12  into a stipulation expressly contemplating consolidation, including consolidation of removed actions.

13  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

14  **I.      PRELIMINARY STATEMENT**

15  This consolidated putative class action ("Action") concerns Defendants' alleged sales of a

16  virtual currency—XRP—"to the general public through global, online cryptocurrency exchanges."

17  (Ex. A ¶¶ 29, 31; Ex. B ¶¶ 39, 41, 79.)[1]  Raising the misguided theory that XRP is a "security" under

18  state and federal securities law, Plaintiffs each filed separate actions in San Mateo Superior Court.

19  Two Plaintiffs (Zakinov and Oconer) alleged violations of the securities qualification requirements of

20  the California Corporations Code ("Corporations Code"), purportedly on behalf of California citizens

21  who purchased XRP.  Another Plaintiff (Greenwald) alleged violations of the registration requirements

22  of the federal Securities Act of 1933 ("Securities Act"), purportedly on behalf of a global class of all

23  purchasers of XRP since July 3, 2015.  As is routine with respect to overlapping securities class

24  actions, on October 31, 2018, the state court consolidated the actions for all purposes.

25  Under both California and Ninth Circuit law, the consolidation of the Corporations Code and

26  Securities Act actions merged the parties and pleadings into one action.  Such consolidation created

---

27  [1] All references to lettered exhibits refer to exhibits attached to the Notice of Removal (ECF 2.)  All

28  references to numbered exhibits refer to exhibits attached to the Declaration of Virginia F. Milstead.
All emphases are added and citations and internal quotations omitted unless otherwise indicated.

1   "minimal diversity" and joined state and Securities Act claims, rendering the consolidated action

2   removable under CAFA.  Defendants then promptly removed the consolidated action.

3   While Defendants' previous removals of related actions (including the <u>Greenwald</u> action

4   consolidated herein) turned on the applicability of the removal bar in Section 22(a) of the Securities

5   Act to removals under CAFA, Section 22(a) is not at issue here.  Plaintiffs do not dispute that if the

6   consolidation was complete and the complaints are assessed together, CAFA's requirements are

7   satisfied, and the Securities Act presents no barrier to removal.  <u>See</u> <u>Coffey v. Ripple Labs Inc.</u>, 333 F.

8   Supp. 3d 952 (N.D. Cal. 2018).  Instead, Plaintiffs make two central arguments in their attempt to

9   defeat federal jurisdiction: that (i) the state court did not really mean to consolidate the cases, as

10  consolidation was not proper; and (ii) consolidation was not Plaintiffs' idea.

11  As for the first argument, Plaintiffs posit a series of alternative, mutually exclusive theories, all

12  in an effort to evade federal jurisdiction: (i) the consolidation order was "inadvertent" or "temporary";

13  (ii) if the consolidation order was deliberate, it was invalid; (iii) if the consolidation order was valid, it

14  only ordered consolidation for trial, not complete consolidation; and (iv) if the consolidation order did

15  completely consolidate the cases, it had the effect, not of completely consolidating the actions, but of

16  "supersed[ing]" or "null[ifying]" one of them.  None of these arguments has merit.

17  Notably, "the Court's role 'is not to decide whether it was proper for the state court to

18  consolidate the actions, but whether the consolidation affects the Court's jurisdiction.'"  <u>Unifoil Corp.</u>

19  <u>v. S.E. Personnel Leasing, Inc.</u>, 2018 WL 4676044, at *2 (D.N.J. Sept. 28, 2018).  Here, the

20  consolidation did affect the Court's jurisdiction, and this Court's focus must be on how that

21  consolidation affects jurisdiction, rather than analyzing whether the cases should have been

22  consolidated in the first instance.

23  However, to the extent that this Court considers the propriety of the underlying consolidation,

24  consolidation of these actions was appropriate for several reasons.  First, consolidation is within the

25  state court's discretion, and <u>sua</u> <u>sponte</u> consolidations, like the consolidation here, are common in

26  California, reflecting a judge's inherent authority to promote judicial economy.  Plaintiffs are incorrect

27  that a court may only consolidate actions after a noticed motion.  Second, the cases consolidated here

28  are substantially similar, in issues, allegations, claims, parties, and alleged damages.  Indeed, Plaintiff

1   Greenwald argued *to this Court* in his prior motion to remand that the consolidated actions share

2   common questions of fact or law and that this Court should remand his action so that it could be

3   coordinated with the Corporations Code actions.[2]   (See Ex. 4 at 5:14-6:5.)   Now that they have been

4   consolidated, Plaintiffs pivot, arguing that these cases are too different for consolidation.

5   Because the state court validly and completely consolidated the actions, "the allegations of the

6   complaints can be treated as one pleading." People ex rel. Camil v. Buena Vista Cinema, 57 Cal. App.

7   3d 497, 500 (1976). Plaintiffs do not dispute this point of law or that, when applied here, it means this

8   Action became removable. Instead, Plaintiffs argue that the Securities Act action was "superseded"

9   when it was consolidated with the Corporations Code actions and thus no longer exists. As such, all

10  that remains is a consolidated action with a California class and state law claims, and this Court lacks

11  jurisdiction. Plaintiffs' argument finds no support in the state court's orders. Moreover, it contradicts

12  how consolidation works. Consolidation combines the separate actions into one, but each part of each

13  action survives the consolidation; it does not extinguish an action entirely.

14  As for Plaintiffs' second argument—that removal is improper because consolidation was not a

15  "voluntary act" by Plaintiffs—that argument fails as a matter of law and fact. Courts allow removal

16  after consolidation, even when the consolidation was ordered sua sponte or at the defendant's request.

17  See, e.g., In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 399 F. Supp. 2d 340, 355

18  (S.D.N.Y. 2005). Every case Plaintiffs cite purporting to require a "voluntary act" arises in a different

19  context and is not applicable—either removal of "mass actions" under CAFA (which is not this case)

20  or removal after dismissal of a non-diverse defendant created diversity (which is also not this case).

21  Regardless, Plaintiffs did engage in a "voluntary act." Before the Securities Act action was

22  consolidated with the Corporations Code actions, the Corporations Code actions were consolidated

23  pursuant to a stipulation of the parties. As part of that stipulation, Plaintiffs stipulated that all related

24  actions that may come before the court in the future may also be consolidated, including remanded

25  actions. (Ex. E ¶¶ 14, 15.) Plaintiffs agreed in advance to a mandatory stipulation contemplating

26  consolidation of future related actions; they should not now be heard to complain that such

27  _____

28  [2] While Greenwald argued in his motion to remand that his case should be coordinated with the
    Corporations Code actions, coordination is not available for cases pending in the same county. See Cal.
    Civ. Proc. Code § 404. Consolidation is the mechanism for joining cases pending in the same court.

1 | consolidation was not "voluntary."

2 | II.    **FACTUAL BACKGROUND**

3 |        A.    **Plaintiffs Filed Substantially Identical Actions In California State Court**

4 | On May 3, 2018, Plaintiff Ryan Coffey filed <u>Coffey v. Ripple Labs Inc. et al.</u>, No. CGC-18-
5 | 566271 ("<u>Coffey</u>"), a putative class action alleging violations of state and federal securities laws in San
6 | Francisco County Superior Court, purporting to sue on behalf of a global class of XRP purchasers.
7 | (Ex. 1.)  On June 1, 2018, Defendants removed <u>Coffey</u> to this Court, and Coffey moved to remand. On
8 | August 10, 2018, this Court denied Coffey's motion, reasoning that CAFA's removal requirements
9 | were satisfied, and because Coffey asserted both Securities Act claims and Corporations Code claims,
10 | the so-called "removal bar" in Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), did not bar
11 | removal.  <u>See</u> <u>Coffey</u>, 333 F. Supp. 3d 952.  On August 22, 2018, Coffey dismissed his suit.

12 | On June 5, 2018, a month after <u>Coffey</u> was removed, Plaintiff Zakinov filed <u>Zakinov v. Ripple</u>
13 | <u>Labs Inc. et al.</u>, No. 18-CIV-02845 ("<u>Zakinov</u>") in San Mateo Superior Court, a duplicative action
14 | subsumed within <u>Coffey</u>.  The putative class in <u>Zakinov</u> included "California citizens who purchased
15 | or otherwise acquired XRP from January 1, 2013 to the present."  (Ex. C ¶ 44.)  Like <u>Coffey</u>, Zakinov
16 | asserted violations of the Corporations Code against three defendants:  Ripple, XRP II and
17 | Garlinghouse, and sought rescission of all XRP purchases and/or damages.  (<u>Id.</u> ¶¶ B, D.)

18 | On June 27, 2018, two months after <u>Coffey</u> was removed, Plaintiff Oconer filed <u>Oconer v.</u>
19 | <u>Ripple Labs Inc. et al.</u>, No. 18-CIV-03332 ("<u>Oconer</u>") in San Mateo Superior Court, a duplicative
20 | action also subsumed within <u>Coffey</u>.  The putative class included "all citizens of California who
21 | purchased XRP."  (Ex. D ¶ 73.)  Oconer asserted claims under the same sections of the Corporations
22 | Code as <u>Coffey</u> and <u>Zakinov</u> (<u>id.</u> ¶¶ 79-91), against the same Defendants (<u>id.</u> ¶¶ 10-12), and sought the
23 | same relief (<u>id.</u> ¶¶ C, E).

