Kathleen R. Hartnett (SBN 314267)
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:     (415) 293-6800
Facsimile:      (415) 293-6899
Email:          khartnett@bsfllp.com

Damien J. Marshall (*pro hac vice admitted*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone:     (212) 446-2300
Facsimile:      (212) 446-2350
Email:          dmarshall@bsfllp.com

Andrew J. Ceresney (*pro hac vice pending*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone:     (212) 909-6000
Facsimile:      (212) 909-6836
Email:          aceresney@debevoise.com

*Attorneys for Defendants Ripple Labs Inc.,*
*XRP II, LLC, and Bradley Garlinghouse*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re RIPPLE LABS INC. LITIGATION, | Case No. 18-cv-06753-PJH |
| | |
| This Document Relates To:<br>All Actions | **NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT FOR VIOLATIONS OF FEDERAL AND CALIFORNIA LAW; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| | Date:   January 15, 2020<br>Time:  9:00 a.m.<br>Place:  Courtroom 3<br>Judge: Hon. Phyllis J. Hamilton |
| | Consolidated Complaint filed:  August 5, 2019 |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on January 15, 2020, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Phyllis J. Hamilton, United States District Judge, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 3, the undersigned Defendants, Ripple Labs Inc. ("Ripple"), XRP II, LLC ("XRP II"), and Bradley Garlinghouse (collectively, "Defendants"), will move the Court to dismiss Lead Plaintiff Bradley Sostack's ("Plaintiff's") Consolidated Complaint for Violations of Federal and California Law ("Complaint"). Defendants' Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and seeks dismissal of the Complaint with prejudice.

This Motion is based on this Notice of Motion and supporting Memorandum of Points and Authorities, Request for Judicial Notice, the Declaration of Kathleen Hartnett filed in support thereof, reply briefing in further support of this Motion, any matters of which this Court may take judicial notice, the files in this action, the arguments of counsel, and any such other matters as the Court may consider.

Dated: September 19, 2019

Respectfully Submitted,

By:   _/s/ Kathleen R. Hartnett_
    Kathleen R. Hartnett (SBN 314267)
    BOIES SCHILLER FLEXNER LLP
    44 Montgomery Street, 41st Floor
    San Francisco, CA 94104
    Telephone: (415) 293-6800
    Facsimile:  (415) 293-6899
    Email: khartnett@bsfllp.com

    Damien J. Marshall (*pro hac vice admitted*)
    BOIES SCHILLER FLEXNER LLP
    55 Hudson Yards, 20th Floor
    New York, NY 10001
    Telephone: (212) 446-2300
    Facsimile:  (212) 446-2350
    Email: dmarshall@bsfllp.com

    Andrew J. Ceresney (*pro hac vice pending*)
    DEBEVOISE & PLIMPTON LLP
    919 Third Avenue
    New York, NY 10022

i

Telephone: (212) 909-6000
Facsimile:  (212) 909-6836
Email: aceresney@debevoise.com

*Attorneys for Defendants Ripple Labs Inc.,*
*XRP II, LLC, and Bradley Garlinghouse*

MOTION TO DISMISS CONSOLIDATED COMPLAINT
CASE NO. 18-cv-06753-PJH

1

## **TABLE OF CONTENTS**

2 MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

3 I.     INTRODUCTION .................................................................................................1

4 II.    STATEMENT OF ISSUES TO BE DECIDED .....................................................2

5 III.   FACTUAL BACKGROUND ................................................................................3

6        A.    Defendants ..................................................................................................3

7        B.    XRP and the XRP Ledger .........................................................................3

8        C.    XRP Sales, Including Plaintiff's Alleged Purchases ................................4

9 IV.    STANDARD OF REVIEW ...................................................................................4

10 V.    PLAINTIFF'S FEDERAL SECURITIES CLAIMS ARE BARRED BY THE
       STATUTE OF REPOSE AND FAIL TO STATE A CLAIM (Counts 1, 2)...........5
11
       A.    Plaintiff's Securities Act Claims Are Barred By The Act's Statute Of Repose .......5
12
             2.    Plaintiff's Allegations Demonstrate That He Brought This Action More
13                 Than Three Years After Defendants Allegedly First Offered XRP To
                   The Public ........................................................................................7
14
             3.    Plaintiff's Effort to Plead Around Section 13 Fails ..........................8
15
       B.    Plaintiff's Securities Act Claims Fail Because He Does Not Plausibly Allege
16           That He Purchased XRP In An "Initial Distribution"................................10

17     C.    Plaintiff's Securities Act Claims Fail Because He Does Not Plausibly Allege
             That He Purchased XRP From Any Defendant ........................................11
18
             1.    Plaintiff Does Not Allege That Any Defendants Passed Title To Him ......12
19
             2.    Plaintiff Does Not Allege That Any Defendant Solicited His Purchases ......13
20
       D.    Plaintiff Fails To State A Claim Under Section 15....................................14
21
22 VI.   PLAINTIFF FAILS TO STATE ANY CLAIMS UNDER THE CALIFORNIA
       CORPORATIONS CODE (Counts 3, 4, and 5) ...................................................15
23
       A.    Plaintiff's "Unqualified" Securities Claims Fail (Counts 3 And 5, Cal. Corp.
             Code §§ 25110, 25503, and 25504)........................................................15
24
             1.    Plaintiff Fails To Allege An "Issuer Transaction"...........................15
25
             2.    Plaintiff Fails To Allege Privity With Defendants ...........................15
26
             3.    Plaintiff Fails To Allege His XRP Transaction Occurred "In This State" ......16
27
             4.    Control Person Liability Is Unavailable Absent A Primary Violation ......17
28
       B.    Plaintiff's Misrepresentation Claim Fails (Count 4)................................17

iii

1.   Plaintiff Fails To Allege Privity Or An In-State Transaction ...............................17

2.   Plaintiff Fails To Identify Any Statements Made By Defendants "In Connection With" Plaintiff's XRP Purchases ...................................18

3.   Plaintiff Fails To Allege An Actionable Misstatement Under Rule 9(b) ..............18

4.   Plaintiff Cannot Sustain A Material Assistance Claim Under Section 25504.1 Because He Failed To Allege A Primary Violation Or Plead With Particularity ...................................................22

VII.   PLAINTIFF'S CALIFORNIA CONSUMER PROTECTION CLAIMS MUST BE DISMISSED (Counts 6, 7) ...................................................23

A.   Plaintiff's Consumer Claims Fail Because They Relate To "Securities Transactions" .....23

B.   Plaintiff's Consumer Claims Are Barred By The FAL and UCL's Safe Harbor ...................................................24

C.   Plaintiff's Consumer Protection Claims Are Insufficiently Pled Under Rule 9(b) ...................................................24

VIII.   CONCLUSION...................................................25

# TABLE OF AUTHORITIES

**Cases**

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*
    158 Cal. App. 4th 226 (2007) ........................................................................ 17, 18

*AREI II Cases*
    2016 Cal. App. 4th, 1004 (2013) ........................................................................ 22

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)................................................................... 5, 9, 11, 13

*Betz v. Trainer Wortham & Co.*
    829 F. Supp. 2d 860 (N.D. Cal. 2011) ........................................................................ 23

*Bowden v. Robinson*
    67 Cal. App. 3d 705 (Ct. App. 1977)........................................................................ 16

*Bowen v. Ziasun Tech.*
    116 Cal. App. 4th 777 (2004) ........................................................................ 2, 23

*Cal. Pub. Emp. Ret. Sys. v. ANZ Sec., Inc.*
    137 S. Ct. 2042 (2017)........................................................................ 6, 7, 9

*Calderon v. Total Wealth Mgmt., Inc.*
    2017 WL 6272096 (S.D. Cal. Jan. 19, 2017)........................................................................ 22

*Calderon v. Total Wealth Mgmt., Inc.*
    2018 WL 1621397 (S.D. Cal. Apr. 4, 2018)........................................................................ 22

*Cel-Tech Commc'ns, Inc. v. L.A. Cell. Tel. Co.*
    20 Cal. 4th 163 (1999)........................................................................ 23, 24

*CFTC v. McDonnell*
    287 F. Supp. 3d 213 (E.D.N.Y.2018) ........................................................................ 3

*Diamond Multimedia Sys., Inc. v. Superior Court*
    19 Cal. 4th 1036 (1999) ........................................................................ 16, 17

*Doan v. Singh*
    2013 WL 3166338 (E.D. Cal. June 20, 2013) ........................................................................ 19, 21

*Garcia v. M-F Athletic Co., Inc.*
    2012 WL 531008 (E.D. Cal. Feb. 17, 2012)........................................................................ 13

*Great Pac. Sec. v. Barclays Capital, Inc.*
    743 Fed. App'x 780 (9th Cir. 2018) ........................................................................ 25

*Greenberg v. Sunrun, Inc.*
    233 F. Supp. 3d 764 (N.D. Cal. 2017) ........................................................................ 19

*Gustafson v. Alloyd Co., Inc.*
    513 U.S. 561 (1995)........................................................................ 10

*Hadley v. Kellogg Sales Company*
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................... 24

*Hall v. Sea World Entm't, Inc.*
   2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ..................................................... 25

*In re Am. Principals Holdings, Inc. Sec. Litig.*
   1987 WL 39746 (S.D. Cal. July 9, 1987) ........................................................... 16

*In re Bare Escentuals, Inc. Sec. Litig.*
   745 F. Supp. 2d 1052 (N.D. Cal. 2010) ............................................................. 12

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*
   2012 WL 1322884 (C.D. Cal. Apr. 16, 2012) .............................................. 13, 14

*In re Gilead Scis. Sec. Litig.*
   536 F.3d 1049 (9th Cir. 2008) .............................................................................. 5

*In re Harmonic, Inc., Sec. Litig.*
   2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) ................................................... 13

*In re IndyMac Mortgage-Backed Sec. Litig.*
   793 F. Supp. 2d 637 (S.D.N.Y. 2011) ................................................................. 6

*In re Longfin Corp. Sec. Class Action Litig.*
   2019 WL 1569792 (S.D.N.Y. Apr. 11, 2019) ................................................... 12

*In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.*
   636 F. Supp. 1138 (C.D. Cal. 1986) .................................................................... 6

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................................. 25

*In re Violin Memory Sec. Litig.*
   2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) .......................................... 12, 14, 15

*Irving Fireman's Relief & Ret. Fund v. Uber Techs., Inc.*
   2018 WL 4181954 (N.D. Cal. Aug. 31, 2018) ................................................... 21

