1   James Q. Taylor-Copeland (284743)
    james@taylorcopelandlaw.com
2   TAYLOR-COPELAND LAW
    501 W. Broadway, Suite 800
3   San Diego, CA 92101
    Telephone: (619) 400-4944
4   Facsimile: (619) 566-4341

5   Marc M. Seltzer (54534)
    mseltzer@susmangodfrey.com
6   Steven G. Sklaver (237612)
    ssklaver@susmangodfrey.com
7   Oleg Elkhunovich (269238)
    oelkhunovich@susmangodfrey.com
8   Meng Xi (280099)
    mxi@susmangodfrey.com
9   SUSMAN GODFREY L.L.P.
    1900 Avenue of the Stars, 14th Floor
10  Los Angeles, CA 90067
    Telephone: (310) 789-3100
11  Facsimile: (310) 789-3150

12  *Counsel for Lead Plaintiff Bradley Sostack*

13              UNITED STATES DISTRICT COURT

14          NORTHERN DISTRICT OF CALIFORNIA

15                  OAKLAND DIVISION

16

17  |                                          | Case No. 4:18-cv-06753-PJH
18  |                                          |
    | In re RIPPLE LABS INC. LITIGATION,       | **PLAINTIFF'S MEMORANDUM OF**
19  |                                          | **POINTS AND AUTHORITIES IN**
    |                                          | **OPPOSITION TO MOTION TO DISMISS**
20  |                                          | **CONSOLIDATED COMPLAINT FOR**
    |                                          | **VIOLATIONS OF FEDERAL AND**
21  | This Document Relates To:                | **CALIFORNIA LAW**
    |                                          |
    | ALL ACTIONS                              | Date: January 15, 2020
22  |                                          | Time: 9:00 a.m.
    |                                          | Place: Courtroom 3
23  |                                          | Judge: Hon. Phyllis J. Hamilton
24  |                                          |
    |                                          | Consolidated Complaint Filed: August 5, 2019
25

26

27

28
                                                         Case No. 4:18-cv-06753-PJH

# TABLE OF CONTENTS

I.      INTRODUCTION ..............................................................................................................1

II.     STATEMENT OF ALLEGED FACTS............................................................................2

III.    ARGUMENT ....................................................................................................................3

      A.      The Statute of Repose Does Not Immunize Defendants' Multiple
           Offerings. ................................................................................................................3

      B.      Plaintiff Sufficiently Stated Claims Under the Federal Securities Act....................9

           1.      Section 12(a)(1) Does Not Require An "Initial Distribution" of
                 Stock. ........................................................................................................9

           2.      Plaintiff Adequately Alleged Defendants Are Sellers of XRP. ...............10

           3.      Plaintiff States a Claim Under Section 15 for "Control Person"
                 Liability...................................................................................................15

      C.      Plaintiff Have Sufficiently Stated Claims Under the California
           Corporations Code. ................................................................................................15

           1.      Plaintiff Adequately Alleged Sale of Unqualified Securities
                 Claims. .....................................................................................................15

           2.      Plaintiff Adequately Alleged A Misrepresentation Claim Under
                 Section 25401............................................................................................18

            3.      Plaintiff Sufficiently Stated a Material Assistance Claim Under
                 Section 25504.1.........................................................................................21

      D.      Plaintiff Sufficiently States Claims Under California Consumer Protection
           Statutes...................................................................................................................22

           1.      Plaintiff's Consumer Protection Claims May Co-Exist with
                 Securities Allegations. .............................................................................22

            2.      No Safe Harbor Is Triggered to Bar Plaintiff's Consumer
                 Protection Claims.....................................................................................23

            3.      Plaintiff Pleaded the UCL and FAL Claims with the Required
                 Particularity.............................................................................................24

IV.     CONCLUSION...............................................................................................................25

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Federal Cases**

5
*Ahern v. Gaussoin,*
   611 F. Supp. 1465 (D. Or. 1985) ...................................................................................6

6

7
*In re Am. Bank Note Holographics Sec. Litig.,*
   93 F. Supp. 2d 424 (S.D.N.Y. 2000)...........................................................................13

8

9
*In re Am. Principals Holdings, Inc. Sec. Litig.,*
   M.D.L. No. 653, 1987 WL 39746 (S.D. Cal. July 9, 1987) ........................................16

10
*American Pipe & Const. Co v. Utah,*
   414 U.S. 538 (1974)......................................................................................................9

11

12
*Balestra v. ATBCOIN LLC,*
   380 F. Supp. 3d 340 (S.D.N.Y. 2019)....................................................................12, 13

13
*In re Bare Escentuals, Inc. Sec. Litig.,*
   745 F. Supp. 2d 1052 (N.D. Cal. 2010) ................................................................11, 25

14

15
*BayStar Capital Mgmt. LLC v. Core Pac. Yamaichi Int'l (H.K.) Ltd.,*
   No. CV 05-1091 ABC, 2007 WL 9711373 (C.D. Cal. Apr. 16, 2007) ........................21

16

17
*In re Bestline Prods. Sec. & Antitrust Litig.,*
   No. MDL 162-Civ-JLK, 1975 WL 386 (S.D. Fla. Mar. 21. 1975)....................3, 4, 5, 7

18
*Bradford v. Moench,*
   809 F. Supp. 1473 (D. Utah 1992)...................................................................... *passim*

19

20
*Brown v. Producers Livestock Loan Co.,*
   469 F. Supp. 27 (D. Utah 1978)....................................................................................8

21

22
*Cal. Public Employees' Retirement Sys. v. ANZ Sec., Inc.,*
   137 S. Ct. 2042 (2017)...................................................................................................4

23
*Capri v. Murphy,*
   856 F.2d 473 (2d Cir. 1988)........................................................................................12

24

25
*Cellars v. Pac. Coast Packaging, Inc.,*
   189 F.R.D. 575 (N.D. Cal. 1999).................................................................................23

26

27
*In re Charles Schwab Corp. Sec. Litig.,*
   257 F.R.D. 534 (N.D. Cal. 2009)......................................................................12, 13, 22

28

Case No. 4:18-cv-06753-PJH

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CONSOLIDATED COMPLAINT

*CTS Corp. v. Waldburger*,
   573 U.S. 1 (2014) ..................................................................................................4

*Cutler v. Rancher Energy Corp.*,
   No. SACV 13-00906-DOC, 2014 WL 1153054 (C.D. Cal. Mar. 11, 2014) ................................19

*In re Daou Sys.*,
   411 F.3d 1006 (9th Cir. 2005) ................................................................................12

*Diskin v. Lomasney & Co.*,
   452 F.2d 871 (2d Cir. 1971) ....................................................................................9

*Employers Ins. of Wausau v. Musick, Peeler, & Garrett*,
   871 F. Supp. 381 (S.D. Cal. 1994) ......................................................................20, 21

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ................................................................................................1

*Federal Housing Finance Agency v. UBS Americas, Inc.*,
   2012 WL 2400263 (S.D.N.Y. June 26, 2012) ............................................................6

*Great Pac. Sec. v. Barclays Capital, Inc.*,
   743 Fed. App'x 780 (9th Cir. 2018) ........................................................................24

*Gustafson v. Alloyd Co., Inc.*,
   513 U.S. 561 (1995) ................................................................................................9

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2007) ..................................................................24

*Hall v. Sea World Entm't, Inc.*,
   2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ........................................................25

*In re Harmonic, Inc., Sec. Litig.*,
   No. C 00-2287 PJH, 2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) ................10, 11, 15

*Hodges v. Harrison*,
   372 F.Supp. 3d 1342 (S.D. Fla. 2019) ....................................................................14

*Hudson v. Capital Management Intern., Inc.*,
   No. C-81-1737, 1982 WL 1384 (N.D. Cal. Jan. 6, 1982) ..........................................4, 7

*Jackson v. Fischer*,
   931 F. Supp. 2d 1049 (N.D. Cal. 2013) ..................................................................16

*Johnson v. Aljian*,
   490 F.3d 778 (9th Cir. 2007) ....................................................................................3

*Konik v. Time Warner Cable*,
   No. CV 07–763 SVW, 2009 WL 10681970 (C.D. Cal. Dec. 2, 2009) ........................17

*Maine State Retirement System v. Countrywide Financial Coorp.*,
  722 F.Supp.2d 1157 (C.D. Cal 2010) ........................................................................9

*Mausner v. Marketbyte LLC*,
  No. 3:12-CV-2461-JM (NLS), 2013 WL 12073832 (S.D. Cal. Jan. 4, 2013)..............18

*McCormick v. Indep. Life & Annuity Co.*,
  794 F.3d 817 (7th Cir. 2015) ....................................................................................5

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
  No. 2:10-CV-302 MRP, 2011 WL 4389689 (C.D. Cal. May 5, 2011)...................14, 15

*In re Metro. Sec. Litig.*,
  532 F. Supp. 2d 1260 (E.D. Wash. 2007) ...............................................................7, 13

*Moore v. Kayport Package Express*,
  885 F.2d 531 (9th Cir. 1989) .............................................................................12, 24

*Mori v. Saito*,
  2013 WL 1736527 (S.D.N.Y. Apr. 19, 2013)..............................................................5

*In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.*,
  636 F. Supp. 1138 (C.D. Cal. 1986) ..........................................................................5

*Openwave Systems, Inc. v. Fuld*,
  No. C 08–5683 SI, 2009 WL 1622164 (N.D. Cal. June 6, 2009)..........................16, 19

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
  838 F. Supp. 2d 1148 (D. Colo. 2012) .....................................................................13

*P. Stolz Fam. P'ship, L.P. v. Daum*,
  355 F.3d 92 (2d Cir. 2004)......................................................................................4, 5

*Pinter v. Dahl*,
  486 U.S. 622 (1988)......................................................................................10, 11, 12

*PPM AM., Inc. v. Marriott Corp.*,
  853 F. Supp. 860 (D. Md. 1994) ..............................................................................14

*In re Proxima Corp. Sec. Litig.*,
  No. 93-1139-IEG, 1994 WL 374306 (S.D. Cal. May 3, 1994) ..................................12

