Kathleen R. Hartnett (SBN 314267)
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:     (415) 293-6800
Facsimile:     (415) 293-6899
Email:         khartnett@bsfllp.com

Damien J. Marshall (Admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone:     (212) 446-2300
Facsimile:     (212) 446-2350
Email:         dmarshall@bsfllp.com

Andrew J. Ceresney (Admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone:     (212) 909-6000
Facsimile:     (212) 909-6836
Email:         aceresney@debevoise.com

*Attorneys for Defendants Ripple Labs Inc.,*
*XRP II, LLC, and Bradley Garlinghouse*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re RIPPLE LABS INC. LITIGATION, | Case No. 18-cv-06753-PJH |
| This Document Relates To:<br>All Actions | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:   January 15, 2020<br>Time:  9:00 a.m.<br>Place:  Courtroom 3<br>Judge: Hon. Phyllis J. Hamilton<br><br>Consolidated Complaint filed:  August 5, 2019 |

1

## TABLE OF CONTENTS

2  I.     INTRODUCTION ....................................................................................................1

3  II.    PLAINTIFF'S FEDERAL SECURITIES CLAIMS FAIL (Counts 1, 2) ..................1

4         A.    Plaintiff's Securities Act Claims Are Barred By The Act's Statute Of Repose ..................1

5               1.    The "First-Offered" Rule Is Well-Settled Law .........................................................1

6               2.    The "First-Offered" Rule Requires Dismissal Of Plaintiff's Claims.......................3

7               3.    Plaintiff Cannot Allege "New XRP" Or That It Reset The Statute Of Repose ......4

8               4.    Plaintiff's Remaining Statute Of Repose Arguments Fail ......................................6

9         B.    Plaintiff's Securities Act Claims Fail Because He Has Not Alleged XRP Was
10              Purchased In An "Initial Distribution" ..................................................................7

          C.    Plaintiff's Securities Act Claims Fail Because He Has Not Alleged Defendants
11              Are Statutory Sellers .............................................................................................8

12              1.    Plaintiff Fails To Allege That Defendants Passed Title To Him ...........................8

13              2.    Plaintiff Fails To Allege That Defendants Solicited Plaintiff's XRP Purchases .....8

14        D.    Plaintiff Fails To State A Claim Under Section 15.........................................................10

15 III.   PLAINTIFF'S CALIFORNIA CORPORATIONS CODE CLAIMS FAIL (Counts 3–5) ...........11

16        A.    Plaintiff Fails To Adequately Allege An Issuer Transaction, Privity, Or In-State
                Offer As Required Under Sections 25110, 25503, And 25504 (Counts 3 and 5)..............11
17
          B.    Plaintiff Fails To Adequately Allege Any Misrepresentation Connected To His
18              XRP Purchases (Count 4) ......................................................................................12

19        C.    Plaintiff Fails To Adequately Allege A Material Assistance Claim (Count 4) ...............14

20 IV.    PLAINTIFF'S CALIFORNIA CONSUMER PROTECTION CLAIMS FAIL
          (Counts 6, 7)........................................................................................................14
21
          A.    Plaintiff's FAL And UCL Claims Impermissibly Concern "Securities
22              Transactions" .......................................................................................................14

23        B.    Plaintiff's Claims Are Barred By The FAL And UCL's "Safe Harbor" ..........................15

24        C.    Plaintiff's FAL And UCL Claims Are Not Pleaded With Particularity ...........................15

25 V.     CONCLUSION...................................................................................................15

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Am. Pipe & Constr. Co. v. Utah*
    414 U.S. 538 (1974)......................................................................... 2, 4

*Apollo Capital Fund, LLC v. Roth Capital Partners, LCC*
    158 Cal. App. 4th 226 (2007) .............................................................. 12

*Ardente, Inc. v. Shanley*
    2010 WL 546485 (N.D. Cal. Feb. 10, 2010) ................................................. 4

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)............................................................................ 8

*Bains v. Moores*
    172 Cal. App. 4th 445 (2009) .............................................................. 11

*Balestra v. ATBCOIN LLC*
    380 F. Supp. 3d 340 (S.D.N.Y. 2019) ..................................................... 10

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007)............................................................................ 8

*Blue Chip Stamps v. Manor Drug Stores*
    421 U.S. 723 (1975)............................................................................ 7

*Bowden v. Robinson*
    67 Cal. App. 3d 705 (1977) ................................................................. 11

*Bowen v. Ziasun Tech.*
    116 Cal. App. 4th 777 (2004) .......................................................... 14, 15

*Bradford v. Moench*
    809 F. Supp. 1473 (D. Utah 1992)........................................................... 5

*Cal. Pub. Emp. Ret. Sys. v. ANZ Sec., Inc.*
    137 S. Ct. 2042 (2017)................................................................... 2, 4, 7

*Capri v. Murphy*
    856 F.2d 473 (2d Cir. 1988) ............................................................... 10

*CTS Corp. v. Waldburger*
    134 S. Ct. 2175 (2014)........................................................................ 2

*Donovan v. RRL Corp.*
    26 Cal. 4th 261 (2001) ...................................................................... 12

*FT Travel-New York, LLC v. Your Travel Ctr., Inc.*
    112 F. Supp. 3d 1063 (C.D. Cal. 2015) .................................................... 15

*Gustafson v. Alloyd Co.*
    513 U.S. 561 (1995)............................................................................ 7

*Hanson v. Johnson*
2003 WL 21639194 (D. Minn. June 30, 2003) ........................................................... 3

*Hudson v. Capital Mgmt. Int'l, Inc.*
1982 WL 1384 (N.D. Cal. Jan. 6, 1982) .............................................................. 2, 3

*In re Am. Principals Holdings, Inc. Sec. Litig.*
1987 WL 39746 (S.D. Cal. Jul. 9, 1987) ................................................................ 11

*In re Bare Escentuals, Inc. Sec. Litig.*
745 F. Supp. 2d 1052 (N.D. Cal. 2010) .................................................................. 10

*In re Bestline Prods. Sec. & Antitrust Litig.*
1975 WL 386 (S.D. Fla. Mar. 21. 1975) .................................................................. 3

*In re Century Aluminum Co. Sec. Litig.*
729 F.3d 1104 (9th Cir. 2013) ................................................................................ 8

*In re Charles Schwab Corp. Sec. Litig.*
257 F.R.D. 534 (N.D. Cal. 2009) ........................................................................... 10

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*
932 F. Supp. 2d 1095 (C.D. Cal. 2013) ................................................................... 9

*In re Daou Sys., Inc.*
411 F.3d 1006 (9th Cir. 2005) ................................................................................ 9

*In re Merrill Lynch Auction Rate Sec. Litig.*
2012 WL 1994707 (S.D.N.Y. June 4, 2012), *aff'd sub nom. Iconix Brand Grp. Inc. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 505 F. App'x 14 (2d Cir. 2012) ...................... 3

*In re Metro. Sec. Litig.*
532 F. Supp. 2d 1260 (E.D. Wash. 2007) ............................................................... 10

