| | |
|---|---|
| James Q. Taylor-Copeland (284743)<br>james@taylorcopelandlaw.com<br>TAYLOR-COPELAND LAW<br>501 W. Broadway, Suite 800<br>San Diego, CA 92101<br>Telephone: (619) 400-4944<br>Facsimile: (619) 566-4341 | Damien J. Marshall (*pro hac vice*)<br>dmarshall@bsfllp.com<br>BOIES SCHILLER FLEXNER LLP<br>55 Hudson Yards, 20th Floor<br>New York, NY 10001<br>Telephone:   (212) 446-2300<br>Facsimile:    (212) 446-2350 |
| Marc M. Seltzer (54534)<br>mseltzer@susmangodfrey.com<br>Steven G. Sklaver (237612)<br>ssklaver@susmangodfrey.com<br>Oleg Elkhunovich (269238)<br>oelkhunovich@susmangodfrey.com<br>Meng Xi (280099)<br>mxi@susmangodfrey.com<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, 14th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 789-3100<br>Facsimile: (310) 789-3150 | Maxwell V. Pritt (SBN 253155)<br>mpritt@bsfllp.com<br>BOIES SCHILLER FLEXNER LLP<br>435 Tasso Street, Suite 205<br>Palo Alto, CA 94301<br>Telephone:   650.445.6400<br>Facsimile:    650.329.8507<br><br>Menno Goedman (SBN 301271)<br>mgoedman@bsfllp.com<br>BOIES SCHILLER FLEXNER LLP<br>1401 New York Avenue, N.W.<br>Washington, DC  20005<br>Telephone:   202.237.2727<br>Facsimile:    202.237.6131 |
| P. Ryan Burningham (*pro hac vice*)<br>rburningham@susmangodfrey.com<br>SUSMAN GODFREY L.L.P.<br>1201 Third Avenue, Suite 3800<br>Seattle, WA  98101<br>Telephone: (206) 516-3880<br>Facsimile:  206) 516-3883 | *Attorneys for Defendants Ripple Labs, Inc.,*<br>*XRP II LLC, and Bradley Garlinghouse* |

*Counsel for Lead Plaintiff Bradley Sostack*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re RIPPLE LABS INC. LITIGATION,<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No.    18-cv-06753-PJH<br><br>**JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER** |

Lead Plaintiff Bradley Sostack and Defendants Ripple Labs, Inc., XRP II LLC, and Bradley Garlinghouse submit this Joint Case Management Statement & Proposed Order.

**1.     JURISDICTION & SERVICE**

This Court has subject-matter jurisdiction over claims under the Securities Act pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331, and supplemental jurisdiction over the entire action under 28 U.S.C. § 1367.  The parties do not object to venue or dispute personal jurisdiction.

This action consolidates three separate complaints originally filed in the Superior Court of the State of California in the County of San Mateo.  It was removed to this Court on November 7, 2018. (ECF No. 2.)  All parties were served on November 8, 2018. (ECF No. 8.)  No parties remain to be served.

**2.     FACTS**

**A. Lead Plaintiff's Brief Statement of Facts**

In 2013, Ripple created 100 billion cryptocurrency units called XRP.  Of those, 20 billion were given to Ripple's founders, and Ripple retained the remainder.

Since 2013, Defendants have profited by selling XRP.  To drive demand for XRP, Ripple has portrayed XRP as a good investment, relayed optimistic price predictions, and conflated Ripple's enterprise business with usage of XRP.  Ripple has also paid substantial listing fees to list XRP for sale on cryptocurrency exchanges.

In 2017 and 2018, Ripple greatly increased its efforts to push XRP on the general public. For example, in 2017, Ripple placed 55 billion XRP in a cryptographically secured escrow account and established 55 contracts of 1 billion XRP each that allow Ripple to sell up to 1 billion XRP per month, with any unsold XRP returned to escrow for use in subsequent offerings.  This limited the supply of XRP, increased the demand for XRP, and in turn propped up the value of XRP.  Ripple also offered cryptocurrency exchanges significant sums of money and large quantities of XRP in exchange for listing XRP on those exchanges.  And Defendants made multiple statements in 2017 and 2018 aimed at propping up XRP's value and conflating the success of Ripple's enterprise business with adoption of XRP.

Expecting to derive profits from owning XRP, Mr. Sostack and others provided money consideration (in the form of USD or other cryptocurrencies) in exchange for XRP.  However, Defendants did not register XRP with the SEC or qualify XRP with the California Commissioner of Corporations.

