| | |
|---|---|
| James Q. Taylor-Copeland (284743)<br>james@taylorcopelandlaw.com<br>TAYLOR-COPELAND LAW<br>501 W. Broadway, Suite 800<br>San Diego, CA 92101<br>Telephone: (619) 400-4944<br>Facsimile: (619) 566-4341 | Damien J. Marshall (*pro hac vice*)<br>dmarshall@bsfllp.com<br>BOIES SCHILLER FLEXNER LLP<br>55 Hudson Yards, 20th Floor<br>New York, NY 10001<br>Telephone:   (212) 446-2300<br>Facsimile:   (212) 446-2350 |
| Marc M. Seltzer (54534)<br>mseltzer@susmangodfrey.com<br>Steven G. Sklaver (237612)<br>ssklaver@susmangodfrey.com<br>Oleg Elkhunovich (269238)<br>oelkhunovich@susmangodfrey.com<br>Meng Xi (280099)<br>mxi@susmangodfrey.com<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars, 14th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 789-3100<br>Facsimile: (310) 789-3150 | Maxwell V. Pritt (SBN 253155)<br>mpritt@bsfllp.com<br>BOIES SCHILLER FLEXNER LLP<br>435 Tasso Street, Suite 205<br>Palo Alto, CA 94301<br>Telephone:   650.445.6400<br>Facsimile:   650.329.8507<br><br>Menno Goedman (SBN 301271)<br>mgoedman@bsfllp.com<br>BOIES SCHILLER FLEXNER LLP<br>1401 New York Avenue, N.W.<br>Washington, DC  20005<br>Telephone:   202.237.2727<br>Facsimile:   202.237.6131 |
| P. Ryan Burningham (*pro hac vice*)<br>rburningham@susmangodfrey.com<br>SUSMAN GODFREY L.L.P.<br>1201 Third Avenue, Suite 3800<br>Seattle, WA  98101<br>Telephone: (206) 516-3880<br>Facsimile:  206) 516-3883 | *Attorneys for Defendants Ripple Labs, Inc.,<br>XRP II LLC, and Bradley Garlinghouse* |

*Counsel for Lead Plaintiff Bradley Sostack*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re RIPPLE LABS INC. LITIGATION,<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No.   18-cv-06753-PJH<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION** |

Lead Plaintiff Bradley Sostack and Defendants Ripple Labs, Inc., XRP II LLC, and Bradley Garlinghouse, by and through their undersigned counsel, hereby submit this Stipulated Order Re: Discovery of Electronically Stored Information for Standard Litigation for this Court's consideration and respectfully request that the Court enter an Order approving the same.

### 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for Discovery of Electronically Stored Information, and any other applicable orders and rules.

### 2. COOPERATION AND PROPORTIONALITY

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

### 3. LIAISON

Each party shall designate an individual or individuals as e-discovery liaison(s) who must:

(a)  be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution;

(b)  be knowledgeable about the party's discovery efforts; and

(c)  be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, organization, accessibility, format, collection, search methodologies, relevant information retrieval technology, and production of ESI in this matter.

### 4. PRESERVATION

Each party is responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession, custody, or control consistent with Sedona Conference Principle 1, which instructs that "[e]lectronically stored information is generally subject to the same preservation and discovery requirements as other relevant information," and Principle 6, which instructs that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and

technologies appropriate for preserving and producing their own electronically stored information."[1]

The parties agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

(a) Only ESI created or received between [Lead Plaintiff's Position: May 1, 2011] [Defendants' Position: Jan 1, 2015] and the present will be preserved.

(b) The parties agree to work together in good faith to identify the types of ESI they believe should be preserved, and the custodians, agents, or representatives, or general job titles or descriptions of custodians, agents, or representatives for whom they believe ESI should be preserved, e.g., "HR head," "engineer," "marketing manager," etc. The parties shall add or remove custodians as reasonably necessary.

(c) The parties will agree on a reasonable and proportional number of custodians per party for whom ESI will be preserved.

(d) Consistent with Fed. R. Civ. P. 26(b)(2) some data sources may not be reasonably accessible because of undue burden or cost, or may otherwise be non-discoverable under the proportionality factors. In such cases, ESI from these sources will be preserved, but not searched, reviewed, or produced. The parties agree to identify and disclose any such sources.

(e) Because the following sources of data are not reasonably accessible, the parties agree not to preserve or produce ESI from:

(1) Deleted, slack, fragmented, or unallocated data only accessible by forensics.

(2) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

(3) On-line data such as temporary internet files, history, cache, cookies, and the like.

(4) Mobile device activity logs.

(5) Server, system, network, or application logs.

(6) Dynamic fields in databases or log files not stored or retained in the usual course of business.

