Damien J. Marshall (Admitted *pro hac vice*)
dmarshall@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone:      (212) 446-2300
Facsimile:      (212) 446-2350

Maxwell V. Pritt (SBN 253155)
mpritt@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone:      (415) 293-6800
Facsimile:      (415) 293-6899

Menno Goedman (SBN 301271)
mgoedman@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC  20005
Telephone:      (202) 237-2727
Facsimile:      (202) 237-6131

*Attorneys for Defendants Ripple Labs Inc.,*
*XRP II, LLC, and Bradley Garlinghouse*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| In re RIPPLE LABS INC. LITIGATION, | Case No. 18-cv-06753-PJH |
|---|---|
| This Document Relates To:<br>All Actions | **NOTICE OF MOTION AND MOTION TO DISMISS COUNTS FOUR, SIX, AND SEVEN OF THE CONSOLIDATED FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   August 26, 2020<br>Time:   9:00 am<br>Place:  Courtroom 3<br>Judge:  Hon. Phyllis J. Hamilton<br><br>Consolidated First Amended Complaint filed: March 25, 2020 |

1

## NOTICE OF MOTION AND MOTION

2      **PLEASE TAKE NOTICE** that on August 26, 2020 at 9:00 am, or as soon thereafter as the matter

3  may be heard, in the courtroom of the Honorable Phyllis J. Hamilton, United States District Judge,

4  Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 3, Defendants

5  Ripple Labs Inc. ("Ripple"), XRP II, LLC ("XRP II"), and Bradley Garlinghouse will move the Court to

6  dismiss Counts Four, Six, and Seven of Lead Plaintiff Bradley Sostack's Consolidated First Amended

7  Complaint for Violations of Federal and California Law, Dkt. 87.  Defendants' Motion is made pursuant

8  to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and seeks dismissal with prejudice.

9  The Motion is based on this Notice of Motion and supporting Memorandum of Points and Authorities,

10  reply briefing in further support of this Motion, any matters of which this Court may take judicial notice,

11  the arguments of counsel, and any such other matters as the Court may consider.

12

13  Dated: June 8, 2020                                   Respectfully Submitted,

14                                                        By:    */s/ Damien J. Marshall*

15                                                        Damien J. Marshall (Admitted *pro hac vice*)
                                                          BOIES SCHILLER FLEXNER LLP

16                                                        55 Hudson Yards, 20th Floor
                                                          New York, NY 10001

17                                                        Telephone: (212) 446-2300
                                                          Email: dmarshall@bsfllp.com

18

19                                                        Maxwell V. Pritt (SBN 253155)
                                                          BOIES SCHILLER FLEXNER LLP

20                                                        44 Montgomery Street, 41st Floor
                                                          San Francisco, CA 94104

21                                                        Telephone: (415) 293-6800
                                                          Email: mpritt@bsfllp.com

22

23                                                        Menno Goedman (SBN 301271)
                                                          BOIES SCHILLER FLEXNER LLP

24                                                        1401 New York Avenue, N.W.
                                                          Washington, DC  20005

25                                                        Telephone: (202) 237-2727
                                                          Email: mgoedman@bsfllp.com

26

27                                                        *Attorneys for Defendants Ripple Labs Inc.,*
                                                          *XRP II, LLC, and Bradley Garlinghouse*

28

1

## **TABLE OF CONTENTS**

2  NOTICE OF MOTION AND MOTION ............................................................................. i

3  MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

4     I.      INTRODUCTION .................................................................................. 1

5     II.     STATEMENT OF ISSUE TO BE DECIDED.................................... 1

6     III.    FACTUAL BACKGROUND ................................................................ 1

7         A.     Defendants ................................................................................. 1

8         B.     XRP and the XRP Ledger ...................................................... 2

9         C.     XRP Sales, Including Plaintiff's Alleged Purchases ............. 3

10     IV.    PROCEDURAL HISTORY................................................................... 3

11     V.     STANDARD OF REVIEW ................................................................. 4

12     VI.    THE FRAUD CLAIMS STILL DO NOT SATISFY RULE 9(b).................................... 4

13         A.     Statements Concerning XRP's Utility .................................... 5

14         B.     Statement that XRP Is at an "All Time High" ....................... 7

15         C.     Statements Concerning Mr. Garlinghouse Being "Long" XRP............................ 8

16         D.     Statement in CNBC Headline .................................................. 9

17         E.     Statements Allegedly Conflating Ripple Enterprise Solutions and XRP ............. 11

18     VII.   PLAINTIFF'S FRAUD CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ..... 15

19     VIII.  CONCLUSION.................................................................................... 15

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS CONSOLIDATED FIRST AMENDED COMPLAINT
Case No. 18-cv-06753-PJH

# TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................... 1

*Beyer v. Symantec Corp.*,
  333 F. Supp. 3d 966 (N.D. Cal. 2018) ......................................................................... 8

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ...................................................................................... 4

*Cansino v. Bank of Am.*,
  224 Cal. App. 4th 1462 (2014) ..................................................................................... 5

*CFTC v. McDonnell*,
  287 F. Supp. 3d 213 (E.D.N.Y. 2018) ......................................................................... 2

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ...................................................................................... 12

*Depot, Inc. v. Caring for Montanans, Inc.*,
  915 F.3d 643 (9th Cir. 2019) ........................................................................... 4, 5, 8, 15

*In re Fusion-io, Inc. Sec. Litig.*,
  No. 13-CV-05368-LHK, 2015 WL 661869 (N.D. Cal. Feb. 12, 2015)........................ 8

*In re GlenFed Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) ........................................................................................ 4

*In re iPass, Inc. Sec. Litig.*, No. C05-00228 MHP,
  2006 WL 496046 (N.D. Cal. Feb. 28, 2006) ................................................................ 7

*In re Phila. Newspapers, LLC*,
  690 F.3d 161 (3d Cir. 2012) .......................................................................................... 9

*Info. Control Corp. v. Genesis One Computer Corp.*,
  611 F.2d 781 (9th Cir. 1980) ........................................................................................ 5

