**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Marc M. Seltzer (54534)
Steven G. Sklaver (237612)
Oleg Elkhunovich (269238)
Meng Xi (280099)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
oelkhunovich@susmangodfrey.com
mxi@susmangodfrey.com

P.  Ryan Burningham (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
rburningham@susmangodfrey.com

James Q. Taylor-Copeland (284743)
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
james@taylorcopelandlaw.com
Telephone: (619) 400-4944
Facsimile: (619) 566-4341

*Counsel for Lead Plaintiff Bradley Sostack*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re RIPPLE LABS, INC. LITIGATION<br><br>This Document Relates to:<br><br>All Actions | Case No. 4:18-cv-06753-PJH<br><br>**DISCOVERY MATTER**<br><br>**LEAD PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND PRIVILEGE LOG**<br><br>DATE:    March 25, 2021<br>TIME:    1:30 p.m.<br>PLACE:  Courtroom 3, Oakland<br><br>Consolidated FAC Filed:  March 25, 2020<br>Trial Date:  July 17, 2023 |

## NOTICE OF MOTION

Please take notice that Lead Plaintiff Bradley Sostack hereby moves for an order compelling Defendants to produce improperly withheld email communications with the SEC and document-retention policies. Plaintiff also moves for an order compelling Defendants to produce unredacted versions of improperly redacted documents, and to produce a log of documents redacted or withheld on the basis of privilege. This motion will be heard on March 25, 2021 at 1:30 p.m.

## STATEMENT OF RELIEF REQUESTED

Plaintiff seeks an order compelling Defendants to produce the following: (1) all Defendants' emails to and from the SEC concerning XRP; (2) documents sufficient to show Defendants' document-retention policies from January 1, 2015, to the present; (3) unredacted versions of improperly redacted documents; and (4) a privilege log of documents that have been redacted or withheld for privilege.

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 6
BACKGROUND ...................................................................................................................... 7
    I.      Plaintiff's Document Requests.................................................................................... 7
    II.     Communications with the SEC (RFP No. 3) .............................................................. 7
    III.    Document-Retention Policies (RFP No. 24)............................................................... 8
    IV.    Defendants' Improper Withholding and Redaction of Documents............................... 9
ARGUMENT ............................................................................................................................ 9
    I.      Defendants should produce their email communications with the SEC. .............................. 9
    II.     Defendants should produce their settlement communications with the SEC. ................... 11
    III.    Defendants should produce their document-retention policies. ......................................... 13
    IV.    Defendants should log or remove their redactions............................................................ 14
         A.     Defendants should log any redactions for privilege. .................................................. 14
         B.     Defendants should remove all other redactions........................................................... 16
    V.     Defendants should log documents withheld for privilege................................................. 18
CONCLUSION........................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burlington N. & Santa Fe Ry. Co. v. United States*,
   408 F.3d 1142 (9th Cir. 2005) ................................................................................................... 15

*Cholakyan v. Mercedes-Benz USA, LLC*,
   2011 WL 7575379 (C.D. Cal. Dec. 20, 2011) ............................................................................ 14

*Church & Dwight Co. v. Mayer Labs., Inc.*,
   2011 WL 5827222 (N.D. Cal. Nov. 18, 2011) ..................................................................... 11, 12

*Conde v. Open Door Mktg.*,
   LLC, 2018 WL 1248094 (N.D. Cal. Mar. 12, 2018) .................................................................. 12

*Epstein v. MCA, Inc.*,
   54 F.3d 1422 (9th Cir. 1995) ....................................................................................................... 10

*Evon v. Law Offices of Sidney Mickell*,
   2010 WL 455476 (E.D. Cal. Feb. 3, 2010) ........................................................................... 17, 18

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2015 WL 13756260 (N.D. Cal. July 31, 2015) .......................................................................... 12

*In re Subpoena to PayPal Holdings, Inc.*,
   2020 WL 3073221 (N.D. Cal. June 10, 2020) ........................................................................... 10

