UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re RIPPLE LABS, INC. LITIGATION | Case No. 4:18-cv-06753-PJH |
| | CLASS ACTION |
| This Document Relates to:<br><br>All Actions | [PROPOSED] ORDER GRANTING LEAD PLAINTIFF'S MOTION TO COMPEL DOCUMENTS AND PRVILEGE LOG |

On February 8, 2021, Lead Plaintiffs filed a Motion to Compel Documents and Privilege Log. For the reasons below, the motion is hereby **GRANTED**.

I. **Communications with the SEC (RFP No. 3)**

RFP No. 3 seeks Defendants' communications with the SEC concerning XRP. Defendants have produced their "formal" communications with the SEC (those on letterhead). But Defendants have withheld all other communications with the SEC based on the unsupportable position that when communications with the SEC are not on formal letterhead, they are irrelevant. There is no basis in the law for allowing Defendants to make this categorical determination.

Rule 26(b) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible to be discoverable, *see id.*, and

1  "[c]ourts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial." *In re Subpoena to PayPal Holdings, Inc.*, 2020 WL 3073221, at *2 (N.D. Cal. June 10, 2020). The Ninth Circuit favors a broad scope of discovery because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995).

The relevance of Defendants' communications with the SEC concerning XRP is straightforward: Plaintiff alleges that Defendants violated federal securities laws by selling XRP, and for more than two years, the SEC has been investigating precisely the same issue. Defendants' communications with the SEC concerning that investigation will help Plaintiff identify key witnesses, document custodians, meetings, communications, and statements—all of which are central to proving his claims. Moreover, Defendants' communications with the SEC will help Plaintiff identify the evidence Defendants intend to marshal in support of their defenses, especially their affirmative defense that XRP is not a security. Indeed, in an action for violation of federal securities laws, few categories of documents could be more relevant than a defendant's communications with the SEC that occurred as part of the SEC's investigation into violations of the same laws—particularly where that investigation resulted in the SEC filing an enforcement action.

Defendants' communications with the SEC are relevant and discoverable. There is no support for their distinction between "formal" and "informal" communications.

**II. Settlement Communications with the SEC (RFP No. 3)**

Defendants are also withholding what they assert are settlement communications with the SEC. But settlement communications with investigating agencies are generally discoverable. *See Church & Dwight Co.*, 2011 WL 5827222, at *3–4 (finding settlement discussions with FTC relevant and ordering production of all documents disclosed to FTC during FTC investigation, including settlement communications). And courts in this district routinely order production of settlement discussions in a variety of contexts. *See, e.g.*, *Conde v. Open Door Mktg.*, LLC, 2018 WL 1248094, at * (N.D. Cal. Mar. 12, 2018) (in FLSA case, ordering production of communications regarding settlement); Phoenix *Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D.

568, 582–85 (N.D. Cal. Oct. 22, 2008) (in patent case, ordering production of settlement communications and noting communications were relevant to show party's position with respect to liability and damages and could reveal additional evidence, and noting that "the substance of settlement discussions" is not "*per se* irrelevant to a proceeding in federal court, because Rule 408 itself authorizes the admission into evidence of such materials except for limited purposes"); *Vondersaar v. Starbucks Corp.*, 2013 WL 1915746, at *4 (N.D. Cal. May 8, 2013) (in ADA case, finding settlement materials relevant and ordering production).

This case is no different. Defendants' settlement communications with the SEC are relevant because they cover precisely the same subject matter at issue in this action. For two-and-a-half years, the SEC investigated Defendants' sale of XRP. After that thorough investigation, the SEC determined that Defendants sold unregistered securities and filed suit. Any settlement communications between Defendants and the SEC necessarily addressed the central issue in the instant action: Is XRP a security? Those communications will help identify witnesses, facts, and documents, which Plaintiff may use at trial to support his claims. They will reveal evidence Defendants believe support their defense that XRP is not a security, which will expedite discovery. They will show Defendants' position with respect to liability and damages, which will streamline issues for trial and encourage settlement. They are relevant and should be produced.

### III. Document-Retention Policies (RFP No. 24)

Defendants are further withholding documents responsive to RFP No. 24, which seeks documents "sufficient to show [Defendants'] document destruction or retention policy" from January 1, 2015 to the present. Defendants claim that their retention policies are irrelevant absent evidence of spoliation. But again, they are wrong.

Courts in this district have addressed this issue directly and concluded that document-retention policies are relevant, even early in discovery where there is no evidence of spoliation. In *Sharma v. BMW of North America LLC*, 2016 WL 1019668, at *3 (N.D. Cal. Mar. 14, 2016), as here, the plaintiffs sought the defendant's document-retention policies in their first set of document requests. Despite no evidence of spoliation, the court held that the policies were relevant because they would "help Plaintiff determine the universe of responsive documents and evaluate any gaps

in document production." *Id.* at *4. The court also noted that production of the policies appeared to be "contained within a modest number of pages, and in light of this, the burden or expense of producing this information is likely minimal, while the benefit of such information would be substantial" because knowledge of those policies would allow the plaintiffs "to assess the company's document production, determine whether any relevant documents are lacking, and evaluate whether additional discovery is necessary in [the] case." *Id.* Other courts in this circuit have reached similar conclusions. *See, e.g.*, *McMorow v. Mondolez Int'l, Inc.*, 2019 WL 3852498, at *3–4 (S.D. Cal. Apr. 19, 2019) (ordering production of policies without requiring showing of spoliation); *Cholakyan v. Mercedes-Benz USA, LLC*, 2011 WL 7575379, at *15 (C.D. Cal. Dec. 20, 2011) (same).

