DAMIEN J. MARSHALL (admitted *pro hac vice*)
dmarshall@kslaw.com
ANDREW MICHAELSON (admitted *pro hac vice*)
amichaelson@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel: (212) 556-2100; Fax: (212) 556-2222

SUZANNE E. NERO (SBN 284894)
snero@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Tel: (415) 318-1200; Fax: (415) 318-1300

ANDREW J. CERESNEY (admitted *pro hac vice*)
aceresney@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000; Fax: (212) 909-6836

*Attorneys for Defendants Ripple Labs Inc.,*
*XRP II, LLC, and Bradley Garlinghouse*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re RIPPLE LABS INC. LITIGATION | Case No. 4:18-cv-06753-PJH |
| This Document Relates to:<br><br>ALL ACTIONS | **DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND PRIVILEGE LOG**<br><br>Date:   March 25, 2021<br>Time:   1:30 p.m.<br>Ctrm:   3<br><br>Consolidated FAC Filed: March 25, 2020<br>Trial Date: July 17, 2023 |

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ........................................................................................................ 3

        A.      Defendants' Productions to the SEC ............................................................ 3

        B.      Defendants' Productions to Plaintiff............................................................. 4

III.    ARGUMENT.............................................................................................................. 6

        A.      Defendants Should Not be Required to Produce All Emails
                Between Outside Counsel and the SEC Staff ............................................... 6

        B.      Plaintiff's Request for Unsuccessful Settlement Communications
                Does Not Survive Heightened Scrutiny......................................................... 8

        C.      Ripple Should Not be Required to Produce Its Document
                Retention Policy.......................................................................................... 11

        D.      Plaintiff's Request to Remove Redactions and for a Privilege Log
                is not Ripe for Resolution by this Court ...................................................... 14

                1.      Defendants Should Not be Ordered to Produce a Privilege
                        Log at this Time Because No Information To Date Has
                        Been Withheld on the Basis of Privilege ........................................ 14

                2.      Plaintiff's Motion for the Removal of Other Redactions is
                        Premature ....................................................................................... 15

IV.     CONCLUSION......................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*

    2007 WL 4166030 (N.D. Cal. Nov. 19, 2007) ........................................................... 9

*Alaska Electrical Pension Fund v. Bank of Am. Corp.*

    2016 WL 6779901 (S.D.N.Y. Nov. 16, 2016) ........................................................... 8

*Bakhtiari Corp. v. Register Tapes Unlimited Inc.*

    2013 WL 2253182 (N.D. Cal. May 22, 2013) ........................................................... 12

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*

    2018 WL 6169347 (N.D. Cal. Nov. 26, 2018) ........................................................ 2, 8

*Brantley v. Boyd*

    2013 WL 1786585 (N.D. Cal. Apr. 25, 2013) ........................................................... 9

*Cholakyan v. Mercedes-Benz USA, LLC*

    2011 WL 7575379 (C.D. Cal. Dec. 20, 2011) ........................................................... 13

*Church & Dwight Co., Inc. v. Mayer Labs, Inc.*

    2011 WL 6119146 (N.D. Cal. Dec. 8, 2011) ........................................................... 7

*Church and Dwight Co., Inc. v. Mayer Labs, Inc.*

    2011 WL 5827222 (N.D. Cal. Nov. 18, 2011) ...................................................... 7, 10

*Conde v. Open Door Marketing, LLC*

    2018 WL 1248094 (N.D. Cal. Mar. 12, 2018) ........................................................ 10

*Cunningham v. Standard Fire Ins. Co.*

    2008 WL 2668301 (D. Colo. July 1, 2008) ........................................................... 12

*E & J Gallo Winery v. Encana Energy Services*

    2005 WL 8172973 (E.D. Cal. Jan. 28, 2005) ........................................................... 9

*Fish v. Air & Liquid Sys. Corp.*

    2017 WL 697663 (D. Md. Feb. 21, 2017) ........................................................... 12

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*

    297 F.R.D. 99 (S.D.N.Y. 2013) ................................................................................. 8

*Hawkins v. Kroger Co.*

    2019 WL 4416132 (S.D. Cal. Sept. 16, 2019) ........................................................ 13

*Hem & Thread, Inc. v. Wholesalefashionsquare.com. Inc.*

    2020 WL 5044610 (C.D. Cal. June 16, 2020) ......................................................... 9

*In re CRT Antitrust Litig.*

    2015 WL 13756260 (N.D. Cal. Jul. 4, 2015) ......................................................... 10

*In re Takata*

    2017 WL 8812734 (S.D. Fla. July 5, 2017) ........................................................... 12

*McMorrow v. Mondelez Int'l, Inc.*

    2019 WL 3852498 (S.D. Cal. Apr. 19, 2019) ............................................... 3, 12, 13

*Montgomery v. Wal-Mart Stores, Inc.*

    2015 WL 11233390 (S.D. Cal. Sept. 4, 2015) ....................................................... 13

*Perez v. DirecTV Grp. Holdings, LLC*

    2020 WL 5875026 (C.D. Cal. Aug. 17, 2020) ....................................................... 12

*Phoenix Sols., Inc. v. Wells Fargo Bank, N.A.*

    254 F.R.D. 568 (N.D. Cal. 2008) ........................................................................... 10

*Russell v. Kronos Inc.*

    2019 WL 5485891 (N.D. Cal. Oct. 25, 2019) ....................................................... 13

*SEC v. Ripple Labs, Inc. et al.*

    Case No. 1:20-cv-108332, ECF No. 4 (S.D.N.Y. Dec. 22, 2020) ............................ 1

