January 19, 2023

**DISCOVERY MATTER**   - PUBLIC VERSION (REDACTED)

<u>BY ECF</u>
Honorable Robert M. Illman
United States District Court
Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Ave
McKinleyville, CA 95519

   Re: *In re Ripple Labs Inc. Litigation*, Case No. 4:18-cv-06753-PJH-RMI

Dear Judge Illman:

Pursuant to the Order of Reference to Magistrate Judge (ECF No. 135) and the Court's Standing Order § 13(a),[1] Lead Plaintiff Bradley Sostack ("Plaintiff") and Defendants Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse (collectively "Defendants") submit this joint letter regarding the following discovery dispute.

## Issue

Whether Defendants may obtain discovery regarding Plaintiff's trading in digital assets other than XRP.

## Defendants' Position

Just eight weeks ago, Plaintiff Bradley Sostack filed a declaration in this action, in support of his motion for class certification, asserting that he purchased XRP with the "expectation" that it would increase in value "based on Ripple's promotional activity[.]"[2] He surely submitted this declaration, at least in part, to support the central allegation of this case: whether XRP constitutes an "investment contract" within the meaning of the Securities Act of 1933. In *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946), the Supreme Court held that the term "investment contract" means "a contract, transaction or scheme whereby a person . . . *is led to expect profits solely from the efforts of the promoter or a third party*[.]" (emphasis added). Plaintiff's declaration was clearly intended to help meet his burden under *Howey* and establish his adequacy to represent his proposed class.

Following receipt of Plaintiff's class certification motion and declaration, Defendants quickly served interrogatories and third-party subpoenas seeking discovery of information relevant to the credibility of this declaration. If Plaintiff has a practice of day-trading numerous digital assets that would undermine his representation that he purchased XRP based on an "expectation" that it would increase in value, *based on Ripple's efforts*, but rather, suggests that he was speculating in the

---

[1] https://www.cand.uscourts.gov/wp-content/uploads/judges/illman-rmi/RMI-Standing-Order.pdf
[2] ECF No. 181-66. Plaintiff filed a similar declaration in the parallel SEC litigation in September 2022. *SEC v. Ripple Labs Inc. et al.*, No. 1:20-cv-10832-AT-SN (S.D.N.Y.) (the "SEC Action").

digital asset market broadly.  To be clear, Defendants are not seeking Plaintiff's tax returns or overall financial condition; just his trading activity in digital assets.  Plaintiff, however, refused to answer interrogatories about his non-XRP trading,[3] and he objected to production of his trading data.  On January 13, 2023, at Plaintiff's deposition—which counsel had agreed would encompass both class certification and merits-related issues—Plaintiff's counsel repeatedly instructed him not to answer questions concerning his trading in digital assets other than XRP on grounds of privacy and relevance.  The Court should overrule his objections.

Evidence suggests that, contrary to his declaration, Plaintiff speculated in XRP without any "expectation" of profit based on Ripple's efforts. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Given these indications that Plaintiff is a day trader, Defendants are entitled to discovery into Plaintiff's trading practices in other digital assets because it is relevant to assess the credibility of his declaration.  *Davis v. Kelly Servs., Inc.*, 2017 WL 11633478, at *7 (C.D. Cal. Oct. 23, 2017) ("Courts have found that Rule 26 permits the discovery of information that may simply relate to the credibility of a witness or other evidence in the case.") (citing *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998)).  The discovery sought is also relevant to Plaintiff's attempt to meet his burden under *Howey*.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"); *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) ("pre-trial discovery is ordinarily accorded a broad and liberal treatment.").  And it is relevant to Plaintiff's adequacy and typicality to serve as a class representative under Rule 23(a).  If Plaintiff is a speculative day trader who bought XRP hoping to turn a quick profit, he cannot adequately represent a class that, to prove its claims, must establish they had "investment contracts" with Ripple premised on an expectation of profits *based on Ripple's efforts*.  *Barry B. Roseman, D.M.D., M.D. Profit Sharing Plan v. Sports and Rec.*, 165 F.R.D. 108, 112 (M.D. Fla. 1996) (ordering production of "plaintiffs' investment or trading history in other publicly held securities" because it was "relevant to plaintiff's ability to adequately represent the proposed class."); *Applestein v. Medivation Inc.*, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) (possibility that plaintiff was a day trader raised "serious concerns about his typicality" and susceptibility to unique defenses).  Yet, due to Plaintiff's objections, Defendants are prejudiced from establishing the extent of his day trading other digital assets at the very same time he was trading XRP.[6]  Plaintiff also prevented any discovery into whether he has a practice

