# EXHIBIT 5

```
                                      VOLUME: I
                                      PAGES:  1 to 148
                                      EXHIBITS:  9 to 10


              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
                   OAKLAND DIVISION


      Civil Action No. 4:18-cv-06753-PJH
                                              )
      In Re:                                  )
      RIPPLE LABS, INC.                       )
      LITIGATION                              )
                                              )
      _____          )
                                              )
                                              )
      This Document Relates To:               )
                                              )
      ALL ACTIONS                             )
                                              )


              VIDEOTAPED DEPOSITION OF STEVEN P.
      FEINSTEIN, called as a witness on behalf of
      the Defendants, pursuant to the applicable
      provisions of the Federal Rules of Civil
      Procedure, before Jeanette N. Maracas,
      Registered Professional Reporter and Notary
      Public in and for the Commonwealth of
      Massachusetts, at the Offices of Morgan,
      Lewis & Bockius, One Federal Street, Boston,
      Massachusetts, on Friday, January 20, 2023,
      commencing at 9:41 a.m.
```

Page 1

### Page 2

1  APPEARANCES:
2
   SUSMAN GODFREY, LLP
3  By: Nicholas N. Spear, Esq.
   1900 Avenue of the Stars
4  Los Angeles, CA 90067
   For the Lead Plaintiff.
5  Nspear@susmangodfrey.com
6
   KING & SPALDING, LLP
7  By: Andrew Michaelson, Esq.
   By: Luke N. Roniger, Esq. (Texas)
8  By: Jared Lax, Esq. (via Zoom)
   1185 Avenue of the Americas
9  New York, NY 10036
   For the Defendants.
10 Amichaelson@kslaw.com
   Lroniger@kslaw.com
11
12 Shawn Budd, Videographer.
13
   ALSO PRESENT VIA ZOOM:
14
   Ana Guardado, Esq., Ripple Labs, Inc.
15
16
17
18
19
20
21
22
23
24
25

### Page 3

1         I N D E X
2  Testimony of:         Direct   Cross
3  Steven P. Feinstein
4  (by Mr. Michaelson)      5
5
         E X H I B I T S
6
7  No.    Description        Page
8
   Exhibit 9    Deposition notice.    19
9
   Exhibit 10   Exhibit 62, Expert
10          Report of Steven P.
            Feinstein, 11/18/22.   24

### Page 4

1         P R O C E E D I N G S        09:40:39
2      VIDEOGRAPHER:  We are on the record.   09:40:39
3  This is the videographer speaking, Shawn     09:41:46
4  Budd with Veritext Legal Solutions.  Today's 09:41:48
5  date is January 20, 2023, and the time is    09:41:51
6  9:41 a.m.  We are here at the offices of    09:41:55
7  Morgan Lewis, Boston, Massachusetts to take  09:41:59
8  the video deposition of Dr. Steven Feinstein 09:42:02
9  in the matter of Ripple Labs, Inc.           09:42:06
10 litigation.                                  09:42:09
11     Will counsel please introduce            09:42:10
12 themselves for the record.                   09:42:11
13     MR. SPEAR:  Nick Spear, Susman            09:42:13
14 Godfrey for lead plaintiff, Bradley Sostack.  09:42:16
15     MR. MICHAELSON:  Andrew Michaelson        09:42:20
16 from King & Spalding representing defendants, 09:42:21
17 and joined by my colleague, Luke Roniger,    09:42:25
18 also from King & Spalding in person.  My     09:42:29
19 colleague, Jared Lax, also from King &       09:42:30
20 Spalding, is attending remotely and Ana      09:42:35
21 Guardado, in-house counsel at Ripple, is     09:42:40
22 also joining remotely.                       09:42:42
23     VIDEOGRAPHER:  The court reporter        09:42:43
24 today is Jeanette Maracas.  Will you please  09:42:44
25 swear in the witness.                        09:42:47

### Page 5

1       STEVEN P. FEINSTEIN
2      A witness called for examination
3  by counsel for the Defendants, having been
4  first duly sworn, was examined and testified
5  as follows:
6        DIRECT EXAMINATION
7  BY MR. MICHAELSON:                           09:43:06
8  Q. Good morning, Dr. Feinstein.  My name is  09:43:08
9     Andrew Michaelson from King & Spalding    09:43:18
10    representing defendants.  How are you today? 09:43:22
11 A. Fine, thank you.                          09:43:24
12 Q. Let me go over a few groundrules that should 09:43:25
13    help make today go more smoothly.  You may 09:43:27
14    be familiar with them, but I'll go through 09:43:28
15    them nonetheless.                         09:43:29
16    First, do you understand you're           09:43:31
17    under oath just as you would be in a      09:43:32
18    courtroom at trial, is that correct?      09:43:34
19 A. Yes.                                      09:43:37
20 Q. And you understand that we have a court   09:43:37
21    reporter who is taking down every word that 09:43:39
22    you and I say?                            09:43:41
23 A. Yes.                                      09:43:42
24 Q. Is there any reason why you can't give    09:43:42
25    complete truthful testimony today?        09:43:47

2 (Pages 2 - 5)

```
 1  Q. I see. Have you visited the website of      09:57:54
 2     any other crypto exchange aside from        09:57:58
 3     Coinbase?                                   09:58:00
 4  A. I may have. I don't recall specifically,    09:58:02
 5     but I may have. Not that I recall           09:58:04
 6     specifically as I sit here now.             09:58:08
 7  Q. So you may have, but you don't recall today? 09:58:10
 8  A. Correct.                                    09:58:12
 9  Q. Okay.                                       09:58:12
10  A. Names that appear -- for example, what I'm  09:58:17
11     referring to here is if I read an article   09:58:20
12     and they cite Gemini, for example, I may have 09:58:22
13     Googled quickly Gemini and seen what comes  09:58:25
14     up, but I did that again not in connection  09:58:30
15     with this case.                             09:58:31
16  Q. And I'm not prying into financial details   09:58:32
17     here, but I do just want to ask what your   09:58:38
18     experience is in trading digital assets, and 09:58:41
19     you said that you bought some small amount  09:58:44
20     of digital assets on Coinbase. Do you still 09:58:47
21     own digital assets today?                   09:58:51
22  A. No.                                         09:58:53
23  Q. Approximately how many trades in digital    09:58:54
24     assets have you made?                       09:59:00
25  A. Two, a purchase and a sale of Ethereum.     09:59:01
                                                        Page 18
```

```
 1  Q. So a purchase and a sale of Ethereum.       09:59:06
 2     Okay. Have you visited the XRP Ledger in    09:59:10
 3     preparation for today's deposition?         09:59:29
 4  A. No.                                         09:59:32
 5  Q. Did you visit or interact at all with the   09:59:32
 6     XRP Ledger in preparation for submitting    09:59:38
 7     your report in this case?                   09:59:41
 8  A. No.                                         09:59:42
 9     MR. MICHAELSON: I'd like to mark            09:59:47
10     as Exhibit 9...                             09:59:48
11     (Exhibit 9 marked for                       10:00:13
12     identification.)                            10:00:15
13  Q. I handed you a document marked Defense      10:00:21
14     Exhibit 9 which is titled on the first page 10:00:31
15     Defendants' Notice of Deposition of Steven P. 10:00:33
16     Feinstein with a Request For Documents.     10:00:36
17     It's a four-page exhibit. Are you familiar  10:00:40
18     with this document?                         10:00:45
19  A. Yes.                                        10:00:47
20  Q. You've seen it before?                      10:00:47
21  A. Yes.                                        10:00:49
22  Q. Do you understand that you're appearing here 10:00:50
23     today pursuant to this notice of deposition? 10:00:56
24  A. I'll take your word for it. I was asked to  10:01:00
25     appear here and that's why I'm here. It's   10:01:04
                                                        Page 19
```

```
 1     not really pursuant to.                     10:01:07
 2  Q. Fair enough. I'd like to direct your        10:01:08
 3     attention to Page 3 of the document which is 10:01:10
 4     the request for production of documents.    10:01:12
 5  A. Okay.                                       10:01:15
 6  Q. And have you seen these requests before?    10:01:16
 7  A. Did you say these requests?                 10:01:23
 8  Q. Have you seen this set of document requests 10:01:24
 9     before?                                     10:01:27
10  A. This exhibit, yes, I've seen this document. 10:01:27
11  Q. Did you undertake to collect documents in   10:01:30
12     response to this request?                   10:01:33
13  A. I did.                                      10:01:35
14  Q. Was there any document that you're aware    10:01:35
15     of that are responsive to these requests    10:01:43
16     that you didn't provide to your counsel for 10:01:44
17     production in this case?                    10:01:46
18     MR. SPEAR: Objection. I'll just             10:01:48
19     note that we objected to certain documents or 10:01:49
20     certain parts of these as not being things  10:01:53
21     that we were going to produce. Are you      10:01:55
22     asking -- I'm not sure what you're asking.  10:01:57
23     MR. MICHAELSON: I was asking if             10:02:00
24     he's aware of something that's responsive to 10:02:01
25     these that he didn't share with counsel, but 10:02:03
                                                        Page 20
```

```
 1     I understand the nature of your objection.  10:02:09
 2     To be honest, we just got the production    10:02:12
 3     less than, I think, 48 hours ago and we've  10:02:15
 4     transferred to our vendor 24 hours ago and  10:02:17
 5     some of it we haven't been able to access   10:02:21
 6     yet, so we're sitting here today not entirely 10:02:24
 7     sure what it fully contains, the production, 10:02:28
 8     because it was made so close in time to     10:02:30
 9     the deposition. I guess I'll focus on No. 6. 10:02:32
10     Is there an objection to No. 6?             10:02:38
11     MR. SPEAR: I don't believe so,              10:02:40
12     other than just I don't think we found      10:02:42
13     anything. Go ahead.                         10:02:43
14  Q. I'll direct your attention to Request No. 6. 10:02:45
15  A. Yes.                                        10:02:53
16  Q. No. 6 is a request for all of your public   10:02:53
17     statements, publications, writings, notes   10:02:56
18     slides or presentations relating to XRP,    10:02:58
19     Ripple, cryptocurrency or any other         10:03:02
20     blockchain technology. Do you see that?     10:03:05
21  A. I do.                                       10:03:06
22  Q. Do you have any documents responsive to     10:03:06
23     this request?                               10:03:08
24  A. Depends on how one interprets "relating." I 10:03:09
25     interpreted "relating" to mean that it      10:03:13
                                                        Page 21
```

