John E. Deaton
The Deaton Law Firm, LLC
450 N Broadway
East Providence, RI 02914
Tel: (401) 351 6400
All-deaton@deatonlawfirm.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re RIPPLE LABS, INC. LITIGATION | Case No. 4:18-cv-06753-PJH |
| | **XRP HOLDERS' MOTION FOR LEAVE TO FILE AN *AMICUS CURIAE* BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| This Document Relates to: | Date: April 26, 2023<br>Time: 1:30 p.m.<br>Ctrm: 3 |
| All Actions | Consolidated FAC Filed: March 25, 2020<br>Trial Date: July 17, 2023 |

XRP HOLDERS' MOTION FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF    CASE NO. 4:18-CV-06753-PJH

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Jordan Deaton, James Lamonte, Tyler Lamonte, Mya Lamonte, Mitchell Mckenna, Kristiana Warner, SpendTheBits, Inc., and all other similarly situated XRP Holders (a known putative class of 75,890) ("XRP Holders"), respectfully move the Court for leave to file a brief as *amici curiae* in support of Defendants' Opposition to Plaintiff's Motion for Class Certification (Dkt. No. 201). A copy of XRP Holders' proposed *Amicus* Brief is attached as Exhibit A.

The Plaintiff opposes XRP Holders' request for leave. The Defendants consent. Plaintiff's opposition to the request to file an *Amicus* Brief - alone - demonstrates that the interests of XRP Holders, and a known identifiable class of over seventy-five thousand, all satisfying the very definition of Plaintiff's Proposed Class, will not be pursued, or protected, unless this Court grants leave to file the proposed *Amicus* Brief.

## I.   LEGAL STANDARD

This Court has broad discretion to grant leave for interested nonparties to file briefs as *amici curiae*. *See Inst. Of Med. Educ., Inc. v. W. Ass'n of Sch. & Colleges*, No. 11-CV-05755-LHK, 2013 WL 6672443, at *3 n.1 (N.D. Cal. Dec. 18, 2013). The Court's discretion is generally exercised liberally as "[t]here are no strict prerequisites that must be established prior to qualifying for amicus status." *Woodfin Suite Hotels, LLC v. City of Emeryville*, No. C 06-1254 SBA, 2007 WL 81911, at *3 (N.D. Cal. Jan. 9, 2007). XRP Holders need merely to show that their "participation is useful or otherwise desirable to the court." *Id.* "District courts frequently welcome amicus briefs from nonparties concerning legal issues that have potential ramifications beyond the parties directly involved or if amicus has unique information or perspective that can help the Court beyond the help that the lawyers for the parties are able to provide." *NVG*

*Gaming, Ltd. v. Upstream Point Molate, LLC*, 335 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005) (citation omitted).

Because no Federal Rule of Civil Procedure applies to motions for leave to appear as *amicus curiae* filed in district courts, courts often look for guidance from Fed. R. App. P. 29, which applies to *amicus* briefs in federal appellate cases. *See, e.g., Am. Humanist Ass'n v. Maryland Nat'l Capital Park & Planning Comm'n*, 147 F. Supp. 3d 373, 389 (D. Md. 2015). Rule 29 requires prospective *amici* to file a motion, attaching the proposed brief, stating "the movant's interest" and "the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." Fed. R. App. P. 29(a)(3). Courts freely permit the filing of *Amicus* Briefs when they help the Court's decision-making. *Id*.

## II.   IDENTITY OF PROPOSED AMICUS CURIAE AND STATEMENT OF INTEREST

Proposed *amici curiae* are six individual XRP holders, and SpendTheBits, Inc ("STB"), a company that has integrated the XRP Ledger ("XRPL") utilizing XRP in a payments' application business. Proposed *amici* represent the interests of a growing putative class of XRP holders from the United States and 143 other countries, consisting of users, investors, holders, developers, content providers and small businesses all who acquired and utilize XRP and the XRPL, most of whom were unaware of Ripple or its executives when acquiring XRP. Today, the putative class stands at 75,890. Because XRP Holders represent such a significant public interest, they were granted *amici curiae* status in *SEC v. Ripple, Labs, Inc. et al.,* Case No. 1:20-cv-10832 (AT) (S.D.N.Y. 2020) ("SEC Action"). *See* SEC Action ECF No. 372. Separately, STB was also granted *amicus curia*e status. *See* SEC Action ECF No. 684.

