# EXHIBIT A

John E. Deaton
The Deaton Law Firm, LLC
450 N Broadway
East Providence, RI 02914
Tel: (401) 351 6400
All-deaton@deatonlawfirm.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re RIPPLE LABS, INC. LITIGATION | Case No. 4:18-cv-06753-PJH |
| | **BRIEF OF *AMICUS CURIAE*, XRP HOLDERS, IN SUPPORT OF DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| This Document Relates to: | Date: April 26, 2023<br>Time: 1:30 p.m.<br>Ctrm: 3 |
| All Actions | Consolidated FAC Filed: March 25, 2020<br>Trial Date: July 17, 2023 |

_____

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

INTERESTS OF AMICUS CURIAE ................................................................................ 3

I. RELEVANT FACTUAL BACKGROUND ................................................................... 4

    A. XRP is Digital Code – Not a Security ..................................................................... 4

    B. The U.S. Government Defines XRP ......................................................................... 5

    C. XRP Holders and Market Participants View XRP as Currency ............................. 6

    D. Understanding The XRP Ledger .............................................................................. 7

II. LEGAL STANDARD ................................................................................................... 8

III. ARGUMENT ................................................................................................................ 8

    A. Plaintiff And His Counsel Have Already Violated Rule 23(a)(4) ......................... 8

    B. *Amici* and 75,890 Class Members Totally Disagree
       With Plaintiff's Claims ........................................................................................... 9

    C. The Token Itself Is Never The Security ................................................................. 11

    D. The *Howey* Analysis Applies At The Time Of The Transaction ....................... 12

    E. Plaintiff is Atypical, Doesn't Own/Use XRP, and
       Misunderstands the XRPL ...................................................................................... 13

    F. The Harm Caused to XRP Holders Leaves No "Opt Out" Available .................. 15

    G. Plaintiff Cannot Satisfy Superiority ...................................................................... 18

IV. CONCLUSION ............................................................................................................ 18

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*SEC v. Ripple, Labs, Inc. et al.,*
    Case No. 1:20-cv-10832 (S.D.N.Y. 2020) ............................................................ *in passim*

4

5

*SEC v. W.J. Howey Co.,*
    328 U.S. 293 (1946) ................................................................................................ *in passim*

6

7

*SEC v. Telegram Grp., Inc.*,
    448 F. Supp. 3d 352 (S.D.N.Y. 2020) ............................................................... 4, 11, 13

8

9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ......................................................................................................... 8, 9

10

11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC,*
    31 F. 4th 651 (9th Cir. 2022) ...................................................................................... 8, 18

12

*Radcliffe v. Experian Info. Sols. Inc.,*
    715 F.3d 1157 (9th Cir. 2013) .......................................................................................... 8

13

14

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ............................................................................................. 8

15

16

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................................................. 8

17

18

*Matsushita Elec. Indus. Co. v. Epstein,*
    516 U.S. 367 (1996) ........................................................................................................... 10

19

*Sidibe v. Sutter Health,*
    333 F.R.D. 463 (N.D. Cal. 2019) .................................................................................. 11

20

21

*Glen-Arden Commodities, Inc. v. Costantino,*
    493 F.2d 1027, 1034 (2d Cir. 1974) ............................................................................ 12

22

23

*Miller v. Cent. Chinchilla Grp., Inc.,*
    494 F.2d 414 (8th Cir. 1974) .......................................................................................... 12

24

*Kemmerer et al. v. Weaver et al.,*
    445 F.2d 76 (7th Cir. 1971) ............................................................................................ 12

25

26

*SEC v. Shavers*,
    4:13-cv-00416, 2013 WL 4028182, (Aug. 6, 2013) ............................................... 12

27

28

*S.E.C. v. Aqua–Sonic Prods. Corp.*,
   524 F. Supp. 866, 876 (S.D.N.Y. 1981) ................................................. 13

*United Hous. Found, Inc. v. Forman*,
   421 U.S. 837, 852 (1975) ............................................................................14

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970, 984 (9th Cir. 2011) ........................................................ 15

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161, 1167 (9th Cir. 2014) ......................................................17

**Federal Rules**

Fed. R. Civ. P. 23(b)(3) ....................................................................................18

**Other Authorities**

SEC Rel. No. 33-5347 (Jan. 4, 1973) ............................................................ 12

## PRELIMINARY STATEMENT

Lead Plaintiff Bradley Sostack's ("Plaintiff") legal theory regarding XRP, including his proposed Federal Securities Claims Class, is impermissibly overbroad, unsupported by law, violates the sovereignty of foreign nations that have declared XRP a non-security, and threatens substantial harm to the very people he claims to represent. And therein lies the problem.

