James Q. Taylor-Copeland (284743)
james@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4944
Facsimile: (619) 566-4341

Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
Oleg Elkhunovich (269238)
oelkhunovich@susmangodfrey.com
Steven G. Sklaver (237612)
ssklaver@susmangodfrey.com
Krysta Kauble Pachman (280951)
kpachman@susmangodfrey.com
Nicholas N. Spear (304281)
nspear@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Counsel for Lead Plaintiff Bradley Sostack*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re RIPPLE LABS INC. LITIGATION,<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 4:18-cv-06753-PJH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANTS' OPPOSITION TO CLASS CERTIFICATION**<br><br>Date: April 26, 2023<br>Time: 1:30 p.m.<br>Place: Courtroom 3<br>Judge: Hon. Phyllis J. Hamilton<br><br>Consolidated FAC Filed: March 25, 2020 |

11309504v1/016433

# I. INTRODUCTION

An amicus "may not assume the functions of a party, nor may it initiate, create, extend, or enlarge the issues." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2022026, at *1 (N.D. Cal. July 9, 2007). But that is the most generous reading of what proposed amici seek to do here. Amici's proposed brief offers nothing unique or relevant. Instead, it simply rehashes arguments that Defendants have already made and raises factual and merits issues that have no place at class certification. This is not an appropriate function for an amicus.

In addition, the proposed amicus brief is substantively and procedurally improper. The amici are no friends of the Court. Instead, they are friends and family members of amici's counsel John E. Deaton—a self-proclaimed XRP enthusiast and public personality on social media. Mr. Deaton is not a disinterested party, but rather has publicly stated that he is a "ripple investor," that "bought shares of ripple" in November 2020. The proposed amici that he claims to represent include his girlfriend and current employee, his daughter, a former employee, and that employee's immediate family. Mr. Deaton also falsely states that he and amici represent "75,890 XRP Holders," presumably referring to an email list Mr. Deaton collected online through his solicitation of class plaintiffs for a potential lawsuit against the Securities and Exchange Commission. Mr. Deaton's false claims of representing a putative class of 75,890 XRP Holders also misrepresent the Court's order in the related SEC Action.

For these reasons, and as described in more detail below, the Court should deny proposed amici's motion for leave to file an Amicus Curiae brief in support of Defendants' opposition to class certification.

# II. STATEMENT OF ISSUE

Whether non-parties Jordan Deaton, James Lamonte, Tyler Lamonte, Mya Lamonte, Mitchell Mckenna, Kristiana Warner, and SpendTheBits, Inc. should be permitted to file an amicus curiae brief in support of Defendants' Opposition to Lead Plaintiff Motion for Class Certification (Dkt. No. 201).

# III. ARGUMENT

### A. Legal Standard

"There is no inherent right to file an amicus curiae brief." *Long v. Coast Resorts, Inc.*, 49 F.

Supp. 2d 1177, 1178 (D. Nev. 1999). Rather, "[t]he Court has broad discretion in deciding whether to allow a non-party to participate as an amicus curiae." *Juniper Networks v. Shipley*, 2010 WL 986809, at *9 (N.D. Cal. Mar. 17, 2010). "An amicus curiae is merely a 'friend of the court,' **not a party to the action**, and to that end, **an amicus may not assume the functions of a party, nor may it initiate, create, extend, or enlarge the issues**." *DRAM Antitrust Litig.*, 2007 WL 2022026, at *1 (emphasis added).

"The vast majority of amicus curiae briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. They are an abuse." *Henry v. Jury*, 2018 WL 11350039, at *1 (C.D. Cal. July 3, 2018) (citing *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J.)). Amicus briefs are "seldom appropriate at the level of the trial level where the parties are adequately represented by experienced counsel." *Jones v. Becerra*, 2020 WL 8920621, at *1 (S.D. Cal. Jan. 14, 2020). This is particularly true where the utility of an amicus brief "is diminished at the trial level due to its obvious partisanship." *Id*.

Indeed, it is generally recognized that amicus briefs at the trial level are helpful only in limited circumstances:

> An amicus brief is normally allowed only when a party is not represented competently or is not represented at all, and when the amicus has an interest in another case that may be affected by the holding in the present case, or when the amicus can present unique information that can help the court in a way that is beyond the abilities the lawyers for the parties are able to provide.

