1   Marc M. Seltzer (54534)
    mseltzer@susmangodfrey.com
2   Steven G. Sklaver (237612)
    ssklaver@susmangodfrey.com
3   Oleg Elkhunovich (269238)
    oelkhunovich@susmangodfrey.com
4   Krysta Kauble Pachman (280951)
    kpachman@susmangodfrey.com
5   Nicholas N. Spear (304281)
    nspear@susmangodfrey.com
6   SUSMAN GODFREY L.L.P.
    1900 Avenue of the Stars, Suite 1400
7   Los Angeles, CA  90067-6029
    Telephone: (310) 789-3100
8   Facsimile: (310) 789-3150

9   James Q. Taylor-Copeland (284743)
    james@taylorcopelandlaw.com
10  Max Ambrose (SBN 320964)
    maxambrose@taylorcopelandlaw.com
11  TAYLOR-COPELAND LAW
    501 W. Broadway, Suite 800
12  San Diego, CA 92101
    Telephone: (619) 400-4944
13  Facsimile: (619) 566-4341

14  *Counsel for Lead Plaintiff Bradley Sostack*

15              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
16                      **OAKLAND DIVISION**

17  | In re RIPPLE LABS, INC. LITIGATION | Case No. 4:18-cv-06753-PJH (RMI) |
18  |  | Formerly Consolidated/Related Case No. 4:21-cv-06518 (Closed 9-27-21) |
19  |  | CLASS ACTION |
20  | This Document Relates to: | **REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
21  | All Actions | |
22  |  | DATE:   April 26, 2023 TIME:    1:30 p.m. |
23  |  | PLACE: Courtroom 3 – 3rd Floor 1301 Clay Street, Oakland, CA 94612 |
24  |  | JUDGE:  Hon. Phyllis J. Hamilton |
25  |  | Consolidated First Amended Complaint Filed:  March 25, 2020 |
26  |  | **FILED UNDER SEAL** |
27  |  | **[REDACTED]** |
28

1

## **TABLE OF CONTENTS**

2

**Page**

3    I.   INTRODUCTION ............................................................................................ 1

4    II.  PLAINTIFF'S PROPOSED CLASSES SATISIFY RULE 23(A) .................................. 1

5         A.   Plaintiff Can Represent Class Members Who Disagree with the Lawsuit .............. 1

6         B.   Plaintiff Can Adequately Represent All Purchasers of XRP .................................. 5

7         C.   Defendants' Attacks on Plaintiff's "Credibility" Should be Disregarded .............. 8

8    III. THE PROPOSED CLASSES SATISFY THE PREDOMINANCE REQUIREMENT ...... 9

9         A.   Defendants' Standing Arguments are Legally and Factually Flawed..................... 9

10        B.   Plaintiff's Proposed Classes are Not "Fail-Safe" Classes.................................... 11

11        C.   Plaintiff's Damages Methodology Can Be Applied to All Class Members........... 12

12   IV.  THE PROPOSED CLASSES SATISFY THE SUPERIORITY REQUIREMENT.......... 15

13   V.   PLAINTIFF'S STATE SECURITIES CLASS IS PROPER UNDER *MAZZA*................. 16

14   VI.  PLAINTIFF'S CLASS PERIOD IS APPROPRIATE........................................................ 20

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
4:18-cv-06753-PJH

11383392v1/016433

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alcantar v. Hobart Serv.*,
  2016 WL 6666809 (C.D. Cal. June 22, 2016) ........................................................................ 4

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975)................................................................................................. 6

*Centeno v. Dep't of Soc. & Health Servs.*,
  2015 WL 12670405 (W.D. Wash. June 9, 2015).................................................................. 5

*Clothesrigger, Inc. v. GTE Corp.*,
  236 Cal. Rptr. 605 (Ct. App. 1987)...................................................................................... 17

*Cummings v. Connell*,
  316 F.3d 886 (9th Cir. 2003)................................................................................................. 3

*Davidson v. Apple, Inc.*,
  2018 WL 2325426 (N.D. Cal. May 8, 2018) ........................................................................ 9

*Davy v. Paragon Coin, Inc.*
  2020 WL 4460446, (N.D. Cal. June 24, 2020) .............................................................. 19, 20

*Dean v. China Agritech*,
  2012 WL 1835708 (C.D. Cal. May 3, 2012) ...................................................................... 15

*Diamond Multimedia Sys., Inc. v. Superior Court*,
  19 Cal. 4th 1036 (1999) ...................................................................................................... 17

*Drake v. Morgan Stanley & Co.*,
  2010 WL 2175819 (C.D. Cal. Apr. 30, 2010) ...................................................................... 8

*Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*,
  657 F.2d 890 (7th Cir. 1981)................................................................................................. 1

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
  --- F.4th ----, 2023 WL 2506455 (2d Cir. Mar. 15, 2023) ................................................. 16

*Finkelstein v. Liberty Digital, Inc.*,
  2005 WL 1074364 (Del. Ch. Apr. 25, 2005) ...................................................................... 15

*Fleisher v. Phoenix Life Ins. Co.*,
  2013 WL 12224042 (S.D.N.Y. July 12, 2013) ..................................................................... 3

*Ford v. TD Ameritrade Holding Corp.*,
  995 F.3d 616 (8th Cir. 2021)............................................................................................... 11

*Guido v. L'Oreal, USA, Inc.*,
  2012 WL 2458118 (C.D. Cal. June 25, 2012) ...................................................................... 8

11383392v1/016433

*Hansberry v. Lee*,
  311 U.S. 32 (1940) ........................................................................................... 5

*Hocking v. Dubois*,
  885 F.2d 1449 (9th Cir. 1989) (en banc).......................................................... 7

*Hyland v. Navient Corp.*,
  48 F.4th 110 (2d Cir. 2022)............................................................................... 9

*In re Apple Inc. Device Performance Litig.*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) .......................................................... 18

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
  2013 WL 5789237 (C.D. Cal. Oct. 25, 2013) ................................................. 12

*In re Google Play Store Antitrust Litig.*,
  2022 WL 17252587 (N.D. Cal. Nov. 28, 2022)............................................... 20

*In re iPhone 4S Consumer Litig.*,
  2013 WL 3829653 (N.D. Cal. July 23, 2013) .................................................. 17

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
  2023 WL 1813530 (C.D. Cal. Feb. 7, 2023) ................................................. 2, 3

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*,
  318 F.R.D. 435 (D. Colo. 2015)................................................................. 12, 13

*In re Packaged Seafood Prod. Antitrust Litig.*,
  332 F.R.D. 308 (S.D. Cal. 2019), *aff'd Olean*, 31 F.4th 651 ......................... 19

*In re Potash Antitrust Litig.*,
  159 F.R.D. 682 (D. Minn. 1995)........................................................................ 3

