# EXHIBIT 67

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re RIPPLE LABS INC. LITIGATION | Case No. 4:18-cv-06753-PJH |

REBUTTAL EXPERT REPORT OF

PROFESSOR STEVEN P. FEINSTEIN, PH.D., CFA

March 31, 2023

# TABLE OF CONTENTS

I. SCOPE OF PROJECT AND REPORT ...................................................................................1

II. RESPONSES TO DEFENDANTS' OPPOSITION ..............................................................1

    A. The Classwide Damages Methodology Can Accommodate Any Alleged "Bilateral Contracts" ...............................................................................................2

    B. Whether Loss is Calculated on a Portfolio Basis or Individual Basis Changes Nothing About the Common Applicability of the Damages Model ..........................................................................................................................4

    C. The Common Methodology Can Apply to Any Form of Consideration Used to Purchase or Sell XRP ...............................................................................5

    D. The Common Damages Methodology Accommodates Trades Made with Tangible Goods ........................................................................................................6

III. CRITIQUE OF THE ATTARI REPORT ..............................................................................7

    A. The Data for Calculating Damages is Available ....................................................7

    B. Price Volatility is Not a Limitation to the Damages Calculation ...........................8

    C. XRP Being Traded on Multiple Exchanges is Not a Limitation to the Damages Methodology ............................................................................................9

    D. Dr. Attari's Gain and Loss Analysis Demonstrates the Feasibility of Calculating Damages and Proves Nothing About Actual Damages to XRP Investors .................................................................................................................10

        1. Dr. Attari's Analysis Demonstrates that the Calculation of Damages is Straightforward .........................................................................10

        2. Dr. Attari's Analysis is Speculative and Unreliable ..................................11

IV. LIMITING FACTORS AND OTHER ASSUMPTIONS ...................................................12

## I. SCOPE OF PROJECT AND REPORT

1. In my 18 November 2022 expert report ("Feinstein Report"), I identified, explained, and detailed the common methodology to compute damages for claims under Section 12(a)(1) of the Securities Act and California Corporations Code § 25503. On 20 January 2023, I was deposed in connection with the Feinstein Report ("Feinstein Deposition").

2. I am now asked by Susman Godfrey LLP and Taylor-Copeland Law, co-counsel for Lead Plaintiff Bradley Sostack, to respond to (a) arguments made in Defendants' Opposition to Lead Plaintiff's Motion for Class Certification, filed 3 February 2023 (the "Opposition"), and (b) the opinions in the Expert Report of Dr. Mukarram Attari, dated 3 February 2023 (the "Attari Report"), submitted by Defendants in conjunction with their Opposition.

3. Documents that I reviewed and relied upon in preparing this report in addition to those already cited in the Feinstein Report are listed in Exhibit-1. My credentials and compensation are presented in the Feinstein Report, as is a list of testimony that I provided during the four years preceding that report. The additional testimony I provided subsequent to the submission of the Feinstein Report, is presented in Exhibit-2.

4. I reserve the right to amend, refine, or supplement my analyses and opinions in the event that I become aware of additional information, evidence, arguments, or analyses that bear on my work in this matter.

## II. RESPONSES TO DEFENDANTS' OPPOSITION

5. Defendants make arguments in the Opposition about my opinions and testimony. These arguments ignore or misstate my opinions and testimony, or are misguided and irrelevant. Contrary to Defendants' contention, all issues they raise can be accommodated commonly for all class members in the damages model I presented in the Feinstein Report. None of Defendants' arguments is a valid reason to change my opinion that damages for claims under Section 12(a)(1) of the Securities Act and California Corporations Code §25503 can be computed using a common methodology for all class members.

