# EXHIBIT 68

```
 1                                    VOLUME: I
                                      PAGES:   1 to 148
 2                                    EXHIBITS:  9 to 10
 3
              UNITED STATES DISTRICT COURT
 4           NORTHERN DISTRICT OF CALIFORNIA
                    OAKLAND DIVISION
 5
 6      Civil Action No. 4:18-cv-06753-PJH
 7                                            )
        In Re:                                )
 8      RIPPLE LABS, INC.                     )
        LITIGATION                            )
 9                                            )
        _____         )
10                                            )
                                              )
11      This Document Relates To:             )
                                              )
12      ALL ACTIONS                           )
                                              )
13
14            VIDEOTAPED DEPOSITION OF STEVEN P.
15       FEINSTEIN, called as a witness on behalf of
16       the Defendants, pursuant to the applicable
17       provisions of the Federal Rules of Civil
18       Procedure, before Jeanette N. Maracas,
19       Registered Professional Reporter and Notary
20       Public in and for the Commonwealth of
21       Massachusetts, at the Offices of Morgan,
22       Lewis & Bockius, One Federal Street, Boston,
23       Massachusetts, on Friday, January 20, 2023,
24       commencing at 9:41 a.m.
25
                                                Page 1
```

```
 1         APPEARANCES:
 2
                SUSMAN GODFREY, LLP
 3              By: Nicholas N. Spear, Esq.
                1900 Avenue of the Stars
 4              Los Angeles, CA 90067
                For the Lead Plaintiff.
 5              Nspear@susmangodfrey.com
 6
                KING & SPALDING, LLP
 7              By: Andrew Michaelson, Esq.
                By: Luke N. Roniger, Esq. (Texas)
 8              By: Jared Lax, Esq. (via Zoom)
                1185 Avenue of the Americas
 9              New York, NY 10036
                For the Defendants.
10              Amichaelson@kslaw.com
                Lroniger@kslaw.com
11
12              Shawn Budd, Videographer.
13
       ALSO PRESENT VIA ZOOM:
14
                Ana Guardado, Esq., Ripple Labs, Inc.
15
16
17
18
19
20
21
22
23
24
25
```

```
 1   of some debate that has, in my opinion,      10:59:19
 2   no bearing on my opinions.  It's not         10:59:21
 3   something I wrote about in my report or      10:59:23
 4   expressed as an opinion.  There are          10:59:26
 5   representations and allegations from both    10:59:34
 6   sides in this case about what XRP was        10:59:37
 7   used for and how it would be used and why    10:59:41
 8   it had value, whether the ledger was         10:59:45
 9   centralized or decentralized, for example,   10:59:47
10   but none of that had any bearing on my       10:59:51
11   opinions.                                    10:59:53
12 Q. So whether XRP has utility or not have any  10:59:54
13   bearing on your opinion?                     11:00:05
14      MR. SPEAR: Objection, scope.              11:00:06
15 A. Well, my opinion as spelled out in this     11:00:07
16   report is that there's a common method for   11:00:10
17   computing damages for all class members.     11:00:14
18   The common method is consistent with         11:00:19
19   plaintiff's theory of liability, and I lay   11:00:22
20   out what that method is.  That is really     11:00:27
21   what I wrote about in this report, and so    11:00:33
22   specific idiosyncracies of XRP versus        11:00:37
23   other crypto digital assets did not matter.  11:00:41
24   As I sit here now, that's my thinking.       11:00:46
25 Q. Sitting here today, do you have an          11:00:49
```
Page 50

```
 1   understanding as to whether a use of XRP     11:00:58
 2   could impact calculation of profit or        11:01:06
 3   loss made by someone who owns it?            11:01:11
 4 A. Well, it could certainly impact the profit  11:01:16
 5   or loss that was realized, but it would      11:01:18
 6   not impact the formula used for calculating  11:01:20
 7   the profit or loss and the damages.          11:01:23
 8 Q. Sitting here today, do you know whether     11:01:26
 9   XRP is traded pursuant to any bilateral      11:01:32
10   contracts?                                   11:01:40
11      MR. SPEAR: Objection to form.             11:01:41
12 A. What do you mean by "bilateral contracts"?  11:01:42
13 Q. A contract between two parties to buy or    11:01:47
14   sell an asset.                               11:01:49
15 A. Some trading took place that way, is my     11:01:50
16   understanding.                               11:01:54
17 Q. So you are aware that some XRP exchanged    11:01:54
18   hands pursuant to bilateral contracts?       11:01:59
19 A. Well, we usually call that in finance an    11:02:03
20   over-the-counter transaction, and my         11:02:05
21   understanding is there were some             11:02:07
22   over-the-counter transactions.               11:02:09
23 Q. Where XRP is exchanged pursuant to an       11:02:12
24   over-the-counter transaction, can profit or  11:02:19
