April 17, 2023

**DISCOVERY MATTER - REDACTED**

BY ECF
Honorable Robert M. Illman
United States District Court
Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Ave
McKinleyville, CA 95519

      Re:    *In re Ripple Labs Inc. Litigation*, Case No. 4:18-cv-06753-PJH-RMI

Dear Judge Illman:

Pursuant to the Order of Reference to Magistrate Judge (ECF No. 135) and the Court's Standing Order § 13(a), Lead Plaintiff Bradley Sostack ("Lead Plaintiff") and Defendants Ripple Labs Inc. ("Ripple"), XRP II, LLC, and Bradley Garlinghouse (collectively "Defendants") submit this joint letter regarding the following discovery dispute.

## Issue

Whether Defendants should be required to answer Plaintiff's Interrogatories 5-7, 12, and 14.

## Plaintiff's Position

"The party opposing the discovery bears the burden of resisting disclosure." *Bryant v. Armstrong*, 285 F.R.D. 596, 600 (S.D. Cal. 2012). Here, Defendants refuse to answer Plaintiff's Interrogatories, incorrectly asserting that information is equally available to Plaintiff and thus the requests are unduly burdensome. The Court should order Defendants to provide full responses.

**Interrogatories 5 and 6**[1] seek identification of validators on the XRP Ledger and their relationships with Ripple. Defendants do not dispute this information is relevant,[2] but refuse to provide any substantive response to these Interrogatories, arguing that they "do not possess lists of every validator that has operated at any time since June 2012, and it would be unreasonably burdensome to require Defendants to assemble this information from public sources that are

---

[1] *See* Ex. A (Rog 5: "For any validator used in the CONSENSUS PROCESS between June 2012 and the present, identify the person or entity who controlled the validator, that person or entity's relationship to YOU, the time period(s) during which the validator participated in the CONSENSUS PROCESS, and the location of the Validator."; Rog 6: "For each month from June 2012 to the present, identify the number of validators that participated in the CONSENSUS PROCESS and the percentage of those validators that YOU managed or controlled.").

[2] ████████████████████████████████████████████████████

equally available to Plaintiff."  This objection is wholly improper and cannot be squared with Defendants' close monitoring of, and involvement in, the validation process of the XRP Ledger.

███████████████████████[3]  Ripple has also published articles regarding its efforts to "decentralize" the XRP Ledger by "diversify[ing] validators on the XRP Ledger."  For example, in May 2017, Ripple published an article representing that new validators' "performance will be monitored against a specific set of criteria."[4]  Ripple itself provided "a default and recommended UNL configured with **validating nodes operated by Ripple, and our plan is to systematically replace these nodes with attested third-party validating nodes**."[5]  In July 2017, Ripple published an article boasting that "the XRP Ledger ecosystem has expanded to 55 validator nodes, an increase of 120 percent since May."[6]  In short, it is clear that Ripple maintains a significant amount of unique information regarding validators on the XRP Ledger.

During the parties' meet and confer, Defendants conceded they have information regarding a significant number of validators during this time period, but asserted that they were justified in providing no substantive response because they did not have a "list of every validator that has operated at any time since June 2012."  Even if so, Defendants should answer the Interrogatories with information they do have—all validators that they know of or can identify through a reasonable investigation.  *See Bryant*, 285 F.R.D. at 612 ("A party answering interrogatories has an affirmative duty to furnish any and all information available to the party. . . .  A responding party has a 'severe duty' to make every effort to obtain the requested information, and if unsuccessful, must provide an answer detailing the attempts made to ascertain the information.").

**Interrogatory 7** asked: "For each of the MAIN CONTRIBUTORS to RIPPLED, identify that individual's full name and describe what relationship, if any, YOU have with that individual."  "MAIN CONTRIBUTORS" was defined as the 20 most active contributors to the XRP Ledger software code.  Defendants objected to the term "relationship" being ambiguous and thus limited their response to identifying individuals who are current Ripple employees.  During the parties meet and confer, Plaintiff confirmed that the term "relationship" had its ordinary dictionary meaning and, in addition to current and former Ripple employees, would include parties with any business or financial relationship to Defendants.  It is well established that responding parties should "exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories."  *See, e.g.*, *Santana Row Hotel Partners, L.P. v. Zurich Am. Ins. Co.*, 2007 WL 1168677, at *3 (N.D. Cal. Apr. 18, 2007); *accord Berlinger v. Wells Fargo, N.A.*, 2012 WL 695836, at *4 (M.D. Fla. Mar. 1, 2012) (overruling objections to requests for persons'

