| | |
|---|---|
| DAMIEN J. MARSHALL<br>(admitted *pro hac vice*)<br>dmarshall@kslaw.com<br>ANDREW MICHAELSON<br>(admitted *pro hac vice*)<br>amichaelson@kslaw.com<br><br>KING & SPALDING LLP<br>1185 Avenue of the Americas, 34th Floor<br>New York, NY 10036<br>Tel: (212) 556-2100; Fax: (212) 556-2222<br><br>LISA BUGNI (SBN 323962)<br>lbugni@kslaw.com<br><br>KING & SPALDING LLP<br>50 California Street, Suite 3300<br>San Francisco, CA 94111<br>Tel: (415) 318-1200; Fax: (415) 318-1300<br><br>ANDREW J. CERESNEY<br>(admitted *pro hac vice*)<br>aceresney@debevoise.com<br><br>DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, NY 10022<br>Tel: (212) 909-6000; Fax: (212) 909-6836<br><br>*Attorneys for Defendants Ripple Labs Inc., XRP II, LLC, and Bradley Garlinghouse* | MICHAEL K. KELLOGG<br>(admitted *pro hac vice*)<br>mkellogg@kellogghansen.com<br>REID M. FIGEL<br>rfigel@kellogghansen.com<br>GREGORY G. RAPAWY<br>(admitted *pro hac vice*)<br>grapawy@kellogghansen.com<br>BRADLEY E. OPPENHEIMER<br>(admitted *pro hac vice*)<br>boppenheimer@kellogghansen.com<br>BETHAN R. JONES<br>(admitted *pro hac vice*)<br>bjones@kellogghansen.com<br>JUSTIN B. BERG<br>(admitted *pro hac vice*)<br>jberg@kellogghansen.com<br><br>KELLOGG, HANSEN, TODD, FIGEL,<br>& FREDERICK, P.L.L.C.<br>Sumner Square<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036<br>+1 (202) 326-7900<br><br>*Attorneys for Defendant Ripple Labs Inc.* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re RIPPLE LABS INC. LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 4:18-cv-06753-PJH<br><br>**OPPOSITION TO LEAD PLAINTIFF'S MOTION TO APPROVE THE FORM AND MANNER OF CLASS NOTICE**<br><br>Date:  January 11, 2024<br>Time:  1:30 p.m.<br>Place:  Via Zoom Webinar |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The parties' sole dispute in connection with Lead Plaintiff's proposed notice program concerns the geographic scope of the certified classes as set out in this Court's order on class certification. *See* ECF No. 264. Lead Plaintiff's proposal attempts to broaden the geographic scope of the certified classes to include non-U.S.-based purchasers of XRP. Lead Plaintiff's plan to contact a large number of foreigners who do not appear to be class members will lead to undue confusion and therefore is not the best method "practicable under the circumstances" as required by Federal Rule of Civil Procedure 23. Fed. R. Civ. P. 23(c)(2)(B).

## II. STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should require changes before approving Lead Plaintiff's proposed class notice plan such that the plan fits the correct geographic scope of the certified classes.

## III. BACKGROUND

One of the issues that the parties disputed at the class certification stage was the geographic scope of the proposed class. Lead Plaintiff sought to certify a worldwide class of XRP purchasers. *See* ECF No. 181. Defendants, citing *Mazza v. Am. Honda Motor Co.* 666 F.3d 581 (9th Cir. 2012), argued that the class for Lead Plaintiff's state law claim should be restricted to California residents. *See* ECF No. 201 at 31-34. Defendants did not argue that this restriction was compelled by *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), and Plaintiff did not cite *Morrison* in his reply on this issue.

The Court accepted Defendants' argument in part. In a section titled "*Mazza* Analysis," the Court explained that in light of the evolving legal landscape surrounding digital assets worldwide, it "is unwilling to apply California law to a worldwide class of XRP purchasers." ECF No. 264 at 14. As the Court rightly recognized, "different countries are currently wrestling with the relatively novel issue of whether to classify cryptocurrency as a security," and "[o]ther countries should have the opportunity to regulate cryptocurrency in the manner in which they see fit." *Id.* The Court extended this logic to Lead Plaintiff's federal claim, reiterating that it was unwilling to certify a class with "global scope" and holding that the "geographical scope" for both

certified classes would be limited to "class members who purchased XRP within the United States." *Id.* at 13, 14. Applying principles set forth in *Mazza*, the Court cabined both classes geographically as a prudential matter, due to potential conflicts of law that exist across jurisdictions as regulation of digital assets evolves.

The parties disagree as to the proper interpretation of that order. Accordingly, while the parties have met and conferred to eliminate all other objections to Lead Plaintiff's proposed notice and notice plan, the parties continue to dispute whether the notice plan fits the geographic scope of the certified classes.

