# EXHIBIT E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADI ZAKINOV, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>RIPPLE LABS, INC., et al.,<br>　　　　Defendants. | Case No. 18-cv-06753-PJH<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 181 |

　　　　Plaintiff's motion for class certification came on for hearing on April 26, 2023. Plaintiff appeared through his counsel, Nicholas Spear, James Taylor-Copeland, Steven Sklaver, and Oleg Elkhunovich. Defendants appeared through their counsel, Andrew Michaelson, Damien Marshall, Bradley Oppenheimer, Meghan Strong, and Bethan Jones. Having read the papers filed by the parties and carefully considered their arguments and relevant authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

　　　　This is a securities case. The factual and procedural backgrounds of the case are lengthy, and largely laid out in the court's previous orders during the pleading stage. As relevant here, plaintiff Bradley Sostack seeks to pursue securities claims against defendants Ripple Labs, XRP II (a subsidiary of Ripple), and Bradley Garlinghouse, CEO of Ripple. The gravamen of the case is the argument that the XRP cryptocurrency issued by Ripple is a "security" under relevant securities laws and should have been registered, and that the failure to do so was a violation of federal and state law.

The following claims remain in the case:

1. Violation of Section 12(a)(1) of the Securities Act (Title 15 U.S.C. § 77l(a)(1)) against defendants for the unregistered offer and sale of securities;
2. Violation of Section 15 of the Securities Act (Title 15 U.S.C. § 77o) against defendant Ripple and defendant Garlinghouse for control person liability for the primary violation of Title 15 U.S.C. § 77l(a)(1);
3. Violation of California Corporations Code § 25503 against defendants for a primary violation of § 25110's restriction on the offer or sale of unregistered securities;
4. Violation of California Corporations Code § 25501 against defendant Ripple and defendant XRP II, as well as a parallel material assistance claim under § 25504.1 against defendant Ripple and defendant Garlinghouse, for misleading statements in connection with the offer or sale of securities in violation of § 25401; and
5. Violation of California Corporations Code § 25504 against defendant Ripple and defendant Garlinghouse for control person liability in connection with defendants' primary violation of § 25110.

Plaintiff concedes that he is not seeking class treatment for the fourth cause of action. See Dkt. 262 at 6. That leaves four claims at issue on this motion: failure to register the XRP security under federal law (first cause of action) and state law (third cause of action); and that Ripple and Garlinghouse "controlled" the primary violation under federal law (second cause of action) and state law (fifth cause of action).

Plaintiff now seeks to certify the following two classes under Rule 23(b)(3):

Federal securities claims class: all persons or entities who purchased XRP from May 3, 2017 through the present and who have (a) retained the XRP, and/or (b) sold the XRP at a loss.

California state securities claims class: all persons or entities who purchased XRP from defendants and/or from any person or entity selling XRP on defendants' behalf from May 3, 2017 through the present and who have (a) retained the XRP, and/or (b) sold the XRP at a loss.

The class definitions also exclude officers, directors, and executives of defendants and their immediate families, among others. See Dkt. 181 at 2.

## DISCUSSION

A. Legal standard

"Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23."

2

Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (citation and quotation omitted).

The party seeking class certification bears the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). In order for a class action to be certified, plaintiffs must prove that they meet the requirements of Federal Rule of Civil Procedure 23(a) and (b).

Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of representation in order to maintain a class. First, the class must be so numerous that joinder of all members individually is "impracticable." See Fed. R. Civ. P. 23(a)(1). Second, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). And fourth, the class representative(s) must be able to protect fairly and adequately the interests of all members of the class. Fed. R. Civ. P. 23(a)(4). The parties moving for class certification bear the burden of establishing that the Rule 23(a) requirements are satisfied. Gen'l Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982); see also Dukes, 564 U.S. at 350.

If all four prerequisites of Rule 23(a) are satisfied, the court must also determine whether to certify the class under one of the three subsections of Rule 23(b), pursuant to which the named plaintiffs must establish that either (1) that there is a risk of substantial prejudice from separate actions; or (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact common to the class predominate and that a class action is superior to other methods available for adjudicating the controversy at issue. See Fed. R. Civ. P. 23(b).

