# EXHIBIT F

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re RIPPLE LABS, INC. LITIGATION<br><br>This Document Relates To:<br>    All Actions | Case No. 18-cv-06753-PJH<br><br>**ORDER RE DAUBERT MOTIONS**<br>Re: Dkt. 318, 323, 327, 328 |

    Before the court are four motions filed by the parties in the above-captioned case: (1) defendants' motion to exclude the testimony of plaintiff's expert Jeremy Clark (Dkt. 327), (2) defendants' motion to exclude the testimony of plaintiff's expert Saifedean Ammous (Dkt. 328), (3) plaintiff's motion to exclude the testimony of defendants' expert Alan Schwartz (Dkt. 318), and (4) defendants' motion to exclude the testimony of plaintiff's expert Joel Seligman (Dkt. 323). Having read the papers filed by the parties and carefully considered their arguments and relevant authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

    In this securities case, defendants filed a motion for summary judgment, which the court granted in part and denied in part. See Dkt. 419. In the summary judgment order, the court noted that the parties had filed six motions to exclude expert testimony under Daubert, and that two of the motions related to classwide damages issues that were rendered moot by the court's dismissal of class claims. See id. at 16-17. The court directed the parties to file a notice indicating whether they continued to pursue the four remaining motions. See id. The parties then filed a notice stating that they did indeed still seek the exclusion of the four experts named in the pending motions. See Dkt. 433.

**DISCUSSION**

I.    Legal Standard

A witness who has been qualified as an expert by knowledge, skill, experience, training, or education may give an opinion on scientific, technical, or otherwise specialized topics if (1) the expert's scientific, technical, or other special knowledge will help the trier of fact understand the evidence or determine a fact in issue, (2) the testimony is based upon sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements are met. See Fed. R. Evid. 702, Advisory Committee Notes. Although there is a presumption of admissibility, the trial court is obliged to act as a "gatekeeper" with regard to the admission of expert scientific testimony under Rule 702. See Daubert, 509 U.S. at 588, 597; see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999).

Thus, Daubert requires a two-part analysis. First, the court must determine whether an expert's testimony reflects "scientific knowledge," whether the findings are "derived by the scientific method," and whether the work product is "good science"—that is, whether the testimony is reliable and trustworthy. Daubert, 509 U.S. at 590 & n. 9, 593. Second, the court must determine whether the testimony is "relevant to the task at hand." Id. at 597.

Scientific evidence is reliable if it is based on an assertion that is grounded in methods of science – the focus is on principles and methodology, not on conclusions. Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 841 (9th Cir. 2001). In determining whether an expert's reasoning or methodology is scientifically valid, the district court can consider "many factors," including (1) whether a scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer

1  review and publication; (3) the known or potential rate of error and the existence and
2  maintenance of standards controlling the techniques operation; and (4) whether the
3  technique is generally accepted. Daubert, 509 U.S. at 593–95; Fed. R. Evid. 702, 2000
4  Advisory Committee Notes.

5  Nevertheless, depending on the type of expert testimony offered, these factors
6  may not be appropriate to assess reliability. Kumho Tire, 526 U.S. at 150. Other factors
7  that might be considered include whether an expert has unjustifiably extrapolated from an
8  accepted premise to an unfounded conclusion, or whether an expert has adequately
9  accounted for obvious alternative explanations. See General Elec. Co. v. Joiner, 522
10 U.S. 136, 146 (1997); Claar v. Burlington Northern R. Co., 29 F.3d 499, 502 (9th
11 Cir.1994).

12 The trial court should be also mindful that reliability is not determined based on the
13 "correctness of the expert's conclusions but the soundness of his methodology." Stilwell
14 v. Smith & Nephew, Inc., 482 F.3d 1187, 1192 (9th Cir. 2007). The trial court should
15 ensure the expert "employs in the courtroom the same level of intellectual rigor that
16 characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at
17 152.

18 Rule 702's second prong concern's relevancy, or "fit." See Daubert, 509 U.S. at
19 591. Expert opinion testimony is relevant if the knowledge underlying it has a "valid ...
20 connection to the pertinent inquiry," and it is reliable if the knowledge underlying it "has a
21 reliable basis in the knowledge and experience of [the relevant] discipline." Id. at 592;
22 Kumho Tire, 526 U.S. at 149.

