Marc M. Seltzer (54534)
mseltzer@susmangodfrey.com
Steven G. Sklaver (237612)
ssklaver@susmangodfrey.com
Oleg Elkhunovich (269238)
oelkhunovich@susmangodfrey.com
Krysta Kauble Pachman (280951)
kpachman@susmangodfrey.com
Nicholas N. Spear (304281)
nspear@susmangodfrey.com
Michael Tayag (350113)
mtayag@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

James Q. Taylor-Copeland (284743)
james@taylorcopelandlaw.com
Max Ambrose (320964)
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4944
Facsimile: (619) 566-4341

*Counsel for Lead Plaintiff Bradley Sostack and the Class*

*[Additional counsel on signature page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| In re RIPPLE LABS, INC. LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No. 4:18-cv-06753-PJH<br><br>CLASS ACTION<br><br>**PLAINTIFF'S OBJECTIONS TO RIPPLE LABS, INC.'S BILL OF COSTS** |
|---|---|

**TABLE OF CONTENTS**

BACKGROUND ....................................................................................................................2

ARGUMENT ......................................................................................................................2

I. The Court Should Exercise Its Discretion and Decline to Tax Costs ..................................3

II. The Court Should Defer Any Decision on Costs Until After the Appeal and Trial ............5

III. The Court Should Deny Ripple's Improper Cost Requests ..................................................8

A. Objection to Costs for Deposition Services – 28 USC § 1920(2)............................9

B. Objection to E-Discovery Costs – 28 USC § 1920(4), Civil L-R 54-3(d)(2) ........10

1. Ripple Fails to Establish Compensable E-Discovery Costs from this Case ..............................................................................................10

2. "Data Processing" Costs are Not Taxable ................................................12

CONCLUSION ...................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. Bank One-Denver*,
289 F.3d 1223 (10th Cir. 2002) ....................................................................8

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997)....................................................................................4

*Asarco, LLC v. NL Indus.*,
2016 U.S. Dist. LEXIS 39859 (E.D. Mo. Mar. 28, 2016) ..............................6

*Ass'n of Mexican-Am. Educators v. State of California*,
231 F.3d 572 (9th Cir. 2000) (en banc) ......................................................3, 5

*Champion Produce, Inc. v. Ruby Robinson Co.*,
342 F.3d 1016 (9th Cir. 2003) ......................................................................3

*City of Alameda v. Nuveen Mun. High Income Opportunity Fund*,
2012 U.S. Dist. LEXIS 7403 (N.D. Cal. Jan. 23, 2012) ..................................8

*Computer Cache Coherency Corp. v. Intel Corp.*,
2009 U.S.Dist. LEXIS 122596 (N.D. Cal. Dec. 18, 2009)..............................13

*Crawford Fitting Co. v. J. T. Gibbons, Inc.*,
482 U.S. 437 (1987)....................................................................................3

*Ebonie S. v. Pueblo Sch. Dist. 60*,
2011 U.S. Dist. LEXIS 99534 (D. Colo. Sep. 1, 2011) ..............................6, 7

*Escriba v. Foster Poultry Farms, Inc.*,
743 F.3d 1236 (9th Cir. 2014) ..................................................................3, 5

*Hamilton v. Tbc Corp.*,
2020 U.S. Dist. LEXIS 189431 (C.D. Cal. Feb. 13, 2020)................................4

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
2018 U.S. Dist. LEXIS 244553 (C.D. Cal. Sep. 11, 2018)................................8

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 914 (9th Cir. 2015) ......................................................................12

*In re Ricoh Co., Ltd. Patent Litig.*,
661 F.3d 1361 (Fed. Cir. 2011)....................................................................8

*In re Tesla Inc.*,
2023 U.S. Dist. LEXIS 103682 (N.D. Cal. June 14, 2023) ..........................3, 4

*Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 U.S. Dist. LEXIS 63933 (N.D. Cal. May 8, 2014) ....................12

*Microsoft Corp. v. Multi-Tech Sys.*, 2002 U.S. Dist. LEXIS 27119 (D. Minn. Oct. 23, 2002) ....................6

*Pac._Coast Bldg. Prods. v. Certainteed Gypsum, Inc.*, 2019 U.S. Dist. LEXIS 228685 (N.D. Cal. Dec. 5, 2019) ....................8

*PJY Enters., Ltd. Liab. Co. v. Kaneshiro*, 2014 U.S. Dist. LEXIS 104609 (D. Haw. July 31, 2014) ....................5, 6