24 | On July 3, 2018, Plaintiff Greenwald filed <u>Greenwald v. Ripple Labs Inc. et al.</u>, No. 18-CIV-
25 | 03461 ("<u>Greenwald</u>"), a third action subsumed within <u>Coffey</u>.  <u>Greenwald</u>, also filed in San Mateo
26 | Superior Court, was purportedly brought on behalf of "all persons or entities who purchased XRP from
27 | July 3, 2015 through the present."  (Ex. B ¶¶ 2, 87.)  Greenwald asserted claims under the Securities
28 | Act (<u>id.</u> ¶¶ 94-110), against Ripple, XRP II and Garlinghouse, as well as certain officers and directors

1    of Ripple (id. ¶¶ 15-27), and sought the same relief as Coffey, Zakinov, and Oconer.  On August 8,

2    2018, Defendants removed Greenwald to this Court pursuant to CAFA.

3           All four actions make the exact same claim based on the same alleged facts—that XRP is a

4    security that had to be registered with the Securities & Exchange Commission ("SEC") (thereby

5    becoming "qualified" in California).

6           **B.      The Duplicative Actions Are Consolidated And Removed To This Court**

7           On August 30, 2018, pursuant to the parties' "STIPULATION AND [PROPOSED] ORDER

8    CONSOLIDATING RELATED ACTIONS AND RELATED MATTERS" ("Stipulation"), Judge

9    Richard H. DuBois of the San Mateo Superior Court ordered Zakinov and Oconer "consolidated for all

10   purposes, including pre-trial proceedings and trial." (Ex. E ("First Consolidation Order") ¶ 6.)   The

11   consolidated action was renamed In re Ripple Labs Inc. Litigation, Lead Case No. 18-CIV-02845

12   ("Ripple Labs").

13          Plaintiffs knew of the existence of Greenwald and proposed the Stipulation, which specifically

14   provided that it "*shall apply* to each case, arising out of the same or similar transactions and/or events

15   as [Zakinov and Oconer] which [are] currently pending in, subsequently filed in, *remanded to*, or

16   transferred to this Court."  (Id. ¶ 14.)  "When a case which properly belongs as part of [Ripple Labs] is

17   hereafter or has been filed in, *remanded to*, or transferred to this Court, *counsel for the parties shall*

18   call such filing, *remand*, or transfer to the attention of the clerk of this Court *for purposes of moving*

19   *the Court for an order consolidating such case(s)* with [Ripple Labs.]"  (Id. ¶ 15.)  Thus, the parties

20   agreed that if a related action came before the court, they would "call such filing" to the Court's

21   attention for one particular, shared, and non-optional purpose:  to serve as a motion to consolidate or in

22   order to obtain an order consolidating the remanded action with Ripple Labs.

23          On October 15, 2018, Plaintiffs Zakinov and Oconer filed the Consolidated Complaint in

24   Ripple Labs on behalf of a putative "class consisting of all citizens of California who purchased XRP."

25   (Ex. A ¶ 80.)  Plaintiffs asserted claims under sections 25110, 25503, and 25504 of the Corporations

26   Code (id. ¶¶ 86-98), against Ripple, XRP II and Garlinghouse (id. ¶¶ 12-14), and sought rescission of

27   all XRP purchases and/or damages (id. ¶¶ C, E).

28          On October 15, 2018, this Court remanded Greenwald, reasoning that, unlike Coffey,

OPPOSITION TO MOTIONS TO REMAND                                    CASE NO.: 4:18-cv-06753-PJH

1   Greenwald asserted only Securities Act, and no state law, claims.  See Greenwald v. Ripple Labs Inc.,

2   2018 WL 4961767 (N.D. Cal. Oct. 15, 2018) appeal filed, No. 18-801-147 (9th Cir. Oct. 25, 2018).

3   Therefore, while CAFA's removal requirements were met, this Court concluded removal was barred

4   under the Securities Act.  Id.

5        Following remand, on October 25, 2018, Defendants filed a Notice of Related Case in the San

6   Mateo Superior Court indicating that Greenwald is related to Ripple Labs because it "involves the

7   same parties and is based on the same or similar claims," "arises from the same or substantially

8   identical transactions, incidents, or events requiring the determination of the same or substantially

9   identical questions of law or fact," and "is likely for other reasons to require substantial duplication of

10  judicial resources if heard by different judges."  (Exs. 2-3.)  Defendants served the Notice of Related

11  Cases on counsel for Plaintiffs.  (Id.)  Plaintiffs had five days to file a response "opposing the notice."

12  Cal. R. Ct. 3.300(g).  No Plaintiff opposed the Notice.

13       On October 31, 2018, Judge DuBois ordered Greenwald related to and consolidated with

14  Ripple Labs (Greenwald and Ripple Labs collectively, the "Action"). (Ex. F (the "Second

15  Consolidation Order").)  Judge DuBois observed that the Notice of Related Cases had "been filed and

16  served" and that "no opposition or objection" was filed in response.  (Ex. F ¶ 1.)  Thus, Judge DuBois

17  ordered that "pursuant to the order in Master File No. 18CIV02845 consolidating related class actions

18  [e.g., the First Consolidation Order], . . . the case of *Greenwald vs. Ripple Labs Inc. 18CIV03461* is

19  ordered CONSOLIDATED as part of Master File No. 18CIV02845."  (Id. ¶ 2.)  The Court vacated

20  dates for a Complex Status Conference and Case Management Conference in Greenwald and ordered

21  that a single Case Management Conference set in Ripple Labs go forward.  (Id. ¶ 3.)

22       Given that orders consolidating overlapping class actions are routine and that the Stipulation

23  and First Consolidation Order made clear that related actions, including remanded actions, would be

24  consolidated with Ripple Labs, there is no basis to question the deliberateness, validity, completeness,

25  or effect of the Second Consolidation Order, as Plaintiffs do here.  Pursuant to this Court's reasoning in

26  Coffey, the consolidation of Greenwald with Ripple Labs made the entire, consolidated Action

27  removable under CAFA.  Accordingly, Defendants timely removed the Action.

28

C.   **Greenwald And Ripple Labs Are Nearly Identical**

Illustrating the propriety of the Court's Second Consolidation Order, the allegations in Greenwald and Ripple Labs are nearly identical.  In particular:

**Claims:**   Greenwald and Ripple Labs assert equivalent federal and state claims under the Securities Act and the Corporations Code governing the registration/qualification and sale of securities and imposing "control person" liability on violators of securities laws.  (Compare Ex. A ¶¶ 86-98 with Ex. B ¶¶ 94-110.)

**Allegations:**   Both complaints are premised on the same alleged misconduct: that Defendants promoted and sold XRP, a purported security that Defendants were required to register with the SEC, and their failure to do so harmed Plaintiffs.  (Compare Ex. A ¶¶ 1-2 with Ex. B ¶ 1.)  Both actions make multiple allegations **verbatim**.  (Compare Ex. A ¶ 16 with Ex. B ¶ 33; Ex. A ¶ 29 with Ex. B ¶ 53; Ex. A ¶ 34 with Ex. B ¶ 42; Ex. A ¶ 35 with Ex. B ¶ 43; Ex. A ¶ 36 with Ex. B ¶ 44; Ex. A ¶ 42 with Ex. B ¶ 60; Ex. A ¶ 43 with Ex. B ¶ 61; Ex. A ¶ 54 with Ex. B ¶ 76.)  Moreover, the allegations in support of the theory that XRP is a security are materially the same:

- Defendants allegedly sold XRP in an "ongoing initial coin offering ('ICO')" that began in 2013. (Compare Ex. A ¶ 5 with Ex. B ¶¶ 6, 38.)

- Defendants allegedly sell XRP on cryptocurrency exchanges to "fund [Ripple's] operations and promote the network." (Compare Ex. A ¶ 63 with Ex. B ¶ 31.)

- Unlike bitcoin, XRP is not "mined." (Compare Ex. A ¶ 17 with Ex. B ¶ 29.) Ripple allegedly created all 100 billion XRP. (Id.) Ripple's founders allegedly hold twenty billion XRP, and Ripple put fifty-five billion XRP into an escrow account. (Compare Ex. A ¶¶ 17, 25 with Ex. B ¶¶ 29, 45.)

- The XRP ledger is allegedly not "decentralized" because it uses "trusted nodes" to validate transactions. (Compare Ex. A ¶¶ 55-56 with Ex. B ¶ 34.)

- Plaintiffs "reasonably expected to derive profits from their ownership of XRP." (Compare Ex. A ¶ 4 with Ex. B ¶ 3.)