*Jackson v. Fischer*
   931 F. Supp. 2d 1049 (N.D. Cal. 2013) ........................................................ 16, 17

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*
   1998 WL 2016 2016634 (N.D. Cal. Sept. 14, 1998) .......................................... 23

*Kelter v. Forrest*
   2008 WL 11342628 (C.D. Cal. July 2, 2008) .................................................... 23

*Konik v. Cable*
   2009 WL 10681970 (C.D. Cal. Dec. 2, 2009) ................................................... 17

*Lewis v. City and Cty. of San Francisco*
   2012 WL 909801 (N.D. Cal. Mar. 16, 2012) ...................................................... 9

MOTION TO DISMISS CONSOLIDATED COMPLAINT
CASE NO. 18-cv-06753-PJH

*Lockheed Martin Corp. v. Network Solutions, Inc.*
  194 F.3d 980 (9th Cir. 1999) ............................................................... 25

*Loeffler v. Target Corp.*
  58 Cal.4th 1081 (2014) ........................................................................ 24

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*
  2011 WL 4389689 (C.D. Cal. May 5, 2011) ................................... 13, 14

*Mauser v. Marketbyte LLC*
  2013 WL 12073832 (S.D. Cal. Jan. 4, 2013) ................................... 18, 21

*McCormick v. Indep. Life & Annuity Co.*
  794 F.3d 817 (7th Cir. 2015) .................................................................. 6

*Meadows v. Pac. Inland Sec. Corp.*
  36 F. Supp. 2d 1240 (S.D. Cal. 1999) ................................................... 10

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*
  540 F.3d 1049 (9th Cir. 2008) .............................................................. 11

*Miguel v. Country Funding Corp.*
  309 F.3d 1161 (9th Cir. 2002) ................................................................ 6

*Mirkin v. Wasserman*
  5 Cal. 4th 1082 (1993) ......................................................................... 15

*Mohebbi v. Khazen*
  50 F. Supp. 3d 1234 (N.D. Cal. 2014) ................................................. 23

*Mori v. Saito*
  2013 WL 1736527 (S.D.N.Y. Apr. 19, 2013) ........................................ 6

*Mosco v. Motricity, Inc.*
  649 F. App'x 526 (9th Cir. 2016) ......................................................... 21

*Muehlenberg v. Experian Info. Solutions, Inc.*
  2017 WL 6622837 (N.D. Cal. Dec. 28, 2017) ........................................ 5

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*
  135 S. Ct. 1318 (2015) ......................................................................... 20

*P. Stolz Fam. P'ship, L.P. v. Daum*
  355 F.3d 92 (2d Cir. 2004) .................................................................. 6, 9

*Pinter v. Dahl*
  486 U.S. 622 (1988) .................................................................. 12, 13, 14

*Pom Wonderful LLC v. Coca Cola Co.*
  2013 WL 543361 (C.D. Cal. Feb. 13, 2013) ......................................... 24

*PPM Am., Inc. v. Marriott Corp.*
  853 F. Supp. 860 (D. Md. 1994) .......................................................... 14

MOTION TO DISMISS CONSOLIDATED COMPLAINT
CASE NO. 18-cv-06753-PJH

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*
    845 F.3d 1268 (9th Cir. 2017) ................................................................. 20, 21

*Rosenzweig v. Azurix Corp.*
    332 F.3d 854 (5th Cir. 2003) ............................................................................ 13

*Rubke v. Capital Bancorp Ltd.*
    551 F.3d 115 (9th Cir. 2009) ........................................................................... 20

*S.F. Residence Club, Inc. v. Amado*
    773 F. Supp. 2d 822 (N.D. Cal. 2011) ............................................................. 23

*SEC v. W.J. Howey Co.*
    328 U.S. 293 (1946) .......................................................................................... 21

*SIC Metals, Inc. v. Hyundai Steel Co.*
    2018 WL 6842958 (C.D. Cal. Nov. 14, 2018) ........................................... 18, 22

*Siegal v. Gamble*
    2016 WL 1085787 (N.D. Cal. Mar. 21, 2016) ..................................... 16, 22, 23

*Swartz v. KPMG LLP*
    476 F.3d 759 (9th Cir. 2007) ........................................................................... 19

*Taddeo v. Am. Invsco Corp.*
    2012 WL 1947897 (D. Nev. May 30, 2012) ........................................................ 6

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
    2 Cal. App. 4th 153 (1991) .............................................................................. 19

*Toombs v. Leone*
    777 F.2d 465 (9th Cir. 1985) .............................................................................. 6

*Torion v. JPMorgan Chase Bank., Nat. Assoc.*
    2017 WL 2986250 (N.D. Cal. July 13, 2017) ..................................................... 5

*United Hous. Found., Inc. v. Forman*
    421 U.S. 837 (1975) .......................................................................................... 10

*United States v. Naftalin*
    441 U.S. 768 (1979) .......................................................................................... 10

*Varjabedian v. Emulex Corp.*
    888 F.3d 399 (9th Cir. 2018) ........................................................................... 10

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ............................................................................ 5

*Viterbi v. Wasserman*
    191 Cal. App. 4th 927 (2011) ........................................................................... 15

*Welgus v. TriNet Grp., Inc.*
    2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ................................................... 12

MOTION TO DISMISS CONSOLIDATED COMPLAINT
CASE NO. 18-cv-06753-PJH

*Welgus v. TriNet Grp., Inc.*
  765 F. App'x 239 (9th Cir. 2019) ................................................................... 12

*Wolph v. Acer Am. Corp.*
  2009 WL 2969467 (N.D. Cal. Sept. 14. 2009) ............................................... 24

*XOMA Corp. Sec. Litig.*
  1990 WL 357807 (N.D. Cal. Dec. 27, 1991) .................................................. 14

*Youngers v. Virtus Inv. Partners, Inc.*
  195 F. Supp. 3d 499 (S.D.N.Y. 2016) ............................................................ 14

**Statutes**

Cal. Corp. Code § 25008(a) ............................................................................... 16

Cal. Corp. Code § 25110 .............................................................................. 15, 16

Cal. Corp. Code § 25503 .......................................................................... 15, 16, 17

Cal. Corp. Code § 25504 .......................................................................... 15, 17, 22

False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. ................... passim

Securities Act § 12(a)(1), 15 U.S.C. § 77*l*(a)(1) ........................................ passim

Securities Act § 13, 15 U.S.C. § 77m. ................................................... 6, 7, 9, 14

Securities Act § 2(a)(1), 15 U.S.C. § 77b(a)(1) ............................................... 21

Securities Act § 3(a)(10), 15 U.S.C. § 78c(a)(10) ........................................... 21

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et. seq. ........ 2, 3, 23, 25

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................... passim

Fed. R. Civ. P. 12(b)(6) .............................................................................. 1, 2, 4

Fed. R. Civ. P. 15 .............................................................................................. 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff brings this action alleging securities law violations in connection with his short-term secondary market trades in the digital currency XRP for a two-week period in January 2018.  The crux of these claims is the false assertion that XRP is not a currency, but rather a security.  In fact, as recognized by the U.S. Departments of Justice and Treasury in 2015, XRP is a "convertible virtual currency."[1]  It is correctly characterized as a currency under applicable law and, as such, need not be registered as a security under federal and state securities regulations.[2]  For purposes of resolving this Rule 12(b)(6) motion, however, the Court does not need to confront whether the securities laws apply because, even assuming they do, Plaintiff's claims fail on the independent grounds set forth below.

*First*, Plaintiff's federal securities claims (Counts 1 and 2) are barred by the three-year statute of repose in the Securities Act, which requires that claims for the offer or sale of unregistered securities be brought within three years from when the securities were first *bona fide* offered to the public.  The Complaint contains numerous allegations that Ripple offered or sold XRP to the public more than three years before Plaintiff filed his Complaint.  For example, Plaintiff alleges that "all" XRP was "created" in 2013, that Ripple publicly disclosed the amount of XRP "in circulation" by December 2014, and that Defendants acknowledged having "sold XRP to the general public" before May 2015.  Complaint ¶¶ 2, 25–26.  All of these dates are more than three years prior to Plaintiff's filing of the Complaint in 2019.  The Securities Act's statute of repose was intended precisely to prohibit individuals like Plaintiff—who allegedly bought and sold XRP in January 2018, after over five years of XRP being offered to the public—from pursuing legal action.  Plaintiff's federal securities claims also fail because he failed to plead that the XRP he bought was part of an "initial distribution" or that Defendants were the "sellers" of his XRP.  To the contrary, Plaintiff allegedly bought XRP on the secondary market, from

---

[1] Declaration of Kathleen Hartnett ("Hartnett Decl.") Ex. A (Statement of Facts ¶ 17 from the federal government's May 2015 settlement with Ripple and XRP II) (cited in Complaint ¶ 2 & n.2; *see also id.* ¶¶ 25, 112).

[2] The Complaint repeatedly refers to April 2019 guidance issued by staff of the Securities and Exchange Commission about determining whether digital assets are securities, but fails to acknowledge that the guidance expressly states it is "not a rule, regulation, or statement of the Commission" and "is not binding" on the Commission or otherwise.  https://www.sec.gov/news/public-statement/statement-framework-investment-contract-analysis-digital-assets (cited in Complaint ¶ 10 & n.6).

MOTION TO DISMISS CONSOLIDATED COMPLAINT
CASE NO. 18-cv-06753-PJH

an unidentified seller (of which there are allegedly thousands) on an unidentified exchange.

*Second*, Plaintiff's California Corporations Code claims (Counts 3–5) fail for many similar reasons. Plaintiff failed to plead (and cannot, given his unspecified secondary market transactions) the required elements of an "issuer transaction," privity with Defendants, XRP offers or sales in California, or any statements by Defendants made in connection with Plaintiff's XRP purchases. Plaintiff's misrepresentation claim also fails because he has not sufficiently pled any actionable misrepresentation under Rule 9(b). Notably, Plaintiff often ***adopts*** Defendants' statements as true, and to the extent he disagrees with them, they are demonstrably true based on Plaintiff's own Complaint or pertain to matters of opinion.