*In re Regions Morgan Keegan Securities, Derivative and Erisa Litigation*,
  166 F.Supp.3d 948 ....................................................................................................9

*S.F. Residence Club, Inc. v. Amado*,
  773 F. Supp. 2d 822 (N.D. Cal. 2011) .....................................................................12

*SEC v. Chinese Consol. Benevolent Ass'n*,
  120 F.2d 738 (2d Cir. 1941)......................................................................................12

*SEC v. W.J. Howey Co.,*
    328 U.S. 293 (1946)......................................................................................1, 2, 20

*Shankar v. Imperva*, Inc.,
    No. 14-CV-1680-PJH, 2015 WL 5530175 (N.D. Cal. Sept. 17, 2015 ........................25

*SIC Metals, Inc. v. Hyundai Steel Co.,*
    2018 WL 6842958 (C.D. Cal. Nov. 14, 2018).........................................................18

*Slagell v. Bontrager,*
    616 F. Supp. 634 (W.D. Pa. 1985).............................................................................8

*Smith v. Cooper/T.Smith Corp.,*
    846 F.2d 325 (5th Cir. 1988......................................................................................6

*Sowell v. Butcher & Singer, Inc.,*
    No. 84–0714, 1987 WL 10712 (E.D. Pa. May 13, 1987) ............................................8

*Spinner Corp. v. Princeville Dev. Corp.,*
    849 F.2d 388 (9th Cir. 1988) ..................................................................................22

*Stephenson v. Deutsche Bank AG,*
    282 F. Supp. 2d 1032 (D. Minn. 2003)................................................................8, 12

*Strigliabotti v. Franklin Res., Inc.,*
    No. C 04-00883 SI, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) ................................23

*Taddeo v. Am. Invsco Corp.,*
    2012 WL 1947897 (D. Nev. May 30, 2012)...............................................................6

*Takiguchi v. MRI Intern., Inc.,*
    47 F. Supp. 3d 1100 (D. Nev. 2014).........................................................................6

*In re Tezos Sec. Litig.,*
    No. 17-CV-06779-RS, 2018 WL 4293341 (N.D. Cal. Aug 7, 2018) ...........................13

*Toombs v. Leone,*
    777 F.2d 465 (9th Cir. 1985) ...................................................................................3

*United States v. Naftalin,*
    441 U.S. 768 (1979).................................................................................................9

*Varjabedian v. Emulex Corp.,*
    888 F.3d 399 (9th Cir. 2018) ...................................................................................9

*In re Violin Memory Sec. Litig.,*
    2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)...........................................................11

*In re Vivendi Universal, S.A.,*
    381 F.Supp.2d 158 (S.D.N.Y. 2003).......................................................................12

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CONSOLIDATED COMPLAINT**

*Walling v. Beverly Enter.*,
    476 F.2d 393 (9th Cir. 1973) ......................................................................20

*Wolph v. Acer Am. Corp.*,
    2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) ..........................................24

*XOMA Corp. Sec. Litig.*,
    1990 WL 357807 (N.D. Cal. Dec. 27, 1991) .............................................14

*Youngers v. Virtus Inv. Partners, Inc.*,
    195 F.Supp.3d 499 (S.D.N.Y. 2016).........................................................11

*In re ZZZZ Best Securities Litig.*,
    No. CV 87-3574 RSWL, 1990 WL 132715 (C.D. Cal. 1990).....................16

**California Cases**

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,
    158 Cal. App. 4th 226 (Cal. Ct. App. 2007) ........................................18, 19

*Bowden v. Robinson*,
    67 Cal. App. 3d 705 (Cal. Ct. App. 1977) .................................................16

*Bowen v. Ziasun Techs., Inc.*,
    116 Cal. App. 4th 777 (Cal. Ct. App. 2004) .........................................22, 23

*Cel-Tech Comm'c'ns, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (Cal. 1999)........................................................................22

*Cortez v. Purolator Air Filtration Prods. Co.*,
    23 Cal. 4th 163 (Cal. 2000)...................................................................24, 25

*Donovan v. RRL Corp.*,
    26 Cal. 4th 261 (Cal. 2001)........................................................................17

*Hellum v. Breyer*,
    194 Cal. App. 4th 1300 (Cal. Ct. App. 2011) ...........................................21

*Lynch v. Cook*,
    148 Cal. App. 3d 1072 (Cal. Ct. App. 1983) .............................................19

*Mirkin v. Wasserman*,
    5 Cal. 4th 1082 (1993) ...............................................................................15

*Moss v. Kroner*,
    197 Cal. App. 4th 860 (Cal. Ct. App. 2011) .............................................16

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal. App. 4th 688 (Cal. Ct. App. 2007) .........................................22, 23

*Rose v. Bank of Am., N.A.*,
    57 Cal. 4th 390 (Cal. 2013) ..................................................................................23

*Roskind v. Morgan Stanley Dean Witter & Co.*,
    80 Cal. App. 4th 345 (Cal. Ct. App. 2000) ............................................................22

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    93 Cal. App. 4th 700 (2001) ..................................................................................24

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ..........................................................................................25

*Viterbi v. Wasserman*,
    191 Cal. App. 4th 927 (2011) .........................................................................15, 16

**Federal Statutes**

15 U.S.C
    § 77 .....................................................................................................................15, 23
    § 78 ............................................................................................................................2

Federal Securities Act ...................................................................................... *passim*

**California Statutes**

Cal. Bus. & Prof. Code
    § 17200 ...............................................................................................................22, 23
    § 17208 .....................................................................................................................24

Cal. Corp. Code
    § 25110 ...............................................................................................................15, 16
    § 25110 .....................................................................................................................16
    § 25400 .....................................................................................................................15
    § 25401 .............................................................................................................18, 19, 21
    § 25500 .....................................................................................................................15
    § 25504 .............................................................................................................16, 17, 21
    § 25504.1 ...................................................................................................................21

California Corporate Securities Law of 1968 .................................................................1

**Other Authorities**

Federal Rules of Civil Procedure
    § 8 ..............................................................................................................................2
    § 9 ...................................................................................................................... *passim*
    § 15 ...........................................................................................................................25

Marsh & Volk, Practice Under the California Securities Laws, § 14.03[4][c] ...............16, 21

1

## I.    INTRODUCTION

2

Despite inconsistently asserting that XRP is a "virtual currency" rather than a security, while

3

at the same time insisting it is a security to bar Plaintiff's UCL and FAL claims, Defendants do not

4

seriously challenge that Plaintiff's Consolidated Complaint ("Complaint") adequately alleges that

5

Defendants' offerings of XRP satisfy the elements of the *Howey* test.  Defendants also do not dispute

6

that that they have made over a billion dollars from their sales of XRP to retail investors.  Instead,

7

Defendants seek immunity for their illegal sales of unregistered XRP in the statute of repose, arguing

8

that *de minimis* sales of XRP in earlier offerings insulate them from liability for separate offerings

9

made later in time.  But the statute of repose does not immunize new offerings of unregistered

10

securities like the ones Defendants continue to conduct anew to this day.  Defendants' twisted

11

application of the statute of repose would undermine the Securities Act's very purpose: "to provide

12

investors with full disclosure of material information concerning public offerings of securities in

13

commerce, to protect investors against fraud and, through the imposition of specified civil liabilities,

14

to promote ethical standards of honesty and fair dealing." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185,

15

195 (1976).

16

Nor is Defendants' illegal conduct immunized by their sales of XRP through cryptocurrency

17

exchanges.  Notwithstanding Defendants' efforts to impose non-existent pleading requirements on

18

Plaintiff, the Complaint sufficiently alleges facts to establish the requisite "privity," Defendants'

19

"statutory seller" status, and their solicitation of XRP sales in California, and adequately alleges claims

20

against each Defendant under both the federal securities laws and the California Corporate Securities

21

Law of 1968.

22

Defendants' challenge to the Complaint under Fed.R.Civ.P. 9(b) ignores the numerous false

23

and misleading statements and omissions made by Defendants to Plaintiff and other investors in a

24

scheme devised to drive demand for and thereby increase Defendants' profits from their sales of XRP

25

detailed in the Complaint.  These particularized allegations more than amply satisfy Rule 9(b) and are

26

more than sufficient to support Plaintiff's claims under California's Corporations Code, as well as the

27

FAL and UCL.

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CONSOLIDATED COMPLAINT

Finally, Defendants assert that Plaintiff's UCL and FAL claims are displaced by the securities laws. This argument is not only unsupported by the law but is also necessarily dependent on a factual finding that XRP is a "security," a premise Defendants challenge.[1] Defendants' inappropriate attempt to deprive Plaintiff of the prerogative to plead alternative theories of liability is directly contrary to Fed.R.Civ.P. 8(d) and therefore must fail.