*In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Sec. Litig.*
636 F. Supp. 1138 (C.D. Cal. 1986) ....................................................................... 3

*In re Tezos Sec. Litig.*
2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ......................................................... 10

*In re Violin Memory Sec. Litig.*
2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) .......................................................... 9

*In re Wells Fargo Mort.-Backed Certificates Litig.*
2010 WL 4117477 (N.D. Cal. Oct. 19, 2010) .......................................................... 3

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*
1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ...................................................... 14

*Kearns v. Ford Motor Co.*
567 F.3d 1120 (9th Cir. 2009) .............................................................................. 15

*Konik v. Time Warner Cable*
2009 WL 10681970 (C.D. Cal. Dec. 2, 2009) ...................................................... 12

iv

*Mausner v. Marketbyte LLC*
   2013 WL 12073832 (S.D. Cal. Jan. 4, 2013).................................................................. 12, 13

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*
   2011 WL 4389689 (C.D. Cal. May 5, 2011) ....................................................................... 9

*Mirkin v. Wasserman*
   5 Cal. 4th 1082 (1993) ........................................................................................................ 11

*Moore v. Kayport Package Express*
   885 F.2d 531 (9th Cir. 1989) ............................................................................................. 10

*Overstock.com, Inc. v. Gradient Analytics, Inc.*
   151 Cal. App. 4th 688 (2007) ....................................................................................... 14, 15

*P. Stolz Family P'ship, L.P. v. Daum*
   355 F.3d 92 (2d Cir. 2004) ..................................................................................... 2, 3, 4, 6

*Pinter v. Dahl*
   486 U.S. 622 (1988)......................................................................................................... 9, 10

*Rosenzweig v. Azurix Corp.*
   332 F.3d 854 (5th Cir. 2003) ............................................................................................... 9

*Rubicon Global Ventures, Inc. v. Chongqing Zongshen Grp. Import/Export Corp.*
   2010 WL 4812860 (D. Or. Nov. 19, 2010)........................................................................ 4

*S.F. Residence Club, Inc. v. Amado*
   773 F. Supp. 2d 822 (N.D. Cal. 2011) .............................................................................. 15

*Schneider v. Cal. Dep't of Corr.*
   151 F.3d 1194 (9th Cir. 1998) ............................................................................................. 5

*Sharp v. Arena Pharm., Inc.*
   2013 WL 12094819 (S.D. Cal. Mar. 29, 2013) ............................................................... 14

*SIC Metals, Inc. v. Hyundai Steel Co.*
   2018 WL 6842958 (C.D. Cal. Nov. 14, 2018)................................................................. 12

*Siegal v. Gamble*
   2016 WL 1085787 (N.D. Cal. Mar. 21, 2016).................................................................. 15

*Siegal v. Gamble*
   2016 WL 3648503 (N.D. Cal. July 7, 2016)..................................................................... 13

*Smith v. Cooper/T. Smith Corp.*
   846 F.2d 325 (5th Cir. 1988) ........................................................................................... 5, 6

*Stephenson v. Deutsche Bank AG*
   282 F. Supp. 2d 1032 (D. Minn. 2003)............................................................................ 10

*Takiguchi v. MRI Int'l, Inc.*
   47 F. Supp. 3d 1100 (D. Nev. 2014)................................................................................ 5, 6

*Turnage v. Old Dominion Freight Line, Inc.*
   2013 WL 2950836 (N.D. Cal. June 14, 2013) ............................................................ 11, 12

*United States v. Gainey*
  380 U.S. 63 (1965)................................................................................................ 5

*United States v. Naftalin*
  441 U.S. 768 (1979).............................................................................................. 7

*Vanguard Specialized Funds v. VEREIT Inc.*
  2016 WL 5858735 (D. Ariz. Oct. 3, 2016)........................................................ 9

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003) ........................................................................... 13

*White v. Chevron Corp.*
  2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .................................................. 8

*Youngers v. Virtus Inv. Partners, Inc.*
  195 F. Supp. 3d 499 (S.D.N.Y. 2016) ............................................................... 10

**Codes & Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................... 14

Cal. Bus. & Prof. Code § 17500 ............................................................................... 14

Cal. Corp. Code § 25110 ............................................................................................ 11

Cal. Corp. Code § 25401........................................................................................ 12, 13

Cal. Corp. Code § 25503........................................................................................... 11

Cal. Corp. Code § 25504........................................................................................ 11, 14

Cal. Corp. Code § 25504.1 ........................................................................................ 14

Securities Act § 12(a)(1), 15 U.S.C. § 77*l*(a)(1)................................................ 7, 8, 10

Securities Act § 12(a)(2), 15 U.S.C. § 77*l*(a)(2)...................................................... 7

Securities Act § 13, 15 U.S.C. § 77m .......................................................... passim

Securities Act § 17(a), 15 U.S.C. § 77q.................................................................... 7

**Rules**

Fed. R. Civ. P. 9(b) ................................................................... 12, 13, 14, 15

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 18-cv-06753-PJH

## I.   INTRODUCTION

Plaintiff's Complaint is self-defeating: his own allegations as to when XRP was first offered for sale and how he purchased XRP require dismissal of his claims.  Plaintiff alleged—and in his opposition now concedes or ignores—dispositive facts that bar his claims:

- All XRP were created in 2013 and are entirely fungible, Compl. ¶¶ 2, 128;
- Defendants "sold XRP to the general public" in 2013, 2014, and 2015, Compl. ¶ 25, Opp. 6–8, in what Plaintiff told this Court was a "never-ending initial coin offering (ICO)," Dkt. 45 at 2;
- By 2015, more than 30 billion XRP were already in circulation, Compl. ¶¶ 25–27;
- Plaintiff purchased XRP on an exchange in January 2018 from an unknown third party, at a time when Defendant Ripple's sales accounted for less than one-tenth of one percent of all exchange-based XRP sales, Compl. ¶ 13, Opp. 11; and
- Plaintiff filed the instant Complaint in 2019, *infra* 4 n.6.

Plaintiff cannot avoid dismissal by abandoning or ignoring allegations in his Complaint.  Based on his allegations, Plaintiff's federal securities claims are barred by Section 13's statute of repose, which strictly forbids claims brought "more than three years after the security was bona fide offered to the public."  15 U.S.C. § 77m.  Plaintiff's federal and state securities claims also fail because he has not plausibly alleged that he purchased XRP either from Defendants or in an initial offering, as those statutes require.  Finally, Plaintiff's allegations—which pervasively claim that XRP is a security—defeat Plaintiff's state consumer protection law claims, which cannot be predicated on the offer, purchase, and sale of purported securities as a matter of law.  Because none of these deficiencies can be remedied through amendment, Plaintiff's claims must be dismissed with prejudice.[1]

## II.   PLAINTIFF'S FEDERAL SECURITIES CLAIMS FAIL (Counts 1, 2)

### A.   Plaintiff's Securities Act Claims Are Barred By The Act's Statute Of Repose

Plaintiff raises several arguments as to why the statute of repose should not apply.  Opp. 3–9. Each argument fails, requiring dismissal of Plaintiff's federal securities claims.