Mr. Sostack seeks to represent a class of all investors who purchased Ripple XRP tokens issued and sold by Defendants.  Mr. Sostack alleges that XRP is an unregistered security, which Defendants sold in violation of federal and state securities laws.  Mr. Sostack also alleges that Defendants have made false and misleading statements regarding XRP, thereby violating California's securities, or alternatively, false-advertising, and unfair-competition laws.

### B. Defendants' Response

Defendants categorically deny Plaintiff's claims and dispute the accuracy of his factual allegations.  Defendants deny XRP was or is a security and that XRP was required to be registered with the SEC and/or the California Commissioner of Corporations.  Defendants deny that Plaintiff's federal claims are timely and submit they are barred by the three-year statute of repose set forth in Section 13 of the Securities Act.  Defendants further deny that they are "statutory sellers" under Section 12 of the Securities Act.  Defendants deny that Plaintiff's California securities claims are viable because Plaintiff has not alleged and cannot show that he was in privity with Defendants when he purchased XRP, as required by Cal. Corp. Code §§ 25110 and 25503.  Defendants deny that they made any alleged misrepresentations or omissions of fact, that such alleged statements were material, were made with scienter, or that Plaintiff suffered damages as a result of the same.  Defendants will argue that these alleged misrepresentations fail as a matter of law.  Defendants further deny that this putative class action should be certified, as the requirements set forth in Rules 23(a) and 23(b)(3) are not satisfied.  Finally, should the Court agree that XRP is not a security, Defendants deny that they have engaged in any unfair conduct in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

7351946v1/016433

### 3. LEGAL ISSUES

The primary legal issues in dispute are as follows:

- Whether XRP are securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1). *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946).

- Whether Plaintiff's Securities Act claims are barred by the three-year statute of repose set forth in Section 13 of the Securities Act's, 15 U.S.C. § 77m.

- Whether Defendants are "statutory sellers" of XRP pursuant to Section 12 of the Securities Act, 15 U.S.C. § 77l.

- Whether Plaintiff was in privity with Defendants when he allegedly purchased XRP as required by Cal. Corp. Code §§ 25110 and 25503.

- Whether XRP are securities within the meaning of the California Corporations Code. *See id.*; *Silver Hills Country Club v. Sobieski*, 361 P.2d 906 (Cal. 1961).

- Whether Defendants' alleged advertisements and statements regarding XRP were false and misleading, and whether they are otherwise actionable. *See* Bus. & Prof. Code § 17200, *et seq.*; 17500, *et seq.*

- Whether Plaintiff's alleged putative class can be certified under Fed. R. Civ. P. 23(a) and 23(b)(3).

### 4. MOTIONS

On February 26, 2020, this Court granted in part and denied in part Defendants' motion to dismiss. (ECF No. 85.) That order granted Lead Plaintiff leave to amend, and he filed a Consolidated First Amended Complaint on March 25, 2020. (ECF No. 87.) Pursuant to a stipulation and order extending time (ECF No. 94), Defendants' deadline to respond is June 8, 2020. Defendants intend to file a motion to dismiss. Lead Plaintiff's opposition will be due July 8, 2020, and Defendants' reply will be due July 29, 2020. Separately, Defendants also anticipate moving for summary judgment. There are no motions pending now.

### 5. AMENDMENT OF PLEADINGS

Lead Plaintiff filed a Consolidated First Amended Complaint on March 25, 2020. Presently, he does not expect to add or dismiss parties or claims.

### 6. EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred during the parties' Rule 26(f) conference regarding

reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

### 7. DISCLOSURES

#### A. Plaintiff's Position

Under Rule 26(a)(1)(C), initial disclosures are due to be made May 28, 2020.

As explained in detail below, the PSLRA automatic stay no longer applies because the Court denied Defendants' motion to dismiss Lead Plaintiff's Securities Act claims, none of the allegations underlying those claims were amended in Lead Plaintiff's FAC, and thus Defendants have no basis to move to dismiss those claims.

The parties have agreed that Fed. R. Civ. P. 37(c)(1) sanctions will not be sought and should not be imposed if initial disclosures are supplemented in a timely fashion under Fed. R. Civ. P. 26(e).

#### B. Defendants' Position

Section 101 of the Private Securities Litigation Reform Act (PSLRA) provides that in a private action arising under the Securities Act, like the instant case, "*all* discovery . . . shall be stayed during the pendency of *any* motion to dismiss." 15 U.S.C. § 77z-1(b) (emphasis added). The Ninth Circuit has held that initial disclosures are "discovery" for purposes of the PSLRA's automatic stay provision. *Medhekar v. U.S. Dist. Court for the N. Dist. of California*, 99 F.3d 325, 328 (9th Cir. 1996) (holding that initial disclosures are a form of "discovery" stayed by the PSLRA). Because "[t]he discovery stay applies even when no motion to dismiss has yet been filed due to the parties' schedule for filing a revised version of the complaint," *In re Altera Corp. Deriv. Litig.*, 2006 WL 2917578, at *1 (N.D. Cal. Oct. 11, 2006), initial disclosures should be stayed until after the Court resolves Defendants' forthcoming motion to dismiss the FAC.