**5. SEARCH**

(a) The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

---

[1] The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 118 (2018).

(b) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

(c) <u>De-Duplication</u>. Each party is required to produce only a single copy of a responsive document and each party shall de-duplicate responsive ESI (based on MD5 hash values at the document level) across Custodians and across productions. For emails with attachments, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through MD5 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

(d) <u>Email Threading</u>. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

**6.     PRODUCTION FORMATS**

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

The parties also agree that document families will not be separated in production. Thus, "parent" documents shall be produced with and immediately preceding all their "children" attachments.

**7.     PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI. The parties will meet and confer to prioritize the order of productions.

**8.     DOCUMENTS PROTECTED FROM DISCOVERY**

(a) Pursuant to Fed. R. Evid. 502(d) and (e), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in the pending case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

(b) This stipulation incorporates by reference § 11 of the operative Protective Order, which sets forth a clawback procedure.  The producing party may assert privilege or protection over produced documents at any time by notifying the receiving party in writing of the assertion of privilege or protection.  Information that contains privileged matter or attorney work product shall be returned immediately or destroyed if such information appears on its face to have been inadvertently produced, or if requested.  The receiving party must return, sequester, or destroy ESI that the producing party claims is privileged or work product protected as provided in Rule 26(b)(5)(B) and may use such ESI only to challenge the claim of privilege or protection.

(c) Communications involving trial counsel for the parties related to this case that post-date the filing of the complaint need not be placed on a privilege log.

(d) Parties agree to log only the Last In Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last In Time Email.

(e) The parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines.  If the parties redact images on grounds of attorney-client privilege or the work-product doctrine, these redactions shall be logged.  Privilege logs shall be produced within 21 days after documents are withheld or redacted for privilege.

(f) Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**9.     MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: May 21, 2020

By: */s/ Steven G. Sklaver*
Steven G. Sklaver
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
SSklaver@susmangodfrey.com
*Counsel for Plaintiff*

By: */s/ Damien J. Marshall*
Damien J. Marshall
BOIES SCHILLER FLEXNER L.L.P.
55 Hudson Yards, 20th Floor
New York, NY 10001
DMarshall@bsfllp.com
*Counsel for Defendants*

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

DATED: May 21, 2020

*/s/ P. Ryan Burningham*
P. Ryan Burningham

Pursuant to the foregoing stipulation, **IT IS SO ORDERED**.

Dated: _____
The Honorable Phyllis J. Hamilton
UNITED STATES DISTRICT JUDGE

**APPENDIX 1: PRODUCTION FORMAT**

1. **Production Components.** Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

   (a) an ASCII delimited data file (.DAT) using standard delimiters;

   (b) an image load file (.OPT) that can be loaded into commercially acceptable production software (*e.g.* Concordance);

   (c) TIFF images; and

   (d) Document-level .TXT files for all documents containing extracted full text or OCR text.

All spreadsheet files (e.g., Excel), audio, and video files shall be produced in native format to the greatest extent possible. Additionally, any other file type that cannot be converted to TIFF should be produced in native format. If a particular document warrants a different production format, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

2. **Production Media and Access Controls.** Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (*e.g.* FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media shall also identify: (a) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media.

   Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks

7351947v1/016433

in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3. **Data Load Files/Image Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

4. **Metadata Fields.** Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CUSTODIAN, (f) DEDUPED_CUSTODIAN, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH, (j) TEXTFILEPATH, and (k) HASHVALUE, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents correspond directly to the information that exists in the original documents. For redacted electronic documents, metadata fields must be produced only to the extent such fields will not disclose redacted information. Parent-child relationships (the association between an attachment and its parent document)

should be preserved and appropriately reflected in the metadata.

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Individual from whom the documents originated |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| HASHVALUE | MD5 hash value of document |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DOCDATE | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATRECEIVED | Date email was received (format: MM/DD/YYYY) |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| FILESIZE | The original file size of the produced document |

7351947v1/016433

5. **TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. The parties shall take reasonable efforts to process presentations (*e.g.* MS PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

6. **Color.** To the extent an original document is in color but is produced in black and white, a color copy shall be produced upon request by the receiving party.

7. **Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

8. **Native files.** Spreadsheets (*e.g.* MS Excel) will be produced in native format unless redacted, in which instance, spreadsheets shall be produced in TIFF with OCR Text Files. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files shall be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in

paragraph 4 above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. If good cause exists to request production of files, other than those specifically set forth above, in native format, the requesting party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. The parties agree to work out a protocol for use of native files at depositions, hearings, or trial.

9. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the protective order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

10. **Databases and Other Structured Data.** The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party, by, for example, requiring development of reports and/or software code to extract the information. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer to reach an agreement on alternative methods to enable the requesting party to view the ESI.

7351947v1/016433