*Kiehn v. Stein*,
  No. C 12-6554 PJH, 2013 WL 1789718 (N.D. Cal. Apr. 26, 2013) ............................ 9

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
  194 F.3d 980 (9th Cir. 1999) ...................................................................................... 15

*Lokhova v. Halper*,
  No. 1:19-cv-832 (LMB/JFA), 2020 WL 963032 (E.D. Va. Feb. 27, 2020) ................ 9

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ....................................................................... 10

*Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*,
  326 F. Supp. 3d 26 (S.D.N.Y. 2018) ...................................................................... 9, 13

*Mostowfi v. i2 Telecom Intern., Inc.*,
   269 Fed. App'x 621 (9th Cir. 2008) ................................................................................ 4

*Neu-Visions Sports, Inc. v. Soren / McAdam / Bartells*,
   86 Cal. App. 4th 303 (2000) .......................................................................................... 7

*Omnicare, Inc. v. Laborers Dist. Counsel Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)....................................................................................................... 10

*Palantir Techs., Inc. v. Palantir.net, Inc.*,
   No. C 10-04283 CRB, 2011 WL 62411 (N.D. Cal. Jan. 7, 2011) ................................. 1

*Reddy v. Nuance Commc'ns, Inc.*,
   No. 11-CV-05632-PSG, 2012 WL 12818726 (N.D. Cal. Mar. 26, 2012)....................... 1

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
   845 F.3d 1268 (9th Cir. 2017) ...................................................................................... 7

*Roe v. Doe*,
   No. C09-0682 PJH, 2009 WL 1883752 (N.D. Cal. June 30, 2009) ....................... 9, 11, 12

*Rubke v. Capital Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ................................................................................ 11, 14

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ...................................................................................... 4

*Salstein v. Ha-Lo Indus., Inc.*,
   82 F. Supp. 2d 1080 (N.D. Cal. 1999) .......................................................................... 5

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ...................................................................................... 15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................... 4, 5

*ZL Tech., Inc. v. Gartner, Inc.*,
   709 F. Supp. 2d 789 (N.D. Cal. 2010) .......................................................................... 5


**Statutes**

California Business and Professions Code Section 17200 ....................................................... 1

California Business and Professions Code Section 17500 ....................................................... 1

California Corporations Code Section 25110 ........................................................................ 3

California Corporations Code Section 25401 ........................................................................ 1

California Corporations Code Section 25503 ........................................................................ 3

California Corporations Code Section 25504 ........................................................................ 3

**Rules**

Federal Rules of Civil Procedure 9(b) ............................................................................ passim

Federal Rules of Civil Procedure 12(b)(6)............................................................................ 1, 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This Court previously dismissed Plaintiff's Fourth, Sixth, and Seventh Counts (collectively, "the Fraud Claims") because the alleged misrepresentations on which those claims depended did not satisfy Rule 9(b).  Dkt. 85 at 40.  By and large, the Court reasoned that Plaintiff failed to "explain how or why" the alleged misrepresentations were actually false.  *Id.* at 32-36.  Plaintiff's Consolidated First Amended Complaint ("FAC") attempts to resuscitate these claims, but fails because Plaintiff still has not alleged with particularity "how" and "why" the alleged misrepresentations are false.  Plaintiff's Fraud Claims should again be dismissed, this time with prejudice.[1]

## II.    STATEMENT OF ISSUE TO BE DECIDED

Whether Plaintiff's Claims for Violation of Section 25401 of the California Corporations Code (Fourth Count), False Advertising in Violation of Business and Professions Code Section 17500 (Sixth Count), and Unfair Competition in Violation of Business and Professions Code Section 17200 (Seventh Count) should be dismissed with prejudice under Rule 12(b)(6) for failure to satisfy the pleading requirements of Rule 9(b).

## III.    FACTUAL BACKGROUND

Solely for purposes of this Motion, Defendants must accept that Plaintiff's "allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### A.    Defendants

Ripple is a company headquartered in San Francisco that provides financial institutions with digital platforms for processing and sending instant, reliable, and cost-effective cross-border payments.  FAC ¶¶ 14, 60, 108.  XRP II is a subsidiary of Ripple, also headquartered in San Francisco.  *Id.* ¶ 15.  Bradley Garlinghouse is Ripple's CEO.  *Id.* ¶ 16.

---

[1] Defendants reserve their right to answer all claims not at issue herein upon resolution of this Motion.  *See Palantir Techs., Inc. v. Palantir.net, Inc.*, No. C 10-04283 CRB, 2011 WL 62411, at *2 (N.D. Cal. Jan. 7, 2011) ("[W]hen a party moves to dismiss certain claims, but does not answer or move to dismiss others, the party has not admitted the allegations in the other claims."); *accord Reddy v. Nuance Commc'ns, Inc.*, No. 11-CV-05632-PSG, 2012 WL 12818726, at *1 (N.D. Cal. Mar. 26, 2012) ("By filing even a partial Rule 12(b) motion, Nuance's time to answer or otherwise respond to the complaint is extended.")

## B.     XRP and the XRP Ledger

Like bitcoin and ether, XRP is a virtual currency.  *Id.* ¶ 2.  The XRP Ledger is an open-source blockchain technology, and XRP is the native cryptocurrency of the XRP Ledger.  *Id.* ¶ 114.[2]  Unlike other cryptocurrencies, which use a resource-draining process of "mining," all 100 billion XRP were created in 2013 and "fully generated prior to its distribution."  *Id.* ¶ 2.  Financial institutions can use XRP to "source liquidity for payments into and out of emerging markets," *id.* ¶ 47, or for "real-time cross-border payments," *id.* ¶ 108.  As of June 2015, Ripple held about 67 billion XRP, while others owned the remaining 33 billion.  *Id.* ¶ 26.[3]

In May 2015, the federal Departments of Treasury and Justice concluded and stated publicly that XRP is a "convertible virtual currency."  Dkt. 70-3 at 5 (cited in FAC ¶ 2 & n.2; *see also id.* ¶¶ 25, 118). This is consistent with the CFTC's position that virtual currency is a commodity.  *See supra* n.2. Nonetheless, Plaintiff alleges that XRP is a "security" under federal and state law, FAC ¶¶ 127–165, and that Defendants have offered and sold XRP without registering with securities authorities, *id.* ¶¶ 1, 7.