*Laub v. Horbaczewski*,
   331 F.R.D. 516 (C.D. Cal. 2019) ................................................................................................ 17

*Live Nation Merch., Inc. v. Miller*,
   2014 WL 1877912 (N.D. Cal. May 9, 2014) .............................................................................. 17

*Lucy v. Zehmer*,
   84 S.E. 2d 516 (Va. 1954) ........................................................................................................... 11

*McMorow v. Mondolez Int'l, Inc.*,
   2019 WL 3852498 (S.D. Cal. Apr. 19, 2019) ............................................................................. 14

*Sharma v. BMW of North America LLC*,
   2016 WL 1019668 (N.D. Cal. Mar. 14, 2016) ..................................................................... 13, 14

*Sols. Inc. v. Wells Fargo Bank, N.A.*,
   254 F.R.D. 568 (N.D. Cal. Oct. 22, 2008) .................................................................................. 12

*Vondersaar v. Starbucks Corp.*,
   2013 WL 1915746 (N.D. Cal. May 8, 2013) .............................................................................. 13

**Rules**

Fed. R. Civ. P. 5.2 ...................................................................................................................... 17

Fed. R. Civ. P. 26 ................................................................................................................. 10, 15

Fed. R. Civ. P. 34 ........................................................................................................... 8, 13, 15

Fed. R. Evid. 408 ........................................................................................................................ 12

**Other Authorities**

Moore's Fed. Prac. § 3.13[2][a] ................................................................................................. 13

Wright & Miller, Fed. Prac. & Proc. § 5507 (1st ed.) ............................................................... 15

# INTRODUCTION

This is a securities case. Plaintiff alleges that Defendants Ripple Labs, Inc., XRP II, LLC, and Bradley Garlinghouse (Ripple's CEO) made hundreds of millions of dollars selling XRP tokens in violation of federal and state securities laws. Plaintiff recently learned that the SEC has been investigating Defendants for precisely the same conduct for the last two-and-a-half years. On December 22, 2020, having determined that Defendants violated the securities laws, the SEC filed an enforcement action in the Southern District of New York.[1]

Defendants' communications with the SEC during the SEC's investigation are plainly relevant to the claims and defenses in this action. Defendants conceded as much and have produced formal letters they sent to and received from the SEC. However, Defendants are categorically refusing to produce their email correspondence with the SEC. Defendants are also categorically refusing to produce documents they claim reflect settlement discussions with the SEC. Neither of Defendants' positions is supportable, so those documents should be produced.

Separately, Defendants have withheld or redacted thousands of documents, some apparently on the basis of privilege and others for unstated reasons. However, Defendants have failed to (and are now refusing to) provide a privilege log for withheld and redacted documents. The rules are clear: Privilege claims must be explicit and specific. Defendants should provide a privilege log, and any redactions made for reasons other than privilege (*e.g.*, relevance, confidentiality, or privacy) should be removed.

---

[1] *See* "SEC Charges Ripple and Two Executives with Conducting $1.3 Billion Unregistered Securities Offering," SEC Press Release, Dec. 22, 2020. Available at https://www.sec.gov/news/press-release/2020-338. The SEC complaint is available at https://www.sec.gov/litigation/complaints/2020/comp-pr2020-338.pdf.

# BACKGROUND

## I. Plaintiff's Document Requests

On October 8, 2020, Plaintiff served his first requests for the production of documents, which included the following requests:

> **RFP No. 3:** All communications with the SEC concerning XRP and all documents concerning such communications. For clarity, this includes all correspondence *to* the SEC and all correspondence received *from* the SEC.

> **RFP No. 24:** Documents sufficient to show Your document destruction or retention policy during the Relevant Period [January 1, 2015, through the date of document production], including with respect to e-mail, text messages, Slack and other instant messages, and other electronic media storage or devices.