The reasoning in *Sharma* applies equally here. Plaintiff has not requested "all documents" concerning Defendants' document-retention policies. Instead, he has requested documents sufficient to show those policies. Producing the policies themselves would suffice, and the production would likely be limited to a few dozen pages at most. Reviewing those documents would permit counsel for Plaintiff to assess Defendants' ongoing document production, identify gaps in production, and evaluate whether additional discovery is necessary. Thus, the documents are relevant, and the burden is light. The documents should be produced.

## IV. Redactions and Withholdings

In addition to withholding relevant, discoverable documents, Defendants have also produced thousands of documents littered with unexplained redactions. But Defendants have refused to produce a privilege log, requiring Plaintiff's counsel to guess at the reason for each of the tens of thousands of redactions in Defendants' swiss-cheese production. If the redactions are for privilege, they should be logged. If the redactions are for privacy, confidentiality, or relevance, they should be removed.

### A. Defendants should log any redactions for privilege.

To the extent Defendants' redactions are based on a claim of privilege, Defendants' unexplained redactions are insufficient to assert a privilege, even coupled with Defendants' boilerplate privilege objections. *See Burlington N. & Santa Fe Ry. Co. v. United States*, 408 F.3d

1142, 1149 (9th Cir. 2005) ("We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."). Instead, Defendants must produce a rules-compliant privilege log—one that allows Plaintiff and this Court to evaluate Defendants' privilege claims. *See* Fed. R. Civ. P. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."); Wright & Miller, Fed. Prac. & Proc. § 5507 (1st ed.) ("Clearly the burden to establish privilege is on the party claiming the privilege and a bald assertion in a privilege log is not sufficient to shift the burden of proof."). Failure to produce such a log can waive privilege. *See Burlington*, 408 F.3d at 1149 (upholding district court order to produce documents where untimely privilege assertion waived privilege).

The federal rules require parties claiming privilege to make that claim explicit and specific. Defendants have redacted otherwise discoverable documents based on privilege, so they must make their privilege claims explicit and specific. They should produce a log.

### B. Defendants should remove all other redactions.

To the extent Defendants' redactions are not based on privilege but are instead based on privacy, confidentiality, or relevance, the redactions are improper and should be removed. As a rule, courts in this circuit disfavor unilateral redaction on those bases because protective orders suffice to ensure the confidentiality of sensitive information. *See Live Nation Merch., Inc. v. Miller*, 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014) ("The Court agrees with Artists that Live Nation's redactions of otherwise discoverable documents here are unwarranted because Live Nation's concern about protecting privacy interests and confidential/proprietary information could be addressed through a protective order."); *Laub v. Horbaczewski*, 331 F.R.D. 516, 526 (C.D. Cal. 2019) ("Indeed, unilateral redactions of otherwise discoverable information is disfavored in this circuit."); *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010) ("Outside of these limited circumstances [described in Fed. R. Civ. P. 5.2], a party should

not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case. . . . Moreover, protective orders are available to shield irrelevant, but important-to-keep-confidential information, and unless the protective order permits partial production, a document should be produced in its entirety.").

Here, the parties negotiated, and the Court entered, a stipulated protective order that permits Defendants to identify "Confidential" and "Highly Confidential – Attorneys' Eyes Only" information. *See* Stipulated Protective Order, ECF No. 120. That order significantly limits access to and dissemination of confidential information—under penalty of contempt of court. There is no reason for Defendants to redact non-privileged information from otherwise responsive, relevant documents.

### C. Defendants should log documents withheld for privilege.

Defendants have not only refused to log privilege redactions; they have also refused to log over five hundred documents withheld in their entirety for privilege. For the same reasons explained above with respect to Defendants' privilege redactions, Defendants' refusal to log documents withheld for privilege is unjustified. Defendants should comply with the federal rules and make privilege claims explicit and specific.

***

**NOW, THEREFORE,** the Defendants are ordered to produce the following within 14 days of this order: (1) all Defendants' emails (and any other informal communication) to and from the SEC concerning XRP; (2) documents sufficient to show Defendants' document-retention policies from January 1, 2015, to the present; (3) unredacted versions of documents redacted for privacy, confidentiality, or relevance; and (4) a detailed privilege log of documents that have been redacted or withheld for privilege.

Dated: _____     _____

HON. PHYLLIS J. HAMILTON
UNITED STATES CHIEF DISTRICT JUDGE