*SEC v. W.J. Howey Co.*

    328 U.S. 293 (1946) .............................................................................................. 1, 3

*Sharma v. BMW of N. Am. LLC*

    2016 WL  1019668 (N.D. Cal. Mar. 15, 2016) ..................................................... 13

*Triple A Machine Shop, Inc. v. U.S.A.*

1994 WL 669834 (N.D. Cal Nov. 17, 1994) ............................................................ 11

*Vondersaar v. Starbucks Corp.*

2013 WL 1915746 (N.D. Cal. May 8, 2013) ........................................................... 10

**Rules**

Fed. R. Civ. Proc. 26(b)(1) .................................................................................... 7

Fed. R. Civ. Proc. 26(b)(5)(A) ............................................................................. 16

L.R. 37-1(a) ............................................................................................................ 15

**Other Authorities**

Guideline 2.03

https://cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-2015.pdf ............................ 12

## I.    INTRODUCTION

In the past two months, Ripple Labs Inc. ("Ripple"), XRP II, LLC, and Ripple's CEO Bradley Garlinghouse (collectively "Defendants") have made substantial document productions to Plaintiff.  The bulk of the productions consist of documents that Defendants previously provided to the U.S. Securities and Exchange Commission (the "SEC") in response to voluntary requests during a multi-year investigation by the SEC Staff into the very same question that lies at the heart of this lawsuit—whether Ripple's distributions of XRP constitute "investment contracts" under *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).  Over a period of 2.5 years, the SEC Staff demanded numerous categories of documents and asked countless questions about Ripple's business.  In response, Ripple made more than 40 productions consisting of tens of thousands of documents and hundreds of thousands of pages.  Ripple submitted white papers on specific substantive issues, PowerPoint decks in connection with detailed presentations to the Staff, letters responding to factual questions, and, in late 2020, Wells responses presenting many of Defendants' legal and factual defenses to liability under federal securities laws.  In the past two months, Defendants produced these documents—the SEC Staff's requests, productions of documents to the SEC (from both Ripple and Mr. Garlinghouse), and responses to factual questions (including the white papers, PowerPoints, Wells responses, and more)—to Plaintiff in this action.

The SEC's investigation began in April 2018, more than two years before discovery in this private action commenced.  At the beginning of the discovery period in this action, Plaintiff thus already has the benefit of years of Ripple's work in responding to the SEC.

The SEC eventually filed a lawsuit against Ripple and Mr. Garlinghouse,[1] in December 2020, in the United States District Court, Southern District of New York.  *SEC v. Ripple Labs, Inc. et al.*, Case No. 1:20-cv-108332, ECF No. 4 (S.D.N.Y. Dec. 22, 2020) (the "SEC Action").[2]

---

[1]  The SEC also filed suit against Ripple's Executive Chairman, Christian Larsen.  XRP II, LLC is not a named defendant in the SEC Action.
[2]  The parties in the SEC Action recently submitted a Case Management Plan and Proposed Scheduling Order pursuant to which fact discovery would end no later than July 2, 2021.  *SEC Action*, Case No. 1:20-cv-10832-AT, ECF No. 44 (Feb. 15, 2021).  Defendants have informed

1   Seeking to draw upon the SEC's work, one of Plaintiff's 102 requests for production propounds

2   Defendants to provide information previously provided to the SEC during the course of the SEC

3   investigation, and Plaintiff requested that these particular documents be produced on an

4   expedited basis.  Defendants substantially completed their production to Plaintiff of SEC

5   investigation materials on December 16, 2020, with some small supplemental productions that

6   followed.  Shortly thereafter, Plaintiff filed the instant motion to compel, escalating to the Court

7   a number of requests that should be swiftly denied.

8       *First,* Defendants should not be compelled to produce *all* emails between their outside

9   counsel and the SEC Staff.  Considering the extensive production that Defendants have already

10  made in this case—including all documents and information produced to the SEC in response to

11  the SEC's requests, and all of the white papers, PowerPoint presentations and Wells responses

12  presenting Defendants' views on the facts and the law—Plaintiff's request for *all* emails between

13  Defendants' counsel and the SEC is overbroad, burdensome, and not proportional to the needs of

14  the case.

15      *Second*, Plaintiff's demand for the production of preliminary—and thus far

16  unsuccessful—settlement discussions with the SEC is subject to heightened scrutiny that he has

17  not come close to satisfying.  Litigants seeking settlement documents must make a

18  "particularized showing" of relevance, *see, e.g., BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,

19  2018 WL 6169347, at *3–4 (N.D. Cal. Nov. 26, 2018), but Plaintiff makes no showing—let

20  alone a "particularized" showing—that such communications are likely to lead to the discovery

21  of admissible evidence.  Given the scope of Defendants' productions and the strong public

22  interest in protecting the confidentiality of preliminary settlement discussions with a government

23  regulator with whom Ripple is currently engaged in ongoing litigation, Plaintiff's request must

24  be denied.