---

[3] Ex. A, Resp. and Obj. to Ripple's First Interrog. Nos. 4 and 5.
[4] Ex. B, Sostack Dep. Tr., at 38:17-39:9.
[5] *Id.* at 92:17-93:4.
[6] *Id.* at 40:10-40; 41:4-41:19.

of performing research into a digital asset before buying it, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Plaintiff's responses are without merit. His privacy interest in the volume and basis of his digital asset trading is outweighed by the relevance of the discovery and, in any event, is protected by the protective order in this action. ECF No. 143; *see also Ghaderi v. Jones*, 2019 WL 6711698, at *2 (C.D. Cal. Jun. 28, 2019) ("protective order can minimize the impact of disclosure of otherwise private information") (cleaned up). Furthermore, by submitting declarations attesting to his reasons for buying XRP, Plaintiff has waived the right to assert a privacy objection over his digital asset trading practices. *Uschold v. Carriage Servs., Inc.*, 2019 WL 3282961, *6 (N.D. Cal. Jan. 17, 2019) ("[a] party waives this protection when she puts that topic at issue in the litigation.").

While Plaintiff cites a number of securities cases in which courts denied discovery into the plaintiff's trading in other securities, <u>none</u> of those cases involve a situation where the plaintiff voluntarily submitted a sworn declaration containing a statement that is central to the merits of his claim, the credibility of which could be directly undermined by discovery to which the plaintiff objects. And none involved a case in which there was a dispute over whether the asset was an investment contract under *Howey*; all involved an asset that was already determined to be a security. *E.g. In re New Century*, 2009 U.S. Dist. LEXIS 144557, at *10 (C.D. Cal. Dec. 7, 2009) (involving no declaration or *Howey* analysis); *Weiss v. Blech*, 1997 WL 458678, at *3-4 (S.D.N.Y. Aug. 11, 1997) (same); *Zaltzman v. Clark*, 1992 WL 426466 (N.D. Cal. Oct. 1, 1992) (same). Simply put, a plaintiff cannot declare that he bought XRP with an "expectation" that it would increase in value due to Ripple's efforts while simultaneously blocking Ripple from discovery into whether he was day trading other digital assets, at the same time, without any "expectation" of long-term profit. *See Converse v. City of Kemah, Texas*, 2021 WL 5811726, at *3 (S.D. Tex. Dec. 7, 2021) ("It would be manifestly unfair to permit a party . . . to make his or her own factual submission to the court and then prevent the opposing party from testing that factual submission through the discovery process.") Indeed, Plaintiff's analogy to objections asserted by Brad Garlinghouse and Chris Larsen in the parallel SEC Action prove the inapplicability of his precedent. There, the SEC sought broad discovery into their personal finances for the purpose of seeking disgorgement, a remedy not sought here. Their credibility was not at stake, and whether they day traded or conducted research into other digital assets was not relevant to the central *Howey* analysis. Here, it plainly is.

In light of the above, Defendants respectfully request the Court:

1. Order Plaintiff to reappear for his deposition and to answer questions under oath on his trading in digital assets other than XRP;
2. Order Plaintiff to submit complete responses to Interrogatories Nos. 4 and 5;
3. Overrule Plaintiff's objections to third party subpoenas that prevent Ripple from obtaining Plaintiff's trading records from third-party exchanges.

---

[7] *Id.* at 78:23-79:5. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Plaintiff's Position**

This securities class action alleges that Defendants violated the registration provisions of the securities laws by selling XRP. Defendants' liability hinges on whether their offers and sales of XRP are investment contracts under the Howey test, which is an "objective" test. *Warfield v. Alaniz*, 569 F.3d, 1015, 1021 (9th Cir. 2009). Solicitations do not need to "be directed or targeted to a particular plaintiff," *Pino v. Cardone Capital, LLC*, 55 F.4th 1253, 1260 (9th Cir. 2022), and there is no need to show reliance or scienter, *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) (referring to the related 12(a)(2) claim as "a virtually absolute liability provision"). In sum, Plaintiff's state of mind is not at all relevant to Defendants' liability.