6 (Pages 18 - 21)

```
 1   specifically mentions these words, "XRP,      10:03:16
 2   Ripple, cryptocurrency or any other           10:03:24
 3   blockchain technology," and I believe I have  10:03:27
 4   no such statements, publications, writings    10:03:31
 5   that specifically mention these words or      10:03:37
 6   topics, although, of course, these topics     10:03:39
 7   are subsumed within the -- are covered within 10:03:42
 8   the field of financial economics in general.  10:03:46
 9   I didn't provide every statement that relates 10:03:50
10   to finance, but I believe that nothing was    10:03:53
11   provided here because I have no statements    10:03:58
12   and documentation that specifically cites     10:04:01
13   XRP or Ripple and so on.                      10:04:04
14 Q. I see. So I understand you to be saying that 10:04:06
15   you have made public statements, publications 10:04:10
16   concerning finance, correct?                  10:04:13
17 A. That's right, and finance applies to -- the  10:04:14
18   analysis and study of finance applies to XRP  10:04:19
19   and Ripple, but I didn't believe that's what  10:04:22
20   you meant by this Statement 6 request.        10:04:24
21 Q. Okay. The publications, focusing on          10:04:26
22   publications for a moment. The publications  10:04:30
23   that you've authored concerning finance don't 10:04:33
24   mention XRP or Ripple, correct?               10:04:36
25 A. That's correct.                              10:04:39
                                                  Page 22
```

```
 1 Q. They don't mention cryptocurrency?           10:04:40
 2 A. Correct.                                     10:04:42
 3 Q. And they don't mention any other blockchain  10:04:43
 4   technology?                                   10:04:47
 5 A. Again correct.                               10:04:47
 6 Q. Do they mention digital assets?              10:04:48
 7 A. No.                                          10:04:50
 8 Q. Virtual currencies?                          10:04:50
 9 A. To the best of my recollection, no.          10:04:52
10 Q. How about Bitcoin?                           10:04:55
11 A. No.                                          10:04:56
12 Q. Ethereum?                                    10:04:56
13 A. No.                                          10:05:00
14 Q. I'd like to direct your attention to Request 10:05:00
15   No. 4, all opinions, reports, testimony       10:05:33
16   and/or declarations you submitted that        10:05:39
17   pertain to damages in cases involving or      10:05:41
18   related to state or federal securities        10:05:45
19   actions over the past ten years. Do you       10:05:48
20   see that request?                             10:05:50
21 A. I do.                                        10:05:50
22 Q. Did you provide all documents responsive     10:05:51
23   to this request to your counsel?              10:05:58
24      MR. SPEAR: Objection. Subject to           10:06:00
25   our objections, but go ahead.                 10:06:01
                                                  Page 23
```

```
 1 A. Again, it depends on -- I'm not a lawyer     10:06:03
 2   so it depends on how one is defining          10:06:06
 3   "responsive to," and that was a decision      10:06:09
 4   and determination made by counsel. Let me     10:06:12
 5   elaborate, because I did not turn over to     10:06:17
 6   counsel reports or testimony that's covered   10:06:19
 7   by protective orders that preclude my         10:06:23
 8   making them public.                           10:06:26
 9 Q. Okay.                                        10:06:27
10 A. But everything else I endeavored to collect  10:06:32
11   and provided to plaintiff's counsel.          10:06:36
12   Plaintiff's counsel made a determination as   10:06:43
13   to what to give to you, is my understanding.  10:06:44
14 Q. Okay.                                        10:06:46
15     MR. SPEAR: Just for the record,             10:06:51
16   whatever information -- just so we don't      10:06:53
17   beat around the bush, whatever they gave us   10:06:56
18   in response to No. 4 we just produced. We     10:06:56
19   didn't share it beyond what they gave us.     10:06:59
20     MR. MICHAELSON: Okay.                       10:07:03
21     MR. SPEAR: It's the same for No. 5.         10:07:18
22     MR. MICHAELSON: Mark this No. 10.           10:07:26
23     (Exhibit 10 marked for                      10:07:28
24   identification.)                              10:07:29
25 Q. Before moving on to Exhibit 10, just a last  10:07:40
                                                  Page 24
```

```
 1   question on Exhibit 9, request, document      10:08:10
 2   Request No. 6. I just want to make sure       10:08:15
 3   that you do not have any notes, class notes   10:08:26
 4   that mention XRP, Ripple, cryptocurrency      10:08:35
 5   or any other blockchain technology?           10:08:39
 6 A. Correct, not class notes. Again,             10:08:45
 7   specifically class notes, notes I use for     10:08:52
 8   teaching, no. I believe I do not have any     10:08:55
 9   that specifically mention XRP, Ripple or      10:09:01
10   cryptocurrency.                               10:09:05
11 Q. Or any other blockchain technology?          10:09:07
12 A. Correct.                                     10:09:09
13 Q. Slides, lecture outlines, do you have any    10:09:10
14   slides or lecture outlines that mention XRP,  10:09:14
15   Ripple, cryptocurrency or any other           10:09:17
16   blockchain technology?                        10:09:21
17 A. Correct.                                     10:09:22
18 Q. Correct, you don't have any?                 10:09:23
19 A. I do not have those.                         10:09:25
20 Q. And the notes that -- you paused for a moment 10:09:27
21   on notes. Do you have some kind of notes      10:09:29
22   other than class notes that mention XRP,      10:09:31
23   Ripple, cryptocurrency or other blockchain    10:09:34
24   technology?                                   10:09:37
25 A. I'll tell you what I'm thinking. My          10:09:38
                                                  Page 25
```