On December 22, 2020, the Securities and Exchange Commission ("SEC") filed an enforcement action against Ripple Labs, Inc. ("Ripple") and two of its executives, alleging

substantially the same claims being asserted by the Plaintiff here. *See* SEC Action ECF No. 4. Because the SEC's allegations (like the one's here) are not limited to direct sales by Ripple, but rather include all sales of XRP, including secondary sales independent of Ripple, XRP Holders filed a Motion to Intervene as Defendants in the SEC Action. *See* SEC Action ECF No. 123. Remarkably, when proposed *amici* filed their Motion to Intervene, over 12,600 XRP holders requested to join. SEC Action ECF No. 123 at n.1. Judge Torres, presiding over the *SEC* Action, denied the Motion to Intervene but recognized that XRP Holders maintain a significant interest in the outcome of the case and granted XRP Holders *amici curiae* status because XRP Holders "represent third parties whose particular interests may be affected by the Court's ruling and whose particular interests are echoed in broader public interests." *See* SEC Action ECF No. 372 at 9-10. Because both Ripple and the SEC opposed class certification and XRP Holders conceded certification would delay the case, Judge Torres did not consider class certification and granted *amici* status to the six XRP Holders in their individual capacities. *Id*. at n.1. The parties and amici are awaiting Judge Torres' decision on cross-motions for summary judgment. XRP Holders filed an *Amicus* Brief in Opposition to the SEC's Motion for Summary Judgment (SEC Action ECF No. 708), while STB filed an Amicus Brief in Support of Ripple's Motion for Summary Judgment (SEC Action ECF No. 684).

Plaintiff's Motion for Class Certification (Dkt. No. 181) - as proposed - threatens to cause substantial harm to XRP Holders. The Lead Plaintiff moves the Court for certification of a class that includes: "All persons or entities who purchased XRP from May 3, 2017 through the present and who have (a) retained the XRP, and/or (b) sold the XRP at a loss." Dkt. No. 181 at 2. This class definition, if approved and certified, would include proposed *amici* and the other 75,890 XRP holders proposed *amici's* interests represent. The proposed class includes all XRP holders

from May 3, 2017, who acquired XRP, regardless of the seller or the circumstances surrounding the sale and includes XRP holders who acquired XRP for non-investment reasons such as consumptive use. As the proposed brief demonstrates, Plaintiff does not adequately represent the proposed class or the putative class of 75,890 known XRP holders. In fact, unlike proposed *amici* and the other 75,890 known XRP holders, the Plaintiff is NOT an actual XRP holder. Lead Plaintiff Sostack is a day-trader who speculates on momentary price fluctuations of multiple digital assets, including XRP.  Def. Opp., Dkt. No. 201. Unlike the Lead Plaintiff, who held XRP for less than two weeks, proposed *amici* and the tens of thousands of other XRP holders they represent, are long-time users and holders of the digital asset XRP.

### III.   AMICI CURIAE'S UNIQUE PERSPECTIVE WILL HELP THE COURT

XRP Holders' perspective is unique and very different from the parties. As for Lead Plaintiff, he purchased XRP between January 1st and 16th, 2018 and sold that XRP between January 9th and 17th, 2018. Dkt. No. 63 at ¶ 13. In sum, he owned XRP for only two weeks MORE THAN FIVE YEARS AGO. Proposed *amici* and the other 75,890 XRP holders, presently own XRP. Furthermore, the technological advancements related to the XRPL, and the use cases for XRP, all developed independent of the Defendants, have exploded since Lead Plaintiff briefly owned XRP in 2018. In other words, 2018's XRP is not the same as 2023's XRP. Many different XRP holders acquired XRP for many different reasons – reasons apparently unknown (or ignored) by Plaintiff.

Today, XRP Holders and millions of others, use XRP as a substitute for fiat and as a form of currency to buy everyday items at Walmart, Amazon, Target and countless other locations. *See* e.g., *Introducing the XRP MasterCard Debit Card*, available at https://medium.com/global-id/introducing-the-xrp-mastercard-debit-card-827c0b37445b; s*ee also*, *UpHold's New Debit

*Card Lets You Pay With XRP*, available at, https://cointelegraph.com/news/upholds-new-debit-card-lets-you-pay-with-bitcoin-xrp-and-gold. Thousands of vendors, like Time Magazine, accept XRP as a form of payment or medium of exchange. *See Time Magazine Will Accept Cryptocurrencies*, available at https://www.theblock.co/linked/102166/time-magazine-bitcoin-digital-subscription-payments; s*ee also Pay With XRP*, available at https://cryptwerk.com/pay-with/xrp/ (listing 1,500 plus companies accepting XRP as a payment and helping users "[f]ind where to spend [their] XRP.").