Plaintiff does not adequately represent the proposed class. Unlike *amici*, Plaintiff is not an actual XRP holder. Plaintiff, instead, is a day-trader, who traded XRP, along with other digital assets. A day-trader, by definition, is not relying on the efforts of any specific promoter but relying on his own efforts to predict price movements within a trading day or other short-term period of time. In fact, Plaintiff purchased and then sold his XRP in less than two weeks.

Plaintiff simply could not have been relying on the efforts of Ripple because if he had, he would own XRP today, considering Ripple's stated goal has been to disrupt the half century old legacy banking system known as SWIFT.[1] If Plaintiff was relying on Ripple, he would not have sold XRP less than two weeks after acquiring it. At a minimum, disrupting the legacy banking system is a multi-year proposition. Unlike Plaintiff, *amici,* and all the XRP holders *amici* represent, are long-time users and holders of the digital asset XRP, and they will be substantially harmed if the relief Plaintiff seeks is granted. Cumulatively, Plaintiff has identified only a few people who support his absurd claim that XRP itself is a security. On the other hand, in addition to *amici*, 75,890 XRP holders, from the United States, and 143 countries around the globe, all maintain that XRP is not a security.

*Amici,* and the 75,890 XRP holders who join them, purchased and/or acquired XRP in the

---

[1] *See* https://tearsheet.co/blockchain-crypto/how-ripple-plans-to-disrupt-swift/.

secondary market - not from Ripple. Plaintiff's claims are not limited to direct sales offered by Ripple but includes all sales - regardless of the seller or circumstances surrounding the sale - including secondary market transactions made by people completely unaware of the company Ripple. If the Court were to certify the class - *as currently defined by Plaintiff* - and appoint Sostack Representative of the class - it would suggest that *XRP,* which is nothing more than software code, is itself a security and thus, always a security no matter the seller or the circumstances surrounding the sale.

Plaintiff cannot cite a single case in 76 years since *SEC v. W.J. Howey Co.,* 328 U.S. 293, (1946) was decided, supporting such a sweeping and all-encompassing claim. The proposed federal class, if certified, would include: "All persons or entities who purchased XRP from May 3, 2017 through the present and who have (a) retained the XRP." Dkt. No. 181 at 2. Hence, the proposed class includes all XRP holders from May 3, 2017 who acquired XRP, including XRP acquired by users for non-investment reasons. It would be absurd to try and argue *each and every* secondary market transaction of XRP satisfies *Howey* in every instance. More importantly, there is not a single case that can be cited where an investment contract has been found where there exists no privity whatsoever between the buyer and the promoter.

Plaintiffs' Proposed Federal Class is so overbroad that it includes every sale of XRP made anywhere in the world, including in foreign jurisdictions where XRP has been declared a non-security.[2] Under these circumstances, Plaintiff cannot adequately represent *amici* and 75,890

---

[2] Japan, Switzerland, Singapore, UAE, and the United Kingdom have all declared XRP a currency - not a security. *See SEC v. Ripple, Labs, Inc. et al.,* Case No. 1:20-cv-10832 (S.D.N.Y. 2020) ("SEC Action") ECF No. 673 at n.50. The Canadian Tax Foundation treats XRP as a utility token and list it, along with Bitcoin as intangible property. *See* https://farris.com/content/uploads/2019/04/20180924-Taxation_of_the_Token_Economy.pdf, at 34, 49.

XRP holders who oppose any determination that XRP is a security. XRP being deemed a security would cause great harm to XRP holders because they would be unable to access, sell, or use their XRP. Furthermore, *amici* will demonstrate that if Plaintiff's request for certification is granted, there is no "Opt Out" provision available that could offer XRP holders protection. Additionally, *amici* and 75,890 XRP holders are currently on standby, regarding the summary judgment outcome in the SEC Action.

Certification of the federal class - *as proposed* - should be denied. Alternatively, *amici* asks the Court to consider holding off its decision on class certification until after a ruling in the SEC Action. All briefs, including fourteen *amicus* briefs in support of Ripple's Motion for Summary Judgment, and XRP Holders' *amicus* brief in opposition to the SEC's Motion for Summary Judgment, have been submitted and a decision could be issued at any moment. Considering the SEC asserts substantially the same claims as Plaintiff, that Court's ruling could have a significant impact on this Court's decision regarding certification.

Finally, Plaintiff has already proven he and his counsel are **inadequate** representatives of the proposed class, and certification thus, must be denied. Plaintiff and his counsel opposed *amici's* motion for leave to file an *amicus* brief. The mere fact that they opposed known and identifiable class members, requesting leave to file an *amicus* brief, proves that they will not act in the best interests of the class moving forward.