*Gabriel Techs. Corp. v. Qualcomm Inc.*, 2012 WL 849167, at *4 (S.D. Cal. Mar. 13, 2012) (citing *Ryan*, 125 F.3d at 1063). "If these limitations to filing an amicus brief are not met, then the motion should be denied." *Id.* (citing *Rucker v. Great Scott Supermarkets*, 528 F.2d 393, n.2 (6th Cir. 1976); *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970)).

**B.     The Proposed Amicus Brief is Unnecessary, Useless, and Irrelevant**

Rather than adding a unique perspective to the issues actually relevant to class certification, the proposed amicus brief reiterates arguments already made by Defendants' competent and seasoned

11309504v1/016433

counsel and attempts to inject merits issues that have no bearing on class certification. This is improper.

*First*, there is no question all parties in this case are adequately represented. Court-appointed Lead Plaintiff's counsel has extensive experience in litigating class actions. Dkts. 45, 57. Defendants are represented by lawyers at Debevoise & Plimpton and King & Spalding—two leading law firms. The parties do not need amici's assistance to fully and vigorously litigate the issues at class certification. *See Jones*, 2020 WL 8920621, at *1; *Gabriel Techs.*, 2012 WL 849167, at *4.

*Second*, to the extent it addresses class certification, the proposed amicus brief is "just an echoing of [Defendants'] original" briefing. *Gabriel Techs*, 2012 WL 849167, at *5 ("Based upon Mr. Milgrim's lack of unique information or perspective and repetition of Plaintiffs' previous arguments, the Court finds his amicus brief unnecessary and unhelpful."). Most of the proposed amicus brief addresses the same Rule 23 standards, using the same arguments, as Defendants do in their opposition to class certification. For example, both Defendants and the proposed amici argue that Lead Plaintiff cannot satisfy the Rule 23(a)(4) adequacy requirement because Plaintiff is in conflict with class members harmed by his claims. *Compare* Dkt. 201 at 9-16 (Defendants' Opposition) ("Plaintiff's conflict with these putative class members is made clear by what has transpired in the parallel SEC Action, in which more than 10,000 XRP holders who oppose the SEC's legal theory sought to intervene as defendants because 'the entire theory being pursued by the SEC threatens their interests.'"), *with* Dkt. 206-1 at 10 (Proposed Amicus Brief) ("In fact, *amici* and more than twelve thousand other XRP holders believed so strongly against the claim that XRP itself is a security, they took the extraordinary action of filing Motion to Intervene – **as Defendants** – in the SEC Action."). While this argument is entirely without merit,[1] it cannot be said that Defendants themselves

---

[1] It is well established that the mere existence of objectors does not create a conflict for the class representative or class counsel. *See In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 19 (2d Cir. 1986) ("[W]hen an action has continued over the course of many years, the prospect of having those most familiar with its course and status be automatically disqualified whenever class members have conflicting interests would substantially diminish the efficacy of class actions as a method of dispute resolution."). Moreover, members of the putative class do not have a legally protectible interest in ongoing violations of the law. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2023 WL 1813530, at *15 (C.D. Cal. Feb. 7, 2023) (rejecting the argument that certification is improper where some class members would prefer an antitrust injury to persist, because the argument, in part, "confuses the question of whether a common injury unites the class with the distinct question of

11309504v1/016433

are incapable of raising or litigating it; indeed, Defendants did raise it. *See Jones*, 2020 WL 8920621, *1 ("However, this is not a perspective beyond what Defendant's attorneys could provide on their own.").

*Third*, the proposed amicus brief improperly seeks to "initiate, create, extend, or enlarge the issues" by litigating issues that have already been decided and raising a host of merits issues having no relevance to class certification. *DRAM Antitrust Litig.*, 2007 WL 2022026, at *1. For example, proposed amici argue, without citation, that "Plaintiff's complaint includes conclusory allegations suggesting XRP is always a security, and therefore that every offer, sale, or transaction involving XRP is subject to registration under Section 5 of the Securities Act." Dkt. 206-1 at 10. But whether Lead Plaintiff has sufficiently alleged his claims is an issue that has already been twice adjudicated, Dkts. 85, 115, and in any event has no bearing on class certification. *See DRAM Antitrust Litig.*, 2007 WL 2022026, at *1 ("Here, review of the California Attorney General's proposed amicus brief makes evident that, rather than offering useful or advisory arguments, the State is really seeking to relitigate the issues raised by the actual parties to the instant action in connection with defendants' earlier motions for judgment on the pleadings. . . . These arguments are not consistent with the role of an amicus. In making them, the State of California, who is not a party to the instant action, seeks to do what plaintiffs, and plaintiffs alone, had the ability to do-i.e., have the court reconsider its June 1, 2007 order.").