*In re Spear & Jackson Sec. Litig.*,
  399 F. Supp. 2d 1350 (S.D. Fla. 2005) ........................................................... 15

*In re Teva Sec. Litig.*,
  2021 WL 872156 (D. Conn. Mar. 9, 2021)...................................................... 13

*Kamar v. RadioShack Corp.*,
  375 F. App'x 734 (9th Cir. 2010) .................................................................... 12

*Laumann v. Nat'l Hockey League*,
  105 F. Supp. 3d 384 (S.D.N.Y. 2015).............................................................. 2

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*
  2015 WL 9480475 (N.D. Cal. Dec. 23, 2015) .................................................. 5

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013)........................................................................... 10

*Malriat v. QuantumScape Corp.*,
  2022 WL 17974629 (N.D. Cal. Dec. 19, 2022) ............................................... 14

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
4:18-cv-06753-PJH

11383392v1/016433

*Marsh v. First Bank of Delaware*, 2014
  WL 2085199 (N.D. Cal. May 19, 2014) ............................................................... 20

*Matamoros v. Starbucks Corp.*,
  699 F.3d 129 (1st Cir. 2012) ............................................................................... 2, 3

*Mayfield v. Dalton*,
  109 F.3d 1423 (9th Cir. 1997).................................................................................. 5

*Mazza v. American Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)....................................................................... 16, 17, 19

*McArdle v. AT&T Mobility LLC*,
  2018 WL 6803743 (N.D. Cal. Aug. 13, 2018)......................................................... 8

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) ................................................................................................. 7

*N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*,
  2014 WL 1013835 (S.D.N.Y. Mar. 17, 2014) ....................................................... 13

*Nelson v. Int'l Paint Co.*,
  716 F.2d 640 (9th Cir. 1983).................................................................................. 18

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001).................................................................................. 11

*Norwood v. Raytheon Co.*,
  237 F.R.D. 581 (W.D. Tex. 2006) ......................................................................... 18

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
  2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ..................................................... 15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) (en banc) ........................................................... *passim*

*Owen v. Elastos Found.*,
  2021 WL 5868171 (S.D.N.Y. Dec. 9, 2021) ........................................................... 7

*Owen v. Punch Bowl Minneapolis, LLC*,
  2020 WL 8256371 (D. Minn. July 17, 2020)........................................................... 2

*Peterson v. Okla. City Hous. Auth.*,
  545 F.2d 1270 (10th Cir. 1976)................................................................................ 5

*Pino v. Cardone Cap., LLC*,
  55 F.4th 1253 (9th Cir. 2022), *cert. filed* ............................................................... 7

*Ruggles v. WellPoint, Inc.*,
  272 F.R.D. 320 (N.D.N.Y. 2011).............................................................................. 3

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016)............................................................................. 9, 12

iv

11383392v1/016433

*Schlaud v. Snyder*,
    785 F.3d 1119 (6th Cir. 2015).................................................................................. 5

*Se. Penn. Trans. Auth. v. Orrstown Fin. Servs. Inc.*,
    12 F.4th 337 (3d Cir. 2021)..................................................................................... 20

*Sec. & Exch. Comm'n v. NAC Found., LLC*,
    512 F. Supp. 3d 988 (N.D. Cal. 2021) ...................................................................... 4

*SEC v. Energy Grp. of Am., Inc.*,
    459 F. Supp. 1234 (S.D.N.Y. 1978)........................................................................... 4

*Sicav v. James Jun Wang*,
    2015 WL 268855 (S.D.N.Y. Jan. 21, 2015)............................................................ 15

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)................................................................................................. 11

*Stromberg v. Qualcomm Inc.*,
    14 F.4th 1059 (9th Cir. 2021) ................................................................................. 20

*Telco Grp., Inc. v. Ameritrade, Inc.*,
    2007 WL 203949 (D. Neb. Jan. 23, 2007) .............................................................. 11

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ............................................................................................ 11

*Utne v. Home Depot U.S.A., Inc.*,
    2022 WL 1443338 (N.D. Cal. May 6, 2022) ........................................................... 10

*Vasquez v. Leprino Foods Co.*,
    2020 WL 1527922 (E.D. Cal. Mar. 31, 2020) ........................................................ 20

*Vogt v. State Farm Life Ins. Co.*,
    963 F.3d 753 (8th Cir. 2020)..................................................................................... 3

*Warfield v. Alaniz*,
    569 F.3d 1015 (9th Cir. 2009)................................................................................... 4

*Williams v. Block*
    2022 WL 5294189 (S.D.N.Y., Aug. 15, 2022) ......................................................... 7

*Young v. Neurobrands, LLC*,
    2020 WL 11762212 (N.D. Cal. Oct. 15, 2020)........................................................ 20

*Zurich Am. Ins. Co. v. Kwan Wo Ironworks Inc.*,
    2022 WL 2981821 (N.D. Cal. July 28, 2022) ......................................................... 18

**Statutes**

15 U.S.C. § 77 ................................................................................................................... 4

Securities Act § 4 ............................................................................................................. 4

Securities Act § 11 ......................................................................................................... 13

11383392v1/016433

1

Securities Act § 12 ................................................................................................................ 13

2

**Rules**

3

Fed. R. Civ P. 23 ......................................................................................................... *passim*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
4:18-cv-06753-PJH

11383392v1/016433

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   <u>INTRODUCTION</u>

Defendants do not dispute that common issues predominate for **all** liability issues.   Nor could they.   Each proposed class member—including Plaintiff—purchased units of XRP.   Common evidence can establish that (a) XRP is a security under the objective *Howey* test, (b) Defendants solicitated the purchase of XRP, and (c) Defendants did not register XRP with any federal or state securities regulator.   Defendants nonetheless argue that certification should be denied, offering a hodgepodge of arguments premised on incorrect assertions of fact and inaccurate characterizations of law, including a meritless attack on Plaintiff's adequacy.   Such arguments—including Defendants' invention of non-existent conflicts and their unsupported and nonsensical position that a class cannot be certified if some potential class members disagree with the lawsuit—are exactly why courts view adequacy attacks like these, made by defendants who are interested in preventing anyone from suing them with extreme skepticism, as "it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house."   *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 895 (7th Cir. 1981).

The Court should certify the proposed federal and state securities classes.

## II.   <u>PLAINTIFF'S PROPOSED CLASSES SATISIFY RULE 23(A)</u>

Defendants do not dispute that Plaintiff's proposed classes satisfy Rules 23(a)(1) and (2), but argue that Plaintiff cannot satisfy Rules 23(a)(3) and (4) because Plaintiff is an inadequate class representative and his claims are atypical.   Opp. 8–19.   Defendants are wrong.