6. Defendants' overarching contention is that the damages model set forth in the Feinstein Report is "vague and undefined" and "cannot be applied to the many ways in which XRP is exchanged."[1] My damages methodology, however, is derived from the statutory formulas in Section 12(a)(1) of the Securities Act and California Corporations Code §25503. Defendants' criticism therefore appears to be with the statutes themselves, not my methodology.[2]

7. Moreover, each of the four specific issues Defendants identify are accommodated by the common methodology set forth in the Feinstein Report. I address each issue below.

### A. The Classwide Damages Methodology Can Accommodate Any Alleged "Bilateral Contracts"

8. Defendants argue that the damages methodology in the Feinstein Report "does not account for the billions of XRP that financial institutions have purchased from Ripple to use in cross-border transactions using Ripple's ODL product," which "occurred pursuant to negotiated, bilateral agreements that contain provisions bearing on gain or loss."[3] As an initial matter, Defendants have not identified even a single example of a bilateral contract that the damages model cannot accommodate. Nor do they explain how any such contract might complicate the computation of damages with the common methodology or otherwise render a classwide methodology impossible.

9. The damages methodology does compute damages for parties who engaged in cross-border transactions using the ODL product. All purchases and sales of XRP, even if conducted with a bilateral contract, are associated with transaction prices and specified quantities. Thus, the bilateral contract transactions, far from complicating the computation of damages, can be addressed using the common damages methodology. The damages methodology computes damages for bilateral contract transactions in the

---

[1] Opposition, pp. 24–28.

[2] Defendants state that I have presented "similarly deficient formulas" to "[m]ultiple courts." Opposition, pp. 27–28. Defendants blatantly mischaracterize these opinions and my work. Regardless, Defendants ignore that I am routinely qualified in securities cases as a damages expert and my opinions have been accepted and relied upon by well over 150 courts over more than 20 years.

[3] Opposition, p. 25.

same straightforward manner that the methodology computes damages commonly for all other purchasers of XRP.

10. For example, Defendants' counsel asked at my deposition about a hypothetical bilateral contract that "provided some payment to the seller after the time of sale."[4] As I explained: "And if these hypotheticals do exist, it's easy to modify this formula so it's all common for all class members, but takes into account very peculiar complexities such as you received your payment two different, on two different dates or multiple dates."[5]

11. I illustrate this simple modification below. The formula in the Feinstein Report for the class members who sold XRP is:

**Damages for class members who purchased and later sold XRP =**

    **+ [a] $ amount paid at time of purchase**
    **+ [b] interest income earned on initial investment using an appropriate interest rate**
    **- [c] $ amount received at time of sale**

12. To accommodate a bilateral contract that included payments at multiple times, "at the time of" in [c] would just need to be changed to "from":

**Damages for class members who purchased and later sold XRP =**

    **+ [a] $ amount paid at time of purchase**
    **+ [b] interest income earned on initial investment using an appropriate interest rate**
    **- [c] $ amount received from sale**

13. A declaration from Ripple's president Monica Long that was submitted with the Opposition states "customers using ODL entered into negotiated, bilateral agreements with Ripple that contain provisions to minimize the customer's financial risk of holding XRP after purchase and before the XRP is used as a bridge asset to facilitate the

---

[4] Feinstein Deposition, at 117:19–23.

[5] Feinstein Deposition, at 120:17–22.

customer's cross-border transaction."[6] Ms. Long does not identify any specific bilateral contract or provide any additional detail regarding these provisions, but it appears that she is describing a provision that would provide compensation to a customer using XRP as a bridge asset if the customer's sale price of XRP was lower than the customer's purchase price. Such compensation would be part of the "amount received from sale" and therefore would be addressed using the classwide methodology shown above.

14. In my experience, bilateral contracts are present in many securities class actions. Just as in any other securities class action, the parties here would work with the claims administrator to design a claim form that could be applied to the ways that XRP was bought and sold, claimants would use that from to provide their price and quantity data, and the claims administrator would input that data into the appropriate damages formula to calculate each class member's damages.