25   loss be calculated pursuant to a common      11:02:20
```
Page 51

```
 1   methodology?                                 11:02:24
 2 A. Yes.                                        11:02:25
 3 Q. Does that methodology need to take into     11:02:25
 4   account the contractual terms that are       11:02:28
 5   expressed in the bilateral contract?         11:02:31
 6 A. Just the prices and the quantities and the  11:02:33
 7   times.  Prices, quantities, the form of      11:02:35
 8   the consideration, the time the transaction  11:02:39
 9   took place is all that you would need.       11:02:41
10 Q. So you need information contained in the    11:02:43
11   contract to perform that calculation,        11:02:52
12   correct?                                     11:02:55
13      MR. SPEAR: Objection.                     11:02:55
14 A. No, just the standard facts and details     11:02:57
15   that describe any transaction, the same      11:02:59
16   common information that would commonly be    11:03:01
17   supplied by any class member for purposes    11:03:04
18   of calculating that class member's damages.  11:03:07
19 Q. Could the contract, though, supply, for     11:03:10
20   example, the price?                          11:03:12
21 A. Like I said, price would need to be known.  11:03:15
22   In any damage calculation in any class action 11:03:18
23   litigation, you need to know prices.         11:03:21
24   Sometimes you -- my understanding is that    11:03:26
25   prices, price data for a claimant's          11:03:31
```
Page 52

```
 1   transactions is supplied by the claimant     11:03:36
 2   to the claims administrator, and whether     11:03:38
 3   that price is documented in an exchange or   11:03:42
 4   brokerage confirmation versus some other     11:03:48
 5   form doesn't matter for purposes of applying 11:03:52
 6   the formula.                                 11:03:57
 7 Q. So it sounds like you have in mind a claims 11:03:58
 8   process where the claimant would come forward 11:04:11
 9   with the inputs needed to, certain to your   11:04:14
10   methodology, to your formula to determine    11:04:19
11   profit or loss, is that correct?             11:04:23
12 A. That's typically how damages are ultimately 11:04:26
13   calculated in a class action securities case. 11:04:28
14 Q. So turning to Exhibit 10 here, your report, 11:04:38
15   I'd refer you to Page 4, you express your    11:04:50
16   conclusion which is I think what you're      11:04:54
17   referring to, you opine here on Paragraph 16, 11:04:58
18   Page 4, the damages can be computed using    11:05:03
19   a common methodology for all class members   11:05:11
20   and the common classwide methodology for     11:05:16
21   determining damages for all XRP purchasers   11:05:21
22   involves the straightforward application of  11:05:26
23   statutory arithmetic formulas?               11:05:30
24 A. Yes.                                        11:05:34
25 Q. Sir, are you opining -- you're opining that 11:05:35
```
Page 53

14 (Pages 50 - 53)

```
 1   damages can be computed using a common        11:05:47
 2   methodology, correct?                          11:05:51
 3   A. Yes.                                        11:05:51
 4   Q. Are you opining that they can be computed   11:05:52
 5   using common evidence?                         11:05:56
 6   A. I think "evidence" has a specific legal     11:05:58
 7   meaning, and I'm not a lawyer.  So if you      11:06:00
 8   mean data, that the same data, the same        11:06:05
 9   type of data is needed from each claimant,     11:06:11
10   that's true, the same type of data, and I      11:06:13
11   mentioned already what that data would be.     11:06:17
12   "Evidence" is a legal term, that I can answer  11:06:20
13   the question if you explain it better.         11:06:22
14   Q. Got it.  Well, I guess what I'm hearing you 11:06:24
15   say is that the claimant would need to come    11:06:28
16   forth with the information concerning their    11:06:30
17   purchase or sale in order for the calculation  11:06:32
18   to be run?                                     11:06:36
19   A. That's one way to do it.  There are other   11:06:37
20   ways to calculate damages, but to apply the    11:06:39
21   common formula that's in my report, one would  11:06:42
22   need price and quantity data for purchases     11:06:45
23   and sales, if there was a sale for anybody     11:06:50
24   whose damages are going to be calculated,      11:06:56
25   so it's common data and it's common formulas   11:06:59
                                                    Page 54
```

```
 1   that are used.                                 11:07:03
 2   Q. So you need the price data and you need     11:07:03
 3   the quantity data?                             11:07:10
 4   A. Right, how much did the person pay and      11:07:11
 5   when did they pay it and how much XRP did      11:07:15
 6   they receive, and the same thing on the        11:07:21
 7   sale, if there was a sale, or we would need    11:07:24
 8   to know that there was no sale.                11:07:32
 9   Q. Is any other data needed aside from the     11:07:34