---

[3] ████████████████████████████████████████████

[4] Team Ripple, How We Are Further Decentralizing the XRP Ledger to Bolster Robustness for Enterprise Use, May 11, 2017, available at https://ripple.com/insights/how-we-are-further-decentralizing-the-ripple-consensus-ledger-rcl-to-bolster-robustness-for-enterprise-use/.
[5] *Id.*
[6] Team Ripple, XRP Ledger Decentralizes Further With Expansion to 55 Validator Nodes, July 17, 2017, available at https://ripple.com/insights/xrp-ledger-decentralizes-expansion-55-validator-nodes/.

"relationship with the party to whom the interrogatories are directed" and declining to find such requests are "vague and ambiguous."). Despite the parties' extensive meet and confer on this issue, Defendants refused to fully answer this interrogatory, instead agreeing only to identify "current or former Ripple employees." This objection is improper and should be overruled.

**Interrogatory 12** asked: "For each EXCHANGE that listed XRP, identify the name of the EXCHANGE, the first date XRP was listed on that EXCHANGE, and the first date that a MARKET MAKER sold XRP on that EXCHANGE."[7] There is no dispute this information is relevant, as Defendants assert that the repose period began before August 5, 2016, because XRP was available on exchanges before then. Defendants also admitted to making extensive efforts to get XRP listed on exchanges and actively monitoring where XRP was listed.[8] Yet, Defendants failed to substantively respond to this Interrogatory, instead claiming that the "information can be obtained pursuant to Fed. R. Civ. P. 33(d)" from "Documents indicating trading activity on exchanges by certain Market Makers" or "indicating that certain exchanges had listed XRP." These documents, which reference only a handful of exchanges, do not furnish sufficient information to answer this Interrogatory, which asked about every XRP exchange listing.

Defendants once again seek to justify their failure to provide *any* substantive response by arguing that they "do not believe that they maintained a list of *all* exchanges that list XRP at any point in time." That does not justify Defendants' wholesale refusal to respond. Defendants should provide a response with information they do have. *See Bryant*, 285 F.R.D. at 612; *see also Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc.*, 298 F.R.D. 633, 647 (S.D. Cal. 2014) ("It is not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record.").

**Interrogatory 14** asked: "For each instance in which a MARKET MAKER paused programmatic sales of XRP, identify the MARKET MAKER, the date programmatic sales were paused, the reason the programmatic sales were paused, and the date programmatic sales resumed." Again, there is no question the request is relevant— ████████████████████████████████████
██████████████████████████████████████████████████████████████████████

Defendants refused to answer because "the Interrogatory is not limited to programmatic sales conduct on behalf of and/or pursuant to contracts with Defendants." Lead Plaintiff agreed to clarify this Interrogatory so that Defendants need only provide each instance in which a MARKET MAKER paused programmatic sales of XRP <u>conducted on their behalf for a period of at least one day</u>. However, despite Plaintiff providing this additional clarity regarding the key objection raised by Defendants, they have remained unwilling to provide a substantive response to this Interrogatory. The basis for their refusal to do so is unclear. To the extent their refusal is based upon a burdensomeness objection, Defendants have failed to identify with any specificity why responding to this request would be "unreasonably burdensome." This is improper. *Juarez v. Delgado*, 2015 WL 13917157, at *9 (C.D. Cal. Jan. 13, 2015).

---

[7] Lead Plaintiff offered to clarify this Interrogatory as follow: "For each EXCHANGE that listed XRP, identify the name of the EXCHANGE, the first date XRP was listed on that EXCHANGE, and the first date that a MARKET MAKER sold XRP on that EXCHANGE <u>on Your behalf</u>."
[8] *See, e.g.*, https://ripple.com/insights/xrp-now-available-on-50-exchanges-worldwide/.