### IV.   ARGUMENT

#### A. Lead Plaintiff Misstates the Scope of the Class

Defendants understand the Court's class certification order to limit both classes to U.S. purchasers of XRP, while Lead Plaintiff suggests that the class includes foreigners, located in foreign jurisdictions, who happened to purchase XRP on an exchange with facilities located in the U.S. Lead Plaintiff's unwieldy interpretation would throw open the doors to precisely the worldwide class that the Court was seeking to avoid.

The Court made clear in its class certification order that it was unwilling to certify a class with "global scope." ECF No. 264 at 13; *see also id.* at 14 ("the court is unwilling to apply U.S. federal securities law to a worldwide class"). The only way to satisfy that concern was to limit the class to U.S. purchasers, as Defendants understand the Court expressly did when it limited "the geographical scope to class members who purchased XRP within the United States during the relevant class period." *See id.* at 14. Given the Court's express refusal to "apply U.S. federal securities law" to foreigners and to certify a class with "global scope," Defendants believe that the class certification order limits both classes to U.S. purchasers of XRP.

In a perfunctory argument of less than two pages, Lead Plaintiff argues that the Court's certification order should instead be interpreted to focus only on where the transaction occurred—potentially based on nothing more than the location of the server or computer hardware that effectuated the transaction digitally—but not on where the XRP purchaser was located or resided. *See* Mot. at 8-9. This position confuses two distinct concepts of law: *Morrison* and *Mazza*. The

former, from *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), concerns the jurisdictional reach of the federal securities laws. In *Morrison*, the Supreme Court held that the federal securities laws do not apply extraterritorially, but rather reach only "domestic" violations of the laws. To determine whether particular conduct constitutes a "domestic" application of the law, the Court announced a transaction-based test that imposes on plaintiffs the burden of establishing domestic violations. All of Plaintiff's citations to Defendants' briefing in the parallel SEC Action and to the report of Defendants' expert Yesha Yadav concern this limit on the reach of the federal securities laws.

But that *Morrison*-based argument is a red herring here. That is because the Court's rejection of a worldwide class in its class certification order was not based on *Morrison* and its progeny (such as *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F. 3D 60 (2d Cir. 2012), and *Stoyas v. Toshiba Corp.*, 896 F.3d 933 (9th Cir. 2018), on which Plaintiff now relies). Neither party cited *Morrison* or its progeny in arguing about the class's geographic scope. Instead, the rejection of a worldwide class was based on *Mazza v. Am. Honda Motor Co.* 666 F.3d 581 (9th Cir. 2012). Unlike *Morrison*, *Mazza* concerns the prudential scope of a class in light of potential conflicts between the laws of different jurisdictions. And contrary to the central premise of Plaintiff's argument here, that residency is irrelevant, *Mazza* expressly *does* turn on residency. *See Mazza*, 666 F.3d at 591-92 (discussing a jurisdiction's "interest in having its law applied to its resident claimants") (quoting *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001)); *see also Norwood v. Raytheon Co.*, 237 F.R.D. 581, 595 (W.D. Tex. 2006) ("It might be particularly important to apply foreign laws to claims of putative plaintiffs domiciled abroad due to the interest in maintaining harmonious international relations."). It is indisputable that the *Mazza* line of cases was the one the Court relied on in its class certification order: the parties grounded their arguments on this issue in *Mazza*, and the Court resolved their dispute and imposed the geographic restriction in a section under the heading "*Mazza* Analysis."[1] Conversely, nowhere

---

[1] This distinction between the *Mazza* and *Morrison* lines of cases eliminates the supposed inconsistency in Defendants' position that Lead Plaintiff has attempted to manufacture. It remains true, as Defendants have argued elsewhere, that transactions on centralized exchanges occur at the location of those exchanges. It also remains true that the class definition here does

did this Court opine on whether foreigners' purchases of XRP would constitute "domestic" violations of the Securities Act under *Morrison*, because that is a merits question that the parties did not brief and because it does not matter for purposes of defining the scope of the class. Even if the transactions are "domestic," that does not resolve the prudential concerns that animate *Mazza*.[2]

If there were any doubt, Lead Plaintiff's strained construction of the class certification order makes clear that it must be wrong, because it would create precisely the worldwide class that the Court expressly said it was unwilling to certify—as Lead Plaintiff admits. *See* Mot. at 8 ("This definition encompasses both U.S. residents and non-U.S. residents"). There are, for example, hundreds of thousands of XRP purchasers who reside in foreign countries who traded XRP on Poloniex (a centralized digital asset exchange). Assuming *arguendo* that Poloniex is a U.S. exchange (which would mean that transactions on Poloniex occur within the United States), Lead Plaintiff's interpretation would mean that there are potentially hundreds of thousands of class members residing worldwide—exactly the "worldwide class of XRP purchasers" that the Court declined to certify. Lead Plaintiff makes no effort to square his interpretation with the Court's concerns about the global scope of XRP purchasers. That is because it cannot be squared.