The court does not make a preliminary inquiry into the merits of plaintiffs' claims in determining whether to certify a class. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974). The court will, however, scrutinize plaintiffs' legal causes of action to determine whether they are suitable for resolution on a class-wide basis. See, e.g., Moore v.

1    Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983). Making such a
2    determination will sometimes require examining issues that overlap with the merits. See
3    Dukes, 564 U.S. at 350-51 (acknowledging that court's "rigorous analysis" will frequently
4    entail some overlap with merits of plaintiff's underlying claim).

The court will consider matters beyond the pleadings, if necessary, in order to ascertain whether the asserted claims or defenses are susceptible of resolution on a class wide basis. See McCarthy v. Kleindienst, 741 F.2d 1406, 1419 n.8 (D.C. Cir. 1984).

B.  Analysis

Plaintiff's motion argues that all four of the Rule 23(a) factors are met, and further argues that the putative class satisfies the predominance and superiority requirements of Rule 23(b)(3). Defendants raise five challenges: (1) plaintiff cannot demonstrate adequacy because many proposed class members disagree with the premise of the lawsuit and because most of his purchases were made on the secondary market, (2) plaintiff cannot demonstrate typicality because he has credibility issues that render his claims subject to unique defenses, (3) plaintiff cannot demonstrate predominance because highly individualized assessments are needed to determine which proposed class members have standing, (4) plaintiff cannot demonstrate superiority due to the pendency of a parallel SEC action and due to the above reasons, and (5) the proposed state law class is improper under the Ninth Circuit's Mazza precedent.

In other words, as to the Rule 23(a) factors, defendants do not dispute the presence of numerosity and commonality, and instead challenge only adequacy and typicality. The court further notes that, as to numerosity, it is undisputed that the number of potential class members is at least in the tens of thousands, so the court concludes that the numerosity requirement is indeed met. As to commonality, defendants appear not to dispute that the issue of whether XRP is a "security" is capable of classwide resolution, so the court concludes that the commonality requirement is met. See Parsons v. Ryan, 754 F.3d 657, 675 (9th Cir. 2014) ("even a single common question" is sufficient

4

1 to satisfy Rule 23(a)(2)).

The court will now analyze the two remaining Rule 23(a) factors: typicality and adequacy. Because defendants focused their arguments in their brief and at the hearing on adequacy, the court will start there.

1. Adequacy

As mentioned above, defendants' argument on adequacy can be divided into two sub-arguments: first, the argument that plaintiff cannot adequately represent class members who disagree with the premise of this lawsuit, and second, that plaintiff cannot adequately represent "direct purchasers" (i.e., class members who purchased XRP directly from Ripple) because the bulk of his purchases were made from secondary sellers. The court will address each argument in turn.

First, defendants argue that many of the putative class members disagree with the premise of plaintiff's lawsuit because they do not think XRP should be considered a security, and argue those differing beliefs place plaintiff in conflict with those class members. Defendants expand on this argument in three ways – arguing that "plaintiff is in conflict with class members harmed by his claims," "plaintiff is in conflict with class members who could be exposed to legal liability if plaintiff's claims succeed," and "this class conflict is rooted in XRP purchasers' differing expectations." See Dkt. 201 at 19-23.

Plaintiff responds by arguing that the legal test for what qualifies as a "security" is an objective one, and thus, the subjective beliefs of the class members are not relevant to that test.

The test for what qualifies as a 'security' originally comes from the 1946 Supreme Court case of SEC v. Howey, and was interpreted and "distilled" by the Ninth Circuit in Warfield v. Alaniz, 569 F.3d 1015 (9th Cir. 2009).

Under the Howey test, a "security" includes an "investment contract," which is defined as "a contract, transaction, or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." Howey at 298-99.

5

      The Warfield court "distilled Howey's definition into a three-part test requiring: (1) an investment of money, (2) in a common enterprise, (3) with an expectation of profits produced by the efforts of others." Warfield at 1020. The Warfield court also clarified that, "while the subjective intent of the purchasers may have some bearing on the issue of whether they entered into investment contracts, we must focus our inquiry on what the purchasers were offered or promised," and accordingly, "courts conduct an objective inquiry into the character of the instrument or transaction offered based on what purchasers were led to expect." Id. at 1021.