23 "The trial court has discretion to decide how to test an expert's reliability as well as
24 whether the testimony is reliable, based on 'the particular circumstances of the particular
25 case.'" Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010). "Shaky but admissible
26 evidence is to be attacked by cross examination, contrary evidence, and attention to the
27 burden of proof, not exclusion." Id. at 564.

28

II. Legal Analysis

    A.    Motion to exclude testimony of Clark

Defendants argue that Clark's opinion from his opening report is inadmissible because (1) he applied no methodology, and (2) his opinion lacks relevance. See Dkt. 327 at 16-21. Defendants further argue that Clark's rebuttal opinions are inadmissible and "procedurally improper." See id. at 21-25.

        1.    Clark's opening report

As to Clark's opening report, defendants first argue that he used no recognized methodology, and instead did only "background reading" then formed opinions based on his "expertise," without more. See Dkt. 327 at 15-16. Defendants argue that such "black box" ipse dixit is not permitted under Daubert and Rule 702. See id. at 16.

Plaintiff responds by arguing that Clark's opening report sets forth five conclusions, only two of which appear to be substantively challenged by defendants, even as they purport to seek exclusion of Clark's entire report. See Dkt. 394 at 10. Specifically, Clark reaches the following conclusions: (1) the XRP ledger consensus protocol requires validators to agree on a list of trusted validators, and using Ripple's list is a de facto requirement, (2) Ripple is the "root of trust" on the XRP ledger, (3) Ripple is a gatekeeper to full participation in the ledger, (4) XRP distribution favors Ripple, and (5) validators on the XRP ledger require external incentives. See id. Plaintiff argues that defendants focus almost entirely on Clark's first two conclusions, implicitly conceding the admissibility of the remaining three. See id.

Although defendants do not directly challenge Clark's qualifications to offer his opening report, plaintiff sets forth Clark's qualifications to testify about XRP, arguing that he has significant experience with digital assets and blockchain, and has also taught courses and published academic papers covering XRP. See Dkt. 394 at 17-19. To the extent that defendants argue that Clark's experience relates to digital assets and blockchain generally, rather than XRP specifically, plaintiff argues that a "lack of particularized expertise goes to the weight accorded [his] testimony, not to the

4

1    admissibility of [his] opinion as an expert." D.F. by & through Amador v. Sikorsky Aircraft
2    Corp., 2017 WL 4922814 (S.D. Cal. Oct. 30, 2017) (quoting United States v. Garcia, 7
3    F.3d 885, 890 (9th Cir. 1993)).
4        Plaintiff then argues that Clark's methodology is not a black box, and that it is
5    similar to the methodology used by experts that were approved in the SEC v. Ripple case
6    in the Southern District of New York, and in at least one other SEC case involving
7    blockchain. See SEC v. Ripple Labs, 2023 WL 5670711 at *10-11 (S.D.N.Y. Mar. 6,
8    2023); SEC v. Balina, 2023 WL 8040767 at *3 (W.D. Tex. Nov. 20, 2023).
9        Specifically, plaintiff argues that Clark analyzed technical documents for the XRP
10   ledger, including source code, and also analyzed technical documents for Bitcoin and
11   Ethereum, then articulated points of commonality and points of difference. See Dkt. 394
12   at 20-25. Plaintiff cites cases holding that such comparison of systems based on
13   technical documents is an acceptable methodology, as well as cases specifically holding
14   that review of complete source code is not required. See id. at 21-22 (citing Teradata
15   Corp. v. SAP SE, 570 F.Supp.3d 810, 846-47 (N.D. Cal. 2021); InfoSpan, Inc. v.
16   Emirates NBD Bank PJSC, 2016 WL 8849699 at *16-17 (C.D. Cal. June 8, 2016)).
17   Plaintiff further argues that defendants' arguments go to the weight of Clark's opinions,
18   not their admissibility. See Teradyne, Inc. v. Astronics Test Sys., Inc., 2023 WL 6889028
19   at *9 (C.D. Cal. Sep. 29, 2023).
20       Overall, the court concludes that plaintiff has shown that Clark's opening report is
21   sufficiently reliable to be admitted under Daubert and Rule 702. As shown in the cases
22   cited by plaintiff, it is sufficient under Daubert for an expert to review technical documents
23   for various systems and to use relevant expertise to draw relevant factual opinions about
24   the similarities and differences between the systems. See, e.g., Teradata Corp, 570
25   F.Supp.3d 810; InfoSpan, 2016 WL 8849699. To the extent that defendants dispute the
26   correctness of Clark's conclusions, the Ninth Circuit has held that "[s]haky but admissible
27   evidence is to be attacked by cross examination, contrary evidence, and attention to the
28   burden of proof, not exclusion." Primiano at 564.