*Plantronics, Inc. v. ALIPH, Inc.*, 2012 U.S. Dist. LEXIS 152297 (N.D. Cal. Oct. 23, 2012) ....................13

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012) ....................12

*Save Our Valley v. Sound Transit*, 335 F.3d 932 (9th Cir. 2003) ....................3

*SEC v. Ripple Labs, Inc. et al.*, Case No. 20 Civ. 10832 (AT) (S.D.N.Y.) ....................11

*Shorter v. S. Cal. Buick Pontiac GMC Dealers, Inc.*, 2018 U.S. Dist. LEXIS 225690 (C.D. Cal. June 7, 2018) ....................7

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012) ....................12

*United States v. O'Hagan*, 521 U.S. 642 (1997) ....................4

*Vectren Communs. Servs. v. City of Alameda*, 2014 U.S. Dist. LEXIS 100227 (N.D. Cal. July 22, 2014) ....................9

**Statutes**

28 USC § 1920(2) ....................9

28 USC § 1920(4) ....................10, 12

This groundbreaking case has been hard fought from the beginning. Indeed, until this Court granted-in-part Defendants' motion for summary judgment, Plaintiff succeeded at each major stage of the litigation. Moreover, although the Court granted summary judgment with respect to the Class claims based on the Securities Act's statute of repose and California's privity requirement, the Court held that it "cannot find as a matter of law that Ripple's conduct would not have led a reasonable investor to have an expectation of profit due to the efforts of others," and denied summary judgment on Plaintiff's individual securities claim. Recognizing the merit of this claim, Defendants offered to have judgment entered against them on that claim along with an award of reasonable attorneys' fees and costs to Plaintiff. Declaration of James Taylor-Copeland ("Taylor-Copeland Decl.") ¶ 3, Ex. 1. However, Plaintiff had concerns that accepting this offer of judgment could negatively impact his ability to pursue an appeal of the Class claims and effectively vindicate the rights of the Class.

Plaintiff thus proposed, and the parties subsequently filed a joint motion, requesting "that the Court direct entry of final judgment on Plaintiff's class action claims pursuant to Rule 54(b) and stay further proceedings on Plaintiff's remaining individual state law claim until resolution of any and all appeals of the class action claims." ECF No. 437 at 2. Neither the parties' joint motion nor the Court's order granting that motion directed the taxing and apportionment of costs. ECF No. 437; ECF No. 442. Plaintiff was thus surprised by Ripple Labs, Inc.'s ("Ripple") filing of the bill of costs.

To ensure the continued and effective enforcement of the securities laws, Plaintiff respectfully requests that the Court decline to tax costs against Plaintiff here. In the alternative, to ensure the efficient use of judicial resources, Plaintiff respectfully requests that the Court defer consideration of taxable costs until after completion of the pending appeal and resolution of the stayed individual claim and any remanded Class claims. If the Court is inclined to handle cost awards, as Ripple requests, in a piecemeal fashion, Plaintiff objects pursuant to Local Rule 54-2.2 to various costs claimed by Ripple. Plaintiff met and conferred with counsel for Ripple by phone on December 4, 2024, and thereafter by email in an effort to resolve the parties' disagreements concerning those costs. Taylor-Copeland Decl. ¶ 4, Ex. 2. The parties were unable to resolve those objections noted below. *Id.*

## BACKGROUND

This securities class action arises from three complaints, consolidated by this Court on February 28, 2019, brought on behalf of investors that purchased Ripple tokens ("XRP") issued and sold by Ripple Labs Inc. ("Ripple") and related entities and individuals. On June 21, 2019, pursuant to the Private Securities Litigation Reform Act ("PSLRA"), the Court appointed Bradley Sostack as Lead Plaintiff. Mr. Sostack subsequently defeated Defendants' Motions to Dismiss, including an argument that repose barred Plaintiff's and the then-putative class's federal securities claims, and obtained certification of two classes pursuant to Rule 23(b)(3). During the pendency of this action, the U.S. Securities and Exchange Commission filed its own case against Defendants ("SEC Action"), also alleging that Defendants offered and sold unregistered securities in the form of XRP tokens.

The central issue in this case is whether Defendants' offers and sales of XRP on digital asset exchanges constituted investment contracts under the Supreme Court's *Howey* test and whether Defendants thus violated the Securities Act and California law through the sale of unregistered securities. Defendants sought summary judgment on this issue, which they had obtained in the SEC Action. Plaintiff defeated this argument as the Court ruled that it "cannot find as a matter of law that Ripple's conduct would not have led a reasonable investor to have an expectation of profit due to the efforts of others," and allowed Plaintiff's individual securities claim to proceed. ECF No. 419 at 16. However, the Court did grant summary judgment with respect to the Class claims based on the Securities Act's statute of repose and California's privity requirement. Plaintiff filed a notice of appeal earlier today.