- Defendants made statements about XRP and Ripple's products and services on various media and social media outlets to affect demand for, and the market price of, XRP. (Compare Ex. A ¶¶ 29-50 with Ex. B ¶¶ 39-51, 53-55, 62-77.)

**Parties:**   The purported class in Ripple Labs, "consisting of all citizens of California who purchased XRP" (Ex. A ¶ 80), is subsumed within the purported class in Greenwald, which is "all persons or entities who purchased XRP from July 3, 2015 through the present."  (Ex. B ¶ 87.)  Both actions name the same Defendants—Ripple, XRP II and Mr. Garlinghouse—with Greenwald

7

1   additionally naming individual officers and directors as Defendants.  (Compare Ex. A ¶¶ 12-14 with

2   Ex. B ¶¶ 15-27.)

3        **Relief:**  Both actions allege that the class members are seeking recovery for Defendants' alleged

4   failure to register XRP with the SEC.  (Compare Ex. A ¶ 1 with Ex. B ¶ 1.)   Both actions seek

5   declaratory relief that Defendants offered and sold unregistered securities, compensatory damages,

6   rescission of XRP sales, and injunctive relief.  (Compare Ex. A ¶¶ A-F with Ex. B ¶¶ A-H.)

7   **III.   CAFA INVOKES A PRESUMPTION IN FAVOR OF, NOT AGAINST, REMOVAL**

8        Plaintiffs attempt to sow enough confusion about the nature of the Second Consolidation Order

9   that a purported presumption against removal will tip the balance in their favor.  (ECF 18 at 7:1-8.)

10  Plaintiffs' efforts are misguided.  The Supreme Court in Dart Cherokee Basin Operating Co., LLC v.

11  Owens, 135 S. Ct. 547, 554 (2014), held that "no antiremoval presumption attends cases invoking

12  CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."

13  Instead, as the Ninth Circuit made clear, CAFA expresses "Congress's intent to 'strongly favor the

14  exercise of federal diversity jurisdiction of class actions with interstate ramifications.'"   Jordan v.

15  Nationstar Mortg., LLC, 781 F.3d 1178, 1179 (9th Cir. 2015).  As such, whether interpreting CAFA's

16  substantive requirements or, as here, "removal procedure under [28 U.S.C.] § 1446," the court must

17  apply a "liberal construction" "in favor of removal," not a presumption against removal.  Id. at 1184.

18  As this Action—"involving a proposed international class and issues of first impression regarding the

19  federal securities laws applicability to a nascent technology," Coffey, 333 F. Supp. 3d at 962—falls

20  squarely within the purpose of CAFA, such a liberal construction is especially warranted here.

21  **IV.   CONSOLIDATION MADE THIS ACTION REMOVABLE PURSUANT TO CAFA**

22       Notably, Plaintiffs do not dispute that, if the complaints in Greenwald and Ripple Labs are

23  viewed collectively—and, as shown below, they should be—this Action is removable under CAFA.

24  Under CAFA, a class action may be removed if (1) the action purports to be a "class" action brought

25  on behalf of 100 or more members; (2) any member of a plaintiff class is a citizen of a state or foreign

26  country and any defendant is a citizen of a state (or vice versa); and (3) the amount in controversy

27  exceeds $5 million.  See 28 U.S.C. §§ 1332(d), 1453(b).  As the Action is (1) purportedly brought on

28  behalf of classes, including an international class, consisting of "thousands" of members (Ex. A ¶¶ 80-

1  81; Ex. B ¶¶ 14, 87, 89); (2) against California and non-California citizens (ECF 2 ¶ 20); and (3) seeks

2  rescission of at least $167.7 million in sales of XRP (Ex. A ¶ 28; Ex. B ¶ 52), CAFA's requirements are

3  met.  Because state law claims are asserted with Securities Act claims, Plaintiffs do not even argue that

4  the bar on removal of Securities Act claims applies.  See Coffey, 333 F. Supp. 3d at 960.  Instead,

5  Plaintiffs seek to attack the Second Consolidation Order collaterally.  Plaintiffs' attack is meritless.

6  **A.**    **This Court Should Not Consider The Propriety Of The Underlying Consolidation**

7  As an initial matter, "the Court's role 'is not to decide whether it was proper for the state court

8  to consolidate the actions, but whether the consolidation affects the Court's jurisdiction.'"  Unifoil,

9  2018 WL 4676044, at *2 (quoting Amadu v. Bradshaw, 2016 WL 3676474, at *2 (D.N.J. July 11,

10  2016)).  Therefore, Plaintiffs' unsupported conclusion that the Second Consolidation Order "was an

11  administrative decision not reflective of a considered determination regarding consolidation" should

12  not affect the Court's consideration of jurisdiction.  (ECF 17 at 11-13.)  Moreover, even if the propriety

13  of consolidation were a factor for this Court to consider (which it is not), Plaintiffs offer no reason to

14  doubt the careful consideration Judge DuBois regularly gives to his orders, particularly considering the

15  overwhelming overlap among the actions.  The Court should thus reject Plaintiffs' argument that

16  removal was improper because the Second Consolidation Order was "inadvertent," "improper," or

17  otherwise invalid.  (ECF 17 at 4:3-4, 7:14-15; ECF 18 at 7:13, 8:11.)

18  **B.**    **The Second Consolidation Order Validly Consolidated The Actions**

19  Even if this Court considers the propriety of the underlying consolidation (which it should not

20  do), Plaintiffs' contention that "California law mandates a stipulation or a motion" before consolidation

21  can occur is simply wrong.  (ECF 17 at 6:18-22, 8:3-7; ECF 18 at 7:11-13, 8:22-27.)  California courts

22  have discretion to consolidate actions sua sponte and regularly do so.  See e.g., Cal. State Univ., Fresno

23  Ass'n v. County of Fresno, 9 Cal. App. 5th 250, 255 n.1 (2017) (on appeal, noting that the "court

24  ordered the cases consolidated on its own motion"); Heritage Pac. Fin., LLC v. Monroy, 215 Cal. App.

25  4th 972, 987 (2013) (noting that "on its own motion[, the court of appeals] consolidated both of

26  Heritage's appeals"); Savadians v. Toledo, 2009 WL 7165886 (Super. Ct. Alameda Cty. Dec. 9, 2009)

27  ("On the court's own motion, this action is consolidated with two related cases."); Bryant v. Matson

28  Navigation Co., 2008 WL 7759184 (Super. Ct. Alameda Cty. Nov. 6, 2008) ("On the court's own

1   motion, this action is consolidated for all purposes with another case involving many of the same

2   issues."); Taylor v. Belen, 2006 WL 6049034 (Super. Ct. Alameda Cty. June 15, 2006) ("The Court, on

3   its own motion, consolidates this action for all purposes with the related matter."); Johnson v. Vowell,

4   2003 WL 25454210 (Super. Ct. San Francisco Cty. Nov. 24, 2003) ("[O]n the Court's own motion, the

5   Court orders that case number 421113 is hereby consolidated with case number 423566 for all

6   purposes.").  In fact, the California Rules of Court *expressly* authorize the court to make orders that

7   "[f]acilitate the management of class actions through consolidation."  Cal. R. Ct. 3.767(a)(4).

8       Plaintiffs cite Sutter Health Uninsured Pricing Cases, 171 Cal. App. 4th 495 (2009), for the

9   proposition that "[a]bsent a stipulation to consolidate, a *noticed* and *written* motion to consolidate is

10  required."  (ECF 17 at 6:21-23; ECF 18 at 7:13-15.)  However, Sutter Health is completely inapposite,

11  as it did not involve or address a sua sponte consolidation.  Rather, it involved a party who filed a

12  motion to intervene in a coordinated proceeding and then argued on appeal that the "trial court should

13  have treated his motion [to intervene] as a motion to *consolidate*."  Id. at 514.  The court of appeal

14  rejected this argument, reasoning that the party's "stray citation to a rule of court addressing a

15  coordination trial court's duties to manage proceedings, buried at the end of a clearly-captioned

16  'Motion to Intervene,' [did] not convert that motion to intervene into a motion to consolidate," and

17  instead the party needed either a stipulation or a motion to *consolidate*.  Id.  Plaintiffs' only other case,

18  Sanchez v. Superior Court, 203 Cal. App. 3d 1391, 1396 (1988) (ECF 18 at 11:20-21), likewise did not

19  address, let alone disapprove of, sua sponte consolidation.[3]

20      In addition, the Stipulation—which is called "STIPULATION AND [PROPOSED] ORDER

21  CONSOLIDATING RELATED ACTIONS *AND RELATED MATTERS*"—provides that, *without*

22  *any further action*, the First Consolidation Order "shall" apply to related cases "remanded to" the

23  court.  (Ex. E ¶ 14.)  This indisputably included Greenwald, of which Plaintiffs were aware at the time

---

25  [3] Plaintiffs also cite a Florida state court case, Morris-Edge Masonry, Inc. v. Tonn & Blank, Inc., 461
    So. 2d 1036 (Fla. Dist. Ct. App. 1985), for the proposition that sua sponte consolidation violates due

26  process.  (ECF 17 at 8:10-13; ECF 18 at 9:2-4.)  Regardless of Florida law on the subject, California
    courts regularly consolidate cases sua sponte.  And Morris-Edge considered a consolidation that "had

27  the effect of transferring appellant's action to another county" when the plaintiff "never had notice of
    the trial court's intention to consider consolidation sua sponte."  Id. at 1037.  Here, consolidation had

28  no effect on venue.  And the Stipulation and First Consolidation Order, coupled with the Notice of
    Related Cases, put Plaintiffs on notice that the cases would be consolidated.