*Third*, Plaintiff's California claims under the False Advertising Law ("FAL") and the Unfair Competition Law ("UCL") are barred under the *Bowen* doctrine, which provides that the FAL and UCL do "not apply to securities transactions," as Plaintiff here alleges. *See Bowen v. Ziasun Tech.*, 116 Cal. App. 4th 777, 788 (2004). These claims also fail based on the state law "safe harbor" for claims that would violate a federal statute of repose. Further, because both the FAL and UCL claims are premised on alleged fraud, they must meet the Rule 9(b) standard, which they do not.

Because Plaintiff fails to state a claim on all counts, and because the pleading failures are incurable, the Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6).

## II.   STATEMENT OF ISSUES TO BE DECIDED

**A.**   Whether Plaintiff's federal securities claims (Counts 1 and 2) must be dismissed because (1) the Securities Act's three-year statute of repose period terminated years before Plaintiff filed the Complaint; and/or (2) Plaintiff fails to plausibly allege that he bought XRP as part of an "initial distribution" or that Defendants were the "sellers" of the XRP he bought.

**B.**   Whether Plaintiff's California Corporations Code claims for unqualified securities (Counts 3 and 5) must be dismissed because Plaintiff fails to plausibly allege (1) an "issuer transaction," (2) privity with Defendants, or (3) that Defendants offered or sold XRP to Plaintiff in California.

**C.**   Whether Plaintiff's misrepresentation claim (Count 4) must be dismissed because Plaintiff fails to plausibly allege (1) privity with Defendants, (2) XRP purchases in California, (3) an untrue material statement made in connection with his XRP purchases, or (4) an untrue material

1  statement compliant with Rule 9(b).

2      **D.**      Whether Plaintiff's claims for liability under the FAL and UCL (Counts 6 and 7) must be

3  dismissed because they (1) as alleged, relate to "securities transactions," (2) fall within those statutes'

4  safe harbor due to the federal Securities Act's three-year statute of repose, or (3) are insufficiently pled.

5  **III.     FACTUAL BACKGROUND**

6      **A.     Defendants**

7      Ripple is a company headquartered in San Francisco that provides financial institutions with

8  digital platforms for processing and sending instant, reliable, and cost-effective cross-border payments.

9  Complaint ¶¶ 14, 56, 102.  XRP II is a subsidiary of Ripple, also headquartered in San Francisco.  *Id.*

10 ¶ 15.  Bradley Garlinghouse is Ripple's CEO.  *Id.* ¶ 16.

11     **B.     XRP and the XRP Ledger**

12     Like Bitcoin and Ethereum, XRP is a virtual currency.  *Id.* ¶ 2.  The XRP Ledger is built on

13 open-source blockchain technology, and XRP is the native cryptocurrency to the XRP Ledger.  *Id.*

14 ¶ 108.[3]  Unlike other cryptocurrencies, which use a resource-draining process of "mining," all 100

15 billion XRP were created in 2013 and "fully generated prior to its distribution."  *Id.* ¶ 2.  Financial

16 institutions can use XRP to "source liquidity for payments into and out of emerging markets," *id.* ¶ 45,

17 or for "real-time cross-border payments," *id.* ¶ 102.  As of June 2015, Ripple held about 67 billion XRP,

18 while others owned the remaining 33 billion.  *Id.* ¶ 26.[4]

19     In May 2015, the federal Departments of Treasury and Justice publicly concluded that XRP is a

20 "convertible virtual currency."  Hartnett Decl. Ex. A (cited in Complaint ¶ 2 & n.2; *see also id.* ¶¶ 25,

21 112); *see supra* n.1.  This is consistent with the CFTC's position that virtual currency is a commodity.

22 *See supra* n.3.  Nonetheless, Plaintiff alleges that XRP is a "security" under federal and state law,

23 Complaint ¶¶ 121–159, and that Defendants have offered and sold XRP despite its non-registration with

---

24 [3] As one court explained (in determining that "virtual currency may be regulated by the CFTC
   [Commodity Futures Trading Commission] as a commodity"), virtual currencies are "stored
25 electronically in 'digital wallets,' and exchanged over the internet through a direct peer-to-peer system.
   They are often described as 'cryptocurrencies' because they use 'cryptographic protocols to secure
26 transactions . . . recorded on publicly available decentralized ledgers,' called 'blockchains.'"  *CFTC v.
   McDonnell*, 287 F. Supp. 3d 213, 217, 218 (E.D.N.Y. 2018) (quoting Brief of the CFTC).
27 [4] As of September 1, 2019, others now hold approximately 43 billion XRP, and approximately 50 billion
   XRP are inaccessible to Ripple until released from escrow.  *See* https://www.ripple.com/xrp/market-
28 performance.

---

3

securities authorities, *id.* ¶¶ 1, 7.

### C.    XRP Sales, Including Plaintiff's Alleged Purchases

Plaintiff alleges that "Defendants sell XRP wholesale to larger investors and also sell significant quantities of XRP directly to the general public on cryptocurrency exchanges." *Id.* ¶ 30.   Specifically, he alleges that XRP can be purchased or traded on more than 50 third-party virtual currency exchanges worldwide.   *Id.* ¶ 45.[5]   These exchanges are secondary markets, where XRP can be sold not only by Defendants, but also by other XRP holders who collectively own billions of XRP, *id.* ¶ 26, "thousands" of whom Plaintiff includes as putative class members who have purchased XRP, *id.* ¶¶ 160, 161.   The XRP global market is massive, with over $500 billion in trading over the last two years.[6]

The Complaint asserts that Defendants "sold XRP to the general public" before the May 2015 federal government settlement.   Complaint ¶ 25.   The government's Statement of Facts for that settlement states that XRP was sold to third parties as early as March 2013 by Ripple and as early as August 2013 by XRP II (which "replaced Ripple Labs as a seller of XRP").   Hartnett Decl. Ex. A; *see supra* n.1.   Likewise, Plaintiff's motion to be appointed lead plaintiff in this action asserted a "never-ending initial coin offering (ICO)" since XRP was generated in 2013.   Dkt. 45 at 2.

Plaintiff, "a resident of St. Petersburg, Florida," claims to have bought and sold approximately 130,000 XRP between January 1 and 17, 2018, using other cryptocurrency.   Complaint ¶ 13.[7]   He does not allege which exchanges he used or that he purchased XRP from any particular Defendant.   *Id.*   He alleges, without specificity, that he was "motivated" to purchase XRP due to "the promotional activities of Defendants described herein" and that he "saw and relied on Defendants' repeated representations that adoption of XRP by financial institutions and banks would drive demand for XRP."   *Id.*

### IV.    STANDARD OF REVIEW

"A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal

---

[5] As of the filing of this Motion, XRP "is now listed on over 130 exchanges worldwide."   Q2 2019 XRP Markets Report, https://www.ripple.com/insights/q2-2019-xrp-markets-report/ (cited in Complaint ¶ 31).

[6] *See* "Total XRP volume (dollar in billions)" in the XRP Markets Reports cited in Complaint ¶¶ 31–39.

[7] Plaintiff's Certification in connection with his motion to be appointed lead plaintiff in this action indicates that his short-term buying and selling of XRP in fact began on January 3 and that he continued to buy XRP after he started selling it, suggesting an effort to make a quick profit.   Dkt. 45-1 at 6–8.

---

4

theory." *Torion v. JPMorgan Chase Bank., Nat'l Assoc.*, 2017 WL 2986250, at *3 (N.D. Cal. July 13, 2017).   The court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Muehlenberg v. Experian Info. Solutions, Inc.*, 2017 WL 6622837, at *2 (N.D. Cal. Dec. 28, 2017) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).   Likewise, "[l]egally conclusory statements, not supported by actual factual allegations, need not be accepted by this court." *Torion*, 2017 WL 2986250 at *3 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Under Rule 9(b), allegations of fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (alteration in original) (internal quotation marks omitted).   A party alleging fraud must set forth "the who, what, when, where, and how" of the fraud.  *Id.*

## V.   PLAINTIFF'S FEDERAL SECURITIES CLAIMS ARE BARRED BY THE STATUTE OF REPOSE AND FAIL TO STATE A CLAIM (Counts 1, 2)

Plaintiff's federal Securities Act claims for the unregistered sale of securities (Counts 1 and 2) must be dismissed for three independent reasons. ***First***, these claims are barred by the Act's statute of repose, which requires claims to be brought within three years of the first offering.  Plaintiff's own Complaint alleges that Defendants offered and sold XRP to the public more than three years before he filed the Complaint. ***Second***, Plaintiff has not plausibly alleged that he purchased XRP in an "initial distribution" (as opposed to on the secondary market). ***Third***, Plaintiff has not plausibly alleged that any Defendant was the "seller" of the XRP he purchased.  Dismissal is therefore required.

### A.   Plaintiff's Securities Act Claims Are Barred By The Act's Statute Of Repose

Plaintiff raised his federal securities claims for the first time when he filed the Complaint on August 5, 2019.  Thus, to overcome the Act's three-year statute of repose, Plaintiff must allege that XRP was first offered for sale to the public *after* August 5, 2016—*i.e.*, within three years of his filing. Plaintiff's own allegations repeatedly state that Ripple was selling XRP to the public well before August

2016, requiring dismissal with prejudice of the federal claims on statute of repose grounds.[8]

### 1. Section 13's "First-Offered" Rule Bars Any Action Brought More Than Three Years After A Security's First Public Offering

Section 13 of the Securities Act contains a three-year statute of repose. *See Cal. Pub. Emp. Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017). Specifically, the statute states that "in no event" shall an action under Section 12(a)(1) (the basis for Plaintiff's federal claims) be brought "more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m. Section 13 "admits of no exception and on its face creates a bar against future liability." *ANZ Sec.*, 137 S. Ct. at 2049. "The 3-year time bar in § 13 reflects the legislative objective to give a defendant a complete defense to any suit after a certain period." *Id.* Plaintiffs must allege facts to show compliance with Section 13. *See Toombs v. Leone*, 777 F.2d 465, 469 (9th Cir. 1985).