## II.   STATEMENT OF ALLEGED FACTS

The Complaint plausibly alleges claims on behalf of all investors who purchased Ripple XRP tokens issued and sold by Defendants. The Complaint identifies how XRP meets the definition of a "security" under both federal and California law. *Id.* at ¶¶ 121–125 (SEC Framework for characteristics of a digital asset that makes it an "investment contract" under *Howey*); ¶¶ 153–155 (California Corporations Code definition of an "investment contract" and *Silver Hills* test); ¶¶ 126–132, 156 (investment of money in a common enterprise); ¶¶ 133–140 (investors had reasonable

---

[1] Defendants attempt to mislead the Court into believing that a federal agency has already deemed XRP to be a "currency," thereby absolving Defendants from all liability for selling an unregistered "security." Mot. at 1:5–8 (XRP "is correctly characterized as a currency under applicable law and, as such, need not be registered as a security under federal and state securities regulations.") & n.19 ("Moreover, because XRP is a currency, it cannot, as a matter of law, also be a security."). Defendants seek to conflate a "convertible virtual currency" ("CVC") with "currency." But Defendants' argument is a non-starter, because no regulatory agency has ever characterized or found XRP to be a "currency." Instead, the Financial Crimes Enforcement Network ("FinCEN"), a bureau of the United States Department of the Treasury, recognized that "[f]rom at least March 6, 2013, through April 29, 2013, Ripple Labs sold convertible virtual currency known as 'XRP.'" Harnett Decl., Ex. A ("Attachment A: Statement of Facts and Violations"), at ¶ 17 (emphasis added); *see* Mot. at 1:5–7 ("In fact, as recognized by the U.S. Departments of Justice and Treasury in 2015, XRP is a 'convertible virtual currency.'"), *id.* at 3:19–20 (same).
Contrary to Defendants' suggestion, CVC is not currency, and is distinguished as "a type of virtual currency that either has an equivalent value as currency, or acts as a substitute for currency, and is therefore a type of 'value that substitutes for currency.'" May 9, 2019 FinCEN Guidance, FIN-2019-G001, at 7, § 1.3, *available at* https://www.fincen.gov/sites/default/files/2019-05/FinCEN %20Guidance%20CVC%20FINAL%20508.pdf. Specifically, the term "value that substitutes for currency" encompasses situations in which "the transmission does not involve currency, or funds, but instead involves something that the parties to a transaction recognize has value that is equivalent to or can substitute for currency." *Id.* at 4, § 1.2.1. FinCEN further clarifies that "virtual currency" is not to be confused with currency, because the former "refers to a medium of exchange that can operate like currency but does not have all the attributes of 'real' currency, as defined in 31 C.F.R. § 1010.100(m), including legal tender status." *Id.* (emphasis added). Significantly, FinCEN also explicitly states that, "federal securities law may apply to the issuance of CVC as securities regardless of other intended purposes of the CVC." *Id.* at 24 n.75. Therefore, Defendants' argument that XRP should be exempt from securities regulations based on FinCEN's finding and guidance has no basis in either law or fact. *See* Mot. at 21, n.19 (citing 15 U.S.C. § 78c(a)(10) for the proposition that the term "security" "shall not include currency . . .").

expectation of profits); ¶¶ 141–152, 158–159 (XRP success depends upon efforts of others); ¶¶ 28–41 (XRP is without utility yet serves as Defendants' primary source of income); ¶¶ 43, 135 (Defendants' offers were made in California or directed at California residents).

Defendants raised billions of dollars selling XRP in multiple offerings.  *Id.* at ¶ 4 ("numerous offerings"); ¶ 94 ("separate offering[s]"), ¶ 157 ("numerous issuances of XRP are indiscriminate offerings"); ¶¶ 30, 44–45, 124, 128 (XRP promoted on numerous virtual exchanges over time).  The Complaint describes Defendants' scheme to inflate the demand for and value of XRP, and identifies how Defendants solicited Plaintiff's purchase of XRP through a litany of false and misleading public statements in violation of California's False Advertising and Unfair Competition Laws.  *Id.* at ¶¶ 1, 13, 42, 45, 55–75, 95–105.  Not only does the Complaint identify the specific misleading or false statements made by Defendants, but includes particularities such as the who, what, when, and where such misstatements were made.  *Id.*

Finally, the allegations in the Complaint also ascribe liability to the "control person" Defendants (Defendants Ripple Labs, Inc. and CEO Bradley Garlinghouse) by establishing their relationship to and control of Defendant XRP II, LLC, and their power to direct or cause the direction of XRP II's actions in violation of various federal and state laws.  *Id.* at ¶¶ 14–16, 177–83, 177–183, 202–207, 215.

## III.   ARGUMENT

### A.   The Statute of Repose Does Not Immunize Defendants' Multiple Offerings.

Defendants assert that Plaintiff's federal securities claims under sections 5, 12(a)(1), and 15 of the Securities Act of 1933 are barred by the statute of repose.  Mot. at 5–9.  But Defendants' "interpretation of the statute is at odds with the remedial purpose of the Securities Act."  *In re Bestline Prods. Sec. & Antitrust Litig.*, No. MDL 162-Civ-JLK, 1975 WL 386, at *2 (S.D. Fla. Mar. 21. 1975).  The statute of repose does not immunize Defendants' ongoing multiple offerings of unregistered XRP securities for five separate reasons.[2]

---

[2] Defendants rely on *Toombs v. Leone*, 777 F.2d 465, 469 (9th Cir. 1985). Mot. at 6.  But *Toombs* was criticized by the Ninth Circuit in *Johnson v. Aljian*, 490 F.3d 778, 782 (9th Cir. 2007), which observed that it is not the plaintiff's burden to negate an affirmative defense on the pleadings and urged courts to "discard" the "archaic rule."

1    ***First***, in arguing that their ongoing multiple offerings are barred by the statue of repose,

2    Defendants rely almost entirely on the "first offered" rule articulated by the Second Circuit in *Stolz*

3    *Family*.  Mot. at 6 (citing *P. Stolz Fam. P'ship, L.P. v. Daum*, 355 F.3d 92 (2d Cir. 2004)).  However,

4    this out-of-circuit decision cannot be squared with the Supreme Court's more recent holding that the

5    statue of repose "***runs from the defendant's last culpable act (the securities offering)*** . . . ."  *Cal.*

6    *Public Employees' Retirement Sys. v. ANZ Sec., Inc*., 137 S. Ct. 2042, 2049 (2017) (emphasis added);

7    *see also CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) ("That limit is measured not from the date on

8    which the claim accrues but instead from the date of the last culpable act or omission of the

9    defendant.").

10   The Supreme Court's guidance provides additional support for an earlier line of cases ignored

11   by Defendants—including one in the Northern District of California—holding that the relevant

12   offering for computing the statute of repose "is the last offering of the security."  *Hudson v. Capital*

13   *Management Intern., Inc.*, No. C-81-1737, 1982 WL 1384, at *3 n.3 (N.D. Cal. Jan. 6, 1982); *Bradford*

14   *v. Moench*, 809 F. Supp. 1473, 1489 (D. Utah 1992) ("The better approach, taken by at least two

15   courts, is that the phrase 'bona fide offered to the public' means *last* offered to the public."); *In re*

16   *Bestline Prods. Sec. & Antitrust Litig.*, 1975 WL 386, at *2 ("[T]he defendants' interpretation of

17   section 13 must be rejected in favor of the plaintiffs' interpretation, according to which the limitations

18   period began on the date the alleged 'security' was last offered to the public.").  The "last culpable

19   act" test adopted by the Supreme Court is aligned with the "last bona fide offer" rule articulated by

20   *Bestline* and its progeny and conflicts with the "first offered" rule advanced by Defendants and the

21   *Stolz Family* court.

22   ***Second***, even the "first offered" rule urged by Defendants is limited in application and does

23   not extend to ongoing multiple offerings, such as the "ongoing XRP distribution" Ripple

24   acknowledges it conducts.  Compl. ¶ 86.  The Second Circuit explicitly "cabin[ed]" its *Stolz Family*

25   decision to the facts of that case, where it was "dealing with ***a single public offering*** of unregistered

26

27

28

securities," rather than an "***ongoing*** bona fide offer of unregistered securities." *Stolz Family*, 355 F.3d at 102–03 (2d Cir. 2004).[3]

The *Stolz Family* court explicitly cautioned that its invocation of the "first offered" rule does not involve "the situation of a defendant's being granted immunity to ***continue*** illicit offers without civil liability after three years have passed." *Id.* at 102 (emphasis added).[4]   The court noted that "*Bestline* and its progeny express concern about the securities offeror who, while making his ongoing bona fide offer of unregistered securities to the public, manages to avoid suit for three years, thus securing a sort of immunity to continue illicit offers without civil liability. ***This, of course, is not the situation before us in the present case***." *Id.* at 103 (citing *In re Bestline Prods. Sec. and Antitrust Litig.*, 1975 WL 386) (internal citations omitted) (emphasis added).  But that is just the situation before the Court here.  Ripple does not dispute that it is engaged in an "ongoing XRP distribution" and to accept Defendants' argument "would be to give [them] a license to sell unregistered securities to whomsoever they wish . . . ."   *In re Bestline Prods. Sec. and Antitrust Litig.*, 1975 WL 386, at * 2; *Bradford*, 809 F.Supp. at 1490 ("The reasoning of the *Bestline* court is persuasive, especially in a case such as this one where ***the issuer contemplated offering the unregistered securities indefinitely***.") (emphasis added).

The other cases Defendants cite as adopting the "first-offered" rule are no different. *McCormick v. Indep. Life & Annuity Co.*, 794 F.3d 817 (7th Cir. 2015) (involving single life insurance policy purchased 24 years before lawsuit); *Mori v. Saito*, 2013 WL 1736527 (S.D.N.Y. Apr. 19, 2013) (single offer in an "acceptances of guarantees"); *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.*, 636 F. Supp. 1138 (C.D. Cal. 1986) (offering of "mortgage pool certificates");

---

[3] Defendants overstate what the Second Circuit held in *Stolz Family* by arguing that the Second Circuit's decision meant that "the statute of repose creates 'potential immunity for later offerings' of the same security."  Mot. at 9.  The "potential immunity" would have been the result of a proposed amendment advocated by the Securities Exchange Commission in 1941, but "it was never adopted." *Stolz Family*, 355 F.3d at 106.

[4] In a concurring opinion, Judge Calabresi highlights the difference between the imposition of a statute of repose on a single offering versus continued multiple offerings:  "Giving repose to a defendant who has ***ceased*** to do wrong may well be worthwhile even if it is 'unfair' to a plaintiff whose cause of action has not yet accrued.  But it is a different thing altogether to give repose to a defendant who ***continued*** his wrongful conduct, perhaps even beyond the time specified by the repose period."  *Id.* at 107 (emphasis added).

1  *Taddeo v. Am. Invsco Corp.*, 2012 WL 1947897 at *2 (D. Nev. May 30, 2012) (mass offering for sale

2  of condominium units).

3        Courts in the Ninth Circuit discussing *Stolz Family* have thus recognized that where a

4  defendant engages in multiple offerings, the statute of repose's "limitations period would run from the

5  time each year's series was offered and not from the time [defendant] first began offering securities."