#### 1.   The "First-Offered" Rule Is Well-Settled Law

Section 13's three-year statute of repose runs from when a security is "bona fide offered to the public."  15 U.S.C. § 77m.  It has long and widely been understood that the three-year repose period

---

[1] Plaintiff contends that XRP is a security under the *Howey* test.  *See* Opp. 1.  XRP is not a security, Mot. 21 n.19, but that is irrelevant for purposes of this motion.  Even if XRP *were* a security, Plaintiff's claims still fail as a matter of law.

runs from when a security is ***first*** offered to the public for sale. Mot. 5–10. As the Second Circuit has explained, the "***vast*** majority of courts have . . . found that the three-year period begins when the security is ***first*** bona fide offered." *P. Stolz Family P'ship, L.P. v. Daum*, 355 F.3d 92, 100–01 (2d Cir. 2004) (emphasis in original) (citing eighteen cases applying the "first-offered" rule). So have "most leading scholars" of securities law, *id.*, and the U.S. Securities and Exchange Commission, *id.* at 106 (explaining the SEC has "recognized Section 13 as meaning first-offered" for nearly eighty years). The near-universal adoption of this rule has shaped the expectations of the entire securities industry.[2]

Plaintiff does not dispute the "first-offered" rule's primacy. Opp. 4. Instead he obfuscates, claiming that this settled rule "cannot be squared" with a snippet of dicta from a recent Supreme Court decision in which the "first-offered" rule was not at issue. *See Cal. Pub. Emp. Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017). But this misleads. In *ANZ*, the Supreme Court considered only the discrete question whether Section 13's statute of repose could be equitably tolled under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). The Supreme Court rejected the tolling defense because the statute of repose "give[s] a defendant a complete defense to any suit after a certain period." *ANZ*, 137 S. Ct. at 2049. The Court did ***not*** consider the applicability or soundness of the "first-offered" rule because it was undisputed that the statute of repose had ***already run*** on plaintiff's claims. *Id.* at 2048. Thus, the Court's passing reference to the statute of repose running "from the defendant's last culpable act (the offering of the securities)," *id.* at 2049, does not upend the "first-offered" rule. The Supreme Court would not unsettle market expectations and overturn decades of reliance in a case where the question was not presented or briefed, and the views of the SEC were not solicited.[3]

Plaintiff also relies on three decades-old district court decisions, Opp. 4, each of which the Second Circuit in *Stolz* considered and persuasively rejected. 355 F.3d at 102–04. The sole in-circuit case, *Hudson v. Capital Management International, Inc.*, 1982 WL 1384 (N.D. Cal. Jan. 6, 1982), is not binding on this Court, conflicts with more recent decisions in this District, and has been rejected by

---

[2] As Judge Calabresi explained in his concurrence in *Stolz*, the "first-offered" rule is compelled by Section 13's text and legislative history, even if it may produce inequitable results. 355 F.3d at 106–07. Plaintiff misrepresents Judge Calabresi's opinion. *See* Opp. 5 n.4.

[3] In any event, *ANZ* also does not conflict with the "first-offered" rule. It simply states that the "last culpable act" in the securities context is an "offering." *ANZ*, 137 S. Ct. at 2049. Moreover, the phrase "last culpable act" is not a general standard applicable to all statutes of repose, but is language from a North Carolina statute at issue in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182 (2014), cited in *ANZ*.

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 4:18-cv-06753-PJH

courts in this Circuit.  *See In re Wells Fargo Mort.-Backed Certificates Litig.*, 2010 WL 4117477, at \*3 (N.D. Cal. Oct. 19, 2010) ("The three-year statute of repose bars claims relating to any Offering ***first*** sold or offered for sale before May 28, 2007 . . . ." (emphasis added)); *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Sec. Litig.,* 636 F. Supp. 1138, 1167–68 (C.D. Cal. 1986) (expressly rejecting *Hudson* and holding the "relevant offering under § 13 is the ***first*** offering of the security" (emphasis is original)).  *Hudson* did not even reach the Section 13 question, but dismissed the failure-to-register claims on other grounds.  1982 WL 1384 at \*2–3.  Moreover, *Hudson's* reference to the "last-offered" rule provided no reasoning, cited only a single non-binding decision, and cannot rebut the vast, well-reasoned authority adopting the "first-offered" rule.  *Id.* at \*3 n.3.

### 2. The "First-Offered" Rule Requires Dismissal Of Plaintiff's Claims

Given the settled nature of the "first-offered" rule, Plaintiff pivots to argue that the rule does not apply to an "***ongoing*** bona fide offer."  Opp. 4–5 (emphasis in original).  An "ongoing" offer is more commonly referred to as a "slow offer," and Plaintiff's argument fails because *Stolz* expressly concluded that Congress intended Section 13 to bar claims brought more than three years after such an offering commences.  *Stolz*, 355 F.3d at 101–02 (discussing "slow offers").[4]  Plaintiff's attempt to evade Section 13 by rebranding the "slow offer" as an "***ongoing*** bona fide offer," Opp. 4–5, is wordplay, and in any event is foreclosed by *Stolz.*  *Id.* at 103–04 (explaining that the statute of repose applies to an "***ongoing*** bona fide offer of unregistered securities to the public" (emphasis added)).[5]

Indeed, Plaintiff's own allegations describe the very type of "slow offer" addressed in *Stolz*: Plaintiff has pled that ***all*** XRP were created and "fully generated" in 2013.  Compl. ¶¶ 2, 4; Opp. 7.  Plaintiff has further pled that Defendants "sold XRP to the general public" in 2013, 2014, and 2015, and

---

[4] Plaintiff misrepresents *Stolz* as not addressing the situation of a slow offer.  *See* Opp. 5 & n.4 (citing *In re Bestline Prods. Sec. & Antitrust Litig.*, 1975 WL 386, at \*2 (S.D. Fla. Mar. 21. 1975)).  In language quoted by Plaintiff, *Stolz* acknowledged that a slow offer "is not the situation before us in the present case," but then—in language misleadingly ignored by Plaintiff—*Stolz* went on to specifically conclude that Section 13's application to slow offers "does not violate, as the plaintiffs argue, the 'remedial' purpose of the Act."  *Stolz*, 355 F.3d at 103–04.