### 8. DISCOVERY

#### A. Discovery Taken to Date

To date, no discovery has been taken as part of this litigation.

### B. Timing of Discovery Commencement

#### 1. Plaintiff's Position

Lead Plaintiff believes discovery should begin immediately with the production by Defendants of all documents that Defendants previously produced to investigating government agencies and regulators, including FinCEN and the SEC, in connection with those entities' investigations into Defendants' sale of XRP. Such production will be neither burdensome nor costly, as it requires little more than making a copy of the discs or storage devices on which such productions are already contained. Producing these documents now will avoid unnecessary delay in this action and will likely assist Lead Plaintiff in tailoring future discovery efforts. Lead Plaintiff requests that the documents described above be provided by Defendants by June 12, 2020.

Defendants contend discovery should not proceed at all pending the ruling on their anticipated second motion to dismiss. Defendants' argument is rooted solely in the "Stay of Discovery" provision of the Securities Act, 15 U.S.C. § 77z-1(b). While Defendants contend this provision is unambiguous, several courts have found otherwise. *See Lernout & Hauspie Sec. Litig.*, 214 F.Supp.2d 100, 105 (D.Mass.2002); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F.Supp.2d 319, 352 (S.D.N.Y.2004). Even more importantly, none of the cases cited by Defendants dealt with application of the Stay of Discovery provision where the Securities Act claims have been completely upheld and not amended like here. Simply stated, the PSLRA automatic stay should not continue to apply only because there is still a dispute about sufficiency of supplemental state law claims, but no such dispute with respect to the Securities Act claims.

As the Ninth Circuit recognized, the intent of the PSLRA's automatic stay provision is that "complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." *Medhekar v. U.S. Dist Court for the No. Dist. of Cal.*, 99F.3d 325 (9th Cir. 1996) (citing legislative history). This intent is completely inapposite to the circumstances here because the Court already denied Defendants' motion to dismiss Plaintiff's Securities Act claims, Dkt. 85, and Plaintiff's FAC did not amend any allegations relating to those claims. *See* Dkt 87-1 (redline

1  demarcating changes in the FAC).  Indeed, the Court's Order on Defendants' first motion to
2  dismiss allowed Lead Plaintiff to amend his complaint solely to address the deficiencies the Court
3  identified in the misrepresentation claims under California state law.  Dkt. 85 at 40.  Thus,
4  Defendants have no basis to move to dismiss any claims to which the PSLRA applies, and
5  Plaintiff's discovery will not affect the viability of his pleading the Securities Act claims.
6      Defendants' position appears to be that the PSLRA automatic stay applies during
7  pendency of any motion to dismiss regardless of whether the motion has anything to do with the
8  claims under the Securities Act.  As one Court observed, "[t]his argument has troubling
9  implications":

> The purpose of the statutory stay is to prevent abusive, expensive discovery in frivolous lawsuits by postponing discovery until "after the Court has sustained the legal sufficiency of the complaint." S.Rep. No. 104–98 at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693.  In a case where the court already has sustained the legal sufficiency of the complaint, this purpose has been served.  To permit defendants indefinitely to renew the stay simply by filing successive motions to dismiss would be to invite abuse.  Some judicial discretion to evaluate the desirability of a renewed stay appears to be necessary.

15 *In re Solomon Analyst Litg.*, 373 F. Supp. 2d 252 (S.D.N.Y. 2005).  Here, Defendants are
16 attempting to further delay discovery while their second motion to dismiss is pending even
17 though the motion can have no impact on the Securities Act claims.  Nor do Defendants offer any
18 explanation how the scope of discovery may significantly change in view of their second motion
19 to dismiss.  Accordingly, any further stay on discovery in this case serves no statutory purpose
20 under the PLSRA and will only cause unnecessary delay.
21      Moreover, with respect to documents previously produced to regulatory agencies, even
22 where the Stay of Discovery provision applies—and it does not here—courts have granted
23 plaintiffs leave to obtain discovery of materials already provided to public agencies.  *See, e.g.*, *In*
24 *re Firstenergy Corp. Secs. Litigation*, 229 F.R.D. 541 (N.D. Ohio 2004) (allowing plaintiffs to
25 obtain documents previously provided to government agencies and to a federal grand jury in the
26 course of related investigations); *In re Spiegel, Inc. Secs. Litigation*, 382 F. Supp. 2d 989 (N.D.
27 Ill. 2004) (allowing plaintiffs to obtain copies of documents previously provided to public