More recently, in promulgating a Final Rule to address issues affecting the remittance market, the Bureau of Consumer Financial Protection noted that Ripple offers "both a payments messaging platform to support cross-border money transfers as well as a virtual currency, XRP, which can be used to effect settlement of those transfers."  Decl. of Maxwell V. Pritt ("Pritt Decl."), Ex. A at 34880.  The Bureau added that the "expanded adoption of . . . Ripple's suite of products could similarly allow banks and credit unions to know the exact final amount that recipients of remittance transfers will receive before they are sent." *Id.*  Such developments, the Bureau emphasized, could "provide a great deal of certainty" to market participants.  *Id.*

---

[2] As one court explained (in determining that "virtual currency may be regulated by the CFTC [Commodity Futures Trading Commission] as a commodity"), virtual currencies are "stored electronically in 'digital wallets,' and exchanged over the internet through a direct peer-to-peer system. They are often described as 'cryptocurrencies' because they use 'cryptographic protocols to secure transactions . . . recorded on publicly available decentralized ledgers,' called 'blockchains.'" *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 217, 218 (E.D.N.Y. 2018) (quoting Brief of the CFTC).

[3] As of May 24, 2020, others now hold approximately 44 billion XRP, and another approximately 50 billion XRP are inaccessible to Ripple until released from escrow. *See* https://www.ripple.com/xrp/market-performance.

### C.    XRP Sales, Including Plaintiff's Alleged Purchases

Plaintiff alleges that "Defendants sell XRP wholesale to larger investors and also sell significant quantities of XRP directly to the general public on cryptocurrency exchanges."  FAC ¶ 30.  Specifically, he alleges that XRP can be purchased or traded on more than 50 third-party virtual currency exchanges worldwide.  *Id.* ¶ 47.[4]  These exchanges are secondary markets, where XRP can be sold not only by Defendants, but also by other XRP holders who collectively own billions of XRP, *id.* ¶ 26, "thousands" of whom Plaintiff includes as putative class members who have purchased XRP, *id.* ¶¶ 166-67.  The global XRP market is massive, with over $500 billion in trading over the last two years.[5]

Plaintiff, "a resident of St. Petersburg, Florida," claims to have bought and sold approximately 130,000 XRP between January 1 and 17, 2018, using other cryptocurrency holdings to fund his purchases.  FAC ¶ 13.[6]  He does not allege which exchanges he used, nor does he allege that he purchased XRP from any particular Defendant.  *Id.*  Putting aside that Plaintiff bought and sold XRP (often times for other digital currencies) in about a two-week period, he alleges, without specificity, that he was "motivated" to purchase XRP due to "the promotional activities of Defendants described herein" and that he "saw and relied on Defendants' repeated representations that adoption of XRP by financial institutions and banks would drive demand for XRP."  *Id.*

## IV.    PROCEDURAL HISTORY

Plaintiff initially brought seven claims against Defendants.  These included claims for the alleged unregistered offer and sale of securities in violation of the federal Securities Act and California securities law, Cal. Corp. Code §§ 25110, 25503, 25504.  Plaintiff also brought the Fraud Claims, which were predicated on various alleged statements by Defendants that Plaintiff claimed were false and misleading.

Defendants moved to dismiss all of Plaintiff's claims.  Dkt. 70.  The Court, granting in part and denying in part Defendants' motion, dismissed the Fraud Claims with leave to amend because, among

---

[4] As of the filing of this Motion, XRP "is now listed on over 130 exchanges worldwide."  Q2 2019 XRP Markets Report, https://www.ripple.com/insights/q2-2019-xrp-markets-report/ (cited in FAC ¶ 31 & n.11).

[5] *See* "Total XRP volume (dollar in billions)" in the XRP Markets Reports cited in FAC ¶¶ 31–39 & nn.11-19.

[6] Plaintiff's Certification in connection with his motion to be appointed lead plaintiff in this action indicates that his short-term buying and selling of XRP in fact began on January 3, 2018 and that he continued to buy XRP after he started selling it, suggesting an effort to make a quick profit.  Dkt. 45-1 at 6–8.

1   other reasons, Plaintiff failed to comply with Federal Rule of Civil Procedure 9(b).   Dkt. 85 at 40.   In the

2   FAC, Plaintiff attempts, but fails, to adequately replead his dismissed Fraud Claims to comply with Rule

3   9(b).   FAC ¶¶ 197-206, 214-219, 220-230.

## V.   STANDARD OF REVIEW

5       In its Order on the initial motion to dismiss, the Court correctly held that Plaintiff's Fraud Claims

6   were subject to Rule 9(b)'s heightened pleading requirement.   Dkt. 85 at 32, 39.   Nothing has changed,

7   and Rule 9(b) continues to apply.

8       Rule 9(b) requires plaintiffs alleging fraud to "state with particularity the circumstances

9   constituting fraud[.]"  Fed. R. Civ. P. 9(b).   Under Rule 9(b), allegations of fraud must be "specific enough

10  to give defendants notice of the particular misconduct."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

11  1106 (9th Cir. 2003) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).   Thus "the

12  pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what

13  is false or misleading about the purportedly fraudulent statement, and why it is false."  *Depot, Inc. v.*

14  *Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quoting *Salameh v. Tarsadia Hotel*, 726

15  F.3d 1124, 1133 (9th Cir. 2013)) (internal quotation marks omitted).

16      The requirement to plead falsity is a critical component of Rule 9(b).   A plaintiff who successfully

17  identifies the "who, what, when, where, and how" of a statement, without more, has *not* satisfied Rule

18  9(b).   "A plaintiff must set forth *more* than the neutral facts necessary to identify the transaction."  *Vess*,

19  317 F.3d at 1106 (quoting *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)) (emphasis in

20  original).   To plead fraud with particularity, then, "a complaint must 'set forth an explanation as to why

21  the statement or omission complained of was false and misleading.'"  *Mostowfi v. i2 Telecom Intern., Inc.*,

22  269 Fed. App'x 621, 624 (9th Cir. 2008) (quoting *GlenFed*, 42 F.3d at 1548).