*See* Burningham Decl. Ex. 1 at 10, 13. Plaintiff's requests contained other requests for documents relevant to the claims and defenses in this case. *See generally id.*

Pursuant to an agreement between the parties, Plaintiff granted Defendants' request for an extension to respond to these requests by December 9, 2020. *See* Joint Case Mgmt. Statement, ECF No. 122 at 5. Under the same agreement, Defendants promised to respond to these requests by December 9, 2020, and to produce "relevant, non-privileged documents and communications that Defendants previously provided to or received from the SEC . . . by December 23, 2020." *Id.* On December 9, 2020, Defendants served their responses and objections.

## II. Communications with the SEC (RFP No. 3)

Defendants' response to Plaintiff's RFP No. 3 stated:

> In addition to the General Objections set forth above, Defendants object to this Request on the grounds that it is vague and ambiguous as to whose communications are requested. To the extent this Request seeks Defendants' communications with the SEC, Defendants further object to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks every communication with the SEC even non-substantive communications that have no relevance to Plaintiff's claims, and every document about such communications. Defendants further object to this Request to the extent that it seeks the private, confidential, proprietary, or otherwise privileged or legally protected information of Defendants and/or third parties. Defendants further object that the phrase "all documents concerning such communications" is vague and ambiguous.

> Subject to and without waiving the foregoing objections, Defendants will produce all documents Defendants previously produced to the SEC, and non-privileged ***formal correspondence*** between the SEC and Defendants, that are relevant to Plaintiff's claims.

Burningham Decl. Ex. 2 at 6–7 (emphasis added).

Notably, Defendants' response to RFP No. 3 departed significantly from the commitment Defendants made to Plaintiff and to the Court in the Joint Statement. In the Joint Statement, Defendants promised to produce "documents and communications that Defendants previously provided to or received from the SEC." ECF No. 122 at 5. But Defendants' response to RFP No. 3 promised to produce only "formal correspondence" between Defendants and the SEC. Burningham Decl. Ex 2 at 7. In subsequent meet-and-confer discussions, Defendants explained that they are withholding (1) "informal" correspondence with the SEC, which they broadly define as all "correspondence not on letterhead,"[2] and (2) documents reflecting settlement discussions with the SEC. *See* Burningham Decl. ¶ 5. Defendants erroneously claim both categories of documents are irrelevant. *Id.*

### III. Document-Retention Policies (RFP No. 24)

Defendants' response to Plaintiff's RFP No. 24 stated:

> In addition to the General Objections set forth above, Defendants object that this Request seeks information that is not relevant to any claim or defense in this action and not reasonably likely to lead to discovery of relevant information. Defendants further object that this Request seeks information protected by the attorney-client privilege and/or attorney work-product doctrine. Defendants further object to the extent this Request attempts to impose different or additional obligations on Defendants beyond those in the parties' ESI Stipulation, ECF No. 121.

Burningham Decl. Ex. 2 at 19.

Notably, Defendants' response to RFP No. 24 listed boilerplate objections but did not specify whether any responsive materials would be withheld based on those objections. *Contra* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being

---

[2] Counsel for Plaintiff understand this "informal" correspondence to be limited to email. However, to the extent Defendants are withholding other "informal" communications, this motion seeks discovery of those communications also.

withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."). However, in subsequent meet-and-confer discussions, Defendants refused to produce any documents showing their document-retention policies. *See* Burningham Decl. ¶ 6. Defendants incorrectly claim document-retention policies are irrelevant absent evidence of spoliation. *See id.*