25      *Third*, Plaintiff has no basis to compel production of Ripple's document retention policy.

26  The prevailing view in this Circuit is that retention policies are discoverable "only in

27

28  Plaintiff that the current expectation is that any discovery that Defendants Ripple or
    Garlinghouse produce to the SEC in the SEC Action will be provided to Plaintiff in this case.

circumstances where the non-moving party has claimed that requested discovery documents are 'unavailable' or when there are indicia that the discovery process was not thorough, reliable, or transparent." *See, e.g., McMorrow v. Mondelez Int'l, Inc.*, 2019 WL 3852498, at *3 (S.D. Cal. Apr. 19, 2019).  This standard is not met.  Notably, Plaintiff failed to mention in his motion to compel that, during the meet-and-confer process, Defendants provided Plaintiff with the information sought, namely, that Ripple maintains corporate documents for seven years and has emails from current and former employees from throughout the Relevant Time Period.

*Fourth*, Plaintiff's request for a privilege log in connection with the documents that Defendants have thus far produced to Plaintiff for this matter is moot because Defendants have not yet withheld any documents on grounds of privilege.  Plaintiff asked Defendants to prioritize production of documents previously produced to the SEC.  Defendants have done exactly that, producing documents to Plaintiff in precisely the same form as they were provided to the SEC. Should Defendants withhold documents from production to Plaintiff on privilege grounds in the future, they will provide a privilege log in due course.

*Fifth*, and finally, there is no basis for Plaintiff's request that Defendants remove non-privilege redactions from documents at this time.  As discussed above, the documents were produced to Plaintiff in redacted form because they were produced to the SEC that way.  If the SEC received a document in redacted form, so did Plaintiff.  Plaintiff's motion fails to mention that Defendants have already agreed to consider removing redactions from these documents as they move through Plaintiff's remaining 101 document requests.  Unless and until a dispute arises concerning specific redactions, Plaintiff's motion is premature.

Accordingly, Plaintiff's motion to compel should be denied.

## II.      BACKGROUND

### A.      Defendants' Productions to the SEC

In 2018, the SEC Staff commenced a confidential enforcement investigation concerning whether Ripple's sales and other distributions of XRP constitute "investment contracts" under *Howey* and therefore a security, such that those distributions with respect to XRP would violate Section 5 of the Securities Act of 1933.  During the course of that investigation, the SEC served

numerous broad categories of document requests on Ripple and asked countless questions about Ripple's business.

In response to the SEC's requests, Ripple provided tens of thousands of documents, from 23 different custodians, spanning eight years.  Ripple provided strategy documents, meeting minutes, financial information, e-mails, contracts, marketing materials and other business documents.  In addition, Ripple provided the SEC with documents explaining why Ripple's distributions of XRP do not constitute "investment contracts," including:

- Ripple's Wells response demonstrating why an SEC enforcement action "is wrong on the facts, the law, and the equities;"
- A white paper on why distributions of XRP do not constitute an "investment contract" and therefore are not securities under the securities laws;
- Multiple PowerPoint presentations from meetings with the SEC; and
- Numerous other detailed correspondence setting forth many of Ripple's legal defenses.

Declaration of Suzanne E. Nero ("Nero Decl.") ¶ 10.

## B.    Defendants' Productions to Plaintiff

On October 8, Plaintiff served Defendants with 97 Requests for Production.  Nero Decl. ¶ 2.  Plaintiff served two additional sets of Requests for Production in January, adding another 5 requests for a total of 102 outstanding Requests for Production.  *Id.* ¶ 5.

Plaintiff requested Defendants prioritize responding to RFP No. 3, which requested "All communications with the SEC concerning XRP and all documents concerning such communications."  Nero Decl. ¶¶ 2, 6.  For the documents previously produced to the SEC, Plaintiff represented to the Court that production of such documents would not be burdensome to produce because "it requires little more than making a copy of the discs or storage devices on which such productions are already contained."  Jt. Case Mgmt. Statement (ECF No. 99) at 6.  In other words, Plaintiff sought a copy of what was previously provided to the SEC, prior to commencement of the SEC Action, and their position was that Defendants could produce such documents quickly because Defendants would not have to address issues of responsiveness and

privilege.[3]

Defendants objected to Request No. 3 on a variety of grounds, including that it was "overbroad, unduly burdensome and not proportional to the needs of the case because it seeks every communication with the SEC even non-substantive communications that have no relevance to Plaintiff's claims, and every document about such communications."  Nero Decl. ¶ 3.  Defendants did, however, agree to produce "all documents previously produced to the SEC and non-privileged formal correspondence between the SEC and Defendants, that are relevant to Plaintiff's claims."  *Id.*  Defendants substantially completed their production in response to RFP No. 3 on December 16, 2020, with some small supplemental productions that followed.  *Id.* ¶ 6.