It is thus unsurprising that "in securities class actions, courts routinely deny general discovery into a plaintiff's trading and investment strategy in other securities." *In re New Century*, No. CV 07-0931, 2009 U.S. Dist. LEXIS 144557, at *13 (C.D. Cal. Dec. 7, 2009); *Weiss v. Blech*, No. 95 CIV 6422 (RWS), 1997 WL 458678, at *3 (S.D.N.Y. Aug. 11, 1997) (sustaining objections to requests seeking "other securities trading activity" because "plaintiff's sophistication regarding securities and investment practices is irrelevant"); *Funke v. Life Fin. Corp.*, No. 99 CIV. 11877 (CBM), 2003 WL 1787125, at *2 (S.D.N.Y. Apr. 3, 2003) ("the court will not order plaintiffs to produce documents relating to other trade in similar companies"); *In re Assisted Living Concepts, Inc. Sec. Litig.*, No. 99-167-AA, 2001 WL 37119214, at *1 (D. Or. Apr. 13, 2001) (denying request for "documents relating to plaintiffs' personal investment experience, history, objectives, and strategy" as "overbroad, far-reaching and burdensome"); *Kolin v. Am. Plan Corp.*, 1986 WL 36311, at *10 (E.D.N.Y. Apr. 8, 1986) ("investment strategy . . . is of little importance to [plaintiff's] suitability as a class representative"); *Malanka v. Data Gen. Corp.*, 1986 WL 541, at *2 (D. Mass. 1986) ("documents of plaintiff's investment services and sophistication unrelated to this claim are not relevant and are, therefore, not discoverable."); *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) ("Any information [defendant] may have gleaned from these discovery requests would have no bearing on either the merits of the case or on the motion for class certification.").[8]

Nevertheless, in December 2020, Defendants served a litany of document requests seeking: all Plaintiff's transactions "involving any cryptocurrency other than XRP"; all Plaintiff's state and federal tax filings; and all Plaintiff's trades "in any securities." Plaintiff objected to each of these requests as seeking information that is not relevant to any claim or defense in this action. Recognizing that this private financial information is of no relevance, Defendants did not seek to further meet and confer regarding these requests, much less move to compel responses.

Despite apparently abandoning this invasive and unwarranted discovery for nearly three years, Defendants are now seeking to probe all of Plaintiff's transactions in any digital asset across all time, by serving subpoenas on cryptocurrency exchanges and seeking testimony from Plaintiff regarding these unrelated transactions. Plaintiff's counsel instructed Plaintiff not to answer these questions regarding unrelated digital assets, but Plaintiff did answer all questions regarding his

---

[8] Defendants cherry pick quotes from two cases which they contend support their claim that Plaintiff's investment history is relevant. But unlike this strict liability case, both are fraud cases in which reliance is an element. *See Roseman*, 165 F.R.D. 108 at 112 (trades in "securities other than the defendant corporation" for two-year time period were "relevant to reliance"); *Applestein*, 2010 WL 3749406 at *3 (record raised concerns "about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements.")

investment in XRP.  Plaintiff has also objected to the subpoenas targeting his non-XRP exchange records and interrogatories seeking information regarding the same.

Federal courts recognize a constitutionally-based right of privacy that can be raised in response to discovery requests.  *Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. 2012).[9]  "Resolution of a privacy objection… requires a balancing of the need for the information sought against the privacy right asserted."  *Ryan v. Editions Ltd. W., Inc.*, No. C-06-4812 PVT, 2007 U.S. Dist. LEXIS 62725, at *8-9 (N.D. Cal. Aug. 14, 2007) (upholding privacy protections in financial records where, "even if [moving party] had shown a limited relevance to the documents sought, any tangential relevance would be outweighed by the privacy interest.").

"It has been well established that the rights of privacy extend to one's confidential financial affairs."  *Christensen-Thorson v. E*TRADE Fin. Corp.*, No. C 06-01575 JW, 2006 WL 8431340, at *3 (N.D. Cal. July 11, 2006); *Ryan*, 2007 U.S. Dist. LEXIS 62725, at *9 ("Private financial records are normally entitled to privacy protections."); *Valley Bank of Nevada v. Superior Ct.*, 15 Cal. 3d 652, 656 (1975) ("'right of privacy extends to one's confidential financial affairs.").