|  |  |
|---|---|
| 1  of some debate that has, in my opinion,  10:59:19<br>2  no bearing on my opinions. It's not  10:59:21<br>3  something I wrote about in my report or  10:59:23<br>4  expressed as an opinion. There are  10:59:26<br>5  representations and allegations from both  10:59:34<br>6  sides in this case about what XRP was  10:59:37<br>7  used for and how it would be used and why  10:59:41<br>8  it had value, whether the ledger was  10:59:45<br>9  centralized or decentralized, for example,  10:59:47<br>10  but none of that had any bearing on my  10:59:51<br>11  opinions.  10:59:53<br>12  Q. So whether XRP has utility or not have any  10:59:54<br>13  bearing on your opinion?  11:00:05<br>14      MR. SPEAR: Objection, scope.  11:00:06<br>15  A. Well, my opinion as spelled out in this  11:00:07<br>16  report is that there's a common method for  11:00:10<br>17  computing damages for all class members.  11:00:14<br>18  The common method is consistent with  11:00:19<br>19  plaintiff's theory of liability, and I lay  11:00:22<br>20  out what that method is. That is really  11:00:27<br>21  what I wrote about in this report, and so  11:00:33<br>22  specific idiosyncracies of XRP versus  11:00:37<br>23  other crypto digital assets did not matter.  11:00:41<br>24  As I sit here now, that's my thinking.  11:00:46<br>25  Q. Sitting here today, do you have an  11:00:49<br>Page 50 | 1  methodology?  11:02:24<br>2  A. Yes.  11:02:25<br>3  Q. Does that methodology need to take into  11:02:25<br>4  account the contractual terms that are  11:02:28<br>5  expressed in the bilateral contract?  11:02:31<br>6  **A. Just the prices and the quantities and the  11:02:33**<br>7  **times. Prices, quantities, the form of  11:02:35**<br>8  **the consideration, the time the transaction  11:02:39**<br>9  **took place is all that you would need.  11:02:41**<br>10  Q. So you need information contained in the  11:02:43<br>11  contract to perform that calculation,  11:02:52<br>12  correct?  11:02:55<br>13      MR. SPEAR: Objection.  11:02:55<br>14  A. No, just the standard facts and details  11:02:57<br>15  that describe any transaction, the same  11:02:59<br>16  common information that would commonly be  11:03:01<br>17  supplied by any class member for purposes  11:03:04<br>18  of calculating that class member's damages.  11:03:07<br>19  Q. Could the contract, though, supply, for  11:03:10<br>20  example, the price?  11:03:12<br>21  A. Like I said, price would need to be known.  11:03:15<br>22  In any damage calculation in any class action  11:03:18<br>23  litigation, you need to know prices.  11:03:21<br>24  Sometimes you -- my understanding is that  11:03:26<br>25  prices, price data for a claimant's  11:03:31<br>Page 52 |
| 1  understanding as to whether a use of XRP  11:00:58<br>2  could impact calculation of profit or  11:01:06<br>3  loss made by someone who owns it?  11:01:11<br>4  A. Well, it could certainly impact the profit  11:01:16<br>5  or loss that was realized, but it would  11:01:18<br>6  not impact the formula used for calculating  11:01:20<br>7  the profit or loss and the damages.  11:01:23<br>8  Q. Sitting here today, do you know whether  11:01:26<br>9  XRP is traded pursuant to any bilateral  11:01:32<br>10  contracts?  11:01:40<br>11      MR. SPEAR: Objection to form.  11:01:41<br>12  A. What do you mean by "bilateral contracts"?  11:01:42<br>13  Q. A contract between two parties to buy or  11:01:47<br>14  sell an asset.  11:01:49<br>15  A. Some trading took place that way, is my  11:01:50<br>16  understanding.  11:01:54<br>17  Q. So you are aware that some XRP exchanged  11:01:54<br>18  hands pursuant to bilateral contracts?  11:01:59<br>19  A. Well, we usually call that in finance an  11:02:03<br>20  over-the-counter transaction, and my  11:02:05<br>21  understanding is there were some  11:02:07<br>22  over-the-counter transactions.  11:02:09<br>23  Q. Where XRP is exchanged pursuant to an  11:02:12<br>24  over-the-counter transaction, can profit or  11:02:19<br>25  loss be calculated pursuant to a common  11:02:20<br>Page 51 | 1  transactions is supplied by the claimant  11:03:36<br>2  to the claims administrator, and whether  11:03:38<br>3  that price is documented in an exchange or  11:03:42<br>4  brokerage confirmation versus some other  11:03:48<br>5  form doesn't matter for purposes of applying  11:03:52<br>6  the formula.  11:03:57<br>7  Q. So it sounds like you have in mind a claims  11:03:58<br>8  process where the claimant would come forward  11:04:11<br>9  with the inputs needed to, certain to your  11:04:14<br>10  methodology, to your formula to determine  11:04:19<br>11  profit or loss, is that correct?  11:04:23<br>12  A. That's typically how damages are ultimately  11:04:26<br>13  calculated in a class action securities case.  11:04:28<br>14  Q. So turning to Exhibit 10 here, your report,  11:04:38<br>15  I'd refer you to Page 4, you express your  11:04:50<br>16  conclusion which is I think what you're  11:04:54<br>17  referring to, you opine here on Paragraph 16,  11:04:58<br>18  Page 4, the damages can be computed using  11:05:03<br>19  a common methodology for all class members  11:05:11<br>20  and the common classwide methodology for  11:05:16<br>21  determining damages for all XRP purchasers  11:05:21<br>22  involves the straightforward application of  11:05:26<br>23  statutory arithmetic formulas?  11:05:30<br>24  A. Yes.  11:05:34<br>25  Q. Sir, are you opining -- you're opining that  11:05:35<br>Page 53 |

Page 54

```
1    damages can be computed using a common          11:05:47
2    methodology, correct?                           11:05:51
3  A. Yes.                                           11:05:51
4  Q. Are you opining that they can be computed      11:05:52
5    using common evidence?                          11:05:56
6  A. I think "evidence" has a specific legal        11:05:58
7    meaning, and I'm not a lawyer. So if you        11:06:00
8    mean data, that the same data, the same         11:06:05
9    type of data is needed from each claimant,      11:06:11
10   that's true, the same type of data, and I       11:06:13
11   mentioned already what that data would be.      11:06:17
12   "Evidence" is a legal term, that I can answer   11:06:20
13   the question if you explain it better.          11:06:22
14 Q. Got it. Well, I guess what I'm hearing you     11:06:24
15   say is that the claimant would need to come     11:06:28
16   forth with the information concerning their     11:06:30
17   purchase or sale in order for the calculation   11:06:32
18   to be run?                                      11:06:36
19 A. That's one way to do it. There are other      11:06:37
20   ways to calculate damages, but to apply the     11:06:39
21   common formula that's in my report, one would   11:06:42
22   need price and quantity data for purchases      11:06:45
23   and sales, if there was a sale for anybody      11:06:50
24   whose damages are going to be calculated,       11:06:56
25   so it's common data and it's common formulas    11:06:59
```

Page 55

```
1    that are used.                                  11:07:03
2  Q. So you need the price data and you need        11:07:03
3    the quantity data?                              11:07:10
4  A. Right, how much did the person pay and         11:07:11
5    when did they pay it and how much XRP did       11:07:15
6    they receive, and the same thing on the         11:07:21
7    sale, if there was a sale, or we would need     11:07:24
8    to know that there was no sale.                 11:07:32
9  Q. Is any other data needed aside from the        11:07:34
10   price data and quantity data?                   11:07:38
11 A. I said price data, price, quantity, both at    11:07:40
12   the time of sale and the time, time of          11:07:45
13   purchase and time of sale information as to     11:07:47
14   whether or not there was a sale because         11:07:50
15   there may not have been, the form of the        11:07:53
16   consideration paid. That's it. Wait.            11:07:57
17   Right, that's it. That's what's in the          11:08:09
18   formula.                                        11:08:11
19      Again, if there was -- the example           11:08:13
20   I gave in the interrogatory did not apply       11:08:18
21   interest that could have been earned, the       11:08:25
22   opportunity interest on the consideration,      11:08:27
23   but if one were to include the interest, you    11:08:31
24   would also need guidance from the court or      11:08:34
25   agreement among the parties as to what          11:08:40
```