Plaintiff fundamentally misunderstands (or is choosing to ignore) the very nature of an open, permission-less distributed ledger blockchain technology. This Court will benefit from XRP Holders' participation because Plaintiff misunderstands what constitutes a truly decentralized network such as the XRPL. *See* Complaint, Dkt. No. 63, ¶ 3. In fact, SpendTheBits is a foreign for-profit company based out of Alberta, Canada that designed an application to transfer Bitcoin on the decentralized, open-source blockchain technology of the XRPL without Ripple's knowledge, consent or assistance. For STB, XRP Holders and the 75,890 they represent, the only difference between Bitcoin (not considered a security) and XRP, is that XRP is a better version of Bitcoin and thus should be legally treated the same.

. Plaintiff's Proposed Class Certification includes **ALL** holders of XRP, including users of the XRPL. XRP is used by XRP Holders to move money from the U.S. to Africa, Mexico, Thailand, Brazil, the Philippines, all of Asia, and other cross-border destinations where XRP holders send peer-to-peer payments utilizing XRP. XRP is also used as payroll currency by multiple companies. BitPay, for example, launched a massive crypto payments service for businesses in 225 countries and allows people to be paid in cryptocurrencies including Bitcoin, Ether, **XRP**, Litecoin, Bitcoin Cash and others. *See Connecting with Bitpay*,

https://support.bigcommerce.com/articles/Public/Connecting-with-BitPay. Plaintiff is either unaware of these technological advances involving XRP or is choosing to ignore XRP's vast use cases that clearly do not trigger or involve U.S. securities laws. XRP Holders, on the other hand, can serve as a true *friend of the Court*, ensuring that the Court is aware of such information that will undoubtedly impact the Court's decision on the Proposed Class Certification.

The Defendants are also ill-equipped to provide the Court with XRP Holders' unique perspective. In fact, in a sworn interrogatory in the SEC Action, Ripple admitted that it "does not have knowledge of all current and potential 'uses' and 'functions' of XRP, and such information is outside of Ripple's possession, custody or control." *See* SEC Action ECF No. 165-4. In fact, when the SEC asked Ripple to list all known use cases for XRP, Ripple responded by referring to a letter motion put forward by counsel for proposed *amici*. *Id.* (Citing a Letter from Attorney John Deaton on behalf of XRP Holders to Judge Analisa Torres re: Intention to Intervene (Mar. 19, 2021) (SEC Action ECF No. 75 at 4) (Noting "literally hundreds of developers using XRP and the XRPL[, where] the vast majority of these developers have never had any contact with Ripple or its executives" among a list of eight uses for XRP, a "few examples of how XRP Holders utilize XRP without Ripple's knowledge or input")). STB is a perfect example of the open, permission-less, and decentralized nature of the XRPL, because if STB were to scale, it could, in theory, "become a competitor to Ripple's ODL system that also runs on the XRPL." *See* SEC Action ECF No. 684 at 11.

Considering the above, Judge Torres determined that "[proposed amici] may view XRP differently from Defendants and thus may stress different arguments…and…will provide the Court **with a meaningful perspective and** will help ensure 'complete and plenary presentation of difficult issues **so that the [C]ourt may reach a proper decision**.'" *See* SEC Action ECF No.

372 at 9-10 (emphasis added). Clearly, XRP Holders will provide this Court with a "perspective that can help the Court beyond the help that the lawyers for the parties are able to provide." *NVG Gaming, Ltd.,* 335 F. Supp. 2d at 1067.

Additionally, XRP Holders can offer this Court the perspective of a decentralized XRP user and investor, whose purchase of XRP, without knowledge of and unconnected to Ripple, meets the Proposed Class definition offered by Plaintiff and whose property interests will be significantly harmed if such a sweeping class were certified.

In the SEC Action, XRP Holders submitted approximately thirty-five hundred XRP Purchaser Affidavits for the Court's consideration. *See* SEC Action ECF No. 665-1-26; *also attached to* Def. Opp., Dkt. No. 201, Ex. 26-51. Unlike Lead Plaintiff, XRP Holders offer the perspective of the user and/or investor who does not rely on Ripple to achieve a financial profit – yet those XRP holders would be captured by the proposed class definition.

XRP Holders' perspective on why a proposed "Opt Out" would not protect XRP Holders will also assist the Court, as well. The proposed brief demonstrates how XRP holders utilize XRP as collateral to obtain financing for a fiat loan and how they "stake" (i.e. loan) their XRP and earn interest. *See e.g., Binance Earn*, available at https://www.binance.com/en/earn/xrp (offering XRP holders yield on their XRP); *also, Get a Loan Backed By Your XRP*, available at https://coinloan.io/cryptobacked-loans/xrp-loan/ (allowing XRP holders to borrow cash at 4.9% annually). Many XRP Holders do not view XRP as an investment and acquired XRP for consumptive use. *See* Def. Opp., Dkt. No. 201, Ex. 26-51.