## INTERESTS OF AMICUS CURIAE

*Amici* are six individual XRP holders, along with a company that has integrated the XRP Ledger ("XRPL") utilizing XRP in a payments' application business, called SpendTheBits, Inc. ("STB"). Without Defendants' knowledge, consent or assistance STB, a foreign for-profit company based out of Alberta, Canada, designed an application to transfer Bitcoin on the

decentralized, opensource blockchain technology of the XRPL. Additionally, *amici* represent the interests of a growing putative class of XRP holders from the United States and 143 other countries around the world, consisting of users, investors, holders, developers, content providers and small businesses who acquired and utilize XRP and the XRPL - most of whom were completely unaware of Ripple when acquiring XRP. Today, the putative class stands at 75,890 XRP holders. Because these XRP holders represent such a significant public interest, they were granted *amici curiae* status in the SEC Action. *See* SEC Action ECF 372.[3] *Amici,* and the 75,890 XRP holders they represent, meet the definition of the Federal Class being proposed by Plaintiff.

## I.     RELEVANT FACTUAL BACKGROUND

### A.     XRP is Digital Code – Not a Security

XRP is one of the world's largest cryptocurrencies by market capitalization. "XRP is estimated to be held today by millions of holders worldwide, with approximately $700 billion to $1 trillion in total trading volume since 2013." SEC Action ECF 86 at 2. According to the SEC, "[s]tripped down, XRP is just computer code." SEC Action ECF 640 at 10. The most widely known and held cryptocurrency in the world is Bitcoin.[4] Three years after Bitcoin was created, three Bitcoin developers set out to build a better version of Bitcoin and thus, created XRP and the XRPL. *See* SEC Action ECF 643 at 4. Federal courts have recognized a blockchain's job is to validate the authenticity of a transfer of a unit of cryptocurrency. *See e.g., SEC v. Telegram Grp., Inc.*, 448 F. Supp. 3d 352, at n.2 (S.D.N.Y. 2020). A blockchain network, like Bitcoin and

---

[3] In the SEC Action, six XRP holders, Jordan Deaton, James Lamonte, Tyler Lamonte, Mya Lamonte, Mitchell Mckenna, and Kristiana Warner were granted *amici curiae* status and filed an amicus brief. SEC Action ECF No. 708. STB was separately granted *amicus* status and filed a separate *amicus* brief. SEC Action ECF No. 684.

[4] *See* https://www.forbes.com/advisor/investing/cryptocurrency/top-10-cryptocurrencies/.

the XRPL, is an open source, widely distributed, secure ledger of transactions. *Id*. Each blockchain produces a native cryptocurrency. *Id*.

**B.     The U.S. Government Defines XRP**

Two years after XRP was created, the Government Accountability Office ("GAO") issued a report defining and highlighting XRP - not as a security – but as "*virtual currency*" utilized in "a decentralized payment system." *See GAO Report*, Deaton Decl. Ex. A. One year after the *GAO Report*, XRP became the *first* cryptocurrency regulated in the U.S. and the government, again, described XRP – not as a security – but as "virtual currency." *See FinCEN Ripple Facts*, Deaton Decl. Ex. B at 1. The same year FinCEN classified XRP as virtual currency, the Commodity Futures Trading Commission (CFTC), declared: "Virtual Currencies Such as Bitcoin are Commodities." *See Coinflip, Inc. et al*, CFTC Docket No. 15-29, Deaton Decl. Ex. C ("Bitcoin and other virtual currencies are… properly defined as commodities."). As XRP was getting more recognition from these different government agencies, it became even more popular, second only to Bitcoin. *See Ripple (XRP) Overtakes Ethereum…*, Deaton Decl. Ex. D. By 2019, XRP had become so popular, it was highlighted in the Financial Stability Oversight Council's (FSOC) 2019 Annual Report to the U.S. Treasury. *See 2019 FSOC Annual Report.* Deaton Decl. Ex. E at 96 ("The market capitalization of digital assets, such as Bitcoin, Ethereum, XRP, and Litecoin, has increased in recent years"). Also in 2019, the SEC published guidance strongly suggesting XRP is not a security. *See SEC Framework,* Deaton Decl. Ex. F (stating *Howey* is unlikely met when "a virtual currency…can immediately be used to make payments…or acts as a substitute for real (or fiat) currency.").

## C.    XRP Holders and Market Participants View XRP as Currency

XRP holders view and utilize XRP exactly the way described in the 2014 *GAO Report*: as a form of payment. *Amici* and others have received XRP as a gratuity or tip for providing content on platforms like Twitter and YouTube. In fact, for years there existed an XRP TipBot allowing the transfer of XRP from person to person. *See XRP TipBot,* Deaton Decl. Ex. G. Thousands of vendors, like Time Magazine, accept XRP as a form of payment or medium of exchange. *See Time Magazine Will Accept Cryptocurrencies*, Deaton Decl. Ex. H, *see also Pay With XRP*, Deaton Decl. Ex. I (listing 1,500 plus companies accepting XRP as payment; helping users "[f]ind where to spend [their] XRP.").