Indeed, much of the proposed amicus brief addresses the merits issue of whether XRP is a security with no effort to connect this issue to the relevant class certification inquiry: "The Token Itself Is Never The Security," Dkt. 206-1 at 11–12; "The *Howey* Analysis Applies At The Time Of The Transaction," *id.* at 12–13. Similarly, the motion for leave states that the "Court will benefit from XRP Holders' participation because Plaintiff misunderstands what constitutes a truly decentralized

---

whether all class members agree about how best to respond to the injury" (quoting *Lauman v. National Hockey League*, 105 F.Supp.3d 384, 400–08 (S.D.N.Y. 2015))); *Fleisher v. Phoenix Life Ins. Co.*, 2013 WL 12224042, at *12 (S.D.N.Y. July 12, 2013) (the possibility that some class members "might prefer to see an illegality go unredressed is not a persuasive reason not to certify a sufficiently numerous class of [class members] who do"); *Partl v. Volkswagen, AG (In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.)*, 895 F.3d 597, 606 (9th Cir. 2018) (affirming "the district court's decision to certify a class action and its conclusion that a class action settlement is 'fair, reasonable, and adequate'" despite objectors "hodgepodge of challenges" to class certification).

11309504v1/016433

network such as the XRPL." Dkt. 206 at 5.  Putting aside that Defendants are perfectly capable of addressing this issue on the merits at summary judgment or trial, proposed amici fail to explain how this issue has any bearing on class certification. *See Gabriel Techs.*, 2012 WL 849167, at *5 ("Among the issues Mr. Milgrim lists within his brief, some are irrelevant to the motion before the court, such as his bond argument within his conclusion.")

*Finally*, the proposed amicus brief is the definition of "obvious partisanship." *Jones*, 2020 WL 8920621, at *1.  Counsel for the proposed amici, John Deaton, is open about his obvious partisanship; publicly admitting to being a "huge xrp bag holder and ripple investor," and claiming that he "bought shares of ripple" in November 2020.[2]

The proposed amicus brief aggressively and repeatedly attacks Plaintiff and its counsel. *See, e.g.*, Dkt. 206-1 at 9 (arguing that Plaintiff's counsel not consenting to this motion "**proves** that they will not act in the best interests of the class" (emphasis in original)); *id.* ("*Amici* And 75,890 Class Members Totally Disagree With Plaintiff's Claims"); *id.* at 14–15 ("Plaintiff fundamentally misunderstands the nature of an open, permission-less distributed ledger blockchain technology like the XRPL.  Maybe because Plaintiff only owned XRP for two weeks five years ago, he wrongly asserted that 'XRP is not decentralized like Bitcoin.'"); *id.* at 15 ("Plaintiff has a credibility problem[.]").  This approach completely undermines any possible utility of the brief. *See Jones*, 2020 WL 8920621, at *1 ("While this Court recognizes that '[t]here is no rule . . . that amici must be totally disinterested[,]' Plaintiffs' objection demonstrates that the Giffords Law Center's position should be more accurately termed friend to Defendant Xavier Becerra than a friend to the Court.").

**C.     The Motion for Leave is Substantively Misleading and Procedurally Improper**

The motion for leave and proposed amicus brief include multiple misleading statements and procedural improprieties.  This is reason alone to deny the amicus brief. *See, e.g.*, *David H. v. United States*, 135 Fed. Cl. 66, 70 (2017) (denying a motion for leave for "lack of candor"), *rev'd on other grounds*, 2023 WL 1944933 (Fed. Cir. Feb. 13, 2023).

---

[2] *See* @JohnEDeaton1, TWITTER (Nov. 12, 2020, 1:12 PM), https://twitter.com/JohnEDeaton1/status/1326996291373690882; @JohnEDeaton1, TWITTER (Nov. 2, 2020, 4:01 PM), https://twitter.com/JohnEDeaton1/status/1323415088754266118.

Proposed amici have been evasive and misleading about their membership and representation. On January 31, 2023, attorney Rebecca A. Bellow noticed an appearance on behalf of six non-parties: Jordan Deaton, James LaMonte, Tyler LaMonte, Mya LaMonte, Mitchell McKenna, and Kristiana Warner. Dkt. 198. The Court subsequently granted attorney John Deaton's *pro hac vice* application to represent these same six individuals with Ms. Bellow. Dkt. 203. The motion for leave, however, includes a proposed amici that has never noticed an appearance in this action (SpendTheBits, Inc.).