### A.   <u>Plaintiff Can Represent Class Members Who Disagree with the Lawsuit</u>

Defendants argue that Plaintiff has a conflict with putative class members who "do not agree with the fundamental premise of this case."   Opp. 9–14; *see also* Dkt. 206-1 at 9–11.[1]   But Plaintiff

---

[1] Plaintiff has opposed proposed amici's motion for leave to file an amicus brief, which is pending

cannot be deemed inadequate because some class members may prefer that securities law violations related to XRP go unchallenged.  Courts routinely hold that a class member's desire to let an interest in an illegal practice persist does not establish a "conflict" that defeats adequacy.  *See, e.g.*, *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) ("[A]n interest by certain putative class members in maintaining the allegedly unlawful policy is not a reason to deny class certification."); *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2023 WL 1813530, at *15–16 (C.D. Cal. Feb. 7, 2023) ("*In re NFL*") (granting certification and rejecting the argument that the plaintiff was inadequate where some class members would prefer an antitrust injury to persist); *Owen v. Punch Bowl Minneapolis, LLC*, 2020 WL 8256371, at *5 n.8 (D. Minn. July 17, 2020) ("There is no true conflict when some class members benefit from an illegal policy.").

*First*, there is no conflict because all class members, including Plaintiff, have the same claims for violation of federal and state securities laws.  *See In re NFL*, 2023 WL 1813530, at *15. Plaintiff is an adequate representative of these classes, even if some class members might wish to maintain the status quo because in their view it suits their interests.  *See Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 400 (S.D.N.Y. 2015) (rejecting adequacy argument because "it confuse[d] the question of whether a common injury unites the class with the distinct question of whether all class members agree about how best to *respond* to the injury.  It is the former, not the latter, that drives the Rule 23 analysis—and there is no question that here, a common injury exists in the form of diminished consumer choice."  (emphasis in original)).

*Second*, class members do not have a legal interest in a violation of the law.  For example, in *In re NFL*, certain commercial class members preferred the alleged anticompetitive conduct of

---

before the Court.  *See* Dkt. 207.  Plaintiff incorporates those arguments here, including that the proposed brief is largely fact and merits arguments inapplicable at class certification and that it misleadingly characterizes the composition and interests of proposed amici.  Plaintiff's further response to the proposed amicus brief in this reply is not a concession that the brief is proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

restricting access to out-of-market NFL games because it drove business to them.   2023 WL 1813530, at *15.   The court rejected this argument, holding that all class members had a common interest to seek relief from anti-competitive conduct, and the economic preference of certain class members to have the antitrust injury persist was insufficient to create a conflict.  *Id.*  Similarly,  in *In re Potash Antitrust Litigation*, the court noted that "an illegally controlled potash market tends to favor the long-term interests of several large members of the putative class" by "securing a long-term source of potash for their customers."   159 F.R.D. 682, 692 (D. Minn. 1995).   The court, however, found this alleged financial interest "[in]sufficient to prevent class certification" because "[t]his is not an interest the law is willing to protect."  *Id.*  So too here; the fact some putative class members may prefer that XRP not comply with the securities laws does not defeat adequacy.

In any event, Defendants' claims of financial catastrophe if the Court rules in Plaintiff's favor are pure speculation.   Defendants offer no factual basis, beyond citations to conclusory assertions from summary judgment amicus briefs filed in the SEC Action, to prove that any of these alleged harms will occur.   This too cannot defeat adequacy.  *See Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) ("[T]his circuit does not favor denial of class certification on the basis of speculative conflicts.");  *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 767 (8th Cir. 2020) (A "purported conflict [that] is entirely speculative" and "rests on 'uncertain predictions' . . . cannot serve as a basis to defeat class certification").   Putative class members who want to keep their XRP will have the ability to opt out.  *See Matamoros*, 699 F.3d at 139; *In re Potash*, 159 F.R.D. at 692; *Fleisher v. Phoenix Life Ins. Co.*, 2013 WL 12224042, at *12 & n.6 (S.D.N.Y. July 12, 2013).[2]

---

[2] Defendants and proposed amici argue that opting out will not resolve the concerns.  Opp. 14 n.10; Dkt. 206-1 at 15–18.  Plaintiff disputes this contention, but even if true, it is not a basis to deny certification.  *See Ruggles v. WellPoint, Inc.*, 272 F.R.D. 320, 338 (N.D.N.Y. 2011) ("[Differences of opinion do] not create a conflict sufficient to render the named representatives inadequate even where, as here, opting out of the class does not protect those with divergent opinions because the

3
11383392v1/016433

1    Equally speculative is Defendants' argument that some class members "could be exposed

2  to legal liability if Plaintiff's claims succeed." Opp. 11–12. Section 4 of the Securities Act includes

3  a number of exemptions to liability, including for all "transactions by any person other than an

4  issuer, underwriter, or dealer." 15 U.S.C. § 77d(a)(1). Defendants claim that some class members

5  "might be deemed" to be underwriters or dealers because the SEC has "taken an expansive view of

6  what constitutes a 'dealer.'" Opp. 12. But Defendants do not identify any class member who would

7  fall into these categories, cite any evidence that class members would have any actual risk of

8  liability, or identify any cases where securities claims were asserted against digital asset purchasers

9  unaffiliated with the issuer. Regardless, these concerns are based on the asserted effects of a merits

10  ruling that Defendants violated the law, not an order granting class certification.

11    Defendants' argument about the "differing expectations" of Plaintiff and putative class

12  members, Opp. 1, 12–14, is a red herring. Although buried in a footnote, Defendants concede, as

13  they must, that the *Howey* test is objective. *Id.* 13 n.8; *see Warfield v. Alaniz*, 569 F.3d 1015, 1020

14  (9th Cir. 2009); *Sec. & Exch. Comm'n v. NAC Found., LLC*, 512 F. Supp. 3d 988, 996 (N.D. Cal.

15  2021). Whether XRP is an investment contract does not turn on the purchasing decision or

16  subjective understanding of any individual class member, *see, e.g.*, *NAC Found.*, 512 F. Supp. 3d

17  at 996–97 (discussing the "likely view[s]" of an "objectively reasonable ABTC purchaser"), and

18  this liability issue can therefore be determined classwide. *See* Mot. 15–21.[3] For the same reason,

---

litigation will necessarily impact their rights. Adequacy is not undermined where the opposed class
members' position requires continuation of an allegedly unlawful practice." (citation omitted)).

[3] Defendants argue that "evidence of actual purchasers' beliefs" can bear on what is objectively
reasonable, Opp. 13 n.8, but any objectively reasonable determination will be based on findings
that are common to the class. *See, e.g.*, *Alcantar v. Hobart Serv.*, 2016 WL 6666809, at *4 (C.D.
Cal. June 22, 2016) (holding employees' subjective understandings of a companywide policy could
impact the merits but did not affect class certification); *cf. Warfield*, 569 F.3d at 1021–22 (although
the "focus" of the inquiry is objective, "the subjective intent of the purchasers may have some
bearing" on the merits inquiry); *SEC v. Energy Grp. of Am., Inc.*, 459 F. Supp. 1234, 1239 n.2
(S.D.N.Y. 1978) (considering customer views when examining whether an offering was a security).