### B. Whether Loss is Calculated on a Portfolio Basis or Individual Basis Changes Nothing About the Common Applicability of the Damages Model

15. The Opposition argues that "Dr. Feinstein is silent on the fundamental question of whether 'loss' is calculated on a portfolio basis or based on individual trades."[7] The Opposition provides the following example:

> "For example, assume that a person buys 10 XRP and sells that 10 XRP on two different days, the first resulting in a $2 loss but the second in a $3 gain, resulting in an overall gain of $1. Whether such a person would be a putative class member is unclear from Dr. Feinstein's methodology."

16. Defendants' criticism is misguided. The question of whether losses for a particular investor should be netted against profits is a legal question, outside the scope of expert economic analysis. Both the loss and the profit would be computed accurately by the common damages model, but whether or not they should be netted against each other when realized in a single portfolio is a legal determination. I understand that precedent cases have held for each of the two alternatives – netting and no netting. Either

---

[6] Declaration of Monica Long in Support of Opposition to Lead Plaintiff's Motion for Class Certification, dated 3 February 2023, p. 2.

[7] Opposition, p. 25.

alternative could be applied classwide by the claims administrator using the common damages methodology described in the Feinstein Report.

17. In other words, whatever decision the Court makes with respect to netting will be applied to all investors. The same formula would determine how much loss or profit every pair of buy and sell trades produced.

### C. The Common Methodology Can Apply to Any Form of Consideration Used to Purchase or Sell XRP

18. The Opposition argues that there is a "problem presented by putative class members who bought and sold XRP in 'trading pairs' with other digital assets, for example, buying XRP with Bitcoin (or Ethereum), just as Plaintiff did."[8] But the fact that XRP may have been purchased with or sold for other digital assets is not an issue because the value of those digital assets can be straightforwardly converted to U.S. dollars. Thus, the methodology described in the Feinstein Report, which uses the "$ amount paid at the time of purchase" and the "$ amount received at the time of sale," can be applied to all class members regardless of the original form of the consideration.

19. Defendants and Dr. Attari argue that gains and losses should be calculated in the units of the consideration, not U.S. dollars. For example, Defendants argue that if a purchaser buys XRP for 1 Bitcoin and sells it for 1.1 Bitcoin, that purchaser should be deemed to have a gain (of 0.1 Bitcoin), even if the value of Bitcoin in U.S. dollars had fallen substantially between the purchase and sale such that the investor suffered a dollar loss.[9] From the standpoint of an economist, I disagree.[10] But even if the Court required damages to be calculated using the units of the consideration, damages could still be calculated classwide.[11] The methodology is common for all class members, and the language used to describe the formula can be simply modified to make the implementation clear:

---

[8] Opposition, p. 25.

[9] Opposition, pp. 25–26.

[10] *See*, *e.g.*, Feinstein Deposition, at 56:24–57:24.

[11] Feinstein Deposition., at 139:2–24.

**Damages for class members who purchased and later sold XRP =**

+ [a] amount of consideration paid at time of purchase
+ [b] interest income earned on initial investment using an appropriate interest rate
- [c] amount of consideration received from sale

20. Defendants also argue that "Dr. Feinstein's model is silent on the question of how to convert the value of digital assets into US dollars."[12] But it is undisputed that any approach to converting the value of digital assets into U.S. dollars would be common to the class. For example, Defendants' Opposition notes two approaches, both of which could be applied classwide. Under the first, the exchange rate applied to any given transaction for any class member would be the Bloomberg exchange rate as of 4pm on the date of the transaction. Under the second, the exchange rate applied to any given transaction for any class member would be the exchange rate at the time of the transaction used by the digital asset exchange where the transaction occurred. Whether one approach is better than the other is a different question that whether the approaches could be applied classwide. Tellingly, Defendants do not argue in their Opposition that the approach to determining the exchange rate is incapable of being applied classwide.