10   price data and quantity data?                  11:07:38
11   A. I said price data, price, quantity, both at 11:07:40
12   the time of sale and the time, time of         11:07:45
13   purchase and time of sale information as to    11:07:47
14   whether or not there was a sale because        11:07:50
15   there may not have been, the form of the       11:07:53
16   consideration paid.  That's it.  Wait.         11:07:57
17   Right, that's it.  That's what's in the        11:08:09
18   formula.                                       11:08:11
19        Again, if there was -- the example        11:08:13
20   I gave in the interrogatory did not apply      11:08:18
21   interest that could have been earned, the      11:08:25
22   opportunity interest on the consideration,     11:08:27
23   but if one were to include the interest, you   11:08:31
24   would also need guidance from the court or     11:08:34
25   agreement among the parties as to what         11:08:40
                                                    Page 55
```

```
 1   interest rate should be applied.               11:08:42
 2   Q. Anything else?                              11:08:44
 3   A. The formula is on Page 5.  Those are the    11:08:50
 4   arguments of the formula that we just          11:08:50
 5   covered, so no.                                11:08:56
 6   Q. You mentioned that you need information as  11:08:56
 7   to whether there had been a sale.  What did    11:08:59
 8   you mean by that?                              11:09:02
 9   A. Well, you would need to know.  I mean, the  11:09:02
10   class members are people who purchased and    11:09:04
11   then sold XRP and sustained a loss.  These    11:09:08
12   are the proposed class members, or those      11:09:12
13   who still own XRP, they purchased it and      11:09:16
14   still own it.  So notice that Paragraph 19    11:09:19
15   has a formula for one and 20 has got the      11:09:23
16   adaptation of that same formula for the       11:09:28
17   other, so you need to know whether they       11:09:30
18   still own XRP or not.                         11:09:32
19   Q. I see.  So the information as to whether   11:09:33
20   there has been a sale is important to know    11:09:40
21   which, whether they're in Paragraphs 19 or    11:09:43
22   20?                                           11:09:45
23   A. Right.                                     11:09:48
24   Q. Okay.  And then you said you would need to 11:09:48
25   know the form of consideration paid.  What    11:09:50
                                                   Page 56
```

```
 1   did you mean by that?                         11:09:52
 2   A. Was Bitcoin tendered for the XRP or was    11:09:53
 3   it Tether or U.S. dollars, and you need to    11:10:01
 4   know that so that you can translate the       11:10:03
 5   consideration, you can value the              11:10:04
 6   consideration at the time of the              11:10:06
 7   transactions.                                 11:10:07
 8   Q. If someone paid Bitcoin, used Bitcoin to   11:10:08
 9   purchase XRP, wouldn't the value of the       11:10:17
10   consideration paid be the amount of Bitcoin   11:10:22
11   they paid for the XRP?                        11:10:25
12   A. It would be the value of the Bitcoin paid. 11:10:27
13   Q. Why not just the -- so the value of the    11:10:29
14   Bitcoin?                                      11:10:32
15   A. The formula, the statute says consideration 11:10:34
16   with interest thereon.  The word              11:10:37
17   "consideration" I guess can either mean       11:10:42
18   the form of the consideration or the value    11:10:45
19   of the consideration, and I think from the    11:10:46
20   context it's pretty clear that it's the       11:10:47
21   value of the consideration, so that would     11:10:50
22   be dollars, how many dollars were those       11:10:52
23   Bitcoin worth at the time the XRP was         11:10:54
24   purchased.                                    11:10:57
25   Q. Okay.  So let's, we'll break this down a   11:10:58
                                                   Page 57
```

15 (Pages 54 - 57)

### Page 58

```
 1   little bit.  It was helpful to hear your        11:11:04
 2   explanation.                                    11:11:06
 3         Going back to Paragraph 16, you           11:11:07
 4   express that your opinion here relates to a     11:11:12
 5   common classwide methodology for determining    11:11:16
 6   damages for all XRP purchasers.  What does      11:11:18
 7   it mean to purchase XRP?                        11:11:26
 8         MR. SPEAR:  Objection to form.            11:11:28
 9   A. It's almost a philosophical question.  To    11:11:32
10   pay a counterparty and receive XRP, quid pro    11:11:37
11   quo in exchange for that payment.               11:11:44
12   Q. So if you receive XRP as a gift, are you a   11:11:51
13   purchaser of XRP?                               11:11:59
14         MR. SPEAR:  Objection, calls for a        11:12:00
15   legal conclusion.                               11:12:01
16   A. I would have to say I don't know.  That's a  11:12:03