**Defendants' Position**

**Interrogatory 5.** This Interrogatory asks Defendants to identify every single validator that ever participated in the XRP Ledger consensus process from June 2012 to the present, along with various details about each. As Defendants' response indicates, this is information that Defendants do not have. The XRP Ledger is made of open-source computer software that no one owns and anyone can copy. There is no requirement for validators to "announce" their participation in the consensus process to Ripple, and validators can and do start and stop participating in the consensus process without Ripple ever knowing. Ripple does not know – and is unaware of any way to find out – the identities of all validators that have participated in the consensus process at any given time, much less for *every* date across an 11-year span.[9] *See, e.g.*, *Greer v. Elec. Arts, Inc.*, 2012 WL 6115599, at *2 (N.D. Cal. Dec. 10, 2012) (denying motion to compel where plaintiff asked for "each and every Internet Address" that downloaded videogame software from defendant's website, where defendant stated it did not track and could not get that data); *Stevenson v. Beard*, 2021 WL 9059838, at *5 (S.D. Cal. Mar. 12, 2021) (denying motion to compel where plaintiff failed to establish defendant "ha[d] access to or custody, possession, or control of the information sought") (citation omitted); *Travelers Indem. Co. v. Goldman*, 2020 WL 5372108, at *5 (C.D. Cal. May 8, 2020) ("Plaintiff's disbelief of Defendant's representations, without more, does not warrant an order compelling further responses . . . .").

Even if Defendants had that knowledge, the Interrogatory is also unduly burdensome. It would require Defendants to (somehow) investigate the details of hundreds, perhaps thousands, of validators, going back more than a decade. *See, e.g.*, *Morales v. Allstate Northbrook Indem. Co.*, 2021 WL 6618614, at *3 (C.D. Cal. Dec. 20, 2021) (denying motion to compel where interrogatory would have required defendant to "review of thousands of claim files and documents"). Plaintiff apparently seeks to show that Ripple was closely involved with the XRP Ledger's consensus process, but assuming *arguendo* that were true, it would not matter. Plaintiff has never claimed that the *XRP Ledger* (which is different from the XRP currency) was somehow sold as an investment contract. He could not, as the XRP Ledger is open-source. Accordingly, this Interrogatory is both beyond Defendants' knowledge and unduly burdensome.

**Interrogatory 6.** Like Interrogatory 5, this Interrogatory calls for information that Defendants simply do not and cannot know: "the number of validators" that participated in the consensus process each month for the past 11 years, and "the percentage of those validators" that Defendants "managed or controlled." As explained above and in Defendants' response, Defendants have no way to determine the total number of validators that participated in the consensus process each month. And because they do not and cannot know that number, they also cannot state a percentage that they managed or controlled, since that percentage requires the (unknown) total number as a denominator.[10] *See Stevenson*, 2021 WL 9059838, at *5.

_____

[9] Plaintiff does not appear to dispute this. During the meet-and-confer process, Defendants identified a third-party website that purports to track validators currently participating in the XRP Ledger consensus process. Plaintiff responded in writing that this website was "wholly insufficient" to answer this Interrogatory – which is exactly Defendants' point.

[10] During the meet-and-confer process, Plaintiff insisted that Defendants should be able to count the number of validators that Defendants managed or controlled. Interrogatory 6 does not call

Even if it were possible to get this data, this Interrogatory would be unduly burdensome. It would require Defendants to go through the exercise of analyzing hundreds of validators *130 different times* – once for each month from June 2012 to the present.  Courts routinely find such compound requests unduly burdensome.  *See, e.g., Grayson LLC (of Louisiana) v. BPX Operating Co.*, 2021 WL 9880870, at *1 (W.D. La. Sept. 8, 2021) (interrogatory requiring analysis of each different revenue source each month "would place an undue burden" on the responding party); *FenF, LLC v. Healio Health Inc.*, 2008 WL 11379993, at *5 (N.D. Ohio Dec. 11, 2008) (interrogatory "was unduly burdensome because it requested monthly [data] in a form that was not necessarily the form in which they were kept in the ordinary course of business.").