Lead Plaintiff's interpretation would lead to other complications as well. As an illustration, the United Kingdom does not classify XRP as a security. *See* ECF No. 201 at 32. A U.K. purchaser, knowing that XRP was not a security, who bought and sold it repeatedly in exchange for British Pounds, would not and should not be a member of the class. Yet according to Lead Plaintiff's interpretation, if that purchaser made just one purchase on a U.S.-based exchange— even if the purchase were in exchange for British Pounds, and even if it was part of an overall

---

not turn on that fact and instead is limited to U.S. purchasers based on residency under a *Mazza* analysis.

[2] Lead Plaintiff has suggested in other briefing that *Mazza* should be limited to its facts and address only conflicts between the laws of different U.S. states, not conflicts between the laws of different countries. *See* ECF No. 282 at 2. Nothing in *Mazza*'s reasoning suggests that it should be so limited, and the prudential concerns that animate limiting class membership based on state residency apply with even greater force in the context of international jurisdictions.

trading strategy based in the U.K. and under the belief from U.K. law that no securities were being traded—that purchaser could be a class member. Such a result is clearly inconsistent with *Mazza* and with this Court's prudential concerns about certifying a worldwide class.

Indeed, Lead Plaintiff's own notice plan tacitly confirms that Lead Plaintiff does not truly think the class here includes foreign purchasers. Lead Plaintiff proposes to use United States Postal Service address databases (but no foreign postal databases) in connection with his direct mail campaign, *see* ECF No. 303-7 ¶ 28; to run media campaigns on websites with U.S.-centered audiences, *see id.* ¶ 29; and to send all notices solely in English, *see* ECF Nos. 303-9–12. If the classes were as expansive as Plaintiff says, then Plaintiff would presumably apply the same diligence when contacting foreign purchasers as when contacting U.S. purchasers—which is not what his notice plan calls for.

### B. Lead Plaintiff's Notice Plan Should Be Adjusted to Fit the Scope of the Class

This Court should reject, in part, Lead Plaintiff's proposed notice and notice program because it is not the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Specifically, a few digital asset exchanges produced to Lead Plaintiff contact information for their non-U.S. customers, and Lead Plaintiff proposes to send email and/or mail notices to those individuals. *See* ECF No. 303-7 ¶¶ 17-28. Directing notices to specific individuals who plainly are not class members is overbroad and will cause confusion. *See Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 64 (D. Conn. 2001) ("[S]ending notice to the admittedly over-inclusive group here would 'most likely confuse the recipients and encourage [responses] by non-class members'") (quoting *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 546 (N.D. Ga. 1992)); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2019 WL 718807, at *2 (S.D. Cal. Feb. 5, 2019) (finding a direct notice plan overbroad and improper under Rule 23 when it provided notice to individuals in "all fifty states and around the world" when the "class action is limited specifically to California residents.").

Fortunately, the solution here is easy to implement. Lead Plaintiff should simply refrain from sending direct notices to non-U.S. purchasers of XRP; then there would be no significant

overbreadth problem. The Court should require that adjustment before approving Lead Plaintiff's proposed notice plan.

## V. CONCLUSION

The Court should deny Lead Plaintiff's motion in its current form and should approve a revised notice plan that eliminates the provision of direct notices to non-U.S. purchasers.

Dated: December 21, 2023

Respectfully submitted,

By: /s/ Bradley E. Oppenheimer

MICHAEL K. KELLOGG (admitted *pro hac vice*)
mkellogg@kellogghansen.com
REID M. FIGEL (admitted *pro hac vice*)
rfigel@kellogghansen.com
GREGORY G. RAPAWY (admitted *pro hac vice*)
grapawy@kellogghansen.com
BRADLEY E. OPPENHEIMER
(admitted *pro hac vice*)
boppenheimer@kellogghansen.com
BETHAN R. JONES (admitted *pro hac vice*)
bjones@kellogghansen.com
JUSTIN B. BERG (admitted *pro hac vice*)
jberg@kellogghansen.com
KELLOGG, HANSEN, TODD, FIGEL,
& FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
+1 (202) 326-7900

*Counsel for Defendant Ripple Labs Inc.*

DAMIEN J. MARSHALL (admitted *pro hac vice*)
dmarshall@kslaw.com
ANDREW MICHAELSON (admitted *pro hac vice*)
amichaelson@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel: (212) 556-2100; Fax: (212) 556-2222

| | |
|---|---|
| 1 | LISA BUGNI (SBN 323962) |
| | lbugni@kslaw.com |
| 2 | KING & SPALDING LLP |
| | 50 California Street, Suite 3300 |
| 3 | San Francisco, CA 94111 |
| | Tel: (415) 318-1200; Fax: (415) 318-1300 |
| 4 | |
| 5 | ANDREW J. CERESNEY (admitted *pro hac vice*) |
| | aceresney@debevoise.com |
| 6 | DEBEVOISE & PLIMPTON LLP |
| | 919 Third Avenue |
| 7 | New York, NY 10022 |
| | Tel: (212) 909-6000; Fax: (212) 909-6836 |
| 8 | |
| 9 | *Attorneys for Defendants Ripple Labs Inc.,* |
| 10 | *XRP II, LLC, and Bradley Garlinghouse* |