      Because the Howey test is an objective one, defendants' argument that the class members are in conflict due to "differing expectations" is inapposite. The merits issue of whether XRP is a security will be the same for all class members, regardless of each member's individual expectations. And to the extent that defendants invoke the prospect of harm and/or legal liability to those dissenting class members, that argument relies on speculation. Most importantly of all, as the court pointed out at the hearing that any disagreements by potential class members over the premise of the lawsuit can be remedied by the standard opt-out procedure, allowing any dissenting class members to simply remove themselves from the lawsuit. The ability to opt-out addresses any concern over potential disagreements between class members as to the aims of the lawsuit. See also, e.g., Lee v. Pep Boys-Manny Moe and Jack of California, 2015 WL 9480475 (N.D. Cal. Dec. 23, 2015) ("[a] difference of opinion about the propriety of the specific relief sought in a class action among potential class members is not sufficient to defeat certification."); Californians for Disability Rights, Inc. v. California Dept. of Transportation, 249 F.R.D. 334, 348 (N.D. Cal. 2008) (holding same).

      Thus, for all of those reasons, the court concludes that defendants' arguments regarding the disagreement between class members over the legal issue of whether XRP qualifies as a "security" does not defeat adequacy.

      Defendants' second argument regarding adequacy is that plaintiff cannot adequately represent direct purchasers, due to the fact that the bulk of his purchases

6

were made indirectly. Defendants' argument relies largely on Williams v. Block One, in which a court denied class certification after concluding that a plaintiff who purchased digital assets on foreign exchanges was not adequate to represent class members who made purchases on domestic exchanges. 2022 WL 5294189 (S.D.N.Y. Aug. 15, 2022). The Block One court, in turn, relied on the Supreme Court's opinion in Morrison v. National Australia Bank Ltd., holding that the "reach of U.S. securities law is presumptively limited to (1) transactions in securities listed on domestic exchanges, and (2) domestic transactions in other securities." Id. at *5 (citing Morrison, 561 U.S. 243 (2010)). Because of the rule articulated in Morrison, the Block One class would be required to prove, on a transaction-by-transaction basis, which purchases were domestic, and that the plaintiff would be incentivized to accept a lower settlement due to the relative weakness of his claims. Defendants argue that the plaintiff in this case similarly has claims that are weaker relative to those of other class members.

However, defendants have not identified case law such as Morrison that would complete the analogy between this case and Block One. Simply put, while defendants claim that, "at summary judgment, [they] will demonstrate" that a plaintiff can recover only from his direct seller, the fact remains that, at the present time, defendants have no controlling case law that draws such a distinction between direct purchasers and indirect purchasers. In other words, while it was apparent in Block One that the plaintiff's claims were subject to an effective defense, it is not so apparent in this case. To the contrary, this court and others have held that a plaintiff can bring an unregistered securities claim against solicitor sellers. See Dkt. 85 at 21-23; see also Owen v. Elastos Foundation, 2021 WL 5868171 (S.D.N.Y. Dec. 9, 2021).

Accordingly, defendants have not presented any reason why plaintiff's indirect purchases render his claims weaker than those of other class members, and as a result, defendants' argument regarding indirect vs. direct purchases does not defeat adequacy.

Having addressed and rejected both of defendants' arguments regarding adequacy, the court concludes that plaintiff has indeed demonstrated adequacy for both

7

of his proposed classes under Rule 23(a)(4).

2. Typicality

Defendants argue that "plaintiff is atypical due to his lack of credibility." Dkt. 201 at 26. Specifically, defendants point to the fact that plaintiff "acted as a day trader," which is "inconsistent with him having any expectation that XRP would increase in value due to Ripple's efforts," as required by the Howey test. Id. at 27.

As mentioned above, the Howey test is an objective one, and plaintiff's status as a day trader will not affect the analysis one way or the other. Furthermore, the court fails to see how defendants' argument is actually relevant to plaintiff's credibility. Regardless, the court does not find merit in defendants' arguments on typicality, and concludes that plaintiff has indeed demonstrated typicality as required by Rule 23(a)(3).

Thus, having determined that plaintiff has met the four Rule 23(a) factors, it now turns to the Rule 23(b)(3) factors: predominance and superiority.