As mentioned above, defendants also challenge Clark's opening report on the basis of relevance. Defendants argue that Clark's conclusion "reduces to the proposition that the XRP ledger differs from Bitcoin and Ethereum because, in the latter blockchains, there is no entity that is as important relative to other users as Ripple is relative to the XRP ledger's other users." See Dkt. 327 at 19. Defendants argue that Clark's conclusion "has no bearing on the issues the jury must decide." See id.

Plaintiff cites defendants' own briefing, in which they assert that Ripple's lack of control over the XRP ledger is relevant to the 'common enterprise' prong of the Howey test. See Dkt. 394 at 31. Plaintiff further challenges defendants' argument that Clark's opinion "invites the jury to speculate about the state of mind of XRP purchasers," instead arguing that Clark's opinion bears on the objective Howey test to the extent it looks to "what purchasers were offered and promised." See id. at 33.

Overall, the court concludes that plaintiff has shown that Clark's testimony is sufficiently relevant under Daubert and Rule 702. Ripple's control or lack of control over the XRP ecosystem is a factual issue relevant to the Howey test, and Clark's testimony speaks to that issue.

Accordingly, to the extent that defendants seek the exclusion of Clark's opening expert report, their motion is DENIED.[1]

    2. Clark's rebuttal report

Aside from challenging Clark's opening report, defendants also move to exclude Clark's rebuttals of defendants' experts Yesha Yadav and Allen Ferrell.

As to Clark's rebuttal of Yadav, defendants argue that Clark has "no qualifications to opine on the domesticity of transactions," and that his opinion must also be excluded because it is not "intended solely to contradict or rebut evidence on the same subject

---

[1] Plaintiff has also objected to the declaration of David Schwartz, arguing that he was not disclosed as an expert witness. See Dkt. 394 at 27-28. However, defendants point out in their reply that D. Schwartz was disclosed as a fact witness and offers only testimony within his personal knowledge. Defendants are correct and plaintiff's objection is overruled.

6

1 matter" as Yadav's opinion.

2 As a threshold matter, it remains unclear whether either party's expert testimony
3 on domesticity is relevant to the case in light of the summary judgment order dismissing
4 all claims brought on behalf of class members. Because the parties filed their <u>Daubert</u>
5 motions before the summary judgment order was issued, they have not yet addressed
6 the issue of whether expert testimony regarding domesticity is needed to analyze the
7 trading activity of sole plaintiff Bradley Sostack.

8 Accordingly, because neither party may need to present expert testimony
9 regarding domesticity, the court directs the parties to file five-page supplemental briefs on
10 the discrete issue of whether expert testimony from either party is needed to establish the
11 domesticity of plaintiff Sostack's transactions. Plaintiff shall file an opening brief within 7
12 days of the date of this order, and defendants shall file a responsive brief within seven (7)
13 days of plaintiff's opening brief.

14 With regard to Clark's qualifications to rebut Ferrell's testimony, defendants argue
15 that Clark lacks the qualifications to offer a rebuttal, and that Clark applied "no
16 methodology to reach his conclusion." <u>See</u> Dkt. 327 at 22-24.