## ARGUMENT

The Court should exercise its discretion and decline to tax any costs against Plaintiff. *See* Section I. In the alternative, the Court should defer consideration of taxable costs until after the completion of the pending appeal and trial of the individual claim (and any remanded claims). *See* Section II. To the extent the Court does consider costs at this stage, the Court should reject Ripple's

attempts to seek costs that are without authority under federal law or lack the requisite supporting documentation. *See* Section III.

## I. The Court Should Exercise Its Discretion and Decline to Tax Costs

The federal district courts retain "discretion to refuse to tax costs in favor of the prevailing party." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987). While "costs are to be awarded as a matter of course in the ordinary case," *see Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 593 (9th Cir. 2000) (en banc), the Ninth Circuit, following the other circuits, has outlined a number of "sufficiently persuasive" reasons to deviate from Rule 54(d)(1)'s default standard. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). "Appropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247–48 (9th Cir. 2014); *see also, e.g., Save Our Valley*, 335 F.3d at 945–46; *Champion Produce, Inc. v. Ruby Robinson Co*., 342 F.3d 1016, 1022 (9th Cir. 2003); *Ass'n of Mexican-Am. Educators,* 231 F.3d at 592.

These factors do not comprise an "exhaustive list," and the satisfaction of any one of them may justify declining to tax costs in a particular case. *See Escriba*, 743 F.3d at 1247–48. Here, each factor supports declining to tax costs against Plaintiff.

*First*, there can be no doubt that this case "presented a landmark issue of national importance." *Champion Produce*, 342 F.3d at 1022. "When a case involves an issue of substantial public importance, it is a factor that weighs against awarding costs to the prevailing party." *In re Tesla Inc.*, 2023 U.S. Dist. LEXIS 103682, at *44 (N.D. Cal. June 14, 2023) (citing *Escriba*, 743 F.3d at 1247). Litigation has spanned over six years and spawned a parallel SEC action involving the same novel securities law issues. Moreover, over the course of the case, the parties litigated numerous important and emerging issues of law, including the application of the *Howey* test to digital assets, the scope of

solicitor seller liability under the Securities Act, and the application of the Securities Act's statute of repose to offerings of digital assets.

This case was one of the first private securities class actions involving the sale of digital assets to proceed to summary judgment. The Supreme Court has explained that "an animating purpose" of securities law is "to insure honest securities markets and thereby promote investor confidence." *United States v. O'Hagan*, 521 U.S. 642, 658 (1997). Courts in this district have thus found that securities actions raise issues of "substantial public importance." *In re Tesla Inc.*, 2023 U.S. Dist. LEXIS 103682, at *45.

The size of the Class, which is comprised of at least 700,000 XRP purchasers who had suffered losses of over $600 million as a result of their purchases of XRP, also demonstrates the "substantial public importance" of the issues raised in this case. *Id*. at *44 (finding that allegation that "hundreds of thousands, if not millions, of Tesla investors saw an impact to their financial portfolios" supported finding of "substantial public importance").

*Second,* not only were the issues in this litigation close, but it is not even yet clear whether Defendants will in fact be the prevailing party in this litigation. While the Court did grant Defendants' summary judgment on Plaintiff's Class claims, his individual claim survived summary judgment and will proceed to trial following the resolution of Plaintiff's appeal of the Class claims. Moreover, until this Court granted-in-part Defendants' motion for summary judgment, Plaintiff succeeded at each major point in this litigation, defeating Defendants' motions to dismiss and obtaining certification of two classes.

*Third*, taxing costs against Plaintiff would chill future meritorious class action suits. As courts in the Ninth Circuit have recognized, "class actions often involve relatively small monetary claims by each plaintiff, and taxing substantial litigation costs on individual Plaintiffs here may chill potential plaintiffs' willingness to assume the monetary risk. This factor thus weighs in Plaintiffs' favor." *Hamilton v. Tbc Corp.*, 2020 U.S. Dist. LEXIS 189431, at *8 (C.D. Cal. Feb. 13, 2020). After all, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small

recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (citation and quotation marks omitted). That chilling effect is particularly acute under the securities laws, which delegate significant enforcement authority to private attorneys and class plaintiffs.