1  they stipulated.  Plaintiffs ignore this language in their Motions.

2        The Stipulation further provides that the "*parties shall*" bring related actions to the court's

3  attention "*for purposes of moving the Court for an order consolidating* such case(s) with [Ripple

4  Labs]."  (Ex. E ¶ 15.)  The Stipulation thus *requires* the *parties* to bring related actions to the court's

5  attention, and the *purpose* of that requirement is that it serves as a motion to consolidate or result in

6  consolidation.  The Second Consolidation Order is not "in error" (ECF 18 at 7:13) just because Judge

7  DuBois decided the formality of a motion was unnecessary in light of (i) Plaintiffs' failure to object to

8  Defendants' Notice of Related Cases; (ii) their stipulation that the First Consolidation Order applied to

9  related cases; and (iii) their stipulation that the parties would bring related cases to the court's attention

10 for the purpose of moving the court for an order consolidating the cases.

11       In an effort to sidestep the language of the First Consolidation Order, Plaintiffs argue that "the

12 parties did not stipulate that [Greenwald] could or should be consolidated with [Ripple Labs]."  (ECF

13 18 at 8:22-24.)  This is wrong.  The Stipulation expressly states that it "shall" apply to related cases

14 "remanded to" the court.  Plaintiffs also argue that the Stipulation requires the parties to "mov[e] the

15 Court for an order consolidating such case(s)," but they omit the first part of the sentence they purport

16 to quote, which provides that the "parties shall" bring related cases to the attention of the court "*for*

17 *purposes of moving*" the court for a consolidation order.  (ECF 17 at 6:17-18; ECF 18 at 5:1-2.)

18 Furthermore, Plaintiffs' contention that the Stipulation required a noticed motion makes little sense.  If

19 a noticed motion were required, the paragraphs of the Stipulation pertaining to related cases (Ex. E

20 ¶¶ 14, 15) would be meaningless because no stipulation or order would be needed to require the parties

21 to follow the Code of Civil Procedure.  Thus, each of Plaintiffs' arguments fail.

22       **C.    The Second Consolidation Order Was Appropriate On Its Merits**

23       Plaintiffs' attack on the merits of the consolidation also fails.  Plaintiffs summarily assert that

24 the actions "involve[] vastly different classes and different claims" and, as such, "consolidation, and

25 removal, would be inappropriate."  (ECF 17 at 7:2-3; ECF 18 at 9:7.)  Greenwald's position that

26 Greenwald and Ripple Labs are "vastly different" contradicts what he previously told this Court.  In his

27 motion to remand, he argued that Greenwald was so similar to Ripple Labs that it should be remanded

28 for "coordination of dispositive motions and discovery."  (Ex. 4 at 6:4-5.)  In particular, he argued:

1  *Zakinov* and *Oconer* allege state law claims on behalf of a class of California purchasers
2  of XRP during the same class period alleged in the instant complaint, July 3, 2015
   through the present.  Like the instant case, *Zakinov* and *Oconer* allege that XRP should
3  have been registered securities—but under California law, rather than federal law.
   Demonstrating the similarity of the issues raised, *Zakinov* and *Oconer* point to federal
   SEC guidance in support of their position.  Many of the factual allegations in *Zakinov*
4  and *Oconer* overlap as they both relate to the creation, sale, and solicitation of XRP.

5  (Id. at 5:21-6:4 (citations omitted).)

6     As Greenwald conceded, consolidation is the only conclusion that makes sense.[4]  Both

7  Greenwald and Ripple Labs are premised on the same alleged misconduct:  that Defendants promoted

8  and sold XRP, a purported security that Defendants were required to register with the SEC, and their

9  failure to do so harmed Plaintiffs.  (Compare Ex. A ¶¶ 1-2 with Ex. B ¶ 1.)  Both actions even make

10  multiple allegations ***verbatim***.  (Compare Ex. A ¶ 16 with Ex. B ¶ 33; Ex. A ¶ 29 with Ex. B ¶ 53; Ex.

11  A ¶ 34 with Ex. B ¶ 42; Ex. A ¶ 35 with Ex. B ¶ 43; Ex. A ¶ 36 with Ex. B ¶ 44; Ex. A ¶ 42 with Ex. B

12  ¶ 60; Ex. A ¶ 43 with Ex. B ¶ 61; Ex. A ¶ 54 with Ex. B ¶ 76.)  The allegations in support of the theory

13  that XRP is a security also are materially the same.  (See supra Part II.C.)

14     The purported class in Ripple Labs, "consisting of all citizens of California who purchased

15  XRP" (Ex. A ¶ 80), is subsumed within the purported class in Greenwald, which is brought on behalf

16  of "all persons or entities who purchased XRP from July 3, 2015 through the present" (Ex. B ¶ 87).

17  Therefore, both actions seek rescission of many of the same transactions, and consolidation is

18  appropriate to prevent double recovery.  See Jefferson St. Ventures, LLC v. City of Indio, 236 Cal.

19  App. 4th 1175, 1206 (2015) (observing that consolidation is "particularly appropriate" when it avoids

20  "concerns about double recovery," and actions involve, like here, "the same property, and many (if not

21  all) of the same damages").  Both actions further name the same Defendants—Ripple, XRP II and

22  Garlinghouse—with Greenwald additionally naming individual officers and directors as Defendants.

23  (Compare Ex. A ¶¶ 12-14 with Ex. B ¶¶ 15-27.)  While Plaintiffs argue that these Defendants were not

24  parties to the Stipulation (ECF 18 at 9:5-6), these Defendants are represented by the same counsel as

25

26  [4] Coordination is available only for complex actions pending in *different* counties, while consolidation
   is the appropriate mechanism for joining cases pending in the *same* county.  See Robert I. Weil, et al.,
27  Cal. Practice Guide: Civ. Proc. Before Trial § 12:370 (2018). However, the standard for coordination
   and consolidation is the same:  the actions share common questions of fact or law.  See Cal. Civ. Proc.
28  Code §§ 404, 1048(a).  Thus, by arguing for coordination, Greenwald conceded that the consolidated
   actions share common questions of fact and law and are sufficiently similar that they should be joined.

1  their co-defendants, and they favor consolidation.

2      As Greenwald previously argued, <u>Greenwald</u> and <u>Ripple Labs</u> assert equivalent federal and

3  state claims under the Securities Act and the Corporations Code governing the

4  registration/qualification and sale of securities and imposing "control person" liability on violators of

5  securities laws.  (<u>Compare</u> Ex. A ¶¶ 86-98 <u>with</u> Ex. B ¶¶ 94-110; Ex. 4 at 5:23-24.)  Indeed, the

6  Corporations Code claims asserted in <u>Ripple Labs</u> are modeled after the Securities Act claims asserted

7  in <u>Greenwald</u>.  <u>See</u> Loss, Seligman & Paredes, <u>Securities Regulation</u> §§ 11.B.2, 11.B.3 (2018).  Thus,

8  among other common requirements, both impose liability for sales of unregistered securities to the

9  person acquiring the alleged security from the seller.  <u>Compare</u> Cal. Corp. Code §§ 25110, 25111(a),

10  25503 <u>with</u> 15 U.S.C. §§ 77e, 77$l$(a)(1).  The definition of "security" in the Corporations Code is also

11  patterned after the definition of "security" in section 2(a)(1) of the Securities Act, and both federal and

12  California courts have applied the same legal test to determine if something is a security.  <u>See</u> Cal.

13  Corp. Code § 25019; 15 U.S.C. § 77b(a)(1); <u>SEC v. W. J. Howey Co.</u>, 328 U.S. 293, 297 (1946);

14  <u>Moreland v. Dep't of Corps.</u>, 194 Cal. App. 3d 506, 512 (1987).