Under the "first-offered" rule, "the three-year [statute of repose] period begins when the security is *first* bona fide offered." *P. Stolz Fam. P'ship, L.P. v. Daum*, 355 F.3d 92, 100 (2d Cir. 2004) (emphasis in original); *see, e.g.*, *McCormick v. Indep. Life & Annuity Co.*, 794 F.3d 817, 820 (7th Cir. 2015) ("A claim under § 12 arises when the security is first offered to the public, 15 U.S.C. § 77m, and a statute of repose sets three years as the outer limit for suit."); *Mori v. Saito*, 2013 WL 1736527, at *5 (S.D.N.Y. Apr. 19, 2013) ("It is well established that the three-year period of repose begins to run from the first bona fide public offering of a security."); *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.*, 636 F. Supp. 1138, 1167–68 (C.D. Cal. 1986) ("the relevant offering under § 13 is the *first* offering of the security" (emphasis in original)); *Taddeo v. Am. Invsco Corp.,* 2012 WL 1947897 at *2 (D. Nev. May 30, 2012) (statute of repose runs from first offering to the public).[9]

---

[8] Statutes of repose cannot be disturbed by attempts to relate back under Federal Rule of Civil Procedure 15. *See Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002) (holding that the Rules Enabling Act prohibits application of Rule 15(c) to a claim barred by a statute of repose); *In re IndyMac Mortgage-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 642–43 (S.D.N.Y. 2011) (holding Rule 15 "may not be construed to permit relation back" once Section 13's statute of repose has run). However, even if the relevant filing date for purposes of the statute of repose were July 3, 2018 (the filing date of *Greenwald*, the first complaint alleging Securities Act claims in this consolidated action), Plaintiff's claims are still barred, as the Complaint makes clear XRP was "bona fide offered to the public" before July 3, 2015.

[9] The "first-offered" rule not only results from the text and legislative history of Section 13, but also furthers the purpose of the statute of repose: if courts interpreted the repose period to run from the last offer, Section 13 would not provide the "easily ascertainable and certain date for the quieting of litigation" that statutes of repose are intended to provide. *Stolz*, 355 F.3d at 104. This is particularly important where, as here, allowing Plaintiff's Securities Act claims to move forward would unsettle the

*(cont'd)*

### 2. Plaintiff's Allegations Demonstrate That He Brought This Action More Than Three Years After Defendants Allegedly First Offered XRP To The Public

Under the "first-offered" rule, the question is whether Plaintiff filed the Complaint—dated August 5, 2019—within three years of when Defendants first offered XRP to the public. He did not. The Complaint is replete with allegations that Defendants offered XRP to the public years before August 2016. For example:

- "[A]ll 100 billion of the XRP in existence were created out of thin air by Ripple Labs at its inception in 2013 . . . Defendants have since earned massive profits by selling XRP to the general public . . ." Complaint ¶¶ 2, 4.

- "For example, in 2014, Ripple publicly stated on its www.ripplelabs.com/xrp-distribution/ website that 'we will engage in distribution strategies that we expect will result in a stable or strengthening XRP exchange rate against other cryptocurrencies.'" *Id.* ¶ 5.

- The Section of the Complaint titled "XRP's Genesis and Public Offerings" references activities between 2013 and 2015. *Id.* ¶¶ 22–27 (including section heading at page 7, line 12).

- "Ripple's own wiki states that 'Ripple Labs sells XRP to fund operations and promote the network. This allows Ripple Labs to have a spectacularly skilled team to develop and promote the Ripple protocol and network.'" *Id.* ¶ 24. This wiki page, upon which the Complaint repeatedly relies, was last modified on July 12, 2014, well outside the three-year repose period. Hartnett Decl. Ex. B at 3 (cited in Complaint ¶ 24 & n.7, ¶ 130 & n.91, ¶ 145 & n.99).[10]

- "In May 2015, regulatory authorities in the United States fined Ripple and XRP II $700,000 for violating the Bank Secrecy Act by selling XRP without obtaining the required authorization. As part of that settlement, Defendants acknowledged that they had sold XRP to the general public and agreed to a number of remedial measures, including registration with FinCEN." *Id.* ¶ 25.

- "From December 2014 to July 2015, Ripple Labs disclosed on its website the amount of XRP it held and the amount in circulation. The disclosure for June 30, 2015 stated that Ripple Labs held approximately 67.51 billion XRP, more than double the approximately 32.49 billion XRP held by *all others*." *Id.* ¶ 26 (emphasis in original).

- "Ripple's Project Manager for Risk and Compliance, Rebecca Schwartz, conceded this in a May 14, 2015 affidavit, stating: 'The 9 billion XRP initially retained by Mr. McCaleb is included in the roughly 32 billion XRP that is available to the market.'" *Id.* ¶ 27.

- "In May 2015, US regulatory authorities in the United States fined Ripple and XRP II $700,000 for 'willfully' violating the Bank Secrecy Act by selling XRP without obtaining the required authorization." *Id.* ¶ 112.

---

*(cont'd from previous page)*

expectations of thousands of market participants who for years understood Section 13's three-year period to have expired. Moreover, running the repose period from the end of a security's offering would "introduce[] equitable tolling where it has no legitimate place." *Id.* at 104 n.8; *see also ANZ*, 137 S. Ct. at 2052 (explaining that the "text, purpose, structure, and history of [Section 13] all disclose the congressional purpose to offer defendants full and final security after three years").

[10] Plaintiff repeatedly cites to Ripple's wiki in the Complaint. Therefore, the wiki is incorporated by reference and this Court may consider it—including the "last modified" date stamp—in resolving this Motion. *See* Request for Judicial Notice (concurrently filed with this Motion).

The May 2015 federal government settlement with Ripple and XRP II in which "Defendants acknowledged that they had sold XRP to the general public," *id.* ¶ 25, further states:

- "As of 2015, XRP is the second-largest cryptocurrency by market capitalization, after Bitcoin." Hartnett Decl. Ex A ¶ 3.

- "From at least March 6, 2013 through April 29, 2013, Ripple Labs sold convertible virtual currency known as 'XRP.'" *Id.* ¶ 17.

- "Throughout the month of April 2013, Ripple Labs effectuated multiple sales of XRP currency totaling over approximately $1.3 million U.S. dollars." *Id.* ¶ 20.

- "XRP II sold XRP currency in exchange for fiat currency in much the same way that Ripple Labs had previously done from March through April 2013.  In other words, XRP II replaced Ripple Labs as a seller of XRP."  Id. at ¶ 22.

- "By on or about August 4, 2013, XRP II was engaged in the sale of XRP currency to third-party entities."  Id. at ¶ 23.[11]

Thus, under Plaintiff's own allegations, Defendants offered XRP to the public throughout 2013 through 2015.  Accordingly, the three-year statute of repose expired as of 2016 (three years after the sales cited in the May 2015 settlement) and in no case later than May 2018 (three years after the May 2015 settlement agreement in which "Defendants acknowledged that they had sold XRP to the general public," Complaint ¶ 25).  The Securities Act claims in the Complaint, filed August 5, 2019, are therefore untimely and barred by the statute of repose.[12]

### 3. Plaintiff's Effort to Plead Around Section 13 Fails

In an apparent attempt to avoid the statute of repose, Plaintiff now pleads that Defendants made "numerous offerings" of XRP.  Complaint ¶¶ 4, 94.  Notably, his allegation of "numerous offerings" is in direct conflict with prior representations Plaintiff and his counsel have made to this Court.  In his motion to be appointed lead plaintiff in this action, Plaintiff alleged that Defendants sold "XRP tokens to the general public in a never-ending initial coin offering"—*i.e.*, a single "offering" since XRP was created in 2013.  Dkt. 45 at 2.  Plaintiff's current counsel likewise filed a separate action in May 2018 (on behalf of a different plaintiff), alleging that "in 2013, defendants began selling XRP to the general

---

[11] As explained above, *see supra* n.1, and in the accompanying Request for Judicial Notice, the May 2015 settlement documents are properly considered by the Court on this Motion to Dismiss.

[12] Even assuming that the Complaint relates back to the first complaint in this consolidated action raising a federal securities claim, *see supra* n.8, that complaint (*Greenwald*) was filed in *July* 2018—more than three years after the public sales of XRP in 2013–2015 admitted by the Complaint.

public and wholesale to larger investors in a 'never ending ICO'—initial coin offering."[13]

In any event, Plaintiff's "separate offering" theory fails to overcome the statute of repose as a legal matter. First, the statute of repose begins to run "when the *security* [is] bona fide offered to the public." 15 U.S.C. § 77m (emphasis added). It contains no "multiple offerings" exception. *See P. Stolz,* 355 F.3d at 102–03 ("a statute of repose begins to run without interruption once the necessary triggering event has occurred"). As the Second Circuit observed in *P. Stolz,* the statute of repose creates "potential immunity *for later offerings*" of the same security. *Id.* at 106 (emphasis added).

Second, Plaintiff's own allegations belie his conclusory assertion of "separate offerings." Plaintiff does not and cannot allege that the XRP sold in 2013 are any different than the XRP sold today; to the contrary, he alleges that all XRP was created in 2013 and that Defendants' offerings are "indiscriminate." Complaint ¶¶ 2, 157. "Slow offerings"—sales of the same security in one offering over an extended period—are subject to the "first-offered" rule. *Stolz,* 355 F.3d at 101 (explaining the effect of the "first-offered" rule on slow offerings). Nor does Ripple's use of escrow—which limits the amount of XRP available to Ripple each month, including for sale—transform the sale of the same XRP over time into "separate offering[s]." Complaint ¶ 94. Plaintiff's assertion about the effect of escrow is a legal conclusion that need not be accepted as true. *Lewis v. City and Cty. of San Francisco,* 2012 WL 909801, at *1 (N.D. Cal. Mar. 16, 2012) ("the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions" (quoting *Iqbal,* 556 U.S. at 678)).

Notably, there is no inequity in this result (although that is not part of the required analysis). By Plaintiff's own allegations, XRP has been available to the public since 2013. Plaintiff acknowledges that since that time, billions of XRP have changed hands among "thousands" of purchasers on more than fifty virtual currency exchanges worldwide. *See* Complaint ¶¶ 4, 22, 26–27, 30, 45, 84, 94, 128, 161. The purpose of a statute of repose "is to allow more certainty and reliability," which "are a necessity in a marketplace." *ANZ,* 137 S. Ct. at 2055. Here, the statute of repose allows the marketplace and Defendants to rely on the fact that no claim was brought alleging XRP is a security until well over three

---

[13] *Coffey v. Ripple Labs Inc.,* 333 F. Supp. 3d 952, 955 (N.D. Cal. 2018) (citing *Coffee* Complaint ¶¶ 22, 26). The "never-ending ICO" allegations were also included in other complaints underlying this consolidated action. *See* Dkt. 2-1, Ex. B at ECF p. 45 (*Greenwald* Complaint ¶ 38) ("From 2013 to the present, Defendants and their affiliates have been engaged in an ongoing scheme to sell XRP to the general public."); Dkt. 2-1, Ex. C at ECF p. 66 (*Zakinov* Complaint ¶ 23) (alleging "never ending ICO").