6  *Takiguchi v. MRI Intern., Inc.*, 47 F. Supp. 3d 1100, 1117 (D. Nev. 2014).  In *Takiguchi*, as here,

7  defendants argued "that plaintiffs identify no differences between each year's securities so as to render

8  them separate and distinct from the original securities first offered 14 years ago."  *Id.*  The Court

9  rejected this argument, holding that "Plaintiffs have adequately plead facts supporting a reasonable

10  inference that at least some—perhaps all—of their §12(a)(1) claims are not time barred," where

11  defendant issued a new certificate of investment each time an investor purchased a new series of

12  security.  *Id.*  So too here.  Ripple issues new XRP from escrow for the first time each month for sale

13  to the public.  Compl. ¶¶ 84–94.  And Ripple has publicly touted its upgrades to XRP, conceding that

14  the XRP it sells today differs from the XRP it sold in 2017, which in turn differs from any XRP it sold

15  in 2013, 2014, or 2015.  *See* Compl. ¶ 111–120 (touting changes to "decrease[] transaction times and

16  improve[] system security, compatibility, use cases and other features.").

17        Courts have also recognized that claims may be timely if the nature of the investment "changed

18  so significantly . . . as to constitute the offering of new securities."  *Bradford*, 809 F. Supp. at 1491;

19  *see also Smith v. Cooper/T.Smith Corp.*, 846 F.2d 325, 327 (5th Cir. 1988) (modification of stock

20  purchase agreement was purchase or sale of security within meaning of section 10(b) of the Securities

21  Exchange Act of 1934); *Federal Housing Finance Agency v. UBS Americas, Inc.*, 2012 WL 2400263,

22  at *2–3 (S.D.N.Y. June 26, 2012) ("securities issued pursuant to a shelf registration statement that

23  omits critical disclosures are not *bona fide* offered to the public . . ."); *Ahern v. Gaussoin*, 611 F. Supp.

24  1465, 1478–79 (D. Or. 1985) (stating that if notes at issue were securities, the exchange of notes after

25  a corporate restructuring was such a significant change in the nature of investment as to constitute a

26  new investment).  As described in Plaintiff's Complaint, the nature of, and risk attendant to buying

27  XRP issued by Ripple changed significantly between 2013 and 2017, as Ripple added features to XRP,

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CONSOLIDATED COMPLAINT

developed the XRP market, secured listings on exchanges, entered into partnerships, and engaged in a significant marketing push.  Compl. ¶¶ 99–120.

**Third,** Defendants have failed to cite any case—and indeed, no court has found—that liability for multiple offerings have been barred by the statute of repose.  In other words, the statute of repose is re-set where, as here, there are multiple offerings of securities.  As the Complaint alleges, the XRP were offered by Defendants in separate multiple offerings.  *See* Compl. ¶¶ 4 ("numerous offerings"), 84 (describing "subsequent offerings" of XRP at "defined intervals"), 93–94 (describing "separate offerings" of XRP every month for 55 months starting in 2017), 157 ("numerous issuances of XRP are indiscriminate offerings to the public"), 173 ("offerings"), 188 ("offerings").  For situations like this, the "last-offered" rule applies to prevent erosion of the purpose of the registration requirements of the securities laws.  This Court held as much in *Hudson*, 1982 WL 1384, at *3 & n.3, stating that Section 12(a)(1) actions must be brought "three years after the security was offered" and "[t]he relevant offering is the last offering of the security." *See also In re Bestline Prods. Sec. and Antitrust Litig.*, 1975 WL 386, at *2  (adopting last-offered rule because the first-offered rule would "give individuals a license to sell unregistered securities to whomsoever they wished if they first offered the security to a group of people and, so to speak, 'ran the gauntlet' for three years," and noting that the first-offered rule "is simply at odds with the remedial purposes of the Securities Act[.]"); *Bradford*, 809 F. Supp. At 1489 (noting that as between the two approaches, the last-offered approach is the "better approach").[5]

**Fourth**, Defendants fail to mention that the statute of repose under section 13 cannot begin to run unless the challenged public offerings were "bona fide," which is a question of fact that cannot be resolved on a motion to dismiss.  *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1301 (E.D. Wash. 2007).  As the Complaint alleges, despite XRP's creation in 2013, it was not until early 2017 that XRP was listed on "six exchanges," which grew to "over 50 exchanges" worldwide approximately one year later.  Compl. ¶¶ 2, 22, 45.  Furthermore, Defendants' offerings of the XRP were *de minimis* from

---

[5] Defendants' argument about whether XRP was the subject of "numerous offerings," as alleged, rather than a single offering or an initial distribution, Mot. at 8–10, are inappropriate for determination in a motion to dismiss.  There exists at minimum factual questions making dismissal at the pleading stage inappropriate.

1   2013 through 2016, and did not "accelerate[] rapidly" until "2017 and early 2018." *Id.* at ¶ 30.  Thus,

2   because the majority of all XRP investors could not have—and did not—buy XRP before 2017 due to

3   its extremely limited availability, the distribution of which was wholly controlled by Defendants, a

4   fact issue exists as to whether Defendants' *de minimis* pre-2017 offerings of XRP even constitute a

5   "bona fide offering to the public" to entitle Defendants to repose.  *See Sowell v. Butcher & Singer,*

6   *Inc.*, No. 84–0714, 1987 WL 10712, at *8 (E.D. Pa. May 13, 1987) (finding "bona fide" in section 13

7   should be interpreted to mean "genuine"); *Slagell v. Bontrager*, 616 F. Supp. 634, 636–37 (W.D. Pa.

8   1985) (finding in dictum that "bona fide" means genuinely offered); *Bradford*, 809 F. Supp. at 1487

9   ("bona fide" should be given "its common, ordinary meaning of 'in good faith'").[6]

10        ***Fifth,*** Defendants suggest that "there is no inequity" for the Court to bar the vast majority of

11   XRP investors from bringing federal securities claims because "XRP has been available to the public

12   since 2013." Mot. at 9.  But that is not the case.  It may be that XRP was available to Defendants,

13   select cryptocurrency hobbyists, and Ripple's co-founders since 2013, but as alleged, Defendants'

14   planned "distribution strategies" were not intended to reach the public at large, rather, they were

15   designed to "stab[ilize] or strengthen[] XRP exchange rate against other currencies." Compl. ¶ 5.  The

16   drastic discrepancy between the pre- and post-2017 daily volume of XRP trades illustrate the

17   inequitable result that would befall the putative class of XRP investors, the vast majority of whom

18   Defendants did not make "bona fide offers" to before 2017.  Denying relief based on the statute of

19   repose here would be at odds with the fundamental purpose of the securities laws:  protecting investors.

20   *Bradford*, 809 F. Supp. at 1487 ("Congress's purpose in enacting the securities laws [] was to protect

21   unsophisticated investors from securities fraud."); *Brown v. Producers Livestock Loan Co.*, 469 F.

22   Supp. 27, 32 (D. Utah 1978) (securities laws should be liberally construed to protect innocent

---

[6] Indeed, although the district court in *Bradford* adopted the magistrate judge's recommendation that "the relevant offering occurs at the time the securities were last offered to the public" and thus did not have any need to adopt the magistrate judge's alternative recommendation on the issue of what constitutes a "bona fide offer," the magistrate judge in *Bradford* proposed a finding that the statute of repose under section 13 cannot apply to unregistered securities because an offer of unregistered securities is unlawful, and thus such an offer was never truly in good faith "bona fide offered to the public." *Id.* at 1487.  *See also Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1064 (D. Minn. 2003) ("Because the offer of 'unregistered securities is unlawful, it follows that ... the 'bona fide offered to the public' provision does not apply.").

investors); *see also Diskin v. Lomasney & Co.*, 452 F.2d 871, 876 (2d Cir. 1971) ("[I]t would be unreasonable to read § 13 as starting the short period for an action at a date before the action could have been brought.").[7]

**B.    Plaintiff Sufficiently Stated Claims Under the Federal Securities Act.**

**1.    Section 12(a)(1) Does Not Require An "Initial Distribution" of Stock.**

A section 12(a)(1) claim is not limited to an "initial distribution" of stock directly by the defendant, and Defendants' attempt to argue otherwise is mistaken. *See* Mot. at 10–11. None of the cases Defendants cite imposes such a requirement. Defendants miscite *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 571–72 (1995), for the proposition that section 12(a)(1) applies only to "initial distributions of newly issued stock from corporate issuers." *Gustafson* is a section 12(a)(2) case involving buyers' right of rescission against sellers who make material misstatements in a "prospectus." *Id.* Similarly, *United States v. Naftalin*, 441 U.S. 768 (1979), and *Varjabedian v. Emulex Corp.*, 888 F.3d 399 (9th Cir. 2018), are also not concerned with section 12(a)(1), but with different sections of the securities laws. Moreover, contrary to Defendants' suggestion that the Securities Act is limited to "public offerings," the Supreme Court in *Naftalin* held that section 17(a) was "intended to cover any fraudulent scheme in an offer or sale of securities, whether in the course of an initial distribution or in the course of ordinary market trading." 441 U.S. at 778.

Defendants next argue that Plaintiff did not plausibly allege that he purchased XRP as part of an "initial distribution" by Defendants, as opposed to on the "secondary market." Mot. at 10–11.

---

[7] The Complaint relates back to the complaint in *Coffey v. Ripple Labs Inc.*, filed on May 3, 2018 in San Francisco Superior Court, and removed to this Court on June 1, 2018. *Coffey v. Ripple Labs Inc.*, 333 F. Supp. 3d 952, 954 (N.D. Cal. 2018). Like this consolidated class action, *Coffey* was a putative class action against the same defendants (Ripple Labs, Inc., XRP II, LLC, and Bradley Garlinghouse), and alleged violations of both federal and California securities regulations. *See* ECF No. 33 at 3-4. Although the *Coffey* plaintiff voluntarily dismissed the action on August 22, 2018, because the *Coffey* complaint gave Defendants adequate notice of the claims contained in the operative Complaint, the relation back does not unfairly prejudice Defendants, and there is an identity of interests between Coffey and Lead Plaintiff Bradley Sostack, the Complaint may relate back May 3, 2018. *American Pipe & Const. Co v. Utah*, 414 U.S. 538 (1974); *In re Regions Morgan Keegan Securities, Derivative and Erisa Litigation*, 166 F.Supp.3d 948 (applying *American Pipe* doctrine to statute of repose); *Maine State Retirement System v. Countrywide Financial Coorp.*, 722 F.Supp.2d 1157 (C.D. Cal 2010) ("the Court rejects Defendants' argument that *American Pipe* tolling does not apply to the statute of repose.").