[5] Various courts have invoked Section 13 to dismiss claims predicated on "slow offers."  *See, e.g., In re Merrill Lynch Auction Rate Sec. Litig.*, 2012 WL 1994707, at \*4 (S.D.N.Y. June 4, 2012), *aff'd sub nom. Iconix Brand Grp. Inc. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 505 F. App'x 14 (2d Cir. 2012) (dismissing Section 12(a)(1) claims where plaintiff in 2007 purchased securities first offered in 2000); *Hanson v. Johnson*, 2003 WL 21639194, at \*5 (D. Minn. June 30, 2003) (dismissing claim as untimely where securities were purchased in 2001—roughly one year before filing the complaint—but first offered in 1998).

that over 30 billion XRP were in circulation by mid-2015.   Compl. ¶¶ 5, 22–27, 112; Opp. 6–8. Consistent with these allegations, Plaintiff told this Court that Defendants sold "XRP tokens to the general public in a never-ending initial coin offering."   Mot. 8 (quoting Dkt. 45 at 2).   And, finally, Plaintiff concedes this suit was filed in 2019.   Opp. 9 n.7.[6]   Because Plaintiff's Complaint "was filed more than three years after the security was bona fide offered to the public," his federal securities claims are "barred by § 13's statute of repose."   *Stolz*, 355 F.3d at 106.

Even if the Court accepts Plaintiff's unsupported allegations that Defendants made what he refers to as "ongoing multiple offerings," Opp. 4, the statute of repose would still bar Plaintiff's claims, because the statute of repose begins to run upon the ***first*** such offering.   *See Stolz,* 355 F.3d at 106 ("Despite the problem of potential immunity for later offerings, we are bound by the apparent intent of Congress that Section 13's 'bona fide offered to the public' refers to the time when the stock is initially bona fide offered to the public.").[7]   In short, there is no "multiple offerings" exception to Section 13, which begins to run when the security is ***first*** "bona fide offered to the public."   15 U.S.C. § 77m.

### 3.   Plaintiff Cannot Allege "New XRP" Or That It Reset The Statute Of Repose

In a last-gasp argument, Plaintiff seeks to avoid the statute of repose by claiming that the XRP he purchased in 2018 was a ***different*** alleged security from that "first offered" in 2013.   Opp. 6–7.   Plaintiff argues that Defendants' actions—taken years after he alleges all "fungible" XRP was created in 2013— somehow produced "new XRP" (identical in every way to the "old" XRP), which Defendants then supposedly offered to the public anew in "subsequent," "indiscriminate" offerings.   *Id.*   This argument lacks any factual basis and is in direct conflict with the Complaint, which alleges that ***all*** XRP was

---

[6] Plaintiff does not contest Defendants' argument, Mot. 6 n.8, that the Rules Enabling Act prohibits application of relation-back principles to Section 13.   Plaintiff has therefore conceded that the relevant filing date for purposes of this motion is August 5, 2019.   *Ardente, Inc. v. Shanley*, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010).   Even if relation back applied, Plaintiff is incorrect that the Complaint would relate back to the voluntarily dismissed complaint in *Coffey v. Ripple Labs, Inc.*   Opp. 9 n.7.   A complaint cannot relate back to an action or filing that no longer exists.   *Rubicon Global Ventures, Inc. v. Chongqing Zongshen Grp. Import/Export Corp.*, 2010 WL 4812860, at *9 (D. Or. Nov. 19, 2010). Finally, Plaintiff cannot rely on *American Pipe* tolling, Opp. 9 n.7, given *ANZ*'s holding that "the *American Pipe* tolling rule does not apply to the 3-year bar mandated in § 13."   137 S. Ct. at 2052.

[7] Plaintiff contends that the "potential immunity for later offerings" would have resulted only if an amendment to the Securities Act proposed by the SEC had been adopted.   Opp. 5 n.3.   This is simply wrong.   As *Stolz* makes clear, the statute currently provides the immunity; the SEC "recommended an amendment that would have ***eliminated*** the potential immunity provided for later offerings," but the "proposed amendment was never adopted."   355 F.3d at 106 (emphasis added).

4

"fully generated" in 2013 and is "fungible."[8]  Compl. ¶¶ 2, 128.  The Complaint contains no allegation of "new XRP" or a single fact supporting the notion that "new XRP" is a different security with unique terms from XRP allegedly sold in 2013, 2014, and 2015.  And none of Defendants' alleged post-2013 actions support Plaintiff's new fiction that Defendants issued a distinct alleged security, "new XRP," or undertook multiple separate offerings of distinct securities:

- Plaintiff asserts that "Ripple issue[d] new XRP from escrow for the first time each month for sale to the public."  Opp. 6 (citing Compl. ¶¶ 84–94).  But, as explained by a Ripple blog post cited by Plaintiff, escrow impacts only Ripple's access to XRP—not the XRP itself.  Compl. ¶ 86 n.59.  There is not a single allegation in the Complaint that post-escrow XRP differs from pre-escrow XRP. In fact, Plaintiff alleges the opposite—that "XRP is fungible." Compl. ¶ 128.

- Plaintiff asserts that "Ripple publicly touted its upgrades to XRP" and "added features to Ripple."  Opp. 6 (citing Compl. ¶¶ 111–120).  These allegations do not concern modifications to XRP.  Rather, they refer to changes Ripple made to "Rippled," the software underlying the XRP Ledger.  The Ledger is distinct from XRP.  *Compare* Compl. ¶¶ 9 (describing XRP as "digital token"), 121 (describing XRP as "digital asset") *with id.* ¶ 108 (describing XRP Ledger as a "consensus protocol" consisting of "trusted nodes" that "validate transactions").  Plaintiff does not and cannot allege that changes to the XRP Ledger altered the character of existing, "fungible" XRP.

- Plaintiff asserts that Defendants "developed the XRP market, secured listings on exchanges, entered into partnerships, and engaged in a significant marketing push."  Opp. 6–7 (citing Compl. ¶¶ 99–120).  But these allegations concern either Ripple's marketing efforts or where XRP is sold.  They do not allege changes to XRP itself.

Plaintiff cannot overcome this motion by abandoning the allegations in his Complaint. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Plaintiff's allegations that XRP was "fully generated" in 2013 and is fungible preclude his belated theory of "new XRP."

None of Plaintiff's authorities, Opp. 5–6, supports restarting the statute of repose where, as here, the offering of the ***exact same alleged security*** is at issue.  Rather, Plaintiff's cases stand for the uncontroversial proposition that different repose periods may apply to offerings of different securities. For example, *Bradford v. Moench* states that "a significant change in a security can have the effect of creating a new security."  809 F. Supp. 1473, 1491 (D. Utah 1992).  *Smith v. Cooper/T. Smith Corp.* is inapposite because it involved a formal modification of a sales agreement that created an entirely new payment plan and new contractual rights. 846 F.2d 325, 326–27 (5th Cir. 1988).  Likewise, *Takiguchi v. MRI International, Inc.* concluded that the statute of repose did not bar plaintiffs' claims because "[e]ach

---

[8] "Fungible" means "interchangeable for all uses and all purposes."  *United States v. Gainey*, 380 U.S. 63, 78 (1965) (Black, J., dissenting).

year [defendants] offered a new series of securities and issued new certificates of investment."  47 F. Supp. 3d 1100, 1117 (D. Nev. 2014).  In *Takiguchi*—unlike here—the annual offerings had distinct names, interest rates, and maturity terms.  Third Am. Compl., ECF No. 152 at ¶ 27, Case No. 2:13-cv-1183-HDM-NJK, *Takiguchi v. MRI Int'l, Inc.* (D. Nev. June 6, 2014).