agencies in related proceedings, where the court had already ruled on defendants' motions to dismiss in part, and upheld claims against most defendants, at least to some degree); *In re WorldCom, Inc. Secs. Litigation*, 234 F. Supp. 2d 301 (S.D. N.Y. 2002) (lifting the stay of discovery would be lifted to allow plaintiffs to obtain copies of documents previously provided to public agencies in related proceedings).

### 2. Defendants' Position

The PSLRA automatically stays "*all* discovery . . . during the pendency of *any* motion to dismiss[.]" 15 U.S.C. § 77z-1(b)(1). There is no statutory ambiguity here: where an action is brought under the Securities Act, as is the case here, the filing of "any motion to dismiss" automatically stays "all discovery." Nor can Plaintiff manufacture one—the stay provision is simply not delimited in the manner he suggests. And while the PSLRA's automatic stay provision expressly identifies two exceptions that may permit "particularized" discovery (where required to preserve evidence or avoid undue prejudice), Plaintiff does not (and cannot) argue these exceptions apply.

Abandoning the text, Plaintiff pursues an equitable argument, relying on an out-of-circuit decision, *In re Salomon Analyst Litig.*, 373 F. Supp. 2d at 255-56. But that case involved a very different set of facts and, in any event, this argument misses the mark because the district court there *stayed discovery* pending determination of a second motion to dismiss, notwithstanding that the case "had been pending for a long time, and that discovery could be further delayed by this motion." *Id.* at 256 (refusing to decide whether the filing of successive, non-frivolous motions to dismiss should trigger the PSLRA's stay provision).

Contrary to Plaintiff's out-of-circuit authority, courts in the Ninth Circuit have held that the PSLRA stay applies to the production of documents previously provided to the government, even where defendants had conceded that some or all of the securities claims would remain in the case. *See In re Lantronix, Inc. Sec. Litig.*, 2003 WL 22462393, at *2 (C.D. Cal. Sept. 26, 2003) (holding that PSLRA stays all discovery, including as to documents previously produced to the government, even when defendants concede that some federal securities claims were viably pleaded); *In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1106 (C.D. Cal. 2007) (denying

motion to lift PSLRA stay to allow production of documents previously produced to the government because doing so would risk prejudice *to the producing party*). This outcome is entirely consistent with the plain text of the statute, which must control.

Furthermore, the PSLRA's automatic stay provision applies with equal force where, as here, a second motion to dismiss is anticipated and the deadline to respond to an amended complaint has not yet passed. *See Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 968 (9th Cir. 2014) (". . . when an amended complaint is filed after an earlier complaint has been upheld (at least in part), the bulk of district courts have ruled that filing a motion to dismiss the amended complaint also triggers a stay of any discovery."); *In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1133 (N.D. Cal. 2002) (staying discovery is appropriate where "there is no motion to dismiss pending" because "the time for responding to the consolidated complaint has not yet elapsed" and "counsel indicated at the hearing that they are likely to file a motion to dismiss."); *In re Altera*, 2006 WL 2197575 at *1 (staying discovery under PSLRA "pending Defendants *anticipated* motion to dismiss." (emphasis added)); *Jackson v. Fischer*, 2015 WL 4381263, at *2 (N.D. Cal. July 16, 2015) (Hamilton, J.) (holding PSLRA stay applies despite multiple rounds of motions and an original action that was filed more than four years earlier).

Finally, as to Plaintiff's specific request for documents set forth above, Defendants object that Plaintiff's request fails to adhere to the procedures set forth in Fed. R. Civ. P. 34 and is therefore improper.

### C.  Scope and Phasing of Anticipated Discovery

#### 1.  Plaintiff's Position

Lead Plaintiff intends to conduct discovery concerning Defendants' creation, promotion, and sales of XRP, and Defendants' communications concerning the same. Lead Plaintiff also intends to conduct discovery concerning damages.

Lead Plaintiff opposes Defendants' proposed plan for phased discovery, which effectively seeks bifurcation of this action into discovery and motion practice relating to Defendants' defenses *before* discovery into Lead Plaintiff's claims. A party seeking to bifurcate trial or discovery has the burden of proving that bifurcation will promote judicial economy and avoid

1  inconvenience or prejudice to the parties.  *See Spectra-Physics Lasers, Inc. v. Uniphase Corp.*,
2  144 F.R.D. 99, 101 (N.D. Cal. 1992).  Defendants cannot meet this burden.  Defendants'
3  proposed bifurcation should be rejected because it is inefficient, unfair, and will only create
4  unnecessary and expensive discovery disputes.