23      Where a plaintiff fails to explain how and why an alleged statement is false, the averments of fraud

24  are insufficiently pled and must be disregarded.   *See Vess*, 317 F.3d at 1107.   Any claims that depend on

25  such inadequate allegations fail and must be dismissed under Rule 12(b)(6).   *Id.* (citations omitted).

## VI.   THE FRAUD CLAIMS STILL DO NOT SATISFY RULE 9(b)

27      Plaintiff's FAC identifies the allegations that purport to contain false statements.   FAC ¶¶ 202,

28  218, 225 (citing FAC ¶¶ 41-42, 47-48, 51-53, 56-57, 64-75).   Each of Plaintiff's Fraud Claims are

1   predicated on this same set of statements.  But these alleged misrepresentations fail to satisfy Rule 9(b)

2   because Plaintiff does not (and cannot) explain how and why these statements are false.  *Depot, Inc.*, 915

3   F.3d at 668.  The alleged misrepresentations thus do not satisfy Rule 9(b) and Plaintiff's Fraud Claims

4   should be dismissed.  *Vess*, 317 F.3d at 1107.

5          We consider each category of statements in turn.

6   **A.      Statements Concerning XRP's Utility**

7          Plaintiff alleges that Ripple and Mr. Garlinghouse falsely claimed XRP has a utilitarian purpose.

8   In support of this claim, Plaintiff points to several alleged statements wherein Mr. Garlinghouse explains

9   or references XRP's utility, as well as a statement allegedly made by another Ripple employee that sets

10  forth the uses for which XRP was designed.  FAC ¶¶ 41-42.

11         To begin, several (if not all) of these allegations relate to non-actionable statements of opinion.

12  *See Info. Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 783 (9th Cir. 1980) (holding that

13  under California law "[s]tatements of opinion are not actionable"); *ZL Tech., Inc. v. Gartner, Inc.*, 709 F.

14  Supp. 2d 789, 795 (N.D. Cal. 2010) ("An expression of pure opinion is protected by the First Amendment

15  and may not form the basis of a civil lawsuit.").  For example, Plaintiff cites an alleged statement wherein

16  Mr. Garlinghouse says, "I *think* if you drive real utility, yes there's going to be demand for that."  *Id.* ¶ 41

17  (emphasis added).  But such predictive statements about what Mr. Garlinghouse *believes* will be true in

18  the future are non-actionable statements of subjective belief that cannot be false.  *See Cansino v. Bank of*

19  *Am.*, 224 Cal. App. 4th 1462, 1469 (2014) ("Statements or predictions regarding future events are deemed

20  to be mere opinions which are not actionable."); *Salstein v. Ha-Lo Indus., Inc.*, 82 F. Supp. 2d 1080, 1086

21  (N.D. Cal. 1999) ("In general, 'predictions as to future events, or statements as to future action by some

22  third party, are deemed opinions, and are not actionable fraud.'").

23         These allegations also fail because Plaintiff does not allege how or why these representations

24  regarding utility are false or misleading.  Tellingly, Plaintiff fails to allege that XRP offers no utility to

25  financial entities and others involved in the settlement of cross-border payments.  Neither does he go

26  further, as Rule 9(b) requires, to explain *why* XRP has no such utility.  This is because he cannot do so, a

27  fact confirmed in May 2020 by the Bureau of Consumer Financial Protection, which explained that Ripple

28  "offer[s] both a payments messaging platform to support cross-border money transfers as well as a virtual

currency, XRP, which can be used to effect settlement of those transfers." Pritt Decl., Ex. A at 34880.

Furthermore, the FAC expressly contradicts Plaintiff's claim that these statements are false by acknowledging that Ripple's "long-term goal is, and always has been, usage of XRP as a liquidity solution," and that Ripple has allegedly entered into partnerships to further this goal, some of which involve the use of XRP by financial institutions. *Id.* ¶¶ 107-10 ("In January 2018, Ripple touted 'a partnership with MoneyGram—one of the world's largest money transfer companies—to use xRapid and XRP for near real-time cross-border payments. In addition, there are a number of other xRapid deals at various stages of completion in the pipeline.'"). In fact, Plaintiff relies on these allegations in support of its argument that XRP is a security. *Id.* Plaintiff's own allegations thus concede that XRP was intended to have, and actually has, utility (Plaintiff's conclusory labels, *id.* ¶ 43, notwithstanding).

While Plaintiff's FAC added a new alleged misrepresentation, *id.* ¶ 42, this does not rectify the deficiency, as this representation is likewise contradicted by other allegations in the FAC. Specifically, Plaintiff alleges that in a submission to a Conference of Bank Supervisors, Ripple wrote that "it holds a substantial amount of XRP, which it sells from time to time, to financial institutions and entities seeking to be market makers. Through these sales, Ripple Labs is able to monetize these assets to fund its operations, specifically the development and adoption of the protocol." *Id.* Yet, rather than allege how or why this representation is false, Plaintiff instead *relies* on it to support his securities claims. *Id.* ¶¶ 143-45, 151-52 (citing Ripple's XRP holdings and sales used to fund its business as evidence that XRP is a security).

Despite these inherent contradictions, Plaintiff attempts to muddy the waters by suggesting that Ripple's statements about XRP's utility are inconsistent with Ripple's XRP holdings or with some individuals' buying of XRP as an investment. *Id.* ¶ 43. But the fact that Ripple holds XRP does not mean that XRP cannot have utility. For example, the FAC alleges that Ripple sells the XRP it holds to financial institutions, *id.* ¶ 42, who then use XRP "as a bridge" to "maximize[] currency liquidity and geographic reach of payments in an efficient way," Pritt Decl., Ex. B at 16 (Ripple's submission to the Conference of State Bank Supervisors cited at FAC ¶ 43). Nor is XRP's utility inconsistent with the allegation that some individuals may purchase XRP "for investment purpose[s]." FAC ¶ 43. Even if true, that allegation does not mean that XRP cannot also have a utilitarian function.