### IV.   Defendants' Improper Withholding and Redaction of Documents

On December 16, 2020, Defendants produced documents numbered RPLI_00000001–301743. *See* Burningham Decl. ¶ 7. And on January 11, 2020, Defendants produced documents numbered RPLI_00301744–302072. *See* Burningham Decl. ¶ 8. Within these productions are 540 documents marked "Withheld for Privilege." *See, e.g.*, Burningham Decl. Ex. 3. There are also over a thousand documents that have been redacted. Some redactions appear to be for privilege. *See, e.g.*, Burningham Decl. Ex. 4 (redacting emails to and from ████████ ████ but without claiming privilege). Other redactions appear to be intended solely to prevent Plaintiff's counsel from seeing Defendant Bradley Garlinghouse's XRP holdings and transactions. *See, e.g.*, Burningham Decl. Ex. 5 (marked "Attorneys' Eyes Only" and redacting ████████ ████████████████████). In some documents, Defendants have labeled their redactions as, simply, "Redacted." *See, e.g.*, Burningham Decl. Ex. 4. In other documents, Defendants have instead blacked out information without comment. *See, e.g.*, Burningham Decl. Ex. 5. Defendants have refused to provide a log for these withholdings and redactions. *See* Burningham Decl. ¶ 14.

## ARGUMENT

### I.   Defendants should produce their email communications with the SEC.

RFP No. 3 seeks Defendants' communications with the SEC concerning XRP. Defendants have produced their "formal" communications with the SEC (those on letterhead). But Defendants have withheld all other communications with the SEC based on the unsupportable position that when communications with the SEC are not on formal letterhead, they are irrelevant. There is no basis in the law for allowing Defendants to make this categorical determination.

Rule 26(b) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R.

Civ. P. 26(b)(1).  Relevant information need not be admissible to be discoverable, *see id.*, and "[c]ourts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Subpoena to PayPal Holdings, Inc.*, 2020 WL 3073221, at *2 (N.D. Cal. June 10, 2020).  The Ninth Circuit favors a broad scope of discovery because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995).

The relevance of Defendants' communications with the SEC concerning XRP is straightforward:  Plaintiff alleges that Defendants violated federal securities laws by selling XRP, and for more than two years, the SEC has been investigating precisely the same issue.  Defendants' communications with the SEC concerning that investigation will help Plaintiff identify key witnesses, document custodians, meetings, communications, and statements—all of which are central to proving his claims.  Moreover, Defendants' communications with the SEC will help Plaintiff identify the evidence Defendants intend to marshal in support of their defenses, especially their affirmative defense that XRP is not a security.  Indeed, in an action for violation of federal securities laws, few categories of documents could be more relevant than a defendant's communications with the SEC that occurred as part of the SEC's investigation into violations of the same laws—particularly where that investigation resulted in the SEC filing an enforcement action.

Defendants have conceded that their communications with the SEC are relevant by producing "formal" communications.  But Defendants are withholding as irrelevant what they deem "informal" communications.  Consequently, the question is not whether Defendants' communications with the SEC are relevant—they plainly are—but whether Defendants' categorical determination that only "formal" communications are relevant is supportable.  It is not.

Defendants have failed to identify any authority and Plaintiff has not found any supporting Defendants' asserted distinction between "formal" and "informal" communications (*i.e.*, that communications with investigatory agencies on letterhead are relevant but communications with the same agencies by any other means are *per se* irrelevant).  That is because relevance is not

defined by medium but by substance. A napkin can be as relevant as an affidavit. *See Lucy v. Zehmer*, 84 S.E. 2d 516 (Va. 1954).

Defendants claim that their categorical refusal to produce non-letterhead communications is justified because "all relevant substantive communications between Ripple's outside counsel and the SEC Enforcement staff occurred by formal correspondence, not by email." Burningham Decl. Ex. 6 at 2. But even the most mundane scheduling emails will reveal the timing of meetings, their participants, their subject matter, and possibly other information. Consequently, courts in this district have required production of emails with investigatory agencies, even after all documents "formally" delivered to those agencies had been produced. *See Church & Dwight Co. v. Mayer Labs., Inc.*, 2011 WL 5827222, at *2, 4 (N.D. Cal. Nov. 18, 2011) (ordering production of all documents provided to the FTC, including emails, even after all documents sent to FTC pursuant to subpoena had been produced).