As Plaintiff requested, Defendants gave Plaintiff the same documents that were produced to the SEC during its investigation.  If a document was provided to the SEC in redacted form, it was produced in the same form to Plaintiff.[4]  If a document was withheld in its entirety from the SEC and contained a "withheld for privilege" slip sheet, it was produced with that same slip sheet here.  Nero Decl. ¶ 7.  Defendants' production in this case included the tens of thousands of business documents described above, as well as Ripple and Mr. Garlinghouse's Wells responses, white papers, and PowerPoint presentations.  *Id.* ¶ 10.  Defendants' production in this case also included the SEC's requests for documents or information, production letters in response, compliance letters detailing Ripple's discovery efforts, and metadata information such as the custodians used to collect documents that were provided to the SEC.  *Id.* ¶ 11.  Defendants' productions in this case provide a roadmap to the SEC's investigation, and all of the underlying documents that the SEC obtained from Defendants during the course of its multi-year investigation.  As discussed below, the only correspondence between Defendants and the SEC that Plaintiff did *not* receive are (a) email communications between Defendants' outside counsel and the SEC Staff, and (b) settlement discussions between Defendants' outside counsel and the

---

[3] Defendants still needed to review each document for compliance with the Protective Order in this case, which they did promptly before production.

[4] The only exceptions to this set are redactions on 37 documents to Mr. Garlinghouse's highly personal bank account and wallet information.  As discussed below, these redactions are not at issue in this motion.  *See infra* at 14 n.10.

1    SEC staff.

2         In addition to the documents responsive to RFP No. 3, Defendants have begun production

3    of other documents in response to Plaintiff's requests and have informed Plaintiff that

4    productions are forthcoming on a rolling basis.  Nero Decl. ¶ 9.

5    **III.    ARGUMENT**

6         **A.    Defendants Should Not be Required to Produce All Emails Between Outside**
         **Counsel and the SEC Staff**
7

8         Plaintiff's RFP No. 3 seeking "All communications with the SEC concerning XRP and

9    all documents concerning such communications" is vastly overbroad.  It encompasses documents

10   that have no relevance to Plaintiff's claims, and others that are of such marginal relevance that

11   the burden of producing them is not proportional to the needs in the case, especially when

12   considering the substantial production Defendants have already made in response to RFP No. 3.

13        In response to this Request, Defendants produced to Plaintiff all documents they

14   produced in response to the SEC's investigative requests for documents and information, and

15   formal correspondence between Defendants and the SEC.  The production included voluminous

16   substantive correspondence about the case.  Nero Decl. ¶ 10.  It also included correspondence

17   relating to the SEC's investigation itself, including the SEC's requests for documents and

18   information, Defendants' productions in response thereto, and the custodians and search terms

19   used in response to certain requests.  *Id.* ¶ 11.

20        What Defendants have not provided is every email between its outside counsel and the

21   SEC over the course of the multi-year investigation.  Defendants have not produced these emails

22   because substantive discussions with the SEC were generally not conducted via email, ECF No.

23   129-8, Pl. Ex. 6 (Meet and Confer Letter from S. Nero) at 3, and considering the extensive

24   production that has been made, the burden of collecting, reviewing and producing every email

25   from the several separate law firms who serve (or have served) as outside counsel to Ripple or

26   Mr. Garlinghouse over the course of a multi-year enforcement investigation is not proportional to

27   the needs of the case.

28        Plaintiff's motion incorrectly presumes that every communication between Defendants'

outside counsel and the SEC is relevant.  (Motion to Compel, at 10.)  That is simply not true.

For example, an email arranging the time and date for a phone call to discuss the scope of a

document request is not "relevant to any party's claim or defense and proportional to the needs

of the case."  Fed. R. Civ. Proc. 26(b)(1).  Plaintiff contends that communications with the SEC

"will help Plaintiff identify key witnesses, document custodians, meetings, communications, and

statements," (Motion to Compel, at 10), but that is precisely the type of information contained in

the documents that Defendants have already provided.  "Key witnesses" can be derived from the

tens of thousands of business documents that Defendants have produced.  Document custodians

exist in the metadata for Defendants' production and separately through correspondence

identifying the custodians and search terms used in response to certain requests.  Nero Decl.

¶ 11.

While Plaintiff asserts that even "mundane scheduling emails" will reveal the "timing of

meetings, their participants, their subject matter and possibly other information," (Motion to

Compel, at 11), he has not explained how this type of scheduling information is relevant to his

claims, let alone why the burden of reviewing and producing these documents is proportional in

light of Defendants' production to date.  Plaintiff cites a single case for the proposition that

courts order production of emails with regulators.  *See Church and Dwight Co., Inc. v. Mayer*

*Labs, Inc.*, 2011 WL 5827222 (N.D. Cal. Nov. 18, 2011).  In *Church and Dwight*, however, the

defendant had refused to produce "certain documents that [Defendant] voluntarily submitted to

the FTC's non-public investigation, including 'white papers' and other documents setting forth

C&D's position on the legal merits of its compliance with antitrust laws."  *Id.* at *2.  In other

words, the defendant in *Church and Dwight* had refused to produce substantive documents of the

very sort that Defendants have already produced here (*e.g.,* white papers, PowerPoint

presentations and Wells responses).  Moreover, the *Church & Dwight* defendants did not even

raise "a relevancy or overbreadth" objection like Defendants have raised here.  *Church & Dwight*

*Co., Inc. v. Mayer Labs, Inc.*, 2011 WL 6119146, at *2 (N.D. Cal. Dec. 8, 2011).

When courts have considered the relevance and burden of these types of requests, they

have rejected them.  In *Alaska Electrical Pension Fund v. Bank of Am. Corp.*, 2016 WL 6779901

1   (S.D.N.Y. Nov. 16, 2016), for example, the court denied a motion to compel production of all

2   communications between Defendants and a regulator under the amended Rule 26(b)(1) standard.