It is thus well settled that privacy objections can provide a proper basis for instructions not to answer at a deposition, particularly where the private information sought is not relevant to the dispute.  *McCoy v. City of Vallejo*, No. 2:19-CV-1191-JAM-CKD, 2022 WL 4472881, at *4 (E.D. Cal. Sept. 26, 2022); (sustaining instructions not to answer where information sought was not relevant); *Williams v. City of Long Beach*, 2020 WL 7059601, at *2 (C.D. Cal. Oct. 27, 2020) (same); *McClure v. Prisoner Transportation Services of America, LLC*, No. 1:18-CV-00176-DAD-SKO, 2020 WL 1182653, at *2-3 (E.D. Cal. Mar. 12, 2020) (same).  In fact, in the *Robinson* case which Defendants rely upon for the proposition that instructions not to answer are generally improper, the Court sustained objections not to answer on the basis of privacy and rejected the contention that "privacy rights are not jeopardized, because the parties entered into a protective order that would permit his testimony to be designated confidential."  2017 WL 4509142, at *2.

Defendants' invasive discovery also cannot be squared with their own position in the SEC Action, where they aggressively asserted their own privacy rights, describing the SEC's requests seeking the personal financial records of Ripple's CEO, Brad Garlinghouse, and its Chairman, Chris Larsen, as "wholly inappropriate overreach."  *SEC v. Ripple Labs, Inc. et al.*, No. 20-cv-10832 (AT)(SN) (S.D.N.Y.), ECF No. 59 at 1.  Defendants argued at length, that they "have important privacy interests, recognized by federal law, over their personal financial data," and that their "privacy interests are especially powerful here because the requests and subpoenas seek such a comprehensive intrusion into their personal financial lives . . . including their wealth, their investment decisions, and what they purchased and when."  *Id.* at 4-5. Yet this is exactly the same broad ranging inquiry Defendants now contend they are entitled to conduct with respect to Mr. Sostack's finances.  Just as Defendants noted, "[w]here, as here, the personal financial records being sought have literally *nothing* to do with [Plaintiff's] allegations or the conduct at issue, there is no basis for" Defendants to compel their disclosure.  *Id.*   The Court agreed with Garlinghouse and Larsen and blocked discovery into their non-XRP transactions.  *See* ECF 103.

---

[9] Moreover, both the California and Florida constitutions expressly recognize a right to privacy.  *See* Cal. Const. Art 1, § 1; Fl. Const. Art. I, § 12.

In *Zaltman v. Clark*, as here, Defendants argued that "documents related to plaintiff's trading history would be relevant to class certification issues such as typicality and adequacy." No., 1992 WL 426466 (N.D. Cal. Oct. 1, 1992). The Court rejected this argument, holding that "**such an inquiry would invade her personal privacy and the privacy of her financial affairs that are unrelated to the purchase of [securities] at issue**." *Id*. (emphasis added). So too here.

Despite the mountain of case law, Defendants contend that Plaintiff's transactions in other assets are relevant because they may show that Plaintiff "day-traded" other digital assets. Defendants claim that this information would somehow impeach Plaintiff's representations that he did not purchase XRP for consumptive use and that he saw certain of Defendants' promotional activity.

This position defies logic. First, the time-horizon of Mr. Sostack's XRP investment has no bearing on whether the XRP he purchased was an unregistered security. But even if it did, Defendants have been provided all of Plaintiff's XRP transactions and were able to question him extensively regarding those transactions, including whether those transactions constituted "day trading." Sostack Tr. 95:23; 96:5-7.[10] Whether Plaintiff engaged in short-term trades of other digital assets at some point over the past decade simply has no relationship to whether his XRP transactions in January 2018 constituted "day trading." Nor does it have any tendency to disprove any representation in Mr. Sostack's declaration, which exclusively addressed the basis for his purchase of XRP. Defendants' requests for this private and irrelevant information should thus be denied.

---

[10] Defendants were also able to question Mr. Sostack regarding all trades made on the Poloniex exchange around the time of Plaintiff's XRP purchase, including trades in Bitcoin, Ethereum, and Monero.