Page 56

```
1    interest rate should be applied.                11:08:42
2  Q. Anything else?                                 11:08:44
3  A. The formula is on Page 5. Those are the        11:08:50
4    arguments of the formula that we just           11:08:50
5    covered, so no.                                 11:08:56
6  Q. You mentioned that you need information as     11:08:56
7    to whether there had been a sale. What did      11:08:59
8    you mean by that?                               11:09:02
9  A. Well, you would need to know. I mean, the      11:09:02
10   class members are people who purchased and      11:09:04
11   then sold XRP and sustained a loss. These       11:09:08
12   are the proposed class members, or those        11:09:12
13   who still own XRP, they purchased it and        11:09:16
14   still own it. So notice that Paragraph 19       11:09:19
15   has a formula for one and 20 has got the        11:09:23
16   adaptation of that same formula for the         11:09:28
17   other, so you need to know whether they         11:09:30
18   still own XRP or not.                           11:09:32
19 Q. I see. So the information as to whether        11:09:33
20   there has been a sale is important to know      11:09:40
21   which, whether they're in Paragraphs 19 or      11:09:43
22   20?                                             11:09:45
23 A. Right.                                         11:09:48
24 Q. Okay. And then you said you would need to      11:09:48
25   know the form of consideration paid. What       11:09:50
```

Page 57

```
1    did you mean by that?                           11:09:52
2  A. Was Bitcoin tendered for the XRP or was        11:09:53
3    it Tether or U.S. dollars, and you need to      11:10:01
4    know that so that you can translate the         11:10:03
5    consideration, you can value the                11:10:04
6    consideration at the time of the                11:10:06
7    transactions.                                   11:10:07
8  Q. If someone paid Bitcoin, used Bitcoin to       11:10:08
9    purchase XRP, wouldn't the value of the         11:10:17
10   consideration paid be the amount of Bitcoin     11:10:22
11   they paid for the XRP?                          11:10:25
12 A. It would be the value of the Bitcoin paid.     11:10:27
13 Q. Why not just the -- so the value of the        11:10:29
14   Bitcoin?                                        11:10:32
15 A. The formula, the statute says consideration    11:10:34
16   with interest thereon. The word                 11:10:37
17   "consideration" I guess can either mean         11:10:42
18   the form of the consideration or the value      11:10:45
19   of the consideration, and I think from the      11:10:46
20   context it's pretty clear that it's the         11:10:47
21   value of the consideration, so that would       11:10:50
22   be dollars, how many dollars were those         11:10:52
23   Bitcoin worth at the time the XRP was           11:10:54
24   purchased.                                      11:10:57
25 Q. Okay. So let's, we'll break this down a        11:10:58
```

| | Page 58 | | Page 60 |
|---|---|---|---|
| 1 | little bit. It was helpful to hear your  11:11:04 | 1 | a person who obtained XRP in exchange for  11:14:14 |
| 2 | explanation.  11:11:06 | 2 | a tangible good?  11:14:19 |
| 3 | Going back to Paragraph 16, you  11:11:07 | 3 | A. Yes.  11:14:20 |
| 4 | express that your opinion here relates to a  11:11:12 | 4 | Q. Just to be clear on the scope of your  11:14:20 |
| 5 | common classwide methodology for determining  11:11:16 | 5 | opinion, it sounds like it is not part of  11:14:35 |
| 6 | damages for all XRP purchasers. What does  11:11:18 | 6 | the scope of your opinion who is or who  11:14:41 |
| 7 | it mean to purchase XRP?  11:11:26 | 7 | is not a purchaser of XRP?  11:14:43 |
| 8 | MR. SPEAR: Objection to form.  11:11:28 | 8 | A. That's correct.  11:14:48 |
| 9 | A. It's almost a philosophical question. To  11:11:32 | 9 | Q. So you're not opining on who is or is not  11:14:48 |
| 10 | pay a counterparty and receive XRP, quid pro  11:11:37 | 10 | a purchaser of XRP, correct?  11:14:54 |
| 11 | quo in exchange for that payment.  11:11:44 | 11 | A. Correct.  11:14:56 |
| 12 | Q. So if you receive XRP as a gift, are you a  11:11:51 | 12 | Q. Does your opinion encompass the  11:14:56 |
| 13 | purchaser of XRP?  11:11:59 | 13 | identification of people who are purchasers  11:15:01 |
| 14 | MR. SPEAR: Objection, calls for a  11:12:00 | 14 | of XRP?  11:15:05 |
| 15 | legal conclusion.  11:12:01 | 15 | A. How is that different from the previous  11:15:06 |
| 16 | A. I would have to say I don't know. That's a  11:12:03 | 16 | question?  11:15:09 |
| 17 | legal determination.  11:12:06 | 17 | Q. The first question is more of a conceptual  11:15:10 |
| 18 | Q. Can your methodology apply to individuals  11:12:07 | 18 | question of like categorically speaking,  11:15:15 |
| 19 | who obtained XRP via gift?  11:12:11 | 19 | who would count or not in the determination  11:15:18 |
| 20 | A. I'm not sure. That's something I would have  11:12:22 | 20 | of who is a purchaser of XRP. The second  11:15:20 |
| 21 | to think about.  11:12:25 | 21 | is actually like identifying the class  11:15:21 |
| 22 | Q. Do you have any understanding as to whether  11:12:26 | 22 | members.  11:15:23 |
| 23 | Ripple has employees?  11:12:28 | 23 | A. No. I haven't been asked to identify class  11:15:24 |
| 24 | A. I'm sure they do have employees.  11:12:32 | 24 | members and nothing about that is expressed  11:15:26 |
| 25 | Q. To the extent a Ripple employee receives  11:12:34 | 25 | in my report.  11:15:28 |

| | Page 59 | | Page 61 |
|---|---|---|---|
| 1 | XRP as a form of their compensation, are  11:12:37 | 1 | Q. Okay. Does your opinion encompass price  11:15:29 |
| 2 | they a purchaser of XRP?  11:12:43 | 2 | correlation between XRP and any other  11:15:35 |
| 3 | MR. SPEAR: Objection, calls for  11:12:45 | 3 | digital asset?  11:15:37 |
| 4 | a legal conclusion.  11:12:46 | 4 | A. What do you mean by "correlation"?  11:15:39 |
| 5 | A. Again, that does sound like -- the answer  11:12:47 | 5 | Q. Whether the price or value of XRP is  11:15:41 |
| 6 | to that question must be covered somewhere  11:12:50 | 6 | correlated with movements in prices of  11:15:44 |
| 7 | in the law, and I'm not a lawyer. I can  11:12:53 | 7 | other digital assets.  11:15:46 |
| 8 | answer economic questions. I don't think  11:12:57 | 8 | A. I have expressed that to apply the formula,  11:15:48 |
| 9 | that is an economic question, so I think  11:13:00 | 9 | one should convert whatever the form of  11:15:53 |
| 10 | I should just say I don't know for sure.  11:13:03 | 10 | the consideration was to the value of the  11:15:57 |
| 11 | I don't want to say, give an answer that's  11:13:04 | 11 | consideration. So exchange rates and  11:15:59 |
| 12 | contrary to established law, case law or  11:13:06 | 12 | valuations are relevant to apply the common  11:16:04 |
| 13 | statute. I think the case law and statute  11:13:10 | 13 | methodology commonly for all class members,  11:16:09 |
| 14 | should speak for itself and legal experts  11:13:12 | 14 | but correlation usually means movement  11:16:12 |
| 15 | can decide that.  11:13:14 | 15 | over time, and that I haven't expressed  11:16:15 |
| 16 | Q. Can the common methodology that you propose  11:13:15 | 16 | anything about movement over time.  11:16:18 |
| 17 | in your opinion be applied to those who  11:13:20 | 17 | Q. Okay. Yes, that's what I was asking about,  11:16:20 |
| 18 | acquire XRP as compensation for their work?  11:13:24 | 18 | whether the price of XRP correlates over  11:16:24 |
| 19 | A. I think it can.  11:13:28 | 19 | time with the price of digital assets, not  11:16:27 |
| 20 | Q. Do you have an understanding as to whether  11:13:31 | 20 | something that's the subject of your opinion,  11:16:31 |
| 21 | someone could sell a tangible good like a  11:13:46 | 21 | correct?  11:16:32 |
| 22 | cup of coffee in exchange for XRP?  11:13:51 | 22 | A. Say that again, please?  11:16:33 |
| 23 | A. I think that's possible.  11:13:56 | 23 | Q. It's fair to say that your opinion does not  11:16:35 |
| 24 | Q. Can your common methodology be used to  11:14:06 | 24 | encompass whether the price of XRP correlates  11:16:40 |
| 25 | calculate the gain or loss experienced by  11:14:09 | 25 | with the price of any other digital asset  11:16:44 |