XRP Holders also offer the perspective of the XRPL user and its decentralized exchange ("DEX"). *Id*. When utilizing the XRPL, XRP is a tool for payment transfers or serves as a bridge currency. *Id. Anyone* can access the XRPL and transfer value in the form of fiat currencies,

NFTs, or other cryptocurrencies to anyone without the need to utilize an intermediary such as a bank or money transmitter (e.g., Western Union or MoneyGram). *See* "*Direct XRP Payments*" XRPL.org, https://xrpl.org/direct-xrppayments.html. Ironically, the Chairman of the SEC, prior to becoming Chairman, publicly described XRP as a "bridge currency." *See Gary Gensler Comments*, at Peterson Institute for International Economics, September 26, 2018, at https://youtu.be/v0zAadukczY at 1:29.

XRP Holders can also offer this Court the perspective of a decentralized XRPL Developer. There are literally hundreds, if not thousands, of XRPL developers, with no connection to Ripple, running applications on the XRPL, like STB. Many of these developers are represented in the 75,890 known XRP holders. Some of these developers submitted XRP Purchaser Affidavits in the SEC action. *See* SEC Action ECF No. 665-1-26; *also attached to* Def. Opp., Dkt. No. 201, Ex. 26-51. Understanding, the decentralized structure of the XRPL is critical because anybody from anywhere can submit transactions on the XRPL. Yet, Plaintiff's Proposed Class captures all of these worldwide users and holders of XRP.

Because Plaintiff only owned XRP for two weeks five years ago, he wrongly asserts that "XRP is not decentralized like Bitcoin." Complaint, Dkt. No. 63, ¶ 3. XRP Holders can demonstrate that a major reason independent developers from around the world use the XRPL (like STB) is because unlike the Bitcoin Network, the XRPL contains the world's first established DEX. *See* "*Behind the Scenes of the XRPL Dex.*" DEV Community, https://dev.to/ripplexdev/behind-the-scenes-of-the-xrpl-dex-4jb.  The DEX enables the user on the ledger to buy, sell or trade any asset—including Bitcoin, Ether, stable-coins, XRP, DogeCoin, and other digital assets and even physical units of value such as gold. *Id.* This allows users of the DEX and the XRPL to trade well-established commodities (e.g., Gold and Bitcoin)

and other commodity-like assets (XRP, Ether, etc.) without using an intermediary such as a bank or other financial institution and certainly, without needing the Defendants *Id*.

Over a year ago, Judge Torres granted XRP Holders *amici* status. XRP Holders' involvement allows them to serve as a friend to this Court and "assist the Court in reaching the right decision in a case affected with the interest of the general public." *Russell v. Bd. of Plumbing Examiners*, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999). XRP Holders offer this Honorable Court, similar assistance.

## IV.  CONCLUSION

Plaintiff's Motion for Class Certification, if granted, will significantly harm the interests of proposed *amici* and the 75,890 XRP Holders they represent. Considering that the Plaintiffs in this case are alleging the same arguments as the SEC, Judge Torres's conclusion that XRP Holders represent third parties whose particular interests may be affected by the Court's ruling, equally applies to this case. The fact that proposed *amici* represent the interests of over 75,000 XRP holders, compared thus far, to only a few identified by the Plaintiffs, XRP Holders' participation "will provide the Court with a meaningful perspective and will help ensure complete and plenary presentation of difficult issues so that the court may reach a proper decision." SEC Action ECF No. 372 at 9-10. The mere fact that Plaintiff opposes this motion demonstrates that the interests of XRP Holders will not be protected by Plaintiff.

For these reasons, proposed *amici* respectfully request that the Court grant their Motion for Leave to File a Brief as *Amici Curiae* in Support of the Defendants' Opposition to Lead Plaintiff's Motion for Class Certification (Dkt. No. 201). The proposed Amicus Brief presents the valuable perspective of the XRP holders who could be substantially harmed by the Court's decision.

Dated: February 10, 2023

THE DEATON LAW FIRM

_____
John E. Deaton

JOHN E. DEATON (*admitted pro hac vice*)
All-deaton@deatonlawfirm.com
THE DEATON LAW FIRM, LLC
450 N Broadway
East Providence, RI 02914
Tel: (401) 351-6400

*Attorney for XRP Holders*