XRP holders were not alone viewing XRP as currency. After multiple government agencies declared XRP virtual currency, sophisticated market participants generally accepted three cryptocurrencies as not securities: Bitcoin, Ether, and XRP. *See e.g.* Bailard, Inc.[5] *Code of Ethics*, January 4, 2021 at 2-3, Deaton Decl. Ex. J, ("Bailard has decided to allow investments in three cryptocurrencies – Bitcoin, Ethereum, and XRP – that are generally accepted to be currencies and not currently subject to regulation by the SEC."). Speaking of sophisticated market participants, before becoming Chairman of the SEC, Gary Gensler described XRP as a "*bridge currency*." *See* Gary Gensler comments *at Peterson Institute for International Economics.* Deaton Decl. Ex. K. Likewise, a former chairman of the CFTC stated XRP is more like currency than a security and should have the same legal status as Bitcoin or Ether.[6]

---

[5] Bailard Inc., because it is an SEC registered investment adviser and serves as a sub-adviser to certain registered investment companies, is required by the SEC to adopt a code of ethics. *See* Rule 204A-1, Investment Advisers Act of 1940; and Rule 17j-1, Investment Company Act of 1940.

[6] Writing an op-ed for the International Financial Law Review, along with Conrad Bahlke of the international law firm Willkie Farr & Gallagher, Giancarlo and Bahlke wrote that XRP doesn't

**D.     Understanding The XRP Ledger**

From Bitcoin on down, every network's token performs whatever function that blockchain was invented to serve. The XRPL, like the Bitcoin Network, is a public distributed ledger anyone, from around the world, can access, at any time. *See* SEC Action ECF 684. Any person, developer or business, with basic technical knowledge can access the XRPL, including its decentralized exchange (DEX), by simply establishing a trust-line. *See XRPL,* Deaton Decl. Ex. L. Acquiring XRP to establish the trust-line is not an investment because the trust-line is what allows **users** to move value in only 3-5 seconds, at a cost of only a fraction of a penny. Hence, when a **user** opens an account, acquiring the minimum XRP to move or transfer value, it is not an investment because the **user** is acquiring the XRP for consumptive use. *Id*. Anyone can submit transactions on the XRPL. *See* SEC Action ECF 684. Any person can access the XRPL and transfer value in the form of fiat currencies, NFTs, or other cryptocurrencies to friends, family or loved ones, without the need to rely on Ripple or utilize an intermediary such as a bank or money transmitter (e.g., Western Union or MoneyGram). *Id*.

Clearly, when accessing the XRPL to transfer value over the internet, XRP is not being viewed or utilized as an investment. Rather, it is being utilized as a utility tool for payments. Independent developers and users of the XRPL, can propose changes to the XRPL's source code and those changes can be implemented over Ripple's objection, assuming 80% consensus is met. *See Why XRP is the most misunderstood cryptocurrency*, Deaton Decl. Ex. M. Unlike the Bitcoin Network, the XRPL contains the world's first established DEX. *See Behind the Scenes of the XRPL Dex*, Deaton Decl. Ex. N. The DEX enables the user to buy, sell or trade multiple digital

---

hit any prongs of the Howey Test and should not be regulated as a security but instead considered a currency or medium of exchange.

assets or even physical units of value such as gold. *Id.*

## II.   LEGAL STANDARD

"Certification is proper only if 'the trial court is satisfied, **after a rigorous analysis**, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). The Plaintiff cannot rely on self-serving and conclusory statements because "Rule 23 does not set forth a mere pleading standard." *Id.* The Plaintiff "must actually prove – not simply plead – that their class satisfies each requirement of Rule 23." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC,* 31 F. 4th 651, 664-65 (9th Cir. 2022) (en banc).

## III.   ARGUMENT

Certification should be denied because the Plaintiff and his counsel cannot satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. Plaintiff's Federal Securities Class should be denied under Rule 23(b)(3) because individualized inquiries predominate common questions thus making a class an inferior method of adjudication.

### A.   Plaintiff And His Counsel Have Already Violated Rule 23(a)(4)

"Adequate representation depends upon an absence of antagonism [and] a sharing of interests between representatives and absentees." *Radcliffe v. Experian Info. Sols. Inc.,* 715 F.3d 1157, 1165 (9th Cir. 2013). The adequacy inquiry looks at whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019). The purpose behind a rigorous analysis regarding adequacy is to "uncover conflicts of interest between named parties and the classes they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Plaintiff has already proven to be antagonistic toward the class he purports to represent.