In addition, the motion states that proposed amici represent the interests of "75,890 XRP Holders," which the motion describes as a "known putative class." Dkt. 206 at 1. Indeed, the motion purports to be made on behalf of such "putative class." *Id.* But neither the motion nor the related proposed brief describe in anything other than vague terms who these XRP Holders are, what authority or conduct gives the six proposed amici the ability to represent these unnamed "XRP Holders," or what possible basis proposed amici have for describing these unnamed "XRP Holders" as a "putative class."[3] The "75,890 XRP Holders" appears to refer to submissions through an online Google form promoted by amici's counsel Mr. Deaton, where he collects names, email addresses, addresses, phone numbers, and places of residence under the rubric of "Contact Information for Class Action Lawsuit" for the apparent purpose of filing a class action lawsuit against the Securities and Exchange Commission.[4] Despite the conclusory assertions in the motion that "[p]roposed *amici* and the other 75,890 XRP holders, presently own XRP," the motion offers no evidence that the so-called XRP Holders qualify as members of Lead Plaintiff's proposed class or in any way share the interests Mr. Deaton purports to advance on their behalf in the proposed amicus brief. Indeed, Mr. Deaton even publicly admitted that some of this purported "putative class" of XRP Holders "don't hold XRP."[5]

---

[3] The proposed amicus brief references affidavits and other exhibits attached to a "Deaton Decl.," *see, e.g.*, Dkt. 206-1 at 16, but proposed amici did not file or serve any declaration or exhibits in conjunction with this motion.

[4] GOOGLE DOCS FORM, *Contact Information for Class Action Lawsuit*, available at https://docs.google.com/forms/d/e/1FAIpQLSeiZEAsfYAvQgYytwZ8ZcK2xLe7qlX3D9EB0-NUGIz3_-nARQ/viewform; @JohnEDeaton1, TWITTER (Dec. 21, 2021, 11:44 AM), https://twitter.com/JohnEDeaton1/status/1473378807046459393

[5] *See* @JohnEDeaton1, TWITTER (Dec. 21, 2021, 11:44 AM), https://twitter.com/JohnEDeaton1/status/1473378807046459393 ("[O]ver 62k #XRPHolders have joined to fight the @SECGov related to its regulatory overreach… Some don't hold XRP and have still joined.").

Similarly, a declaration submitted by SpendTheBits, Inc. in the SEC Action states that it has only "purchased a diminutive amount of XRP . . . in order to pay the essential XRPL wallet activation fee." SEC Action, Case No. 20-cv-1083-AT-SN, Dkt. 684-1 at 1 (S.D.N.Y.).

The motion also implies that the Southern District of New York in the SEC Action already granted amicus status to these 75,890 "XRP Holders," Dkt. 206 at 2 ("Because XRP Holders represent such a significant public interest, they were granted amici curiae status in" the SEC Action),[6] but that is not true. *See Securities and Exchange Commission v. Ripple Labs, Inc.*, Case No. 20-cv-1083-AT-SN, 2021 WL 4555352, at * 9 & n.1 (S.D.N.Y. Oct. 4, 2021) (explicitly stating that it was only granting amicus status to the six named individuals).

Notably, the motion does not even attempt to show that the six individuals and their counsel can represent any putative class as amici in this lawsuit. This is unsurprising given that, based on public information, most, if not all, of the proposed amici are either members of counsel's immediate family or have a close professional relationship with counsel. Jordan Deaton appears to be amici's counsel's daughter,[7] who solicited class members to sue the SEC;[8] Kristiana Warner is Mr. Deaton's girlfriend[9] and an associate at Mr. Deaton's firm;[10] Tyler LaMonte is a recent employee of his firm;[11]

---

[6] The motion defines XRP Holders as: "Jordan Deaton, James Lamonte, Tyler Lamonte, Mya Lamonte, Mitchell Mckenna, Kristiana Warner, SpendTheBits, Inc., and all other similarly situated XRP Holders (a known putative class of 75,890)." *Id.* 1.

[7] *See* @jordanmdeaton, TWITTER (Jun. 3, 2022), https://twitter.com/jordanmdeaton/status/1532727935907643392 (stating "Happy Birthday Dad!" with reference to Mr. Deaton's Twitter handle and Mr. Deaton's response: "Thank you to my favorite #XRPHolder").

[8] @jordanmdeaton, TWITTER (Mar. 4, 2021), https://twitter.com/JohnEDeaton1/status/1367459717140918273 (retweeting Mr. Deaton's link to the Google Docs Form soliciting "Contact Information for Class Action Lawsuit").