4

11383392v1/016433

proposed amici's argument that the *Howey* test requires the analysis of the circumstances of each individual transaction, Dkt. 206-1 at 12–13, is simply incorrect.

Finally, Defendants' cited cases, Opp. 9 & n.5, are inapposite.  The court in *Lee v. Pep Boys-Manny Moe & Jack of California* rejected the defendants' adequacy arguments because "[a] difference of opinion . . . is not sufficient to defeat class certification."  2015 WL 9480475, at *9 (N.D. Cal. Dec. 23, 2015).  This case supports Plaintiff, not Defendants.  In Defendants' other cited cases, the illegality of the alleged conduct turned, in part, on putative class members' personal views of the conduct.  *See Hansberry v. Lee*, 311 U.S. 32, 44–46 (1940) (landowners who wanted to enforce racist covenants in agreements could not represent class members who believed the agreements were invalid); *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997) (servicemen who believed a DNA collection policy was a Fourth Amendment violation could not represent servicemen who consented to the policy); *Schlaud v. Snyder*, 785 F.3d 1119, 1122, 1128 (6th Cir. 2015) (plaintiffs who opposed a collective bargaining agreement requiring union dues could not represent union members who approved of the collective bargaining agreement); *Centeno v. Dep't of Soc. & Health Servs.*, 2015 WL 12670405, at *5 (W.D. Wash. June 9, 2015) (same); *Peterson v. Okla. City Hous. Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976) (tenants who opposed the security deposit terms in a lease could not represent tenants who approved of the security deposits).  Here, by contrast, Defendants' liability does not turn on the subjective views of class members.

## B.   Plaintiff Can Adequately Represent All Purchasers of XRP

Defendants also argue that Plaintiff has a conflict with putative class members who bought directly from Defendants because those class members have "stronger claims" than Plaintiff has. Opp. 14–17.  That argument is doubly mistaken: the premise is not true, and the conclusion does not follow from the premise.

11383392v1/016433

1     The premise is not true because Plaintiff is a direct purchaser of XRP.  Defendants do not

2     dispute that Plaintiff bought XRP from ███████████████████ on the Poloniex exchange

3     in January 2018.  Opp. 15 n.11; *see also* Mot. 12–13.  Defendants claim that it is "not even clear"

4     that the XRP Plaintiff bought from ███ came from Defendants, Opp. 15 n.11, but this is false.

5     ████████████████████████████████████████████████████████████████████████

6     ████████████████████████████████████

7     ██████████████████████████████████████████████ :

8     ████████████████████████████████████████████████

9     ████████████████████████████████████████████████

10    ████████████████████████████████

11    Dkt. 181-64 (Ex. 64) ¶ 3.  Thus, Plaintiff is a direct purchaser of XRP because he bought

12    Defendants' XRP from Defendants' ████████████.  Mot. 12–13.[4]

13    

14          Further, Defendants' conclusion does not follow its (flawed) premise because Plaintiff can

15    adequately represent all members of the proposed Federal Securities Class, regardless of whether

16    he or they purchased XRP directly from Defendants.[5]  All members of the Federal Securities Class

17    share the exact same theory of liability—Defendants solicited all class members' purchases of XRP,

18    an unregistered security.  Mot. 21–24.  Defendants argue that Plaintiff's federal claims are "weaker"

19    because direct purchasers have stronger claims than those who brought from third parties.  Opp.

20    16–17.  Putting aside that Plaintiff *is a direct purchaser*, the alleged distinction in strength of claims

21    is false, and certainly not a basis to find Plaintiff inadequate to represent the class.  *See Blackie v.*

22    *Barrack*, 524 F.2d 891, 908–11 (9th Cir. 1975) (rejecting conflict argument because it would be in

23    the interest of all class members to establish the merits of the shared claims).

24    

25    

26    _____

27    [4] Defendants argue that Plaintiff also purchased XRP from third parties, Opp. 15–16 & n.11, but that does not make him inadequate to also represent direct purchasers.

28    [5] Only the State Securities Class is limited to direct purchasers.  Mot. 10–11.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Courts, including this one, have held that a plaintiff can bring an unregistered securities claim against solicitor sellers. *See* Mot. 21–22 (citing Dkt. 85 (MTD Order) at 21–22 and *Owen v. Elastos Found.*, 2021 WL 5868171, at *15–16 (S.D.N.Y. Dec. 9, 2021)). The Ninth Circuit has also rejected similar "contract" and "privity" arguments to those that Defendants advocate here. *See Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1259–61 (9th Cir. 2022) (disagreeing that "a plaintiff must allege a relationship 'not unlike contractual privity' between purchaser and seller" for solicitor seller liability), *cert. filed*; *Hocking v. Dubois*, 885 F.2d 1449, 1457 (9th Cir. 1989) (en banc) (stating that an "investment contract" under *Howey* is a "contract, transaction **or scheme**," and the scheme "inquiry is not limited to the contract or other written instrument"). Defendants may argue otherwise at the merits stage, but, as they acknowledge, the "Court need not"—and in fact, should not—"resolve this issue until it is fully briefed." Opp. 16–17.[6]

For this reason, Defendants' sole cited case for the assertion that Plaintiff "has interests antagonistic to members of the class and may not vigorously prosecute their claims relative to his own," *Williams v. Block one*, 2022 WL 5294189 (S.D.N.Y. Aug. 15, 2022), is inapposite. Opp. 17. In *Block one*, the court determined that a portion of the plaintiff's digital asset purchases were ineligible under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), and that it would require a transaction-by-transaction analysis to determine which purchases were eligible. 2022 WL 5294189, at *5–8. The court held that the plaintiff could not adequately represent a settlement class that included class members with predominately eligible purchases, as the plaintiff may have been willing to accept a lower settlement value given his unique issues. *Id.* at *8. Here, there is no

25
26
27
28

---

[6] Defendants argue that "a buyer cannot recover against his seller's seller." Opp. 16 & nn.13–14. This argument is completely off point and applies only when the seller's seller is not soliciting the sale himself. *See Owen*, 2021 WL 5868171, at *14 (distinguishing "seller's seller" argument because "Section 12(a)(1) also extends liability to those who actively solicit the sale of securities with a motivation to serve his or her own financial interest or those of the securities owner").

7

11383392v1/016433

similar fundamental conflict.  Plaintiff brings the exact same claims, based on the exact same theories, utilizing the exact same common evidence, as all other Federal Securities Class members. And Defendants' (incorrect) merits disagreements with Plaintiff's legal theories are nothing like the clear, intractable, and fundamental legal issues uniquely facing the *Block one* plaintiff.

### C.  **Defendants' Attacks on Plaintiff's "Credibility" Should be Disregarded**

Defendants' contention that Plaintiff's profit expectations suffer from a "lack of credibility," Opp. 17–19, is both factually incorrect and legally irrelevant.