### D.  The Common Damages Methodology Accommodates Trades Made with Tangible Goods

21. Defendants' final concern is that my "methodology does not map to purchasers who acquired XRP in exchange for services or tangible goods."[13] Defendants explain that such purchasers may include "those who bought XRP and exchanged it for groceries, a plane ticket or other goods."[14]

22. First, Defendants cite to no evidence of any widespread use of XRP as an exchange for

---

[12] Opposition, p. 26.

[13] Opposition, p. 26.

[14] Opposition, p. 26.

"groceries, a plane ticket or other goods."[15] The criticism, based only on a questionable hypothetical and vague, substantiated examples, is misguided.

23. Second, the purchase or sale of XRP using tangible goods can be accommodated using the methodology set forth in the Feinstein Report. There exists ample data to value goods and services in terms of US dollars. One role of a currency such as US dollars is to provide a common measure of value. "Groceries, a plane ticket, or other goods," are transacted daily in US dollars; it would be straightforward to convert goods and services into US dollar values based on prevailing price data available from numerous common, reputable data sources. The parties can work with the claims administrator to collect any relevant data as part of the claims process. Thus, like the purchase or sale of XRP for digital assets, the purchase or sale of XRP with tangible goods can be addressed using the common methodology.

## III. CRITIQUE OF THE ATTARI REPORT

24. I have also been asked to critique the report of Dr. Attari. As an initial matter, nowhere in Dr. Attari's report does he contest the existence, commonality, or applicability of the damages methodology I put forth in the Feinstein Report. Rather, Dr. Attari challenges only the feasibility of acquiring the data necessary to calculate gains and losses. As I explain below, contrary to Dr. Attari's unsubstantiated doubts, the necessary data, or reasonable approximations, are readily available and can be used to calculate damages using the methodology described above and in the Feinstein Report.

### A. The Data for Calculating Damages is Available

25. The Attari Report states:

> "To determine the gain or loss for an XRP purchaser, one must know (i) quantities of XRP purchased and sold, (ii) the purchase price and the currency used for purchase, (iii) the sale price and the currency received via sale, and (iv) the currency exchange rate applicable to the purchase and sale

---

[15] Opposition, p. 26.

7

> currencies. In the absence of detailed records that are not available, it is not possible to determine the gain or loss experienced by an XRP purchaser."
> **Attari Report, ¶23.**

26. I agree with Dr. Attari that these are the components to calculate damages for purchasers of XRP. These components would be input into the classwide damages methodology set forth in the Feinstein Report and described above to calculate whether a purchaser earned a gain (in which the purchaser would not be in the class), or a loss (in which case damages for the purchaser would be the amount of the loss plus interest).

27. However, Dr. Attari's assumption that these component data would not be available in this case is baseless. It is my understanding and experience that such data is regularly provided by class members during the claims administration process. It is a common exercise in claims administration to solicit claims data from class members, including the quantity of the asset purchased, the purchase price or currency used for purchase, and the sale price or currency used for sale.

28. It is also my understanding that class members regularly retrieve their transaction records from the brokerages and exchanges that execute their trades. My understanding is that similar data is available from digital asset exchanges such as Coinbase and Binance.US.

29. Moreover, Dr. Attari expresses unfounded concern that it would be difficult to obtain component data on the "currency exchange rate applicable to the purchase and sale." It is my understanding that digital asset exchanges typically record such information at the instant a customer executes a transaction. In the event that such data is unavailable, reasonable proxies exist. For instance, data on exchange rates applicable to the purchase and sale currencies are readily available from generally accepted and widely-used data sources such as Bloomberg, Eikon, and FactSet.

    **B.    Price Volatility is Not a Limitation to the Damages Calculation**

30. Dr. Attari's report contains irrelevant information on the volatility of the price of XRP. The report contains a section titled "XRP's Price is Volatile" that details the high and low price of XRP over the proposed class period. For example, the report states: "The minimum reported price of XRP during the Analysis Period was $0.05 and the maximum reported price of XRP during the Analysis Period was $3.29, when intraday high and low

prices for the XRP-USD pair are considered."[16] As a preliminary matter, Dr. Attari acknowledges that detailed intraday exchange rate data is indeed readily available.