17   legal determination.                            11:12:06
18   Q. Can your methodology apply to individuals    11:12:07
19   who obtained XRP via gift?                      11:12:11
20   A. I'm not sure.  That's something I would have 11:12:22
21   to think about.                                 11:12:25
22   Q. Do you have any understanding as to whether  11:12:26
23   Ripple has employees?                           11:12:28
24   A. I'm sure they do have employees.             11:12:32
25   Q. To the extent a Ripple employee receives     11:12:34
```

### Page 59

```
 1   XRP as a form of their compensation, are        11:12:37
 2   they a purchaser of XRP?                        11:12:43
 3         MR. SPEAR:  Objection, calls for          11:12:45
 4   a legal conclusion.                             11:12:46
 5   A. Again, that does sound like -- the answer    11:12:47
 6   to that question must be covered somewhere      11:12:50
 7   in the law, and I'm not a lawyer.  I can        11:12:53
 8   answer economic questions.  I don't think       11:12:57
 9   that is an economic question, so I think        11:13:00
10   I should just say I don't know for sure.        11:13:03
11   I don't want to say, give an answer that's      11:13:04
12   contrary to established law, case law or        11:13:06
13   statute.  I think the case law and statute      11:13:10
14   should speak for itself and legal experts       11:13:12
15   can decide that.                                11:13:14
16   Q. Can the common methodology that you propose  11:13:15
17   in your opinion be applied to those who         11:13:20
18   acquire XRP as compensation for their work?     11:13:24
19   A. I think it can.                              11:13:28
20   Q. Do you have an understanding as to whether   11:13:31
21   someone could sell a tangible good like a       11:13:46
22   cup of coffee in exchange for XRP?              11:13:51
23   A. I think that's possible.                     11:13:56
24   Q. Can your common methodology be used to       11:14:06
25   calculate the gain or loss experienced by       11:14:09
```

### Page 60

```
 1   a person who obtained XRP in exchange for       11:14:14
 2   a tangible good?                                11:14:19
 3   A. Yes.                                         11:14:20
 4   Q. Just to be clear on the scope of your        11:14:20
 5   opinion, it sounds like it is not part of       11:14:35
 6   the scope of your opinion who is or who         11:14:41
 7   is not a purchaser of XRP?                      11:14:43
 8   A. That's correct.                              11:14:48
 9   Q. So you're not opining on who is or is not    11:14:48
10   a purchaser of XRP, correct?                    11:14:54
11   A. Correct.                                     11:14:56
12   Q. Does your opinion encompass the              11:14:56
13   identification of people who are purchasers     11:15:01
14   of XRP?                                         11:15:05
15   A. How is that different from the previous      11:15:06
16   question?                                       11:15:09
17   Q. The first question is more of a conceptual   11:15:10
18   question of like categorically speaking,        11:15:15
19   who would count or not in the determination     11:15:18
20   of who is a purchaser of XRP.  The second       11:15:20
21   is actually like identifying the class          11:15:21
22   members.                                        11:15:23
23   A. No.  I haven't been asked to identify class  11:15:24
24   members and nothing about that is expressed     11:15:26
25   in my report.                                   11:15:28
```

### Page 61

```
 1   Q. Okay.  Does your opinion encompass price     11:15:29
 2   correlation between XRP and any other           11:15:35
 3   digital asset?                                  11:15:37
 4   A. What do you mean by "correlation"?           11:15:39
 5   Q. Whether the price or value of XRP is         11:15:41
 6   correlated with movements in prices of          11:15:44
 7   other digital assets.                           11:15:46
 8   A. I have expressed that to apply the formula,  11:15:48
 9   one should convert whatever the form of         11:15:53
10   the consideration was to the value of the       11:15:57
11   consideration.  So exchange rates and           11:15:59
12   valuations are relevant to apply the common     11:16:04
13   methodology commonly for all class members,     11:16:09
14   but correlation usually means movement          11:16:12
15   over time, and that I haven't expressed         11:16:15
16   anything about movement over time.              11:16:18
17   Q. Okay.  Yes, that's what I was asking about,  11:16:20
18   whether the price of XRP correlates over        11:16:24
19   time with the price of digital assets, not      11:16:27
20   something that's the subject of your opinion,   11:16:31
21   correct?                                        11:16:32
22   A. Say that again, please?                      11:16:33
23   Q. It's fair to say that your opinion does not  11:16:35
24   encompass whether the price of XRP correlates   11:16:40