**Interrogatory 7.**  This Interrogatory seeks (1) the identities of certain contributors to the Rippled code and (2) the "relationship, if any" each of these individuals has with Ripple.  Only part of the latter part of this Interrogatory is in dispute.  Defendants objected that the term "relationship" was vague and ambiguous but, in a good faith effort to respond to the substance of the Interrogatory, identified which individuals were current Ripple employees and offered in the meet-and-confer process to identify former employees as well.  Plaintiff rejected that proposal, while refusing to provide any further definition of "relationship" beyond the bare notion that any conceivable connection would count as a "relationship."[11]  As Plaintiff apparently envisions the term, merely speaking on an industry conference panel that included a Ripple employee or following Ripple's corporate Twitter account – among countless other possibilities – would qualify as a "relationship" about which Plaintiff seeks details.  That amorphous standard is unmanageable.  It would require Defendants to look at every affiliation held by 20 different individuals and compare them to every affiliation held by hundreds of current and former Ripple employees.  That is vague, irrelevant, and unduly burdensome.  *See, e.g., Perrotte v. Johnson*, 2019 WL 176786, at *8 (E.D. Cal. Jan. 11, 2019) ("[T]he breadth of the discovery sought, related to the 'inmate and staff relationships,' (to the extent such term is not vague or ambiguous) is not relevant to Plaintiff's claim and/or proportional to the needs of the case."); *Behrazfar v. Unisys Corp.*, 2009 WL 10673197, at *4 (C.D. Cal. June 3, 2009) ("[An] interrogatory is burdensome and oppressive when [the] responding party must investigate all officers or employees for [the] past eight years to respond" (citing *Fischer & Porter Co. v. Sheffield Corp.*, 31 F.R.D. 534, 538 (D. Del. 1962))).

**Interrogatory 12.**  This Interrogatory asks Defendants to identify every exchange that ever listed XRP and the date each one first listed it.  Similar to those above, this Interrogatory rests on the flawed premise that exchanges are somehow obligated to tell Ripple when they list XRP.  They are not, and Ripple has no way to create a complete list of every exchange anywhere in the world that ever listed XRP.  Nonetheless, Defendants undertook a diligent effort to examine their files for evidence that exchanges had listed XRP or that Defendants' market makers had traded XRP on any exchanges, and they provided a catalog of such evidence in response to this Interrogatory pursuant to Fed. R. Civ. P. 33(d), including a supplemental

---

for that count.  It calls for the *total* number of validators and the *percentage* Defendants managed or controlled.  And Plaintiff declined Defendants' express invitation to amend this Interrogatory.

[11] Plaintiff gave the specific example of being opposing parties in litigation as a potential "relationship" as he views the term.  Accordingly, any individual who was not a Ripple employee could plausibly have the "relationship" of being a putative class member.

response.  Plaintiff has never articulated what more he thinks is required, nor how anything more could possibly be required.  *See Stevenson*, 2021 WL 9059838, at *5; *Travelers Indem. Co.*, 2020 WL 5372108, at *5.  Defendants have provided a thorough summary of responsive information currently known to them.

**Interrogatory 14.**  This Interrogatory asks Defendants to describe every time a market maker selling XRP on Defendants' behalf "paused" programmatic sales – meaning went at least one day between sales that were conducted by trading "bots" pursuant to algorithms.  Defendants lack that information.  Ripple's four main market makers were not Ripple's all-purpose agents, and they were not required to tell Ripple every time they went a day without selling.  *See Greer*, 2012 WL 6115599, at *2.  All that is available are the happenstance mentions of pauses in emails and in documents produced by market makers – which have been produced to Plaintiff and which Plaintiff can review equally well.  And it would be unduly burdensome and irrelevant to insist that Defendants comb these documents (that Plaintiff already has) to find each mention of any time that any of four market makers stopped trading for at least one day out of roughly 3,000.  *Cf. Haynes v. Navy Fed. Credit Union*, 286 F.R.D. 33 (D.D.C. 2012) (finding that interrogatory seeking about each mortgagor who received a waiver in a four-year period was unduly burdensome).  That effort would not advance Plaintiff's case at all. ██████████████ █████████████████████████████████████████████████████████████████ ███████████████████████████  Even intentional pauses would not be relevant:  Plaintiff has cited no authority to suggest that going *one day* without making a sale bears on any of his theories.