3. Predominance

Defendants make two arguments regarding predominance: first, that individualized issues of standing predominate over common questions, and second, that plaintiff does not put forward a common methodology for proving damages. See Dkt. 201 at 28-37. The court addresses each argument in turn.

a. Standing

Defendants argue that plaintiff has no way of showing with common evidence which class members have standing. Defendants argue that each class member will need to establish how much XRP they bought, for what price, and whether or not they sold XRP, and for what price. Defendants further argue that, even if plaintiff could obtain information from cryptocurrency exchanges, that information "would leave unaddressed segments of the proposed class that purchased in other ways – for example, through bilateral transactions, on decentralized exchanges, or in exchange for a good or service." Dkt. 201 at 31.

On the latter point – the "unaddressed segments" identified by defendants – the

8

1    court notes that these examples are largely speculative. Defendants do not identify any
2    specific bilateral transactions that raise individualized issues, nor any transactions on
3    decentralized exchanges, and to the extent defendants identify entities that acquired XRP
4    in exchange for goods or services, such as Tapjets, Time Magazine, and Crypto.com Pay
5    (see Dkt. 201 at 35, n. 20), they provide no indication of how common or uncommon such
6    transactions were, compared to the rest of the transactions within the scope of the class.
7    In other words, defendants' identification of hypothetical or isolated "unaddressed
8    segments" is not sufficient to defeat a showing of predominance.

            i.      Motion to strike

10   In connection with this issue, defendants have raised a challenge to the
11   reply/rebuttal expert report of plaintiff's damages expert, Steven Feinstein. Defendants
12   argue that the reply report was untimely filed, as it was filed more than 30 days after
13   defendants' own expert report, and argue that it should be stricken as prejudicial to
14   defendants. See Dkt. 231. In the alternative, defendants request an opportunity to
15   further depose Feinstein regarding the opinions in his reply report. See id.
16   Plaintiff raises a number of arguments in opposition, including that the motion to
17   strike is procedurally improper, that the rebuttal report deadline was not governed by the
18   30 day deadline of Rule 26(a)(2), and that there was no prejudice to defendants. See
19   Dkt. 243.
20   Overall, after reviewing the motion to strike materials in connection with the class
21   certification motion materials, the court concludes that it need not consider the Feinstein
22   reply report as part of its ruling on the class certification motion, and thus, defendants'
23   motion to strike is DENIED as moot.
24   The primary purpose of the reply report was to address the so-called
25   "unaddressed segments" identified in defendants' opposition brief. Specifically, the reply
26   report discusses how damages would be calculated in the case of bilateral contracts, or
27   in the case of purchasers who acquired XRP in exchange for goods or services, which
28   were identified in defendants' opposition brief as "unaddressed segments." However, as

9

discussed above, defendants provided no indication of the prevalence of any of these "unaddressed segments," leaving the court with only speculation as to how widespread these potential individualized issues would be. Accordingly, because the "unaddressed segments" raised in the opposition remained mostly hypothetical, there was no need for the court to consider expert testimony on how to address such segments. So, for those reasons, the court need not consider the Feinstein reply report, and the motion to strike is denied.

### ii. Fail-safe class

Defendants then argue that the proposed class is an improper "fail safe" class. However, courts that have warned against certifying "fail safe" classes have done so on the basis of claim preclusion, noting that "because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." See, e.g., Olean, 31 F.4th at 669 n. 14 (internal citations omitted); see also Brazil v. Dell Inc., 585 F.Supp.2d 1158, 1167 (N.D. Cal. July 7, 2008) ("to determine who should be a member of these classes, it would be necessary for the court to reach a legal determination that Dell had falsely advertised."). In contrast, the class definition in this case does not turn on a merits determination of liability. If, on the merits, XRP is determined not to be a "security" requiring registration, the class members will still be bound by the judgment. For that reason, the court finds defendants' citations to the "fail safe" line of cases to be inapplicable to the present motion.

Overall, the court concludes that none of defendants arguments regarding standing are enough to defeat a finding of predominance.