17 As to qualifications, plaintiff responds by arguing that Clark is a professor at
18 Concordia University and holds a chair in Blockchain Technologies. <u>See</u> Dkt. 394 at 8.
19 Plaintiff further points out that Clark has published over 20 peer-reviewed papers on
20 digital assets and related topics, and wrote the preface to a university textbook, "Bitcoin
21 and Cryptocurrency Technologies." <u>See id.</u> at 8-9.

22 As to methodology, plaintiff argues that "the only opinion Dr. Clark offers in his
23 rebuttal of Ferrell is that both of Ferrell's examples illustrate that XRP is not a unit of
24 account." <u>See</u> Dkt. 327 at 30. In plaintiff's view, defendants "misleadingly argue that
25 Clark needed to form his own methodology to define the term 'unit of account,'" when
26 Clark instead "adopted Ferrell's definition, but actually applied that definition to Ferrell's
27 purported examples." <u>See id.</u>

28 Overall, the court concludes that Clark is qualified to offer a rebuttal opinion to

7

Ferrell's testimony regarding whether XRP functions as a "unit of account," and that his rebuttal opinion is sufficiently reliable in that he applies Ferrell's own methodology in order to opine that a different conclusion should be reached.

Accordingly, for the reasons stated above, defendants' motion to exclude the testimony of Clark is DENIED, with the possible exception of Clark's rebuttal testimony of Yadav, which will be addressed after further briefing.

### B. Motion to exclude testimony of Ammous

Defendants seek to exclude the testimony of plaintiff's expert Saifedean Ammous, who offers a rebuttal report to defense expert Allen Ferrell. Defendants first argue that Ammous is not qualified, then also argue that his opinions are unreliable. See Dkt. 328 at 15-27.

As to qualifications, defendants argue that Ammous has "disclaimed" the value of his Ph.D from Columbia University, and that his area of study (Sustainable Development) is unrelated to his opinions on econometric modeling, on-demand liquidity ("ODL"), and the properties of currency. See Dkt. 328 at 7-9, 15-16. Defendants also argue that Ammous relies on "Austrian school economics," which defendants characterize as a "fringe theory." See id. at 7.

Plaintiff responds by arguing that the subject area of Ammous's Ph.D, Sustainable Development, is "a field of study of economic development," and that Ammous also worked as an economics professor for nearly ten years. See Dkt. 395 at 15-16. Plaintiff further argues that Ammous has published extensively on the subject of digital assets, including a best-selling book titled "The Bitcoin Standard" and a university-level economics textbook titled "Principles of Economics." See id. at 8-9.

Overall, the court concludes that plaintiff has shown that Ammous is sufficiently qualified under Daubert and Rule 702 to offer his rebuttal opinions. As plaintiff points out, Ammous has worked as an economics professor for nearly a decade, and has published extensively on the topics of digital assets and economics. While defendants take issue with Ammous's scholarship and with "Austrian school economics" in general, those

arguments are properly raised with contrary testimony and cross-examination. See, e.g., Sumotext Corp. v. Zoove, Inc., 2020 WL 264701, at *5 (N.D. Cal. Jan. 17, 2020) ("Where, as here, two qualified economists espouse conflicting views about the effect of a particular economic principle on the case, a 'battle of the experts' arises. The proper course is to allow each side to attack the other's with contrary expert opinion, other contrary evidence, and cross-examination.") (citing Primiano v. Cook, 598 F.3d 558, 564-65 (9th Cir. 2010)).

Aside from challenging Ammous's qualifications, defendants also argue that his opinions are unreliable. Specifically, defendants challenge (1) Ammous's rebuttal of Ferrell's factor model, (2) Ammous's opinion on ODL, and (3) Ammous's opinion on XRP's use as a currency. See Dkt. 328 at 18-27.

Starting with (1), defendants argue that Ammous bases his opinions on propositions that are not accepted among experts in economics, that he uses no methodology and relies on ipse dixit claims, and that his critique is based on unreliable and flawed premises. See Dkt. 328 at 18-26.

Plaintiff responds by arguing that Ammous's opinions are supported by Ripple's own documents and by basic economic principles such as supply and demand, that he applies a reliable methodology and offers a reliable critique. See Dkt. 395 at 22-29. Plaintiff further argues that Ammous, as a rebuttal expert, identifies flaws in the assumptions underlying Ferrell's models, limitations in the models, and inadequately-supported conclusions in the models. See id.