*Finally*, taxing costs against Plaintiff would be inappropriate and inequitable given the significant economic disparity between the parties. *See Ass'n of Mexican-Am. Educators,* 231 F.3d at 592. Plaintiff introduced evidence in connection with class certification and summary judgment briefing, that Ripple had earned well over $1 billion over the class period from selling XRP. ECF No. 273, at 9, 17. Ripple has publicly bragged that it has spent over $200 million litigating this case and the parallel SEC Action.[1] Plaintiff, meanwhile, is an individual XRP purchaser. The "economic disparity between the parties" could hardly be greater. *Escriba,* 743 F.3d at 1247–48.

In all, given the substantial national importance of the case, the closeness and difficulty of the issues that were litigated and remain to be litigated, the need to avoid chilling future meritorious securities claims, and the economic disparity between the parties, Plaintiff respectfully requests that the Court refuse to tax any costs in favor of Ripple. Rule 54(b) does not countenance Ripple's request for costs in these extraordinary circumstances.

## II. <u>The Court Should Defer Any Decision on Costs Until After the Appeal and Trial</u>

The Court should defer any decision on costs until there has been a final judgment as to all parties and all causes of action. The Court's Order Granting the Parties' Joint Motion for Entry of Final Judgment and to Stay directed the Court to enter an appealable judgment in Defendants' favor on the four class claims, but "STAY[ED] Plaintiff's Fourth Claim for Relief under § 25501 against defendant Ripple and defendant XRP II and § 25504.1 against defendant Ripple and defendant Garlinghouse, see First Am. Compl. ¶¶ 197–206, until the final resolution of any and all appeals of the class claims." *See* ECF Nos. 442, 446. Because this individual claim has not yet been adjudicated,

[1] Jeff John Roberts, *Ripple's legal bills hit $200 million as crypto industry looks to Asia*, FORTUNE, (Sep. 21, 2023), https://fortune.com/crypto/2023/09/21/ripples-legal-bill-200-million-sec-ruling/.

it is not yet clear that Defendants will in fact be the prevailing party in this litigation. Indeed, as noted above, Defendants previously offered to have judgment entered against them on this cause of action. Taxing costs at this juncture would thus be premature. *PJY Enters., Ltd. Liab. Co. v. Kaneshiro,* 2014 U.S. Dist. LEXIS 104609, at *11–14 (D. Haw. July 31, 2014) ("[T]axing costs after a Rule 54(b) judgment may not be a final ruling on costs in the case as a whole and can be considered premature.").

The Tenth Circuit's ruling in *Woodmen Accident & Life Insurance Co.*, is instructive:

> We believe logic dictates that, unless the trial court — as part of its Rule 54(b) certification — directs taxing and apportionment of costs, the time for taxing costs begins to run only from the entry of what would ordinarily be a final judgment as to all parties and all issues. To hold otherwise would unnecessarily complicate matters. For example, in the instant case, Mr. Bryant might succeed on his remaining claim for relief and, thus, be entitled to costs as a "prevailing party." Additionally, certain costs, such as deposition costs, might have been extended to resolve issues certified pursuant to Rule 54(b) as well as the issue still pending in the trial court. We believe the trial court should have the freedom to adjust any cost awards at least until there has been a final judgment as to all parties and all issues, and we assume the trial court will consider the possibility of doing so in this case. Thus, because the trial court's judgment is not final with respect to costs, we dismiss Mr. Bryant's cost appeal.

784 F.2d 1052, 1057–58 (10th Cir. 1986); *see also Ebonie S. v. Pueblo Sch. Dist. 60,* 2011 U.S. Dist. LEXIS 99534, at *7–8 (D. Colo. Sep. 1, 2011) (finding that, under *Woodmen*, taxing costs after the certification of the dismissal order as a final judgment pursuant to Rule 54(b) was premature and ruling that any award of taxable costs would occur after the entry of judgment as to all claims and all parties in the case); *Microsoft Corp. v. Multi-Tech Sys.*, 2002 U.S. Dist. LEXIS 27119, at *4–5 (D. Minn. Oct. 23, 2002) (staying proceedings, including the determination of taxable costs, until the resolution of any appeal filed from the Rule 54(b) judgment); *Asarco, LLC v. NL Indus*., 2016 U.S. Dist. LEXIS 39859, at *10 (E.D. Mo. Mar. 28, 2016) ("In light of the anticipated appeal of Union Pacific's summary judgment, the Court finds taxation of costs against Asarco at this juncture to be premature.") (citation omitted).