15      Moreover, both actions allege the same injury, namely recovery for Defendants' alleged failure

16  to register XRP with the SEC.  (<u>Compare</u> Ex. A ¶ 1 <u>with</u> Ex. B ¶ 1.)  Both actions seek declaratory

17  relief that Defendants offered and sold unregistered securities, compensatory damages, rescission of

18  XRP sales, and injunctive relief.  (<u>Compare</u> Ex. A ¶¶ A-H <u>with</u> Ex. B ¶¶ A-F.)

19      Contrary to Plaintiffs' unsupported assertions, courts regularly consolidate such overlapping

20  putative class actions, even when there are some differences between the proposed classes, defendants,

21  and claims asserted.  <u>See, e.g.</u>, <u>Miller v. Ventro Corp.</u>, 2001 WL 34497752, at *4 (N.D. Cal. Nov. 28,

22  2001) (consolidating securities class actions even though they alleged different statutory violations,

23  named different plaintiffs, named some different defendants, alleged different class periods, involved

24  different remedies, and involved different evidentiary burdens); <u>Aronson v. McKesson HBOC, Inc.</u>, 79

25  F. Supp. 2d 1146, 1150 (N.D. Cal. 1999) (similar).[5]

26  _____

27  [5] None of Plaintiffs' cases (ECF 18 at 15:20-16:11) involves a court refusing to consolidate two class
   actions just because one putative class had a geographical limitation that made it a subset of the other
28  class or because the actions asserted parallel state and federal securities claims.  <u>See</u> <u>Rochester</u>
   <u>Laborers Pension Fund v. Monsanto Co.</u>, 2010 WL 3842549, at *1 (E.D. Mo. Sept. 28, 2010) (denying
   consolidation where claims were brought ***against*** Monsanto in the securities action and ***on behalf of***
   (cont'd)

13

1    Plaintiffs identify no impairment of their rights from consolidation.  Instead, they suggest that

2  there should be two separate trials on the common question of whether XRP is a security (ECF 18 at

3  9:8)—while imposing costs, inefficiencies, and the risk of inconsistent outcomes—simply because

4  they want to avoid removal under CAFA.  (ECF 17 at 7:6-9.)  However, Plaintiffs cite no law that a

5  desire to avoid CAFA removal is a relevant consideration for the consolidation of cases.  Nor could

6  they.  Recall, the first suit filed—Coffey—asserted all the claims on behalf of all of the people covered

7  by both the Greenwald and Ripple Labs actions.  See Coffey, 333 F. Supp. 3d at 954.  Yet each

8  Plaintiff still filed his own action with some attempted variation in the claim or class definition that

9  served no purpose, other than to try to avoid federal court and force Defendants to defend piecemeal

10  cases.  These types of duplicative class actions are precisely what CAFA was meant to address.  See

11  N.J. Carpenters Vacation Fund v. HarborView Mortg. Loan Tr. 2006-4, 581 F. Supp. 2d 581, 584-85

12  n.5 (S.D.N.Y. 2008) (noting that "CAFA was created to expand federal jurisdiction in class actions to

13  address the gaming of the system to avoid litigating in the federal courts" and that "the fact that

14  securities plaintiffs and their counsel file successive actions addressing the same issues echo the

15  repeated Congressional concerns about nationwide impact and abusive filings").

16    Plaintiffs' cite to Moss Bros. Toy, Inc. v. Ruiz, 27 Cal. App. 5th 424 (2018) is misleading.

17  (ECF 17 at 7:9-12.)  In Moss Bros. the court affirmed the denial of a party's motion to intervene

_____

*(cont'd from previous page)*

18

19  Monsanto in the derivative action); In re Bear Stearns Cos., Inc. Sec., Derivative, & Emp. Ret. Income
Sec. Act (Erisa) Litig., 2009 WL 50132, at *4-5 (S.D.N.Y. Jan. 5, 2009) (denying consolidation where

20  "Securities and ERISA Actions involve different parties, claims, burdens, pleading standards, losses,
and insurance issues" and "potential conflicts between those claims asserted on behalf of Bear Stearns

21  in the Derivative Action and those asserted against the Company in the Securities Actions"); In re
Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig., 258 F.R.D. 260,

22  268 (S.D.N.Y. 2009) (consolidating the securities actions brought against company, the derivative
actions brought on behalf of company, and the ERISA actions brought against company into three

23  separately consolidated cases); In re Diebold Sec. Litig., 2006 WL 3023033, at *4 (N.D. Ohio Oct. 23,
2006) (same); see also Meeder v. Superior Tube Co., 72 F.R.D. 633, 636 (W.D. Pa. 1976) (denying

24  consolidation and finding coordinated discovery would be more appropriate because "while the three
complaints ar[o]se out of the same circumstances," there were differences in parties, allegations, and

25  relief sought). Plaintiffs also cite Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC, 902 F.
Supp. 2d 329, 342 (S.D.N.Y. 2012), aff'd sub nom. IBEW Local Union No. 58 Pension Tr. Fund &

26  Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383 (2d Cir. 2015), for the proposition
that the court "declin[ed] even to consolidate two related federal securities class actions because,

27  among other reasons, the 33 Act actions and 34 Act action contain 'different, claims, different class
periods, and purports different classes.'"  (ECF 18 at 15:22-27.)  However, *that quote is nowhere in*

28  *that case*.  The case is about a motion to dismiss a consolidated amended complaint which contained
claims for violations of the Securities Act and the Securities Exchange Act.

because the party "had unreasonably delayed in applying to intervene."  Id. at 430.  After denial of its motion to intervene, the party filed a separate action and then moved to consolidate it with the action in which it had previously sought to intervene, but the trial court rejected this as an attempt to circumvent the court of appeals' ruling.  Id. at 430-31.  Moss Bros. has nothing to do with the situation at hand. Consolidating the Greenwald and Ripple Labs actions was well within Judge DuBois's discretion.[6]

### D.     The Second Consolidation Order Completely Consolidated The Actions

Plaintiffs' argument that Judge DuBois consolidated the actions "merely for 'purposes of trial'" is also meritless.  (ECF 18 at 11:10.)  In Hamilton v. Asbestos Corp., 22 Cal. 4th 1127, 1147-48 (2000), the California Supreme Court held that a trial court ordered complete consolidation where it ordered the cases consolidated under a single case number.  Because the consolidation order "was not limited to a consolidation for trial" and instead simply stated that the cases were consolidated, the Court reasoned that "[t]his is the language of complete consolidation."  Id. at 1148; see also City of Oakland v. Abend, 2007 WL 2023506, at *4 (N.D. Cal. July 12, 2007) (concluding that court completely consolidated cases when, although the order did not specify complete consolidation or consolidation for trial, the action proceeded under one case number).

Here, as in Hamilton, the Second Consolidation Order states that Greenwald "is ordered CONSOLIDATED as part of Master File No. 18CIV02845," the single case number for Ripple Labs. In so ordering, Judge DuBois referenced the First Consolidation Order, which explicitly effected a complete consolidation of Zakinov and Oconer "for all purposes, including pre-trial proceedings and trial," and set a single "Case Management Conference in the Master file" for all cases.  (Ex. E ¶ 6; Ex. F ¶¶ 2-3.)  Nothing suggests an intent to limit the scope of the consolidation, let alone states that consolidation is for trial only.  Nor would there be any reason to limit consolidation, given the

---

[6] Plaintiffs also argue that the court should "sever" Greenwald and Ripple Labs because the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 77z-1, supposedly applies to Greenwald but not Ripple Labs.  (ECF 18 at 16:8-11.)  In fact, the PSLRA applies to the entire consolidated action. See SG Cowen Sec. Corp. v. U.S. Dist. Ct., 189 F.3d 909, 913 n.1 (9th Cir. 1999) (rejecting argument that PSLRA discovery stay did not apply when state law claims are asserted with federal securities claims); In re Trump Hotel S'holder Derivative Litig., 1997 WL 442135, at *2 (S.D.N.Y. Aug. 5, 1997) ("There is simply nothing in either the text or the legislative history of the PSLRA that suggests that Congress intended to except federal securities actions in which there happens to be both diversity of citizenship and pendent state law claims.").  Hill v. The Tribune Co., 2005 WL 3299144 (N.D. Ill. Oct. 13, 2005) (ECF 18 at 16:8-11), did not involve state securities claims consolidated with federal securities claims; it involved only claims under the Employee Retirement Income Security Act.

1   extensive overlap between <u>Greenwald</u> and <u>Ripple Labs</u> and lack of prejudice from complete

2   consolidation.  Plaintiffs provide no support for their argument that Judge DuBois intended these

3   cases—which will depend on the same witnesses and evidence—to remain separate for pre-trial

4   proceedings, including discovery and class certification, only to be tried together, but with separate

5   resulting judgments.  And Greenwald previously argued that "coordination of dispositive motions and

6   discovery makes sense in order to promote judicial economy."  (Ex. 4 at 6:4-5.)

7        Plaintiffs also argue that Judge DuBois did not order complete consolidation because that may

8   be ordered "only where the parties are identical."  (ECF 18 at 11:10-12.)  That is not correct.  "[T]he

9   fact that all the parties are not the same" does not preclude complete consolidation.  <u>Jud Whitehead</u>

10  <u>Heater Co. v. Obler</u>, 111 Cal. App. 2d 861, 867 (1952).  The decision on which Plaintiffs rely,

11  <u>Sanchez</u>, 203 Cal. App. 3d at 1396, itself observes that complete consolidation "may be utilized where

12  the parties are identical"; it does not say that complete consolidation may be utilized *only* when the

13  parties are identical.  Nor does the consolidation statute require identical parties.  <u>See</u> Cal. Civ. Proc.