MOTION TO DISMISS CONSOLIDATED COMPLAINT
CASE NO. 18-cv-06753-PJH

years after XRP was first publicly offered.   Were Plaintiff allowed to belatedly challenge the classification of XRP, it would not only threaten to eliminate XRP's utility as a currency, but it would upend and threaten to destroy the established XRP market more broadly—a market involving over $500 billion in trading over the last two years, *see supra* Section III.C—potentially wiping out the value held by the alleged thousands of individual XRP holders around the world (many of whom no doubt disagree with Plaintiff's claim that XRP is a security).[14]   By contrast, when Plaintiff bought and sold XRP during a two-week window in January 2018 at the height of the market, Complaint ¶ 13, he had every reason to know that XRP was not registered as a security and had been sold since 2013 without being subject to federal or state securities laws.   *See Meadows v. Pac. Inland Sec. Corp.*, 36 F. Supp. 2d 1240, 1251 (S.D. Cal. 1999) ("a reasonable investor is going to check whether or not the security he has purchased has been registered"); *cf. United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 851 (1975) (purchasers were not misled "into believing that the federal securities laws governed their purchase").

In sum, Plaintiff's federal securities claims are barred by the statute of repose.

### B.  Plaintiff's Securities Act Claims Fail Because He Does Not Plausibly Allege That He Purchased XRP In An "Initial Distribution"

To state a claim under Section 12(a)(1), a plaintiff must allege that he purchased the alleged security as part of an "initial distribution"—not on the secondary open market.  *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 571–72 (1995) (explaining that the Securities Act is addressed to "public offerings," namely "initial distributions of newly issued stock from corporate issuers" (internal quotation marks and citation omitted)); *id.* at 600 n.4 (noting that there is "no dispute" that Section 12(a)(1) is limited to public offerings) (Ginsburg, J., dissenting); *United States v. Naftalin*, 441 U.S. 768, 777–78 (1979) (explaining that the Securities Act is "primarily concerned with the regulation of new offerings"); *Varjabedian v. Emulex Corp.*, 888 F.3d 399, 403–04 (9th Cir. 2018) (explaining that the "general purpose" of the Securities Act "is to regulate the initial distribution of securities by issuers to public investors").

Plaintiff does not allege that he purchased XRP in an "initial distribution," as opposed to on the

---

[14] Entertaining such a challenge after expiration of the statute of repose also would unfairly disrupt the long-settled expectations of other XRP market participants, such as exchanges, market makers, custody providers and others.

secondary market.  He alleges that Defendants sell XRP in two ways: "Defendants sell XRP wholesale to larger investors and also sell significant quantities of XRP directly to the general public on cryptocurrency exchanges."  Complaint ¶ 30; *see id.* ¶ 156.  Plaintiff does not plead that he is a "larger investor" who made a "wholesale" transaction, but instead that he was part of the "general public" who purchased XRP, *id.* ¶ 209, through transactions in a two-week period in January 2018, *id.* ¶ 13.[15]  The necessary inference is that he bought and sold XRP through a secondary trading exchange.  *Id.* ¶ 13.[16]

Countless other XRP holders in addition to Defendants (including Plaintiff, *see id.*) sell XRP on exchanges, making it impossible to plausibly conclude that Plaintiff purchased an initial distribution of XRP from Defendants.  In the quarter of Plaintiff's alleged purchases, Ripple's alleged exchange sales of XRP were only $151.1 million (or 0.095 percent) of the "$160.0 billion traded globally in XRP." Hartnett Decl. Ex. C (full market report cited in Complaint ¶ 36 & n.16).  Plaintiff admits that billions of "fungible" XRP are in active circulation, and "thousands" of persons have purchased and sold XRP through "over 50 exchanges."  *Id.* ¶¶ 4, 22, 26–27, 30, 45, 84, 94, 128, 145, 161.

A complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 566 U.S. at 678.  Plaintiff failed to do so, instead alleging only that in the financial quarter during which Plaintiff purchased his XRP, Ripple's XRP sales accounted for a miniscule portion of daily exchange sales.  This is insufficient to enable the Court to draw a "reasonable inference" that Plaintiff purchased his XRP directly from Defendants in an "initial distribution."  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064–65 (9th Cir. 2008) (refusing to draw inference for plaintiff in the face of a more plausible explanation; the court "is not required to indulge unwarranted inferences in order to save a complaint from dismissal").

### C.  Plaintiff's Securities Act Claims Fail Because He Does Not Plausibly Allege That He Purchased XRP From Any Defendant

Section 12(a)(1) of the Securities Act provides that "[a]ny person who offers or sells a security in violation of" the Act's registration requirements "shall be liable . . . to the person purchasing such

---

[15] Plaintiff, who is an "individual" and not an institutional investor, alleges a purchase of approximately 130,000 XRP, *id.* ¶ 13—by volume, 0.0001 percent of XRP in existence.
[16] This is confirmed by Plaintiff's certification submitted in conjunction with his motion to serve as lead plaintiff, which lists an array of small-volume transactions.  *See* Dkt. 45-1 at 6–8.

security from him." 15 U.S.C. § 77*l*(a)(1).  This provision defines the class of "sellers" who may be liable under Section 12(a)(1).  *See Pinter v. Dahl*, 486 U.S. 622, 641–42 (1988).  The Supreme Court interprets Section 12(a)(1) narrowly.  *See id.* at 644 n.21.  A "seller" is a person who either (1) **passes title** of the security to the buyer, or (2) **solicits** the purchase with a self-interested financial motive.  *Id.* at 647.  The Complaint fails to allege either with respect to any Defendant, requiring dismissal of Plaintiff's Securities Act claims.

### 1. Plaintiff Does Not Allege That Any Defendants Passed Title To Him

The Complaint does not allege that any specific Defendant passed title of XRP to Plaintiff.  Instead, Plaintiff alleges in conclusory fashion that he "purchased XRP securities from Defendants."  Complaint ¶¶ 172, 187.  As this Court has noted, "a mere assertion that defendants are . . . sellers is a legal conclusion and therefore insufficient to withstand a motion to dismiss."  *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1073 (N.D. Cal. 2010) (Hamilton, J.) (internal quotation marks omitted).  Plaintiff's approach is nearly identical to that rejected by *In re Violin Memory Securities Litigation*, in which plaintiffs alleged that they "bought common stock . . . directly from [defendant] J.P. Morgan."  2014 WL 5525946, at *18 (N.D. Cal. Oct. 31, 2014).  The court rejected that allegation as insufficient, *id.*, as it should here.

Nor has Plaintiff made factual allegations permitting an inference that Defendants passed him title.  The necessary inference from the Complaint is that Plaintiff purchased his XRP on an exchange, *see supra* Section V.B, with title passing to Plaintiff from an unidentified exchange counterparty.  Plaintiff alleges no facts allowing the plausible inference that his counterparty was a Defendant (let alone any specific one), rather than the exchange or another user.  *See In re Longfin Corp. Sec. Class Action Litig.*, 2019 WL 1569792, at *7 (S.D.N.Y. Apr. 11, 2019) (concluding defendant was not a "seller" to those purchasing securities from NASDAQ).  As noted above, it is implausible at best that Ripple was Plaintiff's counterparty, as Ripple sold *less than one tenth of one percent* of XRP traded in the relevant quarter.  *See supra* Section V.B.  In this respect, the instant case presents an even stronger case for dismissal than *Welgus v. TriNet Group, Inc.*, 2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019), in which the court rejected Plaintiff's argument that it was "undeniable" that the Defendant was the "seller" based on the sale of "2,250,000 shares in the IPO" (out

of 15 million) and "all 13,800,000 shares in the Secondary Offering," because such allegations "do not constitute facts that Plaintiff purchased his shares directly from [Defendant] as opposed to another seller or intermediary." *Id.* at *28.

Moreover, it is "implausible if not impossible" that all three Defendants sold Plaintiff XRP in a single transaction. *Garcia v. M-F Athletic Co., Inc.*, 2012 WL 531008, at *2 (E.D. Cal. Feb. 17, 2012) (dismissing claim where plaintiff alleged that three defendants sold him defective product). The Complaint is notably vague and contradictory as to the alleged role of each Defendant, in some places alleging that "Defendants" collectively sold the XRP, *id.* ¶¶ 1, 4, 10, 25, 30, 53, 75, 127, and in others that both Ripple and XRP II made "programmatic" XRP sales. *See id.* ¶ 31–39. Plaintiff's allegation that Mr. Garlinghouse allegedly "directed and/or authorized, directly or indirectly, the sale and solicitation of XRP," *id.* ¶ 16, provides no reason to believe that Plaintiff bought from Mr. Garlinghouse.

In short, the Complaint does not permit a "reasonable inference," *Iqbal*, 566 U.S. at 678, that any Defendant passed XRP title to Plaintiff. *See, e.g., In re Harmonic, Inc., Sec. Litig.*, 2006 WL 3591148, at *14 (N.D. Cal. Dec. 11, 2006) (Hamilton, J.) (holding defendants were not "sellers" where "Plaintiffs do not allege that the individual defendants passed title to any securities").

### 2.     Plaintiff Does Not Allege That Any Defendant Solicited His Purchases

Plaintiff also fails to allege that Defendants solicited any purchase from him. To allege that a defendant is a "seller by solicitation," a plaintiff must "plead active participation in the solicitation of the immediate sale, a direct relationship between the purchaser and the defendant." *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *9 (C.D. Cal. May 5, 2011). "Being merely a 'substantial factor' in causing the sale of unregistered securities is not sufficient in itself to render a defendant liable under §12(1)." *Pinter*, 486 U.S. at 654. "Plaintiffs must include very specific allegations of solicitation, including direct communication with Plaintiffs." *Maine State*, 2011 WL 4389689, at *10; *see also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003) ("To count as 'solicitation,' the seller must, at a minimum, directly communicate with the buyer."); *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 2012 WL 1322884, at *5 (C.D. Cal. Apr. 16, 2012) (dismissing Section 12 claim alleging defendants "were involved in the process," but not that "they had any direct contact with [plaintiff]"). "Generally, issuers . . . are not sellers within the meaning of Section 12 unless

they actively participate in the negotiations with the plaintiff/purchaser." *Violin*, 2014 WL 5525946, at *18.