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CONSOLIDATED COMPLAINT

Notwithstanding that an "initial distribution" is not an element of a section 12(a)(1) claim, Defendants' argument also fails because they acknowledge that they "sell significant quantities of XRP directly to the general public on cryptocurrency exchanges," Mot. at 11, such that it is not implausible for an exchange investor to have purchased XRP directly from Defendants in an "initial distribution." Moreover, Defendants themselves engage in a distribution strategy that intentionally blurs the line between their series of initial distributions and secondary market offerings. As the Complaint alleges, Defendants have employed "distribution strategies" including "escrow mechanisms" to roll out multiple offerings, all designed to "stab[ilize] or strengthen[] XRP exchange rate against other currencies," on various exchanges. Compl. ¶¶ 5, 44, 45, 84–86, 93, 94, 124, 127, 128.

Next, the allegations Defendants point to in the Complaint also do not somehow establish as a matter of law that the XRP Plaintiff purchased were not part of an "initial distribution." Neither the fact that Plaintiff is not a "large[] investor," nor the allegation that "Defendants . . . sell significant quantities of XRP directly to the general public on cryptocurrency exchanges," Compl. ¶ 30, nor that Plaintiff purchased approximately 129,000 XRP from Defendants in January 2018, *id.* at ¶ 13, are at odds with the reasonable inference that Plaintiff purchased XRP directly from Defendants in an initial distribution. Defendants argue that "it [is] impossible to plausibly conclude that Plaintiff purchased an initial distribution of XRP from Defendants" given XRP's exchange sales of $151.1 million in the quarter of Plaintiff's purchases. Mot. at 11. To the contrary, it would be implausible for Plaintiff to have purchased **all** of his XRP from Defendants as part of an "initial distribution" **only if** XRP's total exchange sales in the relevant quarter were *less than* the value of the approximately 129,000 XRP (approximately $308,000) purchased by Plaintiff at the time.

### 2. Plaintiff Adequately Alleged Defendants Are Sellers of XRP.

Defendants argue that Plaintiff has not alleged that any specific Defendant "passed title" of XRP to Plaintiff. Mot. at 12. But the securities laws impose seller liability on **both** those who pass title and those who actively solicit "the purchase for financial gain." *In re Harmonic, Inc., Sec. Litig.*, No. C 00-2287 PJH, 2006 WL 3591148, at *14 (N.D. Cal. Dec. 11, 2006) (citing *Pinter v. Dahl*, 486 U.S. 622, 643 (1988)). Indeed, *Pinter*'s holding is that section 12 liability extends "to the person who

successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter*, 486 U.S. at 647. *Pinter* makes clear that "Congress [had not] intended liability to be restricted to those who pass title" and that "[t]he applicability of § 12 liability to brokers and others who solicit securities purchases has been recognized frequently since the passage of the Securities Act." *Id.* at 646–47.

In any event, Plaintiff here has sufficiently alleged that Defendants both passed title and actively solicited the purchase of XRP for financial gain because Defendants "created [XRP] out of thin air," Compl. ¶ 22, "Defendants . . . sell significant quantities of XRP directly to the general public on cryptocurrency exchanges," *id.* at ¶ 30, and Plaintiff purchased XRP from Defendants in January 2018 on those same exchanges, *id.* at ¶ 13. The logical (and reasonable) inference to be drawn is that Defendants "passed title" to the XRP purchased by Plaintiff through the exchanges, and that serves to differentiate this case from the mere legal conclusions at issue in *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1073 (N.D. Cal. 2010), and *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *18 (N.D. Cal. Oct. 31, 2014).

Next, Defendants argue that it would be "implausible" for all three Defendants to sell Plaintiff XRP in a single transaction and urge the Court to dismiss at least Defendant Garlinghouse from the case, asserting that *Harmonic* compels such a result. Mot. at 13. But Defendants ignore that section 12 liability attaches not only to those who sell a security, but also those who solicit a purchase, and the operative complaint in *Harmonic* did not allege in the alternative that the individual defendants "solicited" purchases of the securities for their financial gain as the Complaint here does. *See Harmonic*, 2006 WL 3591148, at *10.

Defendants also contend that Plaintiff has failed to plead a "seller by solicitation," because the Complaint lacks allegations regarding either a "direct relationship or direct communication" between each Defendant and Plaintiff. Mot. at 13–14. However, none of the cases cited by Defendants defines what a "direct relationship" or "direct communication" would look like, and the cases Defendants cite acknowledge that there is simply no requirement that Plaintiff allege "personal solicitation" by Defendants. *Youngers v. Virtus Inv. Partners, Inc.*, 195 F.Supp.3d 499, 522 (S.D.N.Y. 2016)

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CONSOLIDATED COMPLAINT

("[I]ndirect solicitation can suffice to state claim under Section 12(a)(2)."); *see also  Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988) (lack of direct contact with plaintiffs "does not preclude" defendants from qualifying as "sellers" where significant involvement in the solicitation was alleged); *In re Proxima Corp. Sec. Litig.*, No. 93-1139-IEG, 1994 WL 374306, at *5 (S.D. Cal. May 3, 1994) (allegations of direct solicitations not required); *In re Vivendi Universal, S.A.*, 381 F.Supp.2d 158 (S.D.N.Y. 2003) ("[I]t has become well settled in this Circuit that the seller need not have 'personal' contact with the purchaser."); *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1063–64 (D. Minn. 2003) (defendants qualified as sellers at the motion to dismiss stage despite no allegations of direct contact).  Defendants cannot escape liability simply because they conducted their extensive solicitation largely over the Internet and through the media, rather than face to face.

Liability under section 12(a)(1) extends to those who "successfully solicit[] the purchase [of an unregistered security], motivated at least in part by a desire to serve [their] own financial interests or those of the securities owner." *Pinter*, 486 U.S. at 647 (1988); *see also In re Daou Sys.*, 411 F.3d 1006, 1028–29 (9th Cir. 2005) (same). "[A]ny person who 'engaged in steps necessary to the distribution' of the unregistered security is liable.'" *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 357–58 (S.D.N.Y. 2019) (quoting *SEC v. Chinese Consol. Benevolent Ass'n*, 120 F.2d 738, 741 (2d Cir. 1941)); *S.F. Residence Club, Inc. v. Amado*, 773 F. Supp. 2d 822, 829 (N.D. Cal. 2011) (sellers include "brokers and others who solicit offers to purchase securities").

The Ninth Circuit has held that a complaint sufficiently alleges that defendants are "sellers" where plaintiffs alleged they were associated with the principal defendants and had "'distributed sales promotion data,' 'recommended the . . . limited partnership[ ]' interests and were a 'substantial and motivating force in the sales to' [investors in general]." *Moore v. Kayport Package Express*, 885 F.2d 531, 538–39 (9th Cir. 1989); *see also In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 549–50 (N.D. Cal. 2009) (plaintiff adequately alleged that defendants were liable as sellers because they "'actively solicited the sale of the fund's shares' and that certain defendants were involved in marketing the fund"); *Proxima*, 1994 WL 374306, at *5 (allegations that defendants "'actively took part in encouraging prospective purchasers to buy'" were sufficient).

Here, the Complaint alleges numerous specific facts describing how the Defendants marketed and continue to market XRP to investors.  These allegations, some of which are catalogued and acknowledged by Defendants, *see* Mot. at 14, suffice to state a claim under section 12(a)(1).  Compl., ¶¶ 30, 42–45, 55–75, 95–105, 124, 128, 42–43, 157; *see, e.g., Charles Schwab*, 257 F.R.D. at 549–50 (allegations that defendants "'actively solicited the sale of the fund's shares' and that certain defendants were involved in marketing" the investment were adequate); *In re Am. Bank Note Holographics Sec. Litig.*, 93 F. Supp. 2d 424, 439 (S.D.N.Y. 2000) (upholding claims against defendant who was not a direct seller but solicited investors and had a financial motive); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 838 F. Supp. 2d 1148, 1179–80 (D. Colo. 2012) (allegations that defendants solicited through "'advertising and other marketing efforts to serve [its] own financial interests'" were adequate, and more was "unnecessary at the pleading stage").  To the extent Defendants contend there is a dispute regarding which Defendants qualify as "statutory sellers," this fact-intensive question may not be resolved on a motion to dismiss.  *Metro. Sec. Litig.*, 532 F. Supp. 2d at 1301.

Importantly, allegations nearly identical to those in the Complaint have been upheld against sellers of initial coin offerings ("ICOs"), whether they are corporate entities or individuals such as Defendant Garlinghouse.  In *Balestra*, the court upheld allegations against defendants who were "the sole members" of ATBCOIN LLC, for their personal involvement in "publicizing the [unregistered] ATB ICO," including issuing press releases and giving promotional interviews.  380 F. Supp. 3d at 358–59.  The court held that defendants' efforts to publicize and promote the ICO indicated that the defendants had "'engaged in steps necessary to the distribution of'" the tokens, and therefore fell within the scope of section 12(a).  *Id.* at 358.  Likewise, in *In re Tezos Sec. Litig.*, No. 17-CV-06779-RS, 2018 WL 4293341, (N.D. Cal. Aug 7, 2018), the court upheld similar claims against defendant DLS and its founders based on allegations of their "comprehensive involvement with the ICO's planning and execution."  *Id.* at *8–9 (finding that allegations of DLS and its founders' involvement in the "creation of the Tezos technology, establishment of a legal entity to monetize DLS' interest in that technology, development of a platform to facilitate said monetization, and minute-to-minute

oversight of the monetization process itself" were sufficient to withstand a motion to dismiss "[u]nder *Pinter's* 'statutory seller' standard"); *see also Hodges v. Harrison*, 372 F.Supp. 3d 1342 (S.D. Fla. 2019) ("Harrison was a 'seller' within the meaning of the Securities Act because he solicited Plaintiffs' investments in the aborted Monkey Capital ICO."). So too here.