In stark contrast to the facts alleged in *Smith* and *Takiguchi*, Plaintiff has not pled different types of XRP with different terms in different issuances.  Rather, Plaintiff alleged the opposite: that all XRP was created in 2013, that "XRP is fungible," and that XRP was offered "indiscriminately."  Compl. ¶¶ 2, 128, 157.  These allegations defeat Plaintiff's "multiple offerings" argument.

### 4.    Plaintiff's Remaining Statute Of Repose Arguments Fail

Plaintiff's remaining statute of repose arguments are meritless.  First, Plaintiff argues that "bona fide" sales did not happen until 2017.  Opp. 7.  This argument cannot be squared with the Complaint, which unambiguously alleges that XRP was created in 2013, Compl. ¶ 2; that sales of XRP occurred in 2013, 2014, and 2015, *id.* ¶¶ 22–25; and that billions of XRP were "available to the market" as of 2015, *id.* ¶¶ 26–27.  These allegations establish "bona fide" public offerings more than three years before the Complaint was filed.  *See Stolz*, 355 F.3d at 99 ("Bona fide" means "genuine," and the relevant inquiry asks "when was the [security] really and truly (genuinely) being offered to the public.").  Plaintiff now seeks to avoid these allegations by arguing that Defendants' 2013 through 2016 XRP sales were "*de minimis*."  Opp. 7–8.  But he cites no authority to support a "*de minimis*" exception and there is none.  Even if there were, such an exception would run headlong into Plaintiff's own allegations, which establish that Ripple sold "billions" of XRP prior to 2017.  Compl. ¶¶ 26–27.

Second, Plaintiff seeks to avoid or toll the statute of repose based on equitable concerns, Opp. 8, but this approach must fail.  *All* statutes of repose leave certain plaintiffs without a remedy.  That is a feature, not a bug of such statutes.  *Stolz*, 355 F.3d at 103–04 ("[B]y limiting the substantive or procedural rights of plaintiffs, all statutes of limitation or repose always tend to cut against the remedial results that plaintiffs might otherwise enjoy.").  Plaintiff's equitable critique also is misdirected—it is for Congress, not the courts, to address such concerns, given the clear statutory language and history.  *Id.* at 106–07 (Calabresi, J., concurring) ("I am convinced that Congress intended [the first-offered] test to govern, however strange the result.").  Moreover, the Supreme Court has held that "the purpose and

6

1    effect" of Section 13 "is to override customary tolling rules arising from the equitable powers of courts."

2    *ANZ*, 137 S. Ct. at 2051.   The "unqualified nature" of repose statutes means they "supersede[] the

3    courts' residual authority and foreclose[] the extension of the statutory period based on equitable

4    principles."   *Id.*   Finally, even if equitable arguments were available, they would not apply here.   Indeed,

5    when Plaintiff bought and sold XRP in January 2018 at the height of the market, Complaint at ¶ 13, he

6    had every reason to know that XRP was not registered as a security and had been sold since 2013

7    without being subject to state and federal securities law.   Mot. 9–10.

8
9
### B.    Plaintiff's Securities Act Claims Fail Because He Has Not Alleged XRP Was Purchased In An "Initial Distribution"

10       Section 12(a)(1) claims are limited to an issuer's "initial distribution" of shares.   Mot. 10.

11   Contrary to Plaintiff's claims, Opp. 9, the Supreme Court in *Gustafson v. Alloyd Co.* left no doubt that

12   the "initial distribution" requirement applies to both Section 12(a)(1) and 12(a)(2) claims, explaining

13   that "[t]he primary innovation of the 1933 [Securities] Act was the creation of federal duties . . . in

14   connection with public offerings."   513 U.S. 561, 571 (1995).   The Court thus held that Section

15   12(a)(2)—*like its "statutory neighbor" Section 12(a)(1)*—applies only to initial public offerings.   *Id.* at

16   572 (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 752 (1975), for proposition that

17   Securities Act extends only to "initial distributions of newly issued stock from corporate issuers.").

18   Justice Ginsburg's dissent confirms the point, noting "[t]here is no dispute" that Section 12(a)(1)

19   "appl[ies] *only* to public offerings."   *Id.* at 600 n.4 (emphasis added).[9]

20       This limitation on Section 12(a)(1)'s applicability is dispositive of Plaintiff's federal securities

21   claims because Plaintiff has not and cannot plausibly allege that he bought XRP as part of an initial

22   distribution.   Rather, Plaintiff concedes he purchased XRP on third-party exchanges.   Opp. 11 ("Plaintiff

23   purchased XRP from Defendants in January 2018 on those same exchanges.").   In the quarter Plaintiff

24   allegedly purchased his XRP on exchanges, Compl. ¶ 13, Ripple's alleged exchange sales of XRP

25   accounted for .095 percent—*less than one-tenth of one percent*—of the total volume of XRP sold on

26   _____
[9] Contrary to Plaintiff's assertion, Opp. at 9, *Gustafson* is consistent with *United States v. Naftalin*, 441
27   U.S. 768 (1979).   *Gustafson* described *Naftalin* as a limited holding that "interpret[ed] the ***one*** provision
     of the [Securities] Act that extends coverage beyond the regulation of public offerings, § 17(a)[.]"   513
28   U.S. at 576–77 (emphasis added).   And *Naftalin* describes Section 17(a) "as a major departure from [the
     Securities Act's initial distribution] limitation."   *Naftalin*, 441 U.S. at 778–79.

exchanges.  Mot. 11.[10]  This one-in-ten-thousand chance that Plaintiff purchased XRP from Ripple (let alone in an initial distribution) is insufficient to enable the Court to "draw the reasonable inference" of liability.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's only retort is that Ripple's total XRP sales in Q1 2018 exceed the amount of XRP he purchased.  Opp. 10.  But this conflates mere possibility with plausibility.  A viable complaint must provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires more than "sheer possibility."  *Iqbal*, 556 U.S. at 678. While it is ***possible*** Plaintiff purchased his XRP from Ripple in an initial distribution, it is not ***plausible*** (because Ripple accounted for only a tiny fraction of exchange-based XRP sales in the relevant quarter). *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (dismissing claims where allegations supported two potential explanations, one inconsistent with liability).  Where the well-pleaded facts do "not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *White v. Chevron Corp.*, 2016 WL 4502808, at *3 (N.D. Cal. Aug. 29, 2016) (Hamilton, J.).

### C.  Plaintiff's Securities Act Claims Fail Because He Has Not Alleged Defendants Are Statutory Sellers

Plaintiff also fails to allege that Defendants are statutory "sellers," as required for a Section 12(a)(1) claim.  Mot. 11–14.  Plaintiff has not adequately alleged that Defendants either passed title of XRP to him or otherwise solicited his purchase of XRP with a financial motive.