5  First, Defendants' proposed bifurcation is inefficient.  As Defendants admit, their
6  proposed partial motion for summary judgment would not dispose of the case.  And courts in this
7  district have denied bifurcation in securities cases even when an issue was potentially dispositive.
8  *See, e.g.*, *Jones v. Deutch Bank AG*, 2005 WL 8177848, at *3 (N.D. Cal. Nov. 17, 2005) ("Even
9  assuming the potential dispositive nature of the 'securities' issue, that prospect is not enough to
10  warrant a delay of general discovery in a case which has already had an extended discovery
11  stand-down by virtue of motion practice under the PSLRA.").

12  Indeed, *even if Defendants' motion succeeded in its entirety*, the case would still continue,
13  and the parties would still be required to conduct two separate rounds of discovery and two
14  separate rounds of dispositive motion briefing.[1]  In reality, Defendants' suggestion that the case
15  may be narrowed is simply speculation.  On the other hand, if Defendants' contemplated motion
16  fails in its entirety, the parties will have spent months on discovery and a dispositive motion only
17  to start over again on discovery that should have been conducted concurrently from the start.

18  Second, Defendants' proposed plan for phased discovery is unfair because it benefits only
19  Defendants.  Under this proposition, Defendants would avoid any inquiry into the merits of Lead
20  Plaintiff's claims (while Defendants continue to market and sell XRP to the public), and
21  Defendants would presumably receive an extra round of summary-judgment briefing.  Lead
22  Plaintiff, on the other hand, would be stuck on defense for the foreseeable future, litigating
23  Defendants' affirmative defenses rather than pursuing the heart of his claims against Defendants.
24  This would create a significant asymmetry that would seriously disadvantage Lead Plaintiff in

---

[1] Unlike here, in *Giglio v. Monsanto Co.*, 2016 WL 4098285, at *1 (S.D. Cal. Aug. 2, 2016), cited by Defendants, the Court determined that preliminary discovery on causation would be case-dispositive and would spare discovery into 40 years of history of the allegedly dangerous Roundup product.

prosecuting the case and in any settlement discussions.

Third, Defendants' proposed plan will create unnecessary discovery disputes because there is no way to draw a bright line between Defendants' proposed phases of discovery. Evidence pertaining to the issues Defendants suggest for phase one (the statue of repose and privity) will necessarily overlap with evidence pertaining to issues Defendants would relegate to phase two (*e.g.*, damages, whether XRP is a security, issues of class certification). The result will be disputes about the proper scope of discovery requests, interrogatories, deposition topics, and individual deposition questions. Defendants' proposed plan will create an unnecessarily complicated knot, and the Court will be required to referee as the parties work at great expense to untangle it. *See Gonzalez v. Texaco, Inc.*, 2007 WL 661914, at *1 (N.D. Cal. Feb. 28, 2007) (denying phased discovery because it would lead to "increased costs based on an increased potential for discovery disputes").

## 2. Defendants' Position

Once the PSLRA stay is lifted (after the Court rules on Defendants' forthcoming motion to dismiss the FAC), Defendants propose phased discovery that prioritizes two related and potentially case-dispositive issues: (1) whether Plaintiff's federal securities claims are barred by the three-year statute of repose set forth in Section 13 of the Securities Act, 15 U.S.C. § 77m; and (2) whether Plaintiff can establish he was in privity with Defendants as required by Cal. Corp. Code §§ 25110 and 25503. Phased discovery is expressly contemplated by Fed. R. Civ. P. 26(f)(3)(B) and is appropriate where, as here, it will promote efficiency and avoid "extremely broad and potentially wasteful discovery." *Giglio v. Monsanto Co.*, 2016 WL 4098285, at *1 (S.D. Cal. Aug. 2, 2016) ("Here, the Court finds that conducting discovery in phases is an efficient solution that may prevent the parties from engaging in extremely broad and potentially wasteful discovery."); *see also Bastida v. Nat'l Holding Corp.*, 2016 WL 7339236, at *2 (W.D. Wash. Dec. 16, 2016) ("[T]he Court may phase discovery to avoid waste and to promote efficiency."); CMC Transcript at 37:21-38:03, *Resnick v. Walmart.com USA LLC*, No. 09-md-2029-PJH (N.D. Cal. Apr. 20, 2009), ECF 141 (Hamilton, J.) (explaining that an "early summary-judgment motion" and "focused discovery" were appropriate where "it was going to be likely to

pare down the case substantially.").