MOTION TO DISMISS CONSOLIDATED FIRST AMENDED COMPLAINT
CASE NO. 18-cv-06753-PJH

Plaintiff's related allegations about a December 2017 tweet that linked to a news article discussing XRP's utility, *id.* ¶¶ 47-48, fail for the same reasons.  The article at issue allegedly states that "XRP's long-term value is determined by its utility—including its ability to help financial institutions source liquidity for payments into and out of emerging markets."  *Id.* ¶ 47.  The Court previously rejected this allegation because Plaintiff failed to explain how or why the statement is false.  Dkt. 85 at 33.  Plaintiff now alleges that the tweet and the article were false when made because "demand for XRP from financial institutions did not represent a significant portion of the demand for XRP[.]"  FAC ¶ 48.

This new allegation does not establish that the tweet was false and does not cure the defect previously identified by the Court.  <u>First</u>, the tweet is a forward-looking statement about XRP's long term value.  *See Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 309-10 (2000) ("It is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions."); *In re iPass, Inc. Sec. Litig.*, No. C05-00228 MHP, 2006 WL 496046, at *4 (N.D. Cal. Feb. 28, 2006) (holding that "forward-looking or generalized statements of optimism . . . are not capable of objective verification" and thus "cannot serve as actionable material statements of fact under federal securities laws.") (internal quotations and citations omitted).  A projection about the long-term drivers of XRP's value is not "capable of objective verification" at the time the statement is made, which is a prerequisite to an actionable misrepresentation.  *See Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017) (holding that "aspirational" statements of opinion can never be actionable).  <u>Second</u>, even adopting Plaintiff's allegations as true, there is no inconsistency between the claim that "XRP's *long-term* value is determined by its utility," FAC ¶ 48 (emphasis added), and the allegation that demand for XRP *at present* was driven only partially by financial institutions.  Thus, Plaintiff has alleged no new facts to explain why this statement regarding the long-term value of XRP was false when it was made, nor can he.

For these reasons, the allegations in Paragraphs 41-42 and 47-48 regarding XRP's utility fail to satisfy Rule 9(b) and cannot support Plaintiff's Fraud Claims.

### B.    Statement that XRP Is at an "All Time High"

Plaintiff claims a retweet by an alleged Ripple employee which reads, "Wow, XRP at all time high! Forget about bitcoin, we're all in on XRP!" is false.  FAC ¶ 51.  This allegation fails to satisfy Rule

9(b) because Plaintiff has not explained how or why this statement is false, and because the statement is otherwise not actionable.  *See Depot*, 915 F.3d at 668.

Plaintiff does not, nor can he, dispute that XRP was at an all-time high in December 2017 when the statement was allegedly made.  This is fatal to his claim that the statement was false when made.  And to the extent Plaintiff is alleging that the statement "we're all in on XRP" is false or misleading, he similarly fails to allege how or why this is false.  Furthermore, this is a "generalized, vague, and unspecified assertion[]" of optimism and excitement, which is non-actionable puffery.  *See Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 976 (N.D. Cal. 2018) (dismissing UCL and FAL claims predicated on puffery); *In re Fusion-io, Inc. Sec. Litig.*, No. 13-CV-05368-LHK, 2015 WL 661869, at *14 (N.D. Cal. Feb. 12, 2015) (holding that "statements projecting 'excellent results', a 'blowout winner' product, 'significant sales gains,' and '10% to 30% growth rate over the next several years' have been held not actionable as mere puffery") (citation omitted).  In sum, this statement cannot form the basis for the Fraud Claims.  And in any event, Plaintiff's other allegations regarding Ripple's XRP holdings and Ripple's decision in May 2017 to place nearly all of its XRP into escrow (which limits how much XRP it could sell), FAC ¶¶ 43, 90, are consistent with Ripple being "all in on XRP."

### C.    Statements Concerning Mr. Garlinghouse Being "Long" XRP

Plaintiff alleges statements by Mr. Garlinghouse that he is "very, very long XRP as a percentage of my personal balance sheet" are false because he allegedly sold some of his XRP in 2017.  FAC ¶¶ 52-53.  But selling a portion of one's XRP holdings does not mean that the seller cannot also be "very, very long" in the same asset as a percentage of his or her own personal balance sheet.  By way of example, a wine collector who amasses a vast collection of fine wines can be said to be "long" on wine as a percentage of her net worth—that does not change if the collector decides to sell a few (or even many) bottles.

Here, Plaintiff has failed to allege "how" or "why" Mr. Garlinghouse's alleged sales permit a plausible inference that he did not remain "very long XRP" as a percentage of his balance sheet.  Plaintiff alleges only that "[r]eview of the XRP ledger indicates that Garlinghouse sold at least 67 million XRP in 2017 and that he sold any XRP he received from Ripple within days of such receipt."  *Id.* ¶ 53.  However, Plaintiff fails to plead how much XRP Mr. Garlinghouse, the CEO of Ripple, held prior to these alleged sales, what percentage of his personal balance sheet the alleged sales constitute, and what percentage of

his personal balance sheet remained invested in XRP after the alleged sales.  Absent such allegations, the Court cannot infer that Mr. Garlinghouse was no longer "very, very long XRP as a percentage of my personal balance sheet."

### D.   Statement in CNBC Headline

Plaintiff also targets a tweet by Mr. Garlinghouse stating, "A good read on why fostering a healthy $XRP ecosystem is a top priority at @Ripple," and linking to a CNBC article titled, "Ripple is sitting on close to $80 billion and could cash out hundreds of millions per month – but it isn't." *Id.* ¶ 56.  Plaintiff contends the CNBC headline was misleading because it "created the false impression that Ripple was not cashing out significant amounts of XRP." *Id.* ¶ 57.  The Court previously held that Plaintiff failed to explain how these statements were false given that Plaintiff's allegation about Defendants selling $167.7 million of XRP over a three-month period, *id.* ¶ 57, was not necessarily inconsistent with fostering a healthy XRP ecosystem.  Dkt. 85 at 34.