Defendants also claim that their refusal is justified by the "burden of collecting more than two and a half years' worth of informal correspondence." Burningham Decl. Ex. 6 at 2. But collecting correspondence with the SEC would be simple, quick, and inexpensive: Search for and produce all emails Defendants sent to or received from addresses for the relevant individuals at the SEC. Privilege review would be unnecessary because Defendants' emails to the SEC cannot be privileged given the SEC is an adverse third party. *See Church & Dwight Co.*, 2011 WL 5827222, at *3 ("The Court also concludes that C&D waved any attorney work product protection for correspondence, email and 'white papers' it voluntarily submitted to the FTC, an adversary.").

In sum, the scope of discovery is broad, and Defendants have already conceded that their communications with the SEC are relevant and discoverable. There is no support for their distinction between "formal" and "informal" communications. They should be compelled to produce the purportedly "informal" communications they are withholding.

**II.     Defendants should produce their settlement communications with the SEC.**

Defendants are also withholding what they assert are settlement communications with the SEC. Recognizing that there is no "federal settlement privilege," *see In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 13756260, at *3 (N.D. Cal. July 31, 2015), Defendants have

abandoned their original objection to producing information protected by FRE 408, *see* Burningham Decl., Ex. 2 at 2 ("Defendants object to the Requests to the extent they seek . . . information that is inadmissible under Federal Rule of Civil Procedure [*sic*] 408."). Instead, Defendants now contend that settlement communications are categorically irrelevant. Defendants are wrong.

Settlement communications with investigating agencies are generally discoverable. *See Church & Dwight Co.*, 2011 WL 5827222, at *3–4 (finding settlement discussions with FTC relevant and ordering production of all documents disclosed to FTC during FTC investigation, including settlement communications). And courts in this district routinely order production of settlement discussions in a variety of contexts. *See, e.g.*, *Conde v. Open Door Mktg.*, LLC, 2018 WL 1248094, at * (N.D. Cal. Mar. 12, 2018) (in FLSA case, ordering production of communications regarding settlement); Phoenix *Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582–85 (N.D. Cal. Oct. 22, 2008) (in patent case, ordering production of settlement communications and noting communications were relevant to show party's position with respect to liability and damages and could reveal additional evidence, and noting that "the substance of settlement discussions" is not "*per se* irrelevant to a proceeding in federal court, because Rule 408 itself authorizes the admission into evidence of such materials except for limited purposes"); *Vondersaar v. Starbucks Corp.*, 2013 WL 1915746, at *4 (N.D. Cal. May 8, 2013) (in ADA case, finding settlement materials relevant and ordering production).

This case is no different. Defendants' settlement communications with the SEC are relevant because they cover precisely the same subject matter at issue in this action. For two-and-a-half years, the SEC investigated Defendants' sale of XRP. After that thorough investigation, the SEC determined that Defendants sold unregistered securities and filed suit. Any settlement communications between Defendants and the SEC necessarily addressed the central issue in the instant action: Is XRP a security? Those communications will help identify witnesses, facts, and documents, which Plaintiff may use at trial to support his claims. They will reveal evidence Defendants believe support their defense that XRP is not a security, which will expedite discovery.

1  They will show Defendants' position with respect to liability and damages, which will streamline
2  issues for trial and encourage settlement. They are relevant and should be produced.