3   In that case, Defendants had produced all documents previously provided to the regulator, but

4   refused to produce all correspondence with the regulator.  *Id.* at *2.  The court denied Plaintiff's

5   motion to compel production of all correspondence, noting that "it is far from obvious" that

6   certain of these documents were relevant, including the "more dubious[]" request for

7   "administrative communications about issues such as scheduling and cover letters."  *Id.*  The

8   court also found that even if some documents were relevant, the "marginal utility" of these

9   additional documents did not meet Rule 26(b)(1)'s proportionality requirement.  "Given the

10  breadth of Plaintiffs' requests – which ask for 'all documents produced for' or 'provided to' any

11  government regulator, 'all documents 'received from' any government regulator, and 'all

12  correspondence' with any government regulator – and the fact that Defendants have given

13  Plaintiffs all of the historical documents and data that they had produced to their regulators,

14  Plaintiffs' motion falls short on this score too."  *Id.* at *3; *see also Fort Worth Emps.' Ret. Fund*

15  *v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 111 (S.D.N.Y. 2013) (denying motion to compel all

16  communications with regulator because "plaintiffs have not shown that communications beyond

17  the government requests and J.P. Morgan's answers are relevant").

18          Given the breadth and substance of Defendants' productions to date, there is insufficient

19  basis to impose the burden of collecting, reviewing and producing years' worth of emails from

20  Defendants' outside counsel, for documents that are of little to no relevance at all.

21  **B.      Plaintiff's Request for Unsuccessful Settlement Communications Does Not
22          Survive Heightened Scrutiny**

23          Litigants seeking discovery of settlement communications face heightened scrutiny.

24  Even in the absence of a formally recognized settlement privilege, courts within the Ninth

25  Circuit acknowledge the "strong public policy" favoring settlement and routinely require "'a

26  particularized showing of a likelihood that admissible evidence will be generated by the

27  dissemination'" of the settlement materials.  *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 2018

28  WL 6169347, at *3–4 (N.D. Cal. Nov. 26, 2018) (quoting *Abbott Diabetes Care Inc. v. Roche*

1   *Diagnostics Corp.*, 2007 WL 4166030, at *2 (N.D. Cal. Nov. 19, 2007)); *see also Brantley v.*

2   *Boyd*, 2013 WL 1786585, at *2 (N.D. Cal. Apr. 25, 2013) (collecting cases).  The public policy

3   interests at stake include not only parties' expectations of confidentiality, but also the more

4   generalized public interest of promoting amicable resolution of disputes without resort to judicial

5   intervention.  To protect these significant interests, courts typically apply "heightened scrutiny"

6   to discovery requests for settlement documents.  *See Hem & Thread, Inc. v.*

7   *Wholesalefashionsquare.com. Inc.*, 2020 WL 5044610, at *1–3 (C.D. Cal. June 16, 2020)

8   (collecting cases applying "heightened scrutiny").

9        The application of "heightened scrutiny" is particularly appropriate where, as here, a

10   plaintiff seeks discovery of *preliminary* settlement negotiations *with the government* in a case

11   that is currently being litigated in the Southern District of New York.  In *Hem & Thread*, for

12   example, the court applied "additional scrutiny," compelling production of an executed

13   settlement agreement while declining to compel production of "prior drafts."  2020 WL 5044610

14   at *2–4.  With respect to the preliminary drafts, the *Hem & Thread* court noted that "compelling

15   the discovery of settlement negotiations can have a 'chilling effect' on negotiations and may

16   intrude into the settlement process."  *Id.* at *3.  The ramifications of this "chilling effect" are

17   particularly strong vis-à-vis settlement talks with the government:  if courts were to permit broad

18   discovery into preliminary settlement talks with regulators, other entities under investigation

19   would learn where the government stands on settlement.  This would negatively impact the

20   government's enforcement efforts and result in "chilling" the government's willingness and

21   ability to resolve cases.  *See, e.g., E & J Gallo Winery v. Encana Energy Services*, 2005 WL

22   8172973, at *4 (E.D. Cal. Jan. 28, 2005) (disclosure of settlement discussions with the CFTC

23   "would likely chill settlement discussions and thwart tribunal efficiencies and public interests").

24        Plaintiff's breezy proclamation that "settlement communications with investigating

25   agencies are generally discoverable" does not withstand scrutiny.  (Motion to Compel, at 12.)  In

26   fact, not one of the five cases cited by Plaintiff grappled with the application of heightened

27   scrutiny to the production of preliminary, unsuccessful settlement discussions with a regulator,

28   and in each case the party seeking production had made a particularized showing that the

settlement documents sought were relevant.  *See In re CRT Antitrust Litig.*, 2015 WL 13756260, at *3–4 (compelling only the production of "executed settlement agreements" that were relevant to a "non-settling defendant's defense of a set off of damages"); *Church & Dwight*, 2011 WL 5827222, at *2 (ordering production of "white papers" and unspecified settlement communications where relevance was not disputed);[5] *Conde v. Open Door Marketing, LLC*, 2018 WL 1248094, at *2 (N.D. Cal. Mar. 12, 2018) (compelling production of executed settlement agreement that was relevant to credibility of witness); *Phoenix Sols., Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582–83 (N.D. Cal. 2008) (where defendant allegedly violated patents, compelling that the plaintiff produce communications with third parties concerning the scope of licenses to use the patents-in-suit); and *Vondersaar v. Starbucks Corp.*, 2013 WL 1915746, at *1, *4 (N.D. Cal. May 8, 2013) (where Starbucks allegedly violated the Americans with Disabilities Act, compelling Starbucks to produce an *executed* settlement agreement that "may be admissible to prove other disputed facts," such as the feasibility of adjusting counter heights).