|  |  |
|---|---|
| 1  over time?                                11:16:46 | 1  out that if there's a determination that      11:19:45 |
| 2  A. Right, I express no opinion about that    11:16:47 | 2   one doesn't need to translate the form       11:19:47 |
| 3     specifically.                             11:16:50 | 3   of the consideration to the value of that    11:19:50 |
| 4  Q. Does your opinion encompass whether the   11:16:51 | 4   consideration in dollars, then that          11:19:51 |
| 5     price or value of XRP might vary across   11:17:01 | 5   methodology would also be common to all      11:19:53 |
| 6     exchanges at any given point in time?     11:17:08 | 6   class members. I just want to point out      11:19:55 |
| 7  A. I considered that. I believe given that,  11:17:13 | 7   that regardless of whether one does the      11:19:58 |
| 8     though that may be the case, these formulas, 11:17:19 | 8   translation or chooses not to do the         11:20:00 |
| 9     data exists such that these formulas can  11:17:23 | 9   translation, the methodology that's arrived  11:20:02 |
| 10    still be applied commonly for all class   11:17:27 | 10  at from making that determination will be    11:20:04 |
| 11    members.                                  11:17:29 | 11  common for all class remembers. I think      11:20:07 |
| 12 Q. So you agree it may be the case, that the 11:17:30 | 12  that's paramount and primary.                11:20:09 |
| 13    price of XRP varies at a given point in   11:17:35 | 13      However, if the methodology is to        11:20:12 |
| 14    time across exchanges?                    11:17:38 | 14  translate forms of consideration to value    11:20:17 |
| 15 A. That may be the case, yes.                11:17:41 | 15  consideration in dollars, then you need      11:20:21 |
| 16 Q. And do you also agree that the price of,  11:17:42 | 16  exchange rates and Bloomberg provides them.  11:20:23 |
| 17    say, Bitcoin at a given point in time might 11:17:46 | 17 Q. To be clear, the methodology that you are  11:20:31 |
| 18    vary across exchanges?                    11:17:49 | 18    putting forth in your opinion involves the  11:20:37 |
| 19 A. There seems to be evidence of that in the 11:17:52 | 19    conversion of consideration paid into U.S.  11:20:40 |
| 20    literature in the market, yes. It does    11:17:56 | 20    dollars?                                    11:20:44 |
| 21    not preclude calculation of damages commonly 11:17:58 | 21 A. My conclusion in Paragraph 16 is that the  11:20:45 |
| 22    for all class members.                    11:18:04 | 22    methodology is common, and that conclusion  11:20:48 |
| 23 Q. You referred to evidence in the literature 11:18:05 | 23    holds firm whether we choose to translate   11:20:54 |
| 24    about price variation of Bitcoin across   11:18:09 | 24    the consideration into dollar value or      11:20:57 |
| 25    exchanges. What were you referring to?    11:18:12 | 25    choose not to translate the form of the     11:21:01 |
|                                   Page 62 |                                   Page 64 |
| 1  A. I can't cite an article specifically, but  11:18:15 | 1     consideration to dollar value. So it's     11:21:04 |
| 2     this is an observation that's been made.   11:18:18 | 2     still, the conclusion that I represent      11:21:06 |
| 3  Q. Sitting here today, do you have a sense    11:18:21 | 3     in Paragraph 16 holds regardless. The       11:21:12 |
| 4     of how large or small that variation might 11:18:23 | 4     examples I gave in Paragraphs 19 and 20,    11:21:16 |
| 5     be?                                        11:18:29 | 5     these examples do translate consideration   11:21:16 |
| 6  A. No, but I did check Bloomberg and the     11:18:29 | 6     form into consideration value, and for that 11:21:19 |
| 7     documentation in Bloomberg that they've    11:18:36 | 7     you need exchange rates, and I verified     11:21:21 |
| 8     arrived at analytics and a methodology for 11:18:38 | 8     that exchange rates are available.          11:21:26 |
| 9     producing data that according to Bloomberg 11:18:42 | 9  Q. This is helpful. In Paragraphs 19 and 20    11:21:28 |
| 10    represents the value of digital assets at  11:18:47 | 10    of your report, you put forward formulas for 11:21:37 |
| 11    various points in time, notwithstanding    11:18:49 | 11    calculating damages, correct?                11:21:40 |
| 12    that the trading price might be different on 11:18:52 | 12 A. Yes.                                         11:21:44 |
| 13    one exchange versus another.               11:18:55 | 13 Q. But what I hear you saying is these are     11:21:44 |
| 14 Q. Is this Bloomberg data to which you're    11:18:59 | 14    just examples of formulas that might be used, 11:21:49 |
| 15    referring something that you would use in  11:19:07 | 15    but there are other competing formulas that  11:21:52 |
| 16    the computation of gain or loss pursuant   11:19:10 | 16    might also be used to calculate damages. Is  11:21:54 |
| 17    to your methodology?                       11:19:12 | 17    that a fair summary of your testimony?       11:21:57 |
| 18 A. You can.                                  11:19:14 | 18        MR. SPEAR: Objection.                    11:21:58 |
| 19 Q. You referenced you needed to translate the 11:19:18 | 19 A. I'm saying I believe these are the formulas 11:21:59 |
| 20    consideration paid into U.S. dollars. So,  11:19:23 | 20    that should be used. I do understand that    11:22:03 |
| 21    for example, if someone bought XRP with    11:19:25 | 21    it's possible that an alternative formula    11:22:04 |
| 22    Bitcoin, you need to translate, under your 11:19:29 | 22    that's very similar, there may be a          11:22:09 |
| 23    methodology, the value of that Bitcoin into 11:19:33 | 23    determination that that other similar formula 11:22:12 |
| 24    U.S. dollars, correct?                     11:19:36 | 24    is more appropriate, and I'm pointing out    11:22:15 |
| 25 A. Well, first of all, I just want to point  11:19:38 | 25    that even if it were not these formulas but  11:22:19 |
|                                   Page 63 |                                   Page 65 |

17 (Pages 62 - 65)

**Page 66**

1  the very similar alternative formula, it         11:22:22
2  would still be a common damage methodology       11:22:25
3  for all class members.                           11:22:28
4      I do believe these are the correct          11:22:29
5  formulas and these are the formulas that        11:22:31
6  ought to be used, but I just want to point      11:22:33
7  out that my opinion in Paragraph 16 is          11:22:35
8  maintained even if one were to modify this      11:22:37
9  formula slightly in the way we've been          11:22:40
10 describing.                                     11:22:43
11 Q. You say a common methodology can be used     11:22:44
12 to calculate damages, but what that             11:22:46
13 methodology is could take different forms?      11:22:48
14 A. Well, two that I can think of that we've     11:22:51
15 talked about, they're very similar, I believe   11:22:54
16 of those two, the formulas in Paragraphs 19     11:22:59
17 and 20 are the correct ones.                    11:23:02
18 Q. Okay. When you say we've talked about two,   11:23:04
19 you're referring to one formula that would      11:23:07
20 involve translating consideration paid into     11:23:09
21 U.S. dollars, that's one method. A different    11:23:14
22 method would be leaving the consideration       11:23:19
23 paid in whatever form it was paid, whether      11:23:21
24 that be Bitcoin, Tether or Ethereum?            11:23:25
25 A. Correct.                                     11:23:29