According to Plaintiff's motion, "Lead Plaintiff understands his role as a fiduciary" and that he and his counsel will prosecute the action vigorously on behalf of the class. Dkt. No. 181 at 13. Pleading that you understand the role of a fiduciary is the easy part. Proving it, on the other hand, is where *the rubber meets the road*. This is why Rule 23 requires much more than a pleading standard. Prior to class certification, Plaintiff must "prove that [he is] in fact" an adequate representative. *Wal-Mart,* 564 U.S. at 350. *Amici's* Motion for Leave to File an *Amicus* Brief, afforded Plaintiff and his counsel, the perfect opportunity to demonstrate that they understand and accept their fiduciary role and prove Plaintiff *is in fact* an adequate representative. However, when counsel for *amici* inquired as to whether Plaintiff would consent to *Amici's* Motion for Leave, Plaintiff's counsel advised that the motion would be opposed. *See Email exchange with Plaintiff's Counsel,* Deaton Decl. Ex. O. *Amici,* and 75,890 XRP holders are, by definition, members of the proposed class. Plaintiff and his counsel are free to dispute or disagree with *amici's* claims or perspective, but the mere fact that they oppose class members having an opportunity to be heard - **proves** that they will not act in the best interests of the class.

Plaintiff's Opposition to Amici's Motion is a manifestation of the inherent, irreconcilable conflicts existing between the Plaintiff and the class members Plaintiff seeks to represent. Opposing *amici's* request for leave violates Rule 23(a)(4)'s plain language requiring "representative parties will fairly and adequately protect the interests of the class." Attempting to prevent *amici's* participation on behalf of the tens of thousands of known class members is not adequately protecting the interests of the class.

## B.   *Amici* And 75,890 Class Members Totally Disagree With Plaintiff's Claims

Routinely, Rule 23(a)'s adequacy requirement is there to protect the due-process interests of the unnamed class members who will be bound by a judgment litigated on their

behalf by their representative. *See Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 379 n.5 (1996). Here, a putative class of 75,890 known class members exists who completely disagree on the underlying issue at the very heart of the Plaintiff's claims. Similar to the SEC Action, the Plaintiff is trying to prove that XRP itself is a security. *Amici* utterly disagree. In fact, *amici* and more than twelve thousand other XRP holders believed so strongly against the claim that XRP itself is a security, they took the extraordinary action of filing Motion to Intervene - ***as Defendants*** - in the SEC Action. *See* SEC Action ECF 123.[7] Plaintiff's claims mirror the claims made by the SEC. The SEC's complaint, similar to Plaintiff's complaint, includes conclusory allegations suggesting XRP is always a security, and therefore that every offer, sale, or transaction involving XRP is subject to registration under Section 5 of the Securities Act. *See* SEC Action ECF 46. In other words, the SEC, like Plaintiff, did not limit the claims to specific distributions of XRP sold directly by Defendants. Instead, the SEC, like Plaintiff, asserted that all XRP are securities. Plaintiff's Proposed Federal Class, likewise, is not limited to direct sales offered by Ripple but include all sales made by anyone, including in the secondary market. In other words, Plaintiff is alleging that XRP itself is a security regardless of the seller or the circumstances surrounding the sale. In sum, the premise of the Plaintiff's case is that XRP itself is a security. *Amici,* and the 75,890 XRP holders they represent, strongly believe Plaintiff's entire premise is invalid as a matter of law. Regardless, the Ninth Circuit has made clear that conflicts that are "fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from

---

[7] Because both Ripple and the SEC opposed class certification and XRP Holders conceded certification would delay the case, Judge Torres did not consider class certification and granted *amici* status to the six XRP Holders in their individual capacities. SEC Action ECF 123 at n.1. The Court acknowledged that never before had there been a case where thousands of individual asset holders petitioned a Court, requesting the extraordinary relief of having the SEC sue and name them as defendants in a pending action. *Id.* at 5.

meeting the Rule 23(a)(4) adequacy requirement." *Sidibe v. Sutter Health*, 333 F.R.D. 463, 488 (N.D. Cal. 2019).

**C.      The Token Itself Is Never The Security**

There is no case law from the Supreme Court or any appellate court that analyzes whether an underlying asset of an investment contract is itself a security. The reason there is no precedent is because the underlying asset utilized in an investment contract transaction is **never** the security. *See SEC v. W.J. Howey Co.,* 328 U.S. 293, 301 (1946) ("If that test be satisfied, it is immaterial… whether there is a sale of property with or without intrinsic value."); *SEC v. Telegram Grp., Inc*., 448 F. Supp. 3d 352, 379 (S.D.N.Y. 2020) ("the security…is not simply the Gram, which is little more than alphanumeric cryptographic sequence."). For example, claiming XRP itself is a security would be akin to calling the oranges in *Howey* securities. In *Telegram*, the Court clarified its original decision, making clear that the underlying asset (whether oranges or digital tokens) are not themselves investment contracts. *See Telegram*, 2020 WL 1547383 at *1 (clarifying that the central point of the Court's holding was that "the 'security' was neither the Gram Purchase Agreement **nor the Gram**.") (emphasis added).