[9] *See* @WarnerKristiana, TWITTER (Jun. 19, 2022), https://twitter.com/WarnerKristiana/status/1538525507427368960/photo/2 ("Happy Father's Day @JohnEDeaton1! You are the best Daddy to your girls and the greatest Godfather to the XRP community Love you, babe!"); THE PROVIDENCE JOURNAL, *Lawyer Sues Barrington Over "Unlawful" Arrest* (Feb. 22, 2020), https://www.providencejournal.com/story/news/courts/2020/02/22/lawyer-sues-barrington-over-unlawful-arrest/1655717007/ (referring to Ms. Warner as Mr. Deaton's girlfriend).

[10] Deaton Law Firm, Team Profiles, *available at* https://deatonlawfirm.com/about/team-profiles/ (listing Kristiana Warner as an Associate Attorney).

[11] Tyler LaMonte Profile, LINKEDIN, *available at* https://www.linkedin.com/in/tylerlamonte/ (stating that Tyler LaMonte was a Bankruptcy Paralegal at Deaton Law Firm).

7

11309504v1/016433

and two others—James and Mya Lamonte—are this employee's father and sister.[12] These undisclosed relationships compound the suspect nature of amici's interest in participating in this action. *See, e.g.*, *Williams v. Apple, Inc.*, 338 F.R.D. 629 (N.D. Cal. 2021) (finding the proposed class representative was inadequate because there was a close familial bond between him and class); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003) (counsel's close friendship and business relationship to class representative created potential conflicts of interest preventing counsel from "fairly and adequately represent[ing] the class").

Further, the court in the SEC Action explicitly limited the six named individuals to presenting "legal as opposed to factual issues," 2021 WL 4555352, at *6, noting that "permitting Movants to present [evidence] would result in 'an end run around court-imposed limitations on the parties, including discovery restrictions [and] the rules of evidence.'" *Id.* at *5 (quoting *Portland Pipe Line Corp. v. City of S. Portland*, 2017 WL 79948, at *5 (D. Me. Jan. 9, 2017)). Yet, the proposed amicus brief attempts exactly this type of "end run" by marshalling pages of factual assertions that were not subject of discovery in this case. *See, e.g.*, Dkt. 206-1 at 4-8 (stating the purported "relevant factual background"). The court in the SEC Action has already determined this is improper: "An amicus who argues facts should rarely be welcomed." 2021 WL 4555352, at *5 (quoting *Strasser*, 432 F.2d at 569).

Proposed amici's lack of candor about the nature of the alleged class they "represent" and their legal representation is compounded by procedural improprieties. District courts look to the Federal Rules of Appellate Procedure for guidance regarding the admission of amicus briefs, *see Sweigert v. Cable News Network, Inc.*, 2022 WL 842322, at *8 & n.3 (E.D. Mich. Mar. 21, 2022), which proposed amici recognize, Dkt. 206 at 2. But proposed amici never filed a FRAP 29(a)(4)(E) statement, which indicates whether: "(i) a party's counsel authored the brief in whole or in part; (ii) a party or a party's counsel contributed money that was intended to fund preparing or submitting the brief; and (iii) a person—other than the amicus curiae, its members, or its counsel—contributed money that was

---

[12] REPORTER TODAY (EAST PROVIDENCE, ROHOBOTH, SEEKONK), *Family of Bears Father and two children from Seekonk are BSU students at the same time, and loving it* (Nov. 13, 2020), *available at* http://reportertoday.com/stories/family-of-bearsfather-and-two-children-from-seekonk-are-bsu-students-at-the-same-time-and,33287.

intended to fund preparing or submitting the brief and, if so, identifies each such person." The Court and the parties should not be left to guess who constitutes the amici, who represents them, and who actually stands behind their efforts.

### IV.   CONCLUSION

The proposed amici's motion for leave to file an amicus curiae brief should be denied as they impermissibly seek to assume the functions of a party and would only distract from the class certification issues presently before the Court.

Dated: February 24, 2023                      Respectfully submitted,

/s/ James Q. Taylor-Copeland
James Q. Taylor-Copeland
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4944
Facsimile: (619) 566-4341

/s/ Oleg Elkhunovich
Marc M. Seltzer
Steven G. Sklaver
Oleg Elkhunovich
Krysta Kauble Pachman
Nicholas N. Spear
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

*Counsel for Lead Plaintiff Bradley Sostack*

### ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

DATED: February 24, 2023                      /s/ Oleg Elkhunovich
Oleg Elkhunovich

11309504v1/016433