Plaintiff's statements in his ▮▮▮▮▮ were truthful and accurate.  Defendants argue that Plaintiff's trading patterns indicate he "acted as a day-trader without any expectation of profit based on Ripple's efforts," but that speculative claim is both misleading and legally irrelevant.  *See McArdle v. AT&T Mobility LLC*, 2018 WL 6803743, at *7 (N.D. Cal. Aug. 13, 2018) (rejecting Rule 23(a)(3) challenge because "AT&T's accusations against McArdle are too speculative to defeat typicality").  It is perfectly reasonable for Plaintiff to both rely on Defendants' efforts and trade on market volatility, including decreases in the price of XRP.  Thus, Defendants' cited cases, Opp. 18–19, which featured clear, non-speculative evidence of dishonesty, are all inapposite.[7]

The "credibility" argument is also irrelevant because the *Howey* analysis is objective and does not focus on the subjective understanding of any individual purchaser.  *See* Section II.A., *supra*.  Common evidence will establish that it was objectively reasonable for XRP purchasers to expect profits from Defendants' efforts because Defendants marketed XRP as an investment that would appreciate due to Defendants' work and efforts.  Mot. 7–8, 15–21.[8]  Moreover, whether

---

[7] *See Guido v. L'Oreal, USA, Inc.*, 2012 WL 2458118, at *4 (C.D. Cal. June 25, 2012) (testimony that plaintiff threw out bottles of an allegedly defective product was undercut by her production of pictures of those bottles after her deposition); *Drake v. Morgan Stanley & Co.*, 2010 WL 2175819, at *5 (C.D. Cal. Apr. 30, 2010) (listing a series of proven credibility issues).

[8] Defendants "dispute" that Plaintiff's allegations "even credibly suggest that Plaintiff entered into



Plaintiff is a "day trader" has no bearing on typicality.  Ripple's former Senior Manager of XRP markets, ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ Dkt. 181-18 (Ex. 18), testified that █████████████████████████████████ Ex. 70 (Samarasinghe Depo.) at 90:23–91:1.[9]  Plaintiff's claims are therefore typical of the class.

### III.      THE PROPOSED CLASSES SATISFY THE PREDOMINANCE REQUIREMENT

Defendants do not dispute that common issues predominate for all liability issues. Defendants nonetheless argue that the predominance is not established because individualized issues allegedly predominate for standing and damages.  Opp. 19–28.  These arguments fail.

### A.      Defendants' Standing Arguments are Legally and Factually Flawed.

Defendants do not dispute that only the named plaintiff needs to satisfy Article III standing at class certification.  *See Davidson v. Apple, Inc.*, 2018 WL 2325426, at *9 (N.D. Cal. May 8, 2018) (citing *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 n.6 (9th Cir. 2016)); *Hyland v. Navient Corp.*, 48 F.4th 110, 118 n.1 (2d Cir. 2022).  Instead, Defendants argue that under *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc), individualized issues predominate because "Plaintiff must show that XRP purchasers still hold XRP or sold at a loss, which cannot be done with common evidence."  Opp. 19–20.

*Olean* held that courts must determine whether "individualized questions relate[d] to the

_____

a common enterprise with Defendants."  Opp. 18.  But ███████████████████████████

██████████████████████████████████████████████. *See, e.g.*, Ex. 72 ████████

██████████████████████████████████████████████████████.

[9] *See also* Ex. 73 ███████████████████████) at RPLI_01017908 (████████████████████

█████████).  Defendants state that "Plaintiff refused nearly any discovery of his digital asset trading beyond XRP," Opp. 18 n. 15, ignoring that Magistrate Judge Illman *denied* Defendants' request to compel this evidence becuause it is "not at all relevant for its stated purpose" of "challenging [Plaintiff's] suitability as a class representative." Dkt. 194 at 3.  Arguments regarding Plaintiff's non-XRP trading activities should therefore be disregarded.

injury status of class members" would predominate over common questions.  31 F.4th at 668–69.

There is, however, no requirement that a plaintiff establish damages using common evidence.  *Id.*

at 669 ("'The presence of individualized damages issues' does not preclude a court from certifying

a class because '[c]lass-wide proof is not required for all issues[.]'").  This is consistent with the

long-standing rule that "damage calculations alone cannot defeat class certification."  *Leyva v.*

*Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013).  Courts applying *Olean* have found Rule

23 satisfied even where information about individual class members was needed to determine

damages.  *See, e.g.*, *Utne v. Home Depot U.S.A., Inc.*, 2022 WL 1443338, at *8 (N.D. Cal. May 6,

2022) ("Here, individualized inquiries into standing do not predominate over common questions.

Class members who are not entitled to damages may be weeded out at the claims phase, preventing

any individuals without standing from 'recover[ing] individual damages.'").

Here, as in *Utne*, any individualized issues related to damages will ***not*** predominate over

common issues.  Defendants' own expert admitted that ███████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████  Ex. 71 (Attari Depo.) at 78:12–17, 79:13–20.

Defendants claim that information about an individual class members' XRP transactions is

not "readily available" because Defendants do not have the data and there is no single third-party

data source that has it.  Opp. 21–22.  But Defendants ignore that this information is available from

exchanges and can also be obtained from class members during the claims process.  *See* Ex. 68

(Feinstein Depo.) at 53:7–13 ("Q.  So it sounds like you have in mind a claims process where the

claimant would come forward with the inputs needed to, certain to your methodology, to your

formula to determine profit or loss, is that correct?  A. That's typically how damages are ultimately

10

calculated in a class action securities case."); *accord* Ex. 67 (Feinstein Reply Decl.) ¶¶ 26–29; Ex.

69 (Azari Depo.) at 44:12–45:21, 53:1–12.  Defendants' own expert, in fact, acknowledged that

█████████████████████████████████.  *See* Ex. 71 (Attari Depo.) at 84:12–21.