31. Dr. Attari contends that calculating damages is onerous owing to the volatility of XRP prices, but he is wrong. The volatility of XRP prices is irrelevant to whether damages can be calculated. Dr. Attari explains that four pieces of information are needed to determine gains and losses for an XRP purchaser, and volatility was not one of those variables.[17] Despite whatever the volatility for XRP may have been, detailed intraday price data is available, as Dr. Attari acknowledges. Consequently, the computation of damages using the common methodology is not onerous, and it certainly is not impossible, given any level of XRP volatility.

### C. XRP Being Traded on Multiple Exchanges is Not a Limitation to the Damages Methodology

32. Dr. Attari's report also notes that prices of XRP can diverge across exchanges.[18] The fact that different exchanges can quote different prices has no bearing on whether a common methodology can be used to calculate damages for all class members.

33. It is normal in securities markets for assets to have divergent execution prices for the same asset at approximately the same time when the asset is sold on multiple exchanges or other trading platforms.[19] This creates no problem in the computation of damages, because the damages formula uses *actual* execution prices, which are provided by class members during the claims administration process.

34. As Dr. Attari acknowledged, determining whether a class member's investment in XRP resulted in a gain or loss can be determined using the damages methodology I presented, and the four specific pieces of information described above. Notwithstanding that different exchanges may have quoted different prices, the actual price information for any

---

[16] Attari Report, ¶18.

[17] Attari Report, ¶23.

[18] Attari Report, ¶¶15-16.

[19] *See*, e.g., "The 'Actual Retail Price' of Equity Trades," by Christopher Schwarz, et al., September 14, 2022.

claimant's transactions is provided by the claimant during the claims process.[20] Dr. Attari's concern is unfounded.

### D. Dr. Attari's Gain and Loss Analysis Demonstrates the Feasibility of Calculating Damages and Proves Nothing About Actual Damages to XRP Investors

#### 1. Dr. Attari's Analysis Demonstrates that the Calculation of Damages is Straightforward

35. In his report, Dr. Attari wishes to show that a damages calculation has many complications that would make it infeasible. Yet his report immediately contradicts itself by computing, with ease, exactly the required calculations of damages for hypothetical sellers of XRP.

36. Specifically, the report calculates whether a *hypothetical* seller of XRP would have received a gain or loss had they held XRP over various holding horizons, defined as the number of days between purchase and sale. His analysis uses XRP prices from a firm called CryptoCompare that collects digital asset prices and exchange rates from many different digital assets exchanges. The analysis computes hypothetical gains and losses for XRP transactions for three different units of exchange: the US dollar (USD), Bitcoin (BTC), and Ether (ETH).[21] Dr. Attari calculates hypothetical gains and losses during an analysis period between May 3, 2017 to November 17, 2022.

37. This analysis highlights the ease of calculating damages. For example, consider the fourth input into a damages calculation, "(iv) the currency exchange rate applicable to the purchase and sale currencies." To compute gains and losses, Dr. Attari's analysis uses the value of the exchange currencies obtained from CryptoCompare combined with assumptions about holding periods of XRP. Dr. Attari's work shows that for the actual computation of damages, exchange rate data is readily available. And even if data from one specific source may not be available, reasonable proxies exist for the computation of

---

[20] Reasonable approximations may also be appropriate where actual data is not available.

[21] A damages calculation is not limited to these three exchange currencies but can be calculated for any currency, or for that matter, any asset. Dr. Attari's own report cites having information on 223 currencies that could be used to purchase or sell XRP, illustrating the availability of this information, should it be required to calculate damages.

damages under the common methodology.