25   with the price of any other digital asset       11:16:44
```

```
 1    of XRP, that you would need to see the        01:26:38
 2    contract in order to calculate that           01:26:43
 3    purchaser's gain or loss?                     01:26:46
 4          MR. SPEAR: Objection, incomplete        01:26:48
 5    hypothetical. Objection, calls for            01:26:49
 6    speculation.                                  01:26:51
 7    A. I really think my answer has to be I don't 01:26:52
 8    know. It can. It might not. I can imagine     01:26:59
 9    hypotheticals where it matters, the details   01:27:03
10    of the contract, and I can imagine            01:27:04
11    hypotheticals where it doesn't or I wouldn't. 01:27:07
12    If the contract -- certainly it's always      01:27:15
13    possible using publicly available data to     01:27:23
14    calculate the value of the XRP that's being   01:27:27
15    conveyed at a particular point in time.       01:27:30
16    Whether there's a contract that includes      01:27:36
17    other transactions simultaneously, like some  01:27:37
18    sort of put option, might make a difference   01:27:41
19    or might not in terms of measuring            01:27:45
20    consideration paid and value received.        01:27:47
21    Q. So referring to your formula in Paragraph 19, 01:27:51
22    you start with a dollar amount paid at time   01:27:58
23    of purchase, you add interest income earned   01:28:01
24    at an appropriate interest rate and then you  01:28:06
25    subtract dollar amount received at time of    01:28:08
                                              Page 114
```

```
 1    sale, correct?                                01:28:11
 2    A. Right.                                     01:28:12
 3    Q. What if the contract called for that seller 01:28:13
 4    to receive some additional dollar amount      01:28:15
 5    later in time --                              01:28:20
 6          MR. SPEAR: Objection.                   01:28:21
 7    Q. -- would that factor into --would it be    01:28:21
 8    appropriate to factor in that subsequent      01:28:24
 9    payment into that person's gain or loss?      01:28:26
10          MR. SPEAR: Objection, incomplete        01:28:30
11    hypothetical. Objection, calls for            01:28:31
12    speculation.                                  01:28:33
13    A. I'm trying to mentally picture this contract 01:28:33
14    you're describing. Can you say it again?      01:28:36
15    Q. Yes. Assume there's a contract pursuant    01:28:42
16    where someone buys XRP, but the contract      01:28:46
17    provides that if they sell for a loss or a    01:28:50
18    loss of certain magnitude, they'll be made    01:28:53
19    whole to some degree.                         01:28:55
20    A. So this person is buying XRP and they're   01:28:58
21    also buying a put option on the XRP. That's   01:29:02
22    how you would analyze that from a financial   01:29:07
23    perspective. And you're asking how would I    01:29:09
24    calculate how much was paid for the XRP?      01:29:12
25    Q. I'm asking how this methodology would apply 01:29:14
                                              Page 115
```

```
 1    to that situation.                            01:29:16
 2    A. You calculate how much was paid for the    01:29:19
 3    XRP, not how much was paid for the option     01:29:21
 4    on the XRP.                                   01:29:26
 5    Q. And why is that?                           01:29:27
 6    A. Because this person is buying two different 01:29:28
 7    things, XRP tokens as well as an option       01:29:31
 8    in XRP tokens. If I want to find out how      01:29:35
 9    much they're paying for the XRP tokens        01:29:39
10    themselves, I've got to exclude how much      01:29:42
11    they're paying for the options.               01:29:45
12    Q. So if that purchaser were then to sell     01:29:47
13    XRP at a loss and receives some money from    01:29:50
14    the contractual counterparty thereafter,      01:29:54
15    you wouldn't offset that purchaser's loss     01:29:56
16    based on the payment they received from the   01:30:01
17    counterparty following their sale?            01:30:03
18          MR. SPEAR: Objection, incomplete        01:30:03
19    hypothetical. Objection, calls for            01:30:04
20    speculation.                                  01:30:06
21    A. These seem to be unusual aberrant          01:30:07
22    hypotheticals that might take some analysis,  01:30:11
23    but it's not a different methodology. We're   01:30:17
24    still calculating how much was paid and how   01:30:20
25    much was received and the difference is the   01:30:22
                                              Page 116
```

```
 1    loss. If there's some unusual details of      01:30:24
 2    the transactions that might require some      01:30:30
 3    additional analysis from an economist or      01:30:34
 4    from the claims administrator, but if the     01:30:38
 5    sale is the result of the exercise of a       01:30:43
 6    put option, as I sit here now, it seems to    01:30:46