### b. Common damages methodology

Defendants then argue that plaintiff has not put forward a common methodology for damages. As before, defendants identify certain transactions that they argue are not covered by plaintiff's expert's methodology, including cross-border transactions and other bilateral transactions, purchasing made as a part of "trading pairs," and purchasers who acquired XRP in exchange for goods or services. However, as before, defendants

10

provide no indication of how frequently these transactions appear in the overall total of XRP transactions, and thus, these identifications cannot form a basis for concluding that common issues do not predominate over individual ones.

And again, as before, defendants object to the use of the Feinstein reply/rebuttal report to address arguments raised in their opposition, but also as before, the court concludes that it need not rely on the arguments made in the reply/rebuttal report.

As to the methodology, putting aside the isolated scenarios identified by defendants, there seems to be agreement that the measure of damages for each class member can be determined by looking at (1) the quantity of XRP purchased and sold, (2) the purchase price and currency used, (3) the sale price and currency used, and (4) the currency exchange rate between purchase and sale currencies (if a different currency was used for the XRP purchase than was used for the sale).. See Dkt. 219 at 17 (citing defendants' expert's deposition testimony).  Plaintiff's expert further sets forth simple formulas for subtracting the sale price from the purchase price, and accounting for interest, to calculate damages for class members who sold XRP, and for subtracting the current value from the purchase price for those who retained XRP.  See Dkt. 181-61 at 8. Thus, overall, the court concludes that plaintiff has put forth a common methodology, and defendants have identified only hypothetical or isolated examples that may not be covered by that methodology.

Accordingly, the court concludes that plaintiff has established that common issues will predominate over individual ones as required by Rule 23(b)(3).

4.  Superiority

Defendants then argue that plaintiff cannot meet the superiority requirement. Defendants break this argument into three pieces.

The first piece is that "class members who hold XRP have strong interests in individually controlling their own rights and interests."  This argument strikes the court as substantively similar to the argument made, in the context of adequacy, that "many class members disagree with the premise of the lawsuit," and the court rejects it here for the

11

same reason.

The second piece is that is the class is unmanageably broad, which would make it difficult to identify all class members. This is essentially an ascertainability problem, but ascertainability is no longer a basis for denying certification. See Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1126 (9th Cir. 2017).

The third piece is that the parallel SEC action in S.D.N.Y. addresses the same question of whether XRP is a security. As plaintiff points out, the court has already considered and rejected a motion to stay this case in favor of the SEC case, and the court now similarly concludes that certification should not be denied based simply on the pendency of the SEC case. However, given the posture of the SEC case, the court may be amenable to staying a merits determination during the pendency of that case. This issue may be revisited prior to briefing on any motions for summary judgment.

Accordingly, the court concludes that plaintiff has demonstrated superiority as required by Rule 23(b)(3).

5. Mazza analysis

The last of defendants' arguments, which also implicates the predominance requirement, is that the proposed California state-law class cannot be certified on a nationwide or worldwide basis. Defendants primarily rely on the Ninth Circuit's decision in Mazza v. American Honda Motor Co., Inc., 666 F.3d 581 (9th Cir. 2012). Citing Mazza, defendants argue that "variances in state law overwhelm common issues and preclude predominance for a single nationwide class," and that the same rationale precludes predominance for a worldwide class. Id. at 596.

The Mazza test starts by requiring plaintiff to show that "California has significant contact or significant aggregation of contacts to the claims of each class member" to ensure that application of California law is constitutional. If plaintiff makes that showing, the burden then shifts to defendant to show that foreign law, rather than California law, should apply to class claims under the three-step governmental interest test:

12

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

666 F.3d at 590.

As to the proposed nationwide class based on California law, the court concludes that plaintiff has shown that California has significant contact to the claims of each class member, and that defendant has not met its burden to show that the laws of other states should apply. Defendants' primary argument is that the Kansas Supreme Court has made a ruling on corporate jurisdiction that differs from the law of California, but defendant has not identified any connection between that Kansas case law and the claims involved in this case. In other words, defendants have not shown that the conflict between Kansas and California law would bear upon any of the class members' claims in this case. Defendants also argue that other states have different periods for statutes of limitations and statutes of repose, but defendants have not cited any case law denying certification on that basis, whereas, in contrast, plaintiff does cite case law holding that "California has an interest in having its statute of limitations applied." See Zurich Am. Ins. Co. v. Kwan Wo Ironworks Inc., 2022 WL 2981821 (N.D. Cal. July 28, 2022). For those reasons, the court concludes that defendants have not met their burden to show that the laws of other states should be applied, and thus, Mazza provides no obstacle to the certification of a nationwide class under California law.