The court concludes that plaintiff has shown that Ammous' rebuttal opinions regarding Ferrell's factor model are sufficiently reliable to be admitted under Daubert and Rule 702. As mentioned above, to the extent that defendants and their expert disagree with Ammous's adoption of "Austrian school" economic principles, those arguments are to be resolved in a "battle of the experts" in front of a jury. See Sumotext, 2020 WL 264701, at *5 (citing Primiano, 598 F.3d at 564-65). Additionally, as a rebuttal expert, Ammous is permitted to opine about Ripple's economic incentives and point out where he

9

1  believes that Ferrell's report did not properly account for those incentives.

2  In essence, Ferrell and Ammous offer opposing opinions on whether Ripple's
3  actions affect the price of XRP, and it is not the court's role to choose which of those
4  opinions is more convincing. The parties' papers contain extensive arguments about the
5  merits of each economist's position, but as Ninth Circuit authority has held, the proper
6  forum for those arguments is at trial, in front of a jury. See, e.g., Primiano, 598 F.3d at
7  564-65.

8  As mentioned above, in addition to challenging Ammous's rebuttal of Ferrell's
9  factor model, defendants also challenge Ammous's opinions on ODL and currency.

10 As to ODL, defendants argue that Ammous formed his opinions before ODL even
11 existed, and that his opinions are ipse dixit and lacking in methodology. See Dkt. 328 at
12 26.

13 Plaintiff responds by arguing that the early formation of Ammous's ODL opinion
14 actually serves to bolster the reliability of his testimony. See Dkt. 395 at 30. Plaintiff
15 cites Ninth Circuit authority for the proposition that "[o]ne very significant fact to be
16 considered is whether the experts are proposing to testify about matters growing naturally
17 and directly out of research they have conducted independent of the litigation, or whether
18 they have developed their opinions expressly for purposes of testifying." Clausen v. M/V
19 New Carissa, 339 F.3d 1049, 1056 (9th Cir. 2003) (quoting Daubert v. Merrell Dow
20 Pharms., Inc., 43 F.3d 1311, 1317 (9th Cir.1995) ("Daubert II")).

21 Overall, the court concludes that Ammous's opinion on ODL is sufficiently reliable
22 for admission under Daubert and Rule 702. In particular, the court is persuaded by the
23 cited Ninth Circuit authority regarding the significance of Ammous having conducted
24 previous independent research, out of which his testimony in this case grows.

25 Finally, defendants challenge the reliability of Ammous's opinion on currency. See
26 Dkt. 328 at 26-27. Defendants argue that his opinion consists of only "two conclusory
27 paragraphs" and lacks methodology. See id.

28 Plaintiff argues that Ammous is opining as an economist who has written

extensively about whether digital assets possess the characteristics of money, and observing that Ripple's control of the XRP supply will be taken into consideration by economically rational actors. See Dkt. 395 at 31.

Overall, the court concludes that Ammous's opinion on currency is sufficiently reliable for admission under Daubert and Rule 702. Defense expert Ferrell has offered an opinion as to why XRP should be considered a currency, and Ammous has presented an opposing opinion as to why it should not be considered a currency under the same framework, given Ripple's control over XRP supply. See, e.g., In re HIV Antitrust Litig., 656 F.Supp.3d 963, 1006 (N.D. Cal. Feb. 17, 2023) (experts may "opine on what a rational, objective actor would have considered in light of [economic] information.").

Accordingly, defendants' motion to exclude the testimony of Ammous is DENIED.

C. Motions to exclude testimony of Schwartz and Seligman

As mentioned above, plaintiff seeks to exclude the testimony of Alan Schwartz, arguing that he improperly draws legal conclusions. Defendants, in turn, seek to exclude the testimony of Joel Seligman, who submitted both an opening report and a rebuttal report, also on the basis that he improperly draws legal conclusions.[2] Because both parties seek exclusion of each other's experts on the same basis, the court will address both experts together when analyzing whether their testimony constitutes improper expert testimony on a matter of law.