The factors set forth in Section I above further illustrate that entry of an award of taxable costs at this juncture would have the potential to "chill future plaintiffs" from securities litigation. *PJY*

*Enters., Ltd. Liab. Co.*, 2014 U.S. Dist. LEXIS 104609, at *11–14 ("Although there is no indication that Plaintiffs are indigent, the burden on Plaintiffs to pay taxable costs at this stage is greater than the burden on the City Defendants if this Court defers the award of taxable costs."). The *PJY* Court further noted that "there is also the possibility that the resolution of Count V may affect the prevailing party analysis," and thus concluded that "an award of taxable costs after the 54(b) Judgment may chill future civil rights litigation." *Id.* ("[T]his Court FINDS that an award of taxable costs is not appropriate at this stage of the case."); *Ebonie S.*, 2011 U.S. Dist. LEXIS 99534, at *7 (finding taxation of costs premature because Rule 54(b) certification did not "direct the taxing and apportionment of costs" and "Plaintiff has two claims going forward against the remaining Defendant school district and may, as noted by the Tenth Circuit, succeed on those claims, thus entitling her to an award of costs as the prevailing party"). So too here. The resolution of Plaintiff's individual claim may affect the prevailing party analysis, and the award of substantial costs following a Rule 54(b) Judgment entered into to protect members of the absent Class at his own expense is likely to chill future securities litigation and discourage vigorous litigation of class claims.

During the parties' meet and confer, Ripple argued that this case is distinguishable from the line of cases cited above because "there has been a final determination that Defendants are the prevailing parties with regard to claims brought by the certified class" and that even if "plaintiff prevails on his individual claim, that would not make the class the prevailing party." Taylor Copeland Decl. ¶ 4, Ex. 2 at 1. Ripple bases this position on a misreading of *Shorter v. S. Cal. Buick Pontiac GMC Dealers, Inc.*, 2018 U.S. Dist. LEXIS 225690, at *10-11 (C.D. Cal. June 7, 2018), which distinguished *Woodmen* "because the Dismissal Order resolved all claims properly before the Court between Plaintiff and [a specific defendant]," even though Plaintiff's claims against *other* parties remained live. But that is not the case here. The Court's summary judgment order did not resolve all claims against *any* Defendant, let alone all claims against Ripple. Moreover, Ripple's attempt to distinguish the Class claims from the individual claims is nonsensical. Plaintiff is a member of each Class and it is Plaintiff from whom Ripple seeks to recover over $200,000 in costs. But whether

Plaintiff or Defendants are the prevailing party simply cannot be assessed until there is a final ruling on Plaintiff's individual claim as well.

Moreover, the piecemeal adjudication of costs would run contrary to the purpose or Rule 54(b) and the Parties' Joint Motion, which asked the Court to enter judgment on the class claims pursuant to Rule 54(b) in order "to advance resolution of the class claims, streamline the remaining litigation, and avoid unnecessary further burden on the Court and the Parties." ECF No. 437 at 1. The Court should thus defer ruling on costs until resolution of the appeal of the Class claims and final adjudication of Plaintiff's Fourth Claim for Relief and any remanded claims.

**III. <u>The Court Should Deny Ripple's Improper Cost Requests</u>**

For the above reasons, the Court should refuse to tax costs in favor of Ripple or, in the alternative, defer consideration of Ripple's requested costs until after completion of the pending appeal and trial of remaining claims. If the Court chooses to consider Ripple's costs now, it should decline to tax those costs outlined below as impermissible under the federal and local rules.

To recover taxable costs, Ripple has the burden to point to a rule or statute authorizing the taxability of a particular cost, and to establish the amount of compensable costs and expenses to which it is entitled. *See In re Ricoh Co., Ltd. Patent Litig*., 661 F.3d 1361, 1364, 1367 (Fed. Cir. 2011) (applying Ninth Circuit precedent to hold that "the burden is on the prevailing party to establish the amount of compensable costs and expenses to which they are entitled") (cleaned up); *see also Pac. Coast Bldg. Prods. v. Certainteed Gypsum, Inc.*, 2019 U.S. Dist. LEXIS 228685, at *8 (N.D. Cal. Dec. 5, 2019) (same). A party seeking costs must provide an affidavit saying that the costs were "necessarily incurred, and are allowable by law" and "[a]ppropriate documentation to support each item claimed." Civ. L.R. 54-1(a). "With regard to individual itemized costs, 'the burden is on the party seeking costs . . . to establish the amount of compensable costs and expenses to which it is entitled.'" *City of Alameda v. Nuveen Mun. High Income Opportunity Fund*, 2012 U.S. Dist. LEXIS 7403, at *7 (N.D. Cal. Jan. 23, 2012) (quoting *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248–49 (10th Cir. 2002)). "A district court may reduce costs which are unreasonably large or which are not

supported by adequate documentation." *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2018 U.S. Dist. LEXIS 244553, at *8 (C.D. Cal. Sep. 11, 2018).