14  Code § 1048(a) (discussing only "a common question of law or fact" to support consolidation).

15  Furthermore, <u>Sanchez</u> did not turn on the parties being different, but on their injuries being different.

16  In <u>Sanchez</u>, the court concluded that consolidation was for trial only because the actions consolidated

17  in that case, which, unlike here, kept their separate case numbers, were brought by unrelated people

18  who were injured in the same traffic accident.  Because they had different injuries, they "would

19  presumably expect separate judgments."  <u>Sanchez</u>, 203 Cal. App. 3d at 1396.  Here, the actions are

20  brought on behalf of completely overlapping classes that seek the same relief for the same purported

21  injuries, and it is not reasonable to expect separate "pleadings, verdicts, findings and judgments," <u>id.</u>,

22  on the central, common question of whether XRP is a security.

23       **E.     The Second Consolidation Order Rendered The Action Removable**

24       In California, when there is "a complete consolidation or consolidation for all purposes . . . the

25  two actions are merged into a single proceeding under one case number and result in only one verdict

26  or set of findings and one judgment."  <u>Hamilton</u>, 22 Cal. 4th at 1147.  After "actions are

27  consolidated, . . . the allegations of the complaints can be treated as one pleading."  <u>Camil</u>, 57 Cal.

28  App. 3d at 500; <u>see also</u> <u>Sanchez</u>, 203 Cal. App. 3d at 1396 (stating "the pleadings are regarded as

16

merged"); 4 B.E. Witkin, <u>California Procedure: Pleadings</u> § 346 (5th ed. 2008) ("If the causes of action could have been joined, it is usually appropriate to order a complete consolidation, the separate actions becoming a single action, the separate pleadings being treated as part of one set, and a single verdict or judgment being given."). Thus, after consolidation, "the actions are viewed as if the same plaintiff or plaintiffs had filed a single complaint on joined causes of action against the same defendant or defendants." <u>Id.</u>

To determine whether removal is proper, courts consider a consolidated action as a single action. In <u>Bridewell-Sledge v. Blue Cross of California</u>, 798 F.3d 923, 925-26 (9th Cir. 2015), two putative class actions were filed in state court against the same defendants, on behalf of the same classes, asserting similar claims over the same alleged misconduct. The actions were consolidated "for all purposes" by the state court. <u>Id.</u> at 926. Defendants removed the consolidated class action pursuant to CAFA. <u>Id.</u> At issue was whether the "local controversy exception" to CAFA jurisdiction applied and barred removal, particularly, the requirement that in the "3-year period preceding the filing of that class action, no other class action has been filed asserting . . . similar factual allegations." <u>Id.</u> at 928. The plaintiffs argued that consolidation of the two actions "prior to removal resulted in a single consolidated class action, and, as such, no 'other class action' had been filed during the three-year period preceding the filing of the consolidated class action." <u>Id.</u> at 929. The defendants, however, argued that the exception did not apply because the actions should be considered separately, with one being filed before the other. <u>Id.</u>

The Ninth Circuit held removal was improper. It reasoned that "[u]nder California law, when two actions are consolidated 'for all purposes,' 'the two actions are merged into a single proceeding under one case number and result in only one verdict or set of findings and one judgment'" and "California law controls because 'we look to state law to determine when an action has been commenced under CAFA.'" <u>Id.</u> at 930. Accordingly, the Ninth Circuit concluded that "when examining whether [it] ha[d] federal jurisdiction over [action 1] and [action 2] under CAFA, it is necessary to view [action 1] and [action 2] as a single consolidated class action that was united originally, rather than as two separate class actions filed at different times." <u>Id.</u> Thus, "[w]hen viewed as a single consolidated class action . . . it [was] undisputed that no other similar class action was filed

1  against any of the defendants during the preceding three-year period;" CAFA's local controversy

2  exception applied, and the entire consolidated action was remanded.  Id.

3      Thus, based on Ninth Circuit precedent, this Court should consider the Greenwald and Ripple

4  Labs actions as "a single consolidated class action that was united originally" in determining whether

5  there is jurisdiction under CAFA.  Id. at 930; see also Camil, 57 Cal. App. 3d at 500 (complaints in

6  consolidated action are treated as one pleading); Abend, 2007 WL 2023506, at *3 (considering

7  complaints together in determining whether removal was proper); Amadu, 2016 WL 3676474, at *3

8  (concluding that "actions that are initiated separately and subsequently consolidated become a single

9  action," and thus consolidation of the two actions destroyed diversity).  When the complaints are

10  considered together here, Plaintiffs do not—nor can they—dispute that the Action is removable.[7]

11      Plaintiffs instead argue that the Stipulation and First Consolidation Order rendered the

12  Greenwald complaint "null" because the Consolidated Complaint is the sole operative complaint.

13  (ECF 17 at 9:12-14, 10:4-6; ECF 18 at 11:22-12:10.)  However, the Stipulation and First Consolidation

14  Order addressed issues besides consolidation.  One such issue was that two, largely identical

15  complaints—Zakinov and Oconer—were filed and served at different times.  To provide a single

16  complaint and date for Defendants to respond, the parties stipulated that Zakinov and Oconer "shall

17  either designate a complaint as operative or file a Consolidated Complaint within 45 days after entry of

18  th[e] order."  (Ex. E ¶ 8.)  The Stipulation included a briefing schedule for Defendants to respond to

19  the Consolidated Complaint.  (Id.)  For avoidance of doubt, the Stipulation also provided:  "If filed, the

20  Consolidated Complaint shall be the operative complaint and shall supersede all complaints filed in

21  any of the actions consolidated herein."  (Id.)

22      When Judge DuBois entered the First Consolidation Order, there were two "actions

23  consolidated herein"—Zakinov and Oconer.  Thus, the Consolidated Complaint superseded the

24  ---

[7] When determining whether an action is removable, California law controls the question of the nature
25  of consolidation.  Bridewell, 798 F.3d at 930.  Thus, the cases Plaintiffs cite (ECF 18 at 11:2-6)
addressing consolidation under the Federal Rules of Civil Procedure are inapplicable.  See Hall v. Hall,
26  138 S. Ct. 1118, 1131 (2018) (holding that actions consolidated under Rule 42 keep their separate
character "at least to the extent that a final decision in one is immediately appealable"); Schnabel v.
27  Lui, 302 F.3d 1023, 1035 (9th Cir. 2002) (considering nature of consolidation under Rule 42); J.G.
Link & Co. v. Cont'l Cas. Co., 470 F.2d 1133, 1138 (9th Cir. 1972) (concluding that consolidation
28  preserved parties' separate rights under federal law); Int'l Soc'y for Krishna Consciousness, Inc. v. City
of Los Angeles, 611 F. Supp. 315, 319 (C.D. Cal. 1984) (same).

OPPOSITION TO MOTIONS TO REMAND                    CASE NO.: 4:18-cv-06753-PJH

1  complaints in those actions.   The First Consolidation Order does not state that the Consolidated

2  Complaint would supersede the complaints in related actions that would be consolidated *in the future*,

3  like Greenwald.   Moreover, the Second Consolidation Order does not reference the Consolidated

4  Complaint, let alone state that it supersedes the Greenwald complaint.  (Ex. F ¶ 2.)

5      Interpreting the Orders in the manner Plaintiffs urge would, as Plaintiffs acknowledge,

6  effectively eliminate Greenwald, his claims and his purported class, not merge Greenwald with Ripple

7  Labs.   While Defendants have no objection to Greenwald effectively disappearing, a consolidation

8  cannot so affect the parties' substantive rights.   See Jud, 111 Cal. App. 2d at 867.   It is therefore

9  unreasonable either to interpret Judge DuBois's Consolidation Orders as having that effect or to accept

10  Plaintiffs' ipse dixit that Judge DuBois did not "really intend[]" to consolidate Greenwald with Ripple

11  Labs, despite his unambiguous order doing just that.   (ECF 17 at 9:12.)   Rather, the Orders

12  consolidating the cases must be taken at face value, and consistent with California law, as merging

13  Greenwald and Ripple Labs so that the complaints are now "treated as one pleading."  Camil, 57 Cal.

14  App. 3d at 500.

15  **V.   NO "VOLUNTARY ACT" WAS NECESSARY TO MAKE THE ACTION REMOVABLE, BUT A "VOLUNTARY ACT" OCCURRED**

16

17      Plaintiffs argue that the Second Consolidation Order did not render the Action removable

18  because the Order was not the result of a "voluntary act" they took.  (ECF 17 at 7:15-8:15; ECF 18 at

19  8:11-10:26.)  This argument is a red herring.  Courts refuse to apply a "voluntary-involuntary" rule in

20  the context of a sua sponte or defendant-sought consolidation that made a case removable.  Even if a

21  "voluntary act" were needed (which it is not), Plaintiffs' Stipulation satisfies any "voluntary act"

22  requirement.  None of the cases Plaintiffs cite assists their argument here as they all arise in one of two

23  different contexts:   either (i) removal under the "mass action" provisions of CAFA or (ii) when

24  diversity jurisdiction arose due to the dismissal of a defendant on the merits.