Plaintiff does not allege any direct relationship or direct communication with any Defendant, a deficiency fatal to his claim that he purchased XRP from Defendants based on a solicitation theory. Instead, Plaintiff alleges that Ripple "aggressively markets" XRP, Complaint ¶ 42, and that Ripple sells XRP "indiscriminate[ly] . . . to the public at large where the persons or investors being solicited are selected at random, rather than specifically or individually targeted," *id.* ¶ 157.  Plaintiff also alleges that (i) Ripple's website refers to virtual currency exchanges where XRP can be purchased; (ii) various Ripple employees have tweeted about XRP; (iii) Ripple hosted a conference "to generate interest in XRP"; (iv) Mr. Garlinghouse gave an interview describing his ownership of XRP; (v) Ripple attempted to pay two cryptocurrency exchanges to list XRP; and (vi) articles have been written about Ripple and/or XRP.  *Id.* ¶¶ 42–83.  However, Plaintiff does not allege that any Defendant ***directly*** communicated with him to solicit his purchase of XRP, as Section 12(a)(1) requires.  Merely alleging that certain Ripple employees made positive public statements about XRP is not sufficient.  *See, e.g., PPM Am., Inc. v. Marriott Corp.*, 853 F. Supp. 860, 874 (D. Md. 1994) (making public, non-targeted statements on which plaintiff relied does not amount to solicitation under *Pinter*); *Youngers v. Virtus Inv. Partners, Inc.*, 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016) (posting marketing materials on website did not constitute solicitation); *Maine State*, 2011 WL 4389689, at *10 (allegation that defendant "'promoted' the sale of securities is not sufficient"); *XOMA Corp. Sec. Litig.*, 1990 WL 357807, at *8 (N.D. Cal. Dec. 27, 1991) (allegations that defendants provided information to securities analysts, employed underwriters, distributed prospectuses, and made contact with the investment community insufficient because "they do not allege that any particular defendants solicited *any particular plaintiff*" (emphasis in original)).

### D.    Plaintiff Fails To State A Claim Under Section 15

Plaintiff's claim for "control person" liability under Section 15 of the Securities Act also fails.  First, it is barred by Section 13's statute of repose.  *See In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 860 F. Supp. 2d 1062, 1072 (C.D. Cal. 2012) (dismissing Section 15 claim because Section 12 claim was time-barred under the statute of repose).  Second, it fails because it is derivative of and dependent on Plaintiff's unsuccessful Section 12(a)(1) claim.  To state a claim under Section 15, a

14

"plaintiff must establish (1) a **_primary violation_** of the pertinent federal securities laws, and (2) that defendants exercised actual power or control over the primary violator." *Violin*, 2014 WL 5525946, at *19 (emphasis added). Where the plaintiff's underlying Section 12 claim fails, as it does here, then the control person claim based on "these same theories fails and must be dismissed." *Id.*

## VI.   PLAINTIFF FAILS TO STATE ANY CLAIMS UNDER THE CALIFORNIA CORPORATIONS CODE (Counts 3, 4, and 5)

### A.   Plaintiff's "Unqualified" Securities Claims Fail (Counts 3 And 5, Cal. Corp. Code §§ 25110, 25503, and 25504)

Section 25110 of the California Corporations Code makes it "unlawful for any person to offer or sell in this state any security in an issuer transaction . . . unless such sale has been qualified" with the state or is exempt from qualification. Section 25503 provides a civil cause of action to any person who acquired an unqualified security directly from a seller. Section 25504 provides for "control person" liability. Plaintiff's state law securities claims should be dismissed for many similar reasons as his federal securities claims: Plaintiff does not sufficiently allege that he purchased XRP (a) in an "issuer transaction," (b) directly from Defendants, or (c) "in this state."

### 1.   Plaintiff Fails To Allege An "Issuer Transaction"

Section 25110 is limited to "issuer transaction[s]," which are sales of securities "purchased from the issuing corporation in a public offering." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1104 (1993). These are distinct from "aftermarket transactions, i.e., resales of securities after they have been purchased from the issuing corporation in a public offering." *Id.* A transaction qualifies as an "issuer transaction" only if the issuer receives at least a "portion of the purchase price." Cal. Corp. Code § 25011. Securities "purchased . . . on the open market" do not involve "issuer transactions" because they do not require the purchaser to "deal face to face with the defendants, the price the purchasers [pay does] not accrue directly to the defendants" and such transactions do not meet the definition of issuer transactions. *Viterbi v. Wasserman*, 191 Cal. App. 4th 927, 938 (2011). As explained above with regard to Plaintiff's federal securities claims, Plaintiff fails to allege that he purchased XRP as part of an "issuer transaction" as opposed to on the secondary market, requiring dismissal. *See supra* Section V.B.

### 2.   Plaintiff Fails To Allege Privity With Defendants

Plaintiff's unqualified securities claim also fails because strict privity between the plaintiff and

15

defendant is required, which Plaintiff has not pled.  *Bowden v. Robinson*, 67 Cal. App. 3d 705, 712 (Ct. App. 1977) ("Sections 25110 . . . and 25503 create liability affording the ***immediate purchaser*** several specific remedies." (emphasis added)); *In re Am. Principals Holdings, Inc. Sec. Litig.*, 1987 WL 39746, at *10 (S.D. Cal. July 9, 1987) ("Strict privity is required.").   Plaintiff fails to plausibly allege he purchased XRP directly from any Defendant; his conclusory allegation that he "purchased XRP securities from Defendants" is devoid of underlying facts and cannot support his claim.  *See supra* Section V.C.  Plaintiff thus has no viable claim under Sections 25110 and 25503.  *Cf. Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1063 (N.D. Cal. 2013) (Hamilton, J.) (dismissing claim when plaintiff "fail[ed] to allege facts showing that she was in privity with" defendants).

### 3.   Plaintiff Fails To Allege His XRP Transaction Occurred "In This State"

Plaintiff's unqualified securities claim also fails because Section 25110 is limited to securities offered or sold ***in California***.  *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1053 (1999).  An offer or sale is made in California when (a) "an offer to sell is made in this state"; (b) "an offer to buy is accepted in this state"; or (c) *both* the "security is delivered to the purchaser in this state" *and* "both the seller and the purchaser are domiciled in this state."  Cal. Corp. Code § 25008(a).  "That a person is a citizen of a state is insufficient to leap to the conclusion that the sale of a security took place in that state."  *Siegal v. Gamble*, 2016 WL 1085787, at *7 (N.D. Cal. Mar. 21, 2016).

Plaintiff failed to plausibly allege an offer or sale in California.  Rather, Plaintiff makes the highly generalized allegations that Defendants "engag[ed] in the conduct described above within California," Complaint ¶ 186, and "sold and offered to sell XRP, a security, in the State of California," *id.* ¶ 197.  These conclusory allegations are insufficient to show an offer or sale to Plaintiff in California. *Siegal*, 2016 WL 1085787, at *7 ("details" to show that the sale or offer took place in California are "essential to state a claim for relief").  Plaintiff is a Florida resident who does not allege he was in California when he purchased XRP.  *Id.* ¶ 13.  Plaintiff apparently purchased his XRP on an exchange, *see supra* Section V.B, but he pleads no information about those transactions to connect them to California.  Nor does he plausibly allege that any Defendant made any offer to him in California. Instead, Plaintiff attempts to rely on "marketing" allegations pertaining primarily to tweets, media interviews, and content from Ripple's website.  *Id.* ¶¶ 42–97.  None of the alleged "marketing"

constitutes an offer to sell XRP to Plaintiff.  *See Konik v. Cable*, 2009 WL 10681970, at *4 (C.D. Cal. Dec. 2, 2009) ("[A]n advertisement . . . is not an offer" unless it "invite[s] performance of a specific act without further communication and *leave*[*s*] *nothing for negotiation*." (emphasis in original)).

### 4.    Control Person Liability Is Unavailable Absent A Primary Violation

Because Plaintiff's unqualified securities claim fails, his control person liability claim also fails and must be dismissed.  Section 25504 extends liability only to persons who "directly or indirectly control[] a person liable under Section . . . 25503."  Absent a viable claim of primary liability, the related control person claim fails.  *See Jackson*, 931 F. Supp. 2d at 1064 (Hamilton, J.).

### B.    Plaintiff's Misrepresentation Claim Fails (Count 4)

Section 25401 of the California Corporations Code makes it "unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading."  Section 25501 provides a claim "to the person who purchases a security from . . . or sells a security to" a Section 25401 violator.  Section 25504.1 extends liability to "person[s] who materially assist[] in a violation of Section 25401 . . . with intent to deceive or defraud."

Plaintiff's misrepresentation claim fails for several reasons.  As with the unqualified securities claim, Plaintiff does not plausibly allege privity or that he purchased XRP "in this state."  In addition, none of the alleged statements by Defendants was made in connection with ***Plaintiff's*** purchase of XRP, and none qualifies as an actionable misstatement under the heightened pleading standard of Rule 9(b).  Finally, because Plaintiff fails to allege a primary violation, his material assistance claim fails.

### 1.    Plaintiff Fails To Allege Privity Or An In-State Transaction

To bring a viable misrepresentation claim under Sections 25401 and 25501, Plaintiff must plausibly allege both privity with Defendants and that he purchased a security in California.  *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 252–54 (2007) ("Section 25501 on its face requires privity between the plaintiff and the defendant."); *Diamond*, 19 Cal. 4th at 1053.  As discussed above, *see supra* Sections VII.A.2–3, the Complaint plausibly alleges neither.

### 2. Plaintiff Fails To Identify Any Statements Made By Defendants "In Connection With" Plaintiff's XRP Purchases

Plaintiff fails to allege, as he must, that any of the statements attributed to Defendants were in any way related to his purchase of XRP. Section 25401 requires a sale "by means of" a "written or oral communication" containing a misrepresentation and extends liability only to misrepresentations made "*in connection with* the purchase or sale of securities." *Apollo*, 158 Cal. App. 4th at 249 (emphasis added). In other words, Plaintiff must plead that Defendants "made a false or misleading statement to Plaintiff[] ***when negotiating***" the sale of the alleged security. *SIC Metals, Inc. v. Hyundai Steel Co.*, 2018 WL 6842958, at *5 (C.D. Cal. Nov. 14, 2018) (emphasis added).