Unsurprisingly, Defendants have failed to identify a single case in which a court held that a defendant engaged in the type of extensive promotional activities alleged here was not a statutory seller, or even a single case where the court evaluated statutory seller status in the context of an unregistered securities offering under Section 12(a)(1). Rather, Defendants rely exclusively on section 12(a)(2) cases, often involving firm underwritings where the alleged solicitation went no further than signing a registration statement or prospectus. *See* Mot. at 13–14.[8] For example, in *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, plaintiffs alleged only that "the Issuer Defendants issued the registration statements." No. 2:10-CV-302 MRP, 2011 WL 4389689 (C.D. Cal. May 5, 2011). The court found that these bare-bones allegations that defendants "promoted" the sale of the securities were insufficient because plaintiffs "[did] not explain *how* the . . . Defendants . . . solicited their sale." *Id.* at *10 (emphasis added).

Similarly, *XOMA Corp. Sec. Litig.*, 1990 WL 357807, at *8 (N.D. Cal. Dec. 27, 1991), is readily distinguishable from this case because there, the court found that defendants' provision of "information to securities analysts, employ[ment of] the underwriter defendants, [and] distribut[ion of] the prospectuses" cannot be presumed to have successfully reached the specific plaintiffs to qualify as "solicitation." In contrast, the allegations here are sufficient to show that Defendants solicited Plaintiff with their tweets, hyperlinks, interviews, Q&As, articles, press releases, website marketing,

---

[8] As underwriters agree to purchase all the issuer's securities in a firm commitment underwriting, the underwriters have more of an incentive to solicit purchases of the securities than the issuer. In these cases, it is thus usually the underwriters who engage in the marketing and promotional activities. *See Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-302 MRP, 2011 WL 4389689, at * 9 (C.D. Cal. May 5, 2011) ("Plaintiffs allege the Issuer Defendants issued the registration statements, but the Section 12 Underwriters drafted and disseminated the prospectus supplements pursuant to which the MBS were sold to Plaintiffs."); *PPM AM., Inc. v. Marriott Corp.*, 853 F.Supp. 860, 875 (D. Md. 1994) (adopting blanket rule "that the purchases of securities at a firmly underwritten initial public offering may not assert claims under § 12(2) against the issuer of securities."). That is not the case here, where there are no underwriters or brokers. It is Defendants, and Defendants alone, who stand to gain from the sale of XRP, and it is thus Defendants who promote and market XRP for their own benefit.

exchange listings, and instructions on "how to buy XRP" because Plaintiff "saw and relied on Defendants' repeated representations that adoption of XRP by financial institutions and banks would drive demand for XRP."  Compl. ¶ 13.

### 3.   Plaintiff States a Claim Under Section 15 for "Control Person" Liability.

Rather than explain how Plaintiff fails to state a section 15 claim, 15 U.S.C. § 77o, Defendants make the trivial observation that section 15 liability is predicated upon section 12 liability.  Mot. at 14–15.  Plaintiff sufficiently states a claim for "control person" liability against Defendants Ripple Labs, Inc. and Garlinghouse because Plaintiff has alleged that they "directly or indirectly controlled the [primary] violator," Defendant XRP II, LLC.  *See, e.g.*, Compl., ¶¶ 14–16, 177–83; *Countrywide Fin. Corp.*, 2011 WL 4389689, at *12 (finding allegations re control person's "title and responsibilities are usually sufficient to establish control . . . at the motion to dismiss stage") (citations omitted); *Harmonic*, 2006 WL 3591148, at *13 (holding that plaintiffs may pursue both primary and control person claims against the same defendants at the pleading stage).  Defendants do not dispute the sufficiency of these allegations under section 15.

### C.   Plaintiff Have Sufficiently Stated Claims Under the California Corporations Code.

### 1.   Plaintiff Adequately Alleged Sale of Unqualified Securities Claims.

Defendants attack Plaintiff's "unqualified" securities claims under California law on the same two grounds—"issuer transaction" and "privity"—as they did against Plaintiff's federal securities claims.  Mot. at 15–16.  With respect to "issuer transaction," Defendants' arguments fail for the same reasons explained Section III.B.2 above.  Defendants' reliance on *Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993), and *Viterbi v. Wasserman*, 191 Cal. App. 4th 927 (2011), is misplaced.  *Mirkin* is not a section 25110 case, but rather a section 25400/25500 case that held that these latter sections impose liability for fraud in connection with ***both*** "issuer transaction[s]" as well as "aftermarket transactions." 5 Cal. 4th at 1104.  *Viterbi* is likewise inapposite because it is limited to cases where the plaintiff still owned the security and the only remedy sought is rescission.  191 Cal. App. 4th at 938 ("Wasserman never owned the securities, did not sell them to plaintiffs, and did not receive money from plaintiffs.

1  Wasserman cannot return money she never received or rescind a transaction to which she was not a

2  party."). Here, Plaintiff primarily seeks monetary damages for his section 25110 claim, because

3  Plaintiff purchased XRP from Defendants and sold that XRP at a loss. Compl. ¶ 190.

4          Defendants' next argument with respect to "strict privity" is yet another attempt to impose a

5  non-existent pleading requirement. As *Viterbi* made clear, the level of privity required depends "on

6  what remedy is available against the primary violator of the statute." *Moss v. Kroner*, 197 Cal. App.

7  4th 860, 875 (Cal. Ct. App. 2011). "While strict privity may not be required when a party can sue for

8  damages, . . . privity is required when a party is suing for rescission." *Id.* at 876. Defendants cite

9  *Bowden v. Robinson*, 67 Cal. App. 3d 705, 712 (Cal. Ct. App. 1977), for the "immediate purchaser"

10 language, but in the next sentence *Bowden* acknowledges that the privity requirement comes "with

11 some exceptions," such as when monetary damages are sought. *In re Am. Principals Holdings, Inc.*

12 *Sec. Litig.*, M.D.L. No. 653, 1987 WL 39746, at *10 (S.D. Cal. July 9, 1987), stands for the

13 unremarkable proposition that privity is required to be alleged with the statutory seller, and here even

14 Defendants acknowledge that Plaintiff alleged that he "purchased XRP securities from Defendants."

15 Mot. at 16. Finally, *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1063 (N.D. Cal. 2013), was not

16 concerned with claims under sections 25110 and 25504, and the court actually approved of the finding

17 in *Moss*, 197 Cal. App. 4th at 876, 879, that in enacting "control person" liability in section 25504, the

18 California legislature made clear that contractual "privity" between the plaintiff and secondary actors

19 was not required. *See also Openwave Systems, Inc. v. Fuld*, No. C 08–5683 SI, 2009 WL 1622164

20 (N.D. Cal. June 6, 2009) ("[T]he Court finds no such requirement in the language of the statute, and

21 agrees with those district courts that have held that strict privity is not required.").[9]

22         In any event, even if not required, Plaintiff satisfactorily pleaded both an "issuer transaction"

23 and "privity" when he alleged that "Defendants . . . sell significant quantities of XRP ***directly*** to the

24 general public on cryptocurrency exchanges," Compl. ¶ 30 (emphasis added), and that he purchased

25 XRP from Defendants on those exchanges, *id.* at ¶ 13, thereby allowing a reasonable inference that

26

27 [9] With respect to Defendants Ripple Labs, Inc. and Garlinghouse, it is clear that "[p]rivity need not exist between a controlling person and the buyer of securities." Marsh & Volk, Practice Under the California Securities Laws, § 14.03[4][c] (citing *In re ZZZZ Best Securities Litig.*, No. CV 87-3574 RSWL, 1990 WL 132715, at *17–18 (C.D. Cal. 1990)).

28

Plaintiff purchased XRP ***directly*** from Defendants in an "issuer transaction."

Under Defendants' own proffered test, Plaintiff also adequately pleaded that Defendants made an offer to sell XRP in California.  Citing *Konik v. Time Warner Cable*, No. CV 07–763 SVW (RZx), 2009 WL 10681970, at *4 (C.D. Cal. Dec. 2, 2009), Defendants suggest that if Plaintiff is able to allege an "advertisement" by Defendants that "invites performance of a specific act without further communication and leaves nothing for negotiation," such would suffice as a plausible allegation of an offer in California.  Mot. at 16–17.  Plaintiff did precisely that, in alleging, for example, that Defendants devoted "an entire section of [the Ripple] website dedicated to providing advice on 'How to Buy XRP.'"  Compl. ¶ 43.  Not only did this advertising section of the website "provide[] links to exchanges," it also provided "instructions on 'how to buy XRP' on those exchanges."  *Id.* at ¶¶ 43, 135.  California courts have held that an "advertisement" or other marketing material such as a "notice disseminated to the public at large" "constitute offers where they invite the performance of a specific act without further communication and leave nothing for negotiation."  *See Konik*, 2009 WL 1081970, at *4; *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271–72 (Cal. 2001). Here, because the alleged website, instructions, hyperlinks, and "buying guide" invite—indeed, ***instruct***—investors on where and how to buy XRP, such marketing material  can be interpreted to be an "offer" because it enabled and facilitated a purchase, and performing its terms is "all that is necessary to accept the offer and conclude the bargain."  *Donovan*, 26 Cal. 4th at 272.  Because the corporate Defendants each have their principal places of business in California, and Defendant Garlinghouse resides in San Mateo, California, Compl. ¶¶ 14–16, a reasonable inference can be made that the advertised XRP were offered for sale in California.  *Id.* at ¶¶ 186, 197.

Finally, Defendants launch no substantive attack on Plaintiff's "control person" liability claim under section 25504 other than to state that it is predicated upon a claim of primary liability.  For the foregoing reasons, the Complaint adequately states a claim for section 25504 control person liability against Defendants Ripple Labs, Inc. and Garlinghouse.  *See* Section III.B.3 above.