#### 1.  Plaintiff Fails To Allege That Defendants Passed Title To Him

Plaintiff cannot adequately allege that Defendants passed XRP title to him.  Mot. 12–13. Contrary to Plaintiff's assertion, Opp. 11, the one-in-ten-thousand chance that Plaintiff purchased XRP from ***any*** of the Defendants is insufficient to enable the Court to "draw the reasonable inference" that Defendants passed title.  *Iqbal*, 556 U.S. at 678.[11]

#### 2.  Plaintiff Fails To Allege That Defendants Solicited Plaintiff's XRP Purchases

Out of necessity, Plaintiff thus pursues a "solicitation" theory of liability, Opp. 11–15, but fails

---

[10] Plaintiff does not oppose Defendants' Request for Judicial Notice, Dkt. 70-1.

[11] Plaintiff also now seemingly concedes that all three Defendants did not pass title to him.  Opp. 11.

to allege the requisite "direct" relationship between buyer and seller.  *See, e.g.*, *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at \*9 (C.D. Cal. May 5, 2011) ("a direct relationship between the purchaser and the defendant"); *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at \*18 (N.D. Cal. Oct. 31, 2014) ("some 'direct' role in the solicitation of the plaintiff"); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 932 F. Supp. 2d 1095, 1118 (C.D. Cal. 2013) ("directly solicited or communicated with the plaintiff regarding the security purchases"); *Vanguard Specialized Funds v. VEREIT Inc.*, 2016 WL 5858735, at \*17 (D. Ariz. Oct. 3, 2016) (requiring "direct and active participation in the solicitation of the immediate sale"); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005) (defendants must be "directly involved in the actual solicitation of a securities purchase").[12]

Plaintiff's claims fail because he has not alleged such a connection.  The majority of allegations cited by Plaintiff, Opp. 13, concern public non-targeted tweets, webpages, or statements sharing information or updates related to Ripple or XRP.  *See* Compl. ¶¶ 43–45, 55–70, 95–105.  Other allegations involve public non-targeted statements responding to a critical media report.  *Id.* ¶¶ 71–74.  The remaining allegations offer little more than conclusory assertions about how Ripple operates and markets or how XRP is purchased and sold.  *Id.* ¶¶ 30, 42, 75, 124, 128, 157.  None of these allegations assert **any** relationship between Plaintiff and Defendants, let alone a direct one.

Plaintiff's concession that he purchased XRP on exchanges, Opp. 11, further precludes Plaintiff's "solicitation" theory.  Plaintiff has expressly alleged that Defendants' exchange sales were "being solicited . . . at random" and did not "specifically or individually target[]" any one purchaser.  Compl. ¶ 157.  These allegations contradict the argument now advanced in opposition that Defendants "directly" solicited Plaintiff's XRP purchases.  Moreover, "a buyer cannot recover against his seller's seller."  *Pinter v. Dahl*, 486 U.S. 622, 644 n.21 (1988).  Because Plaintiff has not and cannot allege he purchased XRP from Defendants, *supra* Section II.B, Plaintiff seeks to hold his "seller's seller" liable.  *See also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003).

Plaintiff's "solicitation" cases do not support his position.  Opp. 11–13.  Plaintiff relies on

---

[12] Plaintiff does not dispute that he must show a "direct" relationship.  Opp. 11 (arguing only that Defendants' cases do not "define" what constitutes a direct relationship).  Instead, Plaintiff offers a non-sequitur: that "personal solicitation" is not required.  *Id.*  But Defendants have never advanced such a narrow theory of solicitation liability.  Mot. 13–14 ("Plaintiff does not allege **any direct relationship or communication** with any Defendant." (emphasis added)).

*Youngers v. Virtus Inv. Partners, Inc.*, but the court there held that defendants' efforts to make available marketing materials through "their website and other channels" did ***not*** give rise to solicitation liability. 195 F. Supp. 3d 499, 522–23 (S.D.N.Y. 2016).  Plaintiff also cites to *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988), and *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1063–64 (D. Minn. 2003), but those cases involve direct communications—not alleged here—between a plaintiff and defendant routed through an agent.  Plaintiff relies on *Moore v. Kayport Package Express*, 885 F.2d 531, 538–39 (9th Cir. 1989), but the defendant brokers there actually sold securities and distributed promotional materials directly to investors.  Likewise, *In re Charles Schwab Corp. Securities Litigation*, 257 F.R.D. 534, 549 (N.D. Cal. 2009), confirms that solicitation liability requires Defendants have a "'direct' role in the solicitation of the plaintiff."  Plaintiff also invokes two inapposite cases involving ICOs.  Opp. 13.  Because ICOs by definition involve securities purchased directly from an issuer, these cases are far afield from Plaintiff's alleged secondary-market purchases of XRP.  Moreover, in *Balestra v. ATBCOIN LLC*, the decision turned on defendants' (1) promotional appearance at the "launch" of the ICO, (2) issuance of a press release touting investor interest in the ICO, and (3) public statements encouraging viewers not to "miss" the ICO.  380 F. Supp. 3d 340, 358 (S.D.N.Y. 2019).  These ICO-adjacent statements encouraging investment are different from the statements alleged in this case, which never expressly encouraged investing in XRP and which were not paired with a specific, limited-time offer.  Meanwhile, *In re Tezos Securities Litigation* only confirms that *Pinter* is not "applicable in the absence of any buyer-seller contact whatsoever."  2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018).

Finally, Plaintiff incorrectly claims that "solicitation" presents a factual dispute that cannot be decided on a motion to dismiss.  Opp. 13.  But the case Plaintiff cites for this legal principle in fact involved dismissal of a plaintiff's Section 12 claim for failing to adequately allege solicitation liability. *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1296 (E.D. Wash. 2007); *see also In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1073 (N.D. Cal. 2010) (Hamilton, J.) (dismissing Section 12 claims where plaintiffs failed to allege defendants "actively solicited plaintiffs' purchase of securities").

### D.    Plaintiff Fails To State A Claim Under Section 15

Plaintiff does not dispute that Section 13's statute of repose applies with equal force to his "control person" claim, or that this claim is derivative of and dependent on his Section 12(a)(1) claim.

10

Mot. 14–15; Opp.15.  *See Turnage v. Old Dominion Freight Line, Inc.*, 2013 WL 2950836, at *2 (N.D. Cal. June 14, 2013) (Hamilton, J.) (holding plaintiff conceded argument by failing to respond).  Thus, his Section 15 claim should be dismissed for the same reasons as his underlying Section 12 claim.

## III.    PLAINTIFF'S CALIFORNIA CORPORATIONS CODE CLAIMS FAIL (Counts 3–5)

### A.    Plaintiff Fails To Adequately Allege An Issuer Transaction, Privity, Or In-State Offer As Required Under Sections 25110, 25503, And 25504 (Counts 3 and 5)

Plaintiff contends that he need not allege either an issuer transaction or strict privity for his state securities claims, and that he sufficiently alleged an in-state offer.  Opp. 15–17.  These arguments fail.