Phased discovery in this manner was contemplated by the Court's order granting in part and denying in part Defendants' earlier motion to dismiss. Dkt. 85. There, the Court expressly noted that "once the parties have developed a factual record," the court "may revisit its determination on whether defendant made their first bona fide XRP offer to the public before or after August 5, 2016." *Id.* at 19. Later in the same order, the Court suggested that discovery can and should focus on the "relationships between defendants, subsequent purchasers [like Plaintiff], and the exchange," which, at the time of the order was "unclear," because Plaintiff may "ultimately be unable to prove [privity]." *Id.* at 28.

Phasing discovery to focus on the two issues identified above would promote efficiency by avoiding extremely broad—and potentially wasteful—discovery. Defendants expect and anticipate that, after limited discovery into the aforementioned issues of repose and privity (the burden of which would fall almost entirely on Defendants, not Plaintiff), they will move early for partial summary judgment on these grounds. *See* MSJ Hrg. Transcript at 3:2-5, *Resnick*, No. 09-md-2029-PJH (N.D. Cal. June 28, 2011), ECF 160 (Hamilton, J.) (holding hearing "on early summary judgment motion that was authorized"). If successful, there will be no federal or state securities claims remaining in this case and, therefore, no reason to engage in discovery on the much broader issue of whether XRP is a security under federal or California law. Instead, to the extent the case persists at all (which it would not if, for example, Plaintiff's non-securities claims are dismissed), it would be as a relatively narrow action focused on alleged statements by Defendants and whether such statements were false, material, made with scienter, and the cause of Plaintiff's alleged harm (to the extent such claims remain in the case at that time). Moreover, even if Defendants are unsuccessful in narrowing the case, the parties will not have wasted time or resources because discovery into the repose and privity issues was important and necessary, and the parties could then transition to other relevant issues.

Defendants intend to conduct discovery concerning Plaintiff's alleged purchases of XRP, including the information he relied on in making those alleged purchases, and whether he was damaged as a result of the alleged purchases. Defendants will also seek discovery into whether

1  Plaintiff can satisfy the requirements of Rule 23.

### D. Protective Order

The parties have filed a stipulated Protective Order. Dkt. 98.

### E. Proposed Limitations or Modifications to Discovery Rules

*Depositions.* Plaintiff's position is that relief is needed from the limitation on the number of depositions set forth in Rule 30(a)(2). Defendants' position is that Rule 30(a)(2) should control.

*Document Subpoenas to Non-Parties.* The parties agree as follows with respect to nonparties producing materials in response to Fed. R. Civ. P. 45 document subpoenas in this action. The issuing party shall request that non-parties simultaneously produce materials to both Lead Plaintiff and Defendants. If, notwithstanding such request, the non-party does not produce the materials to both sides, the issuing party shall provide a copy of all materials to the other side within three business days after receipt of the materials from the non-party, subject to any limitations in the Protective Order. If a party modifies or extends the time to respond to a Fed. R. Civ. P. 45 document subpoena (whether orally or in writing), it shall simultaneously notify the other party of that that extension, modification, or explanation, including providing copies of any written agreements regarding modification or extension.

*Authenticity Presumptions.* Documents produced by Plaintiff and Defendants in this action shall be presumed to be authentic within the meaning of Fed. R. Evid. 901. If a party serves a specific good-faith written objection to the authenticity of a document that it did not produce from its files, the presumption of authenticity will no longer apply to that document. Any objection to a document's authenticity must be provided with (or prior to) the exchange of objections to trial exhibits. The parties will promptly meet and confer to attempt to resolve any objections. The Court will resolve any objections that are not resolved through this means or through the discovery process.

*Service.* Service of any documents not filed via ECF, including pleadings, discovery requests, subpoenas for testimony or documents, expert disclosure, and delivery of all correspondence, whether under seal or otherwise, shall be by email to all attorneys of record for

the receiving party; the parties will provide each with "service lists" that can be used to serve documents. In the event the volume of served materials is too large for email and requires electronic data transfer by file transfer protocol or a similar technology, or overnight delivery, the serving party will telephone or email the other side's principal designee when the materials are sent to provide notice that the materials are being served. For purposes of calculating discovery response times under the Federal Rules of Civil Procedure, electronic delivery shall be treated the same as hand delivery.

### F.  Stipulated E-Discovery Order

Attached to this filing is a stipulated order governing discovery of ESI. There is one outstanding issue in Section 4(a) on which the parties have been unable to reach agreement and request the Court's assistance.