As an initial matter, to the extent Plaintiff seeks to hold Defendants liable for the title or content of the CNBC article, this claim necessarily fails.  Linking to an article does not render one liable for the content therein.  *See Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 39 (S.D.N.Y. 2018) (holding that tweet which linked to E! News article did not amount to republication thereof); *In re Phila. Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012) ("[T]hough a link and reference may bring readers' attention to the existence of an article, they do not republish the article."); *Lokhova v. Halper*, No. 1:19-cv-832 (LMB/JFA), 2020 WL 963032, at *10 (E.D. Va. Feb. 27, 2020) (holding that hypertext links "do not constitute republication.").  When properly narrowed to focus on Mr. Garlinghouse's actual statement, the tweet merely offers a non-actionable opinion: that the CNBC article is a "good read" about XRP.  Plaintiff nowhere alleges that Mr. Garlinghouse's subjective opinion as to the CNBC article is false (nor can he, as opinions are neither true, nor false and are not actionable).  *See Roe v. Doe*, No. C09-0682 PJH, 2009 WL 1883752, at *9 (N.D. Cal. June 30, 2009) (Hamilton, J.) ("Statements of opinion are not actionable."); *Kiehn v. Stein*, No. C 12-6554 PJH, 2013 WL 1789718, at *3 (N.D. Cal. Apr. 26, 2013) (Hamilton, J.) (holding "expressions of opinion" are "not actionable").

Plaintiff now concedes that the CNBC headline may be "literally true."  FAC ¶ 57.  He then pivots to add a few conclusory sentences claiming that the headline nonetheless contained material omissions

1    because (1) "Ripple was selling tens of millions of dollars of XRP per month or hundreds of millions of

2    dollars of XRP per quarter," and (2) "it is likely that Ripple sold over one hundred million dollars' worth

3    of XRP during the month preceding January 17, 2018."  FAC ¶ 57.  These new allegations do not show

4    the alleged statement to be false.

5        When claiming fraud by omission, a plaintiff "must describe the content of the omission and where

6    the omitted information should or could have been revealed."  *Marolda v. Symantec Corp.*, 672 F. Supp.

7    2d 992, 1002 (N.D. Cal. 2009).  Plaintiff's FAC contains no such allegations describing where or how

8    CNBC (or Mr. Garlinghouse) should or could have revealed the alleged "omitted information" regarding

9    Ripple's sales.  Plaintiff cannot make this showing because his allegation that the CNBC headline "was

10   unaccompanied by any qualifying language indicating that Ripple was selling tens of millions of dollars

11   of XRP per month" is simply incorrect.  FAC ¶ 57.  The very information Plaintiff claims was omitted—

12   how much XRP Ripple was selling on a monthly basis—is *contained in the very CNBC article linked to*

13   *in Garlinghouse's tweet and cited by Plaintiff.  Id.* ¶ 57 & n.37; *see Omnicare, Inc. v. Laborers Dist.*

14   *Counsel Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015) ("an investor reads each statement . . . in

15   light of all its surrounding text").  The CNBC article clearly states that Ripple "averaged selling 300

16   million XRP a month since mid-2016" but that this represented "a tiny fraction of its holdings."  Pritt

17   Decl., Ex. C at 2.  For readers to discover the allegedly "material information regarding Ripple's XRP

18   sales," FAC ¶ 57, they needed only to read the CNBC article described in Mr. Garlinghouse's tweet as a

19   "good read."  Far from alleging the content of a material omission, Plaintiff has in fact demonstrated that

20   there was no omission at all.

21       The remainder of Plaintiff's allegation, *id.* ¶ 57, which claims "it is likely that Ripple sold over

22   one hundred million dollars' worth of XRP during the month preceding January 17, 2018," i.e., December

23   2017, is contradicted by and inconsistent with other allegations in the FAC.  For example, Plaintiff alleges

24   that "[i]n the fourth quarter of 2017, 'market participants purchased $20.1 million directly from XRP II,'

25   and XRP II sold an additional '$71.5 million worth of XRP' on exchanges."  *Id.* ¶ 37.  Taken as true, in

26   the three months comprising the fourth quarter of 2017, Ripple sold less than $100 million worth of XRP.

27   This precludes even the possibility that Ripple sold more than $100 million in December 2017.  Moreover,

28   having disclosed all of this publicly, Defendants were under no obligation to do so repeatedly thereafter.

10

*See Rubke v. Capital Bancorp Ltd.*, 551 F.3d 1156, 1162-63 (9th Cir. 2009) (holding it "pointless and costly" to compel reprinting of public information).

**E.      Statements Allegedly Conflating Ripple Enterprise Solutions and XRP**

In Paragraphs 64 through 75, Plaintiff lists a series of tweets and articles with statements he attributes to Ripple and Mr. Garlinghouse, which Plaintiff contends "conflate[] the adoption of [Ripple's] Enterprise Solutions with adoption of XRP," FAC ¶ 63.  None of these allegations are false and none of them are actionable:

- An alleged March 20, 2017 tweet by Ripple that linked to a Bloomberg article and stated, "Ripple is the only company in this space with real customers who are really in production." *Id.* ¶ 64.

Plaintiff has not alleged that Ripple lacks "real customers who are really in production."  The FAC actually alleges just the opposite.  *Id.* ¶ 28 ("Ripple sells . . . its enterprise software products and solutions"); *id.* ¶ 66 (alleging that Ripple added ten new customers to the company's "xCurrent enterprise solution").

- An alleged March 24, 2017 tweet by Ripple stating: "The price of #XRP continues to surge showing that people are looking for #bitcoin alternatives."  *Id.* ¶ 65.

Plaintiff fails to allege that, as of March 24, 2017, the price of XRP had not, in fact, increased.  The same is true for the remainder of the statement—"that people are looking for #bitcoin alternatives"—Plaintiff nowhere alleges that purchasers of XRP were not searching for alternatives to bitcoin.  And, even if they had, it would not help, as this is a non-actionable statement of opinion.  *Roe*, 2009 WL 1883752, at *9.

- An alleged April 26, 2017 tweet by Ripple stating "#Ripple welcomes 10 additional customers to our #blockchain #payments network."  FAC ¶ 66.