3  **III.   Defendants should produce their document-retention policies.**

4  Defendants are further withholding documents responsive to RFP No. 24, which seeks
5  documents "sufficient to show [Defendants'] document destruction or retention policy" from
6  January 1, 2015 to the present. Burningham Decl. Ex. 1 at 13. Defendants claim that their retention
7  policies are irrelevant absent evidence of spoliation. But again, they are wrong.[3]

8  Courts in this district have addressed this issue directly and concluded that document-
9  retention policies are relevant, even early in discovery where there is no evidence of spoliation. In
10 *Sharma v. BMW of North America LLC*, 2016 WL 1019668, at *3 (N.D. Cal. Mar. 14, 2016), as
11 here, the plaintiffs sought the defendant's document-retention policies in their first set of document
12 requests. Despite no evidence of spoliation, the court held that the policies were relevant because
13 they would "help Plaintiff determine the universe of responsive documents and evaluate any gaps
14 in document production." *Id.* at *4. The court also noted that production of the policies appeared
15 to be "contained within a modest number of pages, and in light of this, the burden or expense of
16 producing this information is likely minimal, while the benefit of such information would be
17 substantial" because knowledge of those policies would allow the plaintiffs "to assess the
18 company's document production, determine whether any relevant documents are lacking, and
19 evaluate whether additional discovery is necessary in [the] case." *Id.* Other courts in this circuit
20 have reached similar conclusions. *See, e.g.*, *McMorow v. Mondolez Int'l, Inc.*, 2019 WL 3852498,
21 at *3–4 (S.D. Cal. Apr. 19, 2019) (ordering production of policies without requiring showing of

---

[3] As a threshold matter, Defendants may have waived their objections to RFP No. 24 by failing to comply with the federal rules in responding to it. Despite having over two months to respond to Plaintiff's RFPs, Defendants' response to RFP No. 24 listed boilerplate objections but failed to "state whether any responsive materials are being withheld on the basis" of those objections. *Contra* Fed. R. Civ. P. 34(b)(2)(C). Failure to comply with Rule 34's provisions in making objections can waive those objections. *See* 7 Moore's Fed. Prac. § 3.13[2][a] ("If the responding party fails to make a timely objection, or fails to comply with the provisions of the Rule regarding the manner of making objections, the party may be held to have waived its objections.") (listing cases). On January 27, 2021, counsel for Plaintiff identified Defendants' failure to comply with this and other rules in their responses and asked Defendants to update their responses to comply with the rules. On January 29, 2021, counsel for Defendants responded that Defendants would consider the request, but, to date, Defendants have neither updated their responses nor agreed to do so. *See* Burningham Decl. ¶ 15.

13
PL.'S MOT. TO COMPEL PRODUCTION OF DOCUMENTS
7905311v1/016433

spoliation); *Cholakyan v. Mercedes-Benz USA, LLC*, 2011 WL 7575379, at *15 (C.D. Cal. Dec. 20, 2011) (same).

The reasoning in *Sharma* applies equally here. Plaintiff has not requested "all documents" concerning Defendants' document-retention policies. Instead, he has requested documents sufficient to show those policies. Producing the policies themselves would suffice, and the production would likely be limited to a few dozen pages at most. Reviewing those documents would permit counsel for Plaintiff to assess Defendants' ongoing document production, identify gaps in production, and evaluate whether additional discovery is necessary. Thus, the documents are relevant, and the burden is light. The documents should be produced.

**IV.     Defendants should log or remove their redactions.**

In addition to withholding relevant, discoverable documents, Defendants have also produced thousands of documents littered with unexplained redactions. But Defendants have refused to produce a privilege log, requiring Plaintiff's counsel to guess at the reason for each of the tens of thousands of redactions in Defendants' swiss-cheese production. If the redactions are for privilege, they should be logged. If the redactions are for privacy, confidentiality, or relevance, they should be removed.

**A.     Defendants should log any redactions for privilege.**

To the extent Defendants' redactions are based on a claim of privilege, Defendants' unexplained redactions are insufficient to assert a privilege, even coupled with Defendants' boilerplate privilege objections. *See Burlington N. & Santa Fe Ry. Co. v. United States*, 408 F.3d 1142, 1149 (9th Cir. 2005) ("We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."). Instead, Defendants must produce a rules-compliant privilege log—one that allows Plaintiff and this Court to evaluate Defendants' privilege claims. *See* Fed. R. Civ. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected,

7905311v1/016433

will enable other parties to assess the claim."); Wright & Miller, Fed. Prac. & Proc. § 5507 (1st ed.) ("Clearly the burden to establish privilege is on the party claiming the privilege and a bald assertion in a privilege log is not sufficient to shift the burden of proof."). Failure to produce such a log can waive privilege. *See Burlington*, 408 F.3d at 1149 (upholding district court order to produce documents where untimely privilege assertion waived privilege).