Plaintiff generally asserts that preliminary settlement communications "necessarily" address whether XRP is a security, and that they will help to "identify witnesses" or "facts" or "documents" or "damages."  (Motion to Compel, at 12.)  This amounts to no showing of relevance at all, let alone the kind of "particularized showing" that is required.  The settlement documents at issue do not identify "witnesses," or "facts," or models of "damages."  The types of evidentiary leads that Plaintiff vaguely describes are, rather, encompassed in the production he has already received, including all of the underlying documents that Ripple provided to the SEC during its enforcement investigation.[6]  *See, e.g., Triple A Machine Shop, Inc. v. U.S.A.*, 1994 WL

---

[5] While the opinion does not describe the nature of the "settlement communications" subject to production, it does indicate that the defendant had sought to withhold "email, correspondence and 'white papers' that express [defendant's] view on its compliance with the antitrust law."  *Church & Dwight*, 2011 WL 5827222, at *1.  Here, Defendants have already produced the white papers, PowerPoints and Wells responses that address Defendants' views on their compliance with law.

[6] Where correspondence between Ripple and the SEC reflected a mix of factual (or legal) discussion and settlement discussion, Ripple produced the document in redacted form, redacting

669834, *1 (N.D. Cal. Nov. 17, 1994) ("Settlement offers therefore have little relevance . . . This is especially so where, as here, the case did not actually settle.").

While Plaintiff is undoubtedly curious about settlement discussions, curiosity is not a substitute for relevance.  In light of the generalized nature of his demand, the broad scope of Defendants' productions to date, the public interest in protecting preliminary settlement negotiations with regulators, and the marginal (if any) possibility that the materials sought will lead to the discovery of admissible evidence, Plaintiff's request does not survive the "heightened scrutiny" that is required.

### C.    Ripple Should Not be Required to Produce Its Document Retention Policy

There is no reason to compel Ripple to produce a document retention policy early in discovery where there is no evidence of spoliation, and Ripple has already provided Plaintiff with the very information that he seeks from the production of that document.

During the Parties' discussion of RFP 24, Plaintiff contended that production of Ripple's document retention policy was necessary to understand the "universe of documents" available in discovery.  Nero Decl. ¶ 14, Ex. A at 2 (Jan. 19, 2021 Email from R. Burningham).  In response, Ripple disclosed to Plaintiff that "Ripple maintains corporate data for at least 7 years and has emails from current and former employees for the Relevant Period."  *Id.* at 1 (Jan. 22, 2021 Email from S. Nero).  That is the universe of what is available.  In response to Ripple's disclosure concerning Ripple's maintenance of corporate data, Plaintiff said nothing.  He did not request further information or ask any questions.  Instead, Plaintiff filed this motion to compel, and in so doing omitted that Ripple provided information on the "universe of documents" during the meet-and-confer process that he now claims is necessary for court intervention here.

Plaintiff's request should be denied.  It is well established that discovery about discovery is frowned upon.  "Courts typically look upon such discovery 'with skepticism and it is strongly

---

only the portion of the document reflecting Ripple and the SEC Staff's discussion of a potential framework for resolution.  Ripple informed Plaintiff it would review the withheld 408 correspondence for potential production in redacted form (ECF No. 129-8, Pl. Ex. 6 (Meet and Confer Letter from S. Nero) at 3), but rather than wait to see what was produced, Plaintiff filed this motion to compel less than a week later.

discouraged.'"  *Perez v. DirecTV Grp. Holdings, LLC*, 2020 WL 5875026, at *2 (C.D. Cal. Aug. 17, 2020) (quoting *Fish v. Air & Liquid Sys. Corp.*, 2017 WL 697663, at *17 (D. Md. Feb. 21, 2017).  For that reason, the Northern District of California's Guidelines for the Discovery of Electronically Stored Information "strongly encourages an informal discussion about the discovery of ESI" rather than through the formal discovery process.  *See* Guideline 2.03, available at https://cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-2015.pdf. Consistent with the Guidelines, Ripple provided information about the universe of available materials.  Rather than engage in the cooperative process encouraged by this Court's local rules, Plaintiff ran to the Court.[7]