**Page 67**

1  Q. In then in your model, the one that you're   11:23:29
2  proposing in Paragraphs 19 and 20, there's      11:23:34
3  this conversion into U.S. dollars, correct?     11:23:36
4  A. Well, in order to calculate consideration,   11:23:39
5  one would convert the form of the               11:23:43
6  consideration to that dollar value of the       11:23:45
7  consideration.                                  11:23:47
8  Q. What is your proposal for what exchange      11:23:48
9  rates would be used to translate, for           11:23:53
10 example, Bitcoin or Ethereum into U.S.          11:23:56
11 dollars?                                        11:23:58
12 A. What I check is that we have Bloomberg,      11:23:59
13 Bloomberg is a good source, it's                11:24:03
14 reputable, but at this point I don't think      11:24:04
15 I have to -- I just want to reserve the         11:24:08
16 option to consider it further. That's not       11:24:16
17 part of my opinion right now, which is the      11:24:18
18 best data source to use. If I were to do        11:24:20
19 damages, I might at a later date decide that    11:24:23
20 there was a better data source. I know          11:24:26
21 that for sure there's at least Bloomberg,       11:24:28
22 but my opinion at this point does not           11:24:31
23 encompass a determination that Bloomberg is     11:24:33
24 the only or best data source to use.            11:24:35
25 Q. So you think that the preferred model, the   11:24:38

**Page 68**

1  better model does involve converting the        11:24:43
2  consideration into U.S. dollars, but you        11:24:49
3  have not yet opined on how that conversion      11:24:51
4  would be performed?                             11:24:56
5  A. No, that's not true at all. It's the same    11:24:56
6  model, how much you paid for XRP versus         11:25:03
7  how much you got back when you sold your        11:25:06
8  XRP. If you got back less than you paid,        11:25:08
9  that's a loss, and how it's translated into     11:25:11
10 dollars, there's a slight tweak, there's        11:25:16
11 different ways of doing that.                   11:25:19
12     I think the best way to do it is           11:25:20
13 to do the translation at the time of the        11:25:22
14 transactions. I believe that's consistent       11:25:24
15 with the statute, the language in the           11:25:26
16 statute, and I verified that there are          11:25:29
17 databases that allow one to do that. In         11:25:33
18 fact, I provided defendants with an example     11:25:35
19 of that calculation done. But at this point,    11:25:40
20 I'm saying that I haven't yet calculated        11:25:42
21 damages for the entire class or for members     11:25:45
22 of the class beyond Mr. Sostack, and it's       11:25:51
23 altogether possible that exactly which          11:25:54
24 exchange rates to use, that's what I want to    11:25:59
25 focus on, exactly which database for the        11:26:02

**Page 69**

1  exchange rates is not something that I          11:26:05
2  was asked to opine about or need to opine       11:26:11
3  about in order to proffer the opinion that      11:26:14
4  it's a common damage methodology for all        11:26:17
5  class members.                                  11:26:19
6  Q. So I have a bunch of questions about these   11:26:20
7  exchange rates. Does the scope of your          11:26:29
8  opinion include what exchange rate would be     11:26:34
9  used to translate consideration paid into       11:26:39
10 U.S. dollars?                                   11:26:43
11 A. No, it doesn't need to. We know that         11:26:45
12 exchange rates exist. The choice of the         11:26:48
13 best, most appropriate, most reliable           11:26:53
14 exchange rate data doesn't impact or            11:26:56
15 doesn't affect the opinion that it's a          11:27:03
16 common damage methodology for all class         11:27:06
17 members which is the opinion I'm offering       11:27:08
18 today and in this report.                       11:27:10
19 Q. You could imagine two different purchasers   11:27:11
20 of XRP, one who had just before buying XRP      11:27:14
21 converted U.S. dollars to Bitcoin and then      11:27:20
22 used that Bitcoin to buy XRP. You can           11:27:24
23 imagine another purchaser of XRP who had        11:27:26
24 just Bitcoin holdings in their Coinbase         11:27:29
25 account, for example, had been holding the      11:27:32

18 (Pages 66 - 69)

| | |
|---|---|
| 1  Bitcoin for some period of time and they         11:27:34 | 1  witness' testimony.                              11:30:03 |
| 2  used that Bitcoin to purchase XRP.  What         11:27:36 | 2  A. I'm saying that that's within the realm       11:30:04 |
| 3  exchange rate would you propose is the          11:27:47 | 3  of possibility.  It would still be a common      11:30:07 |
| 4  best exchange rate in each of those two         11:27:49 | 4  methodology.  Personally, I think the best       11:30:09 |
| 5  scenarios?                                       11:27:51 | 5  methodology would be to use the value of         11:30:12 |
| 6        MR. SPEAR:  Objection, scope.              11:27:52 | 6  the Bitcoin at the time of the transaction       11:30:15 |
| 7  A. As an economist, I think the best exchange   11:27:53 | 7  according to a reputable database.  But          11:30:17 |
| 8  rate is the exchange rate at the time of        11:27:58 | 8  if there's some legal determination that         11:30:22 |
| 9  the transactions, although if there's a         11:28:00 | 9  overrides the economic analysis, what one        11:30:24 |
| 10 legal opinion that says no, it should be,       11:28:02 | 10 is left with still is a common methodology       11:30:29 |
| 11 consideration should be left in the form        11:28:07 | 11 for all class members.                           11:30:31 |
| 12 until settlement or jury verdict, then you      11:28:09 | 12 Q. So what you personally think would be the     11:30:33 |
| 13 would use the exchange rates of the later       11:28:13 | 13 best methodology is the value of Bitcoin         11:30:35 |
| 14 date.                                            11:28:15 | 14 at the time of the transaction as determined     11:30:37 |
| 15       So as an economist, I have an              11:28:16 | 15 by a reputable database, and you have            11:30:42 |
| 16 opinion which is the best, which represents     11:28:17 | 16 Bloomberg in mind for that?                      11:30:47 |
| 17 damages and I actually think that's most        11:28:21 | 17 A. Bloomberg is a reputable database.  I haven't 11:30:48 |
| 18 consistent with the statute, language in the    11:28:23 | 18 yet determined whether it's the only or the      11:30:53 |
| 19 statute, but it doesn't change my opinion       11:28:26 | 19 best, but it's certainly available for this      11:30:54 |
| 20 about there being a common damage methodology   11:28:28 | 20 purpose.                                         11:30:56 |
| 21 if the law or the court or the parties agree    11:28:31 | 21 Q. Would you agree that if that were the         11:30:56 |
| 22 on a different time to do the translation.      11:28:34 | 22 methodology that were used, that the             11:30:58 |
| 23 Q. For the first of the two hypothetical        11:28:39 | 23 calculation of an individual purchaser's         11:31:00 |
| 24 purchasers that I mentioned who had             11:28:42 | 24 gain or loss might differ from their sort        11:31:01 |
| 25 transferred U.S. dollars into Bitcoin just      11:28:46 | 25 of real-world experience because, for            11:31:04 |
| Page 70 | Page 72 |
| 1  before the transaction and then used the        11:28:49 | 1  example, they just acquired that Bitcoin         11:31:06 |
| 2  Bitcoin immediately to buy XRP, would           11:28:52 | 2  with dollars that cost them a little more or     11:31:09 |
| 3  the actual exchange rate that that person       11:28:58 | 3  less than what Bloomberg might say was the       11:31:11 |
| 4  obtained transferring U.S. dollars into         11:29:00 | 4  exchange rate at the time?                       11:31:15 |
| 5  Bitcoin be the right to use or more of like     11:29:05 | 5        MR. SPEAR:  Objection to form.             11:31:15 |
| 6  a general Bloomberg rate?                        11:29:07 | 6  Objection to scope.                              11:31:16 |
| 7        MR. SPEAR:  Objection, scope.  Go         11:29:10 | 7  A. If you've got different alternatives, the     11:31:18 |
| 8  ahead.                                           11:29:14 | 8  outcome of the different alternatives might      11:31:26 |
| 9  A. It's a hypothetical you're asking about.     11:29:14 | 9  be different.  In the hypothetical you           11:31:29 |
| 10 I'm sure there are details of this              11:29:17 | 10 gave, it's hard to believe that it would be      11:31:32 |
| 11 hypothetical that are not explicated in         11:29:19 | 11 materially different.  Bloomberg being a         11:31:34 |
| 12 your offering of the hypothetical.  I would     11:29:24 | 12 reputable database seeks to assess what the      11:31:36 |
| 13 want to look at all the facts.  Whatever        11:29:27 | 13 value of these different digital assets          11:31:41 |
| 14 the answer is, you're still left with a         11:29:31 | 14 actually are at a point in time, so that         11:31:45 |
| 15 common methodology for all class members.       11:29:35 | 15 would give you an assessment of the value        11:31:48 |
| 16 I kind of want to reserve the opportunity       11:29:38 | 16 of the consideration paid even if there          11:31:52 |
| 17 to think about that some more if it turns       11:29:40 | 17 had been a different transaction external to     11:31:54 |
| 18 out that that hypothetical is realistic.  I     11:29:44 | 18 the XRP purchase at a different price.           11:31:59 |
| 19 think I'll leave it at that.                     11:29:48 | 19 Q. Do crypto exchanges, to your knowledge,       11:32:11 |
| 20 Q. What I hear you saying is it could be that   11:29:49 | 20 typically charge transaction fees?               11:32:18 |
| 21 different exchange rates could be used          11:29:55 | 21 A. I'm not sure.  I know there's a bid-ask       11:32:25 |
| 22 for different types of purchasers of XRP        11:29:56 | 22 spread.  I just don't recall whether             11:32:29 |
| 23 depending on the circumstances of their         11:29:59 | 23 there's -- some might charge a commission        11:32:33 |
| 24 purchase?                                        11:30:02 | 24 on top of a bid-ask spread, some might not.      11:32:36 |
| 25       MR. SPEAR:  Objection, misstates          11:30:02 | 25 I know there generally is a bid-ask spread       11:32:47 |
| Page 71 | Page 73 |