Similarly, a former SEC Director unequivocally stated: "the token – or coin or whatever the digital information packet is called – **all by itself is not a security**, just as the orange groves in Howey were not." *William Hinman Speech*, Deaton Decl. Ex. P (emphasis added). Director Hinman noted that "the digital asset itself is simply code." *Id*. Director Hinman emphasized, "that the analysis of whether something is a security is not static and does not strictly inhere to the instrument." *Id.* Just like any other commodity, "investment contracts can be made out of virtually any asset (including virtual assets)." *Id.* Former SEC Chairman Clayton also agreed. *See Mar. 7, 2019 Ltr. from Chairman J. Clayton*, Deaton Decl. Ex. Q ("I agree that the analysis of

whether a digital asset is offered or sold as a security is not static and **does not strictly inhere to the instrument**.") (emphasis added). These SEC statements make sense considering any asset or commodity can be offered as a security, whether that asset be orange groves, whiskey, chinchillas, condos, beavers, or Bitcoin. *See Howey*, 328 U.S. 293 (1946); *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027, 1034 (2d Cir. 1974); *Miller v. Cent. Chinchilla Grp., Inc.,* 494 F.2d 414 (8th Cir. 1974); SEC Rel. No. 33-5347 (Jan. 4, 1973); *Kemmerer et al. v. Weaver et al.*, 445 F.2d 76 (7th Cir. 1971); and *SEC v. Shavers*, 4:13-cv-00416, 2013 WL 4028182, (Aug. 6, 2013), respectively. When an asset is offered and sold as an investment contract, it does not transform the underlying asset into a security. Oranges remain oranges and XRP remains software code. Therefore, even if Ripple offered XRP as a security - *related to specific transactions by Ripple* – XRP would still remain exactly what multiple government agencies classified it as in 2014, 2015, and 2019 - a decentralized virtual currency.

A recent, extensive and comprehensive study was published reviewing every single relevant federal appellate case that applied *Howey. See The Ineluctable Modality of Securities Law*, Deaton Decl. Ex. R. The study confirmed that no federal appellate court has ever held the underlying asset subject to an investment contract transaction, is itself an investment contract and there is not a single federal case finding a subsequent transfer of that asset to be a securities transaction. Plaintiff's implausible theory that each and every sale of XRP, regardless of the seller or the circumstances, is an investment contract with Ripple would mean XRP itself is a security. In the SEC Action, the SEC was ultimately forced to admit that "[s]tripped down, XRP is just computer code." SEC Action ECF No. 640 at 10.

**D.    The *Howey* Analysis Applies At The Time Of The Transaction**

Plaintiff asks this Court to certify a class that concludes each and every sale of XRP,

from anywhere in the world, offered by anyone, including *amici,* was the offer and sale, of a security. Plaintiff is not allowed to shortcut the *Howey* analysis by creating a class that covers each and every sale of XRP from May 3, 2017 until the present day. That's not how the *Howey* test operates and it's not how Rule 23 certification works. The *Howey* test must be applied to each transaction and "examined as of the time that the transaction took place." *See S.E.C. v. Aqua–Sonic Prods. Corp.*, 524 F. Supp. 866, 876 (S.D.N.Y. 1981); *see also, Telegram*, 448 F. Supp. 3d 352, 368 ("*Howey* requires the Court to examine the series of understandings, transactions, and undertakings **at the time they were made**.") (emphasis added). Each *Howey* factor must be satisfied for each transaction and each transaction must be examined at the time it was made. Certification must exclude secondary sales by persons unaffiliated with Defendants.

**E.     Plaintiff is Atypical, Doesn't Own/Use XRP, and Misunderstands the XRPL**

Plaintiff claims that he purchased XRP with an expectation that it would increase in price based on Ripple's efforts. Def. Opp., Dkt. 201 at 2. But Plaintiff is a day-trader who speculates on momentary price fluctuations of multiple digital assets, including XRP. *Id*. at 2. Plaintiff purchased XRP between January 1st and 16th, 2018 and sold that XRP between January 9th and 17th, 2018. Pl. Mot., Dkt. No. 63 at ¶ 13. In sum, he owned XRP for only two weeks – over five years ago! A*mici*, and the 75,890 XRP holders, on the other hand, represent long-time users and holders of the digital asset XRP. Unlike Plaintiff, XRP holders own XRP. Furthermore, the technological advancements related to the XRPL, and the use cases for XRP, independent of Defendants' efforts, have exploded since Plaintiff briefly owned XRP in 2018. Truthfully, 2018's XRP is not the same as 2023's XRP. During that time, XRP holders acquired XRP for many different reasons – reasons apparently unknown (or ignored) by Plaintiff.