Defendants' reliance on the "best execution" cases, *see* Opp. 22, is misplaced.  In these

cases, courts needed to determine whether there was a loss caused by a "better" price being

available from an alternative trading source.  *See Ford v. TD Ameritrade Holding Corp.*, 995 F.3d

616, 622 (8th Cir. 2021).  Predominance issues arose because liability and damages "depended on

the facts of each trade" and "the state of mind of each investor."  *See id.* at 621–23; *Newton v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187–89 (3d Cir. 2001); *Telco Grp., Inc.*

*v. Ameritrade, Inc.*, 2007 WL 203949, at *10 (D. Neb. Jan. 23, 2007).  Here, by contrast, liability

will be determined classwide using common evidence and damages can be determined using a

uniform methodology and four specific, discrete pieces of information available for each class

member.  Ex. 67 (Feinstein Reply Decl.) ¶¶ 26–29.[10]

### B.   Plaintiff's Proposed Classes are Not "Fail-Safe" Classes

Defendants contend that Plaintiffs' classes are improper "fail safe" classes because they are

limited to purchasers that are still holding XRP or have sold XRP for a loss.  Opp. 22–24.  This

argument is without merit.[11]  A "fail safe" class is a class "defined to include only those individuals

who were injured **by the allegedly unlawful conduct**."  *Olean*, 31 F.4th at 669 n.14.  Thus, the

hallmark of a "fail safe" is a class "defined so narrowly as to 'preclude[ ] membership unless the

liability of the defendant is established.'"  *Ruiz Torres*, 835 F.3d at 1138 n.7 (quoting *Kamar v.*

---

[10] Defendants' discussion of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) and *Spokeo, Inc.*
*v. Robins*, 578 U.S. 330, 341 (2016), *see* Opp. 20, is irrelevant because no members of the putative
class will be alleging a stand-alone statutory violation with no injury.  *See* Mot. 10–11, 32.

[11] Defendants arguments about XRP purchasers who sold their XRP for a gain, Opp. 21 & n.17, are
irrelevant because purchasers who sold for a gain are not part of the proposed classes.  *See also* Ex.
67 (Feinstein Reply Decl.) ¶¶ 39–42 (addressing the factual flaws in these arguments).

11

11383392v1/016433

*RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010)); *see* Opp. 23 (citing cases).

Plaintiff's classes are not "fail safe" classes because the class definitions do not turn on a liability finding that Defendants' conduct was unlawful. *See Olean*, 31 F.4th at 669 n.14. The determination of whether an XRP purchaser retained XRP or later sold it for a loss has nothing to do with the liability question in this case—whether Defendants offered or sold an unregistered security. In other words, a ruling that Defendants did not offer or sell an unregistered security (the liability question) would not affect the composition of the classes. *See Kamar*, 375 F. App'x at 736 (class definition was appropriate because if a class member was not legally wronged, RadioShack will be protected against liability to that person"); *cf. Olean*, 31 F.4th at 669 n.14 (explaining that "fail safe" classes are improper because "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment" (citation omitted)).

And even if the Court were to determine that the class definition is a "fail safe" class (it is not), that would not be a basis to "deny Plaintiff's motion." Opp. 24. The *Olean* court explained that when a class "potentially includes more than a de minimis number of uninjured class members," courts must conduct a Rule 23 analysis to determine whether individualized issues relating to standing and injury would overwhelm common ones. 31 F.4th at 669. As discussed in the previous section, issues related to the calculations of gains and losses can be calculated using a common methodology and uniform information requirements. *See* Section III.A., *supra*.

C.   **Plaintiff's Damages Methodology Can Be Applied to All Class Members.**

Case law is clear that individualized damages issues for Section 12(a) claims do not defeat predominance because damages are calculated using statutory formulas. *See* Mot. 25 (citing *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435, 447 (D. Colo. 2015), and *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2013 WL 5789237, at *6 (C.D. Cal. Oct. 25,

11383392v1/016433

2013)).[12]  Defendants do not address ***any*** of this case law or explain why this case should be treated differently than any other unregistered securities case.  Instead, they argue—without citation to or analysis of a single Section 12(a) case—that Plaintiff has failed to put forward a common methodology for calculating damages.  Opp. 24–28.  Not so.

*First*, Defendants argue that Dr. Feinstein's common methodology is "too vague and undefined for this class to be certified" because they claim his methodology "cannot be applied to the many ways in which XRP is exchanged."  Opp. 24–26.  But Dr. Feinstein's methodology is explicitly based on the Section 12(a) statutory formulas—his methodology translates the statutory formulas into arithmetic equations that can be uniformly and mechanically applied to all class members.  Ex. 62 (Feinstein Decl.) ¶¶ 16–26; *see Oppenheimer*, 318 F.R.D. at 447 (holding that the "calculation of damages is common to the Class" because "Plaintiff has proffered a damage report based on the statutory measure of damages" for the Section 12(a) claims).

This methodology is perfectly suitable for calculating damages for any of the "ways in which XRP is exchanged."  Defendants argue that Dr. Feinstein's model cannot be used for alleged "negotiated, bilateral agreements that contain provisions bearing on gain or loss."  Opp. 25.  At his deposition, Dr. Feinstein testified at length about how the statutory formula can be easily tailored to address the terms of any such contract for XRP.  Ex. 68 (Feinstein Depo.) at 114:21–120:22 ("And if these [hypothetical contracts] do exist, it's easy to modify this formula so it's all common for all class members, but takes into account very peculiar complexities such as you received your payment two different, on two different dates or multiple dates."); *see also* Ex. 67 (Feinstein Reply

---

[12] *See also In re Teva Sec. Litig.*, 2021 WL 872156, at *12 (D. Conn. Mar. 9, 2021) ("[T]he measure of damages for violations of Sections 11 and 12(a)(2) of the Securities Act does not depend on a classwide method of measurement because the damages for those violations are specified by statute."); *N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, 2014 WL 1013835, at *10 (S.D.N.Y. Mar. 17, 2014) ("Concerns about disparities in class members' damages are mitigated in 1933 Act cases because such 'damages reflect liability by statutory formula.'").

Decl.) ¶¶ 8–14.  Tellingly, Defendants do not identify *any* specific bilateral contracts that cannot be modeled and offer *zero* analysis beyond conclusory assertions.

Defendants also argue that Dr. Feinstein's "methodology does not map to purchasers who acquired XRP in exchange for services or tangible goods."  Opp. 26.  As a threshold matter, Defendants provide no explanation beyond pure speculation that issues related "tangible goods" will predominate over the myriad common liability and damages issues.  The argument is also false, as Dr. Feinstein explained.  *See* Ex. 68 (Feinstein Depo.) at 59:24–60:3 ("Q.  Can your common methodology be used to calculate the gain or loss experienced by a person who obtained XRP in exchange for a tangible good?  A.  Yes."); *id.* at 112:13–18; *accord* Ex. 67 (Feinstein Reply Decl.) ¶¶ 21–23.  Far from "retreat[ing] from his methodology," Opp. 26–27, Dr. Feinstein has made clear that his methodology can be applied to any XRP purchase, Ex. 67 (Feinstein Reply Decl.) ¶¶ 5–23.  And even if there were edge cases that could not be addressed commonly (there are none), the appropriate response is to refine the class, not deny certification.  *See Olean*, 31 F.4th at 669 n.14.