38. If an analysis of gains and losses was feasible for Dr. Attari using a publicly available data source, such calculations will be even easier if and when *actual* transaction records are produced during the claims process.

### 2. Dr. Attari's Analysis is Speculative and Unreliable

39. Dr. Attari's report says nothing about whether actual XRP investors suffered losses. His purported analysis of gains and losses on XRP is merely *hypothetical*; it is not based on the actual XRP trading activities of potential claimants.

40. His approach has no factual basis because, first, Dr. Attari's analysis does not include trading volume, and therefore, it does not measure the number of XRP transactions that resulted in gains or losses nor the size of gains and losses. Dr. Attari admitted that his analysis did not take into account trading volume.[22]

41. Second, Dr. Attari's analysis uses arbitrary *hypothetical* holding horizons for investors of XRP. Dr. Attari's report does not describe any analysis of any actual XRP trading data, nor does it cite to any evidence or restrictions that would limit purchasers to these holding periods.

42. On account of these deficiencies, Dr. Attari's purported analysis cannot be used to support that any XRP — let alone a lot of XRP — was sold for a gain.

---

[22] Attari Deposition, at 142:3-11.

11

**IV.      LIMITING FACTORS AND OTHER ASSUMPTIONS**

43.     This report is furnished solely for the purpose of court proceedings in the above referenced matter and may not be used or referred to for any other purpose. The analysis and opinions contained in this report are based on information available as of the date of this report. I reserve the right to supplement or amend this report, including in the event additional information becomes available.

Steven P. Feinstein, Ph.D., CFA

**Exhibit-1**

**Documents and Other Information Considered
In Addition to Those Cited in the Feinstein Report**

- Expert Report of Professor Steven P. Feinstein, Ph.D., CFA, dated 18 November 2022.
- Videotaped Deposition of Steven P. Feinstein, dated 20 January 2023.
- Expert Report of Dr. Mukarram Attari, dated 3 February 2023.
- Videotaped Deposition of Mukarram Attari, Ph.D., dated 8 March 2023.
- Defendants' Opposition to Lead Plaintiff's Motion for Class Certification, dated February 3, 2023.
- Declaration of Monica Long in Support of Opposition to Lead Plaintiff's Motion for Class Certification, dated 3 February 2023.
- Schwarz, Christopher, Brad Barber, Xing Huang, Philippe Jorion, and Terrance Odean "The 'Actual Retail Price' of Equity Trades," 14 September 2022.
- [POLO_SOSTACK_00000004_CONFIDENTIAL]
- Sample of Transaction Records Produced by Coinbase Global, Inc.
- Sample of Transaction Records Produced by Poloniex LLC.
- Sample of Transaction Records Produced by Bittrex, Inc.
- Sample of Transaction Records Produced by Binance Holdings Ltd.
- *Securities and Exchange Commission v. Ripple Labs, Inc., Bradley Garlinghouse, and Christian A. Larsen*, Case No.: 1:20-cv-10832-AT-SN, Order, dated 6 March 2023.
- Expert Rebuttal Report of Daniel R. Fischel, dated 12 November 2021.
- Expert Rebuttal Report of Allen Ferrell, Ph.D., dated 4 October 2021.
- Rebuttal Expert Report of Allen Ferrell, Ph.D., dated 12 November 2021.
- Any other documents cited in the report.

**Exhibit-2**

**Steven P. Feinstein, Ph.D., CFA**
**Testimony Subsequent to the Feinstein Report**

In Re Synchrony Financial Securities Litigation
Case No. 3:18-cv-01818-VAB
United States District Court
District of Connecticut
Deposition Testimony
December 2022

In Re Ripple Labs Inc. Litigation
Case No. 4:18-cv-06753-PJH
United States District Court
Northern District of California
Deposition Testimony
January 2023

In Re Kirkland Lake Gold LTD. Securities Litigation
Case No. 20-cv-04953
United States District Court
Southern District of New York
Deposition Testimony
March 2023