 7    me that the sale price would be the strike    01:30:49
 8    price of that put option and we would know    01:30:52
 9    how much this person received when selling    01:30:57
10    his or her XRP.                               01:31:02
11    Q. Your formula here in Paragraph 19 purports 01:31:06
12    to calculate damages for class members who    01:31:15
13    purchased and later sold XRP?                 01:31:18
14    A. Right.                                     01:31:19
15    Q. It sets out three inputs, the dollar amount 01:31:20
16    paid at time of purchase, interest thereon    01:31:23
17    and the amount received at time of sale?      01:31:27
18    A. Right.                                     01:31:29
19    Q. What I'm suggesting, I'm wondering how this 01:31:29
20    would apply to a situation where a contract   01:31:34
21    provided for some payment to the seller       01:31:36
22    after the time of sale. That is not           01:31:39
23    encompassed by this methodology, correct?     01:31:41
24          MR. SPEAR: Objection, calls for         01:31:44
25    speculation. Objection, incomplete            01:31:46
                                              Page 117
```

### Page 118

```
 1      hypothetical.  Go ahead.                          01:31:48
 2   A. So you're saying there's a contract that          01:31:49
 3      says the person sells it and then at a later      01:31:51
 4      date is given additional money pursuant to        01:31:55
 5      a put option?  Is that what you're saying?        01:31:59
 6   Q. You're the one describing it as a put option.     01:32:01
 7      I have not described it as a put option.          01:32:03
 8   A. Well, locking in that you can't sell for          01:32:06
 9      less than what you paid for it is modeled         01:32:09
10      as a put option, so I think the proceeds          01:32:12
11      from the market sale, plus the -- I would         01:32:18
12      have to think about that.  I'm not sure           01:32:25
13      whether you include the amount they receive       01:32:27
14      in the put option or not as part of the           01:32:28
15      sales proceeds.  I'd have to think about          01:32:32
16      that, but we're still trying to calculate how     01:32:33
17      much was received from the sale.                  01:32:37
18   Q. Is it fair to say, though, that in order to       01:32:37
19      apply this methodology that you put forth         01:32:40
20      in Paragraph 19, we need to look at the           01:32:43
21      contract?                                         01:32:45
22          MR. SPEAR:  Objection, incomplete             01:32:47
23      hypothetical, calls for speculation.              01:32:48
24   A. I think the trading records would suffice         01:32:50
25      just as they would for any other investor.        01:32:52
```

### Page 119

```
 1      The trading records say how much he or            01:32:56
 2      she received when they sold the XRP and           01:33:00
 3      then how much they received pursuant to           01:33:03
 4      the put option.  I think that would be in         01:33:05
 5      the trading records, or that could certainly      01:33:07
 6      be a claims administrator question, did you       01:33:09
 7      receive additional compensation subsequent        01:33:12
 8      pursuant to that sale.  That's the kind of        01:33:16
 9      thing claims administrators handle all the        01:33:19
10      time.                                             01:33:22
11   Q. Isn't what your opinion here expressing           01:33:23
12      is that the claims administrator would            01:33:23
13      follow this formula?                              01:33:29
14   A. Right.  And to measure the amount received       01:33:29
15      for the sale, I would think for the vast          01:33:32
16      majority of class members would be a              01:33:37
17      straightforward reading of the confirmation       01:33:38
18      ticket or the trading records for the small       01:33:42
19      minority or one-offs that might have received     01:33:47
20      compensation in a different way.  That could      01:33:51
21      be a question that the claims administrator       01:33:54
22      asked, did you receive additional                 01:33:54
23      compensation for the sale.  It could be a         01:33:54
24      straightforward question asked by the claims      01:33:54
25      administrator in a questionnaire attached         01:34:02
```

### Page 120

```
 1      to the claim form, is this all the                01:34:05
 2      compensation you received for selling this        01:34:07
 3      asset or did you receive additional               01:34:09
 4      compensation somewhere else in some other         01:34:11
 5      way.  I think this is the job the claims          01:34:15
 6      administrators are comfortable performing         01:34:18
 7      and typically do.                                 01:34:21
 8   Q. If a claims addministrator did that, would        01:34:21