However, with regard to the proposed global scope of the class, the analysis is different. Defendants do cite documents from foreign countries expressing the view that

13

XRP should not be considered a security.  See Dkt. 201 at 41.  While none of the cited documents have the force of law, they do provide an indication that different countries are currently wrestling with the relatively novel issue of whether to classify cryptocurrency as a security.  Given the evolving legal landscape in this area, the court is unwilling to apply California law to a worldwide class of XRP purchasers.  Other countries should have the opportunity to regulate cryptocurrency in the manner in which they see fit.  For the same reason, the court is unwilling to apply U.S. federal securities law to a worldwide class.  Thus, for both the state-law class and the federal-law class, the court limits the geographical scope to class members who purchased XRP within the United States during the relevant class period.

Accordingly, for the reasons stated in this order, the court concludes that plaintiff has demonstrated that the Rule 23(a) and Rule 23(b)(3) factors have been met, and GRANTS plaintiff's motion for class certification as to both proposed classes, with the limitation that both classes are limited to class members who purchased XRP within the United States during the relevant class period.

6. Other issues

a. Length of class period

In their opposition brief, defendants argue that the proposed class start date of May 3, 2017 is too early, as it is presumably based on the filing of a now-dismissed case, Coffey v. Ripple Labs.  See Dkt. 201 at 43.  Defendants argue that the first complaint filed by the current plaintiff was on August 5, 2019, and to the extent he seeks to relate back to an earlier complaint, the earliest possibility would be the date of the filing of Greenwald v. Ripple Labs, which was the first complaint to bring federal claims against Ripple.  Greenwald was filed on July 3, 2018, and defendants argue that the earliest possible start date for the class period would be one year prior to that, or July 3, 2017.

Plaintiff responds by arguing that relation-back to Coffey is appropriate because Coffey was related to this case at defendants' request.  See Dkt. 219 at 27.

Because plaintiff bears the burden of establishing that the relation-back doctrine

14

should apply, and because plaintiff's briefs do not meaningfully attempt to address this standard, the court concludes that defendants' proposed start date for the class – July 3, 2017 – is appropriate.

Defendants also challenge the proposed end date of the class, arguing that the most appropriate end date is the date of the complaint's filing. See Dkt. 201 at 44. Plaintiff points out that defendants have no authority for their proposal, and point out that defendants' own cited case certified a class period that ran through the date of the class certification order See Dkt. 219 at 27 (citing Vasquez v. Leprino Foods Co., 2020 WL 1527922 (E.D. Cal. Mar. 31, 2020). Overall, the court agrees that defendants have no support for their proposed end date, but also agrees that it is preferable to have a certain end-date for the class period, and thus, it sets the date of this order as the end date for the class period.

### b. Amicus brief

A group of six individuals and one corporate entity has filed a motion for leave to file an amicus curiae brief. See Dkt. 206. The court has "broad discretion in deciding whether to allow a non-party to participate as an amicus curiae." Juniper Networks v. Shipley, 2010 WL 986809 (N.D. Cal. Mar. 17, 2010); Inst. Of Med. Educ., Inc. v. W. Ass'n of Sch. & Colleges, 2013 WL 6672443, at *3 n.1 (N.D. Cal. Dec. 18, 2013). Having reviewed the proposed brief, the court finds that it reiterates arguments already made in defendants' opposition brief, and thus, the court DENIES the motion for leave to file an amicus curiae brief.

### c. Motions to seal

In connection with their briefs, the parties have filed three motions to seal, seeking the sealing of excerpts of their briefs along with certain attached exhibits. See Dkt. 180, 200, 218. The court will issue a separate order resolving the motions to seal.

## CONCLUSION

For the reasons stated above, plaintiff's motion for class certification (Dkt. 181) is GRANTED, defendants' motion to strike (Dkt. 231) is DENIED as moot, and the motion

15

1 | for leave to file an amicus curiae brief (Dkt. 206) is DENIED.

3 | **IT IS SO ORDERED.**

4 | Dated: June 30, 2023

                                                 /s/ *Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge

16