Matters of law are "inappropriate subjects for expert testimony." Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1052-53 (9th Cir. 2012); see also Aguilar v. Int'l Longshoremen's Union Loc. 10, 966 F.2d 443, 444 (9th Cir. 1992); McHugh v. United Serv. Auto. Ass'n, 164 F.3d 451, 454 (9th Cir.1999) (stating that expert opinions on issues of law are inappropriate; an expert's role is to interpret and analyze factual evidence, not to provide legal meaning).

As to Schwartz, plaintiff argues that his testimony impermissibly opines on

---

[2] Defendants also seek to exclude Seligman's testimony as unreliable, which will be addressed below.

11

Howey's legal reasoning and why the contracts in that case were investment contracts, and interprets Ripple's contracts in comparison to the contracts in Howey. See Dkt. 318 at 6, 9-11.

Defendants argue that Schwartz's testimony simply "provides a helpful summary of more than 1,700 contracts through which Ripple distributed XRP, and relevant provisions (or the absence thereof) in those contracts." Dkt. 363 at 9. Defendants claim that Schwartz is not offering testimony on "the question of whether Ripple's contracts constitute 'investment contracts' under Federal and California securities laws." Id. Defendants further argue that Schwartz's testimony is "different in kind from that offered by" Seligman, who "describes Howey to support his own interpretation of the term 'investment contract.'" See id., n.2.

Defendants further argue, in their motion to exclude Seligman's testimony, that his opinions on the securities registration process are similarly improper legal conclusions, in addition to being irrelevant. See Dkt. 323 at 11-12. Defendants also address Seligman's rebuttal report, arguing that he responds to four of defendants' experts by "offering only additional legal opinions on the construction of the Securities Act." Id. at 12-14.

The court concludes that the testimony of both Schwartz and Seligman improperly draws legal conclusions, and thus GRANTS plaintiff's motion to exclude the testimony of Schwartz and GRANTS defendants' motion to exclude the testimony of Seligman.

As to Schwartz, the court concludes that the thrust of Schwartz's report is to persuade the reader that the contracts in this case are legally distinguishable from the "investment contracts" in Howey. Although Schwartz's report contains a disclaimer that he "do[es] not express an opinion regarding whether Ripple's contracts, individually or taken together, comprise 'investment contracts' under the securities laws," that disclaimer is undermined by the substance of the report. See Dkt. 318-3 at 14.

For instance, Schwartz's report starts by "describ[ing] the specific contracts at issue in Howey," in order to "set out a useful framework for my opinion about Ripple's contracts and how they differ from those in Howey." See Dkt. 318-3 at 8. Later,

12

Schwartz more directly states that the relevant "difference" is that Ripple's contracts should not be considered "investment contracts" as were the contracts in Howey – asserting that "plaintiff claims that Ripple's offers and sales of XRP were offers and sales of 'investment contracts,' and thus subject to registration," and responding that "plaintiff fails to allege, however, that Ripple's actions to promote XRP" required them to undertake such promotional activities. See id. at 11. Schwartz then provides his statutory interpretation of the term "contract" (as used in "investment contract") and opines that "[i]n contract law terms, Ripple's contracts therefore could not be the basis of a buyer's commercially reasonable expectation that Ripple legally bound itself to engage in post-sale value-affecting activities regarding XRP. It would follow that the contracts Ripple uses to market XRP are distinguishable from the contracts Howey used to market citrus groves." Id. at 14-15.

As defendants point out, at least some of Schwartz's testimony was admitted in the SDNY case. See SEC v. Ripple Labs, 2023 WL 5670711, at *14-15. Specifically, that court held that Schwartz's testimony "provides a framework for categorizing the 1,700 contracts and understanding their commercial purposes in the industry," and emphasized that "his testimony is limited to describing the commercial purposes of certain contracts and specific provisions common to those contracts." Id. at *14. In contrast, as set forth in the previous paragraph, Schwartz's testimony in this case goes beyond "describing the commercial purposes" of contracts, and instead offers arguments regarding the reasonable expectations of XRP buyers. Moreover, to the extent that Schwartz's testimony simply summarizes categories of contracts that Ripple entered into with certain buyers, the court is not convinced that such testimony would be relevant to the jury in light of the court's summary judgment order, which left intact only plaintiff's individual misrepresentation claim, rather than any class claims. Defendant's own papers argue that Schwartz's testimony about the 1,700 contracts is relevant only because "plaintiff has never disclaimed that the class may include members who acquired XRP directly through contracts with Ripple," while acknowledging that "most class members

13

1    purchased XRP on digital asset exchanges." See Dkt. 363 at 6-7.