Ripple seeks to tax $228,287.95 in costs against Plaintiff. Plaintiff objects to only a limited set of those costs, related to costs that are unreasonably large, without sufficient supporting documentation, and/or not authorized by statute. Specifically, Plaintiff objects to $201,020.07 in costs and requests that Ripple's costs be reduced to $27,267.88, as summarized in the following chart:

| **Cost Item** | **Amount Claimed** | **Amount Objected To** | **Corrected Costs** |
|---|---|---|---|
| Deposition transcript/video recording, Civil LR 54-3(c)(1) | $45,666.94 | ($23,923.86) | $21,743.08 |
| Deposition exhibits, Civil LR 54-3(c)(3) | $3,599.80 | NA | $3,599.80 |
| Notary & reporter attendance fees, Civil LR 54-3(c)(4)(5) | $1,925 | NA | $1,925 |
| Disclosure/formal discovery documents, Civil LR 54-3(d)(2) | $177,096.21 | ($177,096.21) | $0 |
| **Total** | $228,287.95 | ($201,020.07) | $27,267.88 |

### A. Objection to Costs for Deposition Services – 28 USC § 1920(2)

28 U.S.C. § 1920(2) allows the clerk to tax "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Costs associated with "[e]xpedited and rough transcripts . . . are generally not recoverable." *Vectren Communs. Servs. v. City of Alameda*, 2014 U.S. Dist. LEXIS 100227, at *10 (N.D. Cal. July 22, 2014). As summarized in the chart below, Ripple nevertheless seeks reimbursement of $23,573.86 in costs associated with *expedited* transcripts and $350 in costs associated with expedited processing, handling, or archiving of those transcripts. These expedited costs are not taxable.

| **Ex.** | **Expediting Costs** | **Processing, Handling & Archiving – Expedited** |
|---|---|---|
| 44 (Vias) | $1,395 (NEXT DAY EXPEDITE) | $55 |
| 50 (Garlinghouse) | $3,055 (EXPEDITE) | $55 |
| 51 (McCaleb) | $1,141.55 (EXPEDITE) | $55 |
| 52 (Dicharry) | $2,133.12 (EXPEDITE) | $55 |

| | | |
|---|---|---|
| 56 (Ferrell | $2,833.05 (EXPEDITE) | $65 |
| 58 (Clark) | $2,606.43<br>(2 day turnaround) | |
| 60 (Feinstein) | $3,509.01<br>(2 day turnaround) | |
| 62 (Ammous) | $3,131.40<br>(2 day turnaround) | |
| 64 (Kothari) | $1,416 (EXPEDITE) | $65 |
| 65 (Marais) | $2,353.30 (EXPEDITE) | |
| **Total** | $23,573.86 | $350 |

**B. Objection to E-Discovery Costs – 28 USC § 1920(4), Civil L-R 54-3(d)(2)**

**1. Ripple Fails to Establish Compensable E-Discovery Costs from this Case**

28 U.S.C. § 1920(4) allows the clerk to tax "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." The invoices for which Ripple seeks reimbursement all identify the Engagement Name as "SEC Inquiry – Project Nectar." None makes any reference to the instant case. Ripple acknowledges that it "used a single document database to make productions in both the Class Action and a parallel enforcement action brought by the U.S. Securities and Exchange Commission in the U.S. District Court for the Southern District of New York (the "SEC Case")." ECF No. 445-1, Declaration of Ana Guardado at ¶ 12. Ripple further admits that "Consilio billed Ripple for document production costs in both matters on combined invoices that did not distinguish between the matters." *Id.* Despite its inability to distinguish between costs incurred in this case and the SEC Case, Ripple nevertheless seeks reimbursement of $177,096.21 of costs it contends are associated with document productions in this case, including:

- "Data Processing," a broad category that Ripple acknowledges includes "metadata extractions, hash-value creation, de-NIST and deduplication, and similar technical processing." *Id.* ¶ 14(a).
- Optical Character Recognition (OCR) text processing.
- Selective Image Creation, which Ripple contends covers the creation of TIFF images.
- Automated and Native Redaction Services, which Ripple contends covers tools used for placing redactions in produced documents.