25      **A.   CAFA's "Mass Action" Provision Does Not Apply**

26      CAFA has specific provisions applying to removal of so-called "mass actions" that do not

27  apply here because the cases before the Court expressly fall outside the definition of "mass action."

28  Section 1332(d)(11)(B)(i) defines a "mass action" as "any civil action (**except [a class action]**) in

   which monetary relief claims of 100 or more persons are proposed to be tried jointly."  Excluded from

19

1    the definition of a "mass action" is "any civil action in which . . . the claims are joined upon motion of

2    a defendant" or in which "the claims have been consolidated or coordinated solely for pretrial

3    proceedings." 28 U.S.C. § 1332(d)(11)(B)(ii)(II), (IV). Because the definition of "mass action"

4    expressly excludes class actions, the mass action provisions of CAFA do not apply here. See e.g.,

5    Tanoh v. Dow Chem. Co., 561 F.3d 945, 955-56 (9th Cir. 2009) (noting that class actions are not

6    subject to CAFA's mass action requirements).

7         For this reason, Plaintiffs' repeated citations to mass action cases are inapposite. For example,

8    Plaintiffs cite Agnello v. Twin Hill Acquisition Co., 2018 WL 3972022 (N.D. Cal. Aug. 20, 2018), for

9    the proposition that "the proposal to try claims jointly must come from the plaintiffs, not from the

10   defendants." (ECF 17 at 7:15-20; ECF 18 at 8:11-16.) However, Agnello addressed requirements for

11   removal pursuant to CAFA's "mass action" provision. Applying the express statutory requirements,

12   the Agnello court concluded that removal was improper where "Plaintiffs did not intend to propose a

13   joint trial." Agnello, 2018 WL 3972022 at *7. Such a case does not apply here in the class action

14   context. See Tanoh, 561 F.3d at 955-56.

15        Plaintiffs' other cases likewise address the statutory definition of "mass action" and are

16   therefore inapplicable. See, e.g., Dunson v. Cordis Corp., 854 F.3d 551, 557 (9th Cir. 2017) (removal

17   improper under CAFA's mass action provision because plaintiffs' request for a bellwether-trial did not

18   amount to a proposal to try their claims jointly); Corber v. Xanodyne Pharm., Inc., 771 F.3d 1218,

19   1223 (9th Cir. 2014) (removal under CAFA's mass action provision was proper because plaintiffs'

20   petitions for coordination in state court were a proposal to have their claims tried jointly); Tanoh, 561

21   F.3d at 955-56 (removal under CAFA's mass action provision improper where defendant argued that

22   actions could be combined to qualify as a mass action); Rice v. McKesson Corp., 2013 WL 97738, at

23   *2 (N.D. Cal. Jan. 7, 2013) (removal under CAFA's mass action provision improper because plaintiffs'

24   petition for coordination was "bereft of any explicit proposal" to have their claims tried jointly).

25        Notably, the provisions of CAFA addressing the removability of class actions, as opposed to

26   "mass actions," do not include any similar prohibitions on the removal of consolidated cases. See 28

27   U.S.C. § 1332(d)(1)-(10). The fact that Congress explicitly conditioned the removal of mass actions

28   on the plaintiffs seeking a joint trial, but explicitly excluded class actions from that same requirement,

1  implies that Congress did not intend to apply any similar limitation on the removal of consolidated

2  class actions.  See Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes

3  particular language in one section of a statute but omits it in another section of the same Act, it is

4  generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

5  exclusion." (alteration in original)).  Therefore, if anything, Plaintiffs' "mass action" cases support

6  Defendants' position.

7         **B.**    **The Voluntary-Involuntary Rule Is Inapplicable Here**

8        Plaintiffs' reliance on the "voluntary-involuntary" rule is no more availing.  The voluntary-

9  involuntary rule developed in cases examining whether a case became removable when a non-diverse

10  defendant was dismissed from a case.  See Self v. Gen. Motors Corp., 588 F.2d 655, 657-58 (9th Cir.

11  1978).  For example, the United States Supreme Court held that a case could be removed if the plaintiff

12  voluntarily dismissed a non-diverse defendant, Powers v. Chesapeake & Ohio Ry., 169 U.S. 92, 101-

13  02 (1898), but it could not be removed if the defendant were involuntarily dismissed after a directed

14  verdict, Whitcomb v. Smithson, 175 U.S. 635, 637-38 (1900).  Eventually, the rule became that "only a

15  voluntary act of the plaintiff could bring about removal to federal court."  Self, 588 F.2d at 658.

16        In Self, however, the court clarified that the "voluntary act" is not an independent prerequisite

17  for removal.  The voluntary-involuntary rule is just a restatement of the familiar "well-pleaded

18  complaint rule" from Louisville & Nashville Railroad Co. v. Mottley, 211 U.S. 149 (1908), applied in

19  the context of removal.  See Self, 588 F. 2d at 657-58.  The Self court concluded: "the voluntary-

20  involuntary rule is based on a formalistic approach to pleadings similar to the Mottley line of cases and

21  applies to the diversity requirement of 28 U.S.C. § 1332 in the same fashion that Mottley applies to the

22  federal question requirement of 28 U.S.C. § 1331."  Id. at 658.  Thus, the "voluntary-involuntary rule"

23  just means that, when assessing if an action is removable based on diversity, the court looks only to the

24  "plaintiff's complaint and the context in which it is found," not to defenses or subsequent

25  developments, such as a dismissal of a defendant on the merits.  Id. at 659-60.

26        This rule generally has not been extended to other contexts in which a court order or other

27  change creates the foundation for federal jurisdiction.  See Thompson v. Target Corp., 2016 WL

28  4119937, at *8 n.7 (C.D. Cal. Aug. 2, 2016) (refusing to extend rule).  Indeed, every case Plaintiffs cite

OPPOSITION TO MOTIONS TO REMAND                       CASE NO.: 4:18-cv-06753-PJH

1  addresses whether diversity jurisdiction arose when a non-diverse defendant was eliminated from a

2  case; *none* address whether consolidation can make a case removable.  See Dunkin v. A.W.

3  Chesterson Co., 2010 WL 1038200, at *3 (N.D. Cal. Mar. 19, 2010) (remanding action where the non-

4  diverse defendant had not been dismissed at time of removal); Abeyta v. Raytheon Space & Airborne

5  Sys. Co., 2008 WL 11338842, *2 (C.D. Cal. June 12, 2008) (non-diverse defendants dismissed by

6  stipulation was equal to dismissal on the merits because change in the law would have led to the

7  dismissal); Cohen v. GTE Gov't Sys. Corp., 1993 U.S. Dist. LEXIS 7914, *2 (N.D. Cal. Apr. 6, 1993)

8  (remanding action upon state court's order dismissing the non-diverse defendants); Camino Camper of

9  San Jose, Inc. v. Winnebago Indus., Inc., 715 F. Supp. 964 (N.D. Cal. 1989) (remanding action

10 because the court-ordered dismissal was an involuntary act).[8]

11         In fact, a consolidation may make a case removable—even when ordered sua sponte or sought

12 by the defendant—because removal based on a consolidation order does not offend the well-pleaded

13 complaint rule.  In these situations, removal is still based only on a review of the complaints viewed

14 together.  See, e.g., MTBE, 399 F. Supp. 2d at 355 (state court sua sponte consolidation order rendered

15 previously non-removable action removable); Tonyco, Inc. v. Equity Mktg., Inc., 2000 WL 654957, at

16 *3 (E.D. Mich. Apr. 25, 2000) (noting had the actions been consolidated in state court, as opposed to

17 federal court, removal would have been appropriate); Barker v. Hartford Fire Ins. Co., 100 F. Supp.

18 1022, 1023 (E.D. Ky. 1951) (removal proper after sua sponte consolidation).

19         In Parkhill Produce Co. v. Pecos Valley Southern Railway Co., 196 F. Supp. 404, 406 (S.D.

20 Tex. 1961), impliedly overruled in part on other grounds, Weems v. Louis Dreyfus Corp., 380 F.2d

21 545, 547 (5th Cir. 1967), the court rejected the argument that the voluntary-involuntary rule precluded

22 removal after two cases were consolidated over the plaintiff's objection.  The court reasoned:  "The

23 order of consolidation in our cases was not on any point on the merits of the same.  For this Court to

---

24 [8] Plaintiffs' other cases are inapposite or not good law.  (ECF 17 at 8:10-13; ECF 18 at 8:19, 10:22-26.)

25 Welgs v. Dolan, 2011 WL 3444281, at *1 (N.D. Ohio Aug. 8, 2011), involved a defendant removing
   an action from New York state court to the Northern District of Ohio, violating the statute that requires

26 removal "to the district court of the United States for the district and division embracing the place
   where such action is pending."  Pineda v. Bank of Am., N.A., 2011 WL 1134467, at *3 (N.D. Cal.