The Complaint is devoid of allegations that Defendants made ***any*** statements "in connection with" Plaintiff's XRP purchases. As explained above, *see* Section V.C.2, Defendants' alleged statements consist of tweets, Ripple's website content, and media interviews excerpts. Complaint ¶¶ 42–120. ***None*** of these alleged statements were directed at Plaintiff or made in the course of "negotiating" with him; to the contrary, Plaintiff alleges that Defendants' offerings "are indiscriminate offerings to the public at large where the persons or investors being solicited are selected at random, rather than specifically or individually targeted." *Id.* ¶ 157. Moreover, most of the alleged statements occurred either after or months before Plaintiff's alleged purchase of XRP in January 2018, making it impossible and/or implausible that the statements were made "in connection with" Plaintiff's purchases. *See* Complaint ¶¶ 44, 52, 54, 60–67, 69, 81, 85–88, 93, 96–97, 99–102, 117–18, 120; *cf. Mauser v. Marketbyte LLC*, 2013 WL 12073832, at *12 (S.D. Cal. Jan. 4, 2013) (finding California securities claims insufficiently pled where "[the alleged] communications were sent after his purchase of those securities or months before his purchase date. Plaintiff's purchases of these stocks therefore could not have been made in connection with those communications.").

### 3. Plaintiff Fails To Allege An Actionable Misstatement Under Rule 9(b)

Although the failings identified above are dispositive of the Section 25401 claim, Plaintiff also fails to allege any actionable misrepresentation or omission under Rule 9(b), which requires a party who alleges fraud to "state with particularity the circumstances constituting fraud." *See supra* Section IV.

To begin with, the Complaint does not identify the specific statements on which Plaintiff bases

his Section 25401 claim.  *See* Complaint ¶¶ 191–200.  In fact, Plaintiff appears to adopt many of the cited statements as true.  *E.g.*, *id.* ¶¶ 31–39 (describing Ripple's quarterly sales of XRP).  This alone justifies dismissal.  *See Doan v. Singh*, 2013 WL 3166338, at *10 (E.D. Cal. June 20, 2013) (dismissing Section 25401 claim where plaintiff did not identify alleged misrepresentations).  Plaintiff is also required to "to inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 759, 765 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together, but requires plaintiffs to differentiate their allegations when suing more than one defendant." (internal quotation marks omitted)).  But the Complaint improperly lumps all Defendants together.  *See, e.g.*, Complaint ¶ 198.  And Plaintiff improperly relies on statements by Ripple employees, *id.* ¶¶ 48, 74, 99, 113–118, 120, without alleging that they were authorized to speak on behalf of the company.  *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991) ("The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.").

Further, none of the statements apparently targeted by Plaintiff is false, as can be determined from the face of the Complaint.  ***First***, Plaintiff alleges that on June 30, 2015, Ripple disclosed on its website that Ripple held approximately 67.5 billion XRP, while the remaining 32.5 billion was held by "Others."  Complaint ¶ 26.  He asserts that this statement "significantly overstates independent holdings of XRP" because "Others" included the 20 billion XRP held by Ripple's founders and an amount used in "business development agreements that are still pending."  *Id.*  Plaintiff has not identified, and cannot identify, any "material fact" that Ripple misstated or omitted as relates to this representation.  *Greenberg v. Sunrun, Inc.*, 233 F. Supp. 3d 764, 771–72 (N.D. Cal. 2017) (dismissing Section 12(a)(2) claim because actionable omissions must "create an impression of a state of affairs that differs in a material way from the one that actually exists").  To begin with, the XRP held individually by Ripple's founders were, by definition, not held by Ripple.  Moreover, the statement at issue cited in the Complaint itself *discloses* that the "Others" figure includes XRP tied up in "business development agreements that are still pending."  Complaint ¶ 26.  Finally, the very next paragraph concedes that Ripple also already had

publicly disclosed, prior to the challenged representation, that the "Others" figure includes XRP held by founders. *Id.* at ¶ 27. Defendants had no obligation to repeatedly disclose publicly available information. *Rubke v. Capital Bancorp Ltd.*, 551 F.3d 115, 1162–63 (9th Cir. 2009) (holding it "pointless and costly" to compel reprinting of public information).

*Second*, Plaintiff challenges a January 17, 2018 tweet from Mr. Garlinghouse,[17] which linked to a CNBC article entitled "Ripple is sitting on close to $80 billion and could cash out hundreds of millions per month—but it isn't." Complaint ¶ 52. Plaintiff alleges that this headline was false because Ripple allegedly sold $167.7 million during the same quarter. *Id.* ¶ 53. But Plaintiff's own allegations, which incorporate the sales figure, demonstrate the statement's truth: if Ripple sold $167.7 million over a three-month quarter, its average monthly sales were $55.9 million—not "hundreds of millions per month." Thus, the statement "Ripple . . . could cash out hundreds of millions per month—but it isn't" is true and non-actionable. Moreover, while Plaintiff seeks to isolate the headline, the body of the article describes how much XRP Ripple was selling each month. Hartnett Decl. Ex. D. No reasonable investor would have been misled. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1330 (2015) ("an investor reads each statement . . . in light of all its surrounding text").

*Third*, Plaintiff challenges several tweets that allegedly "conflate" XRP with "Ripple Enterprise Solutions" by failing to always specifically distinguish between the two. Complaint ¶¶ 55, 59, 62, 68. But Plaintiff does not plausibly allege that failing to detail the distinction between XRP and Ripple's enterprise software creates the impression that they are the same. *See Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) (a "statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists"). This is particularly true because the distinction between Ripple's enterprise software and XRP was already publicly disclosed. *See* Complaint ¶¶ 56–58. Again, Defendants had no obligation to repeatedly disclose publicly available information. *Rubke*, 551 F.3d at 1162–63 (holding it "pointless and costly" to compel reprinting of public information).

---

[17] Plaintiff included this allegation under the heading "Defendants Market XRP to Drive Demand and Increase Price." Yet, notably, this tweet was made the day *after* Plaintiff's last XRP purchase and on a day when he sold his remaining XRP, *see* Complaint ¶ 19, indicating that Plaintiff's own conduct is at odds with the claimed effect of the cited statements.

***Fourth***, Plaintiff challenges statements "claiming that use of XRP by banks and financial institutions will drive demand for XRP." Complaint ¶ 75; *see id.* ¶¶ 61, 65–67, 70, 73. To be misleading, however, an alleged statement must be "capable of objective verification"; "vague statement[s] of optimism" not capable of objective verification are not actionable. *Retail Wholesale*, 845 F.3d at 1275. Here, the alleged misstatements were at most non-verifiable, vague statements of optimism. *See Mosco v. Motricity, Inc.*, 649 F. App'x 526, 529 (9th Cir. 2016) (describing positive statements about a technology product as "forward-looking, too vague to be actionable, or constitute puffery or fraud by hindsight"). Plaintiff does not identify any claim capable of being verifiably untrue.

***Fifth***, Plaintiff claims that Defendants were "the source" of rumors about a virtual currency exchange, Coinbase, potentially listing XRP. Complaint ¶ 83. This allegation is entirely unsubstantiated: Plaintiff does not identify a single statement by any Defendant that caused these alleged rumors, let alone allege a material misstatement or omission. *See Doan*, 2013 WL 3166338, at *10.

***Sixth***, Plaintiff challenges statements "falsely claiming that XRP is not a security."[18] Complaint ¶¶ 95–97. Such statements (including in this brief) are non-actionable statements of Ripple's long-held legal position. *See Irving Fireman's Relief & Ret. Fund v. Uber Techs., Inc.*, 2018 WL 4181954, at *6–7 (N.D. Cal. Aug. 31, 2018) (dismissing claims based on statements such as "We are legal . . . According to the law" where no governmental official had found defendant's programs unlawful).[19] Plaintiff cannot plausibly allege that Ripple does not believe that XRP is not a security—particularly in light of the federal government's May 2015 characterization of XRP as a ***currency***. Plaintiff also does not plead the sources, dates, and content of alleged statements by Mr. Garlinghouse. Complaint ¶ 97.

***Finally***, Plaintiff alleges that Ripple "now claims that it 'didn't create XRP; 100 billion XRP was

---

[18] These statements were made months after Plaintiff's last purchase and sale of XRP, Complaint ¶ 9, 95–97, and thus could not have been made "in connection with" his XRP transactions. *Mauser*, 2013 WL 12073832, at *12.

[19] Specifically, XRP is not a "security" under Section 2(a)(1) of the Securities Act because it is not an "investment contract." *See* 15 U.S.C. § 77b(a)(1); *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946). Purchasing XRP is not an "investment" in Ripple; there is no common enterprise between Ripple and XRP purchasers; there was no promise that Ripple would help generate profits for XRP holders; and the XRP Ledger is decentralized. *See Howey*, 328 U.S. at 298–99. Moreover, because XRP is a currency, it cannot, as a matter of law, also be a security. See 15 U.S.C. § 78c(a)(10). As stated above, *see supra* Section I, because of the multiple, independent grounds for dismissing this action, the Court need not resolve whether XRP is a security or currency for purposes of this Motion, which assumes Plaintiff's allegation that XRP is a security.

created before the company was formed,'" while it "previously admitted that it 'is the creator of Ripple.'"  Complaint ¶ 146.  To support this allegation, Plaintiff cites to third-party blog post, dated November 25, 2018—nearly a year after Plaintiff bought and sold his XRP *and* more than six months after the first complaint alleging Ripple sold an unregistered security was first filed.  *See id.* ¶ 146 n.101. These alleged statements are immaterial, and Plaintiff's pleadings contain no details about who, when, or where they were made, thus failing to satisfy Rule 9(b).

### 4. Plaintiff Cannot Sustain A Material Assistance Claim Under Section 25504.1 Because He Failed To Allege A Primary Violation Or Plead With Particularity

The deficiencies with Plaintiff's misrepresentation claim also require dismissal of his material assistance claim against Ripple and Mr. Garlinghouse under Section 25504.1.  Complaint ¶ 193.  To bring a viable Section 25504.1 claim, Plaintiff must "state an underlying violation of section 25401." *SIC Metals*, 2018 WL 6842958, at *5.  As just explained, Plaintiff failed to do so.