1    **2.      Plaintiff Adequately Alleged A Misrepresentation Claim Under Section**

2    **25401.**

3         Defendants next argue that Plaintiff has failed to allege that any of the untrue or misleading

4    statements Defendants made "were in any way related to [Plaintiff's] purchase of XRP." Mot. at 18.[10]

5    There is no requirement that any alleged misstatements be made directly ***to Plaintiff*** in the purchase

6    or sale of securities, and Defendants fail to cite any law supporting this argument on this issue. Rather,

7    Defendants' cases require only that the alleged misstatements generally be made ***about*** the securities

8    transactions at issue. *See Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th

9    226, 249 (Cal. Ct. App. 2007); *SIC Metals, Inc. v. Hyundai Steel Co.*, 2018 WL 6842958, at *5 (C.D.

10   Cal. Nov. 14, 2018); *Mausner v. Marketbyte LLC*, No. 3:12-CV-2461-JM (NLS), 2013 WL 12073832,

11   at *10 (S.D. Cal. Jan. 4, 2013) ("To adequately plead that Defendants' misrepresentations and

12   omissions were made 'in connection with the purchase or sale of a security,' Plaintiff must plead facts

13   demonstrating that the statements or omissions 'coincided' with the purchase or sale.") (citations

14   omitted).

15        A majority, if not all, of the alleged misstatements made by Defendants were statements made

16   "in connection with," generally about or relate to, or "coincide with" offers of XRP. *See generally*

17   Compl. ¶¶ 42–120 (excerpts of Defendants' tweets, website contents, press releases, and interviews).

18   Moreover, to the extent they are considered "offers for sale," the alleged misstatements are also

19   "directed at Plaintiff or made in the course of negotiating with him," as Defendants acknowledge.

20   Mot. at 18; *see* Compl. ¶¶ 43, 135. Further, Defendants' reliance on *Mausner* is misplaced because

21   the Complaint alleges numerous misstatements made at or around the time of Plaintiff's purchase of

22   XRP. *Mausner*, 2013 WL 12073832, at *10 (finding "purchase or sale in connection with

23   requirement" unmet because some alleged "communications were sent after [Plaintiff's] purchases,"

24   there are no allegations that "Defendants made misrepresentations prior to [Plaintiff's] purchase of

25   Shandong securities," and "Plaintiff's purchase of STS stock [was] well over four months after he

26   received the last alleged misrepresentations").

27

28   ----

     [10] Defendants also rehash the same flawed arguments that both "privity" and an "in-state offer" are required to be pleaded for a claim under section 25401. Mot. at 17.

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CONSOLIDATED COMPLAINT**

1    Finally, assuming that Plaintiff's section 25401 claim sounds in fraud, Defendants accuse

2  Plaintiff of failing to plead his section 25401 claim with particularity under Fed.R.Civ.P. 9(b).  Mot.

3  at 18–19.  But on its face, section 25401 "encompasses both actions for fraud and for negligent

4  misrepresentation in the sale of securities."  *Cutler v. Rancher Energy Corp.*, No. SACV 13-00906-

5  DOC, 2014 WL 1153054, at *5–6 (C.D. Cal. Mar. 11, 2014); *see also* Apollo, 158 Cal. App. 4th at

6  249 (Cal. Ct. App. 2007) (describing section 25401 as one of "several sections that define fraudulent

7  and prohibited practices in the purchase and sale of securities"); *Lynch v. Cook*, 148 Cal. App. 3d

8  1072, 1087 (Cal. Ct. App. 1983) (referring to section 25401 as "statutory negligent misrepresentation"

9  and explaining that it "governs negligent misrepresentation in securities sales").  As such, categorical

10  "application of Rule 9(b) to this statutory cause of action would be inappropriate for the same reasons

11  that it would be inappropriate if applied to common law actions for negligent misrepresentation."

12  *Cutler*, 2014 WL 1153054, at *5–6; *see Openwave Sys. Inc. v. Fuld*, No. 08–5683, 2009 WL 1622164

13  at *4 (N.D. Cal. June 6, 2009) (finding that cause of action for violation of section 25401 need not

14  comply with Rule 9(b)'s heightened pleading standard).

15    Nonetheless, Plaintiff has pleaded with particularity Defendants' misstatements that subject

16  them to section 25401 liability, including the who, what, when, and where such misstatements were

17  made, to the extent such details are available pre-discovery.  For example, the Complaint alleges:

18  • Ripple Labs, Inc. claims that "XRP has utility—like currency—in its use as a
19    'bridge currency' for international payments."  Although the "when" and "where"
      of this misstatement are not alleged, discovery will reveal that the claim that "XRP
20    has a utilitarian purpose" is false, especially given the allegation that "the vast
      majority of [XRP] is not used for bridging international transaction" and rather,
21    purely for "investment purpose." Compl. ¶ 41.

22  • Another utilitarian claim made by Defendant Ripple Labs, Inc. on or about
23    December 21, 2017 on Twitter that "XRP's long-term value is determined by its
      utility—including its ability to help financial institutions source liquidity for
24    payments into and out of emerging markets."  *Id*. at ¶ 45.  This claim is capable of
      objective verification with the benefit of discovery.

25  • Defendant Garlinghouse stated in a BNN interview on December 14, 2017 that
26    XRP is "solving a real problem" and has a "real utility," when that statement is
27    false, and capable of objective verification.  *Id*. at ¶ 49.

28

19          Case No. 4:18-cv-06753-PJH

- Defendant Garlinghouse tweeted that "Ripple is sitting on close to $80 million and could cash out hundreds of millions per month – but it isn't" on January 17, 2018, when that statement, capable of objective verification, was not true. *Id*. at ¶¶ 52–53.

- On April 26, 2017, Defendant Ripple Labs, Inc. tweeted that it "welcome[d] 10 additional customers to our #blockchain #payments #network," misleading the investing public into thinking that the XRP Ledger was being adopted, rather than the Ripple Enterprise Solution.  Defendant Ripple Labs, Inc. tweeted this misleading statement, capable of objective verification, in order to drive demand for XRP. *Id*. at ¶ 62.

- Negligent or fraudulent misrepresentations by various Defendants on dates certain were made with the intent to mislead and/or induce the public to invest in XRP. *Id*. at ¶¶ 63–68, 70, 73–74, 102–03, and 149.  These material statements are capable of objective verification, and may be proven false with the benefit of discovery, and as third parties have stated and attempted to prove.  *See id*. at ¶¶ 71–72. Furthermore, the above allegations should be read in the content of paragraphs 55 through 59, which allege that Defendants' advertising and social media postings conflate adoption and use of Ripple products such as Ripple Enterprise Solutions with adoption and use of XRP were allegedly all made in order to drive demand (and price) for XRP.

- A director of Defendant Ripple Labs, Inc. and Defendant Garlinghouse falsely told the public that XRP does not meet the definition or standards to be "a security," intending to assuage concerns by the public in investing in XRP.[11] *Id*. at ¶¶ 96–97. *Employers Ins. of Wausau v. Musick, Peeler, & Garrett*, 871 F. Supp. 381, 390 (S.D. Cal. 1994) (scienter, including intent, knowledge, or condition of the mind, need not be pleaded with particularity under Rule 9(b)) (citing *Walling v. Beverly Enter.*, 476 F.2d 393, 396 (9th Cir. 1973)).

---

[11] In arguing that XRP is not a "security," Defendants misstate the *Howey* test.  Mot. at 21 n.19.  Under *Howey*, an arrangement constitutes an "investment contract" (and thus "a security" under Section 2(a)(1) of the Securities Act of 1933) when there is: (1) an investment of money; (2) in a common enterprise; (3) with an expectation of profits; (4) which are derived solely from the efforts of the promoters or third parties.  *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).  Accordingly, contrary to Defendants' assertion, "an investment in Ripple," a "common enterprise between Ripple and XRP purchasers," and a "promise that Ripple would help generate profits for XRP holders" are not required.  *See* Mot. at 21 n.19.  The elements of *Howey* are: whether there's been an investment of money (e.g., in XRP); whether the issuer of the security is in a common enterprise (not whether the investors were in a common enterprise with the issuer); and whether there is a reasonable expectation of profit from the investment (not whether there is any "promise" of profit by the issuer to investors). *Howey*, 328 U.S. at 298–99.

1
2

       **3.**      **Plaintiff Sufficiently Stated a Material Assistance Claim Under Section 25504.1.**

3

4

5

6

7

8

9

10

11

12

13

      Defendants' contention that Plaintiff failed to plead a material assistance claim under section 25504.1 are also unfounded.  *See* Mot. at 22.  Not only is a section 25504.1 claim fully supported and based on a violation of section 25401, but Plaintiff has specifically identified in the Complaint how and when each of Defendants Ripple Labs, Inc. and Garlinghouse has assisted in selling or offering to sell securities by means of false or misleading statements made with the intent to induce the purchase of XRP.  *See* Section III.C.2.[12]  Each of their tweets and interview excerpts are directed to Plaintiff and the public at large through their use of the Internet and media as a "megaphone."  In addition, Plaintiff has pleaded his reliance on these false or misleading statements about the "adoption of XRP by financial institutions and banks" which "dr[o]ve demand for XRP."  Compl. ¶¶ 13, 219.  "Had the Lead Plaintiff known the truth about XRP, he would not have purchased XRP and/or paid as much for it."  *Id.*

14

15

16

17

18

19

20

21

22

23

      Defendants appear to suggest incorrectly that Plaintiff must plead facts to support an inference that Defendants "intended to deceive or defraud" with their material misstatements regarding XRP. Mot. at 22–23.  But "[s]cienter does not need to be pled with particularity; Rule 9(b) does not 'require any particularity in connection with an averment of intent, knowledge or condition of the mind.'" *Employers Ins. of Wausau*, 871 F. Supp. at 390 (S.D. Cal. 1994) (citation omitted); *see also BayStar Capital Mgmt. LLC v. Core Pac. Yamaichi Int'l (H.K.) Ltd.*, No. CV 05-1091 ABC, 2007 WL 9711373, at *4 (C.D. Cal. Apr. 16, 2007) (reliance and scienter need not be shown for section 25401 and 25504.1 claims).  Accordingly, Plaintiff's allegation that "Defendants Ripple Labs, Inc. and Garlinghouse materially assist[ed], and/or aid[ed] and abet[ted] [the other Defendants] in violation of Section 25401, with intent to deceive or defraud," is sufficient.  *See id.*; Compl. ¶ 193.[13]

24

25

26

27

28

---

[12] Notably, section 25504 expressly subjects all of the principal executive offers and directors of a corporation to collateral liability based solely on status without requiring any proof of control. Marsh & Volk, Practice Under the California Securities Laws, § 14.03[4][c] (citing *Hellum v. Breyer*, 194 Cal. App. 4th 1300, 1310–14 (Cal. Ct. App. 2011)).