*Issuer Transaction.*  Contrary to Plaintiff's claim, Opp. 15, the "issuer transaction" requirement does not arise from *Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993), but from the text of Section 25110: "It is unlawful for any person to offer or sell in this state any security *in an issuer transaction* . . . ." (emphasis added).  And *Mirkin*, while not a Section 25110 case, expressly cites Section 25110 as an example of "a statute that addressed only issuer transactions."  5 Cal. 4th at 1104.  Plaintiff cannot evade both the text of Section 25110 and a California Supreme Court case addressing that language.

*Privity.*  Plaintiff's efforts to obfuscate the privity requirement of his Section 25110 claims, Opp. 16, have no basis in the statutory text.  Plaintiff brought two claims related to Section 25110: a claim of primary liability under Section 25503 and a claim of secondary, "control person" liability under Section 25504.  Compl. ¶¶ 184–190, 201–207.  Section 25503 contains a strict privity requirement: "Any person who violates Section 25110 . . . shall be liable *to any person acquiring from him the security sold* . . . ." (emphasis added).  Section 25504 provides joint and several liability to a "person who directly or indirectly controls a person liable under Section . . . 25503."  Plaintiff was therefore required to, but did not, plead strict privity under Section 25503, *In re Am. Principals Holdings, Inc. Sec. Litig.*, 1987 WL 39746, at *10 (S.D. Cal. Jul. 9, 1987), and to plead under Section 25504 that Defendants controlled a company that was in privity with Plaintiff, *Bains v. Moores*, 172 Cal. App. 4th 445, 479 (2009).

Plaintiff also wrongly argues, Opp. 15–16, that the privity requirements of Sections 25110, 25503, and 25504 vary depending on the remedy sought.  For instance, he claims that *Bowden v. Robinson*, 67 Cal. App. 3d 705, 712 (1977), recognizes an "exception" to the privity requirement "when

monetary damages are sought," Opp. 16, but that case neither contains nor supports such an exception.[13]

**In-State Transaction.**  Plaintiff relies entirely on *Konik v. Time Warner Cable*, 2009 WL 10681970, *4 (C.D. Cal. Dec. 2, 2009) and *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271–72 (2001), to argue that he adequately pled a sale or offer of XRP in California.  He contends that Ripple's website, which allegedly contained links to cryptocurrency exchanges and instructions on how to purchase XRP on those exchanges, constituted an in-state "offer" under these cases.  Opp. 17.  But unlike *Konik* and *Donovan*, Ripple's website did not "leave nothing for negotiation" "without further communication." *Konik*, 2009 WL 10671970, at *4; *Donovan*, 26 Cal. 4th at 272.  Rather, the exchanges referenced on Ripple's website are run by *third parties*, with terms and conditions of sale (including price) entirely outside Ripple's control.  *See* Mot. 4, Compl. ¶ 43.  The vast majority of XRP traded on those exchanges—over 99.9% in the relevant timeframe, Mot. 11—are sold by parties other than Ripple. Ripple could not "offer" to sell XRP owned by unaffiliated third-party sellers online.

### B.     Plaintiff Fails To Adequately Allege Any Misrepresentation Connected To His XRP Purchases (Count 4)

With regard to his state securities misrepresentation claim, Plaintiff argues that the alleged misrepresentations need not have been directed at him, that Rule 9(b) does not apply to his claim, and that his pleadings satisfy Rule 9(b) regardless.  Opp. 18–20.  None of these arguments has merit.[14]

**Directed at Plaintiff.**  Plaintiff relies entirely on Defendants' cases to argue that the alleged misrepresentations need not have been made directly to Plaintiff or in connection with Plaintiff's purchases of XRP.  Opp. 18.  None of these cases supports Plaintiff's argument.  *Apollo Capital Fund, LLC v. Roth Capital Partners, LCC*, 158 Cal. App. 4th 226, 249 (2007), did not discuss the meaning of the phrase "in connection with."  *SIC Metals, Inc. v. Hyundai Steel Co.*, 2018 WL 6842958, at *5 (C.D. Cal. Nov. 14, 2018), rejected a Section 25401 claim where the plaintiffs "failed to allege any facts that indicate [defendant] made a false or misleading statement to Plaintiffs when negotiating the purchase of . . . stock" from them.  And Plaintiff's selective quotation from *Mausner v. Marketbyte LLC*, 2013

---

[13] Plaintiff's other cited cases are likewise inapposite, Opp. 16, as they address the need to allege privity with **both** the control person **and** the controlled entity, and do not suggest a privity requirement dependent on the remedy sought.

[14] By not addressing his pleading failures as to "privity" and an "in-state offer," Mot. 17; Opp. 18 n.10, Plaintiff concedes these arguments.  *See Turnage*, 2013 WL 2950836, at *2.

WL 12073832, at *10 (S.D. Cal. Jan. 4, 2013), is misleading.  In *Mausner*, the court considered only statements ***received by Plaintiff*** shortly before he purchased the at-issue securities, *id.*, underscoring that a direct statement by Defendants to Plaintiff is required.[15]

     ***Rule 9(b).***  Plaintiff's suggestion that Rule 9(b) does not apply to his Section 25401 claim, Opp. 19, is wrong.  Plaintiff does not deny that Rule 9(b) applies to allegations supporting a *fraudulent* misrepresentation claim under Section 25401.  *Id.*; *see also Siegal v. Gamble*, 2016 WL 3648503, at *5 (N.D. Cal. July 7, 2016).  He also does not deny that *his* claim sounds in fraud, Opp. 19; nor can he, *see, e.g.*, Compl. ¶¶ 1, 55, 193, 214, 217.  Thus, Plaintiff was required to plead the "who, what, when, where, and how" of the alleged fraud.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

     Plaintiff's seven claimed "examples" of alleged misrepresentations (all identified as such for the first time in his opposition brief) demonstrate his failure to sufficiently plead under Rule 9(b):

- <u>Compl. ¶ 41:</u>  Plaintiff concedes that he failed to allege the "when" and "where" of this so-called "statement."  Opp. 19.  Plaintiff also failed to allege the "who," "what," and "how."

- <u>Compl. ¶ 45:</u>  Plaintiff provides no explanation why this statement was false, either in his Complaint or in his Opposition.  Opp. 19.

- <u>Compl. ¶ 49:</u>  Plaintiff's Opposition mischaracterizes the alleged statement, and neither his Complaint nor Opposition explains why it was false.  Opp. 19.

- <u>Compl. ¶¶ 52–53:</u>  This alleged statement was objectively true from the face of the Complaint, as Ripple previously explained, Mot. 20, and Plaintiff fails to rebut, Opp. 20.

- <u>Compl. ¶ 62:</u>  This statement was not misleading because Ripple was not required to distinguish "XRP" from "Ripple Enterprise Solutions" in every communication, as Ripple previously explained, Mot. 20, and Plaintiff fails to rebut, Opp. 20.

- <u>Compl. ¶¶ 63–68, 70, 73–74, 102–103, 149:</u>  Plaintiff provides no explanation of falsity for any of the cited statements.  These allegations are not "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Vess*, 317 F.3d at 1106.