### 1. Preservation Date

The parties disagree concerning the date range of ESI that should be preserved.

### a. Lead Plaintiff's Position

In May 2011, the Ripple co-founders began developing XRP. And in 2013, Ripple created 100 billion XRP out of thin air. Emails and instant messages among Ripple personnel from the intervening time are likely to contain discussions concerning the nature of XRP, Ripple's plans for introducing and marketing XRP, and whether XRP's developers ever considered XRP to be a security.

In this circuit, "a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). Documents from XRP's developers describing its nature and purpose are clearly relevant to the claims and defenses in this action and should be preserved. Accordingly, Lead Plaintiff proposes that ESI dating May 1, 2011 through the present should be preserved.

Defendants seek to preserve only ESI created on or after January 1, 2015, which would permit Defendants to delete all records of XRP's conception and development, and Ripple's founding—records very likely to be relevant here. If Defendants have maintained until 2020

electronic documents from 2011–2014, those should not be permitted to be deleted now that Defendants face litigation. Nor would the marginal cost of continuing to preserve those documents impose an undue burden on Defendants.

### b. Defendants' Position

Courts in this district "recognize[] that the proportionality principle applies to the duty to preserve potential sources of evidence." *Lord Abbett Municipal Income Fund, Inc. v. Asami*, 2014 WL 5477639, at *3 (N.D. Cal. Oct. 29, 2014).

This case centers on Lead Plaintiff's alleged purchases of XRP in January 2018. FAC ¶ 13. Plaintiffs have taken the position (as they must, to avoid the repose bar) that XRP was not sold to the public prior to (at least) January 2015. Moreover, all of the alleged misrepresentations in the FAC occurred after January 1, 2015. FAC ¶¶ 41-42, 47-48, 51-53, 56-57, 64-75. Lead Plaintiff nowhere alleges any facts relating to the purported development of XRP in 2011, alleging, instead, that XRP was created "out of thin air" years later. Thus, given what Lead Plaintiff has actually pleaded, the proposed January 1, 2015 is appropriate.

Lead Plaintiff's proposed date—May 2011—is not reasonable or proportional to the needs of the case because ESI from this period (to the extent any exists) is not relevant to this matter. According to the FAC, XRP and Ripple did not even come into existence until 2013. FAC ¶ 2. As to the issue of whether XRP is a security, Plaintiff invokes what he terms the "SEC Framework," which provides that "[w]hether a particular digital asset *at the time of its offer or sales* satisfies the *Howey* test depends on the specific facts and circumstances." FAC ¶¶ 129 (emphasis added). Thus, even under Plaintiff's own proffered framework (which Defendants take no position on), what matters is XRP's status as of January 2018 (at the time of Plaintiff's alleged purchased), not what happened more than half-a-decade earlier.

Finally, although Defendants have proposed January 1, 2015 as an acceptable date, this date reflects Defendants effort to reach a good-faith compromise position. Defendants have moved from their initial position, while Plaintiff has not.

### G. Proposed Discovery Plan

The parties' proposals concerning discovery timing are set forth in Section 17 (Proposed

Case Schedule) below.

### H. Current Discovery Disputes

As detailed herein, the parties disagree as to whether the PSLRA stay applies to initial disclosures and discovery in this action. There are no other discovery disputes at this time.

### 9. CLASS ACTIONS

Lead Plaintiff proposes that a class be certified pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). Lead Plaintiff proposes to file a motion for class certification as set forth in his proposed schedule below. At this time, prior to discovery, Defendants deny that this lawsuit should proceed as a class action and reserve their rights to oppose any motion for class certification accordingly.

### 10. RELATED CASES

This consolidated action includes *Greenwald v. Ripple et al.*, 18-490; *Zakinov v. Ripple et al.*, 18-CIV-2845 (Cal. Super. Ct. San Mateo Cty.); and *Oconer v. Ripple Labs, Inc.*, 18-CIV-3332 (Cal. Super. Ct. San Mateo Cty.). Additionally, *Bitcoin Manipulation Abatement LLC v. Ripple Labs, Inc., et al.*, 20-cv-3022, was filed in this District on May 1, 2020, and assigned to the Honorable Richard Seeborg (the "*BMA* Lawsuit"). Lead Plaintiff and Defendants believe the *BMA* Lawsuit is related this Action and, pursuant to Civil L.R. 3-12 and paragraphs 6–7 of this Court's Order Regarding Publication of Notice Pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. §77z-1, Briefing Schedule on Motions for Appointment as Lead Plaintiff, Filing of Lead Plaintiffs' Consolidated Complaint and Defendants' Response to the Consolidated Complaint (Dkt. 35), the Lead Plaintiff and Defendants have filed an Administrative Motion to Consider Whether Cases Should be Related and Consolidated for Pretrial Purposes. Dkt. 96. Finally, in *Simmons v. Ripple Labs, Inc.*, 20-CIV-2236-ER (S.D.N.Y.), Defendants have filed a letter requesting a pre-motion conference regarding an anticipated motion to dismiss, transfer, or stay. If transferred, Defendants would move to have *Simmons* related and consolidated.