Plaintiff fails to allege that Ripple did not add ten customers to its payments network by April 26, 2017.  In fact, the linked press release contains statements by several of those customers expressing enthusiasm for their affiliation with Ripple.  Moreover, contrary to Plaintiff's claim, *id.*, any objective reader *would* understand this statement to be in reference to Ripple's enterprise solutions because the linked press release expressly says as much.  *See* Pritt Decl., Ex. D (press release regarding Ripple's enterprise solutions referenced in FAC).

- An alleged May 3, 2017 tweet by Ripple stating, "#Ripple adoption is sparking interest in XRP 'which has had an impressive rally in the last two months' via @Nasdaq."  FAC ¶ 67.

Plaintiff fails to allege that XRP had not had "an impressive rally" in March and April 2017.[7] Thus, Plaintiff has not shown this statement to be false. The remainder of the statement is nothing more than a non-actionable statement of opinion or puffery. *See Roe*, 2009 WL 1883752, at \*9.

- An alleged May 16, 2017 tweet by Ripple stating, "The appeal that Ripple has towards traditional financial institutions is a big advantage it has over Bitcoin." FAC ¶ 68.

This is a non-actionable statement of opinion: it merely expresses the view that Ripple is more appealing to financial institutions than bitcoin, a digital asset created after the 2008 financial crisis that was developed based on anti-establishment principles. That is a subjective, comparative statement that cannot serve as a predicate for Plaintiff's Fraud Claims. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (holding that comparative, subjective statement that competitor was "too small" to handle a business was non-actionable puffery). Moreover, Plaintiff has not alleged any facts to suggest this statement is false.

- An alleged June 29, 2017 tweet by Ripple, linking to an interview with Mr. Garlinghouse on CNBC, stating, "#XRP—up 4000% this year—has shown the market favors a real case for #digitalassets[.]" FAC ¶ 69.

Plaintiff does not allege that XRP's price did not increase by 4000% in the first six months of 2017. Thus, Plaintiff has not shown that aspect of the claim to be false. As to the remainder of the statement—that "the market favors a real case for #digitalassets"—is a generalized, subjective statement of opinion. Such a statement is not actionable. *See Coastal Abstract Serv.*, 173 F.3d at 731.

- An alleged September 11, 2017 statement by Mr. Garlinghouse that "People are looking at the success Ripple has been having as a company, and I think that's increased the value of XRP." FAC ¶ 70.

This statement contains two parts: first, that "people are looking at the success Ripple has been having as a company," and, second, that Mr. Garlinghouse "think[s] that's increased the value of XRP." Plaintiff does not allege the former clause to be false (nor could he, as it is literally true that at least some "people" have "looked" at Ripple's success). And the second clause of this statement reflects Mr. Garlinghouse's opinion, which is non-actionable. *See Roe*, 2009 WL 1883752, at \*9.

- An alleged November 27, 2017 tweet by Mr. Garlinghouse stating, "Ripple & $XRP are giving businesses 'what they want in a #blockchain,'" and linking to a Motley Fool tweet. FAC ¶ 71.

---

[7] In fact, the price of XRP increased six-fold between March 1, 2017 and April 30, 2017.

Insofar as Plaintiff seeks to attribute the Motley Fool tweet to Defendants, he fails, as merely linking to an article is insufficient to create liability. *See Mirage Entertainment*, 326 F. Supp. 3d at 39. Moreover, Mr. Garlinghouse's statement merely suggests that, in his view, Ripple and XRP are attractive to businesses. This is a generalized, subjective statement of opinion that is non-actionable. Moreover, Plaintiff does not (because he cannot) allege it to be false.

- An alleged December 14, 2017 tweet by Ripple stating, "The Japan Bank Consortium launched a Ripple pilot with two large Korean banks—the first time money moves from Japan to Korea over RippleNet." FAC ¶ 72. The tweet allegedly linked to an article on Ripple's website which explained that RippleNet refers to Ripple's xCurrent enterprise product. *Id.*

Plaintiff has not alleged that anything in this tweet is false or misleading. Plaintiff has not alleged that the Japan Bank Consortium did not launch the pilot project or utilize RippleNet. Moreover, to the extent Plaintiff alleges he was misled into believing that this pilot used XRP, his allegation is undermined by the very article allegedly linked to in Ripple's tweets.

- An alleged December 14, 2017 tweet by Ripple linking to a BNN interview with Mr. Garlinghouse in which he allegedly stated "the reason why XRP has performed so well this year, we're solving a real problem, it's a multi-trillion dollar problem around cross-border payments. There is a lot of friction it's very slow it's expensive, we're working with institutions to deal with that, so people got excited. We now have over 100 customers we've announced publicly." *Id.* ¶ 74. Plaintiff further alleges that Mr. Garlinghouse stated in the same interview that "at the end of the day, the value of digital assets will be driven by their utility. If they are solving a real problem, and that problem has scale, and that problem, you know there is real value there, then there will be demand for the tokens and the price will go up. For XRP we have seen because ***it's required***, it's something that we can really reduce the friction, and we're talking about a multi-trillion dollar problem in how cross-border payments flow. And so, I think if you drive real utility, yes there's going to be demand for that." "***XRP is up 100x this year***, and I think it's ***because the problem we are solving people realize is a problem, it's a big problem***." *Id.* ¶ 75 (emphasis in original).

Plaintiff has not alleged that any part of Mr. Garlinghouse's statements to BNN is false or misleading. Plaintiff does not dispute that a problem exists around cross-border payments or that Ripple is positioning XRP as a solution to this problem. As for Mr. Garlinghouse's statement that Ripple has "over 100 customers we've announced publicly," Plaintiff apparently concedes that Ripple did in fact have 100 customers at the time. *Id.* (alleging that at least some "of these 100 customers were using XRP"). Finally, on Mr. Garlinghouse's statements regarding the utility of XRP and its relationship to demand for XRP, Plaintiff has not disputed that XRP has utility, *see supra* Section VI.A, and Mr. Garlinghouse's predictive statements as to future demand are not actionable. These tweets and statements thus cannot support Plaintiff's Fraud Claims.