Defendants' basis for refusing to provide a log for privilege redactions is pure gamesmanship. They say: Because the documents were provided in response to RFP No. 3, which seeks Defendants' correspondence with the SEC, and because the documents were provided to the SEC with redactions in place, Defendants have no obligation to remove or explain the redactions. This argument is triply wrong.

*First*, the argument flatly contradicts the federal rules, which require, without exception, that when a party withholds information based on privilege, the party "must" expressly make the claim and describe the nature of the things not produced. *See* Fed. R. Civ. P. 26(b)(5)(A).

*Second*, the argument incorrectly assumes that all redacted documents are responsive only to RFP No. 3. Not so. For example, Defendants have produced slide decks from Ripple's board meetings. The slide deck attached as Exhibit 7 contains pages of redactions related to legal updates. *See* Burningham Decl. Ex. 7 at 55–56. That document is responsive not only to RFP No. 3 (because it was produced to the SEC), but also, for example, to RFP Nos. 2 (documents showing Ripple employees and job titles), 41 (documents showing programmatic sales of XRP on cryptocurrency exchanges), and 44 (documents concerning demand for XRP from financial institutions). *See id.* at 2 (listing board members), 35 (showing programmatic sales), and 8–11 (addressing bank adoption). Moreover, Defendants' own responses to RFP Nos. 5–8, 10–13, 16–17, 20, 25–29, 31–35, 40–43, 47–48, 54, 56–57, 60–62, 67, 69, 71–72, 77–78, 80–82, 86–90, 92–93, and 97 ***all*** explain that documents responsive to those requests were produced in response to RFP No. 3. *See* Burningham Decl. Ex. 2, *passim* ("certain documents responsive to this Request will be included in the forthcoming production of documents responsive to Request No. 3"). Defendants' pedantic interpretation of RFP No. 3 cannot support Defendants' refusal to log privilege redactions where the redacted documents are also responsive to other RFPs.

1    *Third*, the argument is self-defeating because Defendants produced a privilege log to the
2    SEC.  On March 30, 2020, counsel for Defendants (the same counsel representing Defendants in
3    the instant action) explained Defendants' redactions in a letter to the SEC.  He wrote:



10   Burningham Decl. Ex. 8 at 1 (emphasis added).  Thus, Defendants contend that RFP No. 3 only
11   requires the production of documents exactly as they were produced to the SEC.  But at the same
12   time, Defendants are refusing to produce ███████████████████████████████████████
13   ███████████████████████████████████████████████████████████████████████████.

14   Defendants have no leg to stand on.  The federal rules require parties claiming privilege to
15   make that claim explicit and specific.  Defendants have redacted otherwise discoverable documents
16   based on privilege, so they must make their privilege claims explicit and specific.  They should be
17   compelled to produce a log. ████████████████████████████████████.

18   **B.     Defendants should remove all other redactions.**

19   To the extent Defendants' redactions are not based on privilege but are instead based on
20   privacy, confidentiality, or relevance, the redactions are improper and should be removed.  As a
21   rule, courts in this circuit disfavor unilateral redaction on those bases because protective orders
22   suffice to ensure the confidentiality of sensitive information.  *See Live Nation Merch., Inc. v. Miller*,
23   2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014) ("The Court agrees with Artists that Live
24   Nation's redactions of otherwise discoverable documents here are unwarranted because Live
25   Nation's concern about protecting privacy interests and confidential/proprietary information could
26   be addressed through a protective order."); *Laub v. Horbaczewski*, 331 F.R.D. 516, 526 (C.D. Cal.
27   2019) ("Indeed, unilateral redactions of otherwise discoverable information is disfavored in this