There is, however, no justification for Plaintiff's requested relief.  Some courts hold that document retention policies are irrelevant all together.  *See Cunningham v. Standard Fire Ins. Co.*, 2008 WL 2668301, at *5 (D. Colo. July 1, 2008).  Other courts require a movant to establish a legitimate issue of spoliation before requiring their production.  *See McMorrow*, 2019 WL 3852498, at *3 (citing *In re Takata*, 2017 WL 8812734, at *3–4 (S.D. Fla. July 5, 2017) (collecting cases), *report and recommendation adopted*, 2018 WL 1859338 (S.D. Fla. Feb. 6, 2018)).  A common approach—and one that has emerged as the predominant view of courts in this Circuit—is that document retention policies are discoverable "only in circumstances where the non-moving party has claimed that requested discovery documents are 'unavailable' or when there are indicia that the discovery process was not thorough, reliable, or transparent."  *See, e.g., McMorrow*, 2019 WL 3852498, at *3; *Bakhtiari Corp. v. Register Tapes Unlimited Inc.*, 2013 WL 2253182, at *3 (N.D. Cal. May 22, 2013) (finding "good cause to compel production" of document retention policy "because of RTU's alleged failure to locate several sets of documents, which is the subject of the instant motion to compel"); *Montgomery v. Wal-Mart Stores, Inc.*,

---

[7] Plaintiff's assertion that Defendants' objections may be waived by failing to state whether responsive materials are being withheld is simply incorrect.  Defendants set forth proper objections to Plaintiff's specific document request and engaged in multiple meet and confer discussions with Plaintiff regarding the document retention policy which has been withheld on the basis of the objections.  ECF No. 129-8, Pls. Ex. 6 (Meet and Confer Letter from S. Nero) at 4-5.  In any event, Defendants have agreed to supplement their responses.

2015 WL 11233390, at *3 (S.D. Cal. Sept. 4, 2015) (reversing prior decision on discoverability of document retention policy "in light of Home Depot's claim that it cannot locate certain documents because they do not exist").[8]

Plaintiff does not meet this standard because Defendants have not claimed that any particular document is "unavailable," and there is no indicia that the discovery process, which has just begun, lacks reliability or transparency.  Instead of meeting the standard, Plaintiff cites to *Sharma v. BMW of N. Am. LLC*, 2016 WL 1019668, at *2–3 (N.D. Cal. Mar. 15, 2016), for the proposition that document retention policies are discoverable early in discovery even where there is no evidence of spoliation.  (Motion to Compel, at 13).  That is a misstatement of *Sharma*'s facts and is simply not the prevailing view.  *See, e.g., McMorrow*, 2019 WL 3852498, at *3.  While the plaintiff in *Sharma* requested the document retention policy in the first set of requests for production, the *Sharma* court did not order its production until the *conclusion* of fact discovery to permit the plaintiff to determine whether any spoliation occurred, whether information might have been lost, and what information is available to support their claims.  *Sharma*, 2016 WL 1019668, at *2–3.  It did not order production of a document retention policy at the outset of the fact discovery period where a defendant has voluntarily provided the universe of potentially responsive documents.[9]

---

[8] *See also Russell v. Kronos Inc.*, 2019 WL 5485891, at *1 (N.D. Cal. Oct. 25, 2019) ("Because the document-retention policy resulted in Kronos's inability to fully comply with General Order 71, the court ordered Kronos to produce its document-retention policy"); *Hawkins v. Kroger Co.*, 2019 WL 4416132, at *12 (S.D. Cal. Sept. 16, 2019) (ordering production because "Defendant has produced few responsive documents and indicated that it does not have certain types of documents").

[9] Plaintiff also cites *Cholakyan*.  (Motion to Compel, at 13.)  While the opinion itself does not include any explanation of the court's reasoning, the underlying motion shows that the facts fall squarely within the center of the prevailing view—in that case, there were significant questions about Defendant's diligence in producing documents when Defendant claimed its document production was complete after producing only 1,144 pages despite many categories of documents and significant time periods that were completely absent from the production.  Joint Stipulation re Plaintiff's Discovery Motion, Case No. 10-cv-05944-MMM-JC, ECF No. 41-1 at 1, 17 (June 6, 2011).

### D.      Plaintiff's Request to Remove Redactions and for a Privilege Log is not Ripe for Resolution by this Court

Lastly, Plaintiff moves to compel Defendants to produce a privilege log for information that was redacted or labeled "withheld for privilege" in the set of materials Ripple produced in response to RFP No. 3 and also to remove certain other non-privilege redactions.  These requests are premature and should be denied.

#### 1.      Defendants Should Not be Ordered to Produce a Privilege Log at this Time Because No Information To Date Has Been Withheld on the Basis of Privilege

Following Plaintiff's request that Defendants prioritize the documents provided to the SEC by "making a copy" of these documents, *see* ECF No. 99 at 6, Plaintiff now complains about the redactions or documents labeled "withheld for privilege" in the materials the SEC received.  Plaintiff's complaint is unwarranted and his motion for a privilege log of redactions or withheld documents is premature and should be denied.  The reason for this is simple.  Plaintiff requested that Defendants produce documents previously provided to the SEC, and that is what Defendants did.  If a document was provided to the SEC in redacted form, it was produced in the same form to Plaintiff.[10]  And when a document was withheld from the SEC on the basis of privilege, it was produced to the SEC with a "withheld for privilege" slip sheet and was also produced with that same slip sheet here.  Defendants' productions thus complied with Plaintiff's request by giving Plaintiff the same documents the SEC received in the same form the SEC received them.  Critically, "there is no document responsive to Request #3 that [Defendants] provided to the SEC that we are now withholding from [Plaintiff] on grounds of privilege." Nero Decl. ¶ 16.  As Defendants informed Plaintiff, no documents have yet been withheld in response to Plaintiff's requests on the basis of privilege.  *Id.*