**Page 106**

```
 1   if they included a bid-ask spread, the           01:14:25
 2   bid-ask spread transaction cost was included     01:14:28
 3   and incorporated, but I did not include          01:14:33
 4   commissions as a cost.                           01:14:35
 5 Q. When you say if a fee was included in the       01:14:39
 6   bid-ask spread, you mean that fee is             01:14:42
 7   baked into the transaction price that he         01:14:45
 8   experiences, correct?                            01:14:48
 9 A. Correct.                                        01:14:49
10 Q. Okay. Did you perform any analysis as to        01:14:50
11   whether, had you calculated -- let me scratch    01:14:54
12   that.                                            01:15:02
13       Where a trader like Mr. Sostack              01:15:09
14   buys, multiple buys and multiple sales, how      01:15:14
15   do you calculate gain or loss? Do you use a      01:15:18
16   FIFO analysis, LIFO? How do you --              01:15:22
17 A. In the case of Mr. Sostack, I did it both       01:15:25
18   ways and it did not make any difference.         01:15:28
19 Q. Would you agree that there are instances        01:15:31
20   where it can make a difference whether you       01:15:34
21   use FIFO or LIFO?                                01:15:37
22 A. Yes.                                            01:15:39
23 Q. Would you agree that that could impact,         01:15:40
24   depending on what methodology is picked,         01:15:51
25   FIFO or LIFO, that some class members here      01:15:54
```

**Page 107**

```
 1   could be impacted favorably and others           01:15:57
 2   unfavorably?                                     01:16:02
 3 A. It's possible.                                  01:16:02
 4 Q. Have you determined what methodology would      01:16:03
 5   be the appropriate methodology to use here,      01:16:06
 6   FIFO or LIFO?                                    01:16:09
 7       MR. SPEAR: Objection, scope.                01:16:11
 8 A. No, but I have determined that whichever        01:16:12
 9   methodology is dictated would produce a          01:16:18
10   methodology for calculating damages that's       01:16:23
11   common for all class members. Usually           01:16:25
12   it's a legal determination or an agreement       01:16:28
13   among the parties as to whether LIFO or          01:16:31
14   FIFO should be used.                             01:16:33
15       MR. MICHAELSON: Mr. Spear, could            01:16:38
16   you explain the scope objection there? You       01:16:39
17   objected to that question based on scope,        01:16:42
18   and I'm trying to understand what the basis      01:16:43
19   of that objection is.                            01:16:45
20       MR. SPEAR: I think he's testified           01:16:46
21   a few times today like the mechanics of          01:16:48
22   his methodology. If you're asking whether        01:16:50
23   LIFO or FIFO would not be a classwide            01:16:54
24   application, it goes to the scope of the         01:16:57
25   opinions. If you're asking him whether he       01:17:01
```

**Page 108**

```
 1   thinks the LIFO or FIFO method is the            01:17:02
 2   better method, I think that's outside the        01:17:06
 3   scope of his opinions, but that's the            01:17:08
 4   objection. I'm not instructing him not to        01:17:09
 5   answer. I'm objecting on scope grounds.          01:17:15
 6 Q. Okay. When calculating Mr. Sostack's            01:17:20
 7   damages, do you recall whether he, whether       01:17:29
 8   certain of his purchases involved Bitcoin?       01:17:35
 9 A. I'm sorry?                                      01:17:38
10 Q. Did certain of his purchases involve Bitcoin?   01:17:38
11 A. Yes.                                            01:17:44
12 Q. And certain of his transactions involved        01:17:44
13   Tether?                                          01:17:47
14 A. That's correct.                                 01:17:48
15 Q. And what did you use to calculate the           01:17:49
16   amount paid at time of purchase in those         01:17:56
17   instances where Mr. Sostack used Bitcoin         01:18:00
18   to purchase XRP?                                 01:18:02
19 A. His transaction records indicated how           01:18:04
20   much Bitcoin he paid and Bloomberg data          01:18:09
21   was used to translate quantity of Bitcoin        01:18:15
22   to dollars, dollar value.                        01:18:19
23 Q. Precisely what Bloomberg data?                  01:18:22
24 A. Bloomberg provides exchange rates between       01:18:29
25   Bitcoin in dollars, and I used that data         01:18:33
```