Today, XRP Holders and millions of others, use XRP as a substitute for fiat and as a form

of currency to buy everyday items at Walmart, Amazon, Target and countless other locations. *See* e.g., *Introducing the XRP MasterCard Debit Card*, Deaton Decl. Ex. S, s*ee also*, *UpHold's New Debit Card Lets You Pay With XRP*, Deaton Decl. Ex. T. Thousands of vendors, like Time Magazine, accept XRP as a form of payment or medium of exchange. *See Time Magazine Will Accept Cryptocurrencies*, Deaton Decl. Ex. H, s*ee also Pay With XRP*, Deaton Decl. Ex. I (listing 1,500 plus companies accepting XRP as a payment and helping users "[f]ind where to spend [their] XRP.").

Plaintiff's Proposed Class includes **ALL** holders of XRP, including users of the XRPL. There are 4,573,339 XRP accounts, along with 7,281,869 Trust-Lines connected to the XRPL. *XRPL Stats*, Deaton Decl. Ex. U. In other words, there are millions of XRP holders who could be negatively impacted by such a sweeping federal securities class. XRP is used by these XRP holders to move money from the U.S. to Africa, Mexico, Thailand, Brazil, the Philippines, all of Asia, and other cross-border destinations where XRP holders send peer-to-peer payments utilizing XRP. XRP is also used as payroll currency by multiple companies. BitPay, for example, launched a massive crypto payments service for businesses in 225 countries and allows people to be paid in cryptocurrencies including Bitcoin, Ether, **XRP**, Litecoin, Bitcoin Cash and others. *See Connecting with Bitpay*, Deaton Decl. Ex. V. Plaintiff is either unaware of these technological advances involving XRP or is choosing to ignore the use cases for XRP that clearly do not trigger or involve U.S. securities laws. *See United Hous. Found, Inc. v. Forman*, 421 U.S. 837, 852 (1975) ("When a purchaser is motivated by a desire to use or consume the item purchased…the securities laws do not apply.").

Plaintiff fundamentally misunderstands the nature of an open, permission-less distributed ledger blockchain technology like the XRPL. Maybe because Plaintiff only owned XRP for two

weeks five years ago, he wrongly asserted that "XRP is not decentralized like Bitcoin." Complaint, Dkt. No. 87 at 3. There are literally hundreds, if not thousands, of XRPL developers, with no connection to Ripple, running applications on the XRPL. STB is a perfect example of the open, permission-less, and decentralized nature of the XRPL. It is a perfect example, because if STB were to scale significantly, it would "become a competitor to Ripple's ODL system that also runs on the XRPL." *See* SEC Action ECF No. 684 at 11. Plaintiff's Proposed Class captures all of these worldwide users of XRP who believe the only difference between Bitcoin (not considered a security) and XRP, is that XRP is a better version of Bitcoin.

The Ninth Circuit routinely finds typicality lacking where a named plaintiff's "unique background and factual situation require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class," *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 984 (9th Cir. 2011). Plaintiff owned XRP for less than two weeks five years ago. Plaintiff is not an XRP holder, and he knows very little about the XRP ecosystem or XRP's unique utility, distinguishing it from other cryptocurrencies. *See* SEC Action *Hrg Tr.* at 11:4-7 (Mar. 19, 2021) ("My understanding of XRP is that not only does it have a sort of currency value, but it also has a utility, and that utility distinguishes it, I think, from Bitcoin and Ether.") (Netburn, J.). Plaintiff has a credibility problem and class certification "should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Ellis*, 657 F.3d at 984.

**F.     The Harm Caused to XRP Holders Leaves No "Opt Out" Available**

Under Rule 23(b)(3), if individualized inquiries predominate common questions, certification is not available. Establishing whether an XRP holder suffered a loss requires very specific and individualized information about the circumstances surrounding the purchase and

use of XRP. Actual harm to XRP holders will be caused only if Plaintiff is successful. A
determination that XRP is a "security" would cause substantial harm because it would negatively
impact XRP holders' ability to access, sell, and use their XRP.