*Second*, Defendants argue that Dr. Feinstein's methodology is "silent" about how certain issues will be addressed on the merits.  Opp. 25–26.  But it is undisputed that any approach to these issues will be uniform and applied the same way to all members of the class.  *See* Ex. 67 (Feinstein Reply Decl.) ¶¶ 15–20 (addressing portfolio v. individual trade basis, the form of consideration used to calculate gains and losses, and exchange rates).  At the certification stage, the Court need not determine which approach is correct; it is sufficient that any approach to these issues will be classwide.  *See Malriat v. QuantumScape Corp.*, 2022 WL 17974629, at *12 (N.D. Cal. Dec. 19, 2022) ("[T]he court's task was to determine whether the expert report was capable of showing class-wide impact, not to reach a conclusion on the merits of the plaintiffs' claims." (cleaned up)).

*Finally*, the Court should reject Defendants' irrelevant attacks on Dr. Feinstein.  The cited cases have nothing to do with Section 12(a) or Dr. Feinstein's damages opinions in this matter.  *See*

14

1   *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio

2   Aug. 14, 2018) (damages under Rule 10b-5); *Sicav v. James Jun Wang*, 2015 WL 268855, at *3–4

3   (S.D.N.Y. Jan. 21, 2015) (explanation of consistent price decrease); *Dean v. China Agritech*, 2012

4   WL 1835708, at *3 (C.D. Cal. May 3, 2012) (event study); *Finkelstein v. Liberty Digital, Inc.*, 2005

5   WL 1074364, at *13–17 (Del. Ch. Apr. 25, 2005) (valuation related to interactive television).  And

6   these cases represent a drop in the bucket of the hundreds of cases in which Dr. Feinstein has served

7

8   as an expert.  Ex. 67 (Feinstein Reply Decl.) at 2 n.2.

9   **IV.     THE PROPOSED CLASSES SATISFY THE SUPERIORITY REQUIREMENT**

10          Defendants argue that Plaintiff has not satisfied Rule 23(b)(3)'s superiority requirement

11   because "this putative class action is inferior to the fully briefed SEC Action which will fairly and

12   efficiently adjudicate the controversy at issue here."  Opp. 30. ████████████████

13   ███████████████████████████████████████████████████████

14   ███████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████

17   ████████████████  Ex. 74 (████████████  at 6.  Defendants also ignore that the

18   "disgorgement of profits" sought by the SEC "is a different remedy with a different measure (unjust

19   enrichment) from the damages sought by" Plaintiff here.  *In re Spear & Jackson Securities*

20   *Litigation*, 399 F. Supp. 2d 1350, 1360 (S.D. Fla. 2005).  The Court, moreover, has already rejected

21   the argument that this case should be halted due to the SEC Action.  Dkt. 190 (Stay Mtn. Order).

22

23          Defendants' other superiority challenges fare no better.  Contrary to Defendants' assertions,

24   Opp. 29–30, there is no manageability issue here.  Plaintiff's notice expert, Cameron Azari, testified

25   that notice could be appropriately provided through a combination of individual data (if available)

26   and a media plan.  Ex. 69 (Azari Depo.) at 63:22–65:22; *see also id.* at 69:23–75:16 (providing an

27   in-depth explanation of how media plans are created).  In addition, Mr. Azari has identified

28

15

11383392v1/016433

manageable notice procedures in other similar digital asset class actions. *See* Dkt. 181-62 (Azari Decl. (Ex. 63)) ¶¶ 9–11; Ex. 69 (Azari Depo.) at 14:12–15:19. For example, in *Audet v. Garza, et al.*, contact information was available for some, but not all, potential class members, so the Court approved a notice plan that combined individual notice with a media plan targeting digital asset-related websites. Ex. 75 (*Audet* Azari Decl.) ¶¶ 9–18; Ex. 76 (*Audet* Order Approving Notice Plan). Defendants complain that Plaintiff has not defined the exact contours of the notice plan, but Defendants cite to no authority that requires a plaintiff to provide a full-fledged notice plan **before** the Court issues a ruling on class certification. *See Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, --- F.4th ----, 2023 WL 2506455, at *5 (2d Cir. Mar. 15, 2023) ("The only relevant inquiry is whether determinations as to class membership are 'objectively *possible*.'" (emphasis in original)).

Finally, Defendants' argument that a "large faction [of putative class members] has a strong interest in *not* becoming part of Plaintiff's class," Opp. 29 (emphasis in original), fails for the same reasons discussed previously. *See* Section II.A., *supra*.

## V.    PLAINTIFF'S STATE SECURITIES CLASS IS PROPER UNDER *MAZZA*

Defendants' only unique argument against the State Securities Class is that it fails under *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). Opp. 31–34. Under *Mazza*, the plaintiff only needs to show "that California has significant contact or significant aggregation of contacts to the claims of each class member" to ensure that the application of California law is constitutional. 666 F.3d at 589–90 (internal quotation marks omitted). The burden then shifts to the defendant to demonstrate "that foreign law, rather than California law, should apply to class claims" under the "three-step governmental interest test." *Id.* at 590.[13]

---

[13] The steps are: (1) "whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different"; (2) "if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances

Defendants' *Mazza* arguments are meritless.  *First*, the Court already held that Plaintiff could bring California securities claims on behalf of out-of-state purchasers because he "adequately alleged that defendants offered to sell XRP in California."  Dkt. 85 (MTD Order) at 28–29.  This is consistent with California law.  *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1065 (1999) (holding that California's securities laws reach "out-of-state purchasers and sellers of securities" and are "not limited to transactions made in California").  Plaintiff's opening motion explained in detail the common evidence that will establish that Defendants engaged in a California-based multimedia solicitation scheme to market XRP as an investment to all putative class members.  Mot. 27–28; *see also id.* 4–9, 15–21.  This evidence is consistent with the Court's prior order and *Diamond*, as well as the many other cases finding the extraterritorial application of California law constitutionally permissible where the defendants were based at least in part California, the unlawful conduct emanated from California, and a portion of the putative class was located in California.  *See, e.g.*, *Mazza*, 666 F.3d at 590; *Clothesrigger, Inc. v. GTE Corp.*, 236 Cal. Rptr. 605, 608 (Ct. App. 1987).  It is Defendants, not Plaintiff, who conflate extraterritoriality and choice-of-law, Opp. 31, as Defendants own cited case makes clear.  *See In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *7–9 (N.D. Cal. July 23, 2013) (rejecting a defendant's standing argument because it was focused on choice of law, not extraterritoriality, and, citing *Diamond*, holding that out-of-state plaintiffs could bring claims under California law).