 9      that claims administrator be deviating from       01:34:25
10      the formula laid out in Paragraph 19?             01:34:27
11   A. Not at all.  Well, only to the extent that       01:34:31
12      it says at time of sale.  So what I wrote         01:34:33
13      here is what applies to the -- what you're        01:34:38
14      doing is an exercise to try to look for           01:34:44
15      hypotheticals that possibly don't even exist      01:34:48
16      that would add complexity to the formula.         01:34:53
17      And if these hypotheticals do exist, it's         01:34:56
18      easy to modify this formula so it's all           01:34:59
19      common for all class members, but takes into      01:35:02
20      account very peculiar complexities such as        01:35:05
21      you received your payment two different,          01:35:08
22      on two different dates or multiple dates.         01:35:10
23   Q. What is your basis for expressing that            01:35:13
24      this hypothetical that I'm describing is          01:35:18
25      aberrant or so unusual?                           01:35:20
```

### Page 121

```
 1   A. Because the whole idea of exchange trading        01:35:23
 2      or trading even on the ledger is that             01:35:28
 3      you're trading in a fungible manner, that         01:35:32
 4      your trades are just like other people's          01:35:35
 5      trades and they're standardized, the terms        01:35:38
 6      are standardized.  It's only, you know --         01:35:43
 7      even over-the-counter trades are usually          01:35:47
 8      standardized, but over-the-counter it's           01:35:49
 9      possible to have customized features, but         01:35:52
10      because they're customized, over-the-counter     01:35:58
11      trading in a security tends to be much,           01:36:00
12      much lower in volume, if it exists at all,        01:36:05
13      but in a customized way.  Standardization         01:36:09
14      allows for marketplaces to handle volume,         01:36:13
15      so the volume will predominantly be from          01:36:17
16      standardized trades.                              01:36:20
17   Q. Do you have any basis to form a view as           01:36:22
18      to whether a use of a digital asset might         01:36:27
19      impact the frequency with which these types       01:36:33
20      of bilateral agreements might exist?              01:36:37
21          MR. SPEAR:  Objection, form.                  01:36:41
22   A. I didn't entirely understand your question.       01:36:44
23   Q. You've expressed a view that -- I was             01:36:47
24      describing a contract before that had what        01:36:52
25      you characterized as put option and you           01:36:55
```

31 (Pages 118 - 121)

```
 1   answered.                              02:10:13
 2   A. Not specifically, but generally I would    02:10:15
 3   say yes, because I did consider -- that is    02:10:20
 4   a transaction and I did consider potential    02:10:25
 5   class members that would be receiving --      02:10:29
 6   well, receiving XRP and then providing XRP    02:10:33
 7   in the course of some economic transaction.   02:10:39
 8   Q. Okay. So in 19 and 20, both of them, both  02:10:43
 9   formulas you start with a dollar amount paid  02:10:49
10   at time of purchase, and you're saying that   02:10:52
11   applies to -- I'll just strike that. So is    02:10:58
12   it fair to say that in Paragraphs 19 --       02:11:04
13   strike that.                                  02:11:11
14       In Paragraph 17 you've got the           02:11:13
15   statutory formula for damages which uses      02:11:14
16   the term "consideration." You covered         02:11:18
17   consideration paid for such security with     02:11:22
18   interest thereon. Do you see that?            02:11:24
19   A. Paragraph 17?                              02:11:27
20   Q. Yes, of your report.                       02:11:27
21   A. Yes.                                       02:11:30
22   Q. Do you see where it says that?             02:11:30
23   A. Yes.                                       02:11:35
24   Q. We discussed this, you're interpreting the 02:11:36
25   term "consideration" to mean the value paid   02:11:40
                                                     Page 138
```

```
 1   for such security, correct? Not the form?     02:11:43
 2   A. Well, I am expressing today, here -- it's  02:11:48
 3   not in the report -- actually, it is in       02:11:53
 4   the report. I am expressing that I believe    02:11:55
 5   the best way to interpret the word            02:11:57
 6   "consideration" and the way that's most       02:11:59
 7   consistent with the statute is that it means  02:12:01
 8   the value of the consideration, not the       02:12:03
 9   form of the consideration, and I explain      02:12:05
10   that part of that comes from the fact that    02:12:07
11   the very next clause is "with interest        02:12:09
12   thereon," which means that we should be       02:12:12
13   translating the form to a value. But I        02:12:15
14   also express -- and this is very important.   02:12:19