2      Turning to Seligman, the court concludes that much of the same reasoning as
3    above applies.  Seligman's opening report starts by describing the "background of the
4    Securities Act and investment contracts," which discusses, among other things, the
5    Supreme Court's analysis in Howey and its application by various courts to digital assets.
6    See Dkt. 322-2 at 6-14.  Although Seligman does not go as far as Schwartz in applying
7    Howey to the present case, this background testimony is purely legal in nature, and thus
8    impermissible under Daubert and Rule 702.

9      Seligman's report then describes the securities registration process in detail,
10   including a recounting of the various forms that must be filed with the SEC.  See Dkt.
11   322-2 at 14-21.  The third and final section of Seligman's report discusses typical
12   practices for startup companies' offerings.  See id. at 21-31.  To the extent that these
13   sections discuss the purpose of the Securities Act's registration requirements, the court
14   concludes that those opinions are improperly legal in nature.  And to the extent that
15   Seligman's report covers topics that are factual rather than legal in nature, the court
16   concludes that the testimony is not sufficiently tethered to the issues that will be before a
17   jury.  See, e.g., Sportsvision Inc. v. SportsMEDIA Tech. Corp., 2005 WL 8177792 (N.D.
18   Cal. Apr. 12, 2005).

19     Seligman's rebuttal report is also improperly legal in nature.  The first section of
20   the rebuttal report addresses Schwartz's report, described above, and argues that
21   Schwartz's view of the term "investment contract" is incorrect.  See Dkt. 322-3 at 3-11.

22     The second section addresses two opinions advanced by defense expert Allen
23   Ferrell: (1) that XRP buyers did not have a reasonable expectation of profit based on
24   Ripple's efforts, and (2) that XRP has the properties of a currency.  See Dkt. 322-3 at 11-
25   14.  Issue (1) goes directly to the third prong of the Howey test, and thus the opinion is
26   improperly legal in nature.  The rebuttal report's discussion of issue (2) is based on the
27   premise that a digital asset could be both a currency and a security, and then presents
28   reasons why digital assets could be considered securities.  Again, this is the primary legal

14

question under Howey, and thus not the proper subject of expert testimony.

The third and final section of Seligman's rebuttal report addresses the reports of defense experts Bradley Borden and Peter Easton, who opined that XRP should not be treated as a security under tax laws and accounting principles, respectively. See Dkt. 322-3 at 14-15. The court also finds that both of these topics are impermissibly legal in nature, and to the extent that they do not bear on a legal question, the court is not persuaded that tax laws and accounting principles would be relevant to the jury in determining issues of securities law.

Accordingly, for the reasons stated above, the motion to exclude the testimony of Alan Schwartz and the motion to exclude the testimony of Joel Seligman are GRANTED. The court need not address the merits of defendants' alternative argument, that Seligman's testimony is unreliable.

## CONCLUSION

For the reasons set forth above, defendants' motion to exclude the testimony of plaintiff's expert Jeremy Clark (Dkt. 327) is DENIED (with the possible exception of Clark's rebuttal opinion of Yadav, which will be addressed in a subsequent order), (2) defendants' motion to exclude the testimony of plaintiff's expert Saifedean Ammous (Dkt. 328) is DENIED, (3) plaintiff's motion to exclude the testimony of defendants' expert Alan Schwartz (Dkt. 318) is GRANTED, and (4) defendants' motion to exclude the testimony of plaintiff's expert Joel Seligman (Dkt. 323) is GRANTED.

**IT IS SO ORDERED.**

Dated: October 24, 2024

      /s/ *Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge

15