Ripple seeks to justify this haphazard attempt to saddle Plaintiff with costs Ripple incurred in the SEC Case by arguing that (1) during certain months Ripple made production only in this action, and (2) where Ripple made productions in both actions, half of those costs should be attributed to production in this case. But the invoices undermine both of these arguments, and in fact suggest that many of these costs are not attributable to Ripple's productions at all.

First, Ripple's productions to Plaintiff in this case were overwhelmingly re-productions of productions already made in the SEC Case. Obviously, the re-production of an earlier document production should be much simpler and thus cheaper than the initial production. For example, once metadata has been extracted, hash-values created, and documents deduplicated in an initial production, that work should not need to be redone when those documents are reproduced. Similarly, OCR text processing, Selective Image Creation, and redaction should only need to be performed in the initial production. The letters accompanying Ripple's productions confirmed this, with many noting that "[t]hese documents were recently produced in the SEC litigation (*SEC v. Ripple Labs, Inc. et al.*, Case No. 20 Civ. 10832 (AT) (S.D.N.Y.)) and **are now being produced to you here in the same form and manner that they were produced in that action**." Taylor Copeland Decl. ¶ 6, Ex. 3.

Ripple's invoices also bear this out. During the 15 months Ripple claims it made productions solely in this action, the total cost of Image Creation is $5,340.03. Guardado Decl. ¶ 45. The Image Creation costs are nearly twenty times higher ($103,290.98) during the 14 months Ripple claims it made productions in both actions. *Id.* OCR and redaction costs are also approximately 100 times greater during months where productions were made in both cases versus months where productions were made in this action alone. *Id.* Data processing costs are identified as $45,709.65 in months where productions were made in this case versus $146,992.13 in months where productions were made in both. *Id.* If these costs were properly identified and equally attributable to the two cases, one would expect these costs to be relatively similar during months where productions were made in both cases and months where productions were made only in this case.

Because Ripple does not establish that any of the e-discovery costs it seeks to recover were actually incurred in this case, the Court should disallow these costs in their entirety. In the alternative, the Court should disallow all costs incurred in months where Ripple made productions in both the SEC and this case. This would leave $45,709.65 in "Data Processing" costs, $17.18 in OCR costs, $5,340.03 in "Image Creation" costs, and $1.35 in "Redaction" Costs. As set forth in Section 2 below, the Data Processing Costs should be disallowed in their entirety, leaving a total of $5,358.56 related to e-discovery.

**2. "Data Processing" Costs are Not Taxable**

"Although 'costs' has an everyday meaning synonymous with 'expenses,' the concept of taxable costs under Rule 54(d) is more limited and represents those expenses, including, for example, court fees, that a court will assess against a litigant." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (quoting 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2666, pp. 202–203 (3d ed. 1998)). Civil Local Rule 54-3 further provides standards for interpreting the categories of costs set forth in Section 1920.

"A narrow construction of § 1920(4) requires recognition that the circumstances in which a copy will be deemed 'necessarily obtained' for use in a case will be extremely limited." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 930 (9th Cir. 2015). "[W]hether certain tasks are taxable pursuant to § 1920(4) calls for some common-sense judgments guided by a comparison with the paper-document analogue." *Id.* (internal quotation omitted). "[C]osts compensable under section 1920 are only permitted for preparation and duplication of documents, not the efforts incurred in assembling, collecting, **or processing those documents**." *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, 2014 U.S. Dist. LEXIS 63933, at *4 (N.D. Cal. May 8, 2014) (quoting *Ancora Techs., Inc.*, 2013 U.S. Dist. LEXIS 121225, at *10 (N.D. Cal. Aug. 27, 2013) (emphasis added)).

Here, Ripple has not provided sufficient detail to allow the Court to determine whether any of its "Data Processing" costs "are actual copying costs." *Id.* The invoices provide nothing more than a generic description as "Data Processing." Ripple's Litigation Director, Ana Guardado, states that

"Data Processing . . . covers metadata extraction, hash-value creation, de-NIST and deduplication and similar technical processing . . ." She does not state that these are the only services counted under the "Data Processing" umbrella or even that all "Data Processing" charges relate to productions, much less productions made in this case. Nor does Ripple provide any information from Consolio regarding what its "Data Processing" work actually involved. "Section 1920(4) authorizes awarding only the cost of making copies." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 169 (3d Cir. 2012). Because Ripple cannot show that all, or even some, of its "Data Processing" costs were incurred in "making copies," it cannot recover those costs.