27 Mar. 28, 2011), involved a defendant who waived the ability to remove.  Finally, in Goodman v. Wells
   Fargo Bank, N.A., 2014 WL 12626334 (C.D. Cal. July 1, 2014), the court concluded that intervening

28 Ninth Circuit authority was not a voluntary act making the action removable, but that decision was
   vacated on appeal.  Goodman v. Wells Fargo Bank, N.A., 602 F. App'x 681 (9th Cir. 2015).

1  permit a remand on the basis that the consolidation order making the causes removable was granted

2  over plaintiff's objection, would defeat the purpose of [28 U.S.C. § 1446(b)] and would thwart the right

3  of a trial in a federal court when the jurisdictional amount permits." Id. at 406; see also Bley v.

4  Travelers Ins. Co., 27 F. Supp. 351, 358 (S.D. Ala. 1939) (consolidation of two suits on defendant's

5  motion merged them into one, effectively commencing a new action that became removable, and

6  rejecting plaintiff's argument that consolidation was "involuntary"); Nat'l Union Fire Ins. Co. v.

7  Chesapeake & O. Ry. Co., 4 F. Supp. 25, 32 (E.D. Ky. 1933) (consolidation rendered suit removable

8  and rejecting argument that the plaintiffs had a "right to prosecute each suit to a final decision in their

9  own way," concluding that "they did not have such right;" "the court had the right to order them

10 consolidated and thereby put an end to the separate actions and bring into existence a single

11 [removable] action").[9]

12      Defendants' removal is likewise based solely on the allegations in the well-pleaded Greenwald

13 and Ripple Labs complaints.  The legal effect of the Second Consolidation Order, which, like the order

14 in Parkhill, resolves nothing on the merits, is to treat the actions as though they were originally brought

15 as one proceeding; the two complaints are merged and considered one pleading.  But nothing outside

16 that pleading, no decision on the merits or action by defendants, forms the basis of jurisdiction.  Thus,

17 the voluntary-involuntary rule does not apply and does not assist Plaintiffs in defeating removal.

18      In any event, the Second Consolidation Order "is traceable to a voluntary act by Plaintiff[s]."

19 Thompson, 2016 WL 4119937, at *8 n.7.  As shown above, supra Part IV.A, Plaintiffs voluntarily

20 agreed to the Stipulation, which applies by its express terms to related actions and which contemplates

21 that related actions remanded to state court, such as Greenwald, would be consolidated with Ripple

22 Labs.  (Ex. E ¶¶ 14, 15.)  Defendants filed the Notice of Related Cases notifying the court of

23 Greenwald for purposes of consolidation.  Plaintiffs did not object.  Plaintiffs' agreement to the

---

24 [9] For the same reason, Plaintiffs are wrong that they have unfettered entitlement "to determine the
25 nature and scope of the case to be advanced."  (ECF 18 at 10:15-16.)  Plaintiffs have a right to decide
   which claims to assert.  In Chow v. Hirsch, 1999 U.S. Dist. LEXIS 3010, at *12-13 (N.D. Cal. Feb. 22,
26 1999), upon which Plaintiffs rely (ECF 18 at 17:10-16), for example, the court granted the plaintiff
   leave to amend to drop a federal claim from her lawsuit, noting she could choose "between her federal
27 claims and her right to have the case heard in state court."  Chow, 1999 U.S. Dist. LEXIS 3010, at *7.
   However, Plaintiffs do not have a right to insist on separate pre-trial and trial proceedings for those
28 claims, causing cost, inefficiencies and potential conflicting judgments to Defendants and the Court in
   order to have their case heard in state court.

1  stipulation, decision not to object to the Notice, and the subsequent consolidation gave rise to the

2  circumstances for removal.  That satisfies as a voluntary act traceable to Plaintiffs.[10]

3  **VI.    NO EXCEPTION TO CAFA JURISDICTION APPLIES**

4        Plaintiffs also argue that, if considered independently, Ripple Labs is not removable because

5  certain exceptions to CAFA jurisdiction apply.  (ECF 18 at 12:12-15:17.)  Defendants do not contend

6  that Ripple Labs is removable absent its consolidation with Greenwald, so the Court need not reach

7  these arguments.  However, Plaintiffs' arguments fail.

8        **A.    The Local Controversy Exception Does Not Apply**

9        Plaintiffs fail to show that the "local controversy" exception to CAFA jurisdiction bars

10  removal.  The exception requires that more than two-thirds of proposed class members are California

11  citizens.   28 U.S.C. § 1332(d)(4)(A)(i)(I).   Looking  to  both  the  Ripple Labs  and  Greenwald

12  complaints, this requirement is not met.  The putative class in Greenwald consists of "all persons or

13  entities who purchased XRP since July 3, 2015," without any geographic limitation.  (Ex. B ¶ 87.)

14  Plaintiffs do not dispute that this means there are putative class members throughout the world.  (ECF

15  2 ¶ 19.)  Thus, there is no basis to conclude that "greater than two-thirds" of the putative class members

16  are California citizens.

17        Similarly, Plaintiffs cannot meet the requirement that the "principal injuries resulting from the

18  alleged conduct" were incurred in California.  28 U.S.C. § 1332(d)(4)(A)(i)(III).  Plaintiffs rely on

19  Benko v. Quality Loan Service Corp., 789 F.3d 1111 (9th Cir. 2015) (ECF 18 at 14:22-24), where the

20  class was comprised of Nevada plaintiffs who took out loans against their Nevada property and then

21  sued for violations of Nevada law involving foreclosures of their property.  Id. at 1115.  Thus, "[t]he

22  alleged misconduct took place exclusively in the state of Nevada."  Id. at 1119.  Here, because the

23  putative class consists of persons throughout the world (ECF 2 ¶ 19), Plaintiffs cannot contend that the

24  principal injuries were incurred in California.

25

---

26  [10] Plaintiffs argue that Greenwald was not a party to or served with the Stipulation, and therefore the
stipulation was not a "voluntary" act.  (ECF 17 at 3:2-4, 5 n.4; ECF 18 at 9:16-18.)  However,
27  Greenwald filed the Stipulation as part of his Motion to Remand, see Ex. D to Decl. of John T. Jasnoch
in Support of Plfs' Mot. to Remand, Greenwald v. Ripple Labs Inc., No. 18-cv-04790-PJH (ECF. 15-2)
28  (N.D. Cal. Sept. 7, 2018), so he was clearly aware of it.  Moreover, Plaintiffs cite no authority to
suggest that a "voluntary" act requires *all* plaintiffs in an action to assent.

1    Finally, Plaintiffs fail to satisfy the requirement that "during the 3-year period preceding the

2    filing of that class action, *no other class action* has been filed asserting the same or similar factual

3    allegations against any of the defendants on behalf of the same or other persons."   28 U.S.C.

4    § 1332(d)(4)(A)(ii).   As shown above, Part II.A, <u>Coffey</u> asserted the exact claims asserted here and

5    was filed before Plaintiffs filed any of their actions, thereby making the exception inapplicable.

6    ### B.    <u>The Securities Exception Does Not Apply</u>

7    Plaintiffs argue that <u>Ripple Labs</u> falls within the exception to CAFA jurisdiction for actions that

8    solely involve "a claim . . . that relates to the rights, duties (including fiduciary duties), and obligations

9    relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities

10   Act)."   28 U.S.C. §§ 1332(d)(2)(9)(C), 1453(d)(3);  (ECF 18 at 15:2-17.)   However, the so-called

11   "securities exception" to CAFA jurisdiction does not apply to claims seeking to enforce the rights of

12   plaintiffs as "purchasers" of securities rather than as "holders" of securities.  <u>Eminence Inv'rs, L.L.L.P.</u>

13   <u>v. Bank of N.Y. Mellon</u>, 782 F.3d 504, 508-09 (9th Cir. 2015).   Plaintiffs' claims arise from their

14   alleged purchases of XRP, not from their alleged rights as holders of XRP.  (Ex. A ¶¶ 1-2, 65, 80; Ex.

15   B ¶¶ 1-3, 82.)   Therefore, the securities exception does not apply.

16   ## VII.   <u>PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES</u>

17   Plaintiffs' contention that they are entitled to attorneys' fees and costs because Defendants'

18   position is "far from supportable" is wrong.  (ECF 18 at 17:18-22.)   Courts award attorneys' fees under

19   28 U.S.C. § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking

20   removal."  <u>Jordan</u>, 781 F.3d at 1184.   That standard has not been met here.   As demonstrated above,

21   Defendants' analysis herein is correct, supported by law, and warrants denial of Plaintiffs' Motions.

22   ## VIII.   <u>CONCLUSION</u>

23   For the reasons stated herein, the Court should deny Plaintiffs' Motions to Remand.   If the

24   Court, however, is inclined to grant Plaintiffs' Motions to Remand, Defendants respectfully request a

25   stay while Defendants appeal the remand order to the Ninth Circuit.

26   DATED: December 28, 2018          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

27                                     By:  _____*/s/ Peter B. Morrison*_____
                                                          Peter B. Morrison
28                                                     Attorney for Defendants