Additionally, Plaintiff must plead material assistance with specificity under Rule 9(b). *Calderon v. Total Wealth Mgmt., Inc.*, 2018 WL 1621397, at *4 (S.D. Cal. Apr. 4, 2018).  "[T]he complaint must include allegations demonstrating ***how*** the defendant assisted in the act of selling or offering to sell securities by means of false or misleading statements."  *Siegal*, 2016 WL 1085787, at *6 (emphasis added). Courts dismiss Section 25504.1 claims when the plaintiff fails to allege direct communications with the defendant.  *See AREI II Cases*, 2016 Cal. App. 4th, 1004, 1018–19 (2013) (sustaining demurrer because plaintiff had not alleged that defendant "had any communications whatsoever with plaintiffs"); *Calderon v. Total Wealth Mgmt., Inc.*, 2017 WL 6272096, at *7 (S.D. Cal. Jan. 19, 2017) (dismissing claim where "[t]he only specific allegations . . . that [defendant] promoted sales are his appearance on a radio show to provide tax advice").  Plaintiff quotes tweets and interview excerpts by Ripple and Mr. Garlinghouse, *see* Complaint ¶¶ 52–53, 55, 59–68, 70, 75, 83, 95–97, 146, but fails to allege that these statements were directed or sent to Plaintiff.  Thus, Plaintiff fails to identify how Ripple or Mr. Garlinghouse "assisted in the act of selling" XRP to him "by means of false or misleading statements." *Siegal*, 2016 WL 1085787, at *6.

Plaintiff also fails to plead sufficient facts to support a plausible inference that Defendants intended to deceive or defraud.  *SIC Metals, Inc.*, 2018 WL 6842958, at *5.  At minimum, this required

identifying which statements Ripple and Mr. Garlinghouse "knew to be false," *Siegal*, 2016 WL 1085787, at *6, and alleging how they "intended to induce Plaintiff to rely on the representations known to be misleading," *Kelter v. Forrest*, 2008 WL 11342628, at *3 (C.D. Cal. July 2, 2008).  While Plaintiff conclusorily claims that Ripple and Mr. Garlinghouse acted with "intent to deceive or defraud," Complaint ¶ 193, Plaintiff alleges no facts to support this claim.

## VII.   PLAINTIFF'S CALIFORNIA CONSUMER PROTECTION CLAIMS MUST BE DISMISSED (Counts 6, 7)

Plaintiff's claims under California's FAL and UCL fail and should be dismissed with prejudice. ***First***, the FAL and UCL "do[] not apply to securities transactions"—the transactions Plaintiff alleges. *See Bowen v. Ziasun Tech.*, 116 Cal. App. 4th 777, 788 (2004).  ***Second***, Section 13's statute of repose, *see supra* Section V.A, triggers the FAL and UCL's safe harbor, which precludes liability where, as here, Congress has "considered a situation and concluded no action should lie."  *See Cel-Tech Commc'ns, Inc. v. L.A. Cell. Tel. Co.*, 20 Cal. 4th 163, 182 (1999).  ***Third***, both claims are insufficiently plead under Rule 9(b)'s heightened pleading standard.

### A.     Plaintiff's Consumer Claims Fail Because They Relate To "Securities Transactions"

Plaintiff's FAL and UCL claims relate to and depend on the alleged offer, purchase, and sale of securities.  Complaint ¶ 212 (FAL); *id.* ¶¶ 170, 178, 190, 196, 217, 219 (UCL).  But California's consumer protection statutes "do[] not apply to securities transactions."  *Bowen*, 116 Cal. App. 4th at 788 (affirming summary judgment in favor of defendant on UCL claim relating to the sale of securities); *Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016 2016634, at *17 (N.D. Cal. Sept. 14, 1998) (dismissing FAL and UCL claims premised on "securities transactions").  Courts in the Northern District of California regularly apply *Bowen* to dismiss similar claims with prejudice.  *See Betz v. Trainer Wortham & Co.*, 829 F. Supp. 2d 860, 866–67 (N.D. Cal. 2011) ("No court . . . has allowed Section 17200 claims to proceed where, as here, the predicate acts are securities transactions."); *S.F. Residence Club, Inc. v. Amado*, 773 F. Supp. 2d 822, 833–34 (N.D. Cal. 2011) (dismissing UCL claim because "plaintiffs' theory unavoidably focuses on the purchase of securities, and *Bowen* is determinative"); *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1259 (N.D. Cal. 2014) (dismissing UCL claim predicated on state securities laws because "section 17200 does not permit claims based on

securities transactions").  Because Plaintiff clearly alleges XRP is a security, these claims cannot be cured and must be dismissed with prejudice.

### B.  Plaintiff's Consumer Claims Are Barred By The FAL And UCL's Safe Harbor

Both the FAL and UCL contain a safe harbor that ensures that these consumer protection statutes are not used to "override" legislative judgments.  *See Cel-Tech*, 20 Cal. 4th at 182 (describing UCL's safe harbor); *Pom Wonderful LLC v. Coca Cola Co.*, 2013 WL 543361, at *5 (C.D. Cal. Feb. 13, 2013) (relying on safe harbor to grant summary judgment on FAL claim).  The safe harbor applies whenever a legislature has "considered a situation and concluded no action should lie." *Id.*  That is, where a statute considers certain conduct and "actually 'bar[s]' the action," *Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1125 (2014), the safe harbor operates to preclude FAL and UCL claims predicated on the same conduct. A plaintiff may not "plead around" an "absolute bar to relief simply by recasting the cause of action" as one under California's consumer protection statutes.  *See Cel-Tech.*, 20 Cal. 4th at 182.

Here, the federal Securities Act's statute of repose categorically bars any action brought, as here, more than three years after a security's first offering.  *See supra* Section V.A.  It also triggers the FAL and UCL safe harbor insofar as Plaintiff's consumer causes of action depend upon his Securities Act claims, because in this situation Congress "considered" and "concluded no action should lie." *Cel-Tech.*, 20 Cal. 4th at 182.  *See, e.g.*, Complaint ¶¶ 212, 215, 218.

### C.  Plaintiff's Consumer Protection Claims Are Insufficiently Pled Under Rule 9(b)

To the extent Plaintiff's FAL and UCL claims are not barred by the foregoing limitations on consumer protection actions, the claims allege false or misleading statements or other fraudulent conduct, *see, e.g.*, Complaint ¶¶ 210–211, 214, 217, 219–220, and are insufficiently pled under Rule 9(b).  *See supra* Section IV.  Rule 9(b)'s particularity requirement applies to each of the UCL's three prongs.  *See Hadley v. Kellogg Sales Company*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017).

The FAL and UCL claims are insufficiently pled in at least two ways.  First, Plaintiff fails to allege that any Defendant made a false or misleading statement.  *See Wolph v. Acer Am. Corp.*, 2009 WL 2969467, at *5 (N.D. Cal. Sept. 14. 2009) (dismissing UCL and FAL claims where plaintiffs failed to allege misrepresentations with sufficient particularity under Rule 9(b)).  Plaintiff alleges four categories of purportedly "false" statements concerning "the genesis of XRP," "the circulating supply of

1  XRP," "the adoption of XRP," and the "assertion that XRP is not a security."  Complaint ¶¶ 211, 217.

2  But none of these statements is alleged with particularity.  *See supra* Section VI.B.3.

3       Second, plaintiffs "alleging claims under the FAL and UCL are required to plead and prove

4  actual reliance on the misrepresentations or omissions at issue."  *Great Pac. Sec. v. Barclays Capital,*

5  *Inc.*, 743 Fed. App'x 780, 783 (9th Cir. 2018).  Plaintiff alleges in conclusory terms that he "saw and

6  relied on Defendants' repeated representations that the adoption of XRP by financial institutions and

7  banks would drive demand for XRP."  Complaint ¶¶ 13, 219.  However, Plaintiff fails to allege *when* he

8  saw any alleged representations, such as whether he saw them *before* his purchase of XRP and relied on

9  those representations in making the purchase.  *See Hall v. Sea World Entm't, Inc.*, 2015 WL 9659911, at

10  *4–5 (S.D. Cal. Dec. 23, 2015) (dismissing UCL and FAL claims where plaintiffs alleged misleading

11  statements were made in public, general sources, but failed to allege that they "actually saw or

12  read *any* advertising or statements made . . . prior to purchasing their tickets").  Finally, to the extent

13  Plaintiff claims reliance on non-actionable statements, his claim fails.  *See In re Sony Grand Wega*

14  *KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal.

15  2010) (dismissing UCL and FAL claims because reasonable consumers cannot rely on "[g]eneralized,

16  vague, and unspecified assertions").[20]

17  **VIII.   CONCLUSION**

18       The Motion to Dismiss should be granted and the Complaint dismissed with prejudice.  Leave to

19  amend should be denied because amendment would be futile.  *Lockheed Martin Corp. v. Network*

20  *Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).  As to the Securities Act claims, among other things,

21  repleading cannot change the date on which the instant action was filed, which is dispositive under the

22  statute of repose.  As to the federal and state securities claims, among other things, Plaintiff's secondary

23  market purchases cannot be part of an "initial distribution" or an "issuer transaction" nor can Plaintiff

24  plead facts to demonstrate that he purchased his XRP from Defendants.  Similarly, Plaintiff cannot

25  disavow his allegations of a "securities" transaction, barring his consumer protection claims.

26

27  [20] With respect to the UCL, Plaintiff also fails under the unlawful prong because there is no underlying securities violation; under the fraudulent prong because there were no actionable misrepresentations (let alone pled with particularity); and under the unfair prong because he alleges no unfairness beyond the

28  conduct that otherwise fails to state a claim.

Dated: September 19, 2019

Respectfully Submitted,

By:   */s/ Kathleen R. Hartnett*
     Kathleen R. Hartnett (SBN 314267)
     BOIES SCHILLER FLEXNER LLP
     44 Montgomery Street, 41st Floor
     San Francisco, CA 94104
     Telephone: (415) 293-6800
     Facsimile:  (415) 293-6899
     Email: khartnett@bsfllp.com

     Damien J. Marshall (*pro hac vice admitted*)
     BOIES SCHILLER FLEXNER LLP
     55 Hudson Yards, 20th Floor
     New York, NY 10001
     Telephone: (212) 446-2300
     Facsimile:  (212) 446-2350
     Email: dmarshall@bsfllp.com

     Andrew J. Ceresney (*pro hac vice pending*)
     DEBEVOISE & PLIMPTON LLP
     919 Third Avenue
     New York, NY 10022
     Telephone: (212) 909-6000
     Facsimile:  (212) 909-6836
     Email: aceresney@debevoise.com

     *Attorneys for Defendants Ripple Labs Inc.,*
     *XRP II, LLC, and Bradley Garlinghouse*