[13] Plaintiff's section 25401 state law claim is not subject to the pleading requirements of the PSLRA.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CONSOLIDATED COMPLAINT

**D.**     **Plaintiff Sufficiently States Claims Under California Consumer Protection Statutes.**

    **1.**     **Plaintiff's Consumer Protection Claims May Co-Exist with Securities Allegations.**

There is a split of authority in California over the UCL's application to securities transactions. Defendants cite *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 788 (Cal. Ct. App. 2004), for the proposition that California's UCL does not apply to securities transactions.  The reach of that ruling, however, is far from certain.  In *Bowen*, the California Court of Appeal analogized the UCL to the Federal Trade Commission ("FTC") Act and observed that the FTC historically has not viewed the FTC Act to be applicable to securities transactions.  *Id.* at 787–90.  The Court of Appeal then relied on a Ninth Circuit case, *Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388 (9th Cir. 1988) (applying Hawaii law), to conclude that consumer protection statutes like the UCL do not apply to securities transactions.  *Id.* at 787.

But a later-decided case by the Court of Appeal, *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688 (Cal. Ct. App. 2007), distinguishes *Bowen* as it applies to UCL claims that can be said to "not arise from any stock transactions between the parties," but rather, arise from something else, such as the allegedly defamatory statements made by the defendant.  *Id.* at 715.  Also distinguishing *Spinner*, the Court of Appeal held that unlike the Hawaii consumer protection statute, "the California UCL contains no directive to interpret our consumer protection statute consistently with the FTC Act" and the "UCL contains no language supporting an exclusion for securities." *Id.* at 715–16 (citing *Roskind v. Morgan Stanley Dean Witter & Co.*, 80 Cal. App. 4th 345, 355 (Cal. Ct. App. 2000)).  The court concluded that "the sweeping language of the UCL is intended to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur."  *Id.* at 716 (citing *Cel-Tech Comm'c'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 181 (Cal. 1999)).

Other courts, including those in this district, agree with *Overstock.com* and have since interpreted *Bowen* narrowly.  *See Charles Schwab*, 257 F.R.D. 534 (denying motion to dismiss section

17200 claim based on *Bowen* because "[t]he reach of the [*Bowen*] ruling . . . is far from certain."); *Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390, 399 n.8 (Cal. 2013) (questioning "the scope and merits" of the holding in *Bowen*); *Strigliabotti v. Franklin Res., Inc.*, No. C 04-00883 SI, 2005 WL 645529, at \*10 (N.D. Cal. Mar. 7, 2005) ("The California courts have expressly held that federal securities laws do not preempt Section 17200 generally.").

Notably, although Defendants make the same argument about the FAL, they provide no precedent or rationale for doing so, and *Bowen* did not involve a FAL claim.  Indeed, Defendants have failed to cite a single case that found the FAL inapplicable to the sale of securities.[14]   Thus, at minimum, Plaintiff's FAL claim, even if it relates to or depends upon the offer, purchase, or sale of securities, should not be dismissed based on *Bowen*.  To the contrary, the logic of *Overstock.com* and its progeny demonstrate why Plaintiff's FAL claim should not be dismissed.

A plaintiff is, of course, entitled to "plead alternative theories of liability, even if those theories are inconsistent or independently sufficient."  *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999).  "Further, a party may allege inconsistent factual allegations."  *Id.*

Although Defendants have denied that XRP is a security, Mot. at 1, 21 & n.19, Defendants nonetheless ask this court to dismiss Plaintiff's UCL and FAL claims with prejudice because they say these statutes "do[] not apply to securities transactions."  *Id.* at 23–24.  Defendants cannot have it both ways.  Not only is pleading in the alternative specifically allowed, but if the Court (or a jury) were to agree with Defendants that XRP is not a "security" or "investment contract," then the argument for dismissing the Plaintiff's UCL or FAL claims evaporates.  This reason alone explains why these claims should not be dismissed.

### 2.   No Safe Harbor Is Triggered to Bar Plaintiff's Consumer Protection Claims.

Defendants argue that because the Securities Act has a three-year statute of repose, it acts as a "safe harbor" under the FAL and UCL against Plaintiff's consumer protection based claims insofar as

---

[14] Because XRP is not a "covered security" within the meaning of the Securities Act of 1933, state law claims relating to the purchase and sale of XRP are not preempted. 15 U.S.C. 77r(a)-(b).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CONSOLIDATED COMPLAINT

1   such claims depend upon the Securities Act claims.  Mot. at 24.  Defendants seem to overstate any

2   overlap between Plaintiff's federal securities claims and Plaintiff's FAL and UCL claims.

3          The Securities Act's statute of repose bars actions based on the ***offer for sale*** of unregistered

4   securities more than three years after an offering; it does not bar actions related to untrue or misleading

5   ***statements and omissions*** (which happen to be related to securities), which are the crux of Plaintiff's

6   FAL and UCL claims.[15]  Indeed, Plaintiff's California consumer protection claims are independent of

7   whether XRP is a security—these claims are not predicated upon the proof of Plaintiff's securities law

8   claims.  Accordingly, because their foci is not coextensive or predicated on the "same conduct," the

9   statute of repose does not trigger the safe harbor provisions of California's FAL and UCL claims.

10          **3.     Plaintiff Pleaded the UCL and FAL Claims with the Required**

11          **Particularity.**

12          Acknowledging that a heightened pleading requirement applies generally to UCL and FAL

13   claims, this Court has cautioned that Fed.R.Civ.P. 9(b)'s particularity requirements "must be read in

14   harmony with the requirement to make out a 'short and plain' statement of the claim" and is "satisfied

15   if the complaint 'identifies the circumstances constituting fraud so that a defendant can prepare an

16   adequate answer from the allegations."  *Wolph v. Acer Am. Corp.*, 2009 WL 2969467, at *5 (N.D. Cal.

17   Sept. 14, 2009) (citing *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).

18   Plaintiff's fulsome allegations meet this standard.

19          With respect to Defendants' assertion that Plaintiff failed to particularly allege any false or

20   misleading statement upon which the UCL and FAL claims are based, Section III.C.2 above identifies

21   specific statements which meet Rule 9(b)'s pleading standard.

22          With respect to Defendants' complaints regarding Plaintiff's allegations of reliance on the

23   misrepresentations or omissions at issue, the exacting particularity Defendants advocate is not

24   required.  Defendants' cited case law is unpersuasive.  *Great Pac. Sec. v. Barclays Capital, Inc.*, 743

---

25   [15] Even so, courts have recognized that "[v]irtually any law—federal, state or local—can serve as a
26   predicate for an action under the UCL."  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094
     (N.D. Cal. 2007) (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001)).
27   And the UCL claim is subject only to the four-year statute of limitations in Cal. Bus. & Prof. § 17208,
     irrespective of the limitation periods of the underlying law upon which the UCL claim is based.  *See*
28   *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178–79 (Cal. 2000).

1  Fed. App'x 780, 783 (9th Cir. 2018), is an unpublished opinion that fails to discuss what an allegation

2  of "actual reliance" should include. And *Hall v. Sea World Entm't, Inc.*, 2015 WL 9659911, at *4–5

3  (S.D. Cal. Dec. 23, 2015), is distinguishable from the allegations at issue here because in that case, the

4  challenged complaint "merely alleges that SeaWorld was engaging in the alleged false advertising

5  when the named plaintiffs purchased their tickets" without any other allegation of reliance.[16]

6  **IV.     CONCLUSION**

7         Defendants' motion to dismiss should be denied.  Should the Court grant the motion, however,

8  dismissal should be without prejudice and Plaintiff given leave to amend.  *Bare Escentuals*, 745 F.

9  Supp. 2d at 1083; *Shankar v. Imperva*, Inc., No. 14-CV-1680-PJH, 2015 WL 5530175, at *1 (N.D.

10 Cal. Sept. 17, 2015).  Not only is leave to amend freely given under Rule 15, but Defendants have not

11 shown that Plaintiff cannot make appropriate and material amendments to cure any issues raised in

12 their motion.

13 Dated: November 4, 2019                    Respectfully submitted,

14

15                                            */s/ Oleg Elkhunovich*
                                              Marc M. Seltzer
16                                            Steven G. Sklaver
                                              Oleg Elkhunovich
17                                            Meng Xi
                                              SUSMAN GODFREY L.L.P.
18                                            1900 Avenue of the Stars, 14th Floor
                                              Los Angeles, CA 90067
19                                            Telephone: (310) 789-3100
                                              Facsimile: (310) 789-3150
20
                                              James Q. Taylor-Copeland
21                                            TAYLOR-COPELAND LAW
                                              501 W. Broadway, Suite 800
22                                            San Diego, CA 92101
                                              Telephone: (619) 400-4944
23                                            Facsimile:  (619) 566-4341

24                                            Counsel for Lead Plaintiff Bradley Sostack

25

26

27 [16] Under the UCL and FAL, there is no requirement to plead or prove reliance by absent class members, *In re Tobacco II Cases*, 46 Cal. 4th 298, 324–26 (2009), and a showing of scienter is not required at
28 all. *Cortez*, 23 Cal. 4th at 181.