- <u>Compl. ¶¶ 96–97:</u>  This statement of Ripple's long-held legal position is not actionable, as Ripple previously explained, Mot. 21, and Plaintiff fails to rebut, Opp. 20.  Moreover, these statements were made months after Plaintiff alleges he purchased and sold all his XRP rendering them impossible to have played a role in his decisions to purchase or sell XRP.

Plaintiff also fails to address and thus concedes Defendants' other arguments concerning his state law

---

[15] Plaintiff fails to meet the "in connection with" requirement even under his own proffered test—that the statements concern "the securities ***transactions*** at issue," Opp. 18 (emphasis added).  The alleged statements here consisted of tweets, website content, and media interviews—none of which concerned Plaintiff's purchases of XRP from unknown sellers on third-party exchanges.

misrepresentation claim. *Compare* Opp. 19–20 *with* Mot. 19–22.

### C.   Plaintiff Fails To Adequately Allege A Material Assistance Claim (Count 4)

Plaintiff claims that Ripple and Mr. Garlinghouse materially assisted in the XRP transactions barred by Section 25504 because their "tweets and interview excerpts" were "directed to Plaintiff and the public at large" and that he relied on those statements. Opp. 21. As addressed in the previous Section, Plaintiff's Complaint does not adequately allege that any of Ripple's or Mr. Garlinghouse's statements were "directed to" Plaintiff. Opp. 21.[16] Plaintiff also incorrectly suggests that Defendants are seeking to apply Rule 9(b) to the intent element. Opp. 21. Instead, as Defendants argued, Mot. 22–23, the Complaint does not allege facts to support a plausible inference that Defendants intended to induce Plaintiff's reliance on their alleged misrepresentations.

## IV.   PLAINTIFF'S CALIFORNIA CONSUMER PROTECTION CLAIMS FAIL (Counts 6, 7)

### A.   Plaintiff's FAL And UCL Claims Impermissibly Concern "Securities Transactions"

California's consumer protection statutes "do not apply to securities transactions." *Bowen v. Ziasun Tech.*, 116 Cal. App. 4th 777, 788 (2004). Contrary to Plaintiff's claim, Opp. 23, the *Bowen* rule applies to both FAL *and* UCL claims. *See Sharp v. Arena Pharm., Inc.*, 2013 WL 12094819, at *2 (S.D. Cal. Mar. 29, 2013) ("Sections 17200 and 17500 do not apply to securities cases."); *Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, 1998 WL 2016634, at *17 (N.D. Cal. Sept. 14, 1998) ("No California court has explicitly held that section 17200 and section 17500 are applicable to securities transactions."). This rule bars Plaintiff's FAL and UCL claims, which are based on Plaintiff's allegations concerning the offer, purchase, and sale of purported securities. Mot. 23–24.

Plaintiff distorts *Bowen*, asserting that its import "is far from certain" and citing a 2007 California Court of Appeal decision holding that the "securities transaction" exception does not extend to claims that "do not arise from any stock transactions between the parties." Opp. 22 (citing *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 715 (2007)). First, unlike *Overstock*, Plaintiff's FAL and UCL claims directly relate to the alleged offer, purchase, and sale of

---

[16] Plaintiff elsewhere denies that he was required to show that the statements were directed to him. *See* Opp. 18. Plaintiff provides no basis for his assertion that Defendants' tweets and press interviews about XRP were directed at him, concerned his XRP transactions, or otherwise constituted "material assistance" under Section 25504.1. Opp. 21.

alleged securities.  Compl. ¶¶ 1, 212, 215, 217, 218, 219.  Second, courts in the Northern District of California have—after *Overstock*—affirmed *Bowen*.  In *S.F. Residence Club, Inc. v. Amado*, Judge Seeborg rejected a UCL claim because "Plaintiffs' theory unavoidably focuses on the purchase of securities."  773 F. Supp. 2d 822, 833–34 (N.D. Cal. 2011) (explaining that cases citing *Overstock* involved securities only in a "general sense").  And in *Siegal*, Judge Seeborg dismissed a UCL claim with prejudice where the "only transactions at issue [were] securities transactions."  2016 WL 1085787 at *7-8 (N.D. Cal. Mar. 21, 2016).  The court considered *Overstock* but held that "*Bowen* endures."  *Id.*[17]

### B.    Plaintiff's Claims Are Barred By The FAL And UCL's "Safe Harbor"

Plaintiff does not challenge the existence of the FAL and UCL "safe harbor" or that Section 13's statute of repose triggers it.  Opp. 23–24.  Instead, Plaintiff objects that his "consumer protection claims are independent of whether XRP is a security."  Opp. 24.  This again ignores Plaintiff's entire theory of liability: "a scheme by Defendants to raise hundreds of millions of dollars through sales of XRP—an unregistered security—to retail investors in violation of the registration provisions of federal and state securities law."  Compl. ¶ 1.  Because the FAL and UCL claims each depend on allegations concerning XRP's status as a security, *id.* ¶¶ 211–212 (FAL claim), 215–219 (UCL claim), the safe harbor applies.

### C.    Plaintiff's FAL And UCL Claims Are Not Pleaded With Particularity

Plaintiff concedes that his FAL and UCL claims are subject to Rule 9(b)'s heightened pleading standard, Opp. 24—which Plaintiff fails to meet.  *Supra* at Section III.B.  Plaintiff does not rebut Defendants' argument, Mot. 25, that he failed to adequately allege "actual reliance."  Plaintiff's vague allegations that he "saw and relied" on Defendants' representations lack the "when," "where," or "how" of his reliance.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (affirming dismissal of UCL claim where plaintiff failed to allege "when" purported misrepresentation "was made").

## V.    CONCLUSION

Plaintiff's Complaint should be dismissed with prejudice.

---

[17] Plaintiff cannot reframe his FAL and UCL claims as "alternative theories of liability."  Opp. 23. Pleading in the alternative "does not relieve plaintiffs of their obligation to plead sufficient factual allegations in support of that request."  *FT Travel-New York, LLC v. Your Travel Center, Inc.*, 112 F. Supp. 3d 1063, 1073 n.69 (C.D. Cal. 2015).  Plaintiff's security-related allegations are essential to his claims.  Defendants are not trying to "have it both ways," Opp. 23, but are taking Plaintiff's allegations—which pervasively claim that XRP is a security—as true for purposes of this motion.

1

Dated:  December 4, 2019

Respectfully Submitted,

2

3

By:   */s/ Kathleen R. Hartnett*
Kathleen R. Hartnett (SBN 314267)
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile:  (415) 293-6899
Email: khartnett@bsfllp.com

4

5

6

7

8

Damien J. Marshall (Admitted *pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile:  (212) 446-2350
Email: dmarshall@bsfllp.com

9

10

11

12

Andrew J. Ceresney (Admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Facsimile:  (212) 909-6836
Email: aceresney@debevoise.com

13

14

15

16

17

*Attorneys for Defendants Ripple Labs Inc.,*
*XRP II, LLC, and Bradley Garlinghouse*

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 4:18-cv-06753-PJH