### 11. RELIEF

Lead Plaintiff, on behalf of himself and all others similarly situated, seeks damages to the maximum extent authorized by applicable federal and state law. He also seeks injunctive, other

equitable relief as the Court may deem just and proper, and costs and fees.

Defendants deny that Plaintiff is entitled to any of the relief sought and reserve the right to seek attorney's fees and costs if and where allowed. Based on presently known information, Defendants do not anticipate filing a counterclaim in this action.

### 12. SETTLEMENT AND ADR

No settlement discussions have taken place.

### 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties do not consent to a magistrate judge conducting all further proceedings in this case.

### 14. OTHER REFERENCES

The parties do not believe this case is suitable for reference to binding arbitration or a special master.

### 15. NARROWING OF ISSUES

The parties will consider issues that can be narrowed by agreement or by motion, as well as potential means to expedite the presentation of evidence at trial.

### 16. EXPEDITED TRIAL PROCEDURE

The parties agree that this case is not suitable for handling under the Expedited Trial Procedure of General Order No. 64.

### 17. PROPOSED CASE SCHEDULE

Lead Plaintiff proposes the following schedule:

| Event | Date |
| --- | --- |
| Initial Disclosures | May 28, 2020 |
| Initial Case Management Conference | May 28, 2020 |
| Defendants Produce Materials Provided to FinCEN, SEC, and Other Regulatory Agencies | June 12, 2020 |
| Close of Fact Discovery | May 28, 2021 |
| Plaintiffs' Opening Expert Reports | June 18, 2021 |
| Defendants' Expert Reports | July 16, 2021 |

| | |
|---|---|
| Plaintiffs' Rebuttal Expert Reports | August 13, 2021 |
| Close of Expert Discovery | August 27, 2021 |
| Plaintiffs' Motion for Class Certification | September 24, 2021 |
| Defendants' Opposition to Motion for Class Certification | October 22, 2021 |
| Plaintiffs' Reply in Support of Motion for Class Certification | November 19, 2021 |
| Hearing on Motion for Class Certification | December 8, 2021, at 9:00 am |
| Last Day to File Dispositive Motions and *Daubert* Motions | January 7, 2022 |
| Summary Judgment and *Daubert* Oppositions | February 4, 2022 |
| Summary Judgment and *Daubert* Replies | February 25, 2022 |
| Hearing on Dispositive Motions | March 16, 2022, at 9:00 am |
| Final Pretrial Conference | April 13, 2022, at 9:00 am |
| Trial | May 9, 2022 |

Defendants propose that, within 7 days after the PSLRA stay is lifted, the parties meet and confer on and then submit to the court a proposed case schedule.

**18.   TRIAL**

This case will be decided by a jury trial. Lead Plaintiff currently estimates the trial in this case to last 10-14 days. Defendants believe it is premature to discuss the expected length of a trial at this early stage in the proceedings, but based on currently available information, agree with Lead Plaintiff's estimate.

**19.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-15, Lead Plaintiff and Defendants filed Certifications of Interested Entities or Persons. (ECF Nos. 1, 48).

**20.   PROFESSIONAL CONDUCT**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: May 21, 2020

| | |
|---|---|
| By: */s/ Oleg Elkhunovich*<br>Oleg Elkhunovich<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, 14th Floor<br>Los Angeles, CA 90067<br>OElkhunovich@susmangodfrey.com<br>*Counsel for Plaintiff* | By: */s/ Damien J. Marshall*<br>Damien J. Marshall<br>BOIES SCHILLER FLEXNER L.L.P.<br>55 Hudson Yards, 20th Floor<br>New York, NY 10001<br>DMarshall@bsfllp.com<br>*Counsel for Defendants* |

## **ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

DATED: May 21, 2020                                                     */s/ P. Ryan Burningham*
                                                                                            P. Ryan Burningham

Pursuant to the foregoing stipulation, **IT IS SO ORDERED**.

Dated: _____        _____
                                                                 The Honorable Phyllis J. Hamilton
                                                                 UNITED STATES DISTRICT JUDGE