1   The Court's prior Order applies with equal force to the rehashed allegations in the FAC.   For

2   example, the Court singled out one of these statements—specifically, the allegation that Ripple added ten

3   new customers to its payments network, FAC ¶ 66—and held that Plaintiff had not "explain[ed] how or

4   why defendants' purported failure to specify that the referenced network related to the enterprise solution

5   creates an improper impression that such solution is the same as XRP."  Dkt. 85 at 34 (rejecting Compl. ¶

6   62, now FAC ¶ 66).  The Court further held that the remainder of these statements likewise failed under

7   Rule 9(b), as Plaintiff never explained or alleged why the statements were false.  *Id.* at 35.

8   Plaintiff attempts to cure these defects by adding a single generalized and conclusory paragraph

9   that purports to address the dozen statements preceding it.  FAC ¶ 76.  But nothing in this new paragraph

10   explains "how or why defendants' purported failure to specify that the referenced network related to the

11   enterprise solution creates an improper impression that such solution is the same as XRP."[8]  Dkt. 85 at 34.

12   Instead, Plaintiff assumes it to be true, alleging in conclusory fashion that Defendants "falsely conflate

13   adoption of Ripple Enterprise Solutions with adoption and use of XRP."  FAC ¶ 76.

14   After assuming the very thing he was required to allege with specific facts, Plaintiff attempts to

15   bolster his claim by tying it to his "utility" allegations.  *Id.*  Plaintiff contends that the alleged conflation

16   of Ripple Enterprise Solutions and XRP "create[s] an impression that adoption of Ripple Enterprise

17   Solutions by financial institutions will drive demand for XRP," and that this conflation is improper

18   because XRP was not yet being used by all of Ripple's customers.  *Id.*  But Plaintiff's allegations regarding

19   the utility of XRP have no merit, for the reasons provided in Section VI.A.  And, in any event, the utility

20   allegations are immaterial to the issue of "how or why" the statements allegedly conflate Ripple Enterprise

21   Solutions and XRP.

22   Plaintiff therefore fails to explain how or why these allegations, FAC ¶¶ 64-75, falsely conflate

23   Ripple Enterprise Solutions and XRP.  Nor does he adequately allege that any "impression" created by

24   these statements is false.  His conclusory allegations are not sufficient to meet the particularity

---

26   [8] Moreover, as Defendants noted in their previous Motion to Dismiss, Dkt. 70 at 30, the distinction
between Ripple's enterprise software and XRP was already publicly disclosed, *see* FAC ¶¶ 60-62, and
27   Defendants had no obligation to repeatedly disclose publicly available information. *Rubke v. Capital
Bancorp Ltd.*, 551 F.3d 1156, 1162–63 (9th Cir. 2009) (holding it "pointless and costly" to compel
28   reprinting of public information).

MOTION TO DISMISS CONSOLIDATED FIRST AMENDED COMPLAINT
CASE NO. 18-cv-06753-PJH

requirements of Rule 9(b).

## VII.   PLAINTIFF'S FRAUD CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Plaintiff expressly and exclusively relies on Paragraphs 41-42, 47-48, 51-53, 56-57, and 64-75 of the FAC as the basis for the Fraud Claims.  FAC ¶¶ 202, 218, 225.  But none of these allegations adequately explain why these statements or omissions are false or fraudulent, as is required by Rule 9(b). *Depot*, 915 F.3d at 668.  Separately, Plaintiff still has not remedied his failure "to identify the respective involvement of each defendant in the alleged fraud" and "differentiate which allegations of fraud apply to which defendants," which the Court previously held was an independent basis for dismissing the Fraud Claims.  Dkt. 85 at 36 (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007)).  Even now, Plaintiff alleges only that "Defendants, ***separately or together***, had knowledge of the falsity or misleading nature of a statement or omission made in connection with the offers or sales of XRP."  FAC ¶ 204 (emphasis added).  This is improper and Plaintiff's claims should be dismissed with prejudice as a result.

Leave to amend should be denied because amendment would be futile, as evidenced by the failure of the amendments that led to this motion.  *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).  Plaintiff has now twice failed to plead allegations sufficient to support the Fraud Claims.  A third attempt should not be permitted.

## VIII.   CONCLUSION

Plaintiff has not cured the defects that led the Court to dismiss his Fraud Claims.  Dkt. 85 at 40. Despite a few new conclusory allegations, the FAC still fails to meet the heightened pleading requirements imposed by Rule 9(b).  Defendants thus respectfully request that the Court dismiss Plaintiff's Fraud Claims with prejudice.

1    Dated: June 8, 2020                                    Respectfully Submitted,

2

3                                                           By:    */s/ Damien J. Marshall*
                                                                   Damien J. Marshall (Admitted *pro hac vice*)
4                                                                  BOIES SCHILLER FLEXNER LLP
                                                                   55 Hudson Yards, 20th Floor
5                                                                  New York, NY 10001
                                                                   Telephone: (212) 446-2300
6                                                                  Facsimile:  (212) 446-2350
                                                                   Email: dmarshall@bsfllp.com
7

8                                                                  Maxwell V. Pritt (SBN 253155)
                                                                   BOIES SCHILLER FLEXNER LLP
9                                                                  44 Montgomery Street, 41st Floor
                                                                   San Francisco, CA 94104
10                                                                 Telephone: (415) 293-6800
                                                                   Facsimile:  (415) 293-6899
11                                                                 Email: mpritt@bsfllp.com

12
                                                                   Menno Goedman (SBN 301271)
13                                                                 BOIES SCHILLER FLEXNER LLP
                                                                   1401 New York Avenue, N.W.
14                                                                 Washington, DC  20005
                                                                   Telephone: (202) 237-2727
15                                                                 Facsimile: (202) 237-6131
                                                                   Email: mgoedman@bsfllp.com
16

17                                                                 *Attorneys for Defendants Ripple Labs Inc.,*
                                                                   *XRP II, LLC, and Bradley Garlinghouse*
18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS CONSOLIDATED FIRST AMENDED COMPLAINT
CASE NO. 18-cv-06753-PJH