1  circuit."); *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3,
2  2010) ("Outside of these limited circumstances [described in Fed. R. Civ. P. 5.2], a party should
3  not take it upon him, her or itself to decide unilaterally what context is necessary for the non-
4  redacted part disclosed, and what might be useless to the case. . . . Moreover, protective orders are
5  available to shield irrelevant, but important-to-keep-confidential information, and unless the
6  protective order permits partial production, a document should be produced in its entirety.").

Here, the parties negotiated, and the Court entered, a stipulated protective order that permits Defendants to identify "Confidential" and "Highly Confidential – Attorneys' Eyes Only" information. *See* Stipulated Protective Order, ECF No. 120.  That order significantly limits access to and dissemination of confidential information—under penalty of contempt of court.  There is no reason for Defendants to redact non-privileged information from otherwise responsive, relevant documents except to hide information from Plaintiff and his counsel in this lawsuit—which is exactly what Defendants are doing here.

For example, Defendants produced a "███████████████████████████████████████████", which Defendants designated "Highly Confidential – Attorneys' Eyes Only" under the protective order in this case.  *See* Burningham Decl. Ex. 5.  Under that ███████████████████████████████████████████████████████████████████████████████████████.  *Id.* at 1.  This document is plainly responsive to RFP No. 3 because it was produced to the SEC.  It is also responsive to several other requests for production, including RFP Nos. 23 (documents sufficient to identify "all XRP addresses that Garlinghouse has owned"), 48 (documents "concerning any XRP provided to Garlinghouse"), and 50 (documents sufficient to show "Garlinghouse's XRP holdings").  *See* Burningham Decl. Ex. 1.  But Defendants have redacted the critical information in the document: ██████████████████████████████████████████████████████████████████████████████████.  *See* Burningham Decl. Ex. 5 at 1, 4.  There is no basis for these or for other redactions for privacy, confidentiality, or relevance, and they should be removed.

**V.    Defendants should log documents withheld for privilege.**

Defendants have not only refused to log privilege redactions; they have also refused to log over five hundred documents withheld in their entirety for privilege (and these are just the documents Plaintiff is aware of because Defendants replaced them with placeholders). *See* Burningham Decl. ¶ 9; Burningham Decl. Ex. 3. For the same reasons explained above with respect to Defendants' privilege redactions, *see supra* § IV(A), Defendants' refusal to log documents withheld for privilege is unjustified. Defendants should comply with the federal rules and make privilege claims explicit and specific.

## CONCLUSION

For the reasons above, Plaintiff asks the Court to order Defendants to produce their email communications with the SEC and documents showing their document-retention policies from January 1, 2015, to the present. Plaintiff also asks the Court to order Defendants to log privilege redactions and withholdings and to remove redactions made for reasons other than for privilege.

| | | |
|---|---|---|
| 1 | Dated: February 8, 2021 | SUSMAN GODFREY L.L.P. |

By:     /s/ *P. Ryan Burningham*

Marc M. Seltzer (54534)
Steven G. Sklaver (237612)
Oleg Elkhunovich (269238)
Meng Xi (280099)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
oelkhunovich@susmangodfrey.com
mxi@susmangodfrey.com

P. Ryan Burningham (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
rburningham@susmangodfrey.com

James Q. Taylor-Copeland (284743)
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
james@taylorcopelandlaw.com
Telephone: (619) 400-4944
Facsimile: (619) 566-4341

*Counsel for Lead Plaintiff Bradley Sostack*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2021, I electronically filed the foregoing document with the clerk of the Court and served counsel of record via the CM/ECF system.

/s/ *P. Ryan Burningham*
P. Ryan Burningham