Plaintiff accuses Defendants of "gamesmanship" and assuming that all redacted or

---

[10] The only redactions Defendants added were redactions of the highly personal bank account and wallet information for Mr. Garlinghouse, on 37 documents.  Defendants explained these redactions to Plaintiff in a January 26 email and received no response from Plaintiff challenging Defendants' addition of those redactions.  Nero Decl. ¶ 17.  As such, to the extent any of those redactions are the subject of this motion, Plaintiff has not complied with his meet and confer requirement under L.R. 37-1(a).

withheld documents are responsive only to RFP No. 3.  (Motion to Compel, at 15.)  But Defendants have made no such assumption.  Rather, in compliance with Plaintiff's request, Defendants prioritized the production of documents previously provided to the SEC.  Defendants have already explained to Plaintiff that they will evaluate the withheld materials as they continue to move through Plaintiff's remaining 101 document requests.  In an email to Plaintiff's counsel sent weeks before he filed this motion, defense counsel expressly stated, "If the documents that were produced in redacted form to the SEC are responsive to other of Plaintiff's discovery requests in unredacted form, we will respond as we move through your other requests."  Nero Decl. ¶ 17.  Plaintiff omits this representation from his motion, giving the misleading impression that Defendants have refused to review the withheld information as they respond to other document requests.

Plaintiff also falsely states that Defendants have "refused to produce a privilege log." (Motion to Compel, at 14.)  This is also untrue.  Defendants have not produced a privilege log yet because, to date, Defendants have not withheld from the Plaintiff any document or information on the basis of privilege.  Nero Decl. ¶ 16.  When Defendants do withhold documents on that basis, they will of course provide a privilege log in due course.  *See* Fed. R. Civ. Proc. 26(b)(5)(A) (requiring a privilege log "***when*** a party withholds information" on the basis of privilege) (emphasis added).  Plaintiff's request for this log now, however, is simply premature.[11]

## 2.  Plaintiff's Motion for the Removal of Other Redactions is Premature

Plaintiff's motion also seeks to compel Defendants to remove any non-privileged redactions from the documents.  This request should similarly be denied.

---

[11] Plaintiff's statement that a privilege log was provided to the SEC is of no consequence here since Plaintiff has no basis to challenge a privilege designation made to a document withheld from the SEC, and a privilege log in separate litigation lacks relevance to this case.  Rather it is only when documents are withheld in response to Plaintiff's requests on the basis of privilege that Defendants have an obligation to produce a privilege log and Plaintiff has the right to review that designation and determine if a challenge is warranted.  Defendants will produce a privilege log of documents responsive to Plaintiff's requests that are withheld or redacted on the basis of privilege in due course during the fact discovery period.

1    Plaintiff's motion contains material omissions of the Parties' discussions on this topic and

2    as a result grossly misrepresents the issue before the court.  First, Plaintiff fails to mention that

3    the redactions on the documents exist because that is how they were produced to the SEC.  As

4    Defendants informed Plaintiff on January 26, "the redactions you see – with one exception – are

5    the same redactions that were made in our production to the SEC." Nero Decl. ¶ 17.[12]  Plaintiff

6    contends that there is "no reason" to redact non-privileged information "except to hide

7    information from Plaintiff and his counsel in this lawsuit – which is exactly what Defendants are

8    doing here." (Motion to Compel, at 17).  But he knows this is not the reason for the redactions.

9    The redacted documents have nothing to do with "hiding" information from Plaintiff and

10   everything to do with expediting the production of documents as requested by him.

11   But more importantly, Plaintiff's motion omits that Defendants ***already agreed*** to

12   consider removing certain redactions as they respond to Plaintiff's additional document requests.

13   Nero Decl. ¶ 17 ("If the documents that were produced in redacted form to the SEC are

14   responsive to other of Plaintiff's discovery request in unredacted form, we will respond as we

15   move through your other requests.")  There is thus no issue ripe before this Court to rule on at

16   this time.

17   **IV.    CONCLUSION**

18   For the foregoing reasons, Defendants respectfully request the Court deny Plaintiff's

19   motion to compel in its entirety.

20   DATED: February 22, 2021          KING & SPALDING LLP

21

22                                     By:   /s/ Suzanne E. Nero

23                                           Suzanne E. Nero

24                                     DAMIEN J. MARSHALL (admitted pro hac vice)
                                       dmarshall@kslaw.com
25                                     ANDREW MICHAELSON (admitted pro hac vice)
                                       amichaelson@kslaw.com
26

27   _____

28   [12] As discussed *supra* at footnote 10, the "one exception" concerns limited redactions made to
     Mr. Garlinghouse's personal bank account and wallet information, which Plaintiff has never
     discussed with Defendants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel: (212) 556-2100; Fax: (212) 556-2222

SUZANNE E. NERO (SBN 284894)
snero@kslaw.com
KING & SPALDING LLP
50 California St., Suite 3300
San Francisco, CA 94111
Tel: (415) 318-1200; Fax: (415) 318-1300

ANDREW J. CERESNEY (admitted pro hac vice)
aceresney@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000; Fax: (212) 909-6836

Attorneys for Defendants Ripple Labs Inc.,
XRP II, LLC, and Bradley Garlinghouse