**Page 109**

```
 1   precisely I specified as of 4:00 p.m., so        01:18:37
 2   end of trading day in New York.                  01:18:41
 3 Q. Did you know at the time what time Mr.          01:18:45
 4   Sostack's transaction happened?                  01:18:49
 5 A. No.                                             01:18:51
 6 Q. Do you know if on the Bloomberg data, does      01:18:52
 7   it have data for every minute of the day         01:18:58
 8   or only 4:00 p.m.?                               01:19:03
 9 A. I believe you can specify other times during    01:19:05
10   the day.                                         01:19:09
11 Q. And you specified four o'clock?                 01:19:10
12 A. Yes.                                            01:19:11
13 Q. Do you know if Mr. Sostack's trading records    01:19:12
14   reflected the time of his transaction            01:19:16
15   involving Bitcoin?                               01:19:21
16 A. My recollection is that they did not, and       01:19:22
17   it's fairly standard methodology applied in      01:19:27
18   other class action cases to use end-of-day       01:19:31
19   data for these sort of purposes.                 01:19:35
20 Q. And in those other cases, does the asset        01:19:37
21   trade 24 hours a day?                            01:19:41
22 A. Sometimes, yes. Bonds do, currencies do.        01:19:44
23 Q. And would you agree that if you used the        01:19:48
24   Bitcoin-to-dollar exchange rate at the time      01:19:51
25   of transaction rather than at end of day 4:00    01:19:53
```

```
 1   p.m., that could affect some class members       01:19:59
 2   favorably and some class members unfavorably?    01:20:01
 3       MR. SPEAR: Objection, calls for              01:20:04
 4   speculation.                                     01:20:05
 5  A. I don't know for sure, but it's possible.      01:20:05
 6  Q. Referring to your damages models at            01:20:15
 7   Paragraphs 19 and 20 of your report, the         01:20:37
 8   first input is the dollar amount paid at         01:20:41
 9   time of purchase. How would you apply            01:20:44
10   this methodology to someone who acquired         01:20:51
11   XRP as payment for their work, for example,      01:20:57
12   from their employer?                             01:21:01
13  A. First of all, I don't know if I would.         01:21:04
14   That seems to be a legal determination           01:21:06
15   whether that hypothetical person would be        01:21:08
16   a member of the class, but it's certainly        01:21:13
17   theoretically possible to value the work         01:21:23
18   that is being paid for or just use the           01:21:25
19   quantity of XRP that's being delivered and       01:21:33
20   a market price of the XRP at that time.          01:21:35
21  Q. Even in the case of -- even if the             01:21:39
22   compensation, the amount of XRP that the         01:21:59
23   employee would receive was set months in         01:22:03
24   advance of when the employee received it,        01:22:08
25   are you proposing that you would use the         01:22:11
                                                     Page 110
```

```
 1   value of the XRP at the time it was              01:22:13
 2   received, not when the compensation              01:22:14
 3   amount was set?                                  01:22:17
 4  A. I don't know if a person who receives a        01:22:17
 5   bonus or pay compensation in terms of XRP        01:22:22
 6   is a member of the class. It's something         01:22:29
 7   I'd have to think about. Let me hear your        01:22:33
 8   question again, please.                          01:22:35
 9  Q. Well, I had asked how you would calculate      01:22:36
10   the amount, dollar amount paid at the time       01:22:42
11   of purchase, how you would apply that to         01:22:44
12   someone who received XRP in exchange for         01:22:48
13   their work, and you had said that you'd          01:22:51
14   look to the value in U.S. dollars of XRP         01:22:55
15   as of the time of the receipt of that            01:22:59
16   compensation?                                    01:23:02
17  A. That's certainly a methodology that could      01:23:03
18   be done. I'd have to think whether that's        01:23:05
19   the only methodology and the best                01:23:08
20   methodology. I haven't made a determination      01:23:09
21   yet. I'm not even sure I would ever need         01:23:12
22   to do that calculation.                          01:23:15
23  Q. But it's your testimony that this methodology  01:23:16
24   expressed here in Paragraphs 19 and 20 could     01:23:26
25   apply to that situation?                         01:23:30
                                                     Page 111
```

```
 1  A. I hadn't thought about it before you were      01:23:31
 2   asking about it today, and I'm not sure          01:23:33
 3   from a legal perspective whether someone         01:23:38
 4   who's paid in XRP is considered a purchaser      01:23:41
 5   of XRP. As I sit here now, it's my first         01:23:44
 6   impression, which may change as I consider       01:23:50
 7   it further, but my first impression is that      01:23:52
 8   it certainly could. It would measure the         01:23:55
 9   value of the XRP that was delivered with an      01:23:57
10   understanding that that's what the person        01:24:00
11   was getting paid.                                01:24:02
12  Q. How would this methodology apply to someone    01:24:04
13   who acquired XRP in exchange for a tangible      01:24:06
14   good, like a cup of coffee?                      01:24:09
15  A. You could do the same thing, look at the       01:24:20
16   quantity of XRP and the value in terms of        01:24:21
17   dollars of the XRP at the time of that           01:24:24
18   transaction.                                     01:24:25
19  Q. How would it apply to someone who acquired     01:24:37
20   XRP pursuant to a bilateral contract             01:24:49
21   providing for the exchange of XRP?               01:24:55
22  A. As I sit here now, I think you could do the    01:25:04
23   same thing. You can calculate the dollar         01:25:07
24   value of the XRP that was conveyed as of the     01:25:09
25   time of the conveyance.                          01:25:15
                                                     Page 112
```

```
 1  Q. And if the contract were to have a             01:25:17
 2   clause that would, for example, make the         01:25:25
 3   counterparty whole if they were to sell          01:25:30
 4   XRP at a loss, would that be factored into       01:25:32
 5   your analysis of whether that person with        01:25:36
 6   XRP suffered a gain or loss?                     01:25:38
 7  A. I don't know. I really, once you talk about    01:25:41
 8   a particular contract, I just don't know.        01:25:44
 9   It's a hypothetical and it seems incomplete.     01:25:50
10   I don't know the details of this contract to     01:25:54
11   be able to answer that question.                 01:25:56
12  Q. Is it fair to say you would need to know       01:25:59
13   what the contract says in order to assess        01:26:01
14   whether that purchaser of XRP suffered,          01:26:04
15   sustained a gain or loss?                        01:26:07
16       MR. SPEAR: Objection, calls for              01:26:08
17   speculation.                                     01:26:09
18  A. I just really don't know one way or the        01:26:10
19   other. I might not need to know the details      01:26:14
20   of the contract. I might need to know the        01:26:19
21   details of the contract. As I sit here, I        01:26:23
22   don't know.                                      01:26:28
23  Q. Is it fair to say that if a contract had       01:26:28
24   a clause that would affect whether a             01:26:32
25   purchaser would gain or lose on their sale       01:26:34
                                                     Page 113
```

29 (Pages 110 - 113)

Page 142

```
 1   XRP?                                    02:15:13
 2  A. I don't know for sure. I know that the 02:15:14
 3     important ones, the common ones it does. 02:15:16
 4     I know sometimes there's an announcement 02:15:21
 5     that Bloomberg has taken on a new currency 02:15:23
 6     so that would tell me at points in time   02:15:27
 7     it might be omitting a particular currency, 02:15:28
 8     but I know that in this industry the exchange 02:15:32
 9     rate data exists. Bloomberg is a good   02:15:35
10     source, but if something is missing from 02:15:40
11     Bloomberg, there are other sources that can 02:15:41
12     be used.                                02:15:44
13  Q. Do you agree that where XRP is purchased 02:15:44
14     or sold pursuant to a bilateral contract, 02:15:50
15     that it may be necessary to see the contract 02:15:55
16     to apply the damages formula you set forth 02:15:57
17     in Paragraphs 19 and 20?                02:16:00
18         MR. SPEAR: Objection, asked and    02:16:02
19     answered. Objection, calls for speculation. 02:16:02
20     Objection, incomplete hypothetical. Go  02:16:05
21     ahead.                                  02:16:08
22  A. I'm really not sure. I know that this is 02:16:11
23     the kind of detail that claims administrators 02:16:14
24     are proficient at handling. They know what 02:16:16
25     questions to ask and how to facilitate the 02:16:20
```

Page 143

```
 1     administration of claims. That's their 02:16:24
 2     job. I wasn't asked for that level of   02:16:28
 3     detail. What I was asked to -- what I   02:16:33
 4     presented in my report is a common damage 02:16:37
 5     methodology. Some of the implementation 02:16:41
 6     might require the expertise of a claims 02:16:49
 7     administrator, but it would be following 02:16:52
 8     the model that's presented in my report. 02:16:54
 9  Q. When you refer to the model in your report, 02:16:55
10     you're referring to Paragraphs 19 and 20? 02:16:58
11  A. Well, 17 and -- 19 and 20 as they are or 02:17:00
12     perhaps 19 and 20 as modified based on legal 02:17:05
13     determinations.                         02:17:09
14  Q. Okay. I have no further questions.     02:17:09
15         MR. SPEAR: I got nothing.          02:17:22
16         VIDEOGRAPHER: The time is 2:17.    02:17:25
17     We're off the record.                   02:17:27
18         (Whereupon the deposition was      02:17:29
19     concluded at 2:17 p.m.)
```

Page 144

```
 1         I declare under penalty of perjury that the
 2   foregoing is true and correct. Subscribed at
 3   _____, _____, this_____day of
 4   _____, 20___.



 9         _____
10              WITNESS NAME
```

Page 145

COMMONWEALTH OF MASSACHUSETTS)
SUFFOLK, SS. )

I, Jeanette Maracas, Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that there came before me on the 20th day of January, 2023, at 9:41 a.m., the person hereinbefore named, who was by me duly sworn to testify to the truth and nothing but the truth of his knowledge touching and concerning the matters in controversy in this cause; that he was thereupon examined upon his oath, and his examination reduced to typewriting under my direction; and that the deposition is a true record of the testimony given by the witness.

I further certify that I am neither attorney or counsel for, nor related to or employed by, any attorney or counsel employed by the parties hereto or financially interested in the action.

In witness whereof, I have hereunto set my hand this 25th day of January, 2023.

_____
Notary Public
My commission expires 7/29/27