In the SEC Action, XRP Holders submitted to the parties approximately thirty-five
hundred XRP Purchaser Affidavits. *See* SEC Action ECF No. 665-1-26; *also attached to* Def.
Opp., Dkt. No. 201, Ex. 26-51. These affidavits are from *actual* XRP holders and include
investors, users, and developers. *Id*. These affidavits demonstrate the irreconcilable and inherent
conflict between Plaintiff and the class members he seeks to represent. *Id*. Included in the XRP
Holder Affidavits are proposed class members residing in foreign jurisdictions that have
affirmatively declared XRP not a security. *See Supra,* fn.2. Currently, *amici's* putative class
includes 6,814 XRP holders from the U.K.; 255 holders from Japan; 243 from Singapore; 316
from Switzerland; 218 from the UAE; and 3,720 from Canada. Included in the thirty-five
hundred or so XRP Holder Affidavits, submitted in the SEC Action, and in this case, are
affidavits from XRP investors, users and developers from these foreign jurisdictions. See Def.
Opp., Dkt. No. 201, Ex. 26-51. For the Court's convenience, attached as Deaton Decl. Ex. W, is
a sample of affidavits from holders in jurisdictions that have declared XRP a non-security.
Plaintiff's overbroad federal proposed class captures all of these investors, users, developers and
businesses who do not agree with Plaintiff's claims.[8]

For thousands of XRP holders, their retirement accounts, held in XRP, have been frozen.
*Id.* XRP being determined a security threatens their funds. XRP holders do not want to sell their

---

[8] *Amici* has focused their perspective on Plaintiff's federal class, not the California state class.
Because the California class is limited to direct sales made by Ripple, *amici* takes no position.
Amici notes, however, that Plaintiff is a Florida resident. Included in *amici's* putative class, are
4,903 Californians.

XRP. Any loss surrounding their inability to use XRP is going to be very individualized. XRPL users need to utilize their XRP to transfer funds. Their damages will be unique compared to other class members. If Plaintiff is successful, developers like STB could be shut down entirely. Businesses that accept XRP as a form of payment would experience unique losses. Businesses that utilize XRP as a payroll currency would have unique losses not commonly shared. Because so many XRP holders purchase and use XRP for so many different reasons, damages are not commonly calculable. Finally, if XRP is determined to be a security it exposes XRP holders to legal liability if they attempt to sell or transfer their XRP. If XRP is determined to be a security, then the burden will fall on XRP holders to determine if any statutory exemption applies to them. XRP holders would incur legal fees associated with trying to not run afoul of U.S securities laws.

No "Opt Out" provision could be created that would offer XRP holders any relief or protection. The harm to XRP holders is a determination that XRP is a security. If it is deemed a security, it becomes useless to the user. XRP holders would lose the ability to utilize XRP as collateral to obtain financing for a fiat loan or "stake" (i.e., loan) their XRP and earn interest. *See e.g., Binance Earn*, Deaton Decl. Ex. X (offering XRP holders yield on their XRP); *also, Get a Loan Backed By Your XRP*, Deaton Decl. Ex Y (allowing XRP holders to borrow cash at 4.9% annually). Many XRP holders would not experience a financial loss if forced to sell their XRP today. Thus, under the calculations offered by Plaintiff's expert, many would not experience a financial loss related to purchase and sell prices. The loss is the inability to utilize their XRP.

To satisfy Rule 23(b)(3)'s predominance requirement, the Ninth Circuit requires a methodology for calculation of damages that **must** produce a class-wide result. *Jimenez v. Allstate Ins. Co.,* 765 F.3d 1161, 1167 (9th Cir. 2014). Because it is impossible for Plaintiff to put forward a common methodology for calculating damages across the proposed class of XRP

Purchasers, certification must be denied.

**G.    Plaintiff Cannot Satisfy Superiority**

XRP Holders have property rights and want to individually control their own rights and interests. *See* Fed. R. Civ. P. 23(b)(3)(A). *Amic*i and XRP holders have a vested interest in the ongoing litigation of the SEC Action, which will fairly and efficiently adjudicate the controversy at issue here. Although this Court should deny certification outright, the proposed class is already involved and waiting for the outcome of the SEC Action. That outcome could have a significant impact on this Court's decision.  *See* Fed. R. Civ. P. 23(b)(3)(C).

## IV.    CONCLUSION

Lead Plaintiff Sostack must prove by a preponderance of the evidence each requirement under Rule 23. *See Olean*, 31 F.4th at 664-65. Faced with the evidence offered by the Defendants in their Opposition (Dkt. No. 201), coupled with the perspective and arguments of *amici* and the interests of tens of thousands of known XRP holders, once this Court employs a *rigorous analysis,* it is impossible for Plaintiff to meet his evidentiary burden. *Amici* respectfully request the Court deny certification or, in the alternative, postpone certification until after a judgment is issued from Judge Torres in the SEC Action.


Dated: February 10, 2023                        THE DEATON LAW FIRM

                                                _____
                                                John E. Deaton

                                                JOHN E. DEATON (*admitted pro hac vice*)
                                                All-deaton@deatonlawfirm.com
                                                THE DEATON LAW FIRM, LLC
                                                450 N Broadway
                                                East Providence, RI 02914
                                                Tel: (401) 351-6400

                                                *Attorney for XRP Holders*