*Second*, Defendants fail to meet their burden of establishing a conflict between California and the laws of foreign countries.  Defendants claim that XRP is not a security under the laws of

_____

of the particular case to determine whether a true conflict exists"; and (3) "if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied."  *Id.*

five countries, Opp. 32, but do not cite a ***single*** statute, case, authoritative text, or treatise in support. Instead, Defendants cite to: (a) a "Consultation and call for evidence" issued by the UK Treasury, Dkt. 201-56 (Ex. 55); (b) an article from "The Block" online magazine discussing the views of the Japanese Financial Services Agency (Japan's analog to the SEC), Dkt. 201-57 (Ex. 56); and (c) a Forbes online opinion piece stating, without citation, that "[f]inancial regulatory authorities" in Japan, Singapore, the U.K., Switzerland, and the UAE" have said XRP is not a security, Dkt. 201-58 (Ex. 57).  None of these documents has the force of law, and Defendants' evidence is a far cry from what Defendants' cited cases (Opp. 32) analyzed to establish a conflict.  *See In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1169 (N.D. Cal. 2019) (defendant submitted over 39 declarations on foreign law, including declarations from foreign law experts identifying specific conflicting foreign procedures); *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 600 (W.D. Tex. 2006) (considering declaration from an expert on the variations of foreign law).

    *Third*, Defendants similarly fail to meet their burden of establishing a conflict with other states.  The ***only*** alleged conflict Defendants identify are that (a) Kansas does not automatically assume an in-state defendant made its offers in that state, and (b) that some states have different repose or limitations period.  Opp. 32–33.  Defendants do not even attempt to argue that they have a corporate (or any) presence in Kansas, *id.* 33, so Kansas law on offers made by in-state entities is completely irrelevant.  Furthermore, courts have long held that where a California defendant is being sued in California, only "California has an interest in having its statute of limitations applied." *Zurich Am. Ins. Co. v. Kwan Wo Ironworks Inc.*, 2022 WL 2981821, at *3 (N.D. Cal. July 28, 2022) (quoting *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 644–45 (9th Cir. 1983)).  And even if limitations or repose were a conflict, they could be easily managed because any applicable repose or limitations periods could be applied to individual class members after liability issues (which Defendants do not claim conflict) were resolved.  *See In re Packaged Seafood Prod. Antitrust Litig.*, 332 F.R.D.

18

308, 338 (S.D. Cal. 2019), *aff'd Olean*, 31 F.4th 651 (finding no "material" conflict from differing "temporal limitations" because these could be taken into account in a classwide approach).[14]

*Fourth*, even if Defendants established a conflict (they have not), Defendants fail to meet their burden of establishing that a true conflict exists (step 2) or that another jurisdiction has a greater interest than California (step 3). Defendants claim, with no analysis, that foreign countries' interests in "harness[ing] the benefits of new technologies" would be "severely impaired if California law were applied." Opp. 32. This is not sufficient for the Court to examine "each jurisdiction's interest in the application of its own law ***under the circumstances of the particular case***." *Mazza*, 666 F.3d at 590. And other than stating that Kansas has an interest in how in-state entities are analyzed and that differing repose or limitation periods have the "potential" to bar claims, Opp. 31, Defendants make no effort to provide sufficient information to allow the Court to "carefully evaluate[] and compare[] the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *Mazza*, 666 F.3d at 590.

*Finally*, Defendants' cited cases, Opp. 32–34, do not counsel otherwise. In *Davy v. Paragon Coin, Inc.*, the court granted certification of a nationwide settlement class bringing federal securities claims but denied certification on the state claims. 2020 WL 4460446, at *2–7 (N.D. Cal. June 24, 2020). Because the defendant was in default, the Court looked to whether the plaintiff had established that California law applied, and held that he did not meet this burden because the plaintiff conceded that conflicts between state laws existed and California's interest was predicated on the location of the defendant's headquarters. *Id.* at *3–5. *Davy*'s analysis is distinguishable because there is no similar default issue here, there are no material conflicts identified, and

---

[14] The Court or jury will already be deciding the repose issue in conjunction with the federal claims.

California's interest is predicated on an extensive, multimedia marketing scheme emanating from California to pitch XRP as an investment.  Mot. 4–9, 15–21, 27–28.  Defendants' other cases, Opp. 34, are non-securities cases that all included material conflicts of law that have no similar analog here.  *See Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1068–74 (9th Cir. 2021) (*Illinois Brick* repealer v. non-repealer states); *Marsh v. First Bank of Delaware*, 2014 WL 2085199, at *5–6 (N.D. Cal. May 19, 2014) (finding significant differences in state tort laws); *Young v. Neurobrands, LLC*, 2020 WL 11762212, at *9 (N.D. Cal. Oct. 15, 2020) (same).

## VI.    PLAINTIFF'S CLASS PERIOD IS APPROPRIATE

Plaintiff's class period starts on May 3, 2017.  This is one year before the filing date of *Coffey v. Ripple Labs, Inc.*, Case No. 4:18-cv-03286-PJH, Dkt. 1-1 (N.D. Cal.).  Although *Coffey* was dismissed, it was related to this action at **Defendants'** request, *id.*, Dkts. 30–31, and relation-back has been deemed appropriate in similar circumstances, *see Se. Penn. Trans. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 344–52 (3d Cir. 2021) (analyzing relation back in the context of repose).  In any event, Defendants concede that a date of July 3, 2017—one year before the filing of *Greenwald v. Ripple Labs, Inc., et al.*, Dkt. 2-1 at 38—would be appropriate.  Opp. 35.

Defendants also argue, with no analysis, that "to the present" is an improper ending date. Opp. 35.  But courts in this district routinely certify classes that run through the present.  *See, e.g.*, *In re Google Play Store Antitrust Litig.*, 2022 WL 17252587, at *15 (N.D. Cal. Nov. 28, 2022).  In any event, Defendants' argument that the class period should end on the date of the filing of the consolidated complaint (August 5, 2019), Opp. 35, is meritless; Defendants' sole cited case limited the class period to the date of the class certification order.  *See Vasquez v. Leprino Foods Co.*, 2020 WL 1527922, at *9 (E.D. Cal. Mar. 31, 2020).

11383392v1/016433

Dated: March 31, 2023                    SUSMAN GODFREY L.L.P.

By */s/ Marc M. Seltzer*
   Marc M. Seltzer (54534)
   Steven G. Sklaver (237612)
   Oleg Elkhunovich (269238)
   Krysta Kauble Pachman (280951)
   Nicholas N. Spear (304281)
   SUSMAN GODFREY L.L.P.
   1900 Avenue of the Stars, Suite 1400
   Los Angeles, CA  90067-6029
   Telephone: (310) 789-3100
   Facsimile: (310) 789-3150
   mseltzer@susmangodfrey.com
   ssklaver@susmangodfrey.com
   oelkhunovich@susmangodfrey.com
   kpachman@susmangodfrey.com
   nspear@susmangodfrey.com

   James Q. Taylor-Copeland (284743)
   Max Ambrose (SBN 320964)
   TAYLOR-COPELAND LAW
   501 W. Broadway, Suite 800
   San Diego, CA 92101
   james@taylorcopelandlaw.com
   maxambrose@taylorcopelandlaw.com
   Telephone: (619) 400-4944
   Facsimile: (619) 566-4341

   *Counsel for Plaintiff Bradley Sostack*

21
REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION
4:18-cv-06753-PJH

11383392v1/016433

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28