15   I said it was important earlier today and     02:12:21
16   it's important now, that if there's some      02:12:23
17   legal determination that the word             02:12:25
18   "consideration" should be the form of the     02:12:28
19   consideration and not the value of the        02:12:30
20   consideration, then that, too, would be,      02:12:31
21   there would be one common methodology that    02:12:37
22   can be applied for all class members given    02:12:40
23   that interpretation, given that alternative   02:12:44
24   interpretation.                               02:12:46
25   Q. Okay.                                      02:12:46
                                                     Page 139
```

```
 1   A. Meaning that for whichever way you interpret 02:12:48
 2   the word "consideration," the conclusion       02:12:51
 3   in Paragraph 16 won't change. The formulas     02:12:53
 4   in 19 and 20 might in a very straightforward   02:12:58
 5   way, but the conclusion in Paragraph 16 would  02:13:01
 6   not change.                                    02:13:05
 7   Q. Okay. And with respect to how you propose   02:13:05
 8   to calculate the value of the consideration    02:13:11
 9   paid, it's your opinion that if someone        02:13:14
10   used Bitcoin, that that should be converted    02:13:22
11   to U.S. dollars using the Bloomberg rate as    02:13:24
12   of 4:00 p.m. on the date of the transaction?   02:13:28
13       MR. SPEAR: Objection, misstates           02:13:29
14   prior testimony.                               02:13:30
15   A. I explained that you could do that and      02:13:31
16   that would be a reasonable approach, but I     02:13:36
17   haven't determined yet whether that's the      02:13:37
18   only approach or best approach. That would     02:13:40
19   certainly be a reasonable way to proceed.      02:13:42
20   Q. What if Ethereum was used to purchase XRP?  02:13:44
21   What would you use to translate Ethereum       02:13:49
22   into U.S. dolalrs?                             02:13:49
23   A. That database exists, too, database of      02:13:53
24   Ethereum exchange rates.                       02:13:58
25   Q. On Bloomberg?                               02:13:58
                                                     Page 140
```

```
 1   A. I believe so.                              02:14:00
 2   Q. What if Tether was used?                   02:14:00
 3   A. I know that the Tether exchange rates do   02:14:08
 4   exist on Bloomberg. I looked them up.         02:14:12
 5   Q. And what if someone used, for example, a   02:14:14
 6   foreign currency like a Swiss franc and       02:14:16
 7   went directly into XRP, then what would       02:14:21
 8   you use?                                      02:14:23
 9   A. Using exchange rates to convert the form   02:14:24
10   of the consideration to the value of the      02:14:27
11   consideration in dollars is a straightforward 02:14:29
12   arithmetic exercise that would be common      02:14:33
13   for all class members.                        02:14:35
14   Q. Do you have an understanding sitting here  02:14:36
15   today of how many different types of assets   02:14:37
16   can be transferred for XRP?                   02:14:40
17   A. Yes.                                       02:14:44
18   Q. How many?                                  02:14:45
19   A. It's many. That's the nature of digital    02:14:46
20   assets, that that's also why there are        02:14:50
21   databases that provide matrices of exchange   02:14:54
22   rates.                                        02:15:01
23   Q. Do you know if, for example, Bloomberg     02:15:01
24   provides an exchange rate for each of the     02:15:05
25   assets that can be used to purchase or sell   02:15:07
                                                     Page 141
```

```
 1      COMMONWEALTH OF MASSACHUSETTS)
 2      SUFFOLK, SS. )
 3
 4
                I, Jeanette Maracas, Registered
 5      Professional Reporter and Notary Public in
        and for the Commonwealth of Massachusetts,
 6      do hereby certify that there came before me
        on the 20th day of January, 2023, at 9:41
 7      a.m., the person hereinbefore named, who
        was by me duly sworn to testify to the truth
 8      and nothing but the truth of his knowledge
        touching and concerning the matters in
 9      controversy in this cause; that he was
        thereupon examined upon his oath, and his
10      examination reduced to typewriting under my
        direction; and that the deposition is a true
11      record of the testimony given by the witness.
12
                I further certify that I am neither
13      attorney or counsel for, nor related to or
        employed by, any attorney or counsel employed
14      by the parties hereto or financially
        interested in the action.
15
16              In witness whereof, I have hereunto
        set my hand this 25th day of January, 2023.
17
18
19

20                      Notary Public
                        My commission expires 7/29/27
21
22
23
24
25

                                            Page 145
```