In fact, the invoices submitted by Ripple show that not all "Data Processing" costs relate to productions made in this action. In total, Ripple's invoices reflect 4,591.71 GB of "Data Processing." Exhibit 27, the invoice for July 2021, reflects 2,808.77 GB of "Data Processing" at a cost of $98,306.95 in that month alone. However, Plaintiff in this action has received only 922 GB of data from Ripple. Taylor-Copeland Decl. ¶ 5. Throughout the entire course of this litigation, Ripple produced to Plaintiff less than one-third of the data reflected on the single July invoice and one-fifth of the data reflected in all the invoices submitted by Ripple.

Plaintiff raised this issue during the parties' meet and confer and asked Ripple if it could identify the amount of data it produced. Taylor-Copeland Decl. ¶ 4, Ex. 2. Ripple was unable to do so but argued that it "should be expected that 'more data than was actually produced' got submitted for processing," because "the data processing charge includes task such as 'de-NIST and deduplication,' both of which serve to reduce the volume of data that is ultimately produced." *Id.* But this "explanation" just confirms that these Data Processing charges were not incurred in "making copies" and thus are not recoverable. In fact, the process described is the exact opposite of "making copies." It is the selection of documents which will *not* be copied and produced.

In addition, a number of courts in this district have concluded that "the expense incurred for OCR and metadata extraction, are not recoverable, as they are merely for the convenience of counsel." *Computer Cache Coherency Corp. v. Intel Corp.*, 2009 U.S.Dist. LEXIS 122596, at *11 (N.D. Cal.

Dec. 18, 2009); *see also Plantronics, Inc. v. ALIPH, Inc.*, 2012 U.S. Dist. LEXIS 152297, at *46 (N.D. Cal. Oct. 23, 2012) ("[T]he court declines to award the processing costs."). Numerous cases in this District have also declined to tax significant "costs for extraction and data processing" and taxed only "more modest costs associated more directly with the processing of TIFF and PDF files." *Id.* at *44 (N.D. Cal. Oct. 23, 2012) ("The court is not willing to go that far and tax over $200,000 in costs for extraction and processing" and collecting cases regarding the same).

Ripple's request for "Data Processing" costs should be denied both because (1) it seeks reimbursement of costs not directly related to copying, and (2) it did not provide sufficient detail to substantiate those costs. *Id.* ("As a separate ground for its decision, the court exercises its discretion and holds that Aliph did not itemize the e-discovery processing costs with enough detail to establish that the court should award it any of the ESI processing costs.") (citing Civ. L. R. 54-1(a) (affidavit and appropriate documentation must support each item claimed on the bill of costs)).

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court order each party to bear its own costs. In the alternative, Plaintiff requests that the Court defer consideration of taxable costs until after completion of the pending appeal and resolution of the stayed individual claim and any remanded Class claims. If the Court does proceed to address costs at this juncture, Plaintiff requests the following costs requested by Ripple be reduced or declined as follows below.

| Cost Item | Amount Claimed | Amount Objected To | Corrected Costs |
|---|---|---|---|
| Deposition transcript/video recording, Civil LR 54-3(c)(1) | $45,666.94 | ($23,923.86) | $21,743.08 |
| Deposition exhibits, Civil LR 54-3(c)(3) | $3,599.80 | NA | $3,599.80 |
| Notary & reporter attendance fees, Civil LR 54-3(c)(4)(5) | $1,925 | NA | $1,925 |
| Disclosure/formal discovery documents, Civil LR 54-3(d)(2) | $177,096.21 | ($177,096.21) | $0 |
| **Total** | $228,287.95 | ($201,020.07) | $27,267.88 |

Dated: December 10, 2024

SUSMAN GODFREY L.L.P.

By */s/ Michael Tayag*

Marc M. Seltzer (54534)
Steven G. Sklaver (237612)
Oleg Elkhunovich (269238)
Krysta Kauble Pachman (280951)
Nicholas N. Spear (304281)
Michael Tayag (350113)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
oelkhunovich@susmangodfrey.com
kpachman@susmangodfrey.com
nspear@susmangodfrey.com
mtayag@susmangodfrey.com

James Q. Taylor-Copeland (284743)
Max Ambrose (320964)
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4944
Facsimile: (619) 566-4341
maxambrose@taylorcopelandlaw.com
james@taylorcopelandlaw.com

*Counsel for Lead